**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| ALPHA I, L.P., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br>Defendant. | No. 06-407T |
| BETA PARTNERS, L.L.C, BY AND THROUGH ALPHA I, L.P., A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br>Defendant. | No. 06-408T |
| R,R,M & C PARTNERS, L.L.C., BY AND THROUGH R,R,M & C GROUP, L.P., A NOTICE PARTNER,<br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br>Defendant. | No. 06-409T |
| R,R,M & C GROUP, L.P., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br>Defendant. | No. 06-410T |

| | | |
|---|---|---|
| CWC PARTNERSHIP I, BY AND THROUGH TRUST FBO ZACHARY STERN U/A FIFTH G, ANDREW STERN AND MARILYN SANDS, TRUSTEES, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | No. 06-411T |
| MICKEY MANAGEMENT, L.P., BY AND THROUGH MARILYN SANDS, A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 06-810T |
| M, L, R & R, BY AND THROUGH RICHARD E. SANDS, TAX MATTERS PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 06-811T |

PLAINTIFFS' MOTION TO SUBSTITUTE CERTAIN PARTIES AND TO DISMISS CERTAIN CAUSES OF ACTION FOR LACK OF JURISDICTION

CWC Partnership-I ("CWC"), Robert Sands, Richard Sands, and Marilyn Sands (hereinafter collectively referred to as the "Sands") hereby move this Court to invalidate

that portion of defendant's Final Partnership Administrative Adjustment (the "FPAA") that it issued to R,R,M & C Group, L.P. ("Group") wherein defendant determined that the Sands' transfers of their partnership interests in Group to several charitable remainder unitrusts ("CRUTs") were shams. Defendant was without authority to challenge such transfers in an FPAA and, therefore, this Court does not have jurisdiction to consider the efficacy of those transfers in this proceeding.

Because defendant cannot contest the Sands' transfers of their partnership interests in an FPAA, defendant must accept the CRUTs as the true partners in Group. The Internal Revenue Service (the "IRS") was required to make any challenge to the Sands' transfers of their partnership interests by issuing Statutory Notices of Deficiency to them, which would have given them the choice of contesting the Notices in the Tax Court or paying the tax and seeking a refund. *See* 26 U.S.C. §§ 6212-6213, 6422. However, the IRS did not issue any Statutory Notices of Deficiency to the Sands, and the IRS is precluded from assessing any tax against the Sands with respect to the adjustments in the Group FPAA. *See* 26 U.S.C. § 6213(a). Accordingly, the Sands respectfully ask to be dismissed from these proceedings to the extent they relate to the adjustments that defendant made to Group's tax return.[1] In addition, Robert Sands requests the Court to direct defendant to return to him the jurisdictional deposit that he made to contest the Group FPAA.

[1] Pursuant to this motion the Sands seek dismissal from two of the cases that have been consolidated in this proceeding: Case No. 1:06-cv-00409, styled R,R,M & C Partners, L.L.C., By and Through R,R,M & C Group, L.P., a Notice Partner v. United States (the "Partners case") and Case No. 1:06-cv-00410, styled R,R,M & C Group, L.P., By and Through Robert Sands, a Notice Partner v. United States (the "Group case"). In addition, CWC also seeks dismissal from Case No. 1:06-cv-00411, styled CWC Partnership I, By and Through Trust FBO Zachary Stern U/A Fifth G, Andrew Stern and Marilyn Sands, Trustees, a Notice Partner v. United States (the "CWC case"), to the extent that the FPAA that is at issue in that case attributes to CWC income from Group that is properly attributable to the CWC Partnership I Charitable Remainder Unitrust – 2001.

Finally, plaintiffs request that the Court substitute the Robert Sands Charitable Remainder Unitrust – 2001 (the "CRUT") as the partner filing suit on behalf of Group. Because the CRUT is not a taxable entity, and any adjustments detailed in the FPAA would therefore have no effect on its tax liability, no jurisdictional deposit is required for the CRUT to proceed in this case. Or, stated differently, the amount of the jurisdictional deposit required for the CRUT to proceed in this case is zero.

