IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-407 T
(into which have been consolidated Nos. 06-408 T,
06-409 T, 06-410 T, 06-411 T, 06-810 T, 06-811 T)
Judge Emily C. Hewitt
(E-Filed: May 1, 2007)

| | | |
|---|---|---|
| ALPHA I, L.P., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-407 T |
| BETA PARTNERS, L.L.C., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-408 T |
| R, R, M & C PARTNERS, L.L.C., BY AND THROUGH R, R, M & C GROUP, L.P., A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-409 T |

| | | |
|---|---|---|
| R, R, M & C GROUP, L.P., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-410 T |
| CWC PARTNERSHIP I, BY AND THROUGH TRUST FBO ZACHARY STERN U/A FIFTH G. ANDREW STERN AND MARILYN SANDS, TRUSTEES, A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-411 T |
| MICKEY MANAGEMENT, L.P., BY AND THROUGH MARILYN SANDS, A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-810 T |

M, L, R & R, BY AND THROUGH RICHARD E. SANDS, TAX MATTERS PARTNER, )
)
Plaintiff, )
)
v. ) 06-811 T
)
THE UNITED STATES, )
)
Defendant. )
)

---

**UNITED STATES' RESPONSE TO PLAINTIFFS' MOTION TO SUBSTITUTE PARTIES AND TO DISMISS CERTAIN CAUSES OF ACTION FOR LACK OF JURISDICTION AND SUPPORTING BRIEF**

---

**TABLE OF CONTENTS**


ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. Overview - Plaintiffs' Son of Boss Tax Shelters . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. RRMC Group and the CRUTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

A. Formation of the CRUTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

B. Partnership Returns and FPAAs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

1. The identity of RRMC Group's partners is a partnership item to be determined in this partnership level proceeding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

2. Alternatively, the identity of RRMC Group's partners is an affected item to be determined in a subsequent partner level proceeding. . . . . . . . . . . . . . . . . . . . . . . 11

3. Under 26 U.S.C. §6226(c)and (d) the Sands Heirs will remain parties to this proceeding even if the partner identity aspect of the FPAA is bifurcated for resolution in a subsequent partner-level suit . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

4. Robert's jurisdictional deposit may not be returned even if the Court substitutes one of the CRUTs as the notice partner prosecuting this suit. . . . . . . . . . . . . . . . . . . . 12

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

I. The identity of RRMC Group's partners is a partnership item to be determined in this partnership-level proceeding. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

II. If the identity of RRMC Group's partners is not a partnership item, it is an affected item to be determined in a subsequent partner level proceeding. . . . . . . . . . . . . 20

III. Under 26 U.S.C. §6226(c) and (d), the Sands Heirs will remain parties to this proceeding even if the partner identity aspect of the FPAA is bifurcated for resolution in a subsequent partner level suit.. . . . . . . . . . . . . . . . . . . . . . . . . . . 22

IV. Robert's jurisdictional deposit may not be returned even if the court substitutes one of the CRUTS as the notice partner prosecuting this suit. . . . . . . . . . . . . . . . . . . 23

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# TABLE OF AUTHORITIES

## CASES

*Andantech v. Commissioner*, 331 F.3d 972 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . 13

*Blonien v. Commissioner*, 118 T.C. 541 (2002) . . . . . . . . . . . . . . . . . . . . . . 15, 17,18,19

*Cemco v. United States*, 2007 WL. 951944 (N.D. Ill. March 27, 2007) . . . . . . . . . . . . 24

*COLM Producer, Inc.v. United States*, 460 F. Supp. 2d 713 (N.D. Tex 2006), appeal pending, No. 06-11422(5th Cir.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

*GAF Corp. v. Commissioner*, 114 T.C. 519 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Grigoraci v. Commissioner*, T.C. Memo 2002-202 . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Hang v. Commissioner*, 95 T.C. 74 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17,18,21

*J & J Fernandez Ventures, L.P. v. United States*, Consolidated Case Nos. 05-26T, 06-27T . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Katz v. Commissioner*, 335 F.3d 1121 (10th Cir. 2003) . . . . . . . . . . . . . . . . . . . 17, 18,19

*Keener, et al. v. United States*, _Fed. Cl. __, 2007WL 1180476 (April 18, 2007) . . . . 11

*Monti v. United States*, 223 F.3d 76 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Provost v. United States*, 269 U.S. 443 (1926) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*River City Ranches #1 Ltd. v. Commissioner*, 401 F.3d 1136 (2005) . . . . . . . . . . . . . . 13

*Salina Partnership v. Commissioner*, 2000 (RIA) T.C. Memo ¶2000-352 . . . . . . . . . . . 4

*Soward v. Commissioner*, T.C. Memo 2006-262 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Kornman*, Cause No. 3:05-CR-298-P (N.D. Tex. April 9, 2007) . . . . . 2

*W.E. Shipley, Annotation, Litigant's Participation on Merits, After Objection to Jurisdiction of Person Made Under Special Appearance or the Like Has Been Overruled, as Waiver of Objection*, 62 A.L.R.2d 937 (1958) . . . . . . . . . 18

*Weiner v. Commissioner*, 389 F.3d 152 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . 14,15

## FEDERAL STATUTES


26 U.S.C. § 706 ....................................................................................................13

26 U.S.C. § 707(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

26 U.S.C. § 707(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

26 U.S.C. § 708 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

26 U.S.C. § 723 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

26 U.S.C. §752.......................................................................................... ..... 2,6,8,14,23

26 U.S.C. §6212 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

26 U.S.C. §6226 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

26 U.S.C. §6226 (b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,23

26 U.S.C. §6226(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,17,22

26 U.S.C. §6226(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,17,22,23

26 U.S.C. §6226(e)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12,24

26 U.S.C. §6226(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

26 U.S.C. §6229(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

26 U.S.C. §6230(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

26 U.S.C. §6231(a)(2)(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16,17

26 U.S.C. §6231(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,13,17

26 U.S.C. §6231(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

26 U.S.C. §6231(a) (5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,22

26 U.S.C. §6233(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

26 U.S.C. §6501(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

28 U.S.C. §1508 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Title IV of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, §401-407, 96 Stat. 324, 648-71 . . . . 4

