**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

No.06-407T
(into which have been consolidated Nos. 06-408T, 06-409T, 06-410T, 06-411T, 06-810T, 06-811T)
Judge Emily C. Hewitt

| | |
|---|---|
| ALPHA I, L.P., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br>Defendant. | No. 06-407T |
| BETA PARTNERS, L.L.C, BY AND THROUGH ALPHA I, L.P., A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br>Defendant. | No. 06-408T |
| R,R,M & C PARTNERS, L.L.C., BY AND THROUGH R,R,M & C GROUP, L.P., A NOTICE PARTNER,<br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br>Defendant. | No. 06-409T |

| | |
|---|---|
| R,R,M & C GROUP, L.P., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br>Defendant. | No. 06-410T |
| CWC PARTNERSHIP I, BY AND THROUGH TRUST FBO ZACHARY STERN U/A FIFTH G, ANDREW STERN AND MARILYN SANDS, TRUSTEES, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 06-411T |
| MICKEY MANAGEMENT, L.P., BY AND THROUGH MARILYN SANDS, A NOTICE PARTNER,<br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>Defendant. | No. 06-810T |

| | | |
|---|---|---|
| M, L, R & R, BY AND THROUGH RICHARD E. SANDS, TAX MATTERS PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>Defendant. | ) | No. 06-811T |

PLAINTIFFS' REPLY TO UNITED STATES' RESPONSE TO PLAINTIFFS' MOTION TO SUBSTITUTE CERTAIN PARTIES AND TO DISMISS CERTAIN CAUSES OF ACTION FOR LACK OF JURISDICTION

Although defendant has attempted to confuse the jurisdictional issue presented here by urging its contested factual theories regarding the merits of the underlying tax dispute, the dispositive issue raised in plaintiffs' motion is simply whether the identity of a partner in a partnership is a "partnership item" that defendant may adjust in an FPAA. Plaintiffs explained in their motion why the Internal Revenue Code, the defendant's regulations, and the case law all dictate that the transfer of a partnership interest from a partner (such as any one of the Sands) to a non-partner (such as any one of the CRUTs) is not a "partnership item," and why defendant's attempt to invalidate the Sands' transfers of their partnership interests in Group to the CRUTs in its FPAA must therefore be rejected in this proceeding. In its response, defendant failed to distinguish any of these authorities or offer any meaningful reason why they should not control the outcome of this motion. Instead, defendant employed its response largely in a transparent effort to bias this Court against plaintiffs by deriding their transactions.[1] *See* Def's. Resp. 2.

[1] Much of defendant's brief contains irrelevant, immaterial and scandalous matter contrary to Ct. Fed. Cl. R. 5.2(a)(4). Defendant's efforts to associate the transactions at issue with a broad "tax shelter industry" and a guilty plea entered by Gary Kornman on a matter that has nothing whatever to do with this case are particularly inflammatory.

While plaintiffs are fully prepared to defend the legitimacy of their transactions on the merits, these alleged facts and questions present issues for another day and are wholly irrelevant to this motion.

As discussed in detail below, defendant may make its adjustments relating to the identity of the owners of Group by issuing Statutory Notices of Deficiency to each of the Sands. Contrary to defendant's suggestion, a determination by this Court that the identity of Group's partners is not a partnership item would therefore not foreclose defendant from pursuing these adjustments.[2] What is less clear is why defendant decided to ignore its own regulations and the relevant case law in unilaterally deciding that transfers of the partnership interests were "partnership items" that could be adjusted in an FPAA, and why defendant is asking this Court to find that it has jurisdiction where clearly none exists.

**I. The Identity Of Group's Partners Is Not a Partnership Item**

An item can only be a partnership item "to the extent regulations prescribed by the Secretary provide that . . . such item is more appropriately determined at the partnership level than at the partner level." 26 U.S.C. § 6231(a)(3). In its response, defendant concedes that the identity of the partners in a partnership is "not specifically addressed by the regulations." *See* Def's. Resp. 14. Defendant asks this Court to overlook the statutory requirement, however, on the theory that the regulations should be understood to "presuppose" that the identity of the partners in a TEFRA partnership is a partnership item. *Id*. Defendant's argument is fatally flawed for several reasons.

