# PARTNERSHIP AGREEMENT

OF

CWC PARTNERSHIP-I

GOVERNMENT EXHIBIT 4

PENGAD-Bayonne, N. J.

SANDS8449

TABLE OF CONTENTS

Page

ARTICLE I
FORMATION OF PARTNERSHIP . . . . . . . . . . . . . . . 1

Section 1.1. Formation of the Partnership . . . . . . . . . . . . . . . . . . . . . . . 1
Section 1.2. Name . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Section 1.3. Location of Principal Place of Business . . . . . . . . . . . . . . . . . 1
Section 1.4. Purpose . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARTICLE II
DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . 2

ARTICLE III
CONTRIBUTIONS . . . . . . . . . . . . . . . . . . . . 6

Section 3.1. Establishment of Capital Accounts . . . . . . . . . . . . . . . . . . . . 6
Section 3.2. Initial Capital Contributions . . . . . . . . . . . . . . . . . . . . . . 6
Section 3.3. Revaluation of Capital Accounts . . . . . . . . . . . . . . . . . . . . . 6
Section 3.4. Additional Capital Contributions by Partners . . . . . . . . . . . . . . . 7
Section 3.5. Interest on Capital Contributions . . . . . . . . . . . . . . . . . . . . 7
Section 3.6. Withdrawal and Return of Capital Contributions . . . . . . . . . . . . . 7

ARTICLE IV
ALLOCATION OF NET INCOME AND NET LOSS . . . . . . . . . 7

Section 4.1. Allocation of Net Income and Net Loss . . . . . . . . . . . . . . . . . . 7
Section 4.2. Other Allocation Provisions . . . . . . . . . . . . . . . . . . . . . . . 8
Section 4.3. Allocations for Income Tax Purposes . . . . . . . . . . . . . . . . . . . 9
Section 4.4. Withholding . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARTICLE V
DISTRIBUTIONS; WITHDRAWALS . . . . . . . . . . . . . . 9

Section 5.1. Class 1 Return . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
Section 5.2. Tax Distributions . . . . . . . . . . . . . . . . . . . . . . . . . . 10
Section 5.3. Class 2 Distributions . . . . . . . . . . . . . . . . . . . . . . . . 10
Section 5.4. Class 1 Capital Account Withdrawal Right and Mandatory Redemption . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
Section 5.5. Limitations on Distributions . . . . . . . . . . . . . . . . . . . . . . 11
Section 5.6. Reserves . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ARTICLE VI
BOOKS OF ACCOUNT . . . . . . . . . . . . . . . . . . . 12

Section 6.1. Books and Records . . . . . . . . . . . . . . . . . . . . . . . . . 12

ARTICLE VII
MANAGEMENT . . . . . . . . . . . . . . . . . . . . . . 12

Section 7.1. Authority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
Section 7.2. Powers and Duties of Managing Partners . . . . . . . . . . . . . . . . 12
Section 7.3. Expenses of the Partnership . . . . . . . . . . . . . . . . . . . . . . . . 12
Section 7.4. Other Activities and Competition; Additional Investments by the Partners and Affiliates . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
Section 7.5. Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
Section 7.6. Indemnification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
Section 7.7. Replacement of Managing Partners . . . . . . . . . . . . . . . . . . . . 14
Section 7.8. Tax Matters Partner . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

ARTICLE VIII
ADMISSION OF ADDITIONAL PARTNERS . . . . . . . . . . . . 14

Section 8.1. Admission of Additional Partners . . . . . . . . . . . . . . . . . . . . . 14

ARTICLE IX . . . . . . . . . . . . . . . . . . . . . . . 14
TRANSFERS OF INTERESTS BY PARTNERS . . . . . . . . . . . . 14

Section 9.1. Transfers of Interests by Partners . . . . . . . . . . . . . . . . . . . . 14
Section 9.2. Admission of Transferee . . . . . . . . . . . . . . . . . . . . . . . . . . 15

ARTICLE X
DISSOLUTION; LIQUIDATION
AND DISTRIBUTION OF ASSETS . . . . . . . . . . . . . . . 15

Section 10.1. Dissolution of Partnership . . . . . . . . . . . . . . . . . . . . . . . . 15
Section 10.2. Distribution in Liquidation . . . . . . . . . . . . . . . . . . . . . . . . 16
Section 10.3. Final Reports . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
Section 10.4. Deficit Restoration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
Section 10.5. Termination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

ARTICLE XI
AMENDMENT OF PARTNERSHIP AGREEMENT AND POWER OF ATTORNEY 18

Section 11.1. Approval of Amendments . . . . . . . . . . . . . . . . . . . . . . . . . 18
Section 11.2. Amendment of Certificate . . . . . . . . . . . . . . . . . . . . . . . . . 18
Section 11.3. Power of Attorney . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

ARTICLE XII

MISCELLANEOUS . . . . . . . . . . . . . . . . . . . . . 19

Section 12.1. Notices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
Section 12.2. Entire Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . 19
Section 12.3. Governing Law . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
Section 12.4. Effect . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
Section 12.5. Pronouns and Number . . . . . . . . . . . . . . . . . . . . . . . 20
Section 12.6. Captions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
Section 12.7. Partial Enforceability . . . . . . . . . . . . . . . . . . . . . . . 20
Section 12.8. Third Party Claims . . . . . . . . . . . . . . . . . . . . . . . . . 20
Section 12.9. Counterparts . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# PARTNERSHIP AGREEMENT

# OF

# CWC PARTNERSHIP-I

PARTNERSHIP AGREEMENT of CWC Partnership-I (the "Partnership"), dated as of January 17, 1995, among Laurie Sands, Richard Sands and Robert Sands (together with any subsequently admitted partners, the "Partners").

## RECITALS

WHEREAS, the parties hereto desire to form a general partnership under the partnership law of the State of New York;

NOW, THEREFORE, in consideration of the premises and covenants contained herein, the parties agree as follows:

## AGREEMENT

## ARTICLE I

## FORMATION OF PARTNERSHIP

Section 1.1. Formation of the Partnership. The Partnership is hereby formed as a general partnership under the Partnership Law (as defined below). The Managing Partners (as defined below), for themselves and as agents for the other Partners, shall make every reasonable effort to assure that a Business Certificate for Partners and any other necessary certificates and documents are properly executed, and shall accomplish all filing, recording, publishing and other acts necessary or appropriate for the conduct of the Partnership's business under the Partnership Law and under all other laws of the State of New York or such other jurisdictions in which the Managing Partners determine that the Partnership may conduct business. The Partners shall promptly execute all relevant certificates and other documents as the Managing Partners shall request. The rights and duties of the Partners shall be as provided in the Partnership Law except as modified by this Agreement.

Section 1.2. Name. The name of the Partnership is "CWC Partnership-I".

Section 1.3. Location of Principal Place of Business. The location of the principal place of business of the Partnership is 303 North Bloomfield Road, Canandaigua, New York 14424 or such other location as may be determined. The Managing Partners may change the location of the principal place of business of the Partnership by notice in writing to the Partners. In addition, the Partnership may maintain such other offices as the Managing Partners may deem advisable at any other place or places within or outside the United States.

