IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-407 T
(into which have been consolidated Nos. 06-408 T,
06-409 T, 06-410 T, 06-411 T, 06-810 T, 06-811 T)
Judge Emily C. Hewitt

| | |
|---|---|
| ALPHA I, L.P., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | 06-407 T |
| BETA PARTNERS, L.L.C., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | 06-408 T |
| R, R, M & C PARTNERS, L.L.C., BY AND THROUGH R, R, M & C GROUP, L.P., A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | 06-409 T |

EXHIBIT
tabbies
52

| | | |
|---|---|---|
| R, R, M & C GROUP, L.P., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-410 T |
| CWC PARTNERSHIP I, BY AND THROUGH TRUST FBO ZACHARY STERN U/A FIFTH G. ANDREW STERN AND MARILYN SANDS, TRUSTEES, A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-411 T |
| MICKEY MANAGEMENT, L.P., BY AND THROUGH MARILYN SANDS, A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-810 T |

| | | |
|---|---|---|
| M, L, R & R, BY AND THROUGH RICHARD E. SANDS, TAX MATTERS PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-811 T |

**AFFIDAVIT OF ROBERT SANDS**

I, Robert Sands, being duly sworn, hereby state as follows:

1. I am over the age of 18 and have personal knowledge of the matters set forth herein and if called as a witness could competently testify thereto.

2. I was personally involved in the transactions at issue in these consolidated cases as a partner in plaintiffs Alpha I, L.P. ("Alpha"), R, R, M & C Group, L.P. ("Group"), M, L, R & R, and CWC Partnership I ("CWC").

3. I am a licensed attorney, but I do not practice tax law. I have not had any special training in tax other than a basic income tax class in law school.

4. In the spring of 2001, a representative of The Heritage Organization (Heritage) contacted my brother, Richard Sands, regarding possible strategies the family could implement to transfer wealth between generations and diversify their assets in a tax-efficient manner.

5. Richard discussed the call with me, and we agreed that I would, on behalf of the family, look into the background of Heritage and discuss their strategies with our advisors.

6. As an attorney for the family, I generally research law firms, investment firms, and the strategies they suggest when the family considers engaging them and make recommendations to the family based on my due diligence. I also, on occasion, provide legal guidance to my family either based on my own legal experience and research or after getting advice from an outside legal advisor. My family generally follows my advice in such instances.

7. In July 2001, I requested Heritage to provide me with some references of other individuals who had used their services. Heritage provided me with a list of references who I then contacted. I also asked Jonathan Blattmachr of Milbank, Tweed, Hadley & McCloy LLP what he knew of Heritage and its principals, in particular Gary Kornman.

8. Richard and I met with representatives of Heritage on several occasions in 2001. Freddy Robinson of Bernard Robinson & Company and Jonathan Blattmachr of Milbank Tweed also attended one or more of those meetings with us to review various aspects of the financial plan presented by Heritage. We had engaged Jonathan Blattmachr to advise us on the tax treatment and other aspects of the financial plan presented by Heritage.

9. Bernard Robinson & Company is the accounting firm our family has used for decades, at least since the 1950s. The firm has prepared our tax returns and provided tax advice to the family members for many years.

10. Our family had also engaged Milbank Tweed, and in particular Jonathan Blattmachr, to provide legal services on several occasions since the early 1990s.

11. Based in part on our discussions with Heritage and with our advisors Freddy Robinson and Jonathan Blattmachr, we decided to implement a financial plan, a part of which included the formation of and investment by our family members and various trusts in Alpha I, L.P. ("Alpha").

12. Heritage recommended that we engage the law firm of Lewis, Rice & Fingersh, L.C. ("Lewis Rice") to assist us in implementing the financial plan and to provide us with tax opinions regarding the proper tax treatment of our investments.

13. I researched the law firm of Lewis Rice and reviewed the information provided to me on Michael Mulligan, the principal attorney who would be representing us. I determined that Michael Mulligan was an experienced tax attorney and that the firm had a good reputation. Based on my research, my family and I engaged Lewis Rice to provide legal services relating to implementation and tax opinions regarding the proper tax treatment of the transactions.

14. We formed Alpha as an investment partnership for our family members. Investing through a partnership also enhanced the privacy our family's financial information.

15. Richard and I managed and continue to manage Alpha through its general partner, R, R, M & C Management Corporation, of which we are each 50% owners.

16. We have continued to make many investments through Alpha in the years since its formation, and during this period, Alpha has generated more than $21 million of profits. Alpha presently holds approximately $61,000,000 in assets.

17. In December 2001, my family members and I (along with three trusts) engaged in short sales of Treasury notes. We had a number of reasons for engaging in the short

sales including profiting from movements in interest rates, diversifying our investments, and potentially obtaining tax benefits.

18. We formed Beta Partners, LLC ("Beta") to provide individual investors outside the family an opportunity to invest with the family members.

19. Lewis Rice issued tax opinions regarding the tax treatment of our investment in Alpha to all of the Alpha limited partners in April 2002. I read the opinion and relied on its conclusion that it was more likely than not correct to not treat the contingent obligations to cover the short sale positions as liabilities for purposes of section 752 in determining the proper tax treatment of the transactions at issue in these consolidated cases.

20. Both Jonathan Blattmachr and Freddy Robinson, who we had engaged to advise us generally on the Heritage financial plan, concurred with the rationale for the positions taken on our tax returns. The positions taken on our tax returns, which were prepared by Bernard Robinson & Company, were consistent with the conclusion by Lewis Rice that it was more likely than not correct to not treat the contingent obligations to cover the short sale positions as liabilities for purposes of section 752.

21. I trusted Freddy Robinson, Jonathan Blattmachr, and Lewis Rice in taking the tax positions at issue and had no reason to question their advice.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my personal knowledge.

Dated the 3rd day of July 2007.

Robert Sands

Sworn to before me this
3rd day of July, 2007

Notary Public

KAREN J SORCE
Notary Public, State of New York
No. 01S05037146
Qualified in Ontario County
Commission Expires December 19, 20 10