IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-407 T
(into which have been consolidated Nos. 06-408 T, 06-409 T, 06-410 T, 06-411 T, 06-810 T, 06-811 T)
Judge Emily C. Hewitt

| | |
|---|---|
| ALPHA I, L.P., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | 06-407 T |
| BETA PARTNERS, L.L.C., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | 06-408 T |
| R, R, M & C PARTNERS, L.L.C., BY AND THROUGH R, R, M & C GROUP, L.P., A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | 06-409 T |

EXHIBIT
53

| | |
|---|---|
| R, R, M & C GROUP, L.P., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | 06-410 T |
| CWC PARTNERSHIP I, BY AND THROUGH TRUST FBO ZACHARY STERN U/A FIFTH G. ANDREW STERN AND MARILYN SANDS, TRUSTEES, A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | 06-411 T |
| MICKEY MANAGEMENT, L.P., BY AND THROUGH MARILYN SANDS, A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | 06-810 T |

| | | |
|---|---|---|
| M, L, R & R, BY AND THROUGH RICHARD E. SANDS, TAX MATTERS PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-811 T |

**AFFIDAVIT OF RICHARD SANDS**

I, Richard Sands, being duly sworn, hereby state as follows:

1. I am over the age of 18 and have personal knowledge of the matters set forth herein and if called as a witness could competently testify thereto.

2. I was personally involved in the transactions at issue in these consolidated cases as a partner in plaintiffs Alpha I, L.P. ("Alpha"), R, R, M & C Group, L.P. ("Group"), M, L, R & R, and CWC Partnership I ("CWC").

3. I am not an attorney, and I have not had any special training in tax law. My mother, Marilyn Sands and my brother-in-law, Andrew Stern, are not attorneys or accountants.

4. In the spring of 2001, a representative of The Heritage Organization (Heritage) contacted me regarding possible strategies the family could implement to transfer wealth between generations and diversify our assets in a tax-efficient manner.

5. I mentioned the discussion to my brother, Robert Sands, and we agreed that he would, on behalf of the family, look into the background of Heritage and discuss their strategies with our advisors.

6. As an attorney for the family, my brother would generally research law firms or investment firms the family considered engaging and any strategies, investments, or recommendations they presented and make recommendations to the family based on his due diligence. He also provides legal guidance to our family either based on his own legal experience and research or after getting advice from an outside legal advisor. We trust his judgment and generally follow his advice in such instances.

7. Robert looked into the background of Heritage, and we agreed to meet with representatives of Heritage to discuss their planning techniques and strategies.

8. Robert and I met with representatives of Heritage on several occasions in 2001. Freddy Robinson of Bernard Robinson & Company and Jonathan Blattmachr of Milbank Tweed also attended one or more of those meetings with us to review various aspects of the financial plan presented by Heritage. We had engaged Jonathan Blattmachr to advise us on the tax treatment and other aspects of the financial plan presented by Heritage.

9. Bernard Robinson & Company has been the CPA firm used by our family for decades, at least since the 1950s. The firm has prepared our tax returns and provided tax advice to the family members for many years

10. Our family had also engaged Milbank Tweed, and in particular Jonathan Blattmachr, to provide legal services on several occasions since the early 1990s.

11. Based in part on our discussions with Heritage and with our advisors Freddy Robinson and Jonathan Blattmachr, we decided to implement a financial plan, a part of which included the formation of and investment by our family members and various trusts in Alpha I, L.P. ("Alpha").

12. Heritage recommended that we engage the law firm of Lewis, Rice & Fingersh, L.C. ("Lewis Rice") to assist us in implementing the financial plan and to provide us with tax opinions regarding the proper tax treatment of our investments. Robert researched the firm and determined that we should engage them to assist us in implementing our financial plan and to provide tax opinions regarding the proper tax treatment of the transactions.

13. We formed Alpha as an investment vehicle for our family members to pool assets and to enhance the privacy our family's financial information.

14. Robert and I managed and continue to manage Alpha through its general partner, R, R, M & C Management Corporation, of which we are each 50% owners.

15. We have continued to make many investments through Alpha in the years since its formation, and during this period, Alpha has generated more than $21 million of profits. Alpha presently holds approximately $61,000,000 in assets.

16. In December 2001, my family members and I (along with three trusts) engaged in short sales of Treasury notes. We had a number of reasons for engaging in the short sales including profiting from movements in interest rates, hedging against the impact of movements in interests rates on their stock holdings in Constellation Brands, diversifying our holdings, and potentially obtaining tax benefits.

17. We formed Beta Partners, LLC ("Beta") to provide individual investors outside the family an opportunity to invest with the family members. We wanted to use a separate entity for investors outside the family.

18. Lewis Rice issued tax opinions regarding the tax treatment of our investment in Alpha to all of the Alpha limited partners in April 2002. I relied on its conclusion

that that it was more likely than not correct to not treat the contingent obligations to cover the short sale positions as liabilities for purposes of section 752 in determining the proper tax treatment of the transactions at issue in these consolidated cases.

19. I also relied on Jonathan Blattmachr and Freddy Robinson. Both Jonathan and Freddy concurred with the rationale for the positions taken on our tax returns. The positions taken on our tax returns, which were prepared by Bernard Robinson & Company, were consistent with the conclusion by Lewis Rice that it was more likely than not correct to not treat the contingent obligations to cover the short sale positions as liabilities for purposes of section 752.

20. I trusted Freddy Robinson, Jonathan Blattmachr, and Lewis Rice in taking the tax positions at issue and had no reason to question their advice.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my personal knowledge.

Dated the 3rd day of July 2007.

Richard Sands

Sworn to before me this
3rd day of July, 2007

Notary Public

KAREN J SORCE
Notary Public, State of New York
No. 01SO5037146
Qualified in Ontario County
Commission Expires December 19, 2010

AO 1722959.1