# IN THE UNITED STATES FEDERAL COURT OF CLAIMS

No. 06-407 T
(into which have been consolidated Nos. 06-408 T,
06-409 T, 06-410 T, 06-411 T, 06-810 T, 06-811 T)
Judge Emily C. Hewitt

| | |
|---|---|
| ALPHA I, L.P., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>*Plaintiff*,<br><br>v.<br><br>THE UNITED STATES,<br><br>*Defendant.* | 06-407 T |
| BETA PARTNERS, L.L.C., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>*Plaintiff*,<br><br>v.<br><br>THE UNITED STATES,<br><br>*Defendant.* | 06-408 T |
| R, R, M & C PARTNERS, L.L.C., BY AND THROUGH R, R, M & C GROUP, L.P., A NOTICE PARTNER,<br><br>*Plaintiff*,<br><br>v.<br><br>THE UNITED STATES,<br><br>*Defendant.* | 06-409 T |
| R, R, M & C GROUP, L.P., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>*Plaintiff*,<br><br>v.<br><br>THE UNITED STATES,<br><br>*Defendant.* | 06-410 T |



EXHIBIT 55

| | |
|---|---|
| CWC PARTNERSHIP I, BY AND THROUGH TRUST FBO ZACHARY STERN U/A FIFTH G. ANDREW STERN AND MARILYN SANDS, TRUSTEES, A NOTICE PARTNER,<br><br>*Plaintiff*,<br><br>v<br><br>THE UNITED STATES,<br><br>*Defendant* | 06-411 T |
| MICKEY MANAGEMENT, L.P., BY AND THROUGH MARILYN SANDS, A NOTICE PARTNER,<br><br>*Plaintiff*,<br><br>v.<br><br>THE UNITED STATES,<br><br>*Defendant* | 06-810 T |
| M, L, R & R, BY AND THROUGH RICHARD E SANDS, TAX MATTERS PARTNER,<br><br>*Plaintiff*,<br><br>v<br><br>THE UNITED STATES,<br><br>*Defendant* | 06-811 T |

## DECLARATION OF WILLIAM J. FALK

1. My name is William J. Falk. I am over the age of 18 and am fully competent to make this declaration. The facts contained in this declaration are within my personal knowledge or based upon information made available to me, and are true and correct.

2. I am an attorney licensed in the State of Missouri and a member of Lewis, Rice & Fingersh, L.C. ("LRF"), a law firm with approximately 170 attorneys based in St. Louis, Missouri. I have concentrated my practice in tax-related matters since graduating from Suffolk University Law School in 1977. I received an LL.M. in Taxation from Washington University School of Law in 1982.

3. From 1977-1981, I was a Trial Attorney and for approximately my last two years, Tax Shelter Litigation Coordinator with the Internal Revenue Service, Office of District Counsel, St. Louis, Missouri. From 1981-1999, I practiced with Thompson Coburn LLP (f/k/a Thompson & Mitchell) in St. Louis and was vice-chair of its tax practice group. I have been a member of LRF since 1999, and I am authorized to make this declaration on its behalf. I presently serve as chairman of the LRF tax department.

4. Beginning in August 2001, LRF entered into attorney-client relationships with members of the Sands family, individually, or in their representative capacities for various trusts and other entities. Those persons included Richard E. Sands, Robert Sands, Marilyn Sands, and Andrew Stern (collectively the "Sands family").

5. The Sands family sought legal services in connection with steps they proposed to take to implement a financial plan proposed by The Heritage Organization, LLC ("Heritage"). One aspect of that financial plan was a transaction involving a short sale of U.S. Treasury securities. Some members of the Sands family implemented that transaction twice (once in a transaction that began in August 2001, and once in a transaction that began in December 2001), and other members implemented that transaction once.

6. Through separate engagement letters with the Sands family, LRF agreed to provide specific services, including: preparing documents forming various entities to implement their planning decisions; rendering advice concerning the tax and legal consequences of the

transactions in which they engage; and furnishing a written legal opinion as to the tax consequences of those transactions.

7. I understand that Heritage referred the Sands family to LRF. LRF made an independent evaluation whether to enter into attorney-client relationships with the Sands family members. LRF independently determined the fee it would seek from the Sands family for its services, based upon its estimate of the amount of time and complexity of the services and based upon the factors expressly permitted under the applicable rules of professional conduct in Missouri The fee was not dependent upon the outcome of any transaction, nor was it a percentage of an amount invested. The Sands family participants retained LRF and were our clients and they paid LRF for our legal services to them. LRF did not receive any fee or compensation from Heritage for such services, nor did it pay any sums to Heritage.

