memory and I really do. I can't remember anything.

Q. That's fine. I just have to ask the questions.

A. It's okay. I hope you don't mind the answer.

Q. No.

Do you know who primarily dealt with Heritage on behalf of your family?

A. Rob.

Q. Okay.

A. I need to correct that. I mean, I was present. I dealt with them. I just don't remember anything.

Q. Do you think Robert had more contact with Heritage than you did?

A. I can't speculate.

Q. Okay.

A. I'm withdrawing my answer when I said Rob, because I don't know who primarily dealt with them. We both dealt with Heritage.

Q. Do you recall whether Andrew Stern ever met with Heritage or spoke with Heritage on the phone?

A. I don't recall whether he ever met with Heritage or spoke to Heritage.

Q. What about your mother Marilyn, do you recall

whether --

A. She never met Heritage or spoke to Heritage.

Q. Okay. Like I said, I'm going to ask you these questions. If you don't remember, that's fine. But I have to at least ask them.

A. It's okay.

Q. At the meeting with Heritage or meetings that you may have had, did anyone discuss any sort of time line that the strategies would need to generate the results?

A. I don't recall.

Q. Okay. Was there any discussion about profit potential from the transactions at the meetings?

A. I believe so in that that was our number one motive is to make money.

Q. Now, we're talking about the transactions, the first and the second transaction.

What were the sources of profit that you believed existed with respect to these transactions?

A. Well, one, I believe we made short sales of treasuries, highly leveraged short sales of treasuries which can result in a huge return on your investment.

We had in the second transaction purchased Yahoo and Corning which as I recall were at all time low. So

would pay capital gains tax against.

Q. So we talked about there was a profit potential and you just mentioned there was a tax benefit.

A. Uhm-uhm.

Q. Would the primary motivation for entering into the Heritage transaction be the tax savings or the profit potential?

A. Profit potential.

Q. So -- go ahead.

A. I need to clarify something. You gave me a choice. I gave you many reasons why we were doing what we were doing. And you gave me a choice. I'm going to retract what I said and go back to what I said initially. We had multiple motives; profit, diversification, estate planning, philanthropy, and you can add to it minimizing taxes.

Q. Was --

A. There is no primary.

Q. That was going to be my question.

A. Okay. You gave me a didactic choice.

Q. I understand. So if the Heritage transactions, the first partnership and the second partnership, didn't have any tax benefit at all do you

also involves charitable remainder trusts. Do you recall that?

A. Yes.

Q. At some point during this transaction you assigned your interest in RRM&C Group to your charitable remainder trust; is that correct?

A. Could you be more specific? You said to your charitable remainder trust. I don't know what you're talking about, your charitable remainder trust.

Q. Did you create a charitable remainder unitrust in 2001?

A. An individual one?

Q. Yes.

A. I don't recall.

Q. Are you familiar with the Richard Sands charitable remainder unitrust?

A. Yes.

Q. Do you recall that your interest in RRM&C Group was --

A. I don't recall.

Q. Do you dispute that that might have happened?

A. No, no, I don't doubt it.

Q. Okay. Who made the decision to contribute your interest in RRM&C Group to the charitable

remainder unitrust?

A. I must have.

Q. Okay. And why did you decide to do that?

A. Because we were looking for ways to fund our philanthropic needs or I really should say the philanthropic demands that are placed on us.

Q. Okay. How does a charitable remainder unitrust meet those goals?

A. We are giving to a charity the remainder interest and that charity can then in turn use that to give to other charities.

Q. Okay. Who was the charitable remainder beneficiary of the charitable remainder unitrust, do you recall?

A. The exact name I might get wrong.

Q. Okay. If I tell you that initially it was the Sands Supporting Foundation, does that sound familiar?

A. The Sands Supporting Foundation. Sounds reasonable.

MR. JONES: Let me advise you, don't speculate. If she has a document that she wants to show so you can answer that under oath, then that's fine, but if she is just asking do you recall then you

should say what you recall, not what you're imagining.

THE WITNESS: I recall that the name had something like educational health supporting order, but --

BY MS. JOHNS:

Q. Is there an entity today called the Sands Supporting Foundation?

A. Not that I know of.

Q. Okay.

A. The word supporting it troubling.

Q. At one time there may have been?

A. You know, I don't recall.

Q. Okay. Have you heard of an entity called The Educational and Health Support Fund?

A. Yes.

Q. Okay. Tell me what The Educational and Health Support Fund is?

A. The Educational and Health Support Fund is a supporting organization for a variety of listed educational and health entities, charities, charitable organizations.

Q. Is it still in existence today?

A. Yes.

Q. Do you recall during this first set of

transactions that this Educational and Health Support Fund was a charitable remainder of this -- a remainder beneficial of this CRUT, let's just call it?

A. Yes.

Q. Do you recall in this transaction - we're still talking about this first set of partnerships, this first set of transactions - about -- do you recall purchasing the remainder interest in this charitable remainder unitrust?

A. It's the word recall.

Q. I don't know how else to ask it. Do you have any knowledge of the purchase of the remainder interest?

A. It happened.

Q. Okay. Thanks. I just want to make sure you remembered that.

Why was the remainder interest purchased?

A. I don't recall.

Q. Okay. Do you recall what the purchase price was for the remainder interest?

A. I don't recall the exact purchase price.

Q. Do you know who decided that the remainder interest in this charitable remainder unitrust should be purchased?