IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-407 T
(into which have been consolidated Nos. 06-408 T,
06-409 T, 06-410 T, 06-411 T, 06-810 T, 06-811 T)
Judge Emily C. Hewitt
(E-Filed: July 5, 2007)

| | |
|---|---|
| ALPHA I, L.P., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | 06-407 T |
| BETA PARTNERS, L.L.C., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | 06-408 T |
| R, R, M & C PARTNERS, L.L.C., BY AND THROUGH R, R, M & C GROUP, L.P., A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | 06-409 T |

| | | |
|---|---|---|
| R, R, M & C GROUP, L.P., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-410 T |
| CWC PARTNERSHIP I, BY AND THROUGH TRUST FBO ZACHARY STERN U/A FIFTH G. ANDREW STERN AND MARILYN SANDS, TRUSTEES, A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-411 T |
| MICKEY MANAGEMENT, L.P., BY AND THROUGH MARILYN SANDS, A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-810 T |

| | | |
|---|---|---|
| M, L, R & R, BY AND THROUGH RICHARD E. SANDS, TAX MATTERS PARTNER, | ) | |
| Plaintiff, | ) | |
| v. | ) | 06-811 T |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**PROPOSED FINDINGS OF UNCONTROVERTED FACT**

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims, Plaintiffs submit these Proposed Findings of Uncontroverted Fact. These facts rely on documents produced in plaintiffs' initial disclosures, affidavits of the Sands family members and one of their advisors, and a declaration of Julie P. Bowling with exhibits, attached hereto as Appendices A and B.

**Contact with Heritage**

1. In the spring of 2001, a representative of The Heritage Organization (Heritage) contacted the Sands family regarding possible strategies the family could implement to transfer wealth between generations and diversify their assets in a tax-efficient manner. Plaintiffs' Exhibits 52 and 53, App. B at pp. 1350, 1357.
2. On behalf of the Sands family, Robert Sands conducted due diligence before deciding to implement any of the strategies suggested by Heritage. Robert Sands requested references from Heritage and contacted those references. He also asked Jonathan Blattmachr of Milbank, Tweed, Hadley & McCloy LLP to provide him Jonathan's impression of Heritage and some background information on Gary Kornman, one of the

principals of Heritage. Plaintiffs' Exhibits 1, 2, 52 and 53, App. B at pp. 1-5, 1350-1351, 1357.

3. Robert Sands, as an attorney for the family, often researched law firms or investment firms the family was considering engaging and made recommendations to the family based on his due diligence. Plaintiffs' Exhibits 3, 52, and 53, App. B at pp. 9, 1351, 1358.

4. Based on the due diligence conducted by Robert, Robert and Richard agreed to meet with representatives of Heritage. Robert, Richard, and some of their advisors (including Jonathan Blattmachr and Freddy Robinson) met with representatives from Heritage on several occasions in 2001. Plaintiffs' Exhibits 52 and 53, App. B at pp. 1351, 1358.

**The Transactions**

5. Based in part on discussions with Heritage, the Sands family members and certain trusts implemented a financial plan, a part of which included formation of and investment by the family members in Alpha I, L.P. ("Alpha"). Plaintiffs' Exhibits 52 and 53, App. B at pp. 1352, 1358.

6. The purpose of Alpha was to provide an investment vehicle for the family members to pool assets and to enhance the privacy of the family's financial information. Plaintiffs' Exhibits 52 and 53, App. B at pp. 1352, 1359.

7. Alpha is a limited partnership formed on December 3, 2001 under the laws of Missouri. Plaintiffs Exhibit 4, App. B at pp. 11-12.

8. During 2001 and 2002, the six limited partners in Alpha were Robert Sands, Richard Sands, Marilyn Sands, Andrew Stern, the Marvin Sands Master Trust, and CWC

Partnership I ("CWC") (hereinafter referred to collectively as the "Alpha limited partners"). Plaintiffs' Exhibits 5, 6 and 7, App. B at pp. 38-43, 49-56, 59-63, 72-82, 86-88.

9. CWC is a general partnership organized under the law of New York. As of December 31, 2001, the Trust FBO Abigail Stern U/W Laurie Sands ("Abigail Trust") and Trust FBO Zachary Stern U/W Laurie Sands ("Zachary Trust") each held a 49.5% Class 2 partnership interest in CWC. Richard Sands and Robert Sands each held a .5% Class 2 partnership interest in CWC. Plaintiffs' Exhibit 8, App. B at pp. 104-111, 116-123.

10. The general partner in Alpha was at all times R, R, M & C Management Corp. Plaintiffs' Exhibits 5, 52, and 53, App. B at pp. 22, 1352, 1359.

