IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-407 T
(into which have been consolidated Nos. 06-408 T,
06-409 T, 06-410 T, 06-411 T, 06-810 T, 06-811 T)
Judge Emily C. Hewitt
(E-Filed: April 9, 2007)

| | |
|---|---|
| ALPHA I, L.P., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | 06-407 T |
| BETA PARTNERS, L.L.C., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | 06-408 T |
| R, R, M & C PARTNERS, L.L.C., BY AND THROUGH R, R, M & C GROUP, L.P., A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | 06-409 T |

| | |
|---|---|
| R, R, M & C GROUP, L.P., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | 06-410 T |
| CWC PARTNERSHIP I, BY AND THROUGH TRUST FBO ZACHARY STERN U/A FIFTH G. ANDREW STERN AND MARILYN SANDS, TRUSTEES, A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | 06-411 T |
| MICKEY MANAGEMENT, L.P., BY AND THROUGH MARILYN SANDS, A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | 06-810 T |

| | | |
|---|---|---|
| M, L, R & R, BY AND THROUGH RICHARD E. SANDS, TAX MATTERS PARTNER, | ) | |
| Plaintiff, | ) | |
| v. | ) | 06-811 T |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**UNITED STATES' MOTION FOR PROTECTION OR PROTECTIVE ORDER**

Plaintiffs served a Fed. R. Civ. Proc. 30(b)(6) deposition notice on July 9, 2007, for a deposition(s) scheduled on July 20, 2007. The United States seeks protection from the notice because: (1) it seeks testimony on irrelevant matters, including legal and opinion testimony from fact witnesses; (2) it seeks testimony protected by executive (deliberative process) privilege; (3) it seeks testimony to authenticate irrelevant material, produced during discovery along with a relevancy objection, for which a declaration has already been provided along with a detailed privilege log; and (4) the representative qualified to testify on the relevant portion of the notice is unavailable on the noticed date. The United States respectfully requests that compliance with the deposition notice be limited to testimony of a United States representative familiar with the audit of plaintiff's tax returns and to facts directly related to that audit.

This litigation involves a challenge by various entities controlled by the Sands family ("plaintiffs") to Final Partnership Administrative Adjustments (FPAAs) disallowing artificial losses claimed on the entities' partnerships' returns. The parties' positions regarding the underlying transactions are set out in the parties' competing motions for summary judgment and pleadings filed in connection with plaintiffs' Motion to Substitute Party and to Dismiss Certain Causes of Action for Lack of Jurisdiction.

On July 9, 2007, plaintiffs served the attached Fed. Rule Civ. Proc. 30(b)(6) Notice to Defendant. This notice seeks to depose one or more representative of the United States with respect to eight separately enumerated categories (plus several subcategories). Because at least part of each category designated by plaintiffs is objectionable, and because the representative familiar with the underlying audits is unavailable on the scheduled date of the deposition, relief is sought as to all of the enumerated categories. Each of the categories will be addressed below.

**OBJECTIONABLE CATEGORIES OF PLAINTIFFS' RULE 30(b)(6) NOTICE**

**1. The identity and contents of documents produced in defendant's Rule 26(a) disclosures or in response to plaintiffs' discovery requests, including, but not limited to the documents in defendant's administrative file(s) relating to the audits of plaintiffs.**

The United States does not object to providing a representative to testify regarding the identity and contents of its previously produced **IRS administrative audit files**, and it requests that testimony be so limited. However, its representative with knowledge of these documents (Pete Brokus) is unavailable for deposition on July 20, 2007, due to a previously scheduled conflict. The United States will coordinate with plaintiffs for a subsequent date for Mr. Brokus' deposition.

The United States seeks relief to the extent that the notice covers documents produced by the United States in response to plaintiffs' document production requests 15 - 29 and 35, which relate specifically to statutory construction, IRS internal policy and legal conclusions. In each instance, an objection to relevance was made regarding the production request. (The views of IRS employees in construing regulations or determining the validity thereof are irrelevant and a deposition seeking such testimony is nothing more than an impermissible fishing expedition. *Evergreen Trading, LLC v. United States*, 75 Fed. Cl. 730, 730-31 (2007)). The documents produced in response to these document production requests were accompanied by both a declaration and a

detailed privilege log identifying the documents. Even if the documents were somehow relevant, which they are not, the costs and waste of resources contemplated by multiple depositions to confirm the identity and content of this material is not justified. *See Exxon Research and Engineering Co. v. United States*, 44 Fed.Cl. 597 (1999).

