IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-407T

(into which have been consolidated Nos. 06-408T, 06-409T, 06-410T, 06-411T, 06-810T, 06-811T)

- - - - - - - - - - - - - - - - - X

ALPHA I, L.P., by and through )
ROBERT SANDS, a notice partner, )
Plaintiff )Case No. 06-407T
-vs- )
THE UNITED STATES, )
Defendant )

- - - - - - - - - - - - - - - - - X

Deposition of MARILYN SANDS taken pursuant to notice at Constellation Brands, 370 Woodcliff Drive, Suite 300, Fairport, New York on Tuesday, July 31, 2007 commencing at 9:30 a m.

Reported by:
COMPUTER REPORTING SERVICE
Amy M. Condon, CSR, RPR
270 Reynolds Arcade Building
16 East Main Street
Rochester, New York 14614 (585) 325-3170





APPEARANCES:

SUTHERLAND, ASBILL & BRENNAN
By: THOMAS A. CULLINAN, Esq
JULIE BOWLING, Esq
1275 Pennsylvania Avenue, N W
Washington, D C., 20004
A'torneys for plaintiff.

U.S. DEPARTMENT OF JUSTICE
By: THOMAS M. HERRIN, Esq.
717 North Harwood Street, Suite 400
Dallas, Texas 75201
Attorneys for defendant.





INDEX

Marilyn Sands
Examination by Mr. Herrin 4 - 33

MARILYN SANDS EXHIBITS

No. 1 - Agreement 8
No. 2- Agreement 9
No. 3 - Letter 12
No. 4 - 2001 Charitable remainder trust 14
No 5 - Designation of charity 14
No. 6 - Irrevocable designation of charity 14
No 7 - Representation letter 17
No. 8 - Representation letter 22
No. 9 - Representation letter 23
No. 10 - Representation letter 24
No. 11 - Representation letter 24
No. 12 - Representation letter 26
No. 13 - Representation letter 28
No. 14 - Income tax return 29





MARILYN SANDS

called herein as a witness, being duly sworn testified as follows

EXAMINATION BY MR HERRIN:

Q. Mrs. Sands, thank you for coming in today. My name is Tom Herrin. Have you ever had a -- given a deposition before?
A. No.
Q. How about testified in court?
A. No.
Q. I imagine your attorneys went over it with you, but let me -- basically the only real rule you have to try to observe is if one person is talking, let them finish and then give your answer and then answer verbally.
Unfortunately, I tend to be worst than most. So I may jump in which I -- when I shouldn't, but I'll try to hold, but if you'll do the same thing.
From time to time your attorney may have something he may have to say to get on the record or some sort of instruction. So if you are testifying, at that point you probably should stop, let him finish saying what he has to say and then we can pick back up again.
Would that be all right?



PENGAD-Bayonne, N. J.
GOVERNMENT EXHIBIT 35

Q. I couldn't get the science down. That's why I became a lawyer.

Do you recall ever personally instructing anybody to buy any Yahoo or Corning stock on your behalf?

A. No.

Q. Do you recall if anybody ever told you they purchased any Yahoo or Corning stock on your -- they had purchased any Yahoo or Corning stock on your behalf?

A. No.

Q. Are you familiar with Gloria Robinson?

A. Yes.

Q. How do you know Mrs. Robinson?

A. We've been friends since 1943.

Q. At that point was her husband the accountant for your family business?

A. Well, I married in '47 and Bernard Robinson was the accountant at that time.

Q. Do you know whether Gloria Robinson worked in her husband's business?

A. I have no idea.

(Exhibit No. 7 - letter - marked for identification.)

BY MR. HERRIN:

Q. Are you familiar with this document,





Mrs. Sands?

A. Beg your pardon?

Q. Are you familiar with this document?

A. No.

Q. Are you familiar with the law firm Lewis, Rice & Fingersh?

A. No.

Q. If you would turn to the last page of that document. Is that your signature?

A. Yes.

Q. Do you recall any of the circumstances surrounding when you signed this document?

A. No.

Q. Do you recall having any discussions with anybody on behalf of or with the law firm of Lewis, Rice & Fingersh?

A. No.

Q. In paragraph one on the first page the second sentence, if you'd take a minute to read that sentence please.

Would it be fair to say that the sentence says, any representations that are made later on were made based on knowledge and understanding from your sons as opposed to yourself?





MR. CULLINAN: I'm going to object. The document speaks for itself. Counsel is testifying.

BY MR. HERRIN:

Q. If you'll take a look through I guess one through --

MR. CULLINAN: I'm also going to object to the extent that it calls for a legal conclusion. The witness is not a lawyer.

