IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-407 T
(into which have been consolidated Nos. 06-408 T,
06-409 T, 06-410 T, 06-411 T, 06-810 T, 06-811 T)
Judge Emily C. Hewitt
(E-Filed: August 20, 2007)

| | | |
|---|---|---|
| ALPHA I, L.P., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-407 T |
| BETA PARTNERS, L.L.C., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-408 T |
| R, R, M & C PARTNERS, L.L.C., BY AND THROUGH R, R, M & C GROUP, L.P., A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-409 T |

| | | |
|---|---|---|
| R, R, M & C GROUP, L.P., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-410 T |
| CWC PARTNERSHIP I, BY AND THROUGH TRUST FBO ZACHARY STERN U/A FIFTH G. ANDREW STERN AND MARILYN SANDS, TRUSTEES, A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-411 T |
| MICKEY MANAGEMENT, L.P., BY AND THROUGH MARILYN SANDS, A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-810 T |

| | | |
|---|---|---|
| M, L, R & R, BY AND THROUGH RICHARD E. SANDS, TAX MATTERS PARTNER, | ) | |
| Plaintiff, | ) | |
| v. | ) | 06-811 T |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**UNITED STATES' REPLY TO PLAINTIFFS' RESPONSE TO UNITED STATES' MOTION FOR PROTECTION OR PROTECTIVE ORDER**

On July 9, 2007, Plaintiffs served an overly broad Fed. R. Civ. Proc. 30(b)(6) deposition notice. The United States sought Court protection limiting the scope of the deposition to testimony related to the audit of plaintiffs' tax returns and to facts directly related to that audit. In their response to the United States' motion, plaintiffs have clarified, and thereby partially limited, the scope of the requested testimony. In part, plaintiffs seek testimony regarding "the facts gathered and determined through an audit of their returns." The United States does not oppose this request and it remains prepared to produce a deponent regarding the audit. Because that witness was unavailable on the previously noticed date, the parties agreed to reschedule this deponent's testimony. Unfortunately, plaintiffs continue to seek testimony on matters which are not reasonably calculated to lead to the discovery of admissible evidence and therefore, an order limiting the scope of plaintiffs' Rule 30(b)(6) notice is appropriate.

In their response, plaintiffs have categorized their Rule 30(b)(6) request into 7 categories. The United States will separately address each of these categories.

(1) <u>The identity and contents of documents in the IRS' administrative files relating to the audit of plaintiffs</u>

Plaintiffs intermix two lines of inquiry into their first category: (1) the identity and contents of documents developed during the audit; and (2) the IRS's application and interpretation of 26 U.S.C. §752 and its relationship to a settlement initiative in which plaintiffs declined to participate. Each of these subcategories will be addressed separately below.

**A. The identity and contents of documents developed during the audit**

Plaintiffs first seek testimony regarding the content of documents in the IRS administrative files related to the audit. As plaintiffs acknowledge, at page 2 of their response, the United States has agreed to produce a deponent (the IRS agent who conducted the audit) to testify regarding the identity and contents of the IRS administrative audit files. Mr. Brokus, the IRS agent who conducted the audit, can testify to facts surrounding the audit and his investigation of the taxpayers during the audit. He can testify to factual matters relating to the issuance of the Notices of Beginning of Administrative Proceeding, the issuance of information documents requests (IDRs), responses to IDRs, summonses and interviews he conducted.

Plaintiffs state in their response, at page 11, that they are merely seeking the opportunity to discover the evidence developed over the course of the audit. In such case, the production of Mr. Brokus for deposition will satisfy this aspect of plaintiffs' Rule 30(b)(6) notice. The United States' concern that plaintiffs were impermissibly seeking testimony challenging the procedures used by the IRS in issuing the FPAAs appears to be unfounded. (*See* pg. 11 of Plaintiff's Response to United States Motion for Protective Order). Accordingly, plaintiffs should have no objection to limiting testimony related to this category to the facts gathered during the audit of plaintiffs' returns, as proposed by the United States in its motion for a protective order.

