IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

In re: ) Case No. 04-35574BJH-11 & Adv. Proc. Nos. 05-3568, 05-3569, 05-3570, 05-3669

THE HERITAGE ORGANIZATION, LLC,

Debtor.

---

ORAL DEPOSITION OF
JOSEPH VAN VOORHIS
November 30, 2006
Volume 1

COPY

EXHIBIT 8

---

ORAL DEPOSITION OF JOSEPH VAN VOORHIS, produced as a witness at the instance of the CLIENT/CLAIMANT MERALEX, LP, and duly sworn, was taken in the above-styled and numbered cause on the 30th day of November, 2006, from 10:26 a.m. to 2:18 p.m., before Caroline Tadlock, RPR, CSR in and for the State of Texas, reported by machine shorthand, at the law offices of Haynes & Boone, 901 Main Street, Suite 3100, Dallas, Texas, pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.

APP 1426



Electronically signed by Caroline Tadlock (601-254-310-5556) 55268f45-fcaf-496a-a0ff-ac1ff144e578

by the contractor when they went to a meeting. So if the state allowed it under the law -- and we had a process where our attorneys would continuously update it -- we would receive a list, and then our -- for lack of a better word -- and it's a terrible word -- secretarial pool, I guess, the people that put our packages together for our trips, they would include a tape, and they would put a sticker on there that said you can or you can't, so that we would know if it was appropriate to do. We would also receive a cassette tape in our folder that we were to put a debrief on after the meeting.

Very few of the transcripts were ever read. I don't understand -- actually, the process that we went through was very expensive and time-consuming and nobody ever read them. People would read the debrief, which was notes of our meeting and impressions and what we thought, what we learned.

Q. What was the process of transcribing the recordings?

A. Again, it was not my department and I did not work in that. But I would return my package back to the office. They would take the recording out. We had a number of people employed to transcribe the tapes. Where they went, I don't know from there.

Q. To your knowledge, were the tapes reliably transcribed?

A. Yeah. You know, they -- they always wanted us to read them and edit them, which I didn't do, but -- it was for

APP 1433



Electronically signed by Caroline Tadlock (601-254-310-5556) 55268f45-fcaf-496a-a0ff-ac1ff144e578

our internal use only, so I didn't think that it was relevant. I thought my debrief was a better reflection, more summarized reflection, of what's going on.

Q. To your knowledge, were the tape recorders that you used, either on the phones or in meetings, reliable?

A. Yes and no. To -- 13 years, I had a lot of them. Some were; some weren't.

Q. Overall?

A. Overall, I thought, yeah -- the problem was that it was very difficult to -- for the transcribers to hear. I mean, it wasn't like I took the tape recorder out and put it on the table. You kept it in your coat pocket. And I kept it in my inside coat pocket. So it was muffled if I moved around. It was very difficult for them to hear what was going on. So in that respect, it was hard to hear. And if you've seen the transcript, you'll see where they just made some notation that they couldn't understand. And there was generally a lot of that in there.

Q. Did you regularly or infrequently record telephone conversations?

A. When I was in the role of initiator, I regularly recorded. Not many of those were ever transcribed. There -- there was no material information that would help somebody in our process. So I'm going to say most of -- 90, 95 percent of the telephone recordings were never transcribed. That's an





Electronically signed by Caroline Tadlock (601-254-310-5556) 55268f45-fcaf-496a-a0ff-ac1ff144e578