1997 WL 33313960 (IRS FSA)

Internal Revenue Service (I.R.S.)
IRS FSA
Field Service Advisory

November 21, 1997

CC:DOM:FS:P&SILEGardner
**to:** Assistant Regional Counsel, (Large Case) Southeast Region - Jacksonville (CC:SER:LC:JAX)

**from:** Assistant Chief Counsel (Field Service)

**subject:** ***

This memorandum is in response to your request for Field Service Advice in the above-noted case, dated August 22, 1997.

## ISSUES

(1) Whether an obligation ("Obligation") incurred by *** to close a short sale constitutes a liability for purposes of I.R.C. § 752?

(2) Whether the Obligation constitutes a contingent liability?

## CONCLUSIONS

(1) The Obligation incurred by *** to close a short sale constitutes a liability for purposes of section 752. See Rev. Rul. 95-26, 1995-1 C.B. 131.

(2) The Obligation is not a contingent liability because the collateral securing the Obligation, identical T-Bills, could be readily valued at the time of the constructive termination of *** and the collateral did not depend upon a speculative asset, such as future profits.

## FACTS

*** was incorporated ***, as an *** servicing the *** area. On ***, *** formed ***. *** became the parent corporation of *** and its subsidiaries pursuant to a corporate restructuring plan. ***, as the parent, and its affiliates filed consolidated federal income tax returns. *** continued to operate as a ***. ***, a wholly-owned subsidiary of ***, was a diversified holding company owning ***'s non-regulated subsidiaries.

On ***, *** purchased all the outstanding common stock of ***, a Philadelphia insurance holding company, for $ ***. *** and its subsidiaries were included in ***'s consolidated returns from *** to ***. On ***, *** sold its stock in *** to *** for $ ***. *** reported a long-term capital loss of $ *** (" *** Loss") on the sale.[FN1] The *** Loss was subject to the ***, which essentially prevents a consolidated group from utilizing a portion of its claimed losses to offset gain in the group.

On its original *** return, *** applied the *** to the *** Loss. *** determined that they were entitled to use approximately $ *** of the total *** Loss. The remaining *** Loss was disallowed under the ***. After the *** modifications, *** carried back and utilized capital losses totalling approximately $ *** to the taxable years *** and ***, leaving approximately $ *** available to carryforward to the taxable year ***. *** does not generate large capital gains as a normal operation of their business. Therefore, they faced the prospect of losing the carryforward portion of the *** Loss within *** years.

In ***, ***, a stock brokerage firm, introduced an investment plan, "***, to ***. The *** was structured as an investment plan which could be used as part of an overall program tailored to a particular company's tax needs. At one of the meetings between *** and ***, the group was given a brochure describing a partnership structure whereby the New York branch of the ***, a Netherlands international bank (the "Bank"), would sell a *** percent limited partnership interest to ***. The partnership would invest in treasury and mortgage markets.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT
tabbies
8

**Issue # 2. Whether the Obligation is a contingent Liability?**

We believe the Obligation is a liability for purposes of section 752 and *** should increase its basis by the proceeds of the short sale as indicated in Rev. Rul. 95-45. *** contends that the Obligation is a contingent liability which has a *** value. Under that argument, at the time of the constructive termination, the partners' bases in *** included only their cash basis and their shares of the $ *** liability to ***. Nevertheless, in this case the liability was not so contingent that it could not be valued for basis purposes under section 752.

Contingent liabilities which are too contingent to value are generally not added to basis until they become fixed. In La Rue v. Commissioner, 90 T.C. 465 (1988), the Tax Court held that a securities partnership's back office liabilities were too contingent to be included in the bases of the partners' partnership interest. The court also held that liabilities attributable to an accrual basis partnership's deductible expenses must meet the " all-events" test before they may be included in the bases of the partners' partnership interest.[FN4] The "all events" test, as applied in La Rue, focused on the fact of liability and whether the amount of the liability was definite or fixed. The court said that accrual accounting requires that the amount be determinable with "reasonable accuracy." La Rue, 90 T.C. at 479.

The Tax Court has rendered many other opinions consistent with La Rue that have been affirmed by many different circuits. For example, in Long v. Commissioner, 71 T.C. 1 (1978), aff'd in part and rev'd in part on other issues, 660 F.2d 416 (10th Cir. 1981), the Tax Court held that law suits filed against a partnership which were contested by the partnership were too contingent to be included in the partner's basis in its partnership interest. The court said that those liabilities should be taken into account only when they are fixed or paid. In Lemery v. Commissioner, 52 T.C. 367, 377-378 (1969), aff'd on other grounds, 451 F.2d 173 (9th Cir. 1971), the Tax Court held that a purchaser's obligation to pay the seller $200,000 out of the purchaser's "net profits" for a covenant not to compete was too contingent and indefinite to be included in the purchaser's cost basis. In Albany Car Wheel Co. v. Commissioner, 40 T.C. 831 (1963), aff'd, 333 F.2d 653 (2d Cir. 1964), the Tax Court held that the purchaser's obligation under a union contract which was in effect prior to the purchase of the assets and which required the purchaser to give written notice or severance pay to employees with one and five years' service was too speculative to be included in the basis of the purchased assets. The Tax Court in La Rue, 90 T.C. at 478, compared the holding in Albany Car with the holding in Security Flour Mills Co. v. Commissioner, 321 U.S. 281 (1944) (contested tax liability indefinite in amount not deductible), indicating that the appropriate test in determining whether a contingent liability is included in an asset's basis is the "all-events" test that is applied in determining whether a contingent liability is deductible.

