LEXSTAT 2003 TNT 219-47

Copyright © 2003 Tax Analysts
Tax Notes Today

NOVEMBER 13, 2003 THURSDAY

**DEPARTMENT:** Regulations and Comments; Public Comments on Regulations

**CITE:** *2003 TNT 219-47*

**LENGTH:** 1320 words

**HEADLINE:** 2003 TNT 219-47 GOLDBERG SUGGESTS SON OF BOSS REGS WILL DIMINISH SETTLEMENT PROSPECTS. (Section 752 -- Partnership Liabilities;) (Release Date: OCTOBER 31, 2003) (Doc 2003-24053 (4 original pages))

**CODE:** *Section 752* -- Partnership Liabilities;
*Section 358* -- Basis to Distributees

**ABSTRACT:** Fred Goldberg of Skadden, Arps, Slate, Meagher & Flom LLP has submitted comments on the temporary regulations related to so-called son of BOSS transactions.

**SUMMARY:**

Published by Tax AnalystsTM

Fred Goldberg of Skadden, Arps, Slate, Meagher & Flom LLP, Washington, has submitted comments on the temporary regulations (REG- 106736-00) related to so-called son of BOSS transactions.

According to Goldberg, the temporary regs will diminish settlement prospects and encourage taxpayers to pursue litigation. He notes that the temporary regs contain many potential substantive infirmities, and that the potential benefits of litigation for individual taxpayers outweigh the relative costs.

**AUTHOR:** Goldberg, Fred T. Jr.
Skadden, Arps, Slate, Meagher & Flom LLP

**GEOGRAPHIC:** United States

**REFERENCES:** Subject Area:
Partnership taxation
Cross Reference:
For a summary of REG-106736-00, see Tax Notes, June 30, 2003, p. 1900; for the full text, see Doc 2003-15226 (4 original pages), *2003 TNT 125-73*, or H&D, June 24, 2003, p. 3859.

**TEXT:**

Release Date: OCTOBER 31, 2003

Published by Tax AnalystsTM

EXHIBIT
tabbies
11

© 2003, Tax Analysts, Tax Notes Today, NOVEMBER 13, 2003

October 31, 2003

Internal Revenue Service
CC:PA:RU (REG-106736-00)
1111 Constitution Avenue
Room 5226
Washington, D.C. 20044

RE: Comments on *Temp. Treas. Reg. Sec. 1.752-6T*

Dear Sir or Madam:

[1] We write to comment on *Temporary Treasury Regulation Sec. 1.752-6T* (the "Temporary Regulation") and the Service's announced fast track settlement objectives regarding transactions described in Notice 2000-44. We believe the Temporary Regulation will greatly diminish prospects for settlements by artificially constraining the discretion of field personnel and appeals officers to make realistic settlement proposals, while encouraging taxpayers to risk litigation.

[2] As a general matter, we welcome and strongly encourage efforts by the Service to use fast-track settlement procedures to resolve outstanding conflicts over the so-called Son of BOSS transactions. Recent public comments by senior officials of the Internal Revenue Service ("IRS") appear to move in this direction./1/ But for the Temporary Regulation, we are confident that taxpayers and the IRS could resolve the thousands of purported Son of BOSS transactions in a mutually satisfactory fashion and in the best interests of tax administration.

[3] The comments provided by others address many of the potential substantive infirmities the Temporary Regulation suffers./2/ These include,

o whether *section 7805(a)* authorizes retroactive effect of the Temporary Regulation;

o whether section 309(c) of the Community Renewal Tax Relief Act of 2000/3/ authorizes regulations governing transactions such as those described in Notice 2000-44;

o whether section 309(c) of the Community Renewal Tax Relief Act of 2000 authorizes the specific approach taken in the Temporary Regulation;

o whether taxpayers were on notice that such drastic retroactive regulations would be issued, in light of the failure by the Service to include any warning or discussion in Notice 2000-44;

o whether courts would grant any deference to regulations clearly intended to gain advantage against taxpayers and bolster the litigation position of the Service in existing controversies;

o whether such a bootstrapping approach will have long-term consequences on the traditional deference provided to the Treasury's regulatory authority; and

o whether the Temporary Regulation should have been subject to the notice-and-comment procedures required by the Administrative Procedure Act./4/

