C
2002 WL 32351285 (I.R.S.)

Internal Revenue Service (I.R.S)

Industry Specialization Program Coordinated Issue

All Industries

" BASIS SHIFTING" TAX SHELTER UIL NO: 9300.18-00

Effective Date: December 3, 2002

EXHIBIT 13

INTRODUCTION

On July 26, 2001, the Service issued Notice 2001-45, 2001-33 I.R.B. 129, announcing that the Service will challenge transactions identified as " basis shifting" tax shelters and disallow the capital losses purportedly derived from such transactions. These transactions are arranged by promoters and are often marketed as either Foreign Leverage Investment Portfolio (" FLIP" ) or Offshore Portfolio Investment Strategy (" OPIS" ) transactions. The transactions rely upon the interplay between I.R.C. § 302 (relating to distributions in redemption of stock) and I.R.C. § 318 (relating to constructive ownership of stock).

ISSUES

1.Whether Foreign Corporation ever had an ownership interest in the shares of Foreign Bank stock that were purportedly redeemed.

2.If Foreign Corporation is treated as having owned the shares of Foreign Bank stock, whether, under Zenz, Foreign Bank's " redemption" of such stock is treated as an exchange or a distribution to which I.R.C. § 301 applies.

3.If Foreign Corporation is treated as having owned the shares of Foreign Bank stock and Foreign Bank's " redemption" of such stock is not treated as an exchange under § 302(a), whether Taxpayer's purported loss was a bona fide loss allowable as a deduction under of I.R.C. § 165.

4.If Foreign Corporation is treated as having owned the shares of Foreign Bank stock and Foreign Bank's " redemption" of such stock is not treated as a sale or exchange under § 302(a), whether Taxpayer acquired control of Foreign Corporation with a principal purpose of avoiding or evading federal income tax with the result that the purported loss is disallowed under I.R.C. § 269.

5.If Foreign Corporation is treated as having owned the shares of Foreign Bank stock and Foreign Bank's " redemption" of such stock is not treated as an exchange under § 302(a), whether the at-risk provisions of I.R.C. § 465 limit Taxpayer's capital losses claimed.

6.Should Taxpayer's claimed loss on Foreign Bank stock and options be disallowed because the transaction as a whole lacks economic substance and business purpose

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

For the accuracy-related penalty attributable to a substantial valuation misstatement to apply, the portion of the underpayment attributable to a substantial valuation misstatement must exceed $5,000 ($10,000 for a corporation, other than an S corporation or a personal holding company). A substantial valuation misstatement exists if the value or adjusted basis of any property claimed on a return is 200 percent or more of the amount determined to be the correct amount of such value or adjusted basis. I.R.C. § 6662(e)(1)(A). If the value or adjusted basis of any property claimed on a return is 400 percent or more of the amount determined to be the correct amount of such value or adjusted basis, the valuation misstatement constitutes a " gross valuation misstatement." I.R.C. § 6662(h)(2)(A). If there is a gross valuation misstatement, then the 20 percent penalty under I.R.C. § 6662(a) is increased to 40 percent. I.R.C. § 6662(h)(1). One of the circumstances in which a valuation misstatement may exist is when a taxpayer's claimed basis is disallowed for lack of economic substance. Gilman v. Commissioner, 933 F.2d 143 (2d Cir. 1991), cert. denied, 502 U.S. 1031 (1992) (applying §6659, repealed and replaced by §6662). If the adjusted basis of Foreign Bank stock and options is 200 percent or more of the correct amount, then a substantial valuation misstatement exists; if the adjusted basis of Foreign Bank stock and options is 400 percent or more of the correct amount, then a gross valuation misstatement exists. In many cases, the basis overstatement will be of such a magnitude that a gross valuation accuracy related penalty will be appropriate. Again, this penalty will only be appropriate if Taxpayer did not reasonably rely on a tax opinion.

I.R.C. § 6664 provides an exception to the imposition of accuracy-related penalties if the taxpayer shows that there was reasonable cause for the underpayment and that the taxpayer acted in good faith. See I.R.C. § 6664(c); United States v. Boyle, 469 U.S. 241 (1985). Whether a taxpayer acted with reasonable cause and in good faith is a factual question. Treas. Reg. § 1.6664-4(b)(1)(C)(1)(i) and § 1.6662-4(e)(1). Generally, the most important factor is the extent to which the taxpayer exercised ordinary business care and prudence in attempting to assess his or her proper tax liability. See Estate of Simplot v. Commissioner, 112 T.C. 130, 183 (1999) (citing Mandelbaum v. Commissioner, T.C. Memo. 1995-255), rev'd on other grounds, 249 F.3d 1191 (9th Cir. 2001).

