IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-407 T
(into which have been consolidated Nos. 06-408 T,
06-409 T, 06-410 T, 06-411 T, 06-810 T, 06-811 T)
Judge Emily C. Hewitt
(E-Filed: September 17, 2007)

| | |
|---|---|
| ALPHA I, L.P., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | 06-407 T |
| BETA PARTNERS, L.L.C., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | 06-408 T |
| R, R, M & C PARTNERS, L.L.C., BY AND THROUGH R, R, M & C GROUP, L.P., A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | 06-409 T |

| | |
|---|---|
| R, R, M & C GROUP, L.P., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | 06-410 T |
| CWC PARTNERSHIP I, BY AND THROUGH TRUST FBO ZACHARY STERN U/A FIFTH G. ANDREW STERN AND MARILYN SANDS, TRUSTEES, A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | 06-411 T |
| MICKEY MANAGEMENT, L.P., BY AND THROUGH MARILYN SANDS, A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | 06-810 T |

| | | |
|---|---|---|
| M, L, R & R, BY AND THROUGH RICHARD E. SANDS, TAX MATTERS PARTNER, | ) | |
| Plaintiff, | ) | |
| v. | ) | 06-811 T |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**PLAINTIFFS' RESPONSE TO UNITED STATES' SUPPLEMENTAL MOTION FOR PROTECTIVE ORDER**

Plaintiffs hereby file this response to the United States Supplemental Motion for Protective Order, in which defendant asks the Court to preclude plaintiffs from obtaining discovery under Rule 30(b)(6) regarding two topics important to this case.

## I. The Charitable Remainder Trusts Issue

Plaintiffs seek testimony from a representative of defendant pursuant to Rule 30(b)(60 with respect to documents produced by defendant to plaintiffs. The documents are correspondence between the IRS and the charitable remainder beneficiary of the Charitable Remainder Uni-Trusts ("CRUTs") that defendant has attempted to place at issue in this case. As explained in detail below, defendant has no basis for seeking a protective order for testimony on a topic it has attempted to place at issue.

On September 20, 2001, RRM&C Group LP ("Group") had four equal limited partners: Robert Sands, Richard Sands, Marilyn Sands, and CWC Partnership I (these limited partners are hereinafter referred to collectively as "the Sands"). On September 21, 2001, the Sands each transferred their respective partnership interests in Group to four CRUTs as part of a charitable gift-giving plan: Robert Sands transferred his interest to the Robert Sands Charitable Remainder

Unitrust – 2001; Richard Sands transferred his interest to the Richard Sands Charitable Remainder Unitrust – 2001; Marilyn Sands transferred her interest to the Marilyn Sands Charitable Remainder Unitrust – 2001; and CWC transferred its interest to the CWC Partnership I Charitable Remainder Unitrust – 2001 (the four CRUTs are hereinafter referred to as the "CRUT partners").

In the Final Partnership Administrative Adjustment ("FPAA") that it issued to Group on December 22, 2005, defendant asserted that the Sands' transfers of their partnership interests in Group to the CRUT partners should be disregarded as an "economic sham." As these consolidated cases have progressed, defendant has taken the further position that the CRUTs are themselves shams.

On March 29, 2007, plaintiffs filed their Motion to Substitute Certain Parties and to Dismiss Certain Causes of Action for Lack of Jurisdiction. **(**Pls.' Mot. Subst. Certain Parties, Docket #21.) In that motion, plaintiffs explained that defendant's determination that the Sands' transfers of their partnership interests to the CRUT partners were "economic shams" is not a "partnership item" that may be raised in an FPAA. Plaintiffs further explained that the portion of defendant's FPAA that made that adjustment is invalid as a matter of law, and that the Court is without jurisdiction to consider the merits of defendant's "sham transfer" argument. In its response brief, defendant took the argument one step further and argued that the CRUTs are themselves shams, on the theory that the Sands controlled the CRUTs and that they "used their control to prematurely terminate the CRUTS." (Def.'s Resp. to Pls.' Mot. Subst. Certain Parties at 6.)

