COPY



IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-407T

(into which have been consolidated Nos. 06-408T, 06-409T, 06-410T, 06-411T, 06-810T, 06-811T)

\- - - - - - - - - - - - - - - - X

ALPHA I, L.P., by and through )
ROBERT SANDS, a notice partner, )
Plaintiff )Case No. 06-407T
-vs- )
THE UNITED STATES, )
Defendant )

\- - - - - - - - - - - - - - - - X

Deposition of ROBERT SANDS taken pursuant to notice at Constellation Brands, 370 Woodcliff Drive, Suite 300, Fairport, New York on Wednesday, June 13, 2007 commencing at 9:30 a.m.

Reported by:
COMPUTER REPORTING SERVICE
Amy M. Condon, CSR, RPR
270 Reynolds Arcade Building
16 East Main Street
Rochester, New York 14614 (5

PENGAD-Bayonne, N.J.
GOVERNMENT EXHIBIT
6

MR. JONES: Same instruction. Have you -- did you look at any documents at our request or in our presence, you don't have to answer that question. But if you looked at documents other than our request or in our presence, then you can answer the question.

THE WITNESS: I think I already answered that. I didn't look at anything beyond what you requested or in your presence and therefore, there is nothing further I can say on this topic.

BY MR. HERRIN:

Q. Okay. Because I think we're entitled to know what you did in preparation, I will have to ask you those specific questions, to say I'm not answering on advice of counsel because I don't know whether it will be an issue or not. I want to clear this, you are refusing to answer on the instruction of counsel.

I just want to ask the question again, I know it's been asked but I want an answer in the proper format.

MR. JONES: Actually he did answer based on my instructions. He didn't refuse to answer. He answered it with my instruction not to reveal documents that we asked him to review or documents that he reviewed in our presence, he said he reviewed no other documents.





MR. HERRIN: All right. I can live with that.

BY MR. HERRIN:

Q. How many meetings did you attend with Heritage Personnel?

A. I don't know.

Q. Approximately?

A. I don't know.

Q. More than one?

A. Yes.

Q. More than five?

A. I don't know.

Q. As far as actual meetings, not telephone conversations, did the meetings that you attended, were they conducted here in New York, Rochester, were they in Dallas or someplace else?

A. Rochester.

Q. The initial meeting, do you recall when that happened? Again, I'm dealing just with meetings, not telephone calls.

A. No.

Q. All right. Do you recall who attended?

A. Are you asking do I recall everyone who attended the first meeting?





Q. Yes.

A. I don't really recall the first meeting.

Q. Okay. Do you recall anything about the first meeting?

A. Not really, no.

Q. The purpose of it?

A. To discuss, you know, various ideas that they had relative to financial planning and other concepts.

Q. Okay. Was this meeting different from subsequent meetings in terms of how it evolved, what they were presenting?

A. I don't really remember the first meeting other than --

Q. Just having a meeting?

A. -- there was a meeting and I know that we discussed various financial planning type concepts. That's all I remember about the first meeting.

Q. I want to go a little bit deeper. Just as far as in terms of yourself and your family members, do you recall who would have attended that meeting?

A. I believe Richard attended that meeting.

Q. Richard and yourself or just Richard?

A. I assume you're talking about a meeting that I was at?





Q. Yes. But you said Richard attended so I had to be sure.

A. I am assuming Richard attended that meeting. I believe he attended that meeting, let me put it that way.

Q. All right. As far as -- tell me the meetings that you recall. Let's go with that. Your recollection.

A. There were a number of meetings and I really have a very vague recollection of the specific meetings. I mean, you know, we're talking quite a few number of years ago and I just don't recall all of the meetings with Heritage.

Q. All right.

A. I'm not trying to be difficult but, you know.

Q. I understand. There's a time frame issue here.

As far as again the meetings that were held, who attended any of the meetings with regard to yourself and your family and I'm going to include Andrew Stern in terms of family.

A. I don't recall him attending any meetings.

Q. How about your mother, did she ever attend any of the meetings?

explained the potential savings to you?

A. I'm not sure if savings, I agree with that terminology, but so -- so you might want to restate your question.

Q. All right. Tax reduction, is that better?

A. I would restate the question.

MR. JONES: How about just tax issues?

BY MR. HERRIN:

Q. We'll try tax issues. Only reason I'm hesitant is was Heritage providing you legal advice?

A. They were not acting as our attorneys.

Q. All right. We'll try it. As far as tax issues, who on behalf of Heritage discussed tax issues with you?

A. Gary Prinbly (phonetic.)

Q. Anybody else?

A. You know, all the ones that -- I don't recall specifically who said what. So it's hard to know beyond Gary, but let's say Gary Kornman for sure.

Q. And what were those issues that were discussed?

A. Well, we talked about taxation in general and what our tax status was and, you know, what our taxes might be under a variety of circumstances.





Q. Okay. At that time what was the tax status that you spoke about as you understood it?

A. Well, when I say tax -- personally when I say tax status, we talked about our taxes.

Q. All right.

A. As opposed to, you know, whether we're a not for -- we talked about our individual tax circumstances, how is that?

Q. All right. As far as what you describe as what they might be, what were those discussions?

A. You know, as I said, we talked about a whole variety of matters, whether it would be estate matters and other matters.

Q. Well, let's start with the estate matters. What were the discussions with regard to the estate matters?

A. We talked about, you know, the fact that we could have significant taxable estates that, you know, there is tax planning that could go on that could be helpful in that regard, things to this effect.

Q. All right. As far as being helpful, how was it to be helpful for that estate planning purposes, what was the discussion about, how did they say they could help you?





A. By doing things that potentially would result in less estate taxation than more estate taxation.

Q. What type of things?

A. Well, you know, I don't remember the -- I don't remember the specifics of the conversation to tell you the truth.

Q. Well, generally do you recall what types of things you agreed to do in furtherance of trying to minimize the taxes?

A. Well, clearly at one point we must have talked about CRUTS.

Q. Okay. What was the -- tell me what you recall from those conversations.

A. Well, first of all, you know, there were other attorneys -- there were attorneys present who were advising us, you know, on some of the estate taxation matters as well.

As I said, Gary was not advising us with respect to legal matters per se, but, you know, we talked about how things like CRUTS work and how they might be used to fulfill our estate tax as well as income tax objectives as well as our charitable objectives for our -- as an example.

Q. And I'm not dealing with the attorneys,





but --

A. But I don't remember the specifics of those conversations.

Q. That's fine.

But generally speaking, what did Heritage say they could do with regard to the estate planning aspects for you?

A. What did they -- I don't remember the specifics of the conversation.

Q. Well, generally though?

A. They thought they could be helpful to us in structuring things that could be, you know, beneficial to us from an estate planning point of view in general. Whether it was tax or other objectives that we might be able to -- that we were trying to accomplish in our estate planning.

Q. And specifically with regard to taxes, how did they say they could be beneficial?

A. Depending on what our other objectives were there may be favorable tax consequences versus other things, i.e., give all your money to your wife, there is no tax if you die, if you predecease your wife. On the other hand, if you left your money to somebody else there might be taxes under those circumstances. Things