IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-407 T
(into which have been consolidated Nos. 06-408 T,
06-409 T, 06-410 T, 06-411 T, 06-810 T, 06-811 T)
Judge Emily C. Hewitt
(E-Filed: April 11, 2008)

| | |
|---|---|
| ALPHA I, L.P., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | 06-407 T |
| BETA PARTNERS, L.L.C., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | 06-408 T |
| R, R, M & C PARTNERS, L.L.C., BY AND THROUGH R, R, M & C GROUP, L.P., A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | 06-409 T |



7852400.1

| | |
|---|---|
| R, R, M & C GROUP, L.P., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | 06-410 T |
| CWC PARTNERSHIP I, BY AND THROUGH TRUST FBO ZACHARY STERN U/A FIFTH G. ANDREW STERN AND MARILYN SANDS, TRUSTEES, A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | 06-411 T |
| MICKEY MANAGEMENT, L.P., BY AND THROUGH MARILYN SANDS, A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | 06-810 T |

| | | |
|---|---|---|
| M, L, R & R, BY AND THROUGH RICHARD E. SANDS, TAX MATTERS PARTNER, | ) | |
| Plaintiff, | ) | |
| v. | ) | 06-811 T |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**PLAINTIFFS' MOTION FOR LEAVE TO AMEND THEIR COMPLAINTS**

Plaintiffs move, pursuant to RCFC 15(a), for leave to amend their complaints by conceding certain issues before the Court in these consolidated cases. Amended complaints are lodged herewith. Plaintiffs realize that pursuant to the Court's scheduling order dated November 13, 2006, the time to amend pleadings has passed. However, in the interest of conserving the parties' and the Court's resources, plaintiffs respectfully request that the Court grant this motion. Counsel for plaintiffs discussed this motion with counsel for defendant on April 10 and 11, 2008. The United States is evaluating plaintiffs' motion and their proposed amended complaints and it will file a response within the time allowed by RCFC 7.2(a).

In support thereof, plaintiffs state as follows:

1. At the time their returns were filed, plaintiffs believed that the positions taken on their returns were reasonable under the law in effect at the time. Plaintiffs were advised and believed that the obligations to close the short sales contributed to Alpha and Group by their partners were not liabilities under Section 752 based on *Helmer v. Commissioner*, 34 T.C.M. 727 (1975) and other pertinent cases. Plaintiffs filed their complaints in good faith, based on such belief, and recent court decisions have confirmed plaintiffs' view that the obligations to close the short sales were not liabilities under Section 752. *See Jade Trading, LLC v. United States*, 80

Fed. Cl. 11 (2007); *Klamath Strategic Investment Fund, LLC v. United States*, 440 F. Supp. 2d 608 (E.D. Tex. 2006).

2. Though plaintiffs continue to believe their original positions were correct, plaintiffs understand that there are hazards and significant litigation costs associated with litigating all of the remaining grounds on which defendant based its capital gains adjustments. For example, after plaintiffs filed their returns, Treas. Reg. § 1.752-6 was promulgated to purportedly change the law in effect at the time they filed their returns and given retroactive effect, and courts have reached different determinations as to whether the regulation should apply retroactively. Whether the economic substance doctrine or sham partnership doctrine support defendant's adjustments are fact-intensive inquiries that would require plaintiffs to incur significant costs and require a more lengthy trial to present evidence to the Court. Plaintiffs would also incur additional costs in challenging the validity of Treas. Reg. § 1.701-2.

3. Plaintiffs have examined the cost of litigating each of the grounds supporting defendant's capital gains adjustments in these cases and have considered defendant's assertion of a 40 percent penalty. Plaintiffs have determined that it would be more economical to narrow the issues before the Court by conceding defendant's capital gains adjustments on one of the several alternative grounds asserted by defendant. Plaintiffs believe that such concession also eliminates the possibility of incurring a 40 percent penalty.

4. In the FPAAs issued to plaintiffs, defendant made the following ultimate adjustments to capital gains and losses of plaintiffs based on a variety of theories:

a. for Mickey Management, L.P., a $3,034,419 increase in net short-term capital gain from ($2,694,879) to $69,540;

b. for M, L, R & R, a $3,034,344 decrease in net short-term capital loss from ($4,275,885) to ($1,241,541);

c. for Alpha I, L.P.'s ("Alpha") 2002 tax year, a $3,496,150 increase in net short-term capital gain from ($3,140,776) to $355,374;

d. for R, R, M & C Group, L.P. ("Group"), a $85,430,006 increase in long-term capital gain from ($19,890,987) to $65,539,019, and a $219,239 decrease in short-term capital loss from ($426,875) to ($207,636); and

e. for R, R, M & C Partners, LLC ("Partners"), a $424,565 decrease in net short-term capital loss from ($424,565) to 0.

5. The grounds set forth in defendant's FPAAs supporting the adjustments in paragraph 4 include the following:

a. for Mickey Management, L.P., Section 1001, Section 732, and Section 465(b)(1);

b. for M, L, R & R, Section 1001, Section 732, and Section 465(b)(1);

c. for Alpha, Section 1001, Section 732, Section 752, Treas. Reg. § 1.752-6, Treas. Reg. § 1.701-2, Section 465(b)(1), the economic substance doctrine, and the sham partnership doctrine;

d. for Group, Section 1001, Section 723, Section 732, Section 752, Treas. Reg. § 1.752-6, Treas. Reg. § 1.701-2, Section 465(b)(1), the economic substance doctrine, and the sham partnership doctrine; and

e. for Partners, Section 165(c)(2), Section 465(b)(1), the sham partnership doctrine, the economic substance doctrine, and Treas. Reg. § 1.701-2.

6. Plaintiffs concede defendant's adjustment that none of the transactions of the partnerships increases the amount considered at-risk for an activity under I.R.C. § 465(b)(1) and that the at-risk rules would disallow losses and require the partnerships and their partners to recognize gain on the transactions as described in the adjustments set forth in paragraph 4,

subparagraphs (a)–(e), above. Thus, by plaintiffs' concession of the Section 465(b)(1) issue, defendant's FPAAs will cause the following adjustments:

a. for Mickey Management, L.P., a $3,034,419 increase in net short-term capital gain from ($2,694,879) to $69,540;

b. for M, L, R & R, a $3,034,344 decrease in net short-term capital loss from ($4,275,885) to ($1,241,541);

c. for Alpha's 2002 tax year, a $3,496,150 increase in net short-term capital gain from ($3,140,776) to $355,374;

d. for R, R, M & C Group, L.P. ("Group"), an $85,430,006 increase in long-term capital gain from ($19,890,987) to $65,539,019, and a $219,239 decrease in short-term capital loss from ($426,875) to ($207,636); and

e. for R, R, M & C Partners, LLC, a $424,565 decrease in net short-term capital loss from ($424,565) to 0.

7. Plaintiffs do not concede defendant's capital gains and losses adjustments on any other ground, nor do they concede any other determination set forth in the FPAAs issued to them. However, plaintiffs' concession of the § 465(b)(1) issue and defendant's capital gain adjustments eliminates the need for the Court to decide whether defendant's alternative grounds for such capital gain adjustments (including Section 1001, Section 723, Section 732, Section 165(c)(2), Section 752, Treas. Reg. § 1.752-6, Treas. Reg. § 1.701-2, the economic substance doctrine, and the sham partnership doctrine) support the adjustments.

8. Plaintiffs' amended complaints will maintain the following assertions:

a. For all plaintiffs, that the Service erred in determining that penalties applied to plaintiffs.

b. For all plaintiffs, that penalties are not applicable as a matter of law, or

alternatively, that plaintiffs have valid defenses to such penalties.

c. For Alpha, Beta, Group, and Partners, that the Service erred in determining that the existence of the partnerships should be disregarded.

d. For Alpha, Beta, Group, and Partners, that each was a partnership validly created, existing and recognized for all state and federal law purposes, including federal income tax purposes for their particular taxable years at issue.

e. For Group, that the Service erred in disregarding the transfers of partnership interest made by the original limited partners of Group.

f. For Group, that the Court lacks jurisdiction to determine the validity of the transfers of limited partnership interests in Group from the Initial Limited Partners to the CRUT Partners.

g. For Group, that the transfers of the limited partnership interests in Group by the Initial Limited Partners to the CRUT Partners were valid.

9. Plaintiffs believe that their concession of the adjustments described in paragraphs 4 and 6 above on the ground that plaintiffs were not at risk within the meaning of Section 465(b)(1) eliminates the potential for the 40 percent gross valuation misstatement penalty to apply to any deficiency ultimately determined. Present law supports plaintiffs' view as set forth below:

a. The 40% penalty applies to underpayments of tax that are "attributable to" gross valuation misstatements, which are defined as overstatements of basis or value of 400% or more. *See* Section 6662(e) and (h). The courts have consistently held (including in a recent Tax Court decision) that the gross valuation misstatement penalty does not apply where the taxpayer loses the case or concedes it on a ground that is unrelated to basis or value. *See Gainer v. Commissioner*, 893 F.2d 225 (9th Cir. 1990);

*Todd v. Commissioner*, 862 F.2d 540 (5th Cir. 1988); *Derby v. Commissioner*, T.C. Memo 2008-45 (Feb. 28, 2008); *McCrary v. Commissioner*, 92 T.C. 827 (1989).[1]

b. In several cases where the taxpayer conceded the case without specifying the ground for the concession, courts considering this issue nevertheless refused to uphold the valuation misstatement penalty provided there was at least one ground unrelated to basis or value on which the issue could have been conceded. *Weiner v. Commissioner*, 389 F.3d 152 (5th Cir. 2004); *Schachter v. Commissioner*, 67 T.C.M. 3092 (1994); *Rogers v. Commissioner*, 60 T.C.M. 1386 (1990). These courts partially relied on the legislative history behind this penalty and found its purpose was to avoid unnecessary litigation, which purpose was effectuated by the concession.

c. According to the Joint Committee on Taxation's explanation of the Economic Recovery Tax Act of 1981, the reason for adding a specific penalty dealing with valuation of property was to deal with "various problems related to the valuation of property." Congress recognized the large number of valuation disputes clogging the tax collection system and added the penalty to discourage taxpayers who would inflate the value of property on their tax returns in hopes of splitting the difference with the IRS. Staff of the Joint Committee on Taxation, General Explanation of the Economic Recovery Tax Act of 1981; *Todd v. Commissioner*, 862 F. 2d 540, 542 (5th Cir. 1988).

d. Here, plaintiffs are conceding certain of defendant's adjustments on one specific ground (Section 465(b)(1)) of the several alternative grounds asserted by defendant for the adjustments at issue. Plaintiffs' concession would eliminate the need

---

[1] Some of these cases addressed the Section 6621(c) tax motivated interest provision. The language at issue in Section 6621(c) is the same as that used in the valuation misstatement penalty sections, so the courts have given them similar interpretations.

for the Court to determine issues of law, including whether an obligation to "cover" a short sale is a liability for purposes of Section 752 of the Internal Revenue Code, and issues of fact such as the value of the contributions to plaintiffs by their partners, in line with the Congress' intention in enacting this provision. Additionally, because plaintiffs' concession is on a ground unrelated to basis (Section 465(b)(1)), the 40 percent gross valuation misstatement would be inapplicable as a matter of law.

e. If the Court grants Plaintiffs motion for leave to amend their complaints, Plaintiffs will file a motion for summary judgment regarding the application of the 40 percent gross valuation misstatement penalty.

10. Plaintiffs will consult with defendant regarding the effect of their amended complaints on the pending motions before the Court as provided in the parties joint status report dated April 2, 2008.

WHEREFORE, for the reasons stated herein, plaintiffs respectfully request that their Motion for Leave to Amend Their Complaints be granted.

Respectfully submitted this 11th day of April, 2008.

s/ Lewis S. Wiener
LEWIS S. WIENER
Sutherland Asbill & Brennan LLP
1275 Pennsylvania Avenue, NW
Washington, D.C. 20004
202.383.0140 telephone
202.637.3593 facsimile
Email: lewis.wiener@sablaw.com

Of Counsel:

N. Jerold Cohen
Thomas A. Cullinan
Joseph M. DePew
Julie P. Bowling
Sutherland Asbill & Brennan LLP
999 Peachtree Street, NE
Atlanta, Georgia 30309
404.853.8000 telephone
404.853.8806 facsimile

Kent L. Jones
Sutherland Asbill & Brennan LLP
1275 Pennsylvania Ave., NW
Washington, DC 20004
202.383.0732 telephone
202.637.3593 facsimile

Attorney for Plaintiffs

**CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED that service of the foregoing Plaintiffs' Motion for Leave to Amend Their Complaints has been made on April 11, 2008 via the Court's CM/ECF system to:

Thomas M. Herrin
Attorney, Tax Division
Department of Justice
717 N. Harwood, Suite 400
Dallas, Texas 75201
thomas.m.herrin@usdoj.gov

s/ Lewis S. Wiener
LEWIS S. WIENER