**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

R,R,M & C Group, L.P., by and through Robert Sands, a Notice Partner,

Plaintiff,

v.

United States of America,

Defendant.

Case No. 06-410 T

**FIRST AMENDED COMPLAINT FOR READJUSTMENT OF PARTNERSHIP ITEMS UNDER CODE SECTION 6226**

R,R,M & C Group, L.P. ("Group"), by and through Robert Sands, a Notice Partner in Group, files this Complaint pursuant to 26 U.S.C. § 6226 and Appendix F of the Rules of the United States Court of Federal Claims, petitioning for the readjustment of partnership items that were adjusted by the Internal Revenue Service (the "Service") in a Notice of Final Partnership Administrative Adjustment (an "FPAA") issued to Group with respect to Group's Form 1065 U.S. Return of Partnership Income for the tax year ended December 31, 2001 (the "Group FPAA"). The Group FPAA is attached as Exhibit A. Plaintiff alleges as follows:

## I. THE PARTIES

1. Group was a limited partnership organized under the laws of the State of Missouri. It had a principal place of business at 300 Willowbrook Office Park, Fairport, New York, and its partnership identifying number was 43-1936516.

2. Until September 21, 2001, the four limited partners in Group were Robert Sands, Richard Sands, Marilyn Sands, and CWC Partnership-I ("CWC") (these four limited partners are hereinafter referred to as the "Initial Limited Partners").

3. The general and Tax Matters Partner in Group was at all times R,R,M & C Management Corporation. R,R,M & C Management Corporation has a principal place of business at 370 Woodcliff Drive, Fairport, New York, and its partnership identifying number is 43-1936515.

4. On September 21, 2001, the Initial Limited Partners each transferred their partnership interests in Group to four charitable remainder trusts ("CRUTs"): Robert Sands transferred his interest to the Robert Sands Charitable Remainder Unitrust – 2001; Richard Sands transferred his interest to the Richard Sands Charitable Remainder Unitrust – 2001; Marilyn Sands transferred her interest to the Marilyn Sands Charitable Remainder Unitrust – 2001; and CWC transferred its interest to the CWC Partnership I Charitable Remainder Unitrust – 2001 (the four CRUTs are hereinafter referred to as the "CRUT partners").

5. R,R,M & C Partners, LLC ("Partners") was a limited liability company organized under the laws of the State of Missouri. It had a principal place of business at 300 Willowbrook Office Park, Fairport, New York, and its partnership identifying number was 43-1936519.

6. The initial members in Partners were Group and Gloria Robinson ("Robinson"). Group acquired Robinson's interest in Partners on September 10, 2001. Thereafter, Partners had only a single partner, which caused it to terminate for purposes of the Internal Revenue Code of 1986, as amended (the "Code").

7. CWC is a partnership organized under the laws of the State of New York. It has a principal place of business at 370 Woodcliff Drive, Fairport, New York, and its partnership identifying number is 16-1472626. As of December 31, 2001, the Trust FBO Abigail Stern U/A Fifth G (the "Abigail Trust") and the Trust FBO Zachary Stern U/A Fifth G (the "Zachary Trust") each held a 49.5% Class 2 partnership interest in CWC. As of December 31, 2001, the

Trust FBO Andrew Stern U/A Fifth D held 98.06292% and the Trust FBO Andrew Stern U/A Fifth C held .93708% of the Class 1 partnership interest of CWC. As of December 31, 2001, Richard Sands and Robert Sands each held a .5% Class 1 and .5% Class 2 partnership interest.

8. The defendant is the United States of America.

## II. JURISDICTION and RULES OF THE UNITED STATES COURT OF FEDERAL CLAIMS App. F Rules 1 and 2

9. This Court has jurisdiction pursuant to 28 U.S.C. § 1508 and 26 U.S.C. § 6226(b).

10. Group timely filed its Form 1065 U.S. Return of Partnership Income for the tax year ended December 31, 2001 with the Internal Revenue Service at Ogden, Utah.

11. The Group FPAA was issued on December 22, 2005 and was issued by the IRS Office in St. Louis, MO.

12. The Group FPAA was issued with respect to Group's taxable year ended December 31, 2001.

13. Pursuant to Internal Revenue Code of 1986, as amended (the "Code") Section 6226(e)(1), prior to the filing of this Complaint, Robert Sands deposited with the Internal Revenue Service the total amount of $3,398,425, which includes the amount by which his tax liability would be increased if the treatment of the "partnership items" on Group's tax return was made consistent with the treatment of "partnership items" on the Group return, as adjusted by the FPAA issued to Group as well as amounts related to four other FPAAs issued to partnerships in which he held a direct or indirect interest. A copy of the paper work and check associated with this deposit is attached as Exhibit B.

14. The deposits were made on May, 17, 2006 and were sent to IRS Revenue Agent Peter Brokus.

15. Robert Sands is a "notice partner" in Group within the meaning of Code Section 6231(a)(8).

16. None of Group's partnership items with respect to Robert Sands have become non-partnership items by reasons of any event described in Code Section 6231(b).

17. The Tax Matters Partner has not filed a complaint for readjustment of partnership items within the period specified in Code Section 6226(a).

18. Group has satisfied all conditions precedent to filing this suit.

## III. DESCRIPTION OF THE TRANSACTIONS

19. On or about August 21, 2001, Robert Sands, Richard Sands, Marilyn Sands, the Abigail Trust, and the Zachary Trust each opened one or more brokerage accounts at UBS PaineWebber, Inc. ("PaineWebber"), and each infused their individual accounts with several hundred thousand dollars in cash.

20. On or about August 23, 2001, Robert Sands, Richard Sands, Marilyn Sands, the Abigail Trust, and the Zachary Trust each borrowed U.S. Treasury securities from PaineWebber and sold the securities on the open market (the "Short Sales"). The net proceeds of the Short Sales were transferred to their respective brokerage accounts at PaineWebber.

21. On or about August 27, 2001, the Abigail Trust assigned all of the assets in its PaineWebber brokerage account to CWC, and delegated to CWC its responsibility to cover the short sale.

22. On or about August 27, 2001, the Zachary Trust assigned all of the assets in its PaineWebber brokerage account to CWC, and delegated to CWC its responsibility to cover the short sale.

23. On August 28, 2001, CWC contributed the following to Group in exchange for a 24.975% limited partnership interest: (a) the assets in the PaineWebber brokerage accounts that it received from the Zachary Trust and the Abigail Trust; (b) 500,000 shares of Class A common stock of Constellation Brands, Inc. ("Constellation") with a market value of approximately $21,175,000; and (c) $125,000. CWC also delegated its responsibility to cover the short sales that had been executed by the Abigail Trust and the Zachary Trust to Group.

24. On August 28, 2001, Robert Sands contributed the following to Group in exchange for a 24.975% limited partnership interest: (a) the assets in his PaineWebber brokerage accounts (and the requirement to "cover" the short sale); (b) 500,000 shares of Class A common stock of Constellation with a market value of approximately $21,175,000; and (c) $125,000.

25. On August 28, 2001, Richard Sands contributed the following to Group in exchange for a 24.975% limited partnership interest: (a) the assets in his PaineWebber brokerage accounts (and the requirement to "cover" the short sale); (b) 500,000 shares of Class A common stock of Constellation with a market value of approximately $21,175,000; and (c) $125,000.

26. On August 28, 2001, Marilyn Sands contributed the following to Group in exchange for a 24.975% limited partnership interest: (a) the assets in her PaineWebber brokerage accounts (and the requirement to "cover" the short sale); (b) 500,000 shares of Class A common stock of Constellation with a market value of approximately $21,175,000; and (c) $125,000.

27. On August 28, 2001, R,R,M &C Management Corporation contributed $3,403 and 2,002 shares of Class A common stock of Constellation with a fair market value of $84,785 to Group for its .1% general partnership interest in Group.

28. On August 31, 2001, Group contributed the 2,002,002 shares of Constellation that it had received from its partners and $88,634,419 (and the requirement to "cover" the Short

Sales) to Partners. Robinson had earlier that month contributed $250,000 to Partners in exchange for her membership interest.

29. On September 6, 2001, Partners closed the Short Sales and recognized a net loss of $(424,565).

30. On September 10, 2001, Group purchased Robinson's interest in Partners, which had the effect of terminating Partners pursuant to Code Section 708(b)(1)(B).

31. On September 21, 2001, the Initial Limited Partners transferred their partnership interests in Group to the CRUT Partners.

32. On October 1, 2001, Group sold the 2,002,002 shares of Constellation it held for $74,862,863. On the Form 1065 filed by Group for the taxable period ending December 31, 2002, Group reported a total basis in this Constellation stock of $94,757,364, resulting in short and long-term capital losses totaling $(19,894,501). Of the 2,002,002 shares of Constellation stock sold, 5,769 were held for less than a year. The 5,769 shares were sold for $215,725 and had a basis of $219,239. The sale resulted in a short-term capital loss of $(3,514), which was reported on Group's Form 1065. The other 1,996,233 shares of Constellation stock were sold for $74,647,138, and had a basis of $94,538,125, resulting in a loss of $(19,890,987). As the 1,996,233 shares were held over a year, the loss was reported on Group's Form 1065 as a long-term capital loss.

## IV. <u>THE SERVICE'S POSITION</u>

33. On December 22, 2005, the Service issued an FPAA to Group, adjusting how Group reported certain items on its Form 1065 for the taxable period ending December 31, 2001 (the "Group FPAA"). The primary adjustment made by the Service in the Group FPAA is to reduce Group's basis in the 1,996,233 shares of Constellation stock sold on October 1, 2001 to

$9,108,119 and the basis in the 5,769 shares to $0. The FPAA also asserts that the Initial Limited Partners' transfer of their partnership interests in Group to the CRUT Limited Partners should be disregarded, such that the Initial Limited Partners would be treated as limited partners when Group sold the Constellation stock. The Group FPAA also asserts a 40% accuracy-related penalty against Group or, alternatively a 20% accuracy-related penalty.

34. Also on December 22, 2005, the Service issued an FPAA to Partners, making two primary adjustments (the "Partners FPAA"). First, the Service asserts that for a variety of reasons, Partners' liabilities should be increased by $85,649,245 (i.e., the proceeds received from the Short Sales and contributed to Group and then Partners). Second, the Service disallows the $(424,565) loss claimed by Partners on closing the Short Sales because the IRS asserts that the Short Sales lacked a primary profit motive. The Partners FPAA also asserts a 40% accuracy-related penalty against Partners or, alternatively a 20% accuracy-related penalty.

35. On December 28, 2005, the Service also issued an FPAA to CWC (the "CWC FPAA"), making adjustments derivative of those that are at issue in the Group FPAA and Partners FPAA, as well as in two FPAAs issued to two other partnerships that are not directly at issue in this case, and also asserting a 40% accuracy-related penalty or, alternatively a 20% accuracy-related penalty.

36. This complaint challenges certain of the adjustments made by the Service in the Group FPAA. Separate complaints will be filed in this Court to contest certain of the adjustments made by the Service in the Partners FPAA and the CWC FPAA.

## V. <u>THE SERVICE'S ERRORS IN THE GROUP FPAA</u>

37. Plaintiff does not now claim that the transactions increased the amount considered at risk for an activity under Code Section 465(b)(1) and, for this reason, does not now object to

the Service's conclusion that Group has net short-term capital loss of $(207,636) instead of $(426,875) and long-term capital gain of $65,539,019 instead of the $(19,890,987) net long-term capital loss reported on Group's return. Instead, plaintiff now concedes the correctness of these specific adjustments proposed by the Service in the FPAA.

38. The Service erred by disregarding the transfer of the limited partnership interests in Group by the Initial Limited Partners to the CRUT Partners.

39. The Service erred by disregarding the existence of Group.

40. The Service erred in asserting any accuracy-related penalty provided by Code Section 6662.

## VI. GROUP'S CONTENTIONS

41. The Court lacks jurisdiction to determine the validity of the transfers of limited partnership interests in Group from the Initial Limited Partners to the CRUT Partners.

42. The transfers of the limited partnership interests in Group by the Initial Limited Partners to the CRUT Partners were valid.

43. Group was a partnership validly created, existing and recognized for all state and federal law purposes, including federal income tax purposes for the taxable year 2001.

44. Group and its partners are not subject to penalties under Code Section 6662 because if any tax liability were ultimately determined by this Court against them, such liability is not attributable to: (a) negligence or disregard of rules or regulations; (b) any substantial understatement of income tax; or (c) any substantial or gross valuation misstatement under Chapter 1.

45. Group and its partners are not subject to penalties under Code Section 6662 because if any understatement were ultimately determined by the Court, such understatement

would be attributable to items for which the relevant facts were adequately disclosed in the returns or in a statement attached to the returns; and there is a reasonable basis for the tax treatment of such item by the taxpayer.

46. The transactions at issue in this case do not constitute a tax shelter within the meaning of Code Section 6662.

47. In the alternative, even if the Transactions do constitute a tax shelter, Group and its partners are not subject to penalties under Code Section 6662 because any understatement ultimately determined by the Court is attributable to the tax treatment of items for which there is or was substantial authority for such treatment, and, furthermore, Group and its partners reasonably believed that their tax treatment of such item was more likely than not the proper treatment.

48. Group and its partners are not subject to penalties under Code Section 6662 on any underpayment ultimately determined because there was reasonable cause for such underpayment and they acted in good faith as contemplated by Code Section 6664(c)(1).

## VII. BURDEN OF PROOF

49. The Government has the burden of proof under Code Section 7491.

## VIII. PRAYER

WHEREFORE, Plaintiff prays that this Court:

1. Determine that the Service erred in disregarding the transfer of the limited partnership interests in Group by the Initial Limited Partners to the CRUT Partners and that the Service's adjustments to the identity of Group's partners are factually and/or legally incorrect and are invalid;

2. Determine that the Service erred in disregarding the existence of Group.

3. Determine that the penalties asserted by the Service in the Group FPAA are erroneous and/or that the parties have valid defenses to the assertion of such penalties;

4. Determine that the deposit paid by Robert Sands should be refunded, together with interest thereon; and

5. Grant Plaintiff such other and further relief to which Plaintiff is entitled.

Dated April 11, 2008.

Respectfully submitted,

s/ Lewis S. Wiener
LEWIS S. WIENER
Sutherland Asbill & Brennan LLP
1275 Pennsylvania Avenue, NW
Washington, D.C. 20004
202.383.0140 telephone
202.637.3593 facsimile
Email: lewis.wiener@sablaw.com

Of Counsel:

N. Jerold Cohen
Thomas A. Cullinan
Joseph M. DePew
Julie P. Bowling
Sutherland Asbill & Brennan LLP
999 Peachtree Street, NE
Atlanta, Georgia 30309
404.853.8000 telephone
404.853.8806 facsimile

Kent L. Jones
Sutherland Asbill & Brennan LLP
1275 Pennsylvania Ave., NW
Washington, DC 20004
202.383.0732 telephone
202.637.3593 facsimile

Attorney for Plaintiffs

# EXHIBIT A

**Notice 2000-44 Case**

**Department of the Treasury**

**Internal Revenue Service**
P.O. Box 66781 Stop 4020 STL
Attn: Penny Schupmann
St. Louis, MO 63166

Refer To: Penny Schupmann

Partner Identifying Number: [redacted]-8045

Name of Partnership: R,R,M & C Group, L.P.

Partnership Identifying Number: 43-1936516

Tax Year Ended: 12/31/2001

Date: DEC 2 2 2005

Date FPAA Mailed to the Tax Matters Partner:
DEC 2 2 2005

Robert S. Sands
Nancy Sands
4000 East Avenue
Rochester, NY 14618

Person to Contact: Penny Schupmann
Employee Number: 43-15317

Contact Telephone Number: 314-612-4367
(not a toll free number)

Contact Hours: 8:00 AM to 4:30 PM

# NOTICE OF FINAL PARTNERSHIP ADMINISTRATIVE ADJUSTMENT

The law requires us to send a Notice of Final Partnership Administrative Adjustment (FPAA) to the partnership named above, for the tax year shown above, and to each partner who is entitled to receive this notice.

We are proposing adjustments to the partnership items of the partnership and the tax year shown above. We will send the examination report outlining these adjustments to the Tax Matters Partner (TMP) of the partnership. (The TMP is the partner designated by the partnership to deal with the IRS.) He/she is also authorized to act for the partners who are not entitled to receive this notice. Any partner who wants a copy of the examination report should request it from the TMP. If the TMP is unable to provide you with a copy of the examination report, please contact the person named in the heading of this letter.

Taxable Years Ending Before August 6, 1997:

The adjustments to the partnership items reported on the partnership tax return may cause an increase or decrease to the tax liability on your individual return. Form 870-P, *Agreement to Assessment and Collection of Deficiency in Tax for Partnership Adjustments*, is a summary of the proposed adjustments to the partnership return. You can compute your share of the proposed adjustments by multiplying each adjusted partnership item by your percentage interest for that partnership item.

Taxable Years Ending After August 5, 1997:

The adjustments to the partnership items reported on the partnership tax return may cause an increase or decrease in the tax liability on your individual return. The adjustments may include partnership level determinations regarding penalties and additions to tax that relate to adjustments to partnership items. Form 870-PT, *Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts*, is a summary of the proposed adjustments to the partnership return. You can compute your share of the proposed adjustments by multiplying each adjusted partnership item by your percentage interest for that partnership item.

You have three options available to you:

**1. If you agree with the adjustments:**

Sign and return the enclosed Form 870-P/Form 870-PT. When you sign Form 870-P/Form 870-PT, you are agreeing to pay any additional tax and interest resulting from the adjustments to the partnership return. For tax years ending after August 5, 1997, you are also agreeing to any partnership level determination as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items, if any. In addition, you are waiving your rights to participate in any administrative or judicial proceeding affecting partnership items and in partnership level determinations as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items for the tax year in question. This is a binding settlement only if you sign and return Form 870-P/Form 870-PT and we sign on behalf of the Commissioner of Internal Revenue Service. When we sign the agreement form, the one-year extension of the period of limitations on assessments will begin under Internal Revenue Code section 6229(f). Once the agreement is signed by both parties, you may not file a claim to change the items in question or claim a refund/credit based on a readjustment.

Note: If you are the TMP of the partnership, see the section of this letter entitled, *"For the Tax Matters Partner of the Partnership"*.

**2. If you do not agree with the adjustments:**

If you are the TMP of the partnership and want to contest the adjustments in court, you must file a petition within 90 days from the date this letter. During this 90-day period, no other partner may file a petition for judicial review. You can file your petition for readjustment of partnership items with:

1. the United States Tax Court;
2. the United States Court of Federal Claims; or
3. the District Court of the United States, in the district of the partnership's principal place of business.

A petition filed by the TMP precludes all other actions. If the TMP doesn't file a petition by the 90th day from the date the FPAA was mailed, any partner or any 5 percent group entitled to receive this notice may petition one of these courts. A "5 percent group" includes any group of partners who together have an interest of five percent or more in profits of the partnership. The petition must be filed after the 90th day, but on or before the 150th day from the date the FPAA was mailed to the TMP. If more that one petition is filed in Tax Court, the first petition will go forward. All other petitions (even those filed earlier in one of the other courts) will be dismissed. If no one files a petition in Tax Court, the first petition filed in one of the other courts will go forward and subsequent petitions will be dismissed.

Petitions filed with the United States Tax Court must be mailed to:

**United States Tax Court**
**400 Second Street, NW**
**Washington, DC 20217**

Attach a copy of this letter to the petition. The time in which you must file a petition with the court is fixed by law and the court can't consider your case if your petition is filed late. If this letter is addressed to both a husband and wife and both want to petition the Tax Court, both must sign the petition or each must file a separate signed petition.

When a partner (including each member of a 5 percent group that files a petition) files a petition in either the appropriate District Court of the Court of Federal Claims, the partner filing the petition must deposit the amount that the partner's tax liability would be increased if the treatment of the partnership

items on the partner's return were made consistent with the treatment of partnership items under the FPAA. If you reported the partnership items the way the partnership reported them on its return, you can generally determine the amount to deposit by taking your pro rata share of the partnership adjustments into account in recomputing your tax. You must deposit the appropriate amount with the IRS on or before the day you file your petition.

**3. If you do nothing:**

If a petition for readjustment is not filed in any of the courts listed in this letter, the FPAA becomes final, and we will bill you for any additional tax plus interest that you may owe under the FPAA. You will not be permitted to contest the treatment of the partnership items of the partnership under the FPAA in any refund claim or suit. The law allows the Service to bill you 150 days from the mailing date of the FPAA to the TMP.

However, if a petition is filed in the Tax Court, and the Tax Court upholds the adjustments in whole or in part, we will not bill you until the Tax Court decision is final.

You may wish to contact the TMP of the partnership or your tax advisor to discuss this matter.

If you have any questions, please write to the person whose name and address are shown in the heading of this letter. If you write, attach a copy of this letter to help identify your account. Also, include your telephone number and the most convenient time for us to call you in case we need additional information.

If you prefer, you may call the IRS contact person at the telephone number shown in the heading of this letter. If this number is outside your local calling area, there will be a long distance charge to you.

Thank you for your cooperation.

Sincerely,

for Kevin Harris,
Technical Services
Territory Manager

Enclosures:
Form 870-P/Form 870-PT
Copy of this letter

## FOR THE TAX MATTERS PARTNER OF THE PARTNERSHIP

If you are the Tax Matters Partner (TMP), you are entitled to make an agreement to bind non-notice partners to the treatment of the partnership items as shown on the enclosed schedule of adjustments. You must add the following statement above the signature blocks on the Form 870-P or Form 870-PT:

"The undersigned Tax Matters Partner is signing this offer on behalf of himself (herself) and all other partners whom he (she) has the authority to bind; a final agreement resulting from the co-signature of the Commissioner of Internal Revenue will be binding on all such other partners."

As the TMP, you may submit a petition, as described above for the partnership on behalf of all partners.

If you have any questions, you can call the IRS contact person at the telephone number shown in the heading of this letter. Thank you for your cooperation.

| Form 870-PT (Rev. 8-2004) | Department of the Treasury — Internal Revenue Service<br>**Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts** | IN REPLY REFER TO: |
|---|---|---|
| Taxpayer(s) name(s), address and ZIP code:<br>Robert S. Sands<br>Nancy Sands<br>4000 East Avenue<br>Rochester, NY 14618<br><br>Taxpayer Identifying Number: [redacted]-8045 | Name of Partnership:<br>R, R, M & C Group, L.P<br>Taxpayer Identifying Number:<br>43-1936516<br>Name of Tax Matters Partner:<br>R, R, M & C Management Corporation | Tax Year(s) Ended:<br>December 31, 2001 |

**Offer of Agreement to Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts**
**&**
**Waiver of Restrictions on Assessment for Partnership Items, Penalties, Additions to Tax, and Additional Amounts**

Under sections 6224(c) and 7121 of the Internal Revenue Code (IRC) of 1986, the Commissioner of the Internal Revenue Service and the undersigned taxpayer(s) agree to the determination of partnership items and partnership level determinations as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items as shown on the attached schedule of adjustments.

The undersigned taxpayer(s), in accordance with IRC sections 6224(b) and 6213(d), also waive the restrictions provided by IRC sections 6225(a) and 6213(a) and consent to the assessment and collection of any deficiency attributable to partnership items, penalties, additions to tax, and additional amounts that relate to partnership items, as determined in this agreement, plus any interest provided by law.

This agreement is conditional and will not become effective or final until this agreement form is returned to the Commissioner and is signed on his or her behalf. The one-year extension of the period of limitations on assessments under IRC section 6229(f) will not begin to run until the date the Commissioner's representative signs this form on the Commissioner's behalf. If this is a partial agreement, the period of limitations for assessing any tax attributable to the settled items shall be determined as if this agreement had not been entered into.

If this part of this agreement form is signed for the Commissioner, the treatment of partnership items and partnership level determinations as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items under this agreement will not be reopened in the absence of fraud, malfeasance, or misrepresentation of fact. In addition, no claim for an adjustment of partnership items, refund or credit based on any change in the treatment of partnership items or partnership level determinations as to penalties, additions to tax, and additional amounts may be filed or prosecuted.

| | |
|---|---|
| Signature of Taxpayer | Date Signed |
| Signature of Taxpayer | Date Signed |
| By (Signature and Title) | Date Signed |

| | | |
|---|---|---|
| FOR INTERNAL REVENUE USE ONLY | Date accepted for Commissioner | Signature |
| | Office | Title |

## INSTRUCTIONS FOR SIGNING FORM 870-PT

1. If a JOINT RETURN OF A HUSBAND AND WIFE was filed and both spouses intend to agree, both spouses should sign Form 870-PT. One spouse may sign as agent for the other if acting under a power of attorney, which, if not previously filed, must accompany this form. The IRS may accept the signature of only one spouse at its discretion. However, the agreement will only be binding on the signing spouse.

2. If the taxpayer is a corporation, the waiver must be signed with the corporate name followed by the signature and title of the officer authorized to sign Form 870-PT.

3. Your attorney or agent may sign for you if this action is specifically authorized by a power of attorney, which if not previously filed, must accompany this form.

4. If this offer is signed by a trust, the agreement must be signed with the trust name, followed by the signature and title of the person authorized to sign on behalf of the trust.

5. If this offer is with respect to the tax liability for the consolidated return year, the agreement should be signed in the name of the common parent of the consolidated group for the consolidated return year. The common parent corporation signs the agreement in its own name. The signature and title of a current officer of the common parent corporation, who is authorized to bind the corporation, should be displayed in the signature block.

6. If the Tax Matters Partner signs this offer, please include the title with the signature.

7. If this offer is signed by a Tax Matters Partner that is a subsidiary corporation, then an officer authorized to sign this agreement for the year(s) indicated on the form must sign for the parent corporation. An authorized officer for the subsidiary corporation should also sign if the Tax Matters Partner is binding non-notice partners under the agreement. See Treas. Reg. 1.1502-77(a)(3)(v).

Department of the Treasury - Internal Revenue Service

# AGREEMENT FOR PARTNERSHIP ITEMS AND PARTNERSHIP LEVEL DETERMINATION AS TO PENALTIES, ADDITIONS TO TAX, AND ADDITIONAL AMOUNTS

## SCHEDULE OF ADJUSTMENTS

| NAME OF PARTNERSHIP: R, R, M & C Group, L.P | TAX YEAR(S) ENDED | | |
|---|---|---|---|
| TAXPAYER IDENTIFYING NUMBER: 43-1936516 | 12/31/2001 | | |
| **DETAIL OF ADJUSTMENTS TO ORDINARY INCOME:** | | | |
| a. | | | |
| b. | | | |
| c. | | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| **Total Adjustments to Ordinary Income** | | | |
| **Other Adjustments** | | | |
| a. Portfolio income (loss) interest | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 77,014.00 | | |
| (3) Corrected | 77,014.00 | | |
| b. Portfolio income (loss) dividends | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 476,000.00 | | |
| (3) Corrected | 476,000.00 | | |

**Remarks:**

It is determined that the accuracy-related penalties provided by IRC 6662(a) and 6662(h) apply to the entire amount of any underpayment of tax attributable to adjustments of the partnership items of R, R, M & C Group, L.P. for the taxable year ending December 31, 2001. The accompanying Explanation of Adjustments to Partnership Items and Partnership-level Determinations is hereby incorporated by reference.

## Form 870-PT, Other Adjustments (Continued)

Page of

Name of Partnership: R, R, M & C Group, L.P

| Taxpayer Identifying Number: 43-1936516 | Tax Year(s) Ended | | |
|---|---|---|---|
| | 12/31/2001 | | |
| c. Portfolio income (loss) net short-term gain (loss) | | | |
| (1) Adjustment | 219,239.00 | | |
| (2) As reported | (426,875.00) | | |
| (3) Corrected | (207,636.00) | | |
| d. Portfolio income net long-term gain (loss) total | | | |
| (1) Adjustment | 85,430,006.00 | | |
| (2) As reported | (19,890,987.00) | | |
| (3) Corrected | 65,539,019.00 | | |
| e. Deductions related to portfolio income | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 1,625.00 | | |
| (3) Corrected | 1,625.00 | | |
| f. Investment income included in portfolio income | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 553,014.00 | | |
| (3) Corrected | 553,014.00 | | |
| g. Partnership Liabilities | | | |
| (1) Adjustment | 85,649,245.00 | | |
| (2) As reported | 0.00 | | |
| (3) Corrected | 85,649,245.00 | | |
| h. Capital Contributed, Schedule M-2, line 2 | | | |
| (1) Adjustment | (171,298,490.00) | | |
| (2) As reported | 193,325,133.00 | | |
| (3) Corrected | 22,026,643.00 | | |
| i. Distributions, Schedule M-2, line 6a | | | |
| (1) Adjustment | (85,649,245.00) | | |
| (2) As reported | 97,864,565.00 | | |
| (3) Corrected | 12,215,320.00 | | |
| (1) Adjustment | | | |
| (2) As reported | | | |
| (3) Corrected | | | |
| (1) Adjustment | | | |
| (2) As reported | | | |
| (3) Corrected | | | |
| (1) Adjustment | | | |
| (2) As reported | | | |
| (3) Corrected | | | |

**Notice 2000-44 Case**

| ATTACHMENT TO FORM 870-PT<br>EXPLANATION OF ADJUSTMENTS TO PARTNERSHIP ITEMS<br>AND PARTNERSHIP LEVEL DETERMINATIONS | | | |
|---|---|---|---|
| PARTNERSHIP | | TAXPAYER ID | TAXABLE YEAR |
| R, R, M & C Group, L.P. | | 43-1936516 | 12/31/2001 |
| ITEM | ADJUSTMENT | REPORTED | CORRECTED |
| I SHORT-TERM CAPITAL GAINS AND LOSSES | $219,239 | $(426,875) | $(207,636) |

It is determined that the adjusted basis of R, R, M & C Group, L.P. (hereinafter referred to as the "Partnership"), in 5769 shares of the common stock of Constellation Brands, Inc. (hereinafter referred to as the "Short-Term Shares"), is $-0- instead of $219,239 as claimed on the Partnership's return for the taxable year 2001. Accordingly, the Partnership has a net short-term capital loss for the taxable year 2001 of $207,636 instead of a net short-term capital loss of $426,875 as reported on the Partnership's return.

A REASONS FOR THIS DETERMINATION INCLUDE THE FOLLOWING

1 Under I.R.C. 1001, you failed to establish that the Partnership's adjusted basis in the Short-Term Shares was more than the amount allowed.

2 Under I.R.C. 723, the Partnership obtained an adjusted basis of $-0-in the Short-Term Shares when they were contributed to the Partnership.

3 Under I.R.C. 732, the Partnership obtained an adjusted basis of $-0- in the Short-Term Shares when they were distributed to the Partnership by R, R, M & C Partners, LLC.

4 Under I.R.C. § 752, the short sale obligations purportedly assumed by the Partnership and R, R, M & C Partners, LLC, are partnership liabilities and therefore, when the short sale positions were closed, the Partnership's outside basis in R, R, M & C Partners, LLC, and, in turn, the partners' respective outside bases in the Partnership were decreased under I.R.C. § 752(b).

5 Under Treas. Reg. § 1.752-6, if the short sale obligations purportedly assumed by the Partnership and R, R, M & C Partners, LLC, are not I.R.C. § 752 liabilities, then the short sale obligations were non-I.R.C. § 752 liabilities under Treas. Reg. § 1.752-6, the assumption of which decreased the partners' outside bases in the Partnership and the Partnership's outside basis in R, R, M & C Partners, LLC by the amount of the short sale proceeds.

6 Under the sham partnership doctrine, the existence of R, R, M & C Partners, LLC, is disregarded for federal income tax purposes because it was not formed for a business purpose and conducted no business activity, and therefore the Partnership is treated for federal income tax purposes as if it directly held the assets and liabilities of R, R, M & C Partners, LLC, including the short sale positions..

7 Under the economic substance doctrine, the Partnership's contributions to R, R, M & C Partners, LLC, are disregarded for federal income tax purposes for lack of a non-tax business or investment purpose and economic effect, and therefore the Partnership is treated for federal income tax purposes as if it directly held the assets and liabilities of R, R, M & C Partners, LLC, including the short sale positions...

8 Under Treas. Reg. § 1.701-2, the existence of R, R, M & C Partners, LLC, and the Partnership's contributions to R, R, M & C Partners, LLC, are disregarded for federal income tax purposes to produce tax consequences to the partners that are consistent with the economic consequences of an investment in R, R, M & C Partners, LLC, and therefore the Partnership is treated for federal income tax purposes as if it directly held the assets and liabilities of R, R, M & C Partners, LLC, including the short sale positions.

B TAX ITEMS OF THE PARTNERS THAT MAY BE AFFECTED INCLUDE THE FOLLOWING

1 Under I.R.C. §§ 703 and 704(b), the decreased amount of the Partnership's net short-term capital loss for the taxable year 2001 is allocated among the partners in accordance with their respective percentage interests.

| ITEM | ADJUSTMENT | REPORTED | CORRECTED |
|---|---|---|---|
| II LONG-TERM CAPITAL GAINS AND LOSSES | $85,430,006 | $(19,890,987) | $65,539,019 |

It is determined that the adjusted basis of the Partnership in 1,996,233 shares of the common stock of Constellation Brands, Inc. (the "Long-Term Shares"), is $9,108,119 instead of $94,538,125 as claimed on the Partnership's return for the taxable year 2001. Therefore, the Partnership has a net long-term capital gain for the taxable year 2001 of $65,539,019 instead of a net long-term capital loss in the amount of $19,890,987as reported on the Partnership's return.

A REASONS FOR THIS DETERMINATION INCLUDE THE FOLLOWING

1 Under I.R.C. 1001, you failed to establish that the Partnership's adjusted basis in the Long-Term Shares was more than the amount allowed.

2 Under I.R.C. 723, the Partnership obtained an adjusted basis of $9,108,119 in the Long-Term Shares when they were contributed by the partners.

3 Under I.R.C. 732, the Partnership obtained an adjusted basis of $9,108,119 in the Long-Term Shares when distributed by R, R, M & C Partners, LLC.

**Notice 2000-44 Case**

| ATTACHMENT TO FORM 870-PT<br>EXPLANATION OF ADJUSTMENTS TO PARTNERSHIP ITEMS<br>AND PARTNERSHIP LEVEL DETERMINATIONS | | |
|---|---|---|
| PARTNERSHIP | TAXPAYER ID | TAXABLE YEAR |
| R, R, M & C Group, L.P. | 43-1936516 | 12/31/2001 |

4 Under I.R.C. § 752, the short sale obligations purportedly assumed by the Partnership and R, R, M & C Partners, LLC, are partnership liabilities and therefore, when the short sale positions were closed, the Partnership's outside basis in R, R, M & C Partners, LLC, and, in turn, the partners' respective outside bases in the Partnership were decreased under I.R.C. § 752(b).

5 Under Treas. Reg. § 1.752-6, if the short sale obligations purportedly assumed by the Partnership and R, R, M & C Partners, LLC, are not I.R.C. § 752 liabilities, then the short sale obligations were non-I.R.C. § 752 liabilities under Treas. Reg. § 1.752-6, the assumption of which decreased the partners' outside bases in the Partnership and the Partnership's outside basis in R, R, M & C Partners, LLC by the amount of the short sale proceeds.

6 Under the sham partnership doctrine, the existence of R, R, M & C Partners, LLC, is disregarded for federal income tax purposes because it was not formed for a non-tax business or investment purpose and conducted no business or investment activity, and therefore the Partnership is treated for federal income tax purposes as if it directly held the assets and liabilities of R, R, M & C Partners, LLC, including the short sale positions..

7 Under the economic substance doctrine, the Partnership's contributions to R, R, M & C Partners, LLC, are disregarded for federal income tax purposes for lack of a non-tax business or investment purpose and economic effect, and therefore the Partnership is treated for federal income tax purposes as if it directly held the assets and liabilities of R, R, M & C Partners, LLC, including the short sale positions...

8 Under Treas. Reg. § 1.701-2, the existence of R, R, M & C Partners, LLC, and the Partnership's contributions to R, R, M & C Partners, LLC, are disregarded for federal income tax purposes to produce tax consequences to the partners that are consistent with the economic consequences of an investment in R, R, M & C Partners, LLC, and therefore the Partnership is treated for federal income tax purposes as if it directly held the assets and liabilities of R, R, M & C Partners, LLC, including the short sale positions.

B TAX ITEMS OF THE PARTNERS THAT MAY BE AFFECTED INCLUDE THE FOLLOWING

1 Under I.R.C. §§ 703 and 704(b), the increased amount of the Partnership's net long-term capital gain for the taxable year 2001 is allocated among the partners in accordance with their respective percentage interests.

| ITEM | ADJUSTMENT | REPORTED | CORRECTED |
|---|---|---|---|
| III I.R.C. § 752 LIABILITIES | $85,649,245 | $-0- | $85,649,245 |

It is determined that the Partnership has partnership liabilities under I.R.C. § 752 in the amount of $85,649,245 for the taxable year 2001, instead of partnership liabilities in the amount of $-0- as claimed on the Partnership's return.

A REASONS FOR THIS DETERMINATION INCLUDE THE FOLLOWING

1 Under I.R.C. § 752, the partnership liabilities of the Partnership include the amount of the short sale obligations purportedly assumed by the partnership.

B TAX ITEMS OF THE PARTNERS THAT MAY BE AFFECTED INCLUDE THE FOLLOWING

1 An increase in a partner's share of partnership liabilities is treated as a contribution of money to the Partnership under I.R.C. § 752(a) that increases the partner's outside basis under I.R.C. §§ 705(a) and 722.

2 A decrease in a partner's individual liabilities by reason of the assumption by the Partnership of such individual liabilities is treated as a distribution of money to the partner under I.R.C. § 752(b) that decreases the partner's outside basis under I.R.C. §§ 705(a) and 733(1).

| ITEM | ADJUSTMENT | REPORTED | CORRECTED |
|---|---|---|---|
| IV TREAS. REG. § 1.752-6 LIABILITIES | $85,649,245 | $-0- | $85,649,245 |

It is determined that, if the Partnership does not have partnership liabilities under I.R.C. § 752 in the amount of $85,649,245 for the taxable year 2001, then the Partnership has non-I.R.C. § 752 liabilities in the amount of $85,649,245 for the taxable year 2001, instead of non-I.R.C. § 752 liabilities in the amount of $-0- as claimed on the Partnership's return.

A REASONS FOR THIS DETERMINATION INCLUDE THE FOLLOWING

1 Under Treas. Reg. § 1.752-6, if the short sale obligations are not partnership liabilities under I.R.C. § 752, then they are non-I.R.C. § 752 liabilities under Treas. Reg. § 1.752-6.

B TAX ITEMS OF THE PARTNERS THAT MAY BE AFFECTED INCLUDE THE FOLLOWING

1 Under Treas. Reg. § 1.752-6, a contributing partner's tax basis in the Partnership is decreased by the amount of the non-I.R.C. § 752 liabilities assumed by the Partnership.

**Notice 2000-44 Case**

**ATTACHMENT TO FORM 870-PT**
**EXPLANATION OF ADJUSTMENTS TO PARTNERSHIP ITEMS AND PARTNERSHIP LEVEL DETERMINATIONS**

| PARTNERSHIP | TAXPAYER ID | TAXABLE YEAR |
|---|---|---|
| R, R, M & C Group, L.P. | 43-1936516 | 12/31/2001 |

| ITEM | | | |
|---|---|---|---|
| V | **I.R.C. § 465 AT RISK RULES** | | |
| | It is determined that none of the transactions of the Partnership increases the amount considered at-risk for an activity under I.R.C. § 465(b)(1). | | |
| | A | **REASONS FOR THIS DETERMINATION INCLUDE THE FOLLOWING** | |
| | | 1 | Under I.R.C. § 465(b), none of the Partnership's transactions or activities increases the amount by which the partners are considered to be at risk for any activity. |
| | B | **TAX ITEMS OF THE PARTNERS THAT MAY BE AFFECTED INCLUDE THE FOLLOWING** | |
| | | 1 | Under I.R.C. § 465(b), the amount for which a partner is considered to be at risk for an activity is not increased by any transactions with the Partnership. |

| ITEM | | | |
|---|---|---|---|
| VI | **IDENTITY OF PARTNERS** | | |
| | It is determined that the limited partnership interests purportedly transferred by the original limited partners to their respective charitable trusts are owned by the transferor-partners for federal income tax purposes not by the trusts identified on Schedules K-1 of the Partnership's return. | | |
| | A | **REASONS FOR THIS DETERMINATION INCLUDE THE FOLLOWING** | |
| | | 1 | Under the economic substance doctrine, the purported transfers of partnership interests by the limited partners to their respective charitable trusts are disregarded for federal income tax purposes. |
| | B | **TAX ITEMS OF THE PARTNERS THAT MAY BE AFFECTED INCLUDE THE FOLLOWING** | |
| | | 1 | Under I.R.C. §§ 703 and 704, tax items of the Partnership allocable to the interests purportedly held by the charitable trusts are allocated to the respective transferor-partners. |

| ITEM | | | |
|---|---|---|---|
| VII | **RECHARACTERIZATION** | | |
| | For federal income tax purposes, the Partnership's existence is disregarded and the Partnership's transactions are recharacterized.. | | |
| | A | **REASONS FOR THIS DETERMINATION INCLUDE THE FOLLOWING** | |
| | | 1 | Under the sham partnership doctrine, the existence of the Partnership is disregarded for federal income tax purposes because there was no non-tax business or investment purpose for the formation of the Partnership, and the Partnership engaged in no business or investment activity. |
| | | 2 | Under Treas. Reg. § 1.701-2, the existence of the Partnership and the contributions by the partners to the Partnership are disregarded for federal income tax purposes to produce tax consequences to the partners that are consistent with the economic consequences of an investment in the Partnership because the Partnership was formed and the contributions were made to reduce substantially the present value of the partners' aggregate tax liability in a manner inconsistent with the intent of Subchapter K. |
| | | 3 | Under the economic substance doctrine, the partners' contributions to the Partnership are disregarded for federal income tax purposes for lack of a non-tax business or investment purpose and economic effect. |
| | B | **TAX ITEMS OF THE PARTNERS THAT MAY BE AFFECTED INCLUDE THE FOLLOWING** | |
| | | 1 | The partners of the Partnership are treated for federal income tax purposes as if they held directly the assets and liabilities of the Partnership, including the short sale positions. |

| ITEM | | | |
|---|---|---|---|
| VIII | **ACCURACY-RELATED PENALTIES** | | |
| | It is determined that the 40% accuracy-related penalty provided by I.R.C. § 6662 (h) or, alternatively, the 20% accuracy-related penalty provided by I.R.C. § 6662(a) applies to the entire amount of any underpayment of tax attributable to the adjustments of partnership items of the Partnership for the taxable year 2001. | | |
| | A | **REASONS FOR THIS DETERMINATION INCLUDE THE FOLLOWING** | |
| | | 1 | The amount of any underpayment of tax is attributable to a gross valuation misstatement under I.R.C. § 6662(h). |
| | | 2 | Alternatively, the entire amount of any underpayment of tax is attributable to a substantial valuation misstatement under I.R.C. § 6662(e). |
| | | 3 | Alternatively, the entire amount of any underpayment of tax is attributable to negligence or disregard of rules or regulations under I.R.C. §§ 6662(a), 6662(b)(1), and 6662(c). |
| | | 4 | Alternatively, the entire amount of any underpayment of tax is attributable to a substantial understatement of income tax under I.R.C. §§ 6662(a), 6662(b)(2), and 6662(d). |

**Notice 2000-44 Case**

| ATTACHMENT TO FORM 870-PT<br>EXPLANATION OF ADJUSTMENTS TO PARTNERSHIP ITEMS<br>AND PARTNERSHIP LEVEL DETERMINATIONS | | |
|---|---|---|
| PARTNERSHIP | TAXPAYER ID | TAXABLE YEAR |
| R, R, M & C Group, L.P. | 43-1936516 | 12/31/2001 |

| | | |
|---|---|---|
| B | TAX ITEMS OF THE PARTNERS THAT MAY BE AFFECTED INCLUDE THE FOLLOWING | |
| | 1 | Under I.R.C. § 6221, penalties determined in a partnership proceeding are applied to underpayments attributable to partnership items and affected items subject to defenses that may be asserted by a partner in an action for refund after assessment and payment. |

# EXHIBIT B

Sutherland Asbill & Brennan LLP
ATTORNEYS AT LAW

999 Peachtree Street, NE
Atlanta, GA 30309-3996
404.853.8000
fax 404.853.8806
www.sablaw.com

JOSEPH M. DEPEW
DIRECT LINE: 404.853.8009
E-mail: joe.depew@sablaw.com

May 17, 2006

VIA UPS

Peter J. Brokus
Internal Revenue Service
409 Lackawanna Ave.
Suite 600
Scranton, PA 18503-2065

Re: Robert S. Sands
SSN: [redacted]-8045

Dear Mr. Brokus:

I am enclosing Merrill Lynch check number 1375 from Robert S. Sands and made payable to the United States Treasury in the amount of $3,398,425.00 to be applied to Form 1040 for tax year ended December 31, 2002. This is the total amount of tax, in addition to the tax previously paid, that would be due by taking into account all of the adjustments made by the Notice of Final Partnership Administrative Adjustment ("FPAA") issued to R,R,M & C Group, LP for 2001; the FPAA issued to R,R,M & C Partners, LLC for 2001; the FPAA issued to CWC Partnership I for 2001; the FPAA issued to Beta Partners, LLC for 2001; and the FPAA issued to Alpha I, LP for 2001 and 2002.

This tax payment takes into account all adjustments made by the five FPAAs as they relate to Mr. Sands, including all of the adjustments from flow-through entities that he held an interest in. The payment of tax is intended to satisfy the deposit requirements of Internal Revenue Code § 6226(e)(1).

If you have any questions, please give me a call (404) 853-8009 or Tom Cullinan (404) – 853-8075.

Sincerely,

Joseph M. DePew

JMD/lt
Enclosure

AO 1486125.1

ROBERT S SANDS
4000 EAST AVE
ROCHESTER, NY 14618

**CMA** Cash Management Account

1375

DATE 5/16/06

PAY TO THE ORDER OF U.S. Treasury $ 3,398,425.00

Three million three hundred ninety-eight thousand four hundred twenty-five and 00/100 ———— DOLLARS

Merrill Lynch

[illegible] payment of [redacted] [illegible] – 2002

[illegible] [illegible] [illegible], [illegible] [illegible], [illegible]

MEMO

[redacted] 1375