**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| Beta Partners, L.L.C., by and through Alpha I, L.P., a Notice Partner,<br><br>Plaintiff,<br><br>v.<br><br>United States of America,<br><br>Defendant. | Case No. 06-408 T |

**FIRST AMENDED COMPLAINT FOR READJUSTMENT OF PARTNERSHIP ITEMS UNDER CODE SECTION 6226**

Beta Partners, L.L.C. ("Beta"), by and through Alpha I, L.P. ("Alpha"), a Notice Partner in Beta, files this Complaint pursuant to 26 U.S.C. § 6226 and Appendix F of the Rules of the United States Court of Federal Claims, petitioning for the readjustment of partnership items that were adjusted by the Internal Revenue Service (the "Service") in a Notice of Final Partnership Administrative Adjustment (an "FPAA") issued to Beta with respect to Partner's Form 1065 U.S. Return of Partnership Income for the tax year ended December 27, 2001 (the "Beta FPAA"). The Beta FPAA is attached as Exhibit A. Plaintiff alleges as follows:

## I. THE PARTIES

1. Beta was a limited liability company organized under the laws of the State of Missouri. It had a principal place of business at 300 Willowbrook Office Park, Fairport, New York, and its partnership identifying number was 43-1946833.

2. The initial members in Beta were Alpha and Gloria Robinson ("Robinson"). Alpha acquired Robinson's interest in Beta on December 27, 2001. Thereafter, Beta had only a

single member, which caused it to terminate for purposes of the Internal Revenue Code of 1986, as amended (the "Code").

3. Alpha was the Tax Matters Partner for Beta.

4. Alpha was a limited partnership organized under the laws of the State of Missouri. It has a principal place of business at 370 Woodcliff Drive, Fairport, New York, and its partnership identifying number was 43-1936516.

5. The six limited partners in Alpha were Robert Sands, Richard Sands, Marilyn Sands, the Marvin Sands Master Trust, Andrew Stern, and CWC Partnership-I ("CWC") (hereinafter collectively referred to as the "Limited Partners").

6. The general and Tax Matters Partner in Alpha was at all times R,R,M & C Management Corporation. R,R,M & C Management Corporation has a principal place of business at 370 Woodcliff Drive, Fairport, New York, and its partnership identifying number is 43-1936515.

7. CWC is a partnership organized under the laws of the State of New York. It has a principal place of business at 370 Woodcliff Drive, Fairport, New York, and its partnership identifying number is 16-1472626. As of December 31, 2001, the Trust FBO Abigail Stern U/A Fifth G (the "Abigail Trust") and the Trust FBO Zachary Stern U/A Fifth G (the "Zachary Trust") each held a 49.5% Class 2 partnership interest in CWC. As of December 31, 2001, the Trust FBO Andrew Stern U/A Fifth D held 98.06292% and the Trust FBO Andrew Stern U/A Fifth C held .93708% of the Class 1 partnership interest of CWC. As of December 31, 2001, Richard Sands and Robert Sands each held a .5% Class 1 and .5% Class 2 partnership interest.

8. The defendant is the United States of America.

## II. JURISDICTION and RULES OF THE UNITED STATES COURT OF FEDERAL CLAIMS App. F Rules 1 and 2

9. This Court has jurisdiction pursuant to 28 U.S.C. § 1508 and 26 U.S.C. § 6226(b).

10. Beta timely filed its Form 1065 U.S. Return of Partnership Income for the tax year ended September 10, 2001 with the Internal Revenue Service at Cincinnati, Ohio.

11. The Beta FPAA was issued on December 22, 2005 and was issued by the IRS Office in St. Louis, MO.

12. The Beta FPAA was issued with respect to Beta's taxable year ended December 27, 2001.

13. Pursuant to Internal Revenue Code of 1986, as amended (the "Code") Section 6226(e)(1) and Treas. Reg. § 301.6226(e)-1, prior to the filing of this Complaint, each partner in Beta that would have a liability as a result of the adjustments made in the Beta FPAA (i.e., Marilyn Sands, the partners in CWC, and Robert Sands and Richard Sands both individually and as partners in R,R,M & C Management Corporation) deposited with the Internal Revenue Service the total amount of $13,192,562, which includes the amount by which their tax liability would be increased if the treatment of the "partnership items" on Beta's tax return was made consistent with the treatment of "partnership items" on the Beta return, as adjusted by the FPAA issued to Beta as well as amounts related to four other FPAAs issued to partnerships in which they held a direct or indirect interest. A copy of the paper work and checks associated with this deposit is attached as Exhibit B.

14. Alpha is a "notice partner" in Beta within the meaning of Code Section 6231(a)(8).

15. None of Beta's partnership items with respect to Alpha have become non-partnership items by reason of any event described in Code Section 6231(b).

16. Alpha did not file a complaint for readjustment of partnership items as Tax Matters Partner within the period specified in Code Section 6226(a).

17. Beta has satisfied all conditions precedent to filing this suit.

## III. DESCRIPTION OF THE TRANSACTIONS

18. On or about December 11, 2001, Robert Sands, Richard Sands, Marilyn Sands, Andrew Stern, the Marvin Sands Master Trust, the Abigail Trust, and the Zachary Trust each borrowed U.S. Treasury securities from UBS PaineWebber, Inc. ("PaineWebber"), and sold the securities on the open market (the "Short Sales"). The net proceeds of the Short Sales were transferred to their respective brokerage accounts at PaineWebber.

19. On or about December 13, 2001, the Abigail Trust assigned all of the assets in its PaineWebber brokerage account to CWC, and delegated to CWC its responsibility to cover the short sale.

20. On or about December 13, 2001, the Zachary Trust assigned all of the assets in its PaineWebber brokerage account to CWC, and delegated to CWC its responsibility to cover the short sale.

21. On December 17, 2001, CWC contributed the following to Alpha in exchange for a 12.949% limited partnership interest: (a) the assets in the PaineWebber brokerage accounts that it received from the Zachary Trust and the Abigail Trust (and the requirement to "cover" the short sales); and (b) $160,766.20.

22. On December 17, 2001, Robert Sands contributed the following to Alpha in exchange for a 21.401% limited partnership interest: (a) the assets in his PaineWebber brokerage accounts (and the requirement to "cover" the short sale); and (b) $265,614.43.

23. On December 17, 2001, Richard Sands contributed the following to Alpha in exchange for a 18.022% limited partnership interest: (a) the assets in his PaineWebber brokerage accounts (and the requirement to "cover" the short sale); and (b) $223,675.31.

24. On December 17, 2001, Marilyn Sands contributed the following to Alpha in exchange for a 14.641% limited partnership interest: (a) the assets in her PaineWebber brokerage accounts (and the requirement to "cover" the short sale); and (b) $181,736.19.

25. On December 17, 2001, Andrew Stern contributed the following to Alpha in exchange for a 5.857% limited partnership interest: (a) the assets in his PaineWebber brokerage accounts (and the requirement to "cover" the short sale); and (b) $72,694.48.

26. On December 17, 2001, the Marvin Sands Master Trust contributed the following to Alpha in exchange for a 27.030% limited partnership interest: (a) the assets in its PaineWebber brokerage accounts (and the requirement to "cover" the short sale); and (b) $335,512.97.

27. On or about December 20, 2001, R,R,M & C Management Corporation contributed $2,582 to Alpha for its .1% general partnership interest.

28. On or about December 17, 2001, Alpha purchased 67,525 shares of stock in Corning, Inc. and 33,400 shares of stock in Yahoo, Inc.

29. On December 20, 2001, Alpha contributed the Yahoo and Corning shares and $45,637,127.17 (and the requirement to "cover" the Short Sales) to Beta for a 99.0043% membership interest. Robinson had earlier that month contributed $25,000 to Beta in exchange for her .9957% membership interest.

30. On December 26, 2001, Beta closed the Short Sales and recognized a net gain of $90,018.

31. On December 27, 2001, Alpha purchased Robinson's interest in Beta, which had the effect terminating Beta pursuant to Code Section 708(b)(1)(B).

32. During 2001 and 2002, Alpha transferred 52,450 of the Corning shares and 25,042 of the Yahoo shares in varying amounts to various partners.

33. On December 18, 2002, Alpha sold 5,300 of the Corning shares for $19,661. On the Form 1065 filed by Alpha for the taxable period ending December 31, 2002, Alpha reported a total basis in this Corning stock of $1,747,325, resulting in a long-term capital loss of $(1,727,664).

34. On December 18, 2002, Alpha sold 2,650 of the Yahoo shares for $44,265. On the Form 1065 filed by Alpha for the taxable period ending December 31, 2002, Alpha reported a total basis in this Yahoo stock of $1,843,154, resulting in a long-term capital loss of $(1,798,889).

## IV. <u>THE SERVICE'S POSITION</u>

35. On December 22, 2005, the Service issued an FPAA to Alpha, adjusting how Alpha reported certain items on its Form 1065 for the taxable periods ending December 31, 2001 and December 31, 2002 (the "Alpha FPAA"). The primary adjustment made by the Service in the Alpha FPAA with respect to 2001 is to increase Alpha's liabilities by $44,293,087. The primary adjustment made by the Service in the Alpha FPAA with respect to 2002 is to reduce Alpha's basis in the shares of Corning and Yahoo that it sold on December 18, 2002 by a total of $3,496,150. The Alpha FPAA also asserts a 40% accuracy-related penalty against Alpha or, alternatively a 20% accuracy-related penalty.

36. Also on December 22, 2005, the Service issued an FPAA to Beta. The Service primarily asserts that for a variety of reasons, Beta's liabilities should be increased by

$44,293,087 (i.e., the proceeds of the Short Sales). The Beta FPAA also asserts a 40% accuracy-related penalty against Beta or, alternatively a 20% accuracy-related penalty.

37. On December 28, 2005, the Service also issued an FPAA to CWC (the "CWC FPAA"), making adjustments derivative of those that are at issue in the Alpha FPAA and Beta FPAA, as well as in two FPAAs issued to two other partnerships that are not directly at issue in this case, and also asserting a 40% accuracy-related penalty or, alternatively a 20% accuracy-related penalty.

38. This complaint challenges certain of the adjustments made by the Service in the Beta FPAA. Separate complaints will be filed in this Court to contest certain of the adjustments made by the Service in the Alpha FPAA and the CWC FPAA.

## V. THE SERVICE'S ERRORS IN THE BETA'S FPAA

39. Plaintiff does not now claim that the transactions increased the amount considered at risk for an activity under Code Section 465(b)(1). Plaintiff now concedes the correctness of this specific adjustment proposed by the Service in the FPAA.

40. The Service erred by disregarding the existence of Beta.

41. The Service erred in asserting any accuracy-related penalty provided by Code Section 6662.

## VI. BETA'S CONTENTIONS

42. Beta was a partnership validly created, existing and recognized for all state and federal law purposes, including federal income tax purposes for the taxable year 2001.

43. Beta and its partners are not subject to penalties under Code Section 6662 because if any tax liability were ultimately determined by this Court against them, such liability is not attributable to: (a) negligence or disregard of rules or regulations; (b) any substantial

understatement of income tax; or (c) any substantial or gross valuation misstatement under Chapter 1.

44. Beta and its partners are not subject to penalties under Code Section 6662 because if any understatement were ultimately determined by the Court, such understatement would be attributable to items for which the relevant facts were adequately disclosed in their returns or in a statement attached to the returns; and there is a reasonable basis for the tax treatment of such item by the taxpayer.

45. The transactions at issue in this case do not constitute a tax shelter within the meaning of Code Section 6662.

46. In the alternative, even if the transactions do constitute a tax shelter, Beta and its partners are not subject to penalties under Code Section 6662 because any understatement ultimately determined by the Court is attributable to the tax treatment of items for which there is or was substantial authority for such treatment, and, furthermore, Beta and its partners reasonably believed that their tax treatment of such item was more likely than not the proper treatment.

47. Beta and its partners are not subject to penalties under Code Section 6662 on any underpayment ultimately determined because there was reasonable cause for such underpayment and they acted in good faith as contemplated by Code Section 6664(c)(1).

## VII. BURDEN OF PROOF

48. The Government has the burden of proof under Code Section 7491.

## VIII. PRAYER

WHEREFORE, Plaintiff prays that this Court:

1. Determine that the Service erred in disregarding the existence of Beta.

2. Determine that the penalties asserted by the Service in the Beta FPAA are erroneous and/or that the parties have valid defenses to the assertion of such penalties;

3. Determine that the deposit for penalties asserted should be refunded, together with interest thereon; and

4. Grant Plaintiff such other and further relief to which Plaintiff is entitled.

Dated May 16, 2008.

Respectfully submitted,

s/ Lewis S. Wiener
LEWIS S. WIENER
Sutherland Asbill & Brennan LLP
1275 Pennsylvania Avenue, NW
Washington, D.C. 20004
202.383.0140 telephone
202.637.3593 facsimile
Email: lewis.wiener@sablaw.com

Of Counsel:

N. Jerold Cohen
Thomas A. Cullinan
Joseph M. DePew
Julie P. Bowling
Sutherland Asbill & Brennan LLP
999 Peachtree Street, NE
Atlanta, Georgia 30309
404.853.8000 telephone
404.853.8806 facsimile

Kent L. Jones
Sutherland Asbill & Brennan LLP
1275 Pennsylvania Ave., NW
Washington, DC 20004
202.383.0732 telephone
202.637.3593 facsimile

Attorney for Plaintiffs