**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| R,R,M & C Group, L.P., by and through Robert Sands, a Notice Partner,<br><br>Plaintiff,<br><br>v.<br><br>United States of America,<br><br>Defendant. | Case No. 06-410 T |

**FIRST AMENDED COMPLAINT FOR READJUSTMENT OF PARTNERSHIP ITEMS UNDER CODE SECTION 6226**

R,R,M & C Group, L.P. ("Group"), by and through Robert Sands, a Notice Partner in Group, files this Complaint pursuant to 26 U.S.C. § 6226 and Appendix F of the Rules of the United States Court of Federal Claims, petitioning for the readjustment of partnership items that were adjusted by the Internal Revenue Service (the "Service") in a Notice of Final Partnership Administrative Adjustment (an "FPAA") issued to Group with respect to Group's Form 1065 U.S. Return of Partnership Income for the tax year ended December 31, 2001 (the "Group FPAA"). The Group FPAA is attached as Exhibit A. Plaintiff alleges as follows:

## I. THE PARTIES

1. Group was a limited partnership organized under the laws of the State of Missouri. It had a principal place of business at 300 Willowbrook Office Park, Fairport, New York, and its partnership identifying number was 43-1936516.

2. Until September 21, 2001, the four limited partners in Group were Robert Sands, Richard Sands, Marilyn Sands, and CWC Partnership-I ("CWC") (these four limited partners are hereinafter referred to as the "Initial Limited Partners").

3. The general and Tax Matters Partner in Group was at all times R,R,M & C Management Corporation. R,R,M & C Management Corporation has a principal place of business at 370 Woodcliff Drive, Fairport, New York, and its partnership identifying number is 43-1936515.

4. On September 21, 2001, the Initial Limited Partners each transferred their partnership interests in Group to four charitable remainder trusts ("CRUTs"): Robert Sands transferred his interest to the Robert Sands Charitable Remainder Unitrust – 2001; Richard Sands transferred his interest to the Richard Sands Charitable Remainder Unitrust – 2001; Marilyn Sands transferred her interest to the Marilyn Sands Charitable Remainder Unitrust – 2001; and CWC transferred its interest to the CWC Partnership I Charitable Remainder Unitrust – 2001 (the four CRUTs are hereinafter referred to as the "CRUT partners").

5. R,R,M & C Partners, LLC ("Partners") was a limited liability company organized under the laws of the State of Missouri. It had a principal place of business at 300 Willowbrook Office Park, Fairport, New York, and its partnership identifying number was 43-1936519.

6. The initial members in Partners were Group and Gloria Robinson ("Robinson"). Group acquired Robinson's interest in Partners on September 10, 2001. Thereafter, Partners had only a single partner, which caused it to terminate for purposes of the Internal Revenue Code of 1986, as amended (the "Code").

7. CWC is a partnership organized under the laws of the State of New York. It has a principal place of business at 370 Woodcliff Drive, Fairport, New York, and its partnership identifying number is 16-1472626. As of December 31, 2001, the Trust FBO Abigail Stern U/A Fifth G (the "Abigail Trust") and the Trust FBO Zachary Stern U/A Fifth G (the "Zachary Trust") each held a 49.5% Class 2 partnership interest in CWC. As of December 31, 2001, the

Trust FBO Andrew Stern U/A Fifth D held 98.06292% and the Trust FBO Andrew Stern U/A Fifth C held .93708% of the Class 1 partnership interest of CWC. As of December 31, 2001, Richard Sands and Robert Sands each held a .5% Class 1 and .5% Class 2 partnership interest.

8. The defendant is the United States of America.

## II. JURISDICTION and RULES OF THE UNITED STATES COURT OF FEDERAL CLAIMS App. F Rules 1 and 2

9. This Court has jurisdiction pursuant to 28 U.S.C. § 1508 and 26 U.S.C. § 6226(b).

10. Group timely filed its Form 1065 U.S. Return of Partnership Income for the tax year ended December 31, 2001 with the Internal Revenue Service at Ogden, Utah.

11. The Group FPAA was issued on December 22, 2005 and was issued by the IRS Office in St. Louis, MO.

12. The Group FPAA was issued with respect to Group's taxable year ended December 31, 2001.

13. Pursuant to Internal Revenue Code of 1986, as amended (the "Code") Section 6226(e)(1), prior to the filing of this Complaint, Robert Sands deposited with the Internal Revenue Service the total amount of $3,398,425, which includes the amount by which his tax liability would be increased if the treatment of the "partnership items" on Group's tax return was made consistent with the treatment of "partnership items" on the Group return, as adjusted by the FPAA issued to Group as well as amounts related to four other FPAAs issued to partnerships in which he held a direct or indirect interest. A copy of the paper work and check associated with this deposit is attached as Exhibit B.

14. The deposits were made on May, 17, 2006 and were sent to IRS Revenue Agent Peter Brokus.

15. Robert Sands is a "notice partner" in Group within the meaning of Code Section 6231(a)(8).

16. None of Group's partnership items with respect to Robert Sands have become non-partnership items by reasons of any event described in Code Section 6231(b).

17. The Tax Matters Partner has not filed a complaint for readjustment of partnership items within the period specified in Code Section 6226(a).

18. Group has satisfied all conditions precedent to filing this suit.

## III. DESCRIPTION OF THE TRANSACTIONS

19. On or about August 21, 2001, Robert Sands, Richard Sands, Marilyn Sands, the Abigail Trust, and the Zachary Trust each opened one or more brokerage accounts at UBS PaineWebber, Inc. ("PaineWebber"), and each infused their individual accounts with several hundred thousand dollars in cash.

20. On or about August 23, 2001, Robert Sands, Richard Sands, Marilyn Sands, the Abigail Trust, and the Zachary Trust each borrowed U.S. Treasury securities from PaineWebber and sold the securities on the open market (the "Short Sales"). The net proceeds of the Short Sales were transferred to their respective brokerage accounts at PaineWebber.

21. On or about August 27, 2001, the Abigail Trust assigned all of the assets in its PaineWebber brokerage account to CWC, and delegated to CWC its responsibility to cover the short sale.

22. On or about August 27, 2001, the Zachary Trust assigned all of the assets in its PaineWebber brokerage account to CWC, and delegated to CWC its responsibility to cover the short sale.

23. On August 28, 2001, CWC contributed the following to Group in exchange for a 24.975% limited partnership interest: (a) the assets in the PaineWebber brokerage accounts that it received from the Zachary Trust and the Abigail Trust; (b) 500,000 shares of Class A common stock of Constellation Brands, Inc. ("Constellation") with a market value of approximately $21,175,000; and (c) $125,000. CWC also delegated its responsibility to cover the short sales that had been executed by the Abigail Trust and the Zachary Trust to Group.

24. On August 28, 2001, Robert Sands contributed the following to Group in exchange for a 24.975% limited partnership interest: (a) the assets in his PaineWebber brokerage accounts (and the requirement to "cover" the short sale); (b) 500,000 shares of Class A common stock of Constellation with a market value of approximately $21,175,000; and (c) $125,000.

25. On August 28, 2001, Richard Sands contributed the following to Group in exchange for a 24.975% limited partnership interest: (a) the assets in his PaineWebber brokerage accounts (and the requirement to "cover" the short sale); (b) 500,000 shares of Class A common stock of Constellation with a market value of approximately $21,175,000; and (c) $125,000.

26. On August 28, 2001, Marilyn Sands contributed the following to Group in exchange for a 24.975% limited partnership interest: (a) the assets in her PaineWebber brokerage accounts (and the requirement to "cover" the short sale); (b) 500,000 shares of Class A common stock of Constellation with a market value of approximately $21,175,000; and (c) $125,000.

27. On August 28, 2001, R,R,M &C Management Corporation contributed $3,403 and 2,002 shares of Class A common stock of Constellation with a fair market value of $84,785 to Group for its .1% general partnership interest in Group.

28. On August 31, 2001, Group contributed the 2,002,002 shares of Constellation that it had received from its partners and $88,634,419 (and the requirement to "cover" the Short

Sales) to Partners. Robinson had earlier that month contributed $250,000 to Partners in exchange for her membership interest.

29. On September 6, 2001, Partners closed the Short Sales and recognized a net loss of $(424,565).

30. On September 10, 2001, Group purchased Robinson's interest in Partners, which had the effect of terminating Partners pursuant to Code Section 708(b)(1)(B).

31. On September 21, 2001, the Initial Limited Partners transferred their partnership interests in Group to the CRUT Partners.

32. On October 1, 2001, Group sold the 2,002,002 shares of Constellation it held for $74,862,863. On the Form 1065 filed by Group for the taxable period ending December 31, 2002, Group reported a total basis in this Constellation stock of $94,757,364, resulting in short and long-term capital losses totaling $(19,894,501). Of the 2,002,002 shares of Constellation stock sold, 5,769 were held for less than a year. The 5,769 shares were sold for $215,725 and had a basis of $219,239. The sale resulted in a short-term capital loss of $(3,514), which was reported on Group's Form 1065. The other 1,996,233 shares of Constellation stock were sold for $74,647,138, and had a basis of $94,538,125, resulting in a loss of $(19,890,987). As the 1,996,233 shares were held over a year, the loss was reported on Group's Form 1065 as a long-term capital loss.

## IV. THE SERVICE'S POSITION

33. On December 22, 2005, the Service issued an FPAA to Group, adjusting how Group reported certain items on its Form 1065 for the taxable period ending December 31, 2001 (the "Group FPAA"). The primary adjustment made by the Service in the Group FPAA is to reduce Group's basis in the 1,996,233 shares of Constellation stock sold on October 1, 2001 to

$9,108,119 and the basis in the 5,769 shares to $0. The FPAA also asserts that the Initial Limited Partners' transfer of their partnership interests in Group to the CRUT Limited Partners should be disregarded, such that the Initial Limited Partners would be treated as limited partners when Group sold the Constellation stock. The Group FPAA also asserts a 40% accuracy-related penalty against Group or, alternatively a 20% accuracy-related penalty.

34. Also on December 22, 2005, the Service issued an FPAA to Partners, making two primary adjustments (the "Partners FPAA"). First, the Service asserts that for a variety of reasons, Partners' liabilities should be increased by $85,649,245 (i.e., the proceeds received from the Short Sales and contributed to Group and then Partners). Second, the Service disallows the $(424,565) loss claimed by Partners on closing the Short Sales because the IRS asserts that the Short Sales lacked a primary profit motive. The Partners FPAA also asserts a 40% accuracy-related penalty against Partners or, alternatively a 20% accuracy-related penalty.

35. On December 28, 2005, the Service also issued an FPAA to CWC (the "CWC FPAA"), making adjustments derivative of those that are at issue in the Group FPAA and Partners FPAA, as well as in two FPAAs issued to two other partnerships that are not directly at issue in this case, and also asserting a 40% accuracy-related penalty or, alternatively a 20% accuracy-related penalty.

36. This complaint challenges certain of the adjustments made by the Service in the Group FPAA. Separate complaints will be filed in this Court to contest certain of the adjustments made by the Service in the Partners FPAA and the CWC FPAA.

## V. <u>THE SERVICE'S ERRORS IN THE GROUP FPAA</u>

37. Plaintiff does not now claim that the transactions increased the amount considered at risk for an activity under Code Section 465(b)(1) and, for this reason, does not now object to

the Service's conclusion that Group has net short-term capital loss of $(207,636) instead of $(426,875) and long-term capital gain of $65,539,019 instead of the $(19,890,987) net long-term capital loss reported on Group's return. Instead, plaintiff now concedes the correctness of these specific adjustments proposed by the Service in the FPAA.

38. The Service erred by disregarding the transfer of the limited partnership interests in Group by the Initial Limited Partners to the CRUT Partners.

39. The Service erred by disregarding the existence of Group.

40. The Service erred in asserting any accuracy-related penalty provided by Code Section 6662.

## VI. <u>GROUP'S CONTENTIONS</u>

41. The Court lacks jurisdiction to determine the validity of the transfers of limited partnership interests in Group from the Initial Limited Partners to the CRUT Partners.

42. The transfers of the limited partnership interests in Group by the Initial Limited Partners to the CRUT Partners were valid.

43. Group was a partnership validly created, existing and recognized for all state and federal law purposes, including federal income tax purposes for the taxable year 2001.

44. Group and its partners are not subject to penalties under Code Section 6662 because if any tax liability were ultimately determined by this Court against them, such liability is not attributable to: (a) negligence or disregard of rules or regulations; (b) any substantial understatement of income tax; or (c) any substantial or gross valuation misstatement under Chapter 1.

45. Group and its partners are not subject to penalties under Code Section 6662 because if any understatement were ultimately determined by the Court, such understatement

would be attributable to items for which the relevant facts were adequately disclosed in the returns or in a statement attached to the returns; and there is a reasonable basis for the tax treatment of such item by the taxpayer.

46. The transactions at issue in this case do not constitute a tax shelter within the meaning of Code Section 6662.

47. In the alternative, even if the Transactions do constitute a tax shelter, Group and its partners are not subject to penalties under Code Section 6662 because any understatement ultimately determined by the Court is attributable to the tax treatment of items for which there is or was substantial authority for such treatment, and, furthermore, Group and its partners reasonably believed that their tax treatment of such item was more likely than not the proper treatment.

48. Group and its partners are not subject to penalties under Code Section 6662 on any underpayment ultimately determined because there was reasonable cause for such underpayment and they acted in good faith as contemplated by Code Section 6664(c)(1).

## VII. BURDEN OF PROOF

49. The Government has the burden of proof under Code Section 7491.

## VIII. PRAYER

WHEREFORE, Plaintiff prays that this Court:

1. Determine that the Service erred in disregarding the transfer of the limited partnership interests in Group by the Initial Limited Partners to the CRUT Partners and that the Service's adjustments to the identity of Group's partners are factually and/or legally incorrect and are invalid;

2. Determine that the Service erred in disregarding the existence of Group.

3. Determine that the penalties asserted by the Service in the Group FPAA are erroneous and/or that the parties have valid defenses to the assertion of such penalties;

4. Determine that the deposit paid by Robert Sands should be refunded, together with interest thereon; and

5. Grant Plaintiff such other and further relief to which Plaintiff is entitled.

Dated May 16, 2008.

Respectfully submitted,

s/ Lewis S. Wiener
LEWIS S. WIENER
Sutherland Asbill & Brennan LLP
1275 Pennsylvania Avenue, NW
Washington, D.C. 20004
202.383.0140 telephone
202.637.3593 facsimile
Email: lewis.wiener@sablaw.com

Of Counsel:

N. Jerold Cohen
Thomas A. Cullinan
Joseph M. DePew
Julie P. Bowling
Sutherland Asbill & Brennan LLP
999 Peachtree Street, NE
Atlanta, Georgia 30309
404.853.8000 telephone
404.853.8806 facsimile

Kent L. Jones
Sutherland Asbill & Brennan LLP
1275 Pennsylvania Ave., NW
Washington, DC 20004
202.383.0732 telephone
202.637.3593 facsimile

Attorney for Plaintiffs