## I. Facts

Group was a limited partnership organized under the laws of the State of Missouri. On September 20, 2001, Group had four equal limited partners: Robert Sands, Richard Sands, Marilyn Sands, and CWC.[2] On September 21, 2001, the Sands each transferred their respective partnership interests in Group to four CRUTs as part of a charitable gift-giving plan: Robert Sands transferred his interest to the Robert Sands Charitable Remainder Unitrust – 2001; Richard Sands transferred his interest to the Richard Sands Charitable Remainder Unitrust – 2001; Marilyn Sands transferred her interest to the Marilyn Sands Charitable Remainder Unitrust – 2001; and CWC transferred its interest to the CWC Partnership I Charitable Remainder Unitrust – 2001 (the four CRUTs are hereinafter referred to as the "CRUT partners").

CRUTs are one form of charitable remainder trust and are common estate planning tools that are statutorily sanctioned by Congress to encourage gifts to charity. A charitable remainder trust, as defined in 26 U.S.C. § 664, must provide for the distribution of a specified payment, at least annually, to one or more persons. The payment period must be for the life of the individual beneficiary or for a term of years, not in excess of 20 years. Upon the termination of the noncharitable interest, the

[2]CWC is a partnership principally owned by trusts created for the benefit of minors in the Sands family.

remainder must either be held in a continuing trust for charitable purposes or be paid to or for the use of a qualified charitable organization. A qualified charitable remainder trust is generally exempt from income tax, and the grantor is entitled to a charitable income tax deduction based on the present value of the remainder interest ultimately passing to charity. *See* 26 U.S.C. §§ 170(f), 664.

Group held $359,290 and 2,002,002 shares of stock Constellation Brands, Inc. on September 21, 2001, the date when the Sands transferred their partnership interests to the CRUT partners. In order to determine the amount of a current deduction for their gift to charity, the Sands hired Goerig & Associates, L.L.C., a qualified appraisal firm, to determine the fair market value of their limited partnership interests on the date of the gift.[3] Each of the Sands claimed a current deduction on their 2001 personal tax returns for the present value of their respective remainder interests. The IRS has not contested these charitable deductions and the period of limitations for doing so has long since expired. *See* 26 U.S.C. § 6501(a).

On October 1, 2001, Group sold the 2,002,002 shares of Constellation stock that it held for $74,862,863. On the Form 1065 U.S. Return of Partnership Income filed by Group for the taxable period ending December 31, 2001, Group reported a total basis in this Constellation stock of $94,757,364, resulting in capital losses totaling $(19,894,501). Since the CRUT partners owned Group when it sold the stock, Group allocated that loss among the CRUT partners.

In the FPAA that it issued to Group, defendant reduced Group's basis in the shares of Constellation stock that it sold on October 1, 2001 from $94,757,364 to

---

[3] As a general rule, the value of a gifted partnership interest must be discounted from the value of its relative share of underlying partnership assets due to factors such as lack of marketability.

$9,108,119. If defendant's adjustment were correct, it would extinguish the losses claimed by Group and replace them with large capital gains. Although plaintiffs dispute this adjustment, for purposes of this motion plaintiffs will assume that it is correct, for even if Group realized large capital gains in 2001 (instead of the capital losses originally reported), all of those gains would be allocable to the CRUT partners.

In obvious recognition of the fact that CRUTs do not pay income tax, the IRS also asserted in the FPAA that the Sands' transfer of their partnership interests in Group to the CRUT partners should be disregarded as an economic sham, such that the Sands should be treated as the limited partners in Group when it sold the Constellation stock. This motion contests defendant's ability to make that determination in an FPAA.

In order to contest an FPAA in this Court, the Internal Revenue Code requires the filing partner to deposit the amount by which his taxes would increase if the FPAA were correct. *See* 26 U.S.C. § 6226(e). Accordingly, Robert Sands deposited the amount by which his taxes would increase as if all of the adjustments in the Group FPAA were correct, including the determination that he was a partner in Group when the Constellation Brands stock was sold.

## II. The Statutory Framework

Partnerships do not pay federal income tax. 26 U.S.C. § 701. Instead, they file annual information returns that report, to the IRS and to each partner, the partner's distributive share of income or loss, deductions or credits, and other required information. 26 U.S.C. § 6031. The individual partners then report their distributive shares of these items on their own federal income tax returns. 26 U.S.C. § 701.

The Code requires the IRS to conduct any audit of "partnership items" and to make any necessary adjustments to such items at the partnership level rather than on a partner-by-partner basis. *See* 26 U.S.C. § 6221 *et seq.* (commonly called the "TEFRA rules" because they were enacted as part of the Tax Equity and Fiscal Responsibility Act of 1982). Under this framework, the tax treatment of any partnership item must be determined at the partnership level, and all partners in the partnership will be bound by that treatment. *See* 26 U.S.C. §§ 6221-6222. The IRS must make any adjustments to partnership items in an FPAA. *See* 26 U.S.C. §§ 6223(a)(2), (d)(2), 6225(a).

A "partnership item" is "any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that . . . such item is more appropriately determined at the partnership level than at the partner level." 26 U.S.C. § 6231(a)(3). This statute reflects a two-part test: (1) the item must be required to be taken into account for the partnership's taxable year under any provision of subtitle A <u>and</u> (2) the Secretary must by regulation indicate that such item is more appropriately determined at the partnership level than at the partner level. *See Grigoraci v. Commissioner*, 84 T.C.M. 186, 189 (2002).

The Secretary implemented his authority to prescribe by regulation items that are more appropriately determined at the partnership level by promulgating Treas. Reg. § 301.6231(a)(3)-1, which contains a discrete list of "partnership items." Examples of partnership items included on this list are the partnership and each partner's share of: income, gain, loss, deduction or credit, nondeductible expenses, exempt income, and partnership liabilities. Treas. Reg. § 301.6231(a)(3)-1(a). The items on this list share a common trait: "the hallmark of a partnership

item is that it affects the distributive shares reported to the other partners." *Grigoraci*, 84 T.C.M. at 189.

In contrast, items that are personal to a partner are "nonpartnership items." 26 U.S.C. § 6231(a)(4) ("The term "nonpartnership item" means an item which is (or is treated as) not a partnership item."); *Estate of Quick v. Commissioner*, 110 T.C. 172, 187 (1998) ("[W]e think it ineluctable that the characterization of such losses as active or passive in the hands of petitioners is not a partnership item within the meaning of section 6231(a)(3) and the accompanying regulations. Determining whether or not petitioners materially participated in such activity for purposes of section 469 has no effect on any item that would affect all of the partners' respective returns, nor does it have any effect on any item on the Partnership's return or on the Partnership's books and records."); *Roberts v. Commissioner*, 94 T.C. 853, 861 (1990) (a partner's "at risk" amount is not a partnership item where it depends on an interpretation of a partner's agreements with third parties); *Crop Associates--1986 v. Commissioner*, 113 T.C. 198, 202 (1999) (a partner's potential claim against the government for equitable recoupment as a result of taxes collected is personal to the partner); *Gustin v. Commissioner*, T.C. Memo 2002-64 (a partner's basis in his partnership interest is not a partnership item).

The IRS' authority to make adjustments through an FPAA is constrained by 26 U.S.C. § 6221, which limits adjustments at the partnership-level to "partnership items" (and the applicability of any penalty that relates to an adjustment to a partnership item). Items that are not partnership items must be adjusted, if at all, through deficiency procedures to be applied at the partner level. *See* 26 U.S.C. §§ 6211-6213 (applicable to non-partnership items) and § 6230(a)(2)(A) (applicable to items that are "affected" by partnership items). As a corollary rule, the jurisdiction of a court to review an FPAA is limited to determining:

> [A]ll partnership items of the partnership for the partnership taxable year to which the notice of final partnership administrative adjustment relates, the proper allocation of such items among the partners, and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item.

26 U.S.C. § 6226(f).[4] The courts have routinely implemented this framework to invalidate FPAAs (or portions thereof) that purport to adjust items other than partnership items. *See Hang v. Commissioner,* 95 T.C. 74 (1990); *Grigoraci v. Commissioner*, 84 T.C.M. 186 (2002).

## III. The Transfer of the Sands' Partnership Interests in Group to the CRUT Partners Is Not a Partnership Item.

Whether the Sands' transfers of their partnership interests in Group to the CRUT partners were "economic shams," as is alleged in the FPAA, is not a partnership item that may be raised in an FPAA. Accordingly, the portion of defendant's FPAA that makes this adjustment is invalid as a matter of law, and the Court is without jurisdiction to consider the merits of defendant's sham argument as it pertains to the transfer of the partnership interests in Group.

The identity of a partner is not a partnership item because it fails both parts of the test in 26 U.S.C. § 6231(a)(3) (although failing either part is sufficient to preclude it from being a partnership item). The identity of a partner is not "required to be taken into account for the partnership's taxable year under any provision of subtitle A" because the identification requirement is set forth in 26 U.S.C. § 6031(a), which falls within subtitle F. *See Monti v. United States*, 223 F.3d 76, 82 (2d Cir. 2000) (holding that a partner's right to consistent settlement terms is not a partnership item because, in part, such right is contained in subtitle F and not subtitle A).[5]

---

[4] This Court's jurisdiction to review the FPAA that the IRS issued to Group is derived from 28 U.S.C. § 1508, which incorporates the limitations of 26 U.S.C. § 6226(f). *See* 28 U.S.C. § 1508 ("The Court of Federal Claims shall have jurisdiction to hear and to render judgment upon any petition under section 6226 or 6228(a) of the Internal Revenue Code of 1986.")

[5] 26 U.S.C. § 6031(a) provides, with appropriate emphasis added:

Furthermore, even if some provision of subtitle A had required Group to take the identity of its partners into account, the partners' identity would only be a partnership item if the Secretary had identified it by regulation as an item that is more appropriately determined at the partnership level than at the partner level. *Grigoraci*, 84 T.C.M. at 189. No item can be a "partnership item" unless the Secretary identifies it as such in a regulation. *See* 26 U.S.C. § 6231(a)(3). The Secretary (for good reason) has not identified the identity of a partner or, more specifically, the transfer of a partnership interest, as an item that is more appropriately determined at the partnership level than at the partner level. Accordingly, the Sands' transfers of their partnership interests to the CRUT partners are not partnership items and the IRS may not challenge the efficacy of such transfers in an FPAA. *See Monti*, 223 F.3d at 82 (holding that a partner's right to consistent settlement terms is not a partnership item because, in part, such right is not on the list contained in the regulation).

The only items which the Secretary has identified as being more appropriately determined at the partnership level are set out in Treas. Reg. § 301.6231(a)(3)-1:

> For purposes of subtitle F of the Internal Revenue Code of 1954, the following items which are required to be taken into account for the taxable year of a partnership under subtitle A of the Code are more appropriately determined at the partnership level than at the partner level and, therefore, are partnership items:
> **(1)** The partnership aggregate and each partner's share of each of the following:
> **(i)** Items of income, gain, loss, deduction, or credit of the partnership;
> **(ii)** Expenditures by the partnership not deductible in computing its taxable income (for example, charitable contributions);

---

Every partnership (as defined in section 761(a)) shall make a return for each taxable year, stating specifically the items of its gross income and the deductions allowable by subtitle A, and such other information for the purpose of carrying out the provisions of subtitle A as the Secretary may by forms and regulations prescribe, <u>and shall include in the return the names and addresses of the individuals who would be entitled to share in the taxable income if distributed and the amount of the distributive share of each individual.</u>

> **(iii)** Items of the partnership which may be tax preference items under section 57(a) for any partner;
>
> **(iv)** Income of the partnership exempt from tax;
>
> **(v)** Partnership liabilities (including determinations with respect to the amount of the liabilities, whether the liabilities are nonrecourse, and changes from the preceding taxable year); and
>
> **(vi)** Other amounts determinable at the partnership level with respect to partnership assets, investments, transactions and operations necessary to enable the partnership or the partners to determine--
>
> (A) The investment credit determined under section 46(a);
>
> (B) Recapture under section 47 of the investment credit;
>
> (C) Amounts at risk in any activity to which section 465 applies;
>
> (D) The depletion allowance under section 613A with respect to oil and gas wells; and
>
> (E) The application of section 751 (a) and (b);
>
> **(2)** Guaranteed payments;
>
> **(3)** Optional adjustments to the basis of partnership property pursuant to an election under section 754 (including necessary preliminary determinations, such as the determination of a transferee partner's basis in a partnership interest); and
>
> **(4)** Items relating to the following transactions, to the extent that a determination of such items can be made from determinations that the partnership is required to make with respect to an amount, the character of an amount, or the percentage interest of a partner in the partnership, for purposes of the partnership books and records or for purposes of furnishing information to a partner:
>
> **(i)** Contributions to the partnership;
>
> **(ii)** Distributions from the partnership; and
>
> **(iii)** Transactions to which section 707(a) applies (including the application of section 707(b)).

Treas. Reg. § 301.6231(a)(3)-1(a). The courts have recognized that this is a discrete list that is not to be expanded upon on a case-by-case basis. *See, e.g., Monti*, 223 F.3d at 82.

The transfer of a partnership interest is not included within the scope of defendant's regulation. Simply stated, the regulation does not indicate that the identity of a partner or the transfer of a partnership interest is an issue more appropriately determined at the partnership level and, therefore, it is not a partnership item.

Defendant did not include the transfer of a partnership interest on its list because, quite obviously, it is <u>not</u> an item that is more appropriately determined at the partnership level. As

stated above, "the hallmark of a partnership item is that it affects the distributive shares reported to the other partners." *Grigoraci v. Commissioner*, 84 T.C.M. at 189. "The critical element is that the partnership needs to make a determination with respect to a matter . . ." Treas. Reg. § 301.6231(a)(3)-1(c)(1) (emphasis added). Each of the Sands' transfers of their partnership interests to each of the CRUT partners is not an item more appropriately determined at the partnership level because the transfers held no tax consequence for Group or any other partners in Group: there is no impact on the partnership's income or loss or balance sheet; and none of the Sands' transfers had any tax effect on any other partner, as each of the Sands transferred 100% of their respective partnership interests. The only tax consequence of each transfer was to the member of the Sands family making that transfer and to the recipient CRUT. [6]

Another reason why the efficacy of the transfer is more appropriately determined at the partner level (i.e., the converse of the statutory test in 26 U.S.C. § 6231(a)(3)) is because only the transferor and transferee partner possess the information necessary to resolve the question of ownership. *See Olsen-Smith, Ltd. v. Commissioner*, 90 T.C.M. 64 (2005). Whether a partner validly transferred an interest in a partnership to a non-partner involves questions of law and

---

[6] The identity of a partner may be a partnership item to the extent that such determination would affect the allocation of partnership items to another partner. *See* 26 U.S.C. § 6226(f) (vesting jurisdiction in the courts to determine in partnership level proceedings "the proper allocation of [partnership items] among the partners."); *Grigoraci v. Commissioner*, 84 T.C.M. at 191; *Blonein v. Commissioner*, 118 T.C. 541, 550-52, n.6 (2002). *But see Olsen-Smith, Ltd. v. Commissioner*, 90 T.C.M. 64 (2005) (accepting defendant's position that the identity of a partner is not a partnership item despite the taxpayer's argument that it should be treated as a partnership item in that case because the outcome could have affected other partners' distributive shares of certain partnership items). In this case, each of the Sands transferred 100% of their partnership interests to entities that were not then partners in Group; thus, none of the transfers altered the percentage ownership of any other partner, such that this exception to the general rule does not apply. Thus, in *Katz v. Commissioner*, 335 F.3d 1121 (10th Cir. 2003), the Tenth Circuit reversed the decision of the Tax Court that, for purposes of the TEFRA rules, a partner in bankruptcy and the bankruptcy estate are "one and the same", and further determined that the amount of loss to be allocated between the two partners was a partnership item. The dissent would have held that the allocation was not a partnership item even under the unique circumstances presented in that case.

issues of fact that can only be addressed at the partner level.[7] The partnership will not have the information necessary to determine whether there was in fact a valid transfer because the transfer was personal to the transferor and transferee partners.

In fact, defendant aptly applies these very principles in its own regulation to make clear that the circumstances surrounding the transfer of a partnership interest is normally not a partnership item. In illustrating the concept of a partnership item the regulation states that "the amount that [a] partner paid to acquire [a] partnership interest from a transferor partner is not a partnership item if that transfer was not covered by an election under section 754." Treas. Reg. § 301.6231(a)(3)-1(c)(3) (emphasis added). That position is entirely logical because the circumstances surrounding the transfer of a partnership interest - including the price paid by the transferee – normally have nothing to do with partnership operations and have no effect on any other partner. The exception, as indicated in the illustration, is if the partnership makes "an election under section 754." If a partnership makes a "section 754 election" in connection with the transfer of a partnership interest, the partnership must adjust the basis that it has in its property in accordance with a formula contained in 26 U.S.C. § 743(b), and such adjustment

---

[7] For example, some of the facts that courts consider in determining the validity of a transfer of a partnership interest include: whether the entire partnership interest was transferred, whether the transferor retained control over the partnership interest, what the documents relating to the creation of the partnership interest provide, and the conduct of the parties in carrying out the provisions of any transfer or partnership agreement. *See Evans v. Commissioner*, 447 F.2d 547 (7th Cir. 1971) (finding that the corporation acquired the taxpayer's partnership interest when the taxpayer transferred his entire partnership interest in income and capital to the corporation); *Bennett v. Commissioner*, 21 T.C.M. 903 (1962). In determining the beneficial ownership of a partnership interest courts have also looked at: who has enjoyment of the economic benefits of the interest, what representations are made to outside parties, who reports partnership gains or losses from the partnership activities, and who has liability for partnership debts. *See Johnson v. U.S.*, 632 F. Supp. 172 (W.D.N.C. 1986) (determining that plaintiff was a partner based on her representations to the IRS, her contribution of services without pay to the partnership, and her deduction of half the partnership losses on her individual income tax returns for the years in question); *Jobusch v. Commissioner*, 68 T.C. 929 (1977) (determining that partnership interests properly belonged to the corporation that reported the value of the partnership interests in its income rather than the transferors to whom the interests were mistakenly issued originally); *Estate of Dorsey v. Commissioner*, 214 F.2d 294 (5th Cir. 1954) (determining that an individual's capital interest in the partnership, services she rendered, and her liability for partnership debts demonstrated that the individual was a partner in the partnership).

depends in part on the price that the transferee partner paid for his partnership interest. Thus, under the special circumstance where a partnership makes a section 754 election, the price paid by the transferee partner becomes a partnership item because the price paid holds a tax consequence to the partnership.[8] Group did not make a section 754 election when the Sands transferred their partnership interests, and the exception to the general rule – that the transfer of a partnership interest is not a partnership item - is inapplicable in this case.[9]

The case law also makes clear that the transfer of a partnership interest from a partner to a non-partner is not a partnership item that may be adjusted in an FPAA. In *Hang v. Commissioner*, 95 T.C. 74 (1990), an S Corporation filed its tax return listing David and Daniel Hang as sole and equal shareholders, and it allocated all of its income to those two individuals.[10] However, the IRS determined that their father, William Hang, was in fact the beneficial owner of the entity, and it issued a Final S Corporation Administrative Adjustment (an "FSAA") that purported to reallocate all of the entity's income from David and Daniel Hang to William Hang. The taxpayers successfully argued in the Tax Court that the reallocation of income from David and Daniel (i.e., the owners as reported on the entity return) to William was not an "S Corporation item" that could be adjusted in an FSAA.

The Tax Court understood that when the IRS asserts that a partnership's reported allocation of partnership items (such as capital gain) to a partner should be reallocated to someone who was not a partner of record, the question becomes which of those two potential

[8] Defendant's regulation makes this explicit by including on the list of partnership items "[o]ptional adjustments to the basis of partnership property pursuant to an election under section 754 (including necessary preliminary determinations, such as the determination of a transferee partner's basis in a partnership interest)." *See* Treas. Reg. § 301.6231(a)(3)-1(a)(3).
[9] The regulation specifies only that the optional adjustment to basis (which depends on the price paid by the transferee partner) becomes a partnership item when a section 754 election is in effect; it does not indicate that the efficacy of the transfer itself would become a partnership item.
[10] At the time, S Corporations were subject to the same set of procedural "TEFRA" rules that presently apply to partnerships like Group.

partners have "true and beneficial" ownership of the interest in the entity. *Id.* The answer to that question, however, can only be determined at the partner level (and hence it is not a partnership item) because it depends on factors that cannot be determined at the partnership level, such as the relative rights to economic benefits between the two candidates and the extent that each purported owner in fact has dominion and control over the ownership interest. *Id.* at 80-81. Under *Hang*, the IRS may not through an FPAA reallocate any gain that Group allegedly failed to report on the sale of the Constellation Brands stock from the CRUT partners to the Sands family members, for they were not partners of record when the stock was sold, as is clearly reflected on the Group return.

In *Grigoraci v. Commissioner*, 84 T.C.M. 186 (2002), the IRS issued FPAAs to a number of partnerships in which it determined that the true partners in the partnerships were not several S corporations but instead were the individual owners of the S corporations. In the Tax Court, defendant argued, as it argues here with respect to the CRUTs, that the S corporations were "shams" that should not be respected for tax purposes. The Tax Court squarely rejected defendant's invitation to consider this issue in a partnership-level proceeding:

> We disagree with respondent that a determination of whether the corporate partners in TWA and GTWP were shams is a partnership item under this section of the regulations. . . . [T]he determination of whether a partner is a corporation or an individual has no impact on the partnership level issues covered by the regulation. There is also no dispute about the amount of the allocations made to the partners, whether they be corporations or individuals. In fact, a determination that any of the partners is an individual - rather than a corporation - for Federal tax purposes does not require an adjustment to the allocable shares of the other partners as reported by the partnerships. Instead, it merely affects the Federal tax liability of the specific partner whose status was changed from a corporation to an individual. Items that merely affect the tax liability of a specific partner, but not the other partners, are not partnership items. Accordingly, determining the identity of the partners is not a partnership item under this regulation because it has no effect on either the partnership's aggregate or each partner's share of income, gain, loss, deductions, or credits of the partnership. . . .

> Respondent argues that a determination of the identity of the partners relates to contributions to the partnership and distributions from the partnership. However, the regulation classifies an item as a partnership item only "to the extent that a determination of the item can be made" by the partnership. In this case, the identity of the partners is not a partnership item because the partnerships cannot conclusively make such a determination. The partnership cannot determine whether its corporate partners should be respected for Federal tax purposes without consideration of information that is not available at the partnership level. For example, such a determination requires consideration of the manner in which the corporation's activities were conducted, whether it was properly formed, whether it has a valid purpose, and whether it actually conducts business. Moreover, most of the evidence relevant to determining whether the corporation or the individual is the partner centers on the acts, motives, and intentions of the individuals and not on actions taken by the partnership.
>
> Additionally, the determination of whether the corporation before us should be respected for Federal tax purposes has no impact on the partnerships, their books and records, or any other aspect of the partnerships. The determination also has no impact upon the amount or character of a distribution, or percentage of the other partners' interests in the partnerships.

*Id*. at 190-91 (citations omitted). The Court accordingly held that the issue was inappropriate for a partnership-level proceeding and declared itself without jurisdiction to further consider the issue.

Plaintiffs respectfully request that the Court hold that the Sands' transfer of their partnership interests is not a partnership item and to declare the portion of the Group FPAA that makes that adjustment to be invalid.

**IV. The Sands Have No Interest in The Group Proceeding And Should Be Dismissed.**

Since the IRS may not in an FPAA "disregard" any of the Sands' transfers of their partnership interests, it is clear that even if defendant's adjustments to the basis of the Constellation Brands stock sold by Group were correct, the gain on the sale of that stock would flow to the CRUTs who were then partners in Group and not to any members of the Sands family. Accordingly, the Sands have no interest in the outcome, and they respectfully request to be dismissed as parties. *Cf.* 26 U.S.C. § 6226(d) (indicating that a partner must have an interest

in the outcome to be treated as a party to a TEFRA proceeding). Plaintiffs respectfully request that the Court also enter an order substituting the Robert Sands Charitable Remainder Unitrust – 2001 as the filing partner in this case.

## V. The Court Should Order Defendant to Return the Deposit Made by Robert Sands.

To challenge an FPAA in this Court, the law requires at least one of the partners in the partnership to deposit the amount by which his tax would increase if the FPAA were correct. *See* 26 U.S.C. § 6226(e). Mr. Robert Sands paid this amount, computing it as though he were a partner in Group when it sold the Constellation stock. Since defendant may not treat Mr. Sands as though he were a partner in Group when the stock was sold, his tax liability would not increase even if the remaining portions of the FPAA were correct, and the Court should order defendant to return Mr. Sands' deposit.

Respectfully submitted,

/s Lewis S. Wiener
LEWIS S. WIENER
Sutherland, Asbill & Brennan
1275 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel.: (202) 383-0140
Fax: (202) 637-3593
Email: lewis.wiener@sablaw.com

Of Counsel:

N. Jerold Cohen
Thomas A. Cullinan
Joseph M. DePew
Julie P. Bowling
Sutherland Asbill & Brennan LLP
999 Peachtree Street, N.E.
Atlanta, Georgia 30309
(404) 853-8000
(404) 853-8806 (fax)

Kent L. Jones
Sutherland, Asbill & Brennan
1275 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel.: (202) 383-0732
Fax: (202) 637-3593
Attorney for Plaintiffs

March 29, 2007