Treas. Reg. §301.6231(a)(3) . . . . 13

Treas. Reg. §301.6231(a)(3)-1 . . . . 14,15

Treas. Reg. §301.6231(a)(3)-1(b) . . . . 13

Treas. Reg. §301.6231(a)(3)-1(a)(1)(i) . . . . 10, 13,17

Treas. Reg. §301.6231(a)(3)-1(a)(1)(v) . . . . 13

Treas.Reg. §301.6231(a)(3)-1(a)(4)(i) . . . . 13

Treas.Reg. §301.6231(a)(3)-1(a)(4)(ii) . . . . 13,17

Treas.Reg. §301.6233(a)(3)-1(a) & (b) . . . . 13

Fed. R. Civ. Proc. 12(b) & (h) . . . . 18

**UNITED STATES' RESPONSE TO PLAINTIFFS' MOTION TO SUBSTITUTE PARTIES AND TO DISMISS CERTAIN CAUSES OF ACTION FOR LACK OF JURISDICTION AND SUPPORTING BRIEF**

On March 27, 2007, plaintiffs filed a Motion to Dismiss Certain Parties and Causes of Action for Lack of Jurisdiction. On March 29, 2007, the Court ordered plaintiffs to refile their pleading as a Motion to Substitute Parties in addition to, or in place of a motion to dismiss. Plaintiffs complied on March 29, 2007. Defendant submits this memorandum of law in opposition to plaintiffs' refiled Motion to Substitute Certain Parties and to Dismiss Certain Causes of Action for Lack of Jurisdiction (the "Motion").

**Issues Presented**

1. Whether the identity of the partners to the partnership is a partnership item that must be determined in a partnership-level proceeding?

2. Alternatively, if the identity of the partner to the partnership is not a partnership item, is it an "affected" item to be determined in a subsequent partner level proceeding?

3. If the identity of the partner to the partnership is an "affected" item to be determined in a subsequent partner level proceeding, can the Sands Heirs be dismissed from this proceeding?

4. If the Court substitutes the Robert Sands Charitable Remainder Unitrust-2001 ("Robert's CRUT") as the notice partner prosecuting the RRMC Group suit (Civil Action No. 06-410T), is Robert Sands entitled to have the jurisdictional deposit paid by him in that proceeding returned at this time?

## Factual Background

### I. Overview - Plaintiffs' Son of Boss Tax Shelters

In these consolidated tax cases, heirs of the late Marvin Sands are claiming more than $125 million in artificial tax benefits attributable to their participation in two tax shelters marketed to them by representatives of The Heritage Organization, L.L.C. ("Heritage").[1] These tax shelters are commonly classified as Son-of–BOSS abusive tax shelters.[2] In late March or early April 2001, Gary Kornman ("Kornman")[3], and representatives of Heritage, contacted Richard Sands ("Richard") proposing a strategy to "eliminate the total tax liability on capital

[1] Heritage sought Chapter 11 relief on May 17, 2004. (Bankruptcy Case No. 04-35574, N.D. Tex.). Several former Heritage clients have filed bankruptcy claims against Heritage, exceeding $100,000,000 in the aggregate, in connection with shelters purchased by them from Heritage. (Docket entry 1021 - Disclosure Statement filed by Trustee Dennis Faulkner).

[2] "BOSS" stands for Bond and Option Sales Strategy. The IRS notified taxpayers of the abusive nature of the transaction, making it a "listed transaction" in Notice 2000-44(2000-2 C.B. 255 (September 5, 2000)). The Son of BOSS shelter is part of a much larger tax shelter industry involving the mass marketing of tax shelter products to wealthy individuals and large corporations through a network of investment advisers, accounting firms, law firms, banks, and others. Among the other shelters sold and now in litigation are those referred to as "basis shifting", "CARDS" (custom adjustable rate structure), "contingent liability", COLI (corporate owned life insurance), "lease stripping", and "contingent installment notes." Like Son of BOSS, these shelters create a structure under which the participants acquire interests in entities and engage in transactions designed to facilitate arguments that the requirements of various Internal Revenue Code sections have been met and, when strung together, create very large tax benefits. The claimed benefits are out of proportion to the real economic consequences of what has occurred.

[3] In *COLM Producer, Inc.v. United States*, 460 F. Supp. 2d 713 (N.D. Tex 2006), *appeal pending*, No. 06-11422 (5th Cir.), Kornman was the principal in the entity (Ettman Family Trust) which unsuccessfully asserted that the obligation to cover a short sale was not a liability under 26 U.S.C. §752. (Plaintiff COLM Producer, Inc.'s Motion for Summary Judgment and Brief in Support Thereof, Docket Entry 29, filed March 29, 2006). In an unrelated case, Kornman recently entered a guilty plea to one felony count of making false statements to the Securities and Exchange Commission (United States v. Kornman, Cause No. 3:05-CR-298-P (N.D. Tex. April 9, 2007).

gain." Following a series of meetings, the Sands Heirs (collectively Richard, Robert Sands ("Robert"), Marilyn Sands ("Marilyn") and Andrew Stern ("Andrew"))[4], agreed to participate in two of Heritage's tax shelters.

As structured by Heritage, these Son of Boss tax shelters involved all seven of the partnerships that are the plaintiffs in these consolidated cases: CWC Partnership I ("CWC"), a general partnership, Mickey Management, L.P. ("Mickey"), M, L, R, & R ("MLRR"), R, R, M & C Group, L.P. ("RRMC Group"); R, R, M & C Partners, L.L.C. ("RRMC Partners"); Alpha I, L.P. ("Alpha"), and Beta Partners, L.L.C. ("Beta"). The first three, CWC, MLRR, and Mickey, were family investment partnerships. The other four, RRMC Group, RRMC Partners, Alpha, and Beta, were newly created at the direction of Heritage to participate in the Son of Boss tax shelters.[5] The Sands Heirs owned substantially all of the interests in these partnerships. RRMC Group, RRMC Partners and CWC are used in connection with the first shelter.[6]

At the heart of the tax shelters utilized by the Sands Heirs is the premise that a liability associated with short sale positions does not constitute a partnership liability when calculating partnership basis. A short sale is a sale of securities that are not owned by the seller. *Provost v. United States*, 269 U.S. 443, 450-51 (1926). Securities are borrowed (usually from a brokerage house) and then sold on the open market. The seller has the proceeds from the sale but is

---

[4] Andrew Stern is the widower of Laurie Sands Stern ("Laurie"). Andrew and Laurie's children (Abigail and Zachary Stern) are participants in the two shelters through trusts established for each of them by Laurie.

[5] Notwithstanding the use of terms such as "partnership," "partner," "contribution," "distribution," and others consistent with petitioners' characterization of events, defendant does not concede that the events occurred as so characterized under applicable local law or for federal income tax purposes.

[6] Similar adjustments were made with respect to the second shelter. In the second shelter (which is not at issue in plaintiffs' Motion to Dismiss), the Sands Heirs used short sale positions in another $44 million of U.S. Treasury Notes to artificially inflate the basis in 33,400 shares of Yahoo stock (with a cost basis of $599,530) and 67,525 shares of Corning stock (with a cost basis of $595,570.50). There, the Sands Heirs claimed a $23,230,702 basis in the Yahoo stock and a $22,261,642 basis in the Corning stock, resulting in vastly inflated losses upon the sale of the Yahoo and Corning stock at market prices. Alpha, Beta, CWC, Mickey and MLRR are used in connection with the second shelter.

obligated to replace the borrowed property in kind (referred to as "closing out" the short sale) at a future date. Here, while the short sale obligations were assumed by the partnerships, the obligations to replace the borrowed Treasuries were not treated as a partnership liability as required under §752.[7] The resulting overstatement of tax basis in their investments is the source of the Sands Heirs' claims to artificial tax benefits. This same subterfuge to avoid taxation has already been expressly rejected by two other courts. *COLM Producer, Inc. v. United States*, 460 F.Supp.2d 713 (N.D. Tex. 2006), *appeal pending*, No. 06-11422 (5th Cir.), and *Salina Partnership v. Commissioner*, 2000 (RIA) T.C. Memo ¶2000-352.

**II. RRMC Group and the CRUTS**

In the first of the two shelters (the one at issue in plaintiffs' Motion), the Sands Heirs sought to turn a $64 million gain from the sale of nearly $75 million in Constellation stock (with a basis of about $9 million) into nearly a $20 million loss. To accomplish this goal, the Sands participated in a tiered partnership arrangement through RRMC Group and RRMC Partners. They further obfuscated their tax avoidance scheme by parking the $75 million obtained from selling 2,002,002 shares of Constellation stock, for about five months, in their controlled Charitable Remainder Unitrusts (the "CRUTS").

After TEFRA[8] administrative proceedings, the IRS disallowed all of the artificial tax benefits and the IRS also asserted accuracy-related penalties under §6662 to the resulting underpayments of tax by the Sands Heirs.

---

[7] Except as otherwise indicated, section references in the text refer to sections of the Internal Revenue Code of 1986 (26 U.S.C.), as amended, or the regulations thereunder.

[8] The partnership provisions of Title IV of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, § 401-407, 96 Stat. 324, 648-71, as codified under Section 6221 *et seq*.

Although the facts of this shelter are very complicated, a basic timeline of relevant events is set forth below.[9]

On August 23, 2001, the Sands Heirs, including trusts established for Abigail and Zachary Stern (the "Children's Trusts")[10], established brokerage accounts with PaineWebber with initial margin deposits and then collectively sold short $85,649,245 (with coupon interest) in United States Treasury Notes. On August 27, 2001, the Children's Trusts assigned their portion of the short sales proceeds and the obligation to cover the short sales to CWC. The next day, the Sands Heirs and CWC contributed their margin accounts, the proceeds from the short sales and the obligations to close the short sales, to RRMC Group. At this time, they also collectively contributed to RRMC Group 2,000,000 shares of Constellation stock. An additional 2,002 shares in Constellation stock was contributed to RRMC Group by R,R,M & C Management Corporation ("RRMC Corp."), an entity created by Richard and Robert on August 23, 2001. RRMC Corp. asserts a 0.1% ownership interest in RRMC Group and was its general partner.

On August 31, 2001, RRMC Group contributed the Constellation stock and both the proceeds from the short sales and the obligations to cover the short sales to RRMC Partners. RRMC Group was RRMC Partners' limited partner and 99.7163% owner. Gloria Robinson ("Robinson") was RRMC Partners' general partner and .2837% owner.

---

[9] Many of the dates contained in the timeline are the dates set forth in plaintiffs' Complaints. In the Complaints, however, plaintiffs allege that the events occurred "on or about" the stated dates. As such, the date for an activity referenced may not be exact. To the extent that the exact dates are material, the United States anticipates ascertaining these exact dates through discovery.

[10] These are the trusts set up for Abigail and Zachary Stern by their deceased mother, Laurie Sands Stern, which were previously referenced in footnote 4.

On September 6, 2001, RRMC Partners closed the short sales with a net loss of $425,565. After the closing of the short sale, RRMC Group failed to reduce its basis in its RRMC Partners partnership interest as required by § 752, thereby resulting in an inflated basis in its RRMC Partners interest. This inflated basis was passed on to the Sands Heirs. A few days later, on September 10, 2001, RRMC Group purchased Robinson's interest in RRMC Partners, effecting a termination of RRMC Partners.

**A. Formation of the CRUTS**

For obvious reasons, plaintiffs fail to discuss the facts surrounding the CRUTS (charitable remainder unitrusts). A CRUT is a trust that provides a beneficiary annual payments for a fixed term. At the end of the term, a designated charity receives the remainder. Here, the four CRUTS were created and controlled by the Sands Heirs. The CRUTS had a twenty year term, prohibited self-dealing and purported to be irrevocable. However, the Sands Heirs used their control to prematurely terminate the CRUTS after only 5 months, with the Sands Heirs receiving the proceeds from the Constellation sale after buying out the charities' interests for a nominal amount.

The CRUTS were formed on September 21, 2001 by Richard, Robert, Marilyn and CWC. (A copy of the Robert Sands Charitable Remainder Unitrust 2001 is attached as Exhibit 1). Richard and Robert were trustees of the CRUTS. On the same day the CRUTS were formed, the Sands Heirs assigned their interests in RRMC Group (which held the Constellation stock) to their respective CRUTS.[11] (A copy of the Assignment and Assumption of Partnership Interest purporting to transfer Robert's interest in RRMC Group to the Robert Sands Charitable

[11] The IRS disputes these assignments and has disregarded them for federal tax purposes.

Remainder Unitrust 2001 is attached as Exhibit 2). About two weeks later, on October 1, 2001, RRMC Group sold the Constellation stock for $74,862,863. Instead of recognizing a $65,754,744 gain on the stock ($74,862,863 sales price minus the actual $9,108,199 basis respectively held in the stock), RRMC Group claimed a $19,894,501 loss ($9,108,199 actual basis in the stock plus the $85,649,245 basis attributed to their non-recognition of the liability associated with closing the short sales minus the $74,862,863 received from the sale of the Constellation stock).

On January 28, 2002, the Sands Heirs and CWC named the Sands Supporting Foundation as the charitable beneficiary of their respective CRUTS. (A copy of the Designation of Charity for the Robert Sands Charitable Remainder Unitrust 2001 is attached as Exhibit 3). One month later, on February 22, 2002, the Sands Heirs and CWC revoked their prior beneficiary designation and named the Educational and Health Support Fund ("EHS Fund") (created by Robert and Richard the same day) as the charitable beneficiary of their respective CRUTS. (A copy of the Irrevocable Designation of Charity for the Robert Sands Charitable Remainder Unitrust 2001 is attached as Exhibit 4). Five days later, on February 27, 2002, the $74,862,863 from the sale of the Constellation stock was distributed to Richard, Robert, Marilyn and CWC. (See K-1s attached to RRMC Group 2002 partnership return, attached as Exhibit 5). On the same day, the Sands Heirs and CWC executed an agreement to purchase EHS Fund's remainder interest in the CRUTS for an aggregate of approximately $2,000,000. The CRUTS, to the extent that they existed, were terminated.

**B. Partnership Returns and FPAAs**

In conjunction with its 2001 Form 1065 Partnership Return, RRMC Group issued K-1s to Robert, Richard, Marilyn, CWC, RRMC Corp. and the CRUTS. (A copy of RRMC Group's 2001 partnership return is attached as Exhibit 6). Rather than a reporting a gain on the sale of the Constellation stock to the Sands Heirs, the K-1s reported a loss to the CRUTS. After audit, the IRS issued Final Partnership Administrative Adjustments ("FPAAs") to the respective partnerships involved in the first shelter disallowing the partnerships' attempt to artificially inflate the basis of the Constellation stock by disregarding the obligation to cover the short sales as a liability under §752. The FPAAs also disregarded, as shams, the transfers of the RRMC Group partnership interests to the CRUTS.

On May 18, 2006, RRMC Group and RRMC Partners each filed a "Complaint For Readjustment of Partnership Items Under Code Section 6226." (Case Nos. 06-410T and 06-409T). In each Complaint, the parties assert that:

(a) Robert, Richard, Marilyn and CWC were the initial partners of RRMC Group. (RRMC Group Complaint, ¶2; RRMC Partner Complaint, ¶5);

(b) RRMC Group is a "notice partner" of RRMC Partners. (RRMC Partner Complaint, ¶15);

(c) Robert is a "notice partner" of RRMC Group. (RRMC Group Complaint, ¶15);

(d) None of the partner's partnership items with respect to RRMC Group have become non-partnership items by reason of any event described in Code Section 6231(b). (RRMC Partners Complaint, ¶16);

(e) None of RRMC Group's partnership items with respect to Robert have become non-partnership items by reason of any event described in Code Section 6231(b). (RRMC Group Complaint, ¶16);

(f) The partners of RRMC Group and RRMC Group, that would have liability as a result of these partnerships' FPAAs, are Marilyn, Robert, Richard and the partners in CWC. (RRMC Partner Complaint, ¶14; RRMC Group Complaint, ¶13);

(g) The Court has jurisdiction pursuant to 28 U.S.C. §1508 and 26 U.S.C. §6226(b). (RRMC Group Complaint, ¶9; RRMC Partner Complaint, ¶10).

In connection with filing the complaints, on May 17, 2006, Robert sent to the IRS a check for $3,398,425 as a jurisdictional deposit to cover all taxes due, as they relate to him, with respect to the FPAAs issued to RRMC Group for 2001, RRMC Partners for 2001, CWC for 2001, Beta for 2001 and Alpha for 2001 and 2002. A copy of the transmittal letter is attached to the RRMC Group Complaint.

In their Motion, the Sands Heirs assert that this Court lacks jurisdiction to decide whether the IRS properly disregarded the CRUTS when it reallocated the reported distributive share of income of the CRUTS to the Sands Heirs as the true partners in interest. At the same time, they ask the Court to rule that they have no interest in the outcome of the RRMC Group litigation. Essentially, plaintiffs are seeking a summary determination that they have no federal tax liability on the substantial gain that the Sands Heirs sought to shelter from taxation through the manufacturing of artificial tax losses to offset that gain.

## SUMMARY OF ARGUMENT

**1. The identity of RRMC Group's partners is a partnership item to be determined in this partnership-level proceeding.**

TEFRA partnership adjustments fall into the following three categories:

(1) **Partnership Items** - An item is a partnership item to the extent that the item is required to be taken into account for the partnership's taxable year and the regulations determine that the tax treatment of the item is more appropriately determined at the partnership-level. 26 U.S.C. § 6231(a)(3). The IRS issues an FPAA with respect to these partnership items and the partnership item proceeding resolves the partnership item adjustments.

(2) **Affected Items** - Non-partnership items which are affected by adjustments to partnership items are called "affected items." 26 U.S.C. § 6231(a)(5). Affected items are further categorized into items (i) *substantively* related to items reflected on the partnership return; and (ii) items completely unrelated to the partnership items except on a *computational* basis. Once the partnership items are determined in a partnership-level proceeding, the IRS will issue an affected item notice of deficiency to the partners and the affected items are resolved in a separate partner-level proceeding.

(3) **Non-Partnership Items** - This is defined as any item which is not a partnership item. 26 U.S.C. § 6231(a)(4). Non-partnership items may only be assessed by applying the deficiency procedures of 26 U.S.C. § 6212.

Here, the identity of RRMC Group's partners is a partnership item that must be ascertained in this partnership-level proceeding. RRMC Group's K-1s for year 2001 misstate and fail to properly allocate the gain associated with the sale of the Constellation stock to the Sands Heirs. First, they reflect the transaction as a loss rather than as a substantial gain. Second, if the IRS is correct that the CRUT transactions must be disregarded, RRMC Group will need to reallocate the gain on the stock to the Sands Heirs rather than to the CRUTS. The proper allocation of the partnership's income, gain, loss, deduction or credit is a partnership item. (Treas. Reg. §301.6231(a)(3)-1(a)(1)(i).) Furthermore, to properly allocate these items, the identity of RRMC Group's partners must first be established.

**2. Alternatively, the identity of RRMC Group's partners is an affected item to be determined in a subsequent partner level proceeding.**

Were the Court to conclude that the identity of RRMC Group's partners was not a partnership-level determination, the Court should expressly and affirmatively conclude that it is a partner level or "affected" determination to be made in a subsequent partner level proceeding. By concluding that the identity issue is a partner level (or affected) item rather than a partnership-level determination, the Court must be cognizant that it is bifurcating plaintiffs' challenge to the RRMC Group FPAA.[12]

**3. Under 26 U.S.C. §6226(c) and (d) the Sands Heirs will remain parties to this proceeding even if the partner identity aspect of the FPAA is bifurcated for resolution in a subsequent partner level suit.**

If, in fact, the Robert Sands Charitable Remainder Unitrust - 2001 was a partner of RRMC Group in 2001, and if that entity has an interest in the adjustments made by the RRMC Group FPAA, it is already a party to this suit under 26 U.S.C. §6226(c) and (d). For the very same reason, the Sands Heirs, including Robert, are also parties.

The Sands Heirs, including Robert, are statutory parties to the RRMC Group proceeding. The Sands Heirs admit that they were partners of RRMC Group at least through September 21, 2001. Furthermore, it is abundantly clear that the ultimate tax liability at stake in these consolidated proceedings is that of the Sands Heirs. It is the Sands Heirs, through RRMC Partners, who claimed the artificial basis resulting from the short sale transactions. It is also the Sands Heirs who received the proceeds from the sale of the Constellation stock. It will be the Sands Heirs who will ultimately be taxed on the gains realized from that sale. As such they have

[12] The dichotomy between partnership-level proceedings and partner, or affected, item proceedings was recently addressed in *Keener, et al. v. United States*, __ Fed. Cl. __, 2007 WL 1180476 (April 18, 2007).

a direct interest in the outcome of all of the consolidated partnership proceedings, including RRMC Group's.

It is pointless to dismiss the Sands Heirs from the RRMC Group proceeding. Even if the the Sands Heirs wish to concede the adjustments made by the RRMC Group FPAA, they would still remain parties to the remaining consolidated proceedings by virtue of their interests in the other FPAAs being contested in these consolidated proceedings. Additionally, to the extent that Robert's CRUT was ever a viable entity, that viability ceased when Robert acquired the CRUT'S remainder interest. Furthermore, since Robert and Richard were the CRUTs' trustees, and the Sands Heirs were the successors to the CRUTS, the Sands Heirs continue to have an interest even if the Court believes that the transitory CRUTS were other than the shams the IRS asserts them to be.

**4. Robert's jurisdictional deposit may not be returned even if the Court substitutes one of the CRUTs as the notice partner prosecuting this suit.**

Plaintiffs ask, in part, that Robert's jurisdictional deposit made in the RRMC Group proceeding be returned should the Court conclude that the Sands Heirs have no interest in the adjustments made in the RRMC Group FPAA. First, the deposit at issue was made to cover Robert's potential tax liability for multiple FPAAs covering multiple years. Robert remains a party to these other controversies even if he has no interest in the RRMC Group FPAA. Furthermore, Robert would not be entitled to have the deposit returned at this stage of the litigation even if Robert's CRUT is substituted in place of Robert as the "notice" partner prosecuting this suit.

26 U.S.C. §6226(e)(1) imposes the jurisdictional deposit requirement on "the partner filing the petition." Here, the "partner" filing the Complaint, and thus preserving the rights of all of the partnerships' other partners, was Robert. The Code does not provide for that deposit to be returned simply because Robert has now decided that he wants to redesignate a different "named" partner to carry on the suit.

## ARGUMENT

Plaintiffs have filed a partnership-level proceeding challenging the administrative adjustments made to RRMC Group's 2001 partnership tax return. The TEFRA partnership audit and litigation provisions apply to the items of an entity for which a partnership return was filed for the taxable year. 26 U.S.C. §6233(b); Treas. Reg. §301.6233-1(a) and (b); *Andantech v. Commissioner*, 331 F.3d 972 (D.C. Cir. 2003); *see also*, *River City Ranches #1 Ltd. v. Commissioner*, 401 F.3d 1136, 1143-44 (2005).

### I. The identity of RRMC Group's partners is a partnership item to be determined in this partnership-level proceeding.

This Court's jurisdiction in partnership proceedings is generally limited to "partnership items." 26 U.S.C. § 6226(f). Section 6231(a)(3) defines "partnership item" as –

> [A]ny item required to be taken into account for the partnership's taxable year under any provision of subtitle A [of the Internal Revenue Code] to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level.

Treasury Regulations adopted under § 6231(a)(3) define the term "partnership item" to include the partnership aggregate and each partner's share of income, gain, loss, deduction, or credit of the partnership, and partnership liabilities. Treas. Reg. § 301.6231(a)(3)-1(a)(1)(i) & (v).

Contributions to the partnership and distributions from the partnership are also partnership items. *See id*. § 301.6231(a)(3)-1(a)(4)(i) & (ii). While not specifically addressed by the regulations, the regulatory scheme presupposes that the identity of the partners is a partnership item, as the partnership must make legal and factual determinations concerning the identity and percentage interests of the partners in order to properly allocate items of income among the partners and determine items related to distributions.[13] *See also*, Treas. Reg. § 301.6231(a)(3)-1(b)(providing that the term partnership item includes the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc.).

Here, the FPAA issued to RRMC Group and RRMC Partners for the 2001 tax year readjusted partnership liabilities pursuant to §752, resulting in a decrease in the partners' basis in his/her partnership interest, the elimination of each partner's share in the previously reported partnership loss and a substantial increase in each partner's interest in the capital gain generated by the sale of the Constellation stock. The FPAA also disallowed the inflated basis on the grounds that the transactions lacked economic substance. The allocation of each partner's share

---

[13] For example: (1) a partnership must know the identity of its partners for purposes of determining its taxable year. 26 U.S.C. § 706; (2) a partnership's basis and holding period in its assets will depend on whether a partner contributed the assets and on whether the partner recognized any gain on the contribution pursuant to 26 U.S.C. § 723; (3) the character of gain or loss on the sale of unrealized receivables will depend on whether the assets were unrealized receivables in the contributing partner's hands; (4) the partnership must scrutinize every transaction it undertakes to determine if a partner was on the other side of the transaction so that the partnership knows how to account for the transaction under 26 U.S.C. § 707(a) and, in the case of sales or exchanges, whether the loss limitations of 26 U.S.C. § 707(b) will apply; and (5) the partnership must know the partners (and their interests in capital and profits) in order to track whether a sale or exchange of more than 50% has occurred so as to trigger termination under 26 U.S.C. § 708. There are many more examples that could be found where the partnership must make an initial determination as to the identity of the partners in order to account for partnership income, gain, loss deductions etc. In short, the partnership must account for the identity of its partners for reasons that will affect the character, timing, and amount of income gain, loss, deductions etc. for many reasons even when it does not affect the allocation of items among the partners. Since a partner's identity underlies these determinations of partnership items, a partner's identity and percentage interest is also a partnership item.

of income, gain, loss, deduction or credit of the partnership are all partnership items. Treas. Reg. §301.6231(a)(3)-1. Furthermore, because the issue of whether the transfers of the RRMC Group partnership interests by the Sands Heirs were shams will determine the partnership's allocation of these items, it is also a matter appropriately determined at the partnership-level.

Plaintiffs cite the Second Circuit's decision in *Monti v. United States*, 223 F.3d 76, 82 (2d Cir. 2000), as holding that an item not listed in Treas. Reg. §301.6231(a)(3)-1 cannot be a partnership item. Plaintiffs are wrong. *Monti* does not broadly hold that the failure of the regulation to mention a particular item requires the finding that the item is not a partnership item. As found by the court in *Weiner v. Commissioner*, 389 F.3d 152, 157 (5th Cir. 2004), some things so fundamentally affect the partnership as a whole, such as limitations, they are implicitly included in the Regulations. Likewise, it is hard to conceive of something more fundamental to a partnership than the identity of its partners. The *Weiner* court also noted that the statute of limitations issue was more appropriately determined at the partnership level because it "affects all partners alike." 389 F.3d at 158. Similarly, in the present case, of course, all partners are facing the same issue, so a decision in this case will affect all partners alike.

This Court has to be able to determine the identity of RRMC Group's partners in order to determine the proper allocation of taxable income among those partners. *Blonien v. Commissioner*, 118 T.C. 541 (2002). The correctness of the IRS's disregard of the transfers of RRMC Group to the CRUTS is pivotal to determining who the partners of RRMC Group were at the time the Constellation stock was sold. Furthermore, the identity of RRMC Group's partners is required for RRMC Group to determine each partners' respective interests and allocations for 2001. As such it is a partnership item under Treas. Reg. §301.6231(a)(3)-1.

Both the determination as to whether the CRUTS are partners and whether the transfers to the CRUTS should be recognized for federal tax purposes are determinations to be made based on facts not yet developed in this proceeding. The parties have not stipulated to the material facts relevant to this inquiry and these facts will need to be ascertained through discovery. However, even if plaintiffs are correct, their hypothesis begs the question as to how the gain from the sale of the Constellation stock should be allocated. This allocation of gain is central to both the RRMC Group FPAA and to plaintiffs' challenge of the FPAA.

Plaintiffs' assertion that a CRUT is not a taxable entity completely misses the mark. Plaintiffs' apparent belief that the gain from the sale of the Constellation stock should escape taxation simply because RRMC Group "parked" the stock and then the sales proceeds from the stock in a CRUT for five months, defies logic and lacks legal support. As previously noted, a beneficiary was not even named for these CRUTS for four months. One month later that beneficiary was changed and less than a week after this change, the proceeds from the CRUTS were distributed to the Sands Heirs.

Ultimately at issue in this proceeding is whether a gain is recognized on the sale of the Constellation stock and how that gain should be allocated among RRMC Group's partners. The challenged FPAA, in part, makes the following adjustments to RRMC Group's 2001 partnership return.

1. It reduces RRMC Group's basis in the shares of the Constellation stock sold on October 1, 2001, from $94,757,364 to $9,108,119, requiring RRMC Group to recognize the decrease in its basis under §752 due to RRMC Group's relief from its obligation to close the short sales; and,

2. It disregards the purported transfers by RRMC Group's limited partners of their interest in RRMC Group to the CRUTS for federal tax purposes concluding that the Sands Heirs (the initial partners of RRMC Group) will be treated for federal tax purposes as if they directly held the assets of RRMC Group, including the short sale positions.

Clearly, whether the purported transfers of the partnership interests to the CRUTS should be disregarded will impact the identity of the partners and it could also ultimately impact the allocation of the gain on the sale of the Constellation stock among RRMC Group's partners.

For purposes of allocating partnership income to a partner in a TEFRA proceeding under §6231(a)(2)(B), the term "partner" includes "any other person whose income tax liability under Subtitle A is determined in whole or in part by taking into account directly or indirectly partnership items of the partnership." In this case, the United States determined that the CRUTS' distributive share of RRMC Group's income was properly allocated to the Sands Heirs. Thus, the government's allocation of income to the Sands Heirs made them partners for purposes of §6231(a)(2)(B). As such, the Sands Heirs are entitled to contest the allocation. *See* §§6226(c) and (d); *see also, Katz v. Commissioner*, 335 F.3d 1121, 1128-29 (10th Cir. 2003)(holding that a partnership allocation to a non-partner is a partnership item); *Blonien v. Commissioner*, 118 T.C. 541, 551-557 (2002)(holding that the determination of whether an individual is or is not a partner is a partnership-level determination to the extent that it affects the allocation of partnership-level items to other partners). Moreover, the regulatory framework that underlies the §6231(a)(3) definition of partnership item supports the United States' position that the determination of the identity of a partnership's partners for purposes of allocating shares of the partnership's income

is a partnership item subject to partnership-level proceedings. Treas. Reg. §301.6231(a)(3)-1(a)(1)(i) provides that the partnership's aggregate and each partner's share of income, gain, loss, deduction or credit of the partnership are partnership items. Similarly, Treas. Reg. §301.6231(a)(3)-1(a)(4)(ii) provides that items related to partnership distributions are partnership items, to the extent that the determination of such items can be made from determinations that the partnership is required to make with respect to an amount, the character of an amount, or the percentage interest of a partner in the partnership. Plaintiffs rely on *Hang v. Commissioner*, 95 T.C. 74 (1990) for the proposition that the substitution of an unnamed partner for a record partner is more appropriately made at the partner level. The United States respectfully disagrees with the Tax Court's decision in *Hang* and continues to assert that the issue is more appropriately decided at the partnership-level based on the statutory and regulatory framework and other case law. *Hang* is distinguishable from this case because *Hang* involved due process concerns not present here. In *Hang*, the alleged beneficial shareholder did not have a right to participate in the proceeding unless he conceded the issue of ownership.[14] 95 T.C. at 81-82. Here, the parties will have a full opportunity to argue the issue at the partnership level. Additionally, unlike the "real" shareholders in *Hang*, the Sands Heirs were not "strangers" to the partnership. They acknowledge that they were partners during the year at issue. Moreover, no suggestion has been made that the partnership does not have full access to all of the facts surrounding the CRUTS in this tax scheme.

---

[14] We believe the underlying premise for this conclusion that a partner could not participate in a TEFRA proceeding without first conceding his partner status was incorrect in any event. *See* Fed. R. Civ. Proc. 12(b) and (h); *see also, W.E. Shipley, Annotation, Litigant's Participation on Merits, After Objection to Jurisdiction of Person Made Under Special Appearance or the Like Has Been Overruled, as Waiver of Objection*, 62 A.L.R.2d 937 (1958).

In a more recent case, the Tax Court has held that the identity of the partners of a partnership is a partnership item. Specifically, the Tax Court has held that the identity of the partners is a partnership item that must be determined in a partnership proceeding where the determination can affect the allocation of taxable income. *Blonien v. Commissioner*, 118 T.C. 541 (2002).

Also consistent with the United States' position, the Tenth Circuit Court of Appeals held that the determination of whether a non-record owner was a partner is a partnership item. *Katz v. Commissioner*, 335 F. 3d 1121 (10th Cir. 2003), *rev'g*, 116 T.C. 5 (2001). In *Katz*, a case addressing the allocation of partnership losses between a party of record, Katz, and Katz' bankruptcy estate, the bankruptcy estate was neither a record partner nor a party to the partnership agreement. Nonetheless, the Tenth Circuit held that the extent of the allocations made to the estate in lieu of Katz was a partnership item, more appropriately determined in the partnership-level proceeding. In so holding, the court noted that:

> to say that the *allocation* is not a partnership item is to confuse the process with the result. The statute requires partnership-level proceedings if a partnership item is being challenged. The partnership item is, of course, the result of the allocation of the partnership's income, losses, etc; but the allocation process itself is not a partnership item. The requirement of a partnership-level proceeding is triggered regardless of how the partnership item was calculated. There may be sound policy reasons for not requiring a full-blown partnership-level proceeding when an alleged error in one partner's return affects only one other taxpayer rather than all the partners. But for now the law is otherwise.

335 F.3d at 1129.

As in *Blonien* and *Katz*, the identity of the RRMC Group's partners is critical to the partnership's allocation of loss and gain. As such, it must be made now through this partnership proceeding rather than later through multiple partner level proceedings.

The Son of BOSS scheme in this case was intended, by design, to involve a complex series of transactions. The momentary creation of the CRUTS was merely part of the ruse. It is inexorably tied to the execution of the tax shelter scheme. To "peel" this narrow part of the Son of BOSS transaction away from partnership level proceeding and to push it into a partner-level proceeding makes no sense from an administrative point of view. In fact, to do so would result in a tremendous waste of resources.

This Court, in disposing of this case, may conduct an extensive trial to examine the economic substance of the transactions. If plaintiffs are correct, then four, or perhaps five, additional trials would be required at the partner level where the facts presented would be nearly identical. Although the individual heirs to Marvin Sands' fortune are certainly able to afford multiple trials, the burden that the plaintiffs would like to place on other courts is unnecessary. Trials could possibly be held in the Tax Court, in the district courts, and in the Court of Federal Claims on virtually identical facts, and it would be possible that these four or five decisions might conflict. These were precisely the concerns that Congress had when it created a forum for a unified partnership-level proceedings in TEFRA.

**II. If the identity of RRMC Group's partners is not a partnership item, it is an affected item to be determined in a subsequent partner level proceeding.**

If the Court finds that the identity of RRMC Group's partners is not a partnership item, then this determination nonetheless constitutes an affected item. This is an important point upon which plaintiffs' Motion is noticeably silent. It is possible that plaintiffs' failure to address this issue stems from their hope that the Court will enter a ruling which will enable them to later argue that the identity of the partnership's partners is a non-partnership item. To preclude any

confusion should this matter be reserved for another day, it is important that this Court expressly rule that the matter is either a partnership item or, alternatively, that the Court lacks jurisdiction to so rule because the item is instead a partner level dispute.

Affected items are appropriately subject to adjustment following the conclusion of the partnership proceedings to which they relate. *GAF Corp. v. Commissioner*, 114 T.C. 519 (2000). Here, the partnership proceedings involving RRMC Group and RRMC Partners are still pending and, accordingly, the issuance of any affected item notice of deficiency to plaintiffs must await the conclusion of those proceedings. *See also*, *Soward v. Commissioner*, T.C. Memo. 2006-262.

The United States submits that the resolution of the partner identity issue included in the FPAAs is a partnership level issue that needs to be determined in this partnership proceeding. However, if the Court concludes otherwise, the Court should affirmatively hold that its decision is based on an express determination that the issue is an affected item to be addressed in a subsequent partner level proceeding.

While the *Hang* case does not address whether or not such a determination was an affected item, it is clear from *Grigoraci v. Commissioner*, T.C. Memo. 2002-202, that the determination, if not a partnership item, is an affected item.[15]

*Grigoraci* presented a consolidated case involving two partnerships and three individuals, Grigoraci, Trainer, and Wright. Each of the individuals had set up S-Corporations that claimed to be partners in two partnerships. As in this case, respondent asserted that the individuals were

---

[15] The Tax Court in *Grigoraci*, before reaching the "affected item" issue, followed *Katz* and *Hang* in concluding that the identity of a partner is not a partnership item. We note that the Tax Court's *Katz* decision was reversed on appeal to the Tenth Circuit. The instant case, for the reasons described in Part I, would be distinguished from *Grigoraci* on the same grounds that it is distinguishable from Hang.

the true partners of the partnerships and that the S Corporation partners of record should not be treated as actual partners. The partnerships' tax matters partners and notice partners were issued FPAAs determining that the individuals were the true partners. Grigoraci was issued a notice of deficiency determining that he was a true partner in one of the partnerships and finding him liable for self employment tax due, in large part, to the reallocation of partnership income. Relying on its opinions in *Hang* and *Katz*, the Court dismissed the two partnership proceedings.

The Court then addressed whether the determination that the Grigoracis were liable for self-employment tax on his distributive share from the partnership was an affected item. The Court held that such a determination was an affected item and dismissed the portion of the notice of deficiency relating to the self-employment tax. The Court reasoned that:

> Pursuant to §6230(a)(2), the Commissioner will issue an affected items notice of deficiency to the taxpayer when a deficiency is attributable to an affected item that requires a "partner level determination." **(footnote omitted)** An affected item is defined as any item "affected by a partnership item." Sec. 6231(a)(5). The Grigoracis' liability for self-employment tax on the distributive share from GTWP **[the partnership]** under section 1402(a) requires a determination that Mr. Grigoraci was the true and actual partner in GTWP – a partner level determination. Accordingly, any deficiency attributable to self-employment tax on the distributive share from GTWP requires respondent to issue an affected items notice of deficiency. The deficiency determined by respondent is only partially attributable to self-employment tax on the distributive share from GTWP.

The Court went on to dismiss the notice of deficiency as to the partnership income because the affected items notice of deficiency had been issued prior to the conclusion of the partnership proceeding.

Here, assuming the Court concludes that the identity issue is a partner level rather than a partnership-level determination, the Court would be bifurcating the issues raised in the FPAA, and the Court's ruling should so state. In such case, a determination as to whether the

partnership's transfer to the CRUTS should be disregarded will simply await a review in a subsequent partner level proceeding brought after the close of these partnership-level proceedings.

**III. Under 26 U.S.C. §6226(c) and (d) the Sands Heirs will remain parties to this proceeding even if the partner identity aspect of the FPAA is bifurcated for resolution in a subsequent partner level suit.**

26 U.S.C.§6226(c) makes all partners to a partnership during the taxable year at issue automatically parties to a suit challenging an FPAA for that year. Here, that year is 2001. RRMC Group's Complaint alleges that Robert was a partner in RRMC Group at least through September 21, 2001. Furthermore, if the CRUTS are disregarded, Robert will remain a partner of RRMC Group through the end of 2001.[16] Assuming the existence of Robert's CRUT as a partner in RRMC Group during 2001, it is also already a party to this proceeding. This fact, assuming its veracity, does not change the fact that Robert is, and will remain, a party to this TEFRA proceeding. Here, under §6226(b), Robert initiated the RRMC Group litigation on behalf of the partnership's partners. He alleged standing and was, in fact, issued an FPAA providing him with notice of the proposed 2001 partnership adjustments. As a notice partner, Robert had the right to file a petition for readjustment in the Tax Court, a district court or in the Claims Court. He chose to litigate in this Court.

Clearly the Sands Heirs have an interest in the outcome of this proceeding. Plaintiffs candidly admit (on page 4 of their motion) that if the IRS is correct in its §752 adjustment, RRMC Group will recognize a substantial gain, rather than a loss, on the sale of the Constellation stock. Additionally, the resolution of the §752 adjustment directly impacts the

---

[16] Naturally his relationship as a partner of RRMC Group would also continue into 2002.

Sands Heirs' basis in their RRMC Group partnership interest at the time the short positions were closed when they were undeniably partners. As such, the Sands Heirs, including Robert, have a substantial interest in the outcome of the case under 26 U.S.C. §6226(d), regardless of whether the identity of RRMC Group's partners is a "partnership item" or an "affected item."

Finally, it is pointless to dismiss Robert and the Sands Heirs from the RRMC Group proceeding. Even if the Sands Heirs wish to concede the adjustments made by the RRMC Group FPAA, they would still remain parties to the remaining consolidated proceedings by virtue of their interests in the other FPAAs being contested in those proceedings.

**IV. Robert's jurisdictional deposit may not be returned even if the Court substitutes one of the CRUTS as the notice partner prosecuting this suit.**

Regardless of whether Robert goes forward as the "named" notice partner prosecuting the RRMC Group suit, Robert is not entitled to have the jurisdictional deposit returned to him at this time. 26 U.S.C. §6226(e)(1) imposes the jurisdictional deposit requirement on "the partner filing the petition." Here, the "partner" filing the Complaint, and thus preserving the rights of all of the partnerships' other partners, was Robert. The Code does not provide for that deposit to be returned simply because Robert has now decided that he wants to redesignate a different "named" partner to carry on the suit. Furthermore, the deposit at issue was made to cover Robert's potential tax liability for multiple FPAAs covering multiple years. Robert remains a party to these other controversies even if he has no interest in the RRMC Group FPAA.

**<u>CONCLUSION</u>**

We believe the technical arguments presented in the Sands Heirs' motion are part of a ploy to defeat their tax liability by setting up a limitations defense. The Courts have recently

rejected these types of technical arguments in other Son of BOSS cases. In *Cemco v. United States*, 2007 WL 951944 (N.D. Ill. March 27, 2007), the Court rejected the argument that the FPAA was issued to the wrong partnership in a tiered partnership arrangement and held that the FPAA was effective if it was issued to either of the partnerships. Similarly, in *J & J Fernandez Ventures, L.P. v. United States*, Consolidated Case Nos. 05-26T, 06-27T and 06-636T (C.F.C. March 3, 2007), Judge Baskir of the Court of Federal Claims rejected the argument that the Service must issue an FPAA in 1999 the year in which the artificial basis inflation was created and held that the FPAA issued in 2000, when the artificial losses were used by the partners, was effective to support the assessment of the taxes in issue.

If the IRS had not issued FPAAs to the Sands heirs, they would undoubtedly assert that the IRS had failed to issue proper notices of final partnership administrative adjustments before expiration of the three year period of §6229(a); and therefore, the regular three year period of §6501(a) for assessing tax against plaintiffs had not been extended for partnership items. But, the IRS issued the FPAAs, and the Sands Heirs, as notice partners and as the real taxpayers, filed this proceeding. Certainly, one would not expect the CRUTS to file the petition for readjustment of partnership items, because as the Sands Heirs point out, the CRUTS do not pay tax. The Sands Heirs are statutory parties to this proceeding and they are the taxpayers who are affected by the IRS determinations in the FPAAs, including both the determination that the short sale obligation must be treated as a liability and the determination that they were the true partners throughout all of 2001.

This Court must deny the plaintiffs' Motion because the identity of the partners should be determined in this FPAA proceeding. Further, the Sands Heirs have a significant interest in the

pending litigation and they will statutorily remain a party to this proceeding. Furthermore, there is no statutory basis for this Court to order the return of Robert's deposit.

Respectfully submitted,

/s/ Thomas M. Herrin
THOMAS M. HERRIN
Attorney of Record
Tax Division
Department of Justice
717 N. Harwood, Suite 400
Dallas, Texas 75201
(214) 880-9745 / (214) 880-9762
(214) 880-9742 (FAX)

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section

LOUISE HYTKEN
Chief, Southwestern Civil Trial Section
MICHELLE C. JOHNS
Trial Attorney