First, the statute requires defendant to "prescribe" by regulation that an item is a partnership item. To "prescribe" means to "lay down authoritatively as a guide, direction, or rule

[2] Defendant's continuing delay in making these adjustments through statutory notices of deficiency may, however, result in such adjustments being time-barred. Defendant has failed to explain why it has not taken the simple action of issuing these notices, which could be done on a protective basis even while this issue is pending before this Court.

of action." Webster's Third New International Dictionary 1792 (Philip Babcock Grove, et al. eds., 1986). Even if the regulations "presuppose" that the identity of a partnership's partners is a partnership item, such a "supposition" would not be sufficient to meet the statutory requirement – particularly when, as here, the statute expressly directs taxpayers to rely on the regulatory regime for guidance. *See Field v. United States.*, 328 F.3d 58, 59 (2d Cir. 2003) (in determining that 26 U.S.C. § 6621(c) interest was not a partnership item stating: "The IRS's regulations list items considered to be partnership items. Thus 26 C.F.R. § 301.6231(a)(3)-1 . . . then lists various items, which do not include interest or § 6621(c) interest"); *Monti v. United States*, 223 F.3d 76, 82 (2d Cir. 2000) (reciting the items more appropriately determined at the partnership level set forth in Treas. Reg. § 301.6231(a)(3)-1 and determining that: "The right of individual partners to request consistent settlement terms, as provided for in I.R.C. § 6224(c)(2), is not on the list.").

Second, defendant has been on notice since the Tax Court decided *Hang* in 1990 that the courts do not agree with its "supposition" that the identity of a partner is a partnership item. *See Hang v. Commissioner*, 95 T.C. 74 (1990). Defendant nonetheless stubbornly pursues this position in the courts rather than follow the statutorily-required process of amending its own regulation specifically to prescribe that the identification of a TEFRA partnership's partners is a partnership item. When, as here, Congress has delegated broad authority to defendant to prescribe an express list, has also directed defendant in fact to prescribe that list, and has directed taxpayers to rely on that list for guidance, the bureaucratic intransigence (or negligence) of the defendant is both inexcusable and unlawful. This raises the obvious question whether defendant has consciously decided to leave the regulation in its current form so that it may argue inconsistently in other cases that the identity of a partnership's partners is not a partnership item.

See *Olsen-Smith, Ltd. v. Commissioner*, T.C. Memo 2005-174 (accepting defendant's position that the identity of an indirect partner is not a partnership item even though the outcome could have affected other partners' distributive shares of certain partnership items).

Third, contrary to defendant's suggestion, and most important here, the regulations do not presuppose that the transfer of a partnership interest is a partnership item. As explained in plaintiffs' motion, the regulations in fact presuppose exactly the opposite. Defendant's regulation makes clear that circumstances surrounding the transfer of a partnership interest – such as "the amount that [a] partner paid to acquire [a] partnership interest from a transferor partner" – is not a partnership item unless the partnership makes a "section 754 election" pursuant to which the partner-level transfer would have an effect on the partnership. *See* Treas. Reg. § 301.6231(a)(3)-1(c)(3). In its response, defendant fails even to attempt to offer any explanation for this language in the regulation – language that expressly recognizes that, absent a section 754 election (which is not involved here), the transfer of a partnership interest is not a partnership item.[3]

Defendant nevertheless asks the Court to overlook the fact that its position fails to comply with the statute or its own regulations by citing the Fifth Circuit decision in *Weiner* for the proposition that "some things so fundamentally affect the partnership as a whole, such as limitations, they are implicitly included in the Regulations." Def's. Resp. at 15. Plaintiffs agree that *Weiner* (and other courts) have held that the statute of limitations is a partnership item even

[3] The definition of a "partnership item" also requires that it be an item that is "required to be taken into account for the partnership's taxable year under any provision of subtitle A." 26 U.S.C. § 6231(a)(3). However, as plaintiffs also explained in their motion, the requirement that partnerships identify their partners is found in subtitle F. *See* 26 U.S.C. § 6031(a). Notably, defendant never states that the identity of a partner is required to be taken into account for the partnership's taxable year under any provision of subtitle A. Instead, in footnote 13 of its brief, defendant suggests that under certain circumstances a partnership must inquire into the identity of its partners to determine how to report other items that would be required to be taken into account under subtitle A. However, defendant fails to explain how this meets the statutory test. Nor does defendant explain why 26 U.S.C. § 6031(a) would not be superfluous if subtitle A required partnerships to identify their partners. This provides another reason for recognizing that the identity of a partner is not a partnership item.

though the limitations issue does not appear in defendant's regulation. *Weiner v. United States*, 389 F.3d 152, 156-57 (5th Cir. 2004) (discussing cases).[4] However, other courts, including the Federal Circuit, continue to follow the statutory requirement and have refused to expand this limited common law exception to items other than the statute of limitations. These courts clearly hold that items may only be partnership items if the partnership was required to account for them under some provision of subtitle A and defendant included them on its regulatory list. *Prochorenko v. United States*, 243 F.3d 1359, 1363 (Fed. Cir. 2001); *Field v. United States*, 328 F.3d 58, 59-60 (2d Cir. 2003); *Monti v. United States*, 223 F.3d 76, 82-84 (2d Cir. 2000).

There is a particularly compelling reason in this case why the Court should not look past the statutory requirements. *Weiner* faced an issue where the regulation simply did not speak to whether a statute of limitations issue was a partnership item. In this case, by contrast, the regulation clearly states that the circumstances surrounding the transfer of a partnership interest (absent a section 754 election) is not a partnership item. There are obviously no decisions holding that something is a partnership item when defendant's own regulation says that it is not – but that is the very holding that defendant asks this Court to make in this case.

Moreover, *Weiner* concluded that the timeliness of an FPAA is a partnership item because it found that the issue "affects the partnership as a whole." *Id*. Even if that rationale were sufficient,[5] it is not applicable here, for the transfer of one partner's interest to a non-partner obviously does not affect the partnership as a whole, or even any other partner. Indeed, the court in *Weiner* itself drew this very distinction in its discussion of *Monti v United States*, 223 F.3d 76

[4] These cases reflect the courts' obvious reluctance to rely on a statute of limitations to absolutely bar defendant from assessing any tax. In this case, however, defendant may make these adjustments at the partner-level, and it may be putting the statute of limitations at issue by its continuing failure to do so.

[5] However, other courts have followed the statute to hold that an item is not a partnership item where the partnership was not required to account for it under any provision of subtitle A or defendant failed to include it on its regulatory list, even though it might affect the partnership as a whole. *See, e.g., Field v. United States*, 328 F.3d 58, 60 (2nd Cir. 2003).

(2d Cir. 2000) (a case discussed by plaintiffs in their motion). In *Monti*, the Second Circuit held that a partner's right to a consistent settlement (a unique statutory right afforded to all partners in a TEFRA partnership) was not a partnership item. The Fifth Circuit found:

> [T]he first and arguably most important factor considered by the *Monti* court in deciding how to categorize a partner's right to consistent settlement terms dealt with the practical realities of that right. The court noted that one partner's right to settlement terms consistent with those granted to another partner is not a partnership item, *because* the question posed requires consideration of the relationship between one partner's situation and another's and the individual's, rather than the partnership's, communications with the IRS. The facts needed to determine whether consistent terms were offered are *facts about the partner*, not facts about the partnership. *Id.* at 82-83 (emphasis added). Conversely, the FPAA statute of limitations determination challenged in this case deals with facts specific to the partnership. The court need not consider the relationship between one partner and another or an individual's communications with the IRS.

*Id*. at 157 (internal quotations and alterations omitted).[6]

In the present case, if the Court were to examine the Sands' transfers of the partnership interests to the CRUTs, the Court would be examining the transfer agreements, whether the assets were in fact transferred, whether the Sands or the CRUTs had the benefits and burdens of ownership after the transfers, and the intent of the transferors and transferees. In the words of the *Weiner* court these are all "facts about the partners" and are not facts about the partnership. Indeed, defendant failed to offer a single fact that would need to be determined at the partnership level to assess the validity of the transfers to the CRUTs. Moreover, defendant unabashedly seeks to take this inquiry one step further removed from any "partnership item," for it questions

---

[6] The Fifth Circuit gave a similar analysis of the decision of the Federal Circuit in *Prochorenko v. United States,* 243 F.3d 1359, 1363 (Fed. Cir.2001), which like *Monti,* concluded that a partner's right to request consistent settlement terms was not a partnership item. The Fifth Circuit quoted the following passage from *Prochorenko*:

> [W]hether or not the [taxpayers] were entitled to such a reduction is an issue that is entirely dependent on their own unique factual circumstances, and has no effect on and is not affected by the tax liability of any of the other [ ] partners. Accordingly, this is not the type of issue that is "more appropriately determined at the partnership level."

*Id.* at 1363 (quoting the treasury regulations).

not only the validity of the transfers but the reality of the CRUTs themselves. *See* Def's. Resp 6-7, 16.[7] Plaintiffs are prepared to prove that the CRUTs were real, that the charitable remainder beneficiary was real (and in fact had a prominent attorney and certified public accountants as trustees), and that the CRUTs facilitated the Sands' gifting of several million dollars to charities. None of that, however, involves any partnership facts, has anything to do with Group, and certainly does not raise any "partnership item" over which this Court has jurisdiction. In summary, it is clear that the facts necessary to address defendant's concerns are all more appropriately determined at the partner level and cannot properly be regarded as partnership items (which is, presumably, the reason that defendant's regulations do not regard the transfer of a partner's interest as a partnership item).[8]

The transfer of a partner's interest has no consequence for the partnership or for any other partner. As plaintiffs explained in their motion (at page 12):

> Each of the Sands' transfers of their partnership interests to each of the CRUT partners . . . held no tax consequence for Group or any other partners in Group: there is no impact on the partnership's income or loss or balance sheet; and none of the Sands' transfers had any tax effect on any other partner, as each of the Sands transferred 100% of their respective partnership interests. The only tax consequence of each transfer was to the member of the Sands family making that transfer and to the recipient CRUT.

---

[7] On page 16 of its response, defendant offers several misleading attacks on the reality of the CRUTs. These attacks only serve to further show that it is inappropriate to address the CRUTs in this case where the Court only has jurisdiction to determine the partnership items of Group. For example, and to respond to one of these attacks, Group did not "park" the stock and sales proceeds in any CRUT. Indeed, none of the CRUTs ever held any of the stock or any of the sale proceeds; rather, they held only limited partnership interests in Group. The CRUTs therefore did not distribute any "proceeds" to the Sands as alleged by defendant. Instead, Group distributed cash to the Sands in the year following the short sale transactions at issue in this case. Thus, defendant's argument is both factually incorrect and substantively wrong.

[8] Notably, defendant focused its audit on the short sale transactions that are at issue in this case. On the other hand, defendant never conducted any meaningful inquiry into the reality of the CRUTs or the transfer of the limited partnership interests in Group to the CRUTs, and its determinations on these issues were entirely arbitrary.

Defendant did not dispute this in its response – it is therefore simply undisputed that the Sands' transfers to their respective CRUTs had no effect on the partnership or on any partner other than the transferor.

Defendant's awareness that the identity of partnership's partners is not itself a partnership item is manifested by the fact that defendant devotes most of its attention to an alternative theory of jurisdiction – purportedly based on the requirement that the Court is to determine the proper allocation of partnership items among the partners. Defendant tries to bootstrap jurisdiction for this Court over the transfer of partnership interests through the provision that specifies that, when the Court has jurisdiction, it is to determine "the proper allocation of [partnership items] among the partners," *see* 26 U.S.C. § 6226(f). Defendant argues (Def's. Resp. 14-15, 17-18, 19) that the Court must ascertain the identity of all of the partners in this proceeding to correctly allocate the partnership item at issue (the partnership's proper amount of gain or loss on the sale of the Constellation stock) and chiefly relies on *Blonien v. Commissioner*, 118 T.C. 541 (2002), to support this argument. This is surprising, because *Blonien* in fact rejected the very argument that defendant is making here.

In *Blonien*, the taxpayer was a partner in a law firm that had become insolvent. The IRS sent Mr. Blonien an "affected items notice of deficiency" that increased his individual tax for his share of the partnership's cancellation of indebtedness income (an item that had previously been determined at the partnership level). Mr. Blonien argued, however, that he was not a partner in the law firm. In response, the IRS argued that the Tax Court lacked jurisdiction in the partner-level proceeding to consider whether Mr. Blonien was a partner in the partnership, because that is a partnership item that could only be raised in a partnership-level proceeding.

The Tax Court agreed with the IRS and held that the issue of whether Mr. Blonien was a partner was a partnership item *because resolution of that issue would affect each other partners' share of partnership allocations*:

> In order to determine each partner's distributive share of partnership items, it is necessary to know who are the partners and what share of partnership items each partner is entitled to and required to take into account. Therefore, to the extent that the taxpayer's claim that he was not a partner would affect the distributive shares of the other partners, the taxpayer's claim is a partnership item.

*Id*. at 551 (emphasis added). In other words, if the Tax Court determined in the partner-level proceeding that Mr. Blonien was not a partner, his distributive share of partnership items would need to be reallocated among all of the other partners in the partnership. This item, therefore, would have a direct effect on all of the other partners in the partnership.

However, the Tax Court also reaffirmed its position that when, as is the case here, the question of whether the taxpayer is a partner would not affect the distributive shares of the other partners, it is not a partnership item:

> We recognize that the determination of who is a partner can be a partner-level item where resolution of the issue would not affect the allocation of partnership items to the other partners. In *Katz v. Commissioner,* 116 T.C. 5, 2001 WL 30538 (2001), we held that allocation of a partnership distributive share between a partner and the partner's bankruptcy estate was properly a partner-level item because the outcome of the dispute did not affect the allocation of partnership items among the other partners. Similarly, in *Hang v. Commissioner,* 95 T.C. 74, 1990 WL 98703 (1990), we held that the determination whether a father was equitable owner of S corporation shares held in the name of his sons is properly made at the individual shareholder level rather than at the corporate level in a TEFRA proceeding because the determination would not affect the distributive shares of the other shareholders.
>
> In the case at hand, if petitioners were successful in arguing that Mr. Blonien was not a partner in Finley Kumble, then the share of Finley Kumble's COD income wrongly allocated to Mr. Blonien would have to be reallocated among the other partners. Because the Finley Kumble partnership-level proceeding is completed, there may be no way to make the reallocations. Therefore, unlike the situation in *Hang* and *Katz* where resolution of the dispute would not affect the original partnership allocations, resolution of the dispute

> could affect the partnership allocations to the other partners. Therefore, the determination of whether Mr. Blonien was a partner in Finley Kumble is more appropriately determined at the partnership level.

*Id.* at 551 n.6. Defendant's citation of *Blonien* for the proposition "that the identity of the partners is a partnership item . . . where the determination can affect the allocation of taxable income" (Def's. Resp. at 26) is therefore inaccurate, as the Tax Court expressly held that is only true where the determination would affect the allocation of taxable income *to other partners of record*. *See also Hang v. Commissioner*, 95 T.C. 74, 80 (1990) (rejecting the same allocation argument where the result would require the court to reallocate items from partners of record to a taxpayer who was not a partner of record).

In this case, each of the Sands transferred 100% of their respective partnership interests in Group to each of the respective CRUTs. At that point, the Sands ceased to be partners in the partnership, and the CRUTs became the partners of record. The issue that defendant seeks to raise is whether the Sands or instead their respective CRUTs are the proper partner. Thus, for example, defendant would have this Court decide in this partnership proceeding whether Robert Sands or the Robert Sands CRUT was the proper recipient of a 24.975% distributive share of Group's allegedly understated income.[9] The answer to that question, however, plainly would not affect the distributive share of any other partner in Group. The Tax Court's decision in *Blonien* thus directly supports the plaintiffs' position in this case and squarely rejects the position urged by defendant.

[9] In fact, defendant would have this Court answer that question for each of the four transfers. While plaintiffs of course are prepared to prove that all of the transfers were valid, plaintiffs recognize the possibility that a court could find that some, but not all, of the transfers were valid. Such a finding, however, would not change the allocation to any other partner, as it would substitute only one or more of the Sands as partners for his, her, or its respective CRUT, leaving the CRUTs found to be valid partners unaffected. Indeed, this emphasizes the fact that these determinations are not partnership items, as the answer is dependent on the facts unique to each partner.

Defendant's reliance on *Katz v. Commissioner*, 335 F. 3d 1121 (10th Cir. 2003), to support its allocation theory is similarly misplaced. To begin with, defendant ignores the fact that the Tenth Circuit expressly held that "the allocation process itself is **not** a partnership item." *Id.* at 1129 (emphasis added). Moreover, defendant errs in stating that the bankruptcy estate in *Katz* was "neither a record partner nor a party to the partnership agreement." *See* Def's. Resp. 19. The bankruptcy estate was in fact a party of record in at least one of the partnerships at issue, having been issued a partnership Form K-1. 335 F.3d at 1123. More importantly, in *Katz* there was no dispute among the parties that Mr. Katz was a partner in the partnerships and that the bankruptcy estate became the partner in the partnerships. Instead, the dispute in *Katz* related to the proper allocation among the partners of the losses that had been incurred by the partnership. By contrast, in this case, the question whether a partnership interest was validly transferred has no effect on the allocation of loses among the other partners.

In the *Katz* case, defendant argued that Mr. Katz's bankruptcy caused the items at issue to become non-partnership items under Treas. Reg. § 301.6231(c)-7(a) and, therefore, any determination should be handled in a non-partnership proceeding. The Tax Court agreed. However, the Tenth Circuit reversed, finding that "[w]hat is important is that the debtor was a partner during part of the partnership year so the partnership returns must set forth the debtor's share of income, loss, etc." 335 F.3d at 1128. The Tenth Circuit's holding in the *Katz* case did not turn on the determination of a non-record owner versus a record owner, as defendant incorrectly states in its brief. The "reality" of the bankruptcy estate was not at issue, unlike in this case where defendant intends to challenge the reality of the CRUTs. Moreover, while in this case defendant has challenged the substance of the Sands' transfers to the CRUTs, there was no transfer in *Katz*. Instead, the appellate court's holding was that the partnership proceeding

properly would address the proper allocation of losses among the partners for which there was no dispute as to identity. *Id*. Defendant's reliance on *Katz* is thus wholly misplaced.

As discussed in plaintiffs' motion, the decisions directly on point – such as *Hang* and *Grigoraci* – have decided the exact issue before this Court in plaintiffs' favor. Defendant's efforts to distinguish those cases are unavailing. The central holding in *Hang* is that the identity of a partnership's partners is not a partnership item because resolution of that issue would require the evaluation of facts personal to the partners that have nothing to do with the partnership. *Hang*, 95 T.C. at 80-81. That holding applies directly to this case. Defendant acknowledges this, by advising the Court that it "respectfully disagrees" with the decision in *Hang*, but defendant fails to explain why *Hang* and all the other cases are wrong or why some other logic should apply here.

Defendant suggests that *Hang* is distinguishable because that case "involved due process concerns not present here." Def's. Resp. at 18. In making that novel (and perhaps desperate) suggestion, defendant entirely ignores the court's decision in *Hang*, which never mentioned due process as a concern and certainly did not decide the issue on that basis. Instead, in *Hang*, as an alternative reason for its holding, the Tax Court noted that the "partners" that defendant was seeking to substitute for the real partners were not partners during the taxable year and would therefore have no automatic right to participate in the case – a fact that the court concluded reinforced its view that the identity of the partners is more appropriately determined at the partner level, where they would have an automatic right to participate. *Hang*, 95 T.C. at 81-82. The fact that this additional reason was not significant to the court's holding in *Hang* is made

clear by the fact that the court did not even mention this supporting reason when it again held in *Grigoraci* that the identity of a partner is not a proper issue for a partnership proceeding.[10]

Thus, the government's purported distinction is a red herring. It is true that, since the Sands were partners in Group for a period of time during 2001, the Code allowed them to participate in this partnership-level proceeding to protect any interest they might have in the outcome. That is true of any TEFRA partnership, however, and it does not somehow make the identification of the partners in the partnership for the period at issue a partnership item. For example, a partnership may have thousands of constantly changing partners over a taxable year. The Code would apparently allow each of those partners a statutory right to participate in any partnership-level case that might arise out of the partnership's taxable year, even if they have no interest in the outcome. *But see* 26 U.S.C. § 6226(d).[11] Defendant fails to explain how that right somehow makes questions that might arise with respect to a partner's transfer of his partnership interest to another partner into a partnership item – for both the regulation and the case law reject any such broad claim.

## II. The Identity of The Partners Will be Determined, If At All, In Other Proceedings

Defendant's argument that plaintiffs' position "begs the question as to how the gain from the sale of the Constellation stock should be allocated" is misconceived. Def's. Resp. at 16. Assuming, as plaintiffs have for purposes of this motion, that Group should have reported substantial gain on the sale of the Constellation stock, all of that gain would be allocated to the

[10] Moreover, at n.14 of its brief, defendant explains that the Tax Court's concern that the "non-partner" might not have a right to participate was unwarranted.

[11] Plaintiffs note that 26 U.S.C. § 6226(d) requires that the partner "have an interest in the outcome," although none of its textual provisions would appear to preclude the Sands from participating in this case even though they were not the partners for the period in question.

CRUTs as the reported partners in Group. Indeed, this is the central premise of plaintiffs' motion.

Defendant's response suggests that the Sands are seeking to preclude it from contesting the validity of the transfers to the CRUTs. That is completely untrue. Plaintiffs are only arguing that this Court does not have jurisdiction over those issues in this partnership-level proceeding where the Court is being asked to properly determine the partnership items of Group. There is no question, however, that defendant may, by proper issuance of statutory notices of deficiency to each of the Sands, contest the reality of the transfers and the CRUTs.

As defendant points out in its brief, assuming that the reality of the transfers to the CRUTs and of the CRUTs themselves are not partnership items (as they clearly are not), they are either "non-partnership items" or "affected items." *See* Def's. Resp. 10. If they are simply non-partnership items, none of the TEFRA rules apply and the Code requires defendant to follow normal deficiency procedures to make any adjustment. Defendant may do this by simply issuing a statutory notice of deficiency to each of the partners. For reasons that defendant failed to explain, however, it so failed to do this, even on a protective basis.[12] On the other hand, if they are "affected items," defendant must wait until the conclusion of this partnership-level proceeding to issue an "affected item statutory notice of deficiency." *GAF Corporation and Subsidiaries v. Commissioner*, 114 T.C. 519 (2000); *N.C.F. Energy Partners v. Commissioner*, 89 T.C. 741, 743-44 (1987).

Plaintiffs do not understand why defendant has alternatively asked the Court to decide in this case whether these items are "affected items" or "plain vanilla" non-partnership items. Def's. Resp. at 20-23. To begin with, the Court does not have jurisdiction to make that

---

[12] To the extent that defendant faced any uncertainty about whether the items at issue were partnership items, nothing precludes it from making the same adjustments in contemporaneous statutory notices of deficiency and an FPAA to protect its interest.

determination. This Court's jurisdiction is constrained by 26 U.S.C. § 6226(f), which gives the Court jurisdiction:

> [T]o determine all partnership items of the partnership for the partnership taxable year to which the notice of final partnership administrative adjustment relates, the proper allocation of such items among the partners, and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item.

Nothing in the statute gives the Court jurisdiction here to determine whether something that is not a partnership item is instead an affected item (which also is to be determined through issuance of a statutory notice of deficiency).

Whether the transfers were valid and whether the CRUTs were true CRUTs are determinations that will be made, if at all, when and if defendant issues statutory notices of deficiency or affected items notices of deficiency. Defendant has not issued either document, and these potentially to-be-issued documents are certainly not at issue here. Defendant is thus improperly asking this Court to render an impermissible "advisory opinion." *See Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (the judiciary may not issue "an opinion advising what the law would be upon a hypothetical state of facts."). Because this Court lacks jurisdiction to rule on defendant's alternative position that these items are affected items, and because doing so would result in an unauthorized advisory opinion, the Court should decline to rule on this issue.

In any event, the reality of both 1) the CRUTs and 2) the transfers of the partnership interests to the CRUTs are not affected items. An "affected item means any item to the extent such item is affected by a partnership item." 26 U.S.C. § 6231(a)(5). In this case, no partnership item, such as the correct amount of gain or loss that Group recognized on the sale of the Constellation stock, affects either the reality of the CRUTs or the transfers of the limited partnership interests in Group to the CRUTs. Accordingly, they are not affected items.

This is evidenced throughout the TEFRA statutory scheme. For example, the Code allows defendant one year from the conclusion of any TEFRA partnership proceeding to make adjustments to affected items to make them consistent with any adjustments to partnership items that resulted from the partnership proceeding. See 26 U.S.C. §§ 6229(d), 6230(c). As previously discussed, if the Court sustains any of defendant's adjustments to Group's partnership items (i.e., principally the gain or loss on sale of the Constellation stock), all of that adjustment would be allocated to the CRUTs since defendant may not in this partnership-level proceeding challenge their status as partners. Thus, no change would be necessary to the Sands' personal tax returns to make them consistent with the result of the partnership proceeding. Indeed, defendant's argument here – that it may treat the transfers as affected items to make them <u>inconsistent</u> with the required result in this partnership-level proceeding (by treating the Sands as the true partners) – is nonsensical. Certainly, defendant may adjust who between a transferor and transferee partner is the true owner of a partnership interest, but that is a question to be resolved entirely outside the TEFRA statutory scheme because it simply has no bearing on the partnership or any other partner.

Defendant errs in attempting to rely on *Grigoraci* to support its argument on this issue. In *Grigoraci*, defendant initially took the position that, if the identity of the partners was not a partnership item, then it was a non-partnership item and the government was therefore permitted to issue notices of deficiency without waiting for the conclusion of the partnership-level proceeding. *See* 84 T.C.M. at 191 ("Respondent initially adopted the position that the notice of deficiency was issued pursuant to section 6212 [as opposed to section 6230].") While the case was pending, however, the IRS altered its position and argued that the identity of the partners was an affected item and that any statutory notice of deficiency making an adjustment to this

item would have to wait until the partnership case was over. The taxpayer did not oppose the IRS position on this issue, and apparently had no interest in the outcome. This is because the issue in *Grigoraci* was whether a CPA who formed an S corporation that became a partner in a partnership that provided accounting services was required to pay self-employment tax on the earnings distributed by the partnership. The IRS argued that the S corporation had been created solely to avoid self-employment tax – for distributable shares of partnership income are generally subject to self-employment tax while distributable shares of S corporation income are not. The Tax Court held that the question whether the income was self-employment income was an affected item because it turned on whether the income should be treated as being derived directly from the partnership or instead from the S corporation. By contrast, in the present case, any gain recognized on the sale of the Constellation stock is unquestionably to be allocated at the partnership level, and the allocation of that income has no bearing on, and does not "affect," the validity of the transfer of the partnership interest to the CRUTs.

## III. The Sands Have No Interest in The Group Proceeding And Should Be Dismissed, and the Court Should Order Defendant to Return the Deposit Made by Robert Sands.

Since the Sands' transfers of their partnership interests in Group is not a partnership item, the CRUTs were the partners of record when Group sold the Constellation stock. Even if defendant were correct that Group should have reported a substantial gain on the sale of that stock, any such gain was allocated to the CRUTs in this partnership-level proceeding. The Sands have not contested the outcome of the partnership litigation on the gain question, which is the central issue in the Group case, and they should be dismissed from that proceeding.

Defendant nonsensically argues that the Court should nevertheless keep the Sands as parties because: (a) they are "automatically" parties pursuant to 26 U.S.C. § 6226(c) because

they were partners in Group before the purported gains were realized in 2001; (b) Robert Sands chose to contest the FPAA; and/or (c) they "clearly" "have an interest in the outcome of this proceeding." Def's. Resp. at 23. Plaintiffs will respond to each of these contentions in turn.

First, 26 U.S.C. § 6226(c) gives any taxpayer who was a partner in a TEFRA partnership during the partnership's taxable year the right to elect to participate in the partnership-level proceeding. The taxpayer-partner may decline to exercise that right, just as the Sands do not wish to participate in the Group case because they have no interest in the outcome. *See* Ct. Fed. Cl. R. 6(b) (requiring any partner wishing to participate in the partnership case to file a notice of election to intervene). Obviously, it would be senseless to require a partner who has no interest in the outcome to participate. Again, this is best illustrated through an example: assume an actively traded TEFRA partnership with hundreds of partners during a taxable year, in which the IRS contests an item reported by the partnership that might affect only a few of those partners. While it is true that any of the partners apparently has a right to contest the adjustment, there is certainly no requirement that they do so.

Second, Robert Sands contested the FPAA because one of the Sands (and not any of the CRUTs) had to contest it in order to safely obtain jurisdiction in this Court. The Code requires any partner in a TEFRA partnership bringing suit in this Court to first deposit the amount by which his tax would increase if the FPAA were correct. 26 U.S.C. § 6226(e)(1). Since the FPAA determined that the Sands' transfers to the CRUTs were shams and that the CRUTs were not partners in Group, there was a serious question about whether the CRUTs could file suit and comply with this requirement. Thus, out of an abundance of caution, Robert Sands elected to deposit the amount by which his tax would increase if the FPAA were correct to ensure that this Court would have jurisdiction. Plaintiffs have no doubt that, if one of the CRUTs had filed suit

on behalf of Group making no jurisdictional deposit (because CRUTs do not pay tax), defendant would have argued non-compliance with 26 U.S.C. § 6226(c) on the theory that the CRUTs were not partners eligible to bring suit and for failure to make a sufficient deposit. Plaintiffs may not be faulted for treating defendant's FPAA as though it were correct for purposes of commencing this protective litigation.

Third, defendant's bald assertion that the Sands "have an interest in the outcome of this proceeding" does not make it so. As plaintiffs have explained, the Court does not have jurisdiction to treat the Sands as partners in Group at the time that Group sold the Constellation stock, and they will not bear any tax burden as a result of such sale regardless of the amount of any gain. Rather than respond to this, defendant meekly offers that the Sands should be kept as parties to this consolidated proceeding because they would still be parties in the Alpha and Beta cases regardless of the outcome here. While it may be true that the Sands would remain as parties in the Alpha and Beta cases notwithstanding the outcome on this motion, if defendant is concerned that the various partnerships involved in the different cases have different partners, the appropriate remedy is obviously to ask for these cases to be de-consolidated rather than to proceed without jurisdiction in the present case.

Respectfully submitted,

/s Lewis S. Wiener
LEWIS S. WIENER
Sutherland, Asbill & Brennan
1275 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel.: (202) 383-0140
Fax: (202) 637-3593
Email: lewis.Weiner@sablaw.com

Of Counsel:

N. Jerold Cohen
Thomas A. Cullinan
Joseph M. DePew
Julie P. Bowling
Sutherland Asbill & Brennan LLP
999 Peachtree Street, N.E.
Atlanta, Georgia 30309
(404) 853-8000
(404) 853-8806 (fax)

Kent L. Jones
Sutherland, Asbill & Brennan
1275 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel.: (202) 383-0732
Fax: (202) 637-3593
Attorney for Plaintiffs

May 21, 2007