Section 1.4. Purpose. The Partnership's purpose shall be to invest in securities of every kind, including stocks, options, warrants, promissory notes secured by deeds of trust, bonds, partnership interests and other securities, physical commodities and commodity futures, and ownership interests and indebtedness of every kind; to engage in other investment activities including, without limitation, investing in mutual funds, real estate and other investments that offer the opportunity for an appropriate return; to make direct investments or form partnerships, corporations or other entities for the purpose of making investments; and to engage in any and all activities related or incidental to the foregoing and to do all things necessary or convenient for the accomplishment thereof.

## ARTICLE II

## DEFINITIONS

"Accounting Period" means any period that begins on the date hereof or at the opening of business on the day following the end of a previous Accounting Period and ends at the close of business on the earlier of the next Adjustment Date, the end of a Fiscal Year and the date on which the Partnership is terminated.

"Accumulated Declared Class 1 Return" means, with respect to each Class 1 Partner as of any date in a Fiscal Year, the excess of (x) such Partner's Declared Class 1 Return at such time for all Fiscal Years of the Partnership prior to such Fiscal Year over (y) the aggregate amount distributed to such Partner pursuant to Section 5.1(b) for all prior Fiscal Years. The Partners' Accumulated Declared Class 1 Return shall not be affected by distributions pursuant to Section 5.1(c).

"Adjustment Date" means (i) each day on which Capital Accounts are revalued pursuant to Section 3.3, (ii) the effective date of each withdrawal by a Partner of any capital pursuant to Section 5.4(a) or redemption of any Partner's capital pursuant to Section 5.4(b) and (iii) any other date reasonably believed by the Managing Partners to be appropriate so as to properly reflect the economic relationship among the Partners.

"Adjusted Capital Account" means, at any time with respect to any Capital Account of any Partner, such Capital Account at such time increased by the sum of (i) the amount of such Partner's share of partnership minimum gain (as defined in Treasury Regulations §1.704-2(g)(1) and (3)) attributable to such Capital Account and (ii) the amount of such Partner's share of partner nonrecourse debt minimum gain (as defined in Treasury Regulations §1.704-2(i)(5)) attributable to such Capital Account and (iii) any amount of the deficit balance in its Capital Account the Partner is obligated to restore on liquidation of the Partnership and decreased by reasonably expected adjustments, allocations and distributions described in Treasury Regulations §1.704-1(b)(ii)(d)(4), (5) and (6).

"Adjusted Class 2 Capital Account" means, at any time with respect to any Class 2 Capital Account of any Partner, such Class 2 Capital Account at such time increased by the sum of (i) the amount of such Partner's share of partnership minimum gain (as defined in Treasury Regulations §1.704-2(g)(1) and (3)) attributable to such Partner's Class 2 Capital Account and (ii) the amount of such Partner's share of partner nonrecourse debt minimum gain (as defined in Treasury Regulations §1.704-2(i)(5)) attributable to such

Partner's Class 2 Capital Account and (iii) any amount of the deficit balance in its Class 2 Capital Account the Partner is obligated to restore on liquidation of the Partnership and decreased by reasonably expected adjustments, allocations and distributions described in Treasury Regulations §1.704-1(b)(ii)(d)(4), (5) and (6).

"Agreement" means this Partnership Agreement, as amended, modified or supplemented from time to time.

"Available Cash" means any cash or other property of the Partnership on hand at any time which, in the sole discretion of the Managing Partners, is not required for the conduct of the Partnership's business.

"Book Value" means, with respect to (a) any Partnership asset as of any date, such Partnership asset's adjusted basis for Federal income tax purposes as of such date, except as follows: (i) the initial Book Value of a Partnership asset contributed by a Partner to the Partnership (including a Partnership asset deemed contributed as a result of a constructive termination of the Partnership under Code section 708(b)(1)(B)) shall be the Value of such Partnership asset on the date of such contribution; (ii) on each Adjustment Date, the Book Value of each Partnership asset shall be adjusted to equal its Value on such Adjustment Date; and (iii) if the Book Value of a Partnership asset has been determined under clause (i) or (ii) above, such Book Value shall thereafter be adjusted by the depreciation, cost recovery and amortization attributable to such Partnership asset assuming that the adjusted basis of such Partnership asset was equal to its Book Value determined under the methodology described in Treasury Regulations §1.704-1(b)(2)(iv)(g)(3).

"Business Day" means each Monday, Tuesday, Wednesday, Thursday and Friday which is not a day on which banking institutions in Rochester, New York are authorized or obligated by law or executive order to close.

"Capital Account" means, with respect to each Partner, the account established and maintained for the Partner on the books of the Partnership in compliance with Treasury Regulations §§ 1.704-1(b)(2)(iv) and 1.704-2, as amended. Subject to the preceding sentence, each Partner's Capital Account will initially equal the cash contributed by such Partner to the Partnership and the Value of any property contributed by such Partner to the Partnership (net of liabilities secured by the property that the Partnership is considered to assume or take subject to), and throughout the term of the Partnership will be (i) increased by the amount of (A) income and gains allocated to such Partner pursuant to Article IV, and (B) any cash and the Value of property subsequently contributed by such Partner to the Partnership (net of liabilities secured by the property that the Partnership is considered to assume or take subject to), and (ii) decreased by the amount of (A) losses and deductions allocated to such Partner pursuant to Article IV, and (B) the amount of distributions in cash and the Value of distributions of property (net of liabilities secured by the property that the Partner is considered to assume or take subject to) distributed to such Partner.

"Class 1 Capital Account" means, with respect to each Class 1 Partner, an account established and maintained for the Partner on the books of the Partnership. Such account will initially equal the amount credited to such Partners' Class 1 Capital Account pursuant to Section 3.2(b) and throughout the term of the Partnership will be (i) increased by the amount of (A) income and gains allocated to such Partner pursuant to Sections 4.1(a)(ii),

4.1(a)(iii), 4.1(a)(iv) and 4.1(a)(v) and (B) any cash and the Value of property subsequently contributed by such Partner to the Partnership (net of liabilities secured by the property that the Partnership is considered to assume or take subject to), (ii) decreased by the amount of (A) losses and deductions allocated to such Partner pursuant to Section 4.1(b)(ii), and (B) distributions in cash and the Value of distributions of property (net of liabilities secured by the property that such Partner is considered to assume or take subject to) distributed to such Partner pursuant to Sections 5.1 and 5.4 and (iii) further adjusted as provided in the last sentence of Section 3.1.

"Class 1 Partner" means each Partner as to whom a contribution to a Class 1 Capital Account has been credited pursuant to Section 3.2(b).

"Class 1 Return" means, with respect to each Class 1 Partner as of any date in a Fiscal Year, a 6% non-cumulative annual return, on the weighted average of the balance of such Partner's Class 1 Capital Account during such Fiscal Year calculated from the beginning of such Fiscal Year to such date.

"Class 2 Capital Account" means, with respect to each Class 2 Partner, an account established and maintained for the Partner on the books of the Partnership. Such account will initially equal the amount credited to such Partners' Class 2 Capital Account and throughout the term of the Partnership will be (i) increased by the amount of (A) income and gains allocated to such Partner's Class 2 Capital Account pursuant to Sections 4.1(a)(i) and 4.1(a)(vi) and (B) any cash and the Value of property subsequently contributed by such Partner to the Partnership (net of liabilities secured by the property that the Partnership is considered to assume or take subject to), (ii) decreased by the amount of (A) losses and deductions allocated to such Partner pursuant to Sections 4.1(b)(i) and 4.1(b)(iii), and (B) distributions in cash and the Value of distributions of property (net of liabilities secured by the property that the Partner is considered to assume or take subject to) distributed to such Partner pursuant to Sections 5.2 and 5.3 and (iii) further adjusted as provided in the last sentence of Section 3.1.

"Class 2 Partner" means each Partner as to whom a contribution to a Class 2 Capital Account has been credited pursuant to Section 3.2(b).

"Code" means the Internal Revenue Code of 1986, as amended from time to time (or any succeeding law).

"Declared Class 1 Return" has the meaning set forth Section 5.1(a).

"Fiscal Year" means the calendar year; provided that the first Fiscal Year of the Partnership shall commence on the date hereof and continue through December 31, 1995 and the last Fiscal Year of the Partnership shall terminate on the day the Partnership is liquidated.

"Indemnified Party" has the meaning set forth in Section 7.6.

"Interest", when used in reference to an interest in the Partnership, means the entire ownership interest of a Partner in the Partnership at any particular time.

"Liquidator" has the meaning set forth in Section 10.1(b).

"Majority in Interest of the Partners" means the Partners whose Capital Account balances at the time of such determination represent in the aggregate more than 50% of the total of all Capital Account balances of the Partners.

"Managing Partners" means Richard Sands and Robert Sands or their successors selected pursuant to the terms of this Agreement.

"Net Income" and "Net Loss", respectively, for any Accounting Period means the income or loss of the Partnership for such Accounting Period as determined in accordance with the method of accounting followed by the Partnership for Federal income tax purposes, including, for all purposes, any income exempt from tax and any expenditures of the Partnership which are described in Code section 705(a)(2)(B); provided, however, that in determining Net Income and Net Loss and every item entering into the computation thereof, solely for the purpose of adjusting the Capital Accounts of the Partners (and not for tax purposes), (i) any income, gain, loss or deduction attributable to the taxable disposition of any Partnership asset shall be computed as if the adjusted basis of such Partnership asset on the date of such disposition equalled its Book Value as of such date, (ii) if any Partnership asset is distributed in kind to a Partner, the difference between its Value and its Book Value at the time of such distribution shall be treated as gain or loss, (iii) as to any Partnership asset held by the Partnership on an Adjustment Date, the difference between such Partnership asset's Book Value on such Adjustment Date and its Book Value immediately prior to such Adjustment Date shall be treated as gain or loss, as appropriate, and (iv) any depreciation, cost recovery and amortization as to any Partnership asset shall be computed by assuming that the adjusted basis of such Partnership asset equalled its Book Value determined under the methodology described in Treasury Regulations §1.704-1(b)(2)(iv)(g)(3); and provided, further, that any item (computed with the adjustments in the preceding proviso) allocated under Section 4.2 shall be excluded from the computation of Net Income and Net Loss.

"Partners" has the meaning set forth in the forepart of this Agreement.

"Partnership" means the partnership formed pursuant to this Agreement under the name "CWC Partnership-I" and its successors in interest under any amendment hereto or restatement hereof.

"Partnership Law" means the Partnership Law of the State of New York, as amended from time to time (or any succeeding law).

"Person" means any individual, partnership, corporation, limited liability company, trust, association or other entity.

"Presumed Tax Liability" means, for any Class 2 Capital Account for any Fiscal Year, an amount equal to the product of (a) the amount of taxable income allocated to such Capital Account for that Fiscal Year and (b) the Presumed Tax Rate.

"Presumed Tax Rate" means the highest effective combined Federal, state and local income tax rate applicable during such Fiscal Year to a natural person residing in Rochester, New York taxable at the highest marginal Federal income tax rate and the highest

marginal New York State income tax rate (after giving effect to the Federal income tax deduction for such state and local income taxes and disregarding the effects of Code sections 67 and 68).

"Treasury Regulations" means regulations promulgated by the Treasury under the Code.

"Value" of any Partnership asset, as of any date, means the fair market value of such Partnership asset as of such date, as provided in this Agreement or, if not so provided, as reasonably determined by the Managing Partners.

## ARTICLE III

## CONTRIBUTIONS

Section 3.1. Establishment of Capital Accounts. The Partnership shall establish and maintain on its books for the benefit of each Partner a Capital Account, which shall be subdivided into a Class 1 Capital Account and a Class 2 Capital Account. The Managing Partners shall make such reasonable adjustments to the Class 1 Capital Accounts and Class 2 Capital Accounts, consistent with the principles of Treasury Regulations §§ 1.704-1(b)(2)(iv) and 1.704-2, so that at all times the aggregate balance of any Partner's Class 1 Capital Account, if any, and Class 2 Capital Account, if any, shall equal the balance of such Partner's Capital Account.

Section 3.2. Initial Capital Contributions. (a) On the date hereof, each Partner has made a contribution to the capital of the Partnership by contributing to the Partnership the assets and the amount of cash set forth under the heading "Partner's Capital Contribution" opposite such Partner's name in Schedule A. The Partners agree that Laurie Sands' capital contribution equals 99% of the total capital contributions to the Partnership of all Partners and that each Managing Partner's capital contribution equals 0.5% of the total capital contributions to the Partnership.

(b) Each Partner's capital contribution to the Partnership shall be credited to such Partner's Class 1 Capital Account and Class 2 Capital Account as follows: (i) $500,000 of Laurie Sands' capital contribution shall be credited to her Class 2 Capital Account and the remainder of her Capital Contribution shall be credited to her Class 1 Capital Account and (ii) $2,525 of each Managing Partner's Capital Account shall be credited to such Managing Partner's Class 2 Capital Account and the remainder of each Managing Partner's Capital Contribution shall be credited to such Managing Partner's Class 1 Capital Account.

Section 3.3. Revaluation of Capital Accounts. Until the date of the first transfer by a Partner of an interest in the Partnership (whether by sale, gift, death or otherwise), each Business Day shall be an Adjustment Date and the Partners' Capital Accounts shall be adjusted pursuant to Article IV. Immediately after each such adjustment, amounts shall be credited to or debited from the Partners' Class 1 Capital Accounts and corresponding amounts debited from or credited to the Partners' Class 2 Capital Accounts so that the balance of Laurie Sands' Class 2 Capital Account shall equal $500,000 and the balance of each Managing Partner's Class 2 Capital Account shall equal $2,525.

Section 3.4. Additional Capital Contributions by Partners.

(a) The Managing Partners may, in their sole discretion, accept additional capital contributions from any Partner, at any time. Any additional capital contributions may be credited to the Partner's Class 1 Capital Account or Class 2 Capital Account in any proportions agreed to by the contributing Partner and the Managing Partners. In connection with the contribution, the Managing Partners shall make appropriate adjustments to the allocation and distribution provisions of this Agreement, including, if they deem it appropriate, treating the day preceding the date of any contribution as an Adjustment Date.

(b) No Partner shall at any time be required, and no Partner shall have any right, to make any additional Capital Contributions, except as may be required by law.

Section 3.5. Interest on Capital Contributions. No Partner shall be entitled to interest on or with respect to any capital contribution.

Section 3.6. Withdrawal and Return of Capital Contributions. No Partner shall be entitled to withdraw any part of that Partner's capital contribution or to receive distributions from the Partnership, except as provided in this Agreement.

ARTICLE IV

ALLOCATION OF NET INCOME AND NET LOSS

Section 4.1. Allocation of Net Income and Net Loss. Subject to Section 4.2 hereof, Net Income and Net Loss of the Partnership for each Accounting Period and all items entering into the computation thereof shall be allocated as follows:

(a) Net Income for such Accounting Period shall be allocated as follows:

(i) first, Net Income equal to the aggregate negative balances (if any) in the Partners' Adjusted Class 2 Capital Accounts shall be allocated to the Partners' Class 2 Capital Accounts in proportion to each Partner's negative balance in its Adjusted Class 2 Capital Account;

(ii) second, Net Income equal to the excess of (x) the aggregate amount distributed to the Partners with respect to the Partners' Class 1 Capital Accounts pursuant to the proviso to Section 5.4 (b) during such Accounting Period and all prior Accounting Periods over (y) all Net Income previously allocated to the Partners' Class 1 Capital Accounts pursuant to this Section 4.1(a)(ii) shall be allocated to the Partners' Class 1 Capital Accounts in proportion to each Partner's share of such excess of (x) over (y).

(iii) third, Net Income equal to the excess of (x) the aggregate Net Loss previously allocated to the Partners' Class 1 Capital Accounts pursuant to Section 4.1(b)(ii) over (y) the aggregate Net Income previously allocated to the Partners pursuant to this Section 4.1(a)(iii) shall be allocated to the Partners' Class 1 Capital Accounts in proportion to each Partner's share of such excess of (x) over (y);

(iv) fourth, Net Income equal to the excess of (x) the aggregate Accumulated Declared Class 1 Return of all Class 1 Partners as of the beginning of such Accounting Period over (y) the aggregate Net Income previously allocated to such Partners pursuant to this Section 4.1(a)(iv) shall be allocated to such Partners' Class 1 Capital Accounts in proportion to each such Partner's share of such excess of (x) over (y);

(v) fifth, Net Income equal to the excess of (x) the aggregate amount distributed to the Partners with respect to the Partners' Class 1 Capital Accounts pursuant to Section 5.1(b) during such Accounting Period and all prior Accounting Periods over (y) all Net Income previously allocated to the Partners' Class 1 Capital Accounts pursuant to this Section 4.1(a)(v) shall be allocated to the Partners' Class 1 Capital Accounts in proportion to each Partner's share of such excess of (x) over (y); and

(vi) sixth, the remaining Net Income shall be allocated to the Partners' Class 2 Capital Accounts in proportion to the balances of the Partners' Class 2 Capital Accounts at the beginning of the Accounting Period.

(b) Net Loss for such Accounting Period shall be allocated as follows:

(i) first, Net Loss shall be allocated to the Partners' Class 2 Capital Accounts in proportion to the positive balances of the Partners' Class 2 Capital Accounts until the balance of the Partners' Class 2 Capital Accounts equals zero;

(ii) second, Net Loss shall be allocated to the Partners' Class 1 Capital Accounts in proportion to the positive balances of the Partners' Class 1 Capital Accounts until the balance of the Partners' Class 1 Capital Accounts equals zero;

(iii) third, the remaining Net Loss shall be allocated to the Partners' Class 2 Capital Accounts in proportion to the Partners' aggregate Class 2 Capital Contributions.

Section 4.2. Other Allocation Provisions. (a) The Partners intend that the allocations under Section 4.1 have "substantial economic effect" within the meaning of Treasury Regulations §§1.704-1(b) and 1.704-2, and the Managing Partners shall modify the allocations under Section 4.1 as they believe it reasonably necessary to meet the requirements of those allocations (including, without limitation, the requirements as to the allocation of deductions attributable to partner nonrecourse liabilities and the requirements as to the chargeback of minimum gain and the chargeback of partner nonrecourse debt minimum gain).

(b) Except to the extent otherwise required by the Code and Treasury Regulations, if an Interest in the Partnership of part thereof is transferred in any Accounting Period, the items of income, gain, loss, deduction and credit allocable to such Interest for such Accounting Period shall be apportioned between the transferor and the transferee in proportion to the number of days in such Accounting Period such Interest is held by each of them, except, that if they agree between themselves and so notify the Managing Partners within 30 days after the transfer, then at their option and expense, (i) all items or (ii) extraordinary items, may be allocated to the Person that held such Interest on the date such items were realized or incurred by the Partnership.

Section 4.3. Allocations for Income Tax Purposes. The income, gains, losses, deductions and credits of the Partnership for any Fiscal Year shall be allocated to the Partners in the same manner Net Income and Net Loss were allocated to the Partners for all Accounting Periods ending with or within such Fiscal Year; provided, however, that solely for Federal, state and local income and franchise tax purposes and not for book or Capital Account purposes, income, gain, loss and deductions with respect to property properly carried on the Partnership's books at a value other than the tax basis of such property shall be allocated in a manner determined in the Managing Partners' discretion so as to take into account the difference between such property's Book Value and its tax basis in a manner consistent with Code section 704(c) and Treasury Regulations §1.704-3.

Section 4.4. Withholding. The Partnership shall comply with withholding requirements under Federal, state and local law and shall remit amounts withheld to and file required forms with the applicable jurisdictions. To the extent the Partnership is required to withhold and pay over any amounts to any authority with respect to distributions or allocations to any Partner, the amount withheld shall be treated as a distribution in the amount of the withholding to that Partner. In the event of any claimed over-withholding, Partners shall be limited to an action against the applicable jurisdiction. If the amount withheld was not withheld from actual distributions, the Partnership may, at its option, (i) require the Partner to reimburse the Partnership for such withholding or (ii) reduce any subsequent distributions by the amount of such withholding. Each Partner agrees to furnish the Partnership with such representations and forms as shall reasonably be requested by the Partnership to assist it in determining the extent of, and in fulfilling, its withholding obligations.

ARTICLE V

DISTRIBUTIONS; WITHDRAWALS

Section 5.1. Class 1 Return. (a) At any time during any Fiscal Year or within 90 days after the close of a Fiscal Year, the Managing Partners may determine to pay to the Class 1 Partners any amount up to such Partners' aggregate Class 1 Return for such Fiscal Year (or, at the Managing Partners' discretion, as to any determination during a Fiscal Year, the portion of the Fiscal Year elapsed through the date of determination). Such determination shall be recorded on the books of the Partnership and the Partnership shall notify each Class 1 Partner in writing of the determination within ten days of such determination. The aggregate amount of Class 1 Return the Managing Partners have determined to pay to Class 1 Partners pursuant to this Section 5.1(a) shall be referred to as the "Declared Class 1 Return".

(b) Subject to Section 5.5, the Managing Partners may, at their discretion, distribute Available Cash to Class 1 Partners in an amount up to such Partners' aggregate Declared Class 1 Return for such Fiscal Year (or portion thereof) in proportion to each such Partner's Declared Class 1 Return for such Fiscal Year. The Managing Partners may deem any distributions to such Partners within the first 90 days of any Fiscal Year as being distributions of such Partners' Class 1 Return for the immediately preceding Fiscal Year and, for purposes of maintaining Capital Accounts and Section 4.1, shall deem such distributions to have been effected as of December 31 of such prior Fiscal Year.

(c) Subject to Section 5.5, the Managing Partners may, at their discretion, distribute Available Cash to Class 1 Partners in an amount up to the excess of (x) such Partners' aggregate Accumulated Declared Class 1 Return over (y) all amounts previously distributed to such Partners pursuant to this Section 5.1(c), in proportion to such Partners' share of such excess of (x) over (y). The Managing Partners shall exercise reasonable best efforts so that the amount of Available Cash distributed to Class 1 Partners pursuant to this Section 5.1(c) shall at all times equal or exceed the Net Income allocated to Class 1 Partners pursuant to Section 4.1(a)(iv).

(d) The Managing Partners shall not make any distributions to Class 2 Partners pursuant to Section 5.3 (but may make distributions pursuant to Section 5.2) with respect to a Fiscal Year, unless they (i) have determined pursuant to Section 5.1(a) to pay an amount not less that the aggregate Class 1 Return of all Class 1 Partners for the entire Fiscal Year in which the distribution is being made and (ii) have distributed pursuant to Section 5.1(b) the amount described in the preceding clause (i). The Managing Partners shall not make any distributions to Class 2 Partners pursuant to Section 5.2 or 5.3 with respect to a Fiscal Year, unless they have distributed pursuant to Section 5.1(c) the aggregate Accumulated Declared Class 1 Return of all Class 1 Partners as of the beginning of such Fiscal Year.

Section 5.2. Tax Distributions. Subject to Sections 5.1(d) and 5.5, the Managing Partners shall exercise reasonable best efforts to distribute Available Cash to Class 2 Partners with respect to any Fiscal Year equal to such Partners' aggregate Presumed Tax liabilities in proportion to each such Partner's Presumed Tax Liability. The amount distributable to such Partners pursuant to this Section 5.2 shall be reduced by the aggregate distribution to such Partners pursuant to Section 5.3. The Managing Partners shall exercise reasonable best efforts to distribute such cash at such times and in such amounts as to enable such Partners to pay estimated taxes on the taxable income the Managing Partners estimate the Partnership will allocate to such Partners with respect to their Class 2 Capital Accounts.

Section 5.3. Class 2 Distributions. Subject to Sections 5.1(d) and 5.5, the Managing Partners may make distributions of Available Cash to Class 2 Partners in proportion to the balances in such Partners' Class 2 Capital Accounts at the beginning of the Accounting Period within which such distribution occurs.

Section 5.4. Class 1 Capital Account Withdrawal Right and Mandatory Redemption.

(a) Subject to Section 5.5, any Class 1 Partner may request that the Partnership distribute to such Partner the balance (or any portion thereof) in such Partner's Class 1 Capital Account. At the option of the Managing Partners, the Partnership may distribute to such Partner (i) cash equal to the withdrawn balance (or portion thereof) of such Partner's Class 1 Capital Account or (ii) Partnership assets with a Value equal to the withdrawn balance (or portion thereof) or (iii) a combination of cash and Partnership assets, such that the sum of the cash and the Value of the Partnership assets shall equal the amount of the withdrawn balance (or portion thereof).

(b) Subject to Section 5.5, the Managing Partners may distribute to the Class 1 Partners, in proportion to their Class 1 Capital Accounts, all or any portion of their

Class 1 Capital Accounts: provided, however, that the Partnership shall distribute an additional amount with respect to each such distribution equal to the sum of (x) 12% of such distribution and (y) if the period during which Capital Accounts can be revalued pursuant to Section 3.3 has expired, the additional amount, if any, that would have been distributed on the distribution of the same percentage portion of the Class 1 Capital Account that was actually distributed if (i) all distributions to such Class 1 Capital Account pursuant to Section 5.1 during the period prior to such distribution have been matched with allocations of Net Income, (ii) Net Income had been allocated to such Class 1 Capital Account to the extent of any Declared Class 1 Return that has not been distributed and (iii) after the last day on which Capital Accounts could be revalued pursuant to Section 3.3, there have been no allocations of Net Income or Net Loss to such Class 1 Capital Account other than those referred to in clauses (i) and (ii).

Section 5.5. Limitations on Distributions.

(a) Notwithstanding anything herein contained to the contrary:

(i) no distribution pursuant to this Agreement shall be made if such distribution would violate the Partnership Law;

(ii) no distribution shall be made (A) from any Class 1 Capital Account if, after giving effect to such distribution, the Class 1 Capital Account shall have a negative balance; (B) from any Class 2 Capital Account if, after giving effect to such distribution, the Adjusted Class 2 Capital Account shall have a negative balance; or (C) from any Class 2 Capital Account (other than pursuant to Section 5.2) if, after giving effect to such distribution, the Value of the Partnership's assets shall be less than 110% of the aggregate balances of all Class 1 Capital Accounts; and

(iii) no distribution shall be made if such distribution would violate the terms, to the extent applicable, of any agreement or any other instrument to which the Partnership is a party.

(b) In the event of any postponement of a distribution to be made pursuant to this Agreement, (i) all amounts so retained by the Partnership shall continue to be subject to all Partnership liabilities, and (ii) the Partnership shall use its best efforts to make such distribution as soon as may reasonably be practicable; provided, however, that the Managing Partners need not take, or cause the Partnership to take, any action which the Managing Partners consider to be disadvantageous to the Partnership as a whole.

Section 5.6. Reserves. In connection with any distribution to a Partner under this Article V (other than a distribution pursuant to Section 5.4), the Managing Partners shall be entitled to cause the Partnership to establish such reserves as they deem reasonably necessary for any contingent or unforeseen Partnership liabilities, and, at the expiration of such period as shall be deemed advisable by the Managing Partners, the balance shall be distributed to such Partner (or such Partner's legal representative).

ARTICLE VI

BOOKS OF ACCOUNT

Section 6.1. Books and Records. Proper and complete records and books of account shall be kept by the Managing Partners in which shall be entered fully and accurately all transactions and other matters relative to the Partnership's business as are usually entered into records and books of account maintained by Persons engaged in businesses of a like character, including a Capital Account for each Partner. The Partnership books and records shall be kept on any permissible method of accounting selected by the Managing Partners; all methods of accounting, elections and the treatment of particular transactions shall be as consistent as possible with the methods of accounting, elections and treatments employed for Federal income tax purposes. The determinations of the Managing Partners with respect to the treatment of any item or its allocation for Federal, state or local tax purposes shall be binding upon all Partners so long as that determination is not inconsistent with any express term of this Agreement. The books and records shall at all times be maintained at the principal office of the Partnership and shall be open to the examination and inspection by the Partners or their duly authorized representative for a proper purpose during reasonable business hours in accordance with the Partnership Law. The Partnership shall maintain at its office and make available to the Partners or any designated representative of the Partners a list of names and addresses of, and Interests owned by, all Partners.

ARTICLE VII

MANAGEMENT

Section 7.1. Authority. The Managing Partners shall have exclusive and complete authority and discretion to manage the operations and affairs of the Partnership and to make all decisions regarding the business of the Partnership. Any action taken by the Managing Partners jointly or with the unanimous consent of the Managing Partners shall constitute the act of and serve to bind the Partnership, the Partners and their respective successors, assigns and personal representatives. Persons dealing with the Partnership are entitled to rely conclusively on the power and authority of the Managing Partners as set forth in this Agreement.

Section 7.2. Powers and Duties of Managing Partners. Except as otherwise specifically provided herein, the Managing Partners shall have all rights and powers of a general partner under the Partnership Law, and shall have all authority, rights and powers in the management of the Partnership business to do any and all other acts and things necessary, proper, convenient or advisable to effectuate the purposes of this Agreement.

Section 7.3. Expenses of the Partnership. The Partnership shall pay, and the Managing Partners shall not be obligated to pay, all expenses incurred by or on behalf of the Partnership. All expenses payable by the Partnership shall be paid out of cash funds of the Partnership determined by the Managing Partners to be available for such purpose, provided that the Managing Partners may, in their discretion, advance funds to the Partnership for the payment of these expenses and shall be entitled to the reimbursement of any funds so advanced.

Section 7.4. Other Activities and Competition: Additional Investments by the Partners and Affiliates. The Managing Partners shall not be required to manage the Partnership as their sole and exclusive function. The Managing Partners and the other Partners, their affiliates and agents, officers, directors and employees of the Managing Partners and the other Partners and their affiliates may enter into transactions with the Partnership and may engage in or possess any interests in business ventures and may engage in other activities of every kind and description independently or with others in addition to those relating to the Partnership, including the rendering of advice or services of any kind to other investors and the making or management of other investments. Without in any way limiting the foregoing, the Managing Partners and the other Partners, their affiliates and any agent, officer, director or employee of the Managing Partners and the other Partners or their affiliates may act as a director of any corporation, trustee of any trust, partner of any partnership or administrative officer of any business entity, and may receive compensation for service as a director, employee, advisor, consultant or manager with respect to, or participate in profits derived from, investments in or of any such corporation, trust, partnership or other business entity. The Partners authorize, consent to and approve of such present and future activities by such Persons, whether or not such activities may conflict with any interest of the Partnership or any of the Partners or be competitive with the business of the Partnership or represent an opportunity that the Partnership might wish to engage in. Neither the Partnership nor any Partner shall have any right by virtue of this Agreement or the partnership relationship created hereby in or to other ventures or activities of the Managing Partners or the other Partners or their affiliates or any officer, agent or employee of the Managing Partners or the other Partners or to the income or proceeds derived therefrom.

Section 7.5. Liability. Neither the Managing Partners nor any of their affiliates nor any officer, agent or employee of the Managing Partners or any of their affiliates shall be personally liable for the return of any portion of the capital contributions of the Partners; the return of these capital contributions shall be made solely from assets of the Partnership. Neither the Managing Partners nor any of their affiliates nor any officer, agent or employee of the Managing Partners or any of their affiliates shall be required to pay to the Partnership or the Partners any deficit in a Partner's Capital Account upon dissolution or otherwise. The Partners shall not have the right to demand or receive property other than cash for their Interests. Neither the Managing Partners nor any of their affiliates nor any officer, agent or employee of the Managing Partners or any of their affiliates shall be liable, responsible or accountable to the Partnership or the Partners for (a) any act or omission performed or omitted by it, including without limitation, those acts performed or omitted on advice of legal counsel, accountants, brokers or consultants of the Partnership, or for any costs, damages or liabilities arising therefrom, or by law, unless that act or omission was performed or omitted fraudulently or in bad faith or constituted gross negligence, (b) any tax liability imposed on the Partnership or the Partners, or (c) any loss due to the negligence, dishonesty or bad faith of any employee, officer, broker, consultant or other agent of the Partnership selected, engaged or retained in good faith by the Managing Partners.

Section 7.6. Indemnification. The Partnership shall indemnify and hold harmless each Partner and the officers, agents and employees of each Partner and the affiliates of each Partner and the officers, agents and employees of such affiliates (each an "Indemnified Party"), from and against any loss, expense, damage or injury suffered or sustained by them, by reason of any acts, omissions or alleged acts or omissions arising out

of their activities on behalf of the Partnership or in furtherance of the interests of the Partnership, including but not limited to any judgment, award, settlement, reasonable attorneys' fees and other costs or expenses incurred in connection with the defense of any actual or threatened action, proceeding or claim and including any payments made by the Partner to any affiliate, or any of its officers, agents or employees pursuant to an indemnification agreement no broader than this Section 7.6, if the acts, omissions or alleged acts or omissions upon which such actual or threatened action, proceeding or claims are based were for a purpose in good faith believed to be in the best interests of the Partnership and were not performed or omitted in bad faith or as a result of gross negligence or willful misconduct by such Indemnified Party. Any indemnification pursuant to this Section 7.6 shall be only from the assets of the Partnership.

Section 7.7. Replacement of Managing Partners. A Majority in Interest of the Partners may replace either Managing Partner with another Partner at any time.

Section 7.8. Tax Matters Partner.

(a) For purposes of Code section 6231(a)(7), the "Tax Matters Partner" shall be Richard Sands as long as he remains a Partner. The Tax Matters Partner shall keep the other Partners fully informed of any inquiry, examination or proceeding. The Tax Matters Partner shall be authorized to carry out on behalf of the Partnership and at the Partnership's expense all acts appropriate to such designation with respect to Federal, state and local taxing authorities. In the event that Richard Sands is unable to serve as Tax Matters Partner, a Majority in Interest of the Partners may designate a Tax Matters Partner.

(b) The Tax Matters Partner shall notify Partners who do not qualify as "notice partners" within the meaning of Code section 6231(a)(i) at the beginning and completion of an administrative proceeding at the Partnership level promptly upon such notice being received by the Tax Matters Partner.

## ARTICLE VIII

## ADMISSION OF ADDITIONAL PARTNERS

Section 8.1. Admission of Additional Partners. Any Person may be admitted to the Partnership as a Partner at any time with the consent of a Majority in Interest of the Partners. Any Person admitted as a Partner pursuant to this Section 8.1 shall make such Capital Contribution as a Majority in Interest of the Partners may determine.

## ARTICLE IX

## TRANSFERS OF INTERESTS BY PARTNERS

Section 9.1. Transfers of Interests by Partners.

(a) No Partner may sell, assign, pledge, or in any manner dispose of, or create, or suffer the creation of, a security interest in or any encumbrance on all or a portion

of its Interest in the Partnership (the commission of any such act being referred to as a "Transfer") without, if required by the Managing Partners, the written opinion in form and substance satisfactory to the Managing Partners of counsel satisfactory to the Managing Partners to the effect that such transfer would not violate the Securities Act of 1933 or any other applicable Federal, state or local law or require the Partnership to register as an investment company under the Investment Company Act of 1940, except as explicitly set forth in this Section 9.1. Any Transfer not made in accordance with this Section 9.1 (a "Void Transfer") shall be null and void and of no force or effect whatsoever. Any amounts otherwise distributable to a Partner pursuant to this Agreement, in respect of an Interest in the Partnership that has been Transferred in violation of this Section 9.1, may be withheld by the Managing Partners following the occurrence of a Void Transfer until the Void Transfer has been rescinded, whereupon the amount withheld shall be distributed without interest.

(b) Without limitation of paragraph (a) of this Section 9.1, any Partner may Transfer all or any portion of its Interest in the Partnership freely to any Person. For this purpose, a Partner may divide its interest for Transfer in any manner the Partner chooses, including, for example, transferring its Class 1 Capital Account and its Class 2 Capital Account to separate transferees.

Section 9.2. Admission of Transferee. In the event a Partner transfers its Interest in the Partnership pursuant to Section 9.1, a transferee of such Partner shall be entitled to be admitted to the Partnership and shown on the books and records of the Partnership as a substitute Partner if the transferring Partner and such transferee have executed and acknowledged such instrument or instruments as the Managing Partners may deem reasonably necessary or desirable to effect such admission.

## ARTICLE X

## DISSOLUTION; LIQUIDATION AND DISTRIBUTION OF ASSETS

Section 10.1. Dissolution of Partnership.

(a) The Partnership shall not be dissolved upon the death of any Partner. The Partnership shall be dissolved, wound up and terminated as provided herein upon the first to occur of the following:

(i) December 31, 2080;

(ii) the removal, withdrawal, resignation or bankruptcy of any Partner (an "Event of Withdrawal"); or

(iii) the occurrence of any other event that would make it unlawful for the business of the Partnership to be continued;

provided, however, that upon the occurrence of an Event of Withdrawal, the remaining Partners may, by written consent of a Majority in Interest of the Partners, continue the

business of the Partnership prior to application of the liquidation provisions of this Article X, such action to be taken within 90 days after such Event of Withdrawal.

(b) In the event of the dissolution of the Partnership, if the remaining Partners do not elect to continue the business of the Partnership, the remaining Partners, or a liquidating agent appointed by a Majority in Interest of the Partners (the Partners or the person appointed by them hereinafter referred to as the "Liquidator"), shall commence to wind up the affairs of the Partnership and to liquidate the Partnership's assets. The Partners shall continue to share all income, losses and distributions during the period of liquidation in accordance with Articles IV and V. The Liquidator shall have full right and unlimited discretion to determine the time, manner and terms of any sale or sales of Partnership assets pursuant to such liquidation, giving due regard to the activity and condition of the relevant market and general financial and economic conditions.

(c) The Liquidator shall have all of the rights and powers with respect to the Partnership assets in connection with the liquidation and termination of the Partnership that the Partners would have with respect to the Partnership assets during the term of the Partnership, and the Liquidator is hereby expressly authorized and empowered to execute any and all documents necessary or desirable to effectuate the liquidation and termination of the Partnership and the transfer of any assets.

(d) Notwithstanding the foregoing, a Liquidator which is not a Partner shall not be deemed a Partner in this Partnership and shall not have any of the economic interests in the Partnership of a Partner; and such Liquidator shall be compensated for its services to the Partnership at normal, customary and competitive rates for its services to the Partnership as reasonably determined by the Partners.

Section 10.2. Distribution in Liquidation. The Liquidator shall, as soon as practicable, wind up the affairs of the Partnership and sell and/or distribute the assets of the Partnership. The Partnership assets shall be applied in the following order of priority:

(a) first, to pay the costs and expenses of the winding up, liquidation and termination of the Partnership;

(b) second, to creditors of the Partnership, in the order of priority provided by law, including liabilities, fees and reimbursements payable to the Partners or their affiliates;

(c) third, to establish reserves reasonably adequate to meet any and all contingent or unforeseen liabilities or obligations of the Partnership, provided that at the expiration of such period of time as the Liquidator may deem advisable, the balance of such reserves remaining after the payment of such contingencies or liabilities shall be distributed as hereinafter provided;

(d) fourth, to the Class 1 Partners in proportion to the positive balances of their Class 1 Capital Accounts (as such Capital Accounts shall have been adjusted for all activities preceding and in connection with the liquidation of the Partnership, including, without limitation, the allocation of Net Income and Net Loss resulting from the distribution in kind of any assets of the Partnership as provided in clause (ii) of the definition of Net Income and Net Loss); and

(e) fifth, to the Class 2 Partners in proportion to the positive balances of their Class 2 Capital Accounts (as such Capital Accounts shall have been adjusted for all activities preceding and in connection with the liquidation of the Partnership, including, without limitation, the allocation of Net Income and Net Loss resulting from the distribution in kind of any assets of the Partnership as provided in clause (ii) of the definition of Net Income and Net Loss).

If the Liquidator, in its sole discretion, determines that Partnership assets other than cash are to be distributed, then the Liquidator shall determine the fair value of the assets not so liquidated. Such assets shall be retained or distributed by the Liquidator as follows:

(i) The Liquidator shall retain assets having an appraised value, net of any liability related thereto, equal to the amount by which the net proceeds of liquidated assets are insufficient to satisfy the requirements of paragraphs (a), (b), and (c) of this Section 10.2; and

(ii) The remaining assets shall be distributed to the Partners in the manner specified in paragraphs (d) and (e) of this Section 10.2.

If the Liquidator, in its sole discretion, deems it not feasible or desirable to distribute to each Partner its allocable share of each asset, the Liquidator may allocate and distribute specific assets to one or more Partners as the Liquidator shall reasonably determine to be fair and equitable, taking into consideration, inter alia, the Value of the assets and the tax consequences of the proposed distribution upon each of the Partners (including both distributees and others if any). Any distributions in kind shall be subject to such conditions relating to the disposition and management thereof as the Liquidator deems reasonable and equitable.

Section 10.3. Final Reports. Within a reasonable time following the completion of the liquidation of the Partnership's assets, the Liquidator shall supply to each of the Partners a statement which shall set forth the assets and liabilities of the Partnership as of the date of complete liquidation and each Partner's portion of distributions pursuant to Section 10.2.

Section 10.4. Deficit Restoration. Notwithstanding any other provision of this Agreement to the contrary, upon liquidation of a Partner's Interest in the Partnership (whether or not in connection with a liquidation of the Partnership), no Partner shall have any liability to restore any deficit in any of its Capital Accounts. In addition, no allocation to any Partner of any loss, whether attributable to depreciation or otherwise, shall create any asset of or obligation to the Partnership, even if such allocation reduces any Capital Account of any Partner or creates or increases a deficit in such Capital Account; it is also the intent of the Partners that no Partner shall be obligated to pay any such amount to or for the account of the Partnership or any creditor of the Partnership (however, if any court of competent jurisdiction holds that, notwithstanding the provisions of this Agreement, any

Partner is obligated to make any such payment, such obligation shall be the obligation of such Partner and not of any other Partner or of the Partnership).

Section 10.5. Termination. The Partnership shall terminate when all property owned by the Partnership shall have been disposed of and the assets shall have been distributed as provided in Section 10.2. The Liquidator shall then execute and cause to be filed a Certificate of Discontinuance of the Partnership.

ARTICLE XI

AMENDMENT OF PARTNERSHIP AGREEMENT AND POWER OF ATTORNEY

Section 11.1. Approval of Amendments. Amendments to this Agreement which do not adversely affect the rights of the Partners in any material respect may be made by the Managing Partners without the consent of the Partners if those amendments are (i) of an inconsequential nature (as determined in good faith by the Managing Partners), (ii) necessary to maintain the Partnership's status as a partnership according to Code section 7701(a)(2), (iii) necessary to preserve the validity of any and all allocations of Partnership income, gain, loss or deduction pursuant to Code section 704(b), or (iv) contemplated by this Agreement (including without limitation amendments in connection with the admission of new Partners, making of additional capital contributions or withdrawal of a Partner). Amendments to this Agreement other than those described in the foregoing sentence may be made only if embodied in an instrument signed by the Managing Partners and by a Majority in Interest of the Partners. Any such supplemental or amendatory agreement shall be adhered to and have the same effect from and after its effective date as if the same had originally been embodied in, and formed a part of, this Agreement; provided, however, that no supplemental or amendatory agreement shall, without the consent of all Partners, change or alter the provisions of this proviso or change the Partners' interest in profits, losses or distributions (except as provided in the first sentence of this Section). The Managing Partners shall give written notice to all Partners promptly after any amendment has become effective. Any amendment to this Agreement must be in writing.

Section 11.2. Amendment of Certificate. In the event this Agreement shall be amended pursuant to Section 11.1, the Managing Partners shall amend the Business Certificate for Partners to reflect that change if it deems the amendment of the Certificate to be necessary or appropriate.

Section 11.3. Power of Attorney. Each Partner hereby irrevocably constitutes and appoints the Managing Partners (and the Liquidator) as its true and lawful attorneys-in-fact, with full power of substitution, in its name, place and stead to make, execute, sign, acknowledge (including swearing to), record and file, on behalf of it and on behalf of the Partnership, the following:

(a) A Business Certificate for Partners and any other certificates or instruments which may be required to be filed by the Partnership or any of the Partners under the laws of the State of New York and any other jurisdiction whose laws may be applicable;

(b) A Certificate of Discontinuance of the Partnership and such other instruments as may be deemed necessary or desirable by the holder of such power upon the termination of the Partnership; and

(c) Any and all amendments of the instruments described in paragraphs (a) and (b) hereof, provided such amendments are either required by law to be filed or have been authorized by the Partners.

The foregoing grant of authority:

(i) shall survive the delivery of an assignment by a Partner of the whole or any portion of its Interest and any assignee of such Partner does hereby constitute and appoint the aforesaid holders his or her attorney in the same manner and force and for the same purposes as does the assignor;

(ii) is a special power of attorney coupled with an interest, is irrevocable and shall survive the death or incapacity of the Partner granting the power; and

(iii) may be exercised by the holder on behalf of a Partner by a facsimile signature or by listing all of the Partners executing any instrument with a single signature as attorney-in-fact for all of them.

## ARTICLE XII

## MISCELLANEOUS

Section 12.1. Notices. All notices and demands required or permitted under this Agreement shall be in writing and shall be deemed to have been duly given when delivered in person or by registered or certified mail to the addresses of the Partners as shown from time to time on the records of the Partnership. Any Partner may specify a different address by notifying the Managing Partners in writing of that different address.

Section 12.2. Entire Agreement. This Agreement constitutes the entire agreement among the parties. It supersedes any prior agreement or understandings among them, and may be modified or amended only in writing as set forth herein.

Section 12.3. Governing Law. This Agreement and the rights of the parties hereunder shall be governed by and interpreted in accordance with the law of the State of New York.

Section 12.4. Effect. Except as herein otherwise specifically provided, this Agreement shall be binding upon and inure to the benefit of the parties and their legal representatives, successors and assigns.

Section 12.5. Pronouns and Number. Wherever it appears appropriate from the context, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in either the masculine, feminine or neuter shall include the masculine, feminine and neuter.

Section 12.6. Captions. Captions contained in this Agreement are inserted only as a matter of convenience and in no way define, limit or extend the scope or intent of this Agreement or any provision hereof.

Section 12.7. Partial Enforceability. If any provision of this Agreement, or the application of that provision to any Person or circumstance, shall be held invalid, the remainder of this Agreement, or the application of that provision to persons or circumstances other than those to which it is held invalid, shall not be affected thereby.

Section 12.8. Third Party Claims. No Person other than a Partner shall have any legal or equitable right, remedy or claim under or in respect of this Agreement.

Section 12.9. Counterparts. This Agreement may be executed in several counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument. In addition, this Agreement may contain more than one counterpart of the signature page and this Agreement may be executed by the affixing of the signatures of each of the Partners to one of such counterpart signature pages. All of those counterpart signatures pages shall be read as though one, and they shall have the same force and effect as though all of the signers had signed a single signature page.

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first written above.

Laurie Sands

Richard Sands

Robert Sands

SCHEDULE A
TO PARTNERSHIP
AGREEMENT

Names, Addresses, and
Capital Contributions of Partners

| Name and Address of Partner | Partner's Capital Contribution |
|---|---|
| Laurie Sands<br>[redacted]<br>Rochester, New York 14610 | 305,861 shares of Class A Common Stock, par value $.01 per share, of Canandaigua Wine Company, Inc.<br><br>672,174 shares of Class B Common Stock, par value $.01 per share, of Canandaigua Wine Company, Inc.<br><br>All of her interest as a general partner in L, R & R, a New York general partnership<br><br>All of her interest as a general partner in M, L, R & R, a New York general partnership<br><br>All of her interest as a member of L, R, R & M, L.L.C., a New York limited liability company<br><br>Cash in the amount of $100,000 |