8. Over the course of its engagement, 10 different LRF personnel expended approximately 549 hours representing the Sands family. Another member of LRF, Michael Mulligan, spent approximately 122 hours on the engagement. Mr. Mulligan concentrates his practice in estate planning and closely held businesses, partnerships, and joint ventures. Mr. Mulligan provided legal services to the Sands family both to implement their planning decisions and to achieve their wealth-transfer objectives. Mr. Mulligan received his law degree from Columbia University in 1971 and has been with LRF since 1972.

9. I personally spent approximately 258 hours on the engagements for the Sands family. I conducted a due diligence process to determine certain facts that my colleagues and I deemed important to our work for the Sands family That due diligence included Internet research concerning Constellation Brands, Inc ("Constellation"), a publicly-traded company in which the Sands family had significant management responsibilities and ownership interests, and

a detailed telephone interview on November 20, 2001, of Robert Sands and his mother, Marilyn ("Mickey") Sands.

10. The due diligence interview covered a broad array of subjects including, among other things: the investment experience of the Sands family members; their investment portfolio and its diversification or concentration; the interest rate sensitivity of the profitability of Constellation; the business lines of Constellation; the interest rate sensitivity of investments held by the Sands family; the Sands family's assessment of the economy, of the prospect of a rise in interest rates (and the related prospect of a significant non-tax economic profit from a short sale of Treasury Notes); the Sands family's desire to diversify its investment holdings and to increase the liquidity of its investment portfolio; the economic and investment data tracked by the Sands family; the types of entities used by the Sands family in business and in their investment activities; the Sands family's discussion of the proposed financial plan with Heritage and the family's discussion of interest rate information from another adviser; and the fact that Gloria Robinson would not receive any indemnity or protection against loss with respect to her involvement in the transactions.

11. The background, education, investment sophistication, and experience of the Sands family were impressive. Richard E. Sands held a Ph.D. in social psychology and was President, Chairman of the Board, and Chief Executive Officer of Constellation. His brother, Robert Sands, was an attorney who served as General Counsel of Constellation commencing in 1986, and held numerous executive positions, including Chief Executive Officer International. Their mother, Marilyn ("Mickey") Sands, was knowledgeable, but primarily relied upon the business and investment advice of family members: initially the advice of her late husband, Marvin and, after his death, the advice of her sons Richard and Robert.

12. I recall being impressed with the sophistication of the family's knowledge and investment activities, particularly with Robert Sand's explanation of several arbitrage strategies pursued by funds in which the family had investment positions.

13. Following the due diligence interview, LRF prepared proposed representation letters from the participating members of the Sands family to LRF. My transmittal letters requested that each recipient review the representations for factual accuracy and, if the recipient was not comfortable with the accuracy of the representation letter or if the recipient believed that any information or clarification would be helpful, he or she should contact me.

14. Through separate letters dated December 28, 2001 and April 11, 2002, respectively, the Sands family members provided LRF with representations with respect to the financial plan. LRF received substantially identical representations letters dated December 28, 2001 and April 11, 2002, respectively, from Richard Sands, Robert Sands, Marilyn Sands, and Andrew Stern, individually, and/or in their representative capacities.

15. The representations letters confirmed that the financial plan was, in part, an extension of an overall investment strategy by the Sands family.

16. The Sands family adopted the financial plan to achieve various objectives, including long term financial and estate planning.

17. Several of the entities the Sands family directed LRF to form were intended to effect the financial plan over the next several years.

18. LRF issued a federal income tax opinion to each Sands family participant in each of the two transactions referenced above. The first such set of opinions was dated December 28, 2001, and the second such set of opinions was dated April 12, 2002.

19. Although various LRF attorneys worked on these transactions, I was the principal drafter of the federal income tax opinions LRF issued. The second member of LRF who

reviewed the opinion was Lawrence H. Weltman. Mr. Weltman received his law degree from Washington University School of Law in 1968, and his LL.M. in taxation from New York University School of Law in 1970. He has concentrated his practice in tax-related matters since 1970. Mr. Weltman practiced with Baker & McKenzie from 1970-1973 and has been with LRF since 1973.

20. The opinions LRF issued to the members of the Sands family were the product of extensive research and analysis of pertinent authorities, consistent with applicable opinion standards; our experience, professional judgment, and our assessment of the probable outcome of litigation or other adversarial proceedings properly and effectively presented by representatives of the Sands family arising from IRS challenges to the transactions as to which LRF opined.

21. I believed as of the date each LRF opinion issued to the members of the Sands family, and continue to believe, that – subject to the assumptions and limitations stated therein – each such opinion properly reflected the applicable legal authorities at the time it was issued.

22. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on this 5th day of July 2007.

LEWIS, RICE & FINGERSH, L.C.

By: ______________________
WILLIAM J. FALK
Its: Member