11. R, R, M & C Management Corp. is a corporation that was formed on August 23, 2001 under the laws of Missouri. Plaintiffs' Exhibit 9, App. B at pp. 227-228.

12. In 2001 and 2002, R, R, M & C Management Corp.'s sole shareholders were Robert Sands and Richard Sands. Robert Sands and Richard Sands each provided $55,000 and 1,001 shares of Constellation stock to Management Corp. in exchange for the stock they received from Management Corp. Plaintiffs' Exhibits 10, 11, and 12, App. B at pp. 229-230, 235-246.

13. The Sands family has used Alpha to make many investments in the years since its formation, and during this period, Alpha has generated more than $21 million of profits. Alpha presently holds approximately $61,000,000 in assets. Plaintiffs' Exhibit 13, App. B at pp. 247, 250.

14. On December 11, 2001, Richard Sands, Robert, Sands, Marilyn Sands, Andrew Stern, the Marvin Sands Master Trust, the Abigail Trust, and the Zachary Trust all executed short

sales of Treasury Notes through UBS PaineWebber ("PaineWebber") accounts. The short sales were in an aggregate face amount of approximately $30,800,000 U.S. Treasury notes bearing coupon interest of 2.75% due 9/30/03 and an aggregate face amount of approximately $13,200,000 U.S. Treasury notes bearing coupon interest of 4.625% due 5/15/06 for total proceeds of approximately $44 million. Plaintiffs' Exhibits 14 and 15, App. B at pp. 253-297, 298-311.

15. The Sands family members entered into the short sales for a variety of reasons, including: 1) to hedge against the impact of movements in interests rates on their stock holdings in Constellation Brands; 2) to profit from movements in interest rates; 3) to potentially obtain tax benefits; and 4) to increase diversification and liquidity in their investment portfolios. Plaintiffs' Exhibits 52 and 53, App. B at pp. 1352-1353, 1359.

16. At the time the Sands family members entered into the short sales, they could not know the cost to acquire the replacement Treasury notes that would be needed to close the short sales. The cost to cover the short sales of Treasury notes is determined by movements in interest rates that directly impact the price of Treasury notes needed to close the short sales. Plaintiffs' Exhibits 16 - 22, App. B at pp. 314, 340, 351, 416, 443, 453, 517-518, 546, 556-557, 622, 650, 660-661, 728, 756, 766-767, 833-834, 862, 872-873, 937-938, 966, 976-977.

17. The Abigail Trust and the Zachary Trust contributed the assets in their PaineWebber accounts, which were the proceeds of the short sales and cash, and delegated the obligation to cover the short sales to CWC on December 13, 2001. Plaintiffs' Exhibits 23 and 24, App. B at pp. 1040-1055.

18. On December 17, 2001, the Alpha limited partners all contributed various amounts of cash and their respective PaineWebber accounts and delegated the obligation to cover the short sales to Alpha for limited partner interests in the partnership. Their respective partnership interests were as follows:

| | | |
|---|---|---|
| a. | Robert Sands | 21.401% limited partner interest |
| b. | Richard Sands | 18.022% limited partner interest |
| c. | Marilyn Sands | 14.641% limited partner interest |
| d. | CWC | 12.949% limited partner interest |
| e. | Andrew Stern | 5.857% limited partner interest |
| f. | Marvin Sands Trust | 27.030% limited partner interest. |

Plaintiffs' Exhibits 5, 25, 26, 27, 28, 29, 30, and 32 App. B at pp. 40-43, 1056-1095, 1097-1099.

19. RRM&C Management Corp. also contributed $2,582 to Alpha for a .1% general partner interest. Plaintiffs' Exhibits 5 and 31, App. B at pp. 40-43, 1096.

20. On December 17, 2001, Alpha purchased 67,525 shares of Corning stock and 33,400 shares of Yahoo stock. Plaintiffs' Exhibit 33, App. B at pp. 1000-1102.

21. Beta Partners, LLC ("Beta") was a limited liability company formed on December 10, 2001 under the laws of Missouri. Beta was formed to provide individual investors outside the family an opportunity to invest with the family members. Plaintiffs' Exhibits 34, 52 and 53, App. B. at pp. 1103-1105, 1353, 1359.

22. The initial members in Beta were Alpha and Gloria Robinson. Plaintiffs' Exhibit 35, App. A at pp. 1144-1147.

23. On December 20, 2001, Alpha contributed the Yahoo and Corning shares and the cash it had received from the Alpha limited partners (along with the requirement to "cover" the Short Sales) to Beta for the majority membership interest. Plaintiffs' Exhibits 35 and 36, App. B at pp. 1146-1155.

24. On December 20, 2001, Gloria Robinson contributed $25,000 cash to Beta in exchange for her minority membership interest. Plaintiffs' Exhibits 35, 37 and 38, App. B at pp. 1146-1147, 1156, 1158.

25. On December 26, 2001, Beta used most of its cash to acquire Treasury notes which it used to close the Short Sales. Beta recognized a profit of $90,018 upon closing the short sales. Plaintiffs' Exhibits 39, 40, and 41, App. B at pp. 1161-1168, 1178-1179, 1182.

26. On December 27, 2001, Gloria Robinson and Alpha entered an agreement whereby Alpha agreed to and closed a purchase of Gloria Robinson's membership interest in Beta, which had the effect terminating Beta pursuant to Code Section 708(b)(1)(B). Plaintiffs' Exhibits 42 and 43, App. B at pp. 1189-1194.

27. Alpha then took possession of Beta's assets, which principally consisted of the shares of Yahoo and Corning stock. Plaintiffs' Exhibit 54, App. B at p. 1363. (Kevin's affidavit)

28. During 2001 and 2002, Alpha transferred most of the Yahoo and Corning stock to its partners in varying amounts. The partners then contributed some of that stock to M,L,R&R, and some to Mickey Management, L.P. Plaintiffs' Exhibits 6, 7, 44, 45, and 54, App. B at pp. 50, 86, 1199, 1219, 1363-1364.

29. M, L, R & R is a general partnership organized under the laws New York. The partners of M, L, R & R in 2002 were Richard Sands, Robert Sands, the Marvin Sands Trust, CWC, and Andrew Stern (hereinafter referred to collectively as "the M, L, R & R partners"). Plaintiffs' Exhibit 45, App. B at pp. 1234-1249.

30. Mickey Management, L.P. was a limited partnership organized under the laws of Delaware on February 26, 2002. During 2002, Marilyn Sands was a 99 % limited partner

in Mickey Management, L.P. Plaintiffs' Exhibit 46, App. B at p. 1269; Mickey Management Answer ¶ 2.

31. The 1% general and Tax Matters Partner in Mickey Management, L.P. was at all times Mickey Management Inc., a corporation formed under the laws of Delaware. Mickey Management Inc. was 100% owned by Marilyn Sands in 2002. Plaintiffs' Exhibit 47, App. B at p. 1270-1271; Mickey Management Answer, ¶¶ 3-4, Mickey Management Complaint ¶ 4.

32. Alpha, M,L,R&R and Mickey Management, L.P. each sold some of the Yahoo and Corning stock during 2002. Plaintiffs' Exhibits 7, 44, and 45, App. B at pp. 69, 1199, 1219.

33. On December 18, 2002, Alpha sold 5,300 of the Corning shares for $19,661 and 2,650 of the Yahoo shares for $44,265. On the Form 1065 filed by Alpha for the taxable period ending December 31, 2002, Alpha reported a total basis in this Corning stock of $1,747,325, resulting in a long-term capital loss of $(1,727,664) and a total basis in this Yahoo stock of $1,843,154, resulting in a long-term capital loss of $(1,798,889). Plaintiffs' Exhibit 7, App. B at p. 69.

34. On December 18, 2002, M, L, R & R sold the 4,600 shares of Corning for a total sales price of $17,070 and 2,300 shares of Yahoo for $38,426. M, L, R & R reported a tax basis in the 4,600 shares of Corning of $1,516,528, resulting in a short-term capital loss of $(1,499,458). M, L, R & R reported a tax basis in the 2,300 shares of Yahoo of $1,599,673, resulting in a short-term capital loss of $(1,561,247). Plaintiffs' Exhibit 45, App. B at p. 1219.

35. On December 18, 2002, Mickey Management, L.P. sold 4,600 shares of Corning for a total sales price of $17,115 and 2,300 shares of yahoo for $38,422. Mickey Management, L.P. reported a tax basis in 4,600 shares of Corning of $1,516,573, resulting in a short-term capital loss of $(1,499,458). Mickey Management, L.P. reported a tax basis in 2,300 shares of Yahoo of $1,599,703, resulting in a short-term capital loss of $(1,561,281). Plaintiffs' Exhibit 44, App. B at p. 1199.

36. The total losses claimed by these partnerships on the sales of the Yahoo and Corning stock was $(15,647,272). Plaintiffs' Exhibits 7, 44, 45, and 58 App. B at pp. 69, 1199, 1219, 1406.

37. The Alpha limited partners could "use" only $7,811,557 of these losses to offset their taxable income because they had losses from other ventures. Plaintiffs' Exhibit 54, App. B at p. 1363.

38. Plaintiffs (including the Alpha limited partners) still hold much of the Yahoo and Corning stock because it has not been sold. Plaintiffs' Exhibit 54, App. B at p. 1364.

**Reasonable Cause and Good Faith of Plaintiffs and Their Partners**

39. Robert Sands, though an attorney, does not practice tax law. He is not a certified public accountant ("CPA") and has had no special tax training beyond a basic income tax course in law school. Plaintiffs' Exhibit 52, App. B at p. 1350.

40. None of the other Alpha limited partners are attorneys or CPAs. Plaintiffs' Exhibit 53, App. B at p. 1357.

41. In deciding to engage in the above transactions, the Alpha limited partners relied on the advice they received from their personal advisors at their long-time accounting firm

Bernard Robinson & Company ("Bernard Robinson") and at the law firm of Milbank, Tweed, Hadley & McCloy LLP ("Milbank Tweed") who reviewed the financial plan presented by Heritage. Plaintiffs' Exhibits 52 and 53, App. B at pp. 1351, 1353, 1358, 1360_.

42. Members of the Sands family had engaged Bernard Robinson & Company to prepare tax returns and provide tax advice for decades prior to 2001, beginning in the 1950s. Plaintiffs' Exhibits 3, 52 and 53, App. B at pp. 1351, 1358.

43. Members of the family had also engaged the law firm of Milbank, Tweed, Hadley & McCloy LLP ("Milbank Tweed"), in particular Jonathan Blattmachr, to provide legal services beginning in the 1990s. Plaintiffs' Exhibits 3, 52 and 53, App. B at pp. 1351, 1358.

44. Heritage recommended that the Alpha limited partners engage Lewis, Rice & Fingersh ("Lewis Rice") to assist them in implementing the transactions described above. Plaintiffs' Exhibit 52, App. B at pp. 1352, 1359.

45. Lewis Rice made an independent evaluation whether to enter into attorney-client relationships with the Sands family members. Lewis Rice independently determined the fee it would seek directly from the Sands family for its services, based upon its estimate of the amount of time and complexity of the services and based upon the factors expressly permitted under the applicable rules of professional conduct in Missouri. The fee was not dependent upon the outcome of any transaction, nor was it a percentage of an amount invested. Plaintiffs' Exhibit 55, App. B at p. 1369.

46. Heritage did not pay or agree to pay Lewis Rice any referral fee. In addition, Lewis Rice did not pay or agree to pay any referral fee to Heritage, nor did the firm split any fees with Heritage. Plaintiffs' Exhibit 55, App. B at p. 1369.

47. Robert Sands completed his due diligence on Lewis Rice on behalf of his family. He researched Lewis Rice and reviewed information on the principal attorneys who would be assisting the family in the transactions described above. Plaintiffs' Exhibits 48 and 52, App. B at pp. 1272 -1280, 1352.

48. In implementing the transactions described above and in determining the correct tax treatment of the transactions, the Alpha limited partners engaged Lewis Rice to provide legal services and tax opinions relating to the transactions. The engagement agreements with Lewis Rice were independent of any agreements with Heritage. Plaintiffs' Exhibits 49 and 55, App. B at pp. 1281-1294, 1369.

49. Lewis Rice independently determined the fee the firm would seek from the clients for their services, and they were paid for their services by the partners of plaintiffs Alpha I, L.P. and R, R, M & C Group, L.P. Plaintiffs' Exhibits 50 and 55, App. B at p. 1295-1315, 1369.

50. The principal attorneys at Lewis Rice who worked on implementing the transactions described above and in drafting legal opinions relating to the proper tax treatment of the transactions were Michael Mulligan, William Falk, and Lawrence Weltman. Plaintiffs' Exhibits 52 and 55, App. B at pp. 1352, 1369, 1371-1372.

51. Michael Mulligan, William Falk, and Lawrence Weltman are experienced attorneys who have primarily practiced in the area of tax law. Michael Mulligan is Co-Chairman of the Estate Planning Department at Lewis Rice and had been with the firm since 1972. Mr.

Mulligan has written numerous articles on tax and estate planning issues. He also has spoken frequently on such topics at conferences for attorneys and accountants. William Falk is the Chairman of the Tax Department at Lewis Rice and previously practiced law with the Internal Revenue Service and with Thompson Coburn LLP. Mr. Falk received his LL.M. in taxation from Washington University School of Law in 1982. When he worked with the IRS, Mr. Falk served as a Trial Attorney and Tax Shelter Litigation Coordinator with the Internal Revenue Service, Office of District Counsel, St. Louis, Missouri. Lawrence Weltman received his law degree from Washington University School of Law in 1968, and his LL.M. in taxation from New York University School of Law in 1970. Mr. Weltman practiced with Baker & McKenzie from 1970-1973 and has been with Lewis Rice since 1973. Plaintiffs' Exhibits 48 and 55, App. B at pp. 1272-1280, 1368, 1372.

52. Over the course of its engagement, 10 different Lewis Rice personnel expended approximately 549 hours representing the Sands family. Mr. Mulligan spent approximately 122 hours on the engagement, and Mr. Falk, who was the principal drafter of the opinions, personally spent approximately 258 hours on the engagements. Plaintiffs' Exhibit 55, App. B at p. 1369.

53. Lewis Rice researched Constellation Brands and conducted interviews of various Alpha limited partners or requested information from them to determine their purposes in engaging in the transactions, their investment experience, their investment goals, and other relevant information. Based on the information gathered, Lewis Rice prepared factual representations for the Alpha limited partners to sign. Plaintiffs' Exhibits 16 – 22

and 55, App. B at pp. 407-414, 509-515, 612-619, 716-725, 822-831, 928-935, 1032-1039, 1371.

54. Lewis Rice extensively researched and analyzed the applicable law and authorities in evaluating the tax consequences of the transactions. Plaintiffs' Exhibit 55, App. B at p. 1372.

55. Lewis Rice issued an opinion dated April 12, 2002 to each of the Alpha limited partners. The opinions concluded that it was more likely than not correct to not treat the contingent obligations to cover the short sale positions as liabilities for purposes of section 752. Plaintiffs' Exhibits 16 – 22, App. B at pp. 319, 422, 525, 629, 735, 841, 945.

56. The opinions Lewis Rice issued to the members of the Sands family were based on the research and analysis of applicable law and authorities, consistent with applicable opinion standards, and the experience, professional judgment, and assessment of the probable outcome of litigation or other adversarial proceedings arising from IRS challenges to the transactions. Plaintiffs' Exhibit 55, App. B at p. 1372.

57. Lewis Rice continues to affirm that the opinions rendered accurately reflected the law and the proper tax treatment of the transactions at the time the opinions were issued, and that the tax treatment by the plaintiffs would more likely than not be upheld. Plaintiffs' Exhibit 55, App. B at p. 1372.

58. The Alpha limited partners relied on the opinions issued by Lewis Rice in determining the proper tax treatment of the transactions described above. Plaintiffs' Exhibits 52 and 53, App. B at pp. 1353, 1359.

59. Bernard Robinson & Company prepared tax returns for plaintiffs Alpha, Beta, and CWC, and their partners in 2001 and for plaintiffs Alpha, CWC, Mickey Management, L.P., and

M, L, R & R and their partners in 2002. Plaintiffs' Exhibits 6, 7, 8, 41, 44, 45, and 51, App. B at pp. 44, 64, 99, 1180, 1195, 1214, 1316.

60. Both Jonathan Blattmachr and Freddy Robinson, who the Alpha limited partners had engaged to advise them generally on the Heritage financial plan, concurred with the rationale for the positions taken on the tax returns of plaintiffs and their partners. Plaintiffs' Exhibits 52 and 53, App. B at pp. 1353, 1360.

61. The positions taken on the tax returns prepared by Bernard Robinson & Company for plaintiffs and their partners are consistent with the opinion by Lewis Rice that it was more likely than not correct to not treat the contingent obligations to cover the short sale positions as liabilities for purposes of section 752. Plaintiffs' Exhibits 52 and 53 App. B at pp. 1353, 1360.

62. The Alpha limited partners trusted their advisors, Freddy Robinson, Jonathan Blattmachr, and Lewis Rice in taking the tax positions at issue and had no reason to question their advice. Plaintiffs' Exhibits 52 and 53, App. B at pp. 1353, 1360.

Dated: July 5, 2007

Respectfully submitted,

/s/ Lewis S. Wiener_____________

LEWIS S. WIENER
Sutherland, Asbill & Brennan LLP
1275 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel.: (202) 383-0140
Fax: (202) 637-3593
Email: lewis.wiener@sablaw.com

Of Counsel:

N. Jerold Cohen
Thomas A. Cullinan

Joseph M. DePew
Julie P. Bowling
Sutherland Asbill & Brennan LLP
999 Peachtree Street, N.E.
Atlanta, Georgia 30309
(404) 853-8000
(404) 853-8806 (fax)

Kent L. Jones
Sutherland, Asbill & Brennan
1275 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel.: (202) 383-0732
Fax: (202) 637-3593

Attorneys for Plaintiffs