**2. The identity and contents of documents in files of The Heritage Organization LLP reviewed by defendant's agents incident to their work in this matter.**

Because the terms “agents’ and “work” are undefined, this category is unduly broad and includes materials gathered by counsel in preparation for trial. As previously disclosed to plaintiffs, the United States is in the process of reviewing files currently in the possession of the Chapter 11 Trustee for The Heritage Organization, LLP (“Heritage”) bankruptcy estate. At this point, it appears that some of the material in the Trustee’s possession is relevant to the transaction involving plaintiffs. However, the United States should not be required to produce a representative who can be designated to testify with respect to these documents. Naturally, this material, to the extent that it is relevant, will be produced to plaintiffs either in supplement to the United States’ initial disclosures or in response to document production requests. If plaintiffs are not satisfied with the documents themselves, they are welcome to obtain the files directly from the Trustee.

The United States also seeks protection with respect to this category as it could be construed to files of other taxpayers as the disclosure of this information is prohibited by 26 U.S.C. §6103..

The United States asks that this category be confined to testimony by IRS agents to Heritage documents reviewed by the examining agents in connection with the IRS audit underlying the FPAAs now at issue. *See Deseret Management Corporation v. United States*, 76 Fed. Cl. 88 (2007) (recognizing both attorney-client and attorney work product privilege). As previously stated,

subject to the above objections, the United States does not object to providing a representative to testify regarding the identity and contents of Heritage documents contained in the previously produced **administrative audit files**. However, its representative with knowledge of these documents (Pete Brokus) is unavailable for deposition on July 20, 2007, due to a previously scheduled conflict. The United States will coordinate with plaintiffs for a subsequent date for Mr. Brokus' deposition.

**3. The identity and contents of documents from the files of any other third parties (individuals or entities other than plaintiffs, plaintiffs' partners, or The Heritage Organization) reviewed by defendant's agents incident to their work in this matter.**

The United States seeks protection with respect to this category as it is unduly vague. Clearly, the terms "agent" and "work" is broad enough to include IRS and DOJ attorneys. This request is also broad enough to include third party taxpayer information which is prohibited from disclosure by 26 U.S.C. §6103. the United States seeks protection limiting the request to documents reviewed by the IRS examining agents in connection with the audit underlying the FPAAs now at issue. *See Deseret Management Corporation v. United States*, 76 F.Cl. 88 (2007)(recognizing both attorney-client and attorney work product privilege).

Subject to the above objections, the United States does not object to providing a representative to testify regarding the identity and contents of documents from the files of any other third parties (individuals or entities other than plaintiffs, plaintiffs' partners, or The Heritage Organization) reviewed by the examining agents in connection with the audit underlying the FPAAs now at issue, and it requests that testimony regarding this category be so limited. However, its representative with knowledge of these documents (Pete Brokus) is unavailable for deposition on

July 20, 2007, due to a previously scheduled conflict. The United States will coordinate with plaintiffs for a subsequent date for Mr. Brokus' deposition.

**4. The conduct of the IRS audits of plaintiffs and their partners, including, but not limited to issuance of the Notices of Beginning of Administrative Proceeding, issuance of information document requests, responses to information document requests, summonses, and interviews.**

This litigation involves plaintiffs' use of two abusive tax shelters. It is plaintiffs' conduct and not that of the United States that is at issue in this litigation. The United States seeks protection from this line of inquiry to the extent that it can be interpreted as an attempt to solicit testimony regarding the analyses and deliberations of the IRS in connection with issuing the FPAA to plaintiffs. This is a *de novo* proceeding in which the FPAA is presumed correct and the court has jurisdiction to determine all of the partnership items of the plaintiffs. The reasons for the Commissioner's determination are not relevant because the court does not review the administrative policy and procedure of that determination. *Greenberg's Express, Inc. v. Commissioner*, 62 T.C. 324, 327-8 (1974). As such, the deliberative process of the Internal Revenue Service in the issuance of the FPAA is irrelevant. *See also Deseret Management Corporation v. United States*, 76 Fed. Cl. 88 (2007)(recognizing that deliberative process privilege "covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated").

Subject to the above objections, the United States does not object to providing a representative to testify regarding the course of the audit underlying the FPAAs at issue, and it requests that testimony regarding this category be so limited. However, its representative with knowledge of these facts (Pete Brokus) is unavailable for deposition on July 20, 2007, due to a

previously scheduled conflict. The United States will coordinate with plaintiffs for a subsequent date for Mr. Brokus' deposition.

**5. The facts and mixed matters of fact and law (including conclusions and opinions) upon which defendant based its determinations/adjustments in the following portions of the FPAAs issued to plaintiffs:**

a. **Items I — IV and VI — VIII of the Explanation of Adjustments to Partnership Items and Partnership Level Determinations in the FPAA issued to R, R, M & C Group, L.P,**

b. **Items I and III of the Explanation of Adjustments to Partnership Items and Partnership Level Determinations in the FPAA issued to Mickey Management, L.P.**

c. **Items I and III of the Explanation of Adjustments to Partnership Items and Partnership Level Determinations in the FPAA issued to M, L, R & R.**

d. **Items I — III and V of the Explanation of Adjustments to Partnership Items and Partnership Level Determinations in the FPAA issued to CWC Partnership I.**

e. **Items I — III and V — VI of the Explanation of Adjustments to Partnership Items and Partnership Level Determinations in the FPAA issued to R, R, M & C Partners, LLC.**

f. **Items I — II and IV — V of the Explanation of Adjustments to Partnership Items and Partnership Level Determinations in the FPAA issued to Beta Partners, LLC.**

g. **Items I — II and IV — V of the Explanation of Adjustments to Partnership Items and Partnership Level Determinations in the FPAA issued to Alpha I, L.P.**

The United States seeks protection from this line of inquiry to the extent that it seeks legal or opinion testimony. To the extent that plaintiffs are seeking expert testimony on these matters, the request is premature. Expert witnesses will be made available at the appropriate time after expert reports have been exchanged. To the extent that plaintiffs seek legal or opinion testimony from IRS personnel, such testimony is not calculated to lead to relevant facts and/or is it is privileged. The views and opinions of IRS employees are irrelevant. This is a *de novo* proceeding in which the FPAA is presumed correct and the court has jurisdiction to determine all of the partnership items

of the plaintiffs. The reasons for the Commissioner's determination are not relevant because the court does not review the administrative policy and procedure of that determination. *Greenberg's Express, Inc. v. Commissioner,* 62 T.C. 324, 327-8 (1974). The deliberative process of the Internal Revenue Service in the issuance of the FPAA is irrelevant. *See also Deseret Management Corporation v. United States*, 76 Fed. Cl. 88 (2007)(recognizing that deliberative process privilege "covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated").

Subject to the above objections, the United States does not object to providing a representative to testify regarding the facts supporting the above referenced portions of the FPAAs, and it requests that testimony regarding this category be so limited. However, its representative with knowledge of these facts (Pete Brokus) is unavailable for deposition on July 20, 2007, due to a previously scheduled conflict. The United States will coordinate with plaintiffs for a subsequent date for Mr. Brokus' deposition.

**6. The conduct of the IRS in determining to apply accuracy-related penalties to Plaintiffs, including but not limited the following:**

- **a. The facts gathered, discovered, or relied on to support the IRS's alternative determination that plaintiffs failed to make a reasonable attempt to comply with the provisions of the Internal Revenue Code or were careless, reckless or intentionally disregarded any rules or regulations.**
- **b. The facts gathered, discovered, or relied on to support the IRS's alternative determination that plaintiffs' made substantial understatements.**
- **c. The facts gathered, discovered, or relied on to support the IRS's alternative determination that any such understatement should not be reduced because such understatement was attributable to tax treatment of an item for which there was substantial authority or was attributable to the tax treatment of an item which was adequately disclosed on the tax return and for which there was a reasonable basis.**
- **d. The facts gathered, discovered, or relied on to support the IRS's alternative determination that plaintiffs' made a substantial valuation misstatement, including any appraisals or calculations.**

**e. The facts gathered, discovered, or relied on to support the IRS's alternative determination that plaintiffs' made a gross valuation misstatement, including any appraisals or calculations.**

The United States seeks protection from this line of inquiry to the extent that it can be interpreted as an attempt to solicit testimony regarding the analyses and deliberations of the IRS in connection with issuing the FPAA to plaintiffs. The views and opinions of IRS employees are irrelevant. This is a *de novo* proceeding in which the FPAA is presumed correct and the court has jurisdiction to determine all of the partnership items of the plaintiffs. The reasons for the Commissioner's determination are not relevant because the court does not review the administrative policy and procedure of that determination. *Greenberg's Express, Inc. v. Commissioner*, 62 T.C. 324, 327-28 (1974). As such, the deliberative process of the Internal Revenue Service in the issuance of the FPAA is irrelevant. *See also Deseret Management Corporation v. United States*, 76 Fed. Cl. 88 (2007),(recognizing that deliberative process privilege "covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated").

Subject to the above objections, the United States does not object to providing a representative to testify regarding the facts supporting the imposition of accuracy related penalties in the underlying FPAAs, and it requests that testimony regarding this category be so limited. However, its representative with knowledge of these facts (Pete Brokus) is unavailable for deposition on July 20, 2007, due to a previously scheduled conflict. The United States will coordinate with plaintiffs for a subsequent date for Mr. Brokus' deposition.

**7. The facts, mixed matters of fact and law, and underlying documents relating directly or indirectly to the reasonable cause, good faith, or negligence of:**

**a. Plaintiffs.**

**b. Partners or Members of Plaintiffs.**

The United States seeks protection from this line of inquiry to the extent that it seeks legal or opinion testimony. To the extent that plaintiffs are seeking expert testimony on these matters, the request is premature. Expert witnesses will be made available at the appropriate time after expert reports have been exchanged. To the extent that plaintiffs seek legal or opinion testimony from IRS personnel, such testimony is not calculated to lead to relevant facts and/or it is privileged.

The United States also seeks protection from this line of inquiry to the extent that it can be interpreted as an attempt to solicit testimony regarding the analyses and deliberations of the IRS in connection with issuing the FPAA to plaintiffs. The views and opinions of IRS employees are irrelevant. This is a *de novo* proceeding in which the FPAA is presumed correct and the court has jurisdiction to determine all of the partnership items of the plaintiffs. The reasons for the Commissioner's determination are not relevant because the court does not review the administrative policy and procedure of that determination. *Greenberg's Express, Inc. v. Commissioner*, 62 T.C. 324, 327-28 (1974). As such, the deliberative process of the Internal Revenue Service in the issuance of the FPAA is irrelevant. *See also Deseret Management Corporation v. United States*, 76 Fed. Cl. 88 (2007)(recognizing that deliberative process privilege "covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated").

The United States also seeks protection from this line of inquiry to the extent that it seeks testimony regarding matters not presented by plaintiffs in the course of the IRS audit. Reasonable

cause and good faith may be a defense to penalties, but they are facts peculiarly within the purview of the plaintiffs and not the United States.

The United States does not object, however, to providing a representative to testify regarding the facts and documents related directly to reasonable cause, good faith, or negligence of plaintiffs and their partners, to the extent that these factors are part of the adjustments made in the FPAAs at issue, and it requests that testimony regarding this category be so limited. However, its representative with knowledge of these facts (Pete Brokus) is unavailable for deposition on July 20, 2007, due to a previously scheduled conflict. The United States will coordinate with plaintiffs for a subsequent date for Mr. Brokus' deposition.

**8. The Internal Revenue Service's interpretation and application of IRC § 752 prior to 1995 and in the years from 1995 to 2002, including but not limited to the following:**

- **a. The identity and contents of documents prepared, relied upon, or used by the IRS in formulating its position with respect to the definition of "liability" in revenue rulings, revenue procedures, private letter rulings, technical advice memorandums, general counsel memorandums, briefs, or other IRS documents under IRC § 752 (including documents relating to the ongoing consideration, reconsideration, development, interpretation or application of the documents to short sales such as the short sales at issue in this case).**
- **b. The identity and contents of documents of the defendant, including LMSB, SB/SE, Appeals Division, and Chief Counsel, citing or discussing Helmer v. Commissioner, T.C. Memo 1975-160 in the context of Internal Revenue Code § 752.**
- **c. The identity and contents of documents relating to the decision of the IRS to promulgate Treas. Reg. § 1.752-6, including background and information notes with respect to such regulation.**
- **d. The identity and contents of documents relating to the authority of the IRS to promulgate Treas. Reg. § 1.752-6.**
- **e. The identity and contents of documents relating to the constitutionality of Treas. Reg. § 1.752-6.**
- **f. The identity and contents of documents relating to the determination of the IRS to make the exception described in Treas. Reg. § 1.752-6 inapplicable to assumptions of liabilities by partnerships as part of a transaction the same as or substantially similar to any transaction described in Notice 2000-44.**

**g. The identity and contents of documents relating to the determination of the IRS to dispense with the notice and comment requirements of the Administrative Procedure Act when promulgating Treas. Reg. § 1.752-6.**

**h. The identity and contents of documents relating to the determination by the IRS that Treas. Reg. § 1.752-6 is not a "significant regulatory action" within the meaning of Executive Order 12866.**

**i. The identity and contents of documents relating to the promulgation of Treas. Reg. § 1.752-6, such as background information notes, the "Regulation File" and drafts of the regulation.**

**j. The identity and contents of documents relating to the decision of the IRS to issue Revenue Ruling 95-26, including background and information notes, drafts, correspondence, and other documents with respect to such ruling.**

**k. The identity and contents of documents relating to the issuance of Revenue Ruling 95-26, including background and information notes, drafts, correspondence, and other documents with respect to such ruling.**

The United States seeks protection with respect to the entirety of this line of inquiry. Here, plaintiffs seek to obtain testimony with respect to documents which are both irrelevant and protected by executive (deliberative process) privilege. Essentially, plaintiffs seek to go around objections previously raised in response to document production requests. The IRS's interpretation and application of 26 U.S.C. §752 is not relevant nor is it likely to lead to the discovery of relevant information. The views and opinions of IRS employees are irrelevant. (The views of IRS employees in construing regulations or determining the validity thereof are irrelevant and a deposition seeking such testimony is nothing more than an impermissible fishing expedition. *Evergreen Trading, LLC v. United States*, 75 Fed. Cl. 730, 730-31 (2007)). This is a *de novo* proceeding in which the FPAA is presumed correct and the court has jurisdiction to determine all of the partnership items of the plaintiffs. The reasons for the Commissioner's determination are not relevant because the court does not review the administrative policy and procedure of that determination. *Greenberg's Express, Inc. v. Commissioner*, 62 T.C. 324, 327-28 (1974). As such, the deliberative process of the Internal Revenue Service in the issuance of the FPAA is irrelevant.

*See also Deseret Management Corporation v. United States*, 76 Fed. Cl. 88 (2007)(recognizing that deliberative process privilege "covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated").

The proper construction of Section 752 and the regulations, as well as their application to the transactions at issue here, is an issue of law for the Court to decide based upon its analysis and application of the governing legal authorities. *See, e.g, Neptune v. United States*, 38 Fed.Cl. 510, 513 (1997), *affd* 178 F.3d 1306 (Fed. Cir. 1998). Two circuit courts have recently reached similar conclusions in refusing to rely upon the statements of former government officials in construing tax regulations. In *Siddell v Commissioner*, 225 F.3d 103, 111 (1st Cir. 2000), a case involving a dispute concerning the construction of a regulation, the First Circuit rejected as irrelevant the taxpayers' attempted reliance upon internal Service memoranda purportedly showing the Service's internal construction of a regulation, stating—

> Because these internal memoranda represent the personal views of the authors, not the official position of the agency, they do not figure in our decisional calculus.

The Third Circuit, similarly rejecting an effort to rely upon evidence of internal Service discussions in construing a regulation, stated that "we accord little weight to the . . . recollections of the several Treasury officials who submitted affidavits regarding the meaning of the [regulation.]" *Connecticut General Life Insurance Co. v. Commissioner*, 177 F.3d 136, 145 (3rd Cir. 1999). See *Armco Corp. v. Commissioner*, 87 T.C. 865, 867-68 ((1986)(statement of principal drafter not relevant in construing regulation). All of these cases show that, even if the proposed depositions were to produce the testimony plaintiffs hope to develop, that evidence would still have no value.

At least three separate rationales support this unanimous conclusion that the testimony of the drafters is not relevant in construing a regulation. First, such testimony impinges upon the role of the Court as the arbiter of the law. Second, after-the-fact testimony concerning the meaning of a regulation developed in the context of litigation is inherently unreliable. Finally, the cases recognize that the testimony of a single agency official is of no value in determining the agency's construction of a regulation.[1] Regardless of the rationale, the depositions are irrelevant and the motion for protective order should be granted.

As previously noted, notwithstanding the fact that documents referenced by this line of inquiry are irrelevant to the claims and defenses presented in this case, plaintiffs previously sought

---

[1] The Court appears to have adopted this rationale in barring proposed discovery of internal background files concerning the development of a Service ruling, stating–

> will be relevant in this action only in very limited circumstances. And, even in those limited circumstances, various materials in those files undoubtedly will shed no light whatsoever on what the IRS, as an agency, felt the ruling meant or means. Thus, for example, the files could contain memoranda from individual IRS line attorneys setting forth positions that do not represent the agency's formal view of the law, including positions that were rejected by the IRS or the Treasury Department in choosing the final terminology and scope of the ruling. In this regard, plaintiff's attempt to analogize the ruling's background file to a statute's legislative history, in fact, proves informative, but only in sounding a note of caution. Seemingly, just as courts often refuse to attribute to Congress views expressed by a staffer or an individual member of Congress, particularly where such statements are made after the passage of a law, so too should this court be extraordinarily hesitant to attribute to the IRS or the Treasury Department interpretations of a revenue ruling made by individual IRS employees that represent their personal views, rather than the official position of the agency. Thus, even if, in general, the background file of a revenue ruling might, in highly limited circumstances, be relevant in resolving a question of statutory construction, it remains that the only materials in that file that would figure in this court's decisional calculus are those reflecting some high level of agency approval.

*Von's Companies v. United States*, 51 Fed. Cl. 1 (2001).

the production of the documents related to this line of inquiry by way of document production requests. Both relevancy and executive (deliberative process) privilege objections were made at the time. Limited documents were produced, however, in response to these document production requests and the documents were accompanied by both a declaration regarding the documents and a detailed privilege log identifying the documents. As such, the costs and waste of resources contemplated by multiple depositions to confirm the identity and content of this irrelevant material is not justified. *See Exxon Research and Engineering Co. v. United States*, 44 Fed.Cl. 597 (1999).

A protective order is also appropriate because the requested depositions seek disclosure of privileged information. The law recognizes a deliberative process privilege protecting the internal pre-decisional deliberations of a government agency from disclosure. *See Deseret Management*, 76 Fed .Cl. at 94-95)(recognizing that deliberative process privilege "covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated"). The Supreme Court recognized such a privilege in *United States v. Nixon,* 418 U.S. 683, 705 (1974), explaining that "[h]uman experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances . . . to the detriment of the decision making process." Given the strong public interest in having Government officials candidly discuss prospective operations and policies, it is well-established that the Government may invoke a privilege that is not available to other parties. The executive privilege allows the Government to prevent the disclosure of the discussions, recommendations, and methods of reasoning of its officials, which, if subject to disclosure, would temper candor during the decision-making process. *E.g.*, *NLRB v. Sears, Roebuck & Co.*, 421 U.S.

at 151; *Kaiser Aluminum & Chemical Corp. v. United States*, 141 Ct. Cl. 38, 47-50, 157 F. Supp. 939, 944-47 (1958).

In this court, the executive privilege protects "inter- and intra-agency deliberative communications or official information, [and] protects 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *CACI Field Services, Inc. v. United States*, 12 Cl. Ct. 680, 686 (1987). As such, the United States is entitled to protection from Plaintiffs' Rule 30(b)(6) Notice seeking testimony on these privileged matters.

For the reasons set out above, the United States respectfully requests that the Court grant it protection from plaintiffs' Rule 30(b)(6) deposition notice and that the Court limit the scope of any such deposition(s) to testimony of a United States representative familiar with the audit of plaintiff's tax returns and to facts directly related to that audit.

Respectfully submitted,

/s/ Thomas M. Herrin
THOMAS M. HERRIN
Attorney of Record
Tax Division
Department of Justice
717 N. Harwood, Suite 400
Dallas, Texas 75201
(214) 880-9745 / (214) 880-9762
(214) 880-9742 (FAX)

RICHARD T. MORRISON
Acting Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
LOUISE HYTKEN
Chief, Southwestern Civil Trial Section
MICHELLE C. JOHNS
Trial Attorney