BY MR HERRIN:

Q. Look at paragraphs 1 through 21 then. Did you have any firsthand knowledge of any of the facts that are represented in those paragraphs?

MR. CULLINAN: Take your time.

THE WITNESS: Now, what was the question?

BY MR. HERRIN:

Q. Do you have any personal knowledge of any of the facts that are represented there?

MR. CULLINAN: Which facts?

MR. HERRIN: 1 through --

MR. CULLINAN: That's a little overbroad. I'm going to ask you to narrow your question, otherwise we're going to sit here for an hour and a half and go through the whole document.

MR. HERRIN: I got the sense whether or not





she got this information based on anybody else. I can take each paragraph at a time. I don't think she knows much about them. If we can establish them we can move on.

MR. CULLINAN: Why are you asking her to recharacterize what it says?

MR. HERRIN: I want to know whether she has any knowledge of the facts represented there and that was the question there.

MR. CULLINAN: Go through the facts. Ask her your questions.

BY MR. HERRIN:

Q. Paragraph one, Mrs. Sands, did you have any knowledge of the facts represented in paragraph one, personal knowledge?

A. The only knowledge I have is that Richard and Robert advised me.

Q. And in what respects did they advise you?

A. They just say either sign this or this will be a good thing, this will -- and they try to explain things to me and I understand them when they explain them, but I don't remember anything about any of this now.

Q. All right. Well --

A. The only thing that's true about -- well, that I -- is the advice of my sons, Richard and Robert.
Q. Okay.
A. And I think that goes for the whole thing.
Q. All right. That's where I think I started, but maybe I didn't ask it clearly enough for your counsel.
The beginning of the letter where it tells you what the letter is about, representations with respect to the financial plan, do you know what financial plan is being referred to? It's footnoted down at one if that will help, if you take a look at one.
MR. CULLINAN: You know, again, I'm going to have to object. You just answered your own question that the document defines financial plan in the document.
MR. HERRIN: It does. I asked her if she knew anything about what the financial plan was.
MR. CULLINAN: I think you asked her if she knew what the financial plan is.
MR. HERRIN: I'm not sure I understand the difference.
BY MR HERRIN:
Q. Do you know what the financial plan is?





A. No.
(Exhibit No. 8 - letter - marked for identification.)
BY MR. HERRIN:
Q. Mrs. Sands, while you're looking at this document, this is also dated December 28th, 2001 which was the date of the prior document, however, this references the trust for the benefit of Abigail Stern.
Just for the record, can you tell us who Abigail Stern is?
A. Abigail Stern is my granddaughter who was the child of my daughter Laurie who passed away and I think it's almost 13 years now.
Q. And Andrew Stern?
A. Andrew Stern is her father.
Q. And were yourself and Mr. Stern trustees on the trust?
A. I think so.
Q. Okay. Again, this references a financial plan. Do you know which financial plan it refers to?
A. No, I don't.
Q. And did you talk with anybody at Lewis, Rice and provide them the information that's contained here?
A. No.
Q. Do you know why this letter -- why the letter





was being sent to Lewis, Rice?
A. No.
(Exhibit No. 9 - letter - marked for identification.)
BY MR HERRIN:
Q. Mrs. Sands, this is another request for information -- another letter written to Lewis, Rice & Fingersh on April 11th, 2002. Are you familiar with this document?
A. No.
Q. On the last page it has your signature. Is that your -- has a signature. Is that yours?
A. Yes.
Q. Do you recall any of the circumstances surrounding signing it?
A. No.
Q. Let me ask you to look back real fast at 8 and 7 and just the last page. I just want to find out whether or not -- I shouldn't mix these things up. I'll put them back in order.
Are those your signatures on the last pages?
A. Yes.
Q. Do you recall any of the circumstances surrounding signing these documents?
A. No.





Q. I'm sorry. I may have asked this at the very beginning, but let me just be sure.
It refers to a financial plan. Do you know what financial plan --
A. No.
(Exhibit No. 10 - letter - marked for identification )
BY MR. HERRIN:
Q. Mrs. Sands, I got it out of order here, but this is December 28th document. This one refers to the Zachary Stern trust. Could you tell me who Zachary Stern is?
A. My grandson.
Q. That's Laurie's other --
A. Laurie's son and Andy.
Q. It refers to a financial plan in the reference. Do you have any idea what financial plan that is?
A. No.
Q. Is that your signature at the end?
A. Yes.
Q. Did you provide any facts that are set forth in this letter to Lewis, Rice & Fingersh?
A. No.
(Exhibit No 11 - letter - marked for identification.)

BY MR HERRIN:

Q. Mrs. Sands, this is another letter to Lewis, Rice & Fingersh on April 11th, 2002 referencing the Abigail Stern trust.

Again, the reference letter refers to a financial plan. Do you know what financial plan it refers to?
A. No.
Q. Is that your signature at the end?
A. Yes.
Q. Do you recall -- I'm sorry.
A. It's next to the end.
Q. Do you recall the circumstances surrounding when you would have signed this?
A. No.
Q. Are you familiar with what the facts that are set forth in this letter?
A. No.
MR. CULLINAN: I'm going to object. That's kind of broad, but -- unless he wants to go through the document line by line and ask her questions that way.

I mean, clearly she's familiar with the identity of her relatives, the company itself, the fact that she owns stock in the company.

I mean, that's -- I don't know how you want





to conduct the deposition, but that question is too broad.
Q. All right.

(Exhibit No. 12 - letter - marked for identification.)

BY MR HERRIN.
Q. I guess first, is that your signature?
A. Yes.
Q. And do you have any idea what the financial plan is that it refers to?
A. No.
Q. If you'll take a quick look through the documents they pretty much seem to track exact same language in the documents. Would you agree with that? I'm not going to say word for word. It's pretty much they seem to be the same documents?
MR. CULLINAN: We'll rely on your representation.

BY MR HERRIN:
Q. My question is: I'm going to move back to the first document, but would your answers to the second document be the same things they are with regards to the first document as far as having any knowledge with the facts?
A. Yes.





Q. Let's just take the first document, the one for Zachary Stern. Paragraph one talks about some assets of the trust.

Are you familiar with what assets were in the trust?
A. No.
Q. I may have asked this at the beginning, are you familiar with CWC 1?
A. No.
Q. In paragraph five are you familiar with the self registration statement?
A. No.
Q. Do you track fluctuations in interest rates?
A. Beg your pardon?
Q. Do you track, watch the way interest rates move up and down?
A. No.
Q. On page 5, paragraph 14.4, do you know what RLC is, what that refers to?
A. Where is that?
Q. I'm sorry. 14.4. The initials RLC, do you know what that refers to?
A. No.
Q. Do you recall the sale of the 2,002,002





shares of Constellation stock?
A. No.

(Exhibit No. 13 - letter - marked for identification )

BY MR. HERRIN:
Q. Mrs. Sands, this is a June 21st, 2002 letter from Milbank, Tweed, Hadley & McCloy to yourself.

Have you seen this letter before today?
A. No.
Q. Do you know why it was sent to you?
A. No.
Q. Are you familiar with the law firm Milbank, Tweed, Hadley & McCloy?
A. No.
Q. This letter is signed by Jonathan G. Blattmachr. Are you familiar with Mr. Blattmachr?
A. Yes.
Q. How are you familiar with him?
A. I know he is an advisor to probably Richard and Rob and the rest of the family, and I did go to a meeting once many years ago where he explained things which I did not understand.
Q. Do you recall how many years ago that would have been?
A. Well, my husband is gone eight years. It

beginning, if you ever need a break, say so, we'll stop. I think I only have two or three more minutes so if you want to bear with me.

A. No. I'm fine.

MR. HERRIN: I want to thank you for your time unless Mr. Cullinan has any questions he wants to ask I think we're done.

MR. CULLINAN: We're good. We'll reserve all questions to trial.

MR. HERRIN: Thank you for coming in.

* * *





REPORTER CERTIFICATE

I, Amy M. Condon, CSR, RPR, do hereby certify that I did report in stenotype machine shorthand the proceedings held in the above-entitled matter;

Further, that the foregoing transcript is a true and accurate transcription of my said stenographic notes taken at the time and place hereinbefore set forth.

Dated

At Rochester, New York

______________________________

Amy M Condon, CSR, RPR





WITNESS CERTIFICATE

STATE OF NEW YORK )
COUNTY OF MONROE )

I, MARILYN SANDS, do hereby certify that I have read the transcript of my testimony as taken under oath on July 31, 2007 and that said transcript is a true, complete and correct record of what was asked, answered and said during said deposition, and that the answers on record therein, and as may be modified in conformity with the attached errata sheet, are true and correct

______________________________

Subscribed and sworn to before me
this ______ day of ___________, 2007
Notary Public





In the Matter of:

\- - - - - - - - - - - - - - - - X
ALPHA I, L.P., by and through )
ROBERT SANDS, a notice partner, )
Plaintiff )Case No. 06-407T
\-vs- )
THE UNITED STATES, )
Defendant )
\- - - - - - - - - - - - - - - - X

Errata sheet for the Deposition of MARILYN SANDS taken on July 31, 2007.

PAGE LINE REMARKS