**B. The IRS's interpretation and application of 26 U.S.C. §752**

Plaintiffs, at page 12 of their response, maintain that information relating to the IRS's application and interpretation of §752 directly relates to the assertion of penalties and plaintiffs' defense against those penalties. Plaintiff is half correct. Certainly the IRS's interpretation and application of §752 as requiring plaintiffs to treat their obligations to close their short sale positions as a liability underlies the adjustment at issue in these proceedings and that adjustment gives rise to the proposed penalties. At the same time, plaintiffs clearly did not rely on the IRS's interpretation and application of §752 at the time they claimed the artificial basis on their partnership returns or this litigation would not exist. As stated in the United States' Response to Plaintiffs' Cross-Motion for Summary Judgment (at p. 9), the IRS has consistently maintained that when, as here, an obligation creates or increases the basis of the obligor's assets, that obligation is a "liability" under § 752.

It is significant to note that plaintiffs are seeking testimony, not documents, through their Rule 30(b)(6) notice. The United States has already produced its administrative files related to tax audits underlying the proposed adjustments now being challenged by the plaintiffs. The United States has also produced the relevant Heritage documents obtained from the bankruptcy trustee subsequent to the audit.[1] Additionally, the United States has produced non-privileged, albeit irrelevant, documents responsive to plaintiffs' document production requests for documents related to the issuance of Revenue Ruling 95-26, Treasury Regulations §1.752-6 and §1.701-2 and internal

[1] The Heritage files in possession of the bankruptcy trustee were summoned by the IRS in an investigation not directly related to the Sands family. Pursuant to the IRS summons, the bankruptcy trustee produced a massive amount of largely unorganized Heritage documents. The undersigned requested that, as part of its review of the Heritage documents produced by the Trustee, the IRS segregated those documents which were related to these consolidated cases. When that process was completed, a copy of these documents was provided to the undersigned and, in turn, to plaintiffs.

IRS' documents related to 26 U.S.C. §752. Not satisfied with the documents themselves, plaintiffs now ask that a deponent be produced to testify as to the IRS's interpretation of §752.

Plaintiffs state, at page 6 of their response, that they are not seeking the testimony as to the personal views of any IRS employees. However, any deponent produced by the United States with respect to this line of inquiry would be unable to offer testimony as to anything else. As stated in *Sidell v. Commissioner*, 225 F.3d 103, 111 (1st Cir. 2000):

> The tax code is an intricate web and demands clear rules so that it may be administered with as little uncertainty as possible. To achieve this goal, the IRS must speak with a single voice, that is, through formal statements of policy such as regulations or revenue rulings. *See Connecticut Gen. Life Ins. Co. v. Commissioner*, 177 F.3d 136, 145 (3d Cir.1999). Accordingly, statements by individual IRS employees cannot bind the Secretary. *See Armco, Inc. v. Commissioner*, 87 T.C. 865, 867, 1986 WL 22040 (1986); *see generally Irving v. United States*, 162 F.3d 154, 166 (1st Cir.1998) (en banc) ("[C]ourts customarily defer to the statements of the official policymaker, not others, even though the others may occupy important agency positions."). Because these internal memoranda represent the personal views of the authors, not the official position of the agency, they do not figure in our decisional calculus. *See Honeywell Inc. v. United States*, 228 Ct.Cl. 591, 661 F.2d 182, 185-86 (1981).

At most, any deponent offered by the United States could only direct plaintiffs to the documents previously produced by the United States or to the statute itself and authorities cited in the United States' summary judgment materials filed in this litigation. Since plaintiffs already have this information, compelling the United States to produce a deponent who could only point plaintiffs to this material is pointless.

The proper construction of Section 752 and the regulations, as well as their application to the transactions at issue here, is an issue of law for the Court to decide based upon its analysis and application of the governing legal authorities. *See, e.g, Neptune v. United States*, 38 Fed.Cl. 510, 513 (1997), *affd* 178 F.3d 1306 (Fed. Cir. 1998). Two circuit courts have recently reached similar

conclusions in refusing to rely upon the statements of former government officials in construing tax regulations. In *Siddell*, 225 F.3d at 111, a case involving a dispute concerning the construction of a regulation, the First Circuit rejected as irrelevant the taxpayers' attempted reliance upon internal Service memoranda purportedly showing the Service's internal construction of a regulation, stating—

> Because these internal memoranda represent the personal views of the authors, not the official position of the agency, they do not figure in our decisional calculus.

The Third Circuit, similarly rejecting an effort to rely upon evidence of internal Service discussions in construing a regulation, stated that "we accord little weight to the . . . recollections of the several Treasury officials who submitted affidavits regarding the meaning of the [regulation.]" *Connecticut General Life Insurance Co. v. Commissioner*, 177 F.3d 136, 145 (3rd Cir. 1999). See *Armco Corp. v. Commissioner*, 87 T.C. 865, 867-68 ((1986)(statement of principal drafter not relevant in construing regulation)). All of these cases show that, even if the proposed depositions were to produce the testimony plaintiffs hope to develop, that evidence would still have no value.

At least three separate rationales support this unanimous conclusion that the testimony of the drafters is not relevant in construing a regulation. First, such testimony impinges upon the role of the Court as the arbiter of the law. Second, after-the-fact testimony developed in the context of litigation concerning the meaning of a regulation is inherently unreliable. Finally, the cases recognize that the testimony of a single agency official is of no value in determining the agency's construction of a regulation.[2]

---

[2] The Court appears to have adopted this rationale in barring proposed discovery of internal background files concerning the development of a Service ruling, stating–

> the files requested by plaintiff will be relevant in this action only in very limited circumstances. And, even in those limited circumstances, various materials in those files undoubtedly will shed no light

As previously noted, notwithstanding the fact that documents referenced by this line of inquiry are irrelevant to the claims and defenses presented in this case, the United States has already produced the non-privileged material relevant to this line of inquiry. Nothing more can be gained by conducting a deposition to re-identify the previously produced documents. As such, the costs and waste of resources contemplated by multiple depositions to confirm the identity and content of this irrelevant material is not justified. *See Exxon Research and Engineering Co. v. United States*, 44 Fed.Cl. 597 (1999).

Plaintiffs' reliance on *JZ Buckingham Investments LLC v. United States*, No. 05-231 T,__ Fed. Cl. ___ (August 9, 2007) and in *Jade Trading, LLC v. United States*, 65 Fed. Cl. 487 (2005) is misplaced. *Jade Trading* involves document production rather than deposition testimony. Further, the Court in *Jade Trading* ultimately sustained the United States' invocation of deliberative process privilege.[3] Regarding *JZ Buckingham*, the testimony sought was from a third party with respect to a case it had settled with the United States. While the United States would be prohibited under 26 U.S.C. §6103 from discussing the settlement, the taxpayer did not suffer from the same

---

> whatsoever on what the IRS, as an agency, felt the ruling meant or means. Thus, for example, the files could contain memoranda from individual IRS line attorneys setting forth positions that do not represent the agency's formal view of the law, including positions that were rejected by the IRS or the Treasury Department in choosing the final terminology and scope of the ruling. In this regard, plaintiff's attempt to analogize the ruling's background file to a statute's legislative history, in fact, proves informative, but only in sounding a note of caution. Seemingly, just as courts often refuse to attribute to Congress views expressed by a staffer or an individual member of Congress, particularly where such statements are made after the passage of a law, so too should this court be extraordinarily hesitant to attribute to the IRS or the Treasury Department interpretations of a revenue ruling made by individual IRS employees that represent their personal views, rather than the official position of the agency. Thus, even if, in general, the background file of a revenue ruling might, in highly limited circumstances, be relevant in resolving a question of statutory construction, it remains that the only materials in that file that would figure in this court's decisional calculus are those reflecting some high level of agency approval.

*Von's Companies v. United States*, 51 Fed. Cl. 1 (2001).

[3] A copy of this Order is attached as Exhibit "A".

infirmity. Further, the testimony sought was for facts surrounding the settlement and not with respect to an official opinion as to the IRS interpretation or application of §752.

(2) The identity and contents of documents in the files of The Heritage Organization

As plaintiffs clarify in their response, at page 13, they are merely seeking testimony regarding the identity and contents of Heritage documents reviewed during the examination of plaintiffs' tax returns. Apparently, the United States' concern that plaintiffs were impermissibly seeking testimony regarding attorney work product or third party taxpayer information appears to be unfounded, and the production of Mr. Brokus for deposition will satisfy this aspect of plaintiffs' Rule 30(b)(6) notice. Accordingly, plaintiffs should have no objection to limiting testimony related to this category to the Heritage documents reviewed during the audit of plaintiffs' returns, as proposed by the United States in its motion for a protective order.

(3) The identity and contents of third party files (other than The Heritage Organization)

Again, as plaintiffs clarify in their response, at page 14, they are merely seeking testimony regarding the identity and contents of third party files reviewed during the audit of plaintiffs' tax returns. Once again, the United States' concern that plaintiffs were impermissibly seeking testimony regarding attorney work product or third party taxpayer information appears to be unfounded, and the production of Mr. Brokus for deposition will satisfy this aspect of plaintiffs' Rule 30(b)(6) notice. Accordingly, plaintiffs should have no objection to limiting testimony related to this category to the third party documents reviewed during the audit of plaintiffs' returns, as proposed by the United States in its motion for a protective order.

(4) The conduct of the IRS audit

As plaintiffs state in their response, at page 11, plaintiffs are "seeking the opportunity to discover from the government witness(es) the evidence that was developed over the course of the audit." Viewed in this light, the production of Mr. Brokus for deposition will satisfy this aspect of plaintiffs' Rule 30(b)(6) notice. Accordingly, plaintiffs should have no objection to limiting testimony related to this category to the evidence developed over the course of the audit, as proposed by the United States in its motion for a protective order.

(5) The facts and mixed matters of fact and law (including conclusions and opinions) upon which defendant based its determinations/adjustments in the FPAAs

Plaintiffs' response to the United States' objections is circular and confusing. Plaintiffs appear to state, at page 16 of their response, that they are seeking testimony "of facts discovered in the audit upon which the Commissioner's decision was based." As previously stated, and restated, if plaintiffs wish to inquire into the factual issues behind the determinations and adjustments made in the FPAAs, the United States does not object to this line of inquiry. The Revenue Agent who conducted the audit and assisted in the preparation of the FPAAs can testify as to the factual background and investigation which resulted in the issuance of the FPAA. Once again, plaintiffs should not object to so limiting the scope of the Rule 30(b)(6) notice, as proposed by the United States' motion.

However, the United States objects to testimony relating to the conclusions and opinions of IRS personnel relating to legal issues raised in the FPAAs. Plaintiffs state that they are not seeking testimony as to legal conclusions but they are instead only seeking opinions and conclusions of defendant as to the facts and *mixed matters of fact and law* on which defendant based its determinations in the FPAAs. First, the FPAAs speak for themselves. The legal basis for the adjustments and determinations made by the IRS are set out in the FPAAs, the United States'

Motion for Summary Judgment and the United States' Response to the plaintiffs' Cross-Motion for Summary Judgment. This is a *de novo* proceeding in which the FPAA is presumed correct and the court has jurisdiction to determine all of the partnership items of the plaintiffs. The reasons for the Commissioner's determination are not relevant because the court does not review the administrative policy and procedure of that determination. *Greenberg's Express, Inc. v. Commissioner*, 62 T.C. 324, 327-8 (1974). As such, the deliberative process of the Internal Revenue Service in the issuance of the FPAA is irrelevant. *See also Deseret Management Corporation v. United States*, 76 Fed. Cl. 88 (2007)(recognizing that deliberative process privilege "covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated").

In *Flamingo Fishing Corp. v. United States*, 31 Fed. Cl. 655 (1994), the taxpayers requested a deposition of the revenue agents regarding various issues. One of the lines of questioning to be asked involved whether the definition of "normally" in the statute is ambiguous and was applied inconsistently by the agents. This Court firmly held that "[t]he opinions, conclusions and reasoning of government officials are not subject to discovery. The subjective analysis of the agent and technical supervisor ... and their respective opinions as to the proper method to be applied in determining whether taxes are due form no part of plaintiffs' case. The opinions, impressions, conclusions and reasoning of IRS agents are irrelevant to the validity of the assessment against plaintiff. ... Resolution of these issues depends solely on application of the pertinent law to the facts of this case." *Id.* at 658 (citations omitted).

In another case, *United States v. Nordberg*, 1996 WL 170119 (D. Mass. 1996), *affd*, 97 F.3d 1445 (1st Cir. 1996), the taxpayer's discovery requests sought information about the reasoning and

processes by which IRS employees involved with the audit of taxpayers' return decided to assess the tax liabilities. The Court held that the information requested by the taxpayers has no bearing on the sole issue in the case because the taxpayers' ultimate tax liability is not influenced by the IRS' conduct or findings during the audit. *Id.* at *2. The Court also held that "if the Nordbergs' treatment of the trading losses on their 1987 tax return was erroneous as a matter of law, they are liable regardless of what an IRS agent, at any time, might have thought." *Id.* at *3.

Accordingly, while the IRS agent can testify to the factual background and investigation which resulted in the issuance of the FPAA, the IRS agents' opinions, reasoning and conclusions regarding the audit are absolutely irrelevant to this case, they are not reasonably calculated to lead to relevant evidence, and questioning as to their opinions, reasoning and conclusions should not be allowed.

(6) <u>The conduct of the IRS in determining to apply accuracy-related penalties to plaintiffs</u>

As plaintiffs state in their response, at page 16, plaintiffs are seeking the "discovery of facts discovered in the audit upon which the Commissioner's decision was based." Once again, the production of Mr. Brokus for deposition will satisfy this aspect of plaintiffs' Rule 30(b)(6) notice. Accordingly, plaintiffs should have no objection to limiting testimony related to this category to the evidence developed over the course of the audit, as proposed by the United States in its motion for a protective order.

(7) <u>The facts, mixed matters of law and fact, relating to the reasonable cause, good faith or negligence of plaintiffs</u>

At page 17 of their response, plaintiff emphatically state that they plan to seek testimony as to the "opinions and conclusions ... on which the defendant based its determinations in the FPAA." The United States continues to object to testimony relating to the legal conclusions and opinions

of IRS personnel with respect to the application of penalties as set out in the FPAAs. First, the FPAAs speak for themselves. The legal basis for the penalty determinations made by the IRS are set out in the FPAAs, the United States' Motion for Summary Judgment and the United States' Response to the plaintiffs' Cross-Motion for Summary Judgment. As stated throughout this motion, this is a *de novo* proceeding in which the FPAA is presumed correct and the court has jurisdiction to determine all of the partnership items of the plaintiffs. The application of penalties is a determination to be made by this Court, and the "conduct" of the IRS in making its determination regarding the application of these penalties is not at issue in this litigation. However, to the extent that plaintiffs wish to depose Mr. Brokus regarding factual issues relating to the application of the penalties, the United States will not object to this line of inquiry. As stated above, this Court has held that the subjective analysis of the agent and technical supervisor and their respective opinions as to the proper method to be applied in determining whether taxes are due form no part of plaintiffs' case. *See Flamingo Fishing*, at 658.

The United States also takes issue with the fact that plaintiffs state in their response that the penalties assessed against plaintiffs were assessed by the United States in bad faith (*See* pgs. 6 and 7 of plaintiffs' response). First, as the United States set out in its response to plaintiffs' Cross-Motion for Summary Judgment, the evidence establishes that the penalties were not assessed in bad faith. The United States also notes that the tax opinion letters relied upon by plaintiffs for their reasonable causes defense in this litigation were not supplied to the IRS during the audit. Accordingly, the IRS could not even consider a reasonable cause/substantial authority defense at the audit level. The United States did not receive copies of the tax opinion letters until requested by the United States through discovery in this litigation.

The United States agrees that plaintiffs may inquire regarding "factual or investigative material." (Page 17 of plaintiffs' response). If this is what plaintiffs are truly seeking through this category, the production of Mr. Brokus for deposition will satisfy this aspect of plaintiffs' Rule 30(b)(6) notice. Accordingly, plaintiffs should have no objection to limiting testimony related to this category to the evidence developed over the course of the audit, as proposed by the United States in its motion for a protective order.

## CONCLUSION

For the reasons set out above, the United States respectfully requests that the Court grant it protection from plaintiffs' Rule 30(b)(6) deposition notice and that the Court limit the scope of any such deposition(s) to testimony of a United States representative familiar with the audit of plaintiffs' tax returns and to facts directly related to that audit.

Respectfully submitted,

/s/ Thomas M. Herrin
THOMAS M. HERRIN
Attorney of Record
Tax Division
Department of Justice
717 N. Harwood, Suite 400
Dallas, Texas 75201
(214) 880-9745 / (214) 880-9762
(214) 880-9742 (FAX)

RICHARD T. MORRISON
Acting Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
LOUISE HYTKEN
Chief, Southwestern Civil Trial Section
MICHELLE C. JOHNS
Trial Attorney