Other circuits have rendered opinions consistent with La Rue. In Brountas v. Commissioner, 692 F.2d 152 (1st Cir. 1982), cert. denied, 462 U.S. 1106 (1983), the First Circuit Court of Appeals held that a partner's obligation under nonrecourse notes, which would be paid out of oil and gas production or not at all, were too contingent or speculative to be included in the partner's basis for purposes of section 752. In Gibson Products Co. v. United States , 637 F.2d 1041 (5th Cir. 1981), the Fifth Circuit Court of Appeals held that a partnership's liability under nonrecourse notes which would be paid out of possible future oil and gas production was too contingent to be treated as a liability for purposes of section 752.

The Eleventh Circuit, in Maddrix v. Commissioner, 780 F.2d 946 (11th Cir. 1986), also held that nonrecourse notes secured only by a mineral interest would not qualify for a deduction. This case did not involve an issue of whether a partner's basis would be increased by a contingent liability for purposes of section 752. However, the fact that the court denied a deduction to the taxpayer based upon the court's conclusion that the liability was contingent and the fact that the Eleventh Circuit cited Brountas and Gibson, in support of its conclusion indicates that the Eleventh Circuit would reach the same result as the courts have in those cases. See also CRC Corp. v. Commissioner, 693 F.2d 281 (3d Cir. 1982); Rev. Rul. 88-77, 1988-2 C.B. 128 (The Service ruled that a liability that is too contingent to give rise to an immediate deduction is not a partnership liability.).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

These cases do not decide the issue of whether the obligation is a liability and, as stated above, we conclude that the Obligation is a liability for purposes of section 752. However, these cases do hold that the liability which is contingent does not increase basis in an asset or a partners' interest in a partnership until such liability becomes fixed and determinable. These cases involve the timing issue, not a question of whether the Obligation constitutes a liability. However, in this case, the timing issue is very important. At least one case decided by the Second Circuit Court of Appeals and dicta in one Tax Court case might offer some support to the position that the Obligation is not a contingent liability.

In Fox v. Commissioner, 80 T.C. 972 (1983), aff'd, Barnard v. Commissioner, 731 F.2d 230 (4th Cir. 1984), the Tax Court held that an obligation under a nonrecourse note was worthless at its inception because it was payable from the proceeds of book royalties which was dependent upon the success of books as commercial enterprises. However, the court said that, in the line of cases mentioned above, i.e., Brountas and the others, the courts "addressed the problem of bona fide loans where the sole security for such loans is a speculative assets with an indeterminable value at the time of purchase." Fox, 80 T.C. at 1020. From this language, we can assume that the Tax Court might hold that the Obligation, which is a bona fide liability, is not a contingent liability if the security for the Obligation, i.e., the T-Bills, is not a speculative asset with an indeterminable value.

Further support for this position is found in Lebowitz v. Commissioner, 917 F.2d 1314 (2d Cir. 1990), rev'g, T.C. Memo. 1989-178. In that case the Second Circuit Court of Appeals held that a nonrecourse obligation of partners with an interest in a partnership engaged in acquiring mining property was not contingent where the value of the coal mining rights was susceptible to reasonable determination, given the substantial amount of cash paid on the line, the evidence of the partners' good faith, and other supporting evidence, even though payments on the note were to be set according to the production of coal. The Second Circuit distinguished Brountas and the other cases from this case because, in those cases the nonrecourse note was secured by the proceeds to be derived from oil drilling that was exploratory or "wildcat" in nature, with little or no solid evidence that there was in fact any oil at all on the properties in question. In Lebowitz, the court said the note was secured by a perpetual leasehold interest in proven reserves of coal. The court also distinguished this case from Fox. The court said that payment on the note was secured by the value of the coal rights themselves, and did not depend on the success of the mining on the tract of land. The court compared this type of obligation to nonrecourse notes secured by mortgages on low-income housing projects. ***.

In sum, the cases where the courts have held that highly contingent or speculative obligations are not recognized for tax purposes until the uncertainty surrounding them is resolved focused on, in part, whether the obligation ever had to be paid. Thus, the nature of the liabilities would generally only be satisfied through future profits that were speculative; the liabilities were contested; or the collateral securing the liability could not be determined at the time the note was made or was a speculative asset with an undeterminable value at the time of purchase. However, in this case the value of the T-bills can be determined with reasonable accuracy and is not too contingent. The payment in satisfaction of the Obligation, the T-Bills, had a determinable value. Therefore, the Obligation is not a contingent liability such that it could not be valued for section 752 purposes.

This case is currently in the Tax Court and is appealable to the Eleventh Circuit. In our research, we have found only one case, Maddrix, in the Eleventh Circuit. However, as discussed above, we believe the Eleventh Circuit would apply the same " all events" test to determine whether the Obligation was contingent or not. In conclusion, there are litigating hazards present in this case. We understand that *** and *** on this issue. If you have any questions, please contact Lori Gardner at (202) 622-7840.

Deborah A. Butler

By:

William C. Sabin, Jr.
Senior Technician Reviewer Passthroughs & Special Industries
Field Service Division

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.