Rather than repeat the analysis provided by others, we have three observations on the adverse impact of the Temporary Regulation on efforts by the Service to fairly and expeditiously resolve the tax treatment of "Son of BOSS" transactions described by Notice 2000- 44./5/

© 2003, Tax Analysts, Tax Notes Today, NOVEMBER 13, 2003

[4] First, we believe that the IRS has significant litigation risks respecting the validity of the Temporary Regulation. As other commenters have amply demonstrated, the legislative history of the underlying statute, the provisions of *Section 7805* and the Administrative Procedures Act, and case law such as *Chock Full O'Nuts Corporation v. United States, 453 F.2d 300, 303 (2d Cir. 1971),*/6/ suggest that taxpayers could prevail in challenging the Temporary Regulation's validity. The practical point is this: While IRS hazards do exist, we are concerned that those responsible for settling the Son of BOSS cases on the government's part may feel constrained from taking them into account and offer settlements that require complete concessions by taxpayers.

[5] Second, if the IRS did attempt to require complete concessions, it seems virtually certain that many of the thousands of affected taxpayers would decide to litigate their cases, especially those who made timely filings under Announcement 2002-02./7/ There is simply little or no incentive for them to do otherwise, given the potential benefits to be gained from a litigation victory relative to the costs of pursuing that litigation.

[6] Third, the IRS' stakes in litigating the validity of its Temporary Regulation are far different from the stakes faced by individual taxpayers. Faced with the option of conceding now or possibly losing in court down the road, many taxpayers will make the entirely rational choice to litigate. If they win, they will be much better off than under any concession-based settlement, and if they lose, they are not much worse off. In contrast, if the IRS loses but one case on the validity of its Temporary Regulation, the consequences from the perspective of tax administration are potentially quite severe.

[7] We believe that the Temporary Regulation has the unintentional effect of impeding sound administration of the tax laws and undermining the current IRS tax shelter and enforcement initiatives. Our view is predicated on our assessment that -- absent the retroactive effect of the Regulation -- most Son of BOSS cases could be resolved promptly and on terms that would meet the objectives of the IRS. The practical impact of the Temporary Regulation would be to force the IRS to commit scarce enforcement resources that could be far better spent elsewhere, while running the needless risk of a court decision invalidating those Regulations and thereby undermining the Treasury's rulemaking authority.

Sincerely,

/s/

Fred T. Goldberg, Jr.
Skadden, Arps, Slate, Meagher &
Flom LLP
Washington, D.C.

FOOTNOTES

/1/As described in "IRS is Making Fast Tracks for Son of BOSS Transactions," October 6, *2003 Tax Notes (vol. 101), page 23.*

/2/The referenced comments include those submitted by N. Jerold Cohen of Sutherland Asbill & Brennan LLP, Thomas L. Evans of Kirkland & Ellis LLP, Professor Philip F. Postlewaite of Northwestern University School of Law, and Jeffrey R. Hoops on behalf of the New York State Society of Certified Public Accountants.

/3/P.L. 106-554, H.R. 5662 *section 309.*

/4/*5 U.S.C. section 551* et seq. Although the preamble cites the "good cause" of preventing abuse, it is unclear how retroactive regulations that are only effective up to the date of publication can prevent future abuse.

/5/While not germane to the Notice 2000-44 transactions that are the subject of our comments, it is worth noting another practical difficulty with the Proposed Regulations. While the election under Proposed Regulation section 1.752-7 may have been intended to mitigate the harsh impact of the retroactively effective rules, the limited window for that election has already passed for many calendar year taxpayers filing their 2002 returns on an extended basis. Certainly a number of these taxpayers were either unaware of the short deadline or unable to make an informed decision on whether to make the election (especially in light of potential changes in the rules).

/6/See also, *Caterpillar Tractor Co. v. United States, 218 Ct. Cl. 517, 589 F.2d 1040, 1043 (1978), Vinson v. Commissioner, 38 (CCH) T.C.M. 740, 743 (1979), and Ludwig v. Commissioner, 68 T.C. 979, 986, n.4 (1977).*

© 2003, Tax Analysts, Tax Notes Today, NOVEMBER 13, 2003

/7/Ann. 2002-2, *2002-2 IRB 304.*

END OF FOOTNOTES

**************** End of Document ****************