(i) *Whether penalties apply to the underpayment attributable to the disallowance of capital losses claimed from the transaction must be determined on a case-by-case basis depending on the specific facts and circumstances of each case.*

Special rules apply in transactions involving a partnership subject to the unified partnership audit and litigation procedures of sections 6221 through 6234 (which may occur, for example, where Taxpayer forms a partnership that participates directly in the transaction). For taxable years ending after August 5, 1997, penalties may be determined at the partnership level. I.R.C. § 6221. Treas. Reg. § 301.6221-1, effective for years ending after October 3, 2001, provides as follows.

> (c) Penalties determined at partnership level. Any penalty, addition to tax, or additional amount that relates to an adjustment to a partnership item shall be determined at the partnership level. Partner-level defenses to such items can only be asserted through refund actions following assessment and payment. Assessment of any penalty, addition to tax, or additional amount that relates to an adjustment to a partnership item shall be made based on partnership-level determinations. Partnership-level determinations include all the legal and factual determinations that underlie the determination of any penalty, addition to tax, or additional amount, other than partner-level defenses specified in paragraph (d) of this section.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(d) Partner-level defenses. Partner-level defenses to any penalty, addition to tax, or additional amount that relates to an adjustment to a partnership item may not be asserted in the partnership-level proceeding, but may be asserted through separate refund actions following assessment and payment. See section 6230(c)(4). Partner-level defenses are limited to those that are personal to the partner or dependent upon the partner's separate return and cannot be determined at the partnership level. Examples of these determinations are whether any applicable threshold underpayment of tax has been met with respect to the partner or whether the partner has met the criteria of section 6664(b)(penalties applicable only where return is filed), or section 6664(c)(1)(reasonable cause exception) subject to partnership-level determinations as to the applicability of section 6664(c)(2).

Following prior partnership law with respect to partnership items, relevant inquiries into tax motivation and negligence with respect to partnership level determinations of penalties should be determined with reference to the state of mind of the general partner. See Wolf v. Commissioner, 4 F.3d 709, 713 (9th Cir. 1993); Fox v. Commissioner, 80 T.C. 972, 1008 (1983), aff'd 742 F.2d 1441 (2nd Cir. 1984); aff'd sub nom Barnard v. Commissioner, 731 F.2d 230 (4th Cir. 1984); Zemel v. Commissioner, 734 F.2d 5-9 (3rd Cir. 1984). Nevertheless, to the extent the general partner essentially acted as the alter ego of Taxpayer, Taxpayer's intent is relevant in this context.

Partner-level defenses may only be raised through subsequent partner-level refund suits. See Treas. Reg. §§ 301.6221-1(d) and 301.6231(a)(6)-3. Good faith and reasonable cause of individual investors pursuant to I.R.C. § 6664 would be the type of partner level defense that can be raised in a subsequent partner-level refund suit. However, to the extent that Taxpayer effectively acted as the general partner and that the intent of the general partner is determined at the partnership level, it is likely that such partnership level determinations may also dispose of partner-level defenses under the unique facts of each case.

**8. Whether the unified partnership audit and litigation procedures of I .R . C § § 6221 through 6234 apply to the tax shelter adjustments.**

If the shelter adjustments at issue are generated by a TEFRA partnership, then the income and deductions of the partnership can only be adjusted under the unified partnership audit and litigation procedures of I.R.C. §§ 6221 through 6234. In addition to income, deductions and credits of the partnership, the TEFRA procedures would also apply to any reallocation of partnership items including any reallocation under section 482. See Treas. Reg. § 301.6231(a)(3)-1(a); Blonien v. Commissioner, 118 T.C. No. 34 (June 12, 2002).

Even if the deductions at issue do not flow directly from the partnership, if the taxpayer at issue is a partner in a TEFRA partnership, and received a distribution from a TEFRA partnership, the partner's carryover basis in the distributed asset is a partnership item, which must be determined under the TEFRA procedures. See Treas. Reg. § 301.6231(a)(3)-1(c)(3)(iii). Similarly, the partnership's carryover basis in any asset contributed by a partner is a partnership item. Treas. Reg. § 301.6231(a)(3)-1(c)(2)(iv).

Based on the above, if a TEFRA partnership is used to implement a " basis shifting" tax shelter, the various components of the transactions should be reviewed to determine if any portion of the adjustments will require the initiation of a TEFRA

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.