In their reply brief, plaintiffs discussed some of the factual determinations that the Court would need to make to address the "sham transfer" and "sham CRUT" issues, to show that these facts do not involve Group but are instead personal to Group's partners (and, therefore, are not

"partnership items"). With respect to the transfers, plaintiffs explained that the Court would likely need to examine the transfer agreements between each of the Sands and each of the CRUTs, whether the assets were in fact transferred, whether the Sands or the CRUTs had the benefits and burdens of ownership after the transfers, and the intent of the transferors and transferees. With respect to the reality of the CRUTs, plaintiffs believe, as explained in more detail below, that the Court would need to consider the reality and independence of the charitable remainder beneficiary.

The Court has not yet ruled on plaintiffs' Motion to Substitute. While plaintiffs continue to believe that defendant has improperly raised the "sham transfer" and "sham CRUTs" arguments in this partnership-level proceeding, plaintiffs are attempting to conduct discovery to prepare the issues for trial should the Court deny plaintiffs' Motion to Substitute. In sharp contrast to the position that it took in response to the Motion to Substitute, however, defendant is now refusing to respond to these inquiries.[1] Defendant cannot have it both ways: either these issues are properly before the Court and plaintiffs are entitled to conduct discovery on them, or defendant should concede that it may not make those arguments in this proceeding.

To understand the specific request at issue in defendant's Supplemental Motion for Protective Order, it is necessary to provide the Court with some further information about CRUTs. CRUTs are one form of charitable remainder trust and are common estate planning tools that are statutorily sanctioned by Congress to encourage gifts to charity. A charitable remainder trust, as defined in 26 U.S.C. § 664, must provide for the distribution of a specified payment, at least annually, to one or more persons. The payment period must be for the life of

[1]For example, defendant agreed to provide a witness to testify pursuant to Rule 30(b)(6) to identify facts supporting defendant's contentions in the FPAAs. That witness was wholly unprepared to testify regarding what facts, if any, support the IRS' determination that the Sands' transfers to the CRUTs were "economic shams." Plaintiffs are considering filing a separate motion to compel defendant to respond to plaintiffs' discovery requests.

the individual beneficiary or for a term of years, not in excess of 20 years. Upon the termination of the noncharitable interest, the remainder must either be held in a continuing trust for charitable purposes or be paid to or for the use of a qualified charitable organization. A qualified charitable remainder trust is generally exempt from income tax, and the grantor is entitled to a charitable income tax deduction based on the present value of the remainder interest ultimately passing to charity. *See* 26 U.S.C. §§ 170(f), 664.

As described above, a CRUT has two classes of beneficiaries: the "lifetime beneficiaries" who receive at least annual payouts, and one or more charitable "remainder beneficiaries." Once a grantor of a CRUT names a charitable organization as a remainder beneficiary, the charitable remainder beneficiary has a legal interest in its remainder interest. In this case, the Educational and Health Support Fund (the "Fund") was designated as the irrevocable charitable remainder beneficiary of the CRUTs. On July 31, 2007, defendant made a belated document production to plaintiffs.[2] This production included approximately 62 pages of documents pertaining to the IRS' determination that the Fund is a qualified charitable organization exempt from tax. These documents include the IRS' requests for information sent to representatives of the Fund and the representatives' responses to those letters. Among other things, the IRS questioned how the Fund was an organization independent from the Sands, and how the Fund received its funding. Representatives responded to those requests truthfully and accurately by describing the business and employment relationships between the trustees of the Fund and the Sands and by explaining how the Fund was funded (*i.e.*, via the very same CRUT transactions which defendant seeks to make an issue in this case). As noted above, the IRS then made the fully informed decision that the Fund was an independent qualified charitable organization.

---

[2] Plaintiffs discuss the circumstances surrounding the belated production in their Motion to Strike. See Docket #62.

After they received these documents from defendant, plaintiffs supplemented their Rule 30(b)(6) deposition notice to seek testimony on the following additional topic:

> The IRS examination of the Educational and Health Support Fund's application for tax exempt status and the IRS determination that the Educational and Health Support Fund qualifies for tax-exempt status, including but not limited to the following:
>
> a. The identity and contents of the following documents included in defendant's recent production of documents:
> THO-028693 to THO-028754
> THO-028758 to THO-028759.

(There was no "b" in the request.)

Defendant makes two arguments to support its Supplemental Motion for Protective Order on this topic. Defendant argues first that the requested information is not relevant. There is no merit to this objection, as defendant itself determined that the documents were relevant in deciding to produce them to plaintiffs. To be clear, plaintiffs are only seeking testimony from an IRS representative about documents that defendant produced to plaintiffs. In late 2006, defendant culled these documents from several hundred boxes of documents and records that belonged to The Heritage Organization pursuant to a summons that defendant had issued to that entity. Defendant sorted through the records of The Heritage Organization and made its own determination of which documents were relevant to ongoing audits, leaving it with approximately 66 boxes of "relevant" documents. Ex. 1 at 23. Defendant then scanned all of the documents it determined to have relevance into a large database and ultimately created a lengthy index. Ex. 1 at 24. The index attributes all of the documents contained in the 66 boxes to various taxpayers, including the Sands. Ex. 1 at 31-33. Defendant attributed each of the documents about which plaintiffs sought testimony in supplemental Rule 30(b)(6) notice (i.e., the documents at issue here) to "Sands" or the "Sands Family." *Id.* On July 31, 2007, defendant then belatedly produced these documents to plaintiffs as a subset of all of the documents that defendant obtained from Heritage that defendant had determined pertained to the Sands. Thus,

defendant has already determined that the precise documents at issue here are relevant and pertain to its audit of the Sands family.

Moreover, it is clear that these documents are relevant to the CRUT issues if the Court determines that defendant may pursue the "sham transfer" and "sham CRUT" issues in this partnership-level proceeding. As explained above, a CRUT has two classes of beneficiaries. The Fund, as the irrevocable charitable remainder beneficiary of the CRUTs, had a legal interest in the remainder of the Sands' gifts of their limited partnership interests in Group to the CRUTs. That the IRS determined (after inquiry) that the Fund was an entity independent from the Sands with an appropriate charitable purpose certainly weighs in favor of concluding that the CRUTs were valid. Indeed, it is difficult to reconcile the IRS determination that the Fund is a valid charitable organization independent from the Sands with its position in this case that the Sands controlled the CRUTs.

Defendant also argues that section 6103 prohibits it from providing any testimony regarding these documents. That is obviously nonsensical. If section 6103 did not prohibit defendant from producing the documents in the first place there is nothing in the statute that would separately prohibit defendant from providing testimony about those same documents. The documents and related testimony are either protected taxpayer information or not. Of course, that may mean that defendant violated section 6103 in producing the documents in the first place (although defendant has not admitted that in its motion). However, that would only serve to show once again why the CRUT issues are not "partnership items" appropriate for resolution in the Group partnership-level proceeding. If defendant truly wants to challenge the nature of the transactions between the Sands and the CRUTs and the Fund, the Court is going to have to consider the reality of the Fund because it is inextricably linked to the CRUTs, which provided the Fund's only source of funding.

## II. Defendant's Inconsistent Position on the Nature of a Short Sale

The principle legal dispute in this case is whether the obligation to cover a short sale is a liability for purposes of section 752. In this case, the partners in Alpha and Group each opened brokerage accounts and executed short sales of Treasury notes. They then contributed the brokerage accounts (which held cash and the obligations to cover the short sales with replacement securities) to the partnerships. Defendant's position is that these contributions have no effect on the partners' bases in their partnership interests, because the contributions of cash are exactly offset by defendant's calculation of the "liability" to cover each short sale, resulting in a net amount invested of zero.

Defendant has also pursued section 6707 penalties against alleged "promoters" of the short sale transaction. Section 6707, as it read during the years at issue, imposed a penalty equal to the greater of $500 or 1 percent of the "aggregate amount invested" in the alleged tax shelter on promoters who failed to register the shelter with the IRS. Plaintiffs accordingly noticed the deposition of an IRS representative pursuant to Rule 30(b)(6) who could testify about how the IRS calculates penalties against promoters under section 6707. Specifically, plaintiffs want to determine whether defendant calculates the "aggregate amount invested" under section 6707 in cases involving alleged promoters of short sale transactions by reference to the total cash contributed unreduced by any obligation to cover a short sale (i.e., using a "gross amount" invested), in conflict with the position it has taken in this case (where it advocates a "net amount" invested).

In *JZ Buckingham Invs. LLC v. United States*, 2007 U.S. Claims LEXIS 256 (Ct. Fed. Cl. 2007), the Court of Federal Claims confronted a question involving section 752 that is almost identical to the one presented in this case. Ex. 2. The plaintiffs in that case made an almost identical request for information on how the IRS is computing the Section 6707 penalty.

However, unlike in this case, where plaintiffs are seeking that information directly from the IRS as a party, the plaintiffs in *JZ Buckingham* issued a subpoena seeking that information from the non-party alleged promoter. The Court of Federal Claims rejected the non-party's argument that the information sought by plaintiffs in that case was not relevant:

> If there is evidence that the IRS was inconsistent in how it treated the transactions behind the tax benefits, or how it interpreted sections of the I.R.C., such could indeed be relevant to Plaintiff's claim. Hence, at this early stage in the litigation, the Court is unable to find that the subpoena seeks irrelevant information and should be quashed on that ground.

*JZ Buckingham Invs. LLC*, 2007 U.S. Claims LEXIS 256 at *15**.** Plaintiffs respectfully believe that this Court should follow the *JZ Buckingham* case on this issue and hold that the information sought by plaintiffs might be relevant to this case.

Finally, defendant's suggestion that it will only be able to produce a witness who can provide personal views of Section 6707 and not someone who can testify in a representative capacity flies in the face of Rule 30(b)(6). Plaintiffs are not interested in the personal opinion of any employee of the IRS as to how Section 6707 **should** be applied; rather, plaintiffs have invoked Rule 30(b)(6) seeking the testimony of a representative of the IRS as to how the IRS **has in fact** applied Section 6707 in any cases involving an alleged promoter of a so-called Notice 2000-44 short sale transaction. Finally, to avoid any possible disclosure issues under Section 6103, defendant's witnesses can, of course, testify only as to the IRS' generic position as opposed to the position it has taken in any particular case.

## III. Requested Remedy

Defendant filed its Supplemental Motion for Protective Order the evening before the date noticed by plaintiffs to depose defendant's Rule 30(b)(6) witness, which took place at the offices of defendant's counsel in Dallas. Thus, plaintiffs were unable to resolve this issue prior to the scheduled deposition, and will suffer some prejudice if the Court denies defendant's motion in

that they will have to incur the time and cost of taking another trip to Dallas to continue the Rule 30(b)(6) deposition. Accordingly, plaintiffs respectfully ask that the Court order defendant to produce a witness pursuant to Rule 30(b)(6) to cover the two topics addressed in this Supplemental Motion and Response at the offices of plaintiffs' counsel in Atlanta, GA at a time agreed to by the parties.

Respectfully submitted this 17th day of September, 2007.

s/ Lewis S. Wiener
LEWIS S. WIENER
Sutherland, Asbill & Brennan
1275 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel.: (202) 383-0140
Fax: (202) 637-3593
Email: lewis.wiener@sablaw.com

Of Counsel:

N. Jerold Cohen
Thomas A. Cullinan
Joseph M. DePew
Julie P. Bowling
Sutherland Asbill & Brennan LLP
999 Peachtree Street, N.E.
Atlanta, Georgia 30309
(404) 853-8000
(404) 853-8806 (fax)

Kent L. Jones
Sutherland, Asbill & Brennan
1275 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel.: (202) 383-0732
Fax: (202) 637-3593
Attorney for Plaintiffs

**CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED that service of the foregoing Plaintiffs' Response to United States' Supplemental Motion for Protective Order has been made on September 17, 2007 via the Court's CM/ECF system to:

Thomas M. Herrin
Attorney, Tax Division
Department of Justice
717 N. Harwood, Suite 400
Dallas, TX 75201
thomas.m.herrin@usdoj.gov

s/ Lewis S. Wiener
LEWIS S. WIENER