# DESIGNATION OF CHARITY

RICHARD SANDS, Grantor and Recipient, hereinafter referred to as the "Recipient," of the RICHARD SANDS CHARITABLE REMAINDER UNITRUST, U/T/A dated September 21, 2001, hereinafter referred to as the "Trust," hereby exercises his power pursuant to paragraph A of Article FOURTH of the Trust, to designate a charitable organization described in Internal Revenue Code §§ 170(b)(1)(A), 2055(a) and 2522(a) as the Charity to receive the Remainder of said Trust's estate.

a. Deletion of Charity: The Recipient hereby revokes any Charity designations he has previously made pursuant to paragraph A of Article FOURTH of the Trust.

b. Addition of Charity: The Recipient hereby designates the following Charity to receive the following percentage distribution of the Remainder of the Trust, to wit:

i. One hundred percent (100%) to The Sands Supporting Foundation, U/T/A dated January 28, 2002, of which Richard Sands and Robert Sands are Grantors.

In all other respects, the other provisions of the Trust are confirmed and are not changed or affected except as hereinbefore set forth.

GOVERNMENT EXHIBIT 15
PENGAD-Bayonne, N. J.

DATED this 28th day of January, 2002.

Richard Sands

"Recipient"

**ACCEPTANCE BY INDEPENDENT TRUSTEES**

Pursuant to the terms of paragraph A of Article FOURTH of the Richard Sands Charitable Remainder Unitrust, U/T/A dated September 21, 2001, we, Richard Sands and Robert Sands, Independent Trustees of said Trust, hereby acknowledge receipt of this Designation of Charity.

DATED this 28th day of January, 2002.

Richard Sands

Robert Sands

"Independent Trustees"

# IRREVOCABLE DESIGNATION OF CHARITY

RICHARD SANDS, Grantor and Recipient, hereinafter referred to as the "Recipient," of the RICHARD SANDS CHARITABLE REMAINDER UNITRUST, U/T/A dated September 21, 2001, hereinafter referred to as the "Trust," hereby exercises his power pursuant to paragraph A of Article FOURTH of the Trust, to irrevocably designate a charitable organization described in Internal Revenue Code §§ 170(b)(1)(A), 2055(a) and 2522(a) as the Charity to receive the Remainder of said Trust's estate.

a. <u>Deletion of Charity</u>: The Recipient hereby revokes any Charity designations he has previously made pursuant to paragraph A of Article FOURTH of the Trust, including but not limited to that certain Designation of Charity executed January 28, 2002.

b. <u>Addition of Charity</u>: The Recipient hereby irrevocably designates the following Charity to receive the following percentage distribution of the Remainder of the Trust, to wit:

i. One hundred percent (100%) to The Educational and Health Support Fund, U/T/A dated February 22, 2002, of which Richard Sands and Robert Sands are Grantors.



GOVERNMENT EXHIBIT 16
PENGAD-Bayonne, N. J.

c. Irrevocable Designation: Pursuant to this Irrevocable Designation of Charity, the Recipient hereby forever renounces the right to change the designation of the Charity to receive the trust principal and income at the expiration of the Unitrust Term pursuant to the terms of paragraph A of Article FOURTH of the Trust.

In all other respects, the other provisions of the Trust are confirmed and are not changed or affected except as hereinbefore set forth.

DATED this 22nd day of February, 2002.

Richard Sands

"Recipient"

**ACCEPTANCE BY INDEPENDENT TRUSTEES**

Pursuant to the terms of paragraph A of Article FOURTH of the Richard Sands Charitable Remainder Unitrust, U/T/A dated September 21, 2001, we, Richard Sands and Robert Sands, Independent Trustees of said Trust, hereby acknowledge receipt of this Irrevocable Designation of Charity.

DATED this 22nd day of February, 2002.

Richard Sands

Robert Sands

"Independent Trustees"

Richard Sands Charitable Remainder Unitrust 2001

NY2:#4427118v2

SANDS0487

GOVERNMENT EXHIBIT 17

PENGAD-Bayonne, N.J.

TABLE OF CONTENTS

Page

FIRST: Name .................................................. 1

SECOND: Payment of Unitrust Amount ........................... 2

THIRD: Proration of the Unitrust Amount ...................... 5

FOURTH: A. Distribution to Charity ........................... 5

B. No Death Taxes ............................................ 6

FIFTH: Additional Contributions Permitted .................... 8

SIXTH: Prohibited Transactions ............................... 9

SEVENTH: Intent to Obtain Charitable Deduction and Governing Law ..................................................... 10

EIGHTH: Trustees' Powers ..................................... 11

A. Powers of Independent Trustees ............................ 11

B. Powers of Administrative Trustee .......................... 14

C. Limitations on Trustee Liability .......................... 16

NINTH: A. Resignation ........................................ 17

B. Removal ................................................... 18

C. Appointment of Successor Trustee .......................... 18

D. No Bond ................................................... 19

E. Compensation .............................................. 19

F. Definition of Trustee ..................................... 20

G. Definition of Estate Fiduciary ............................ 21

H. Definition of Competent ................................... 21

TENTH: Taxable Year .......................................... 22

ELEVENTH: Trust Irrevocable; Limited Power of Amendment ...... 23

TWELFTH: Investment of Trust Assets .......................... 23

THIRTEENTH: Not a Grantor Trust .............................. 23

FOURTEENTH: A. Assignment of Interests ....................... 24

B. Disclaimer ............................................ 25

FIFTEENTH: Trust Situs ....................................... 26

SIXTEENTH: Intent To Create Alaska Trust ..................... 26

SEVENTEENTH: Trustees Acknowledge Receipt .................... 28

EIGHTEENTH: Effective Date ................................... 28

NINETEENTH: Successors and Assigns ............................ 29

TWENTIETH: Counterparts ...................................... 29

Richard Sands Charitable Remainder Unitrust 2001

This Agreement dated the 21st day of September 2001, by and between RICHARD SANDS, the "Grantor", and RICHARD SANDS and ROBERT SANDS, the "Independent Trustees", and ALASKA TRUST COMPANY, the "Administrative Trustee."

W I T N E S S E T H :

WHEREAS, the Grantor desires to create a charitable remainder unitrust, within the meaning of Rev. Proc. 89-20 and section 664(d)(2) of the Internal Revenue Code (hereinafter, the "Code") and the Treasury Regulations under the Code (hereinafter, the "Regulations"),

NOW, THEREFORE, the Grantor hereby transfers to the Trustees the property set forth on Schedule A hereto annexed, IN TRUST, and the Trustees accept such property and agree to hold, manage and distribute such property of the Trust under the terms set forth in this Agreement.

FIRST: Name. The Trust under this Agreement shall be known as "Richard Sands Charitable Remainder Unitrust 2001".

SECOND: Payment of Unitrust Amount.

In respect of each taxable year during the Unitrust Term, and except as otherwise provided in Article FIFTH, the Independent Trustees shall pay to the Recipient, or if the Recipient dies before the end of the Unitrust Term, to the Contingent Successor Recipient, a unitrust amount equal to the Unitrust Percentage of the Annual Value. The capitalized terms in the preceding sentence which are not otherwise defined in this Agreement shall have the meanings hereinafter specified:

The term "Unitrust Term" shall mean the term commencing on the date of this Agreement and ending on the day preceding the twentieth anniversary of the effective date of this Agreement.

The term "Recipient" shall mean the Grantor, and the term "Contingent Successor Recipient" shall mean the Grantor's estate.

The term "Unitrust Percentage" shall mean that percentage (rounded to the nearest 1/10,000 of 1% and not to exceed fifty (50) percent or to be less than five (5) percent) of the Annual Value (as hereinafter defined) which, when the Applicable Rate (as hereinafter defined) is applied as provided in section 7520 of the Code and any tables and regulations

issued thereunder, would cause the remainder interest in the Contribution Amount (as hereinafter defined) to equal the Minimum Allowable Remainder (as hereinafter defined). If the rounding of the Unitrust Percentage to the nearest 1/10,000 of 1% would cause the remainder interest in the Contribution Amount to be less than the Minimum Allowable Remainder, the Unitrust Percentage shall be rounded instead to the nearest 1/10,000 of 1% but not to be less than five (5) percent which would cause the remainder interest not to be less than the Minimum Allowable Remainder, even if the resulting remainder interest would exceed the Minimum Allowable Remainder.

The term "Annual Value" shall mean the net fair market value of the assets of the Trust valued as of the first day of December 1 of each taxable year of the Trust, or if December 1 of a year is a holiday, a Saturday or a Sunday, the business day immediately preceding December 1 (the "valuation date"), in accordance with the method described in Treas. Reg. §1.664-3(a)(1)(iv) and any applicable ruling, procedure or guideline of the Internal Revenue Service.

The term "Applicable Rate" shall mean the highest interest rate available under section 7520 of the Code as of the date assets are initially contributed to the Trust for the

valuation for tax purposes of unitrust interests created under this Agreement.

The term "Contribution Amount" shall mean the net fair market value of the assets initially contributed to the Trust by the Grantor.

The term "Minimum Allowable Remainder" shall mean that amount (determined under section 7520 of the Code and applying the Applicable Rate) which is equal to ten (10) percent (within the meaning of section 664(d)(2)(D) of the Code) of the Contribution Amount.

The unitrust amount shall be paid in a single installment on December 1 of each taxable year of the Trust from income and, to the extent that income is not sufficient, from principal. Any net income of the Trust for a taxable year in excess of the unitrust amount shall be added to principal. If for any year the Annual Value is incorrectly determined, then within a reasonable period after the value is finally determined for federal tax purposes, the Independent Trustees shall pay to the Recipient or the Contingent Successor Recipient, as the case may be, (in the case of an overvaluation) or receive from the Recipient or the Contingent Successor Recipient, as the case may be, (in the case of an undervaluation) an amount equal to the

difference between the unitrust amount properly payable and the unitrust amount actually paid.

THIRD: Proration of the Unitrust Amount. In determining the unitrust amount, the Independent Trustees shall prorate the same on a daily basis for a short taxable year and for the taxable year in which the Trust ends in the manner specified in Treas. Reg. §1.664-3(a)(1)(v)(a) and (b). In addition, if no valuation date occurs during a taxable year (including the year of termination) of the Trust, the assets of the Trust shall be valued as of the last day of such year.

FOURTH: A. Distribution to Charity. Upon the expiration of the Unitrust Term, the Independent Trustees shall distribute all of the then principal and income of the Trust (other than any amount due the Recipient or the Contingent Successor Recipient under the provisions above) (the "Remainder") to such organization or organizations described in the sections of the Code specified below (the "Charities"), in such amounts or proportions, including all to one to the exclusion of all others, as the Recipient may appoint by a written instrument specifically referring to this power and delivered to the Independent Trustees on or before the

termination of the Trust. If any portion of the Remainder is not effectively disposed of by the preceding sentence, or if any one or more of the Charities specified in such instrument in writing to receive all or a portion of the Remainder is not an organization described in the sections of the Code specified below at the time when any principal or income of the Trust is to be distributed to it or them under any provision of this Agreement, then the Independent Trustees shall distribute the Remainder to such extent not so effectively disposed of to such organization or organizations described in sections 170(b)(1)(A) (so-called "publicly supported charities"), 2055(a) and 2522(a) of the Code as the Independent Trustees, in the exercise of sole and absolute discretion, shall select, in such amounts or proportions, including all to one to the exclusion of all others, as the Independent Trustees, in the exercise of sole and absolute discretion, shall determine.

B. No Death Taxes. It is the Grantor's intent that no Death Taxes (as hereinafter defined) shall be payable from the Trust. Accordingly, the Grantor hereby agrees (i) to make no direction by Last Will and Testament, or by any other instrument, that any Death Taxes shall be allocated to and paid from the Trust; (ii) to keep in effect a Last Will and Testament

and/or other appropriate instrument directing that any Death Taxes which would, except for such direction, be allocated by law to and paid from the Trust shall, instead, be paid from other property composing part of the Grantor's gross estate, as that term is defined for federal estate tax purposes; and (iii) to obligate the Estate Fiduciary (as hereinafter defined) and/or other appropriate fiduciary to pay to the Trustee from the assets composing the Grantor's gross estate other than the Trust an amount equal to any Death Taxes which may be allocated to and paid from the Trust notwithstanding the provisions of subdivisions (i) and (ii). If the Grantor's Estate becomes the Contingent Successor Recipient, and if, notwithstanding the foregoing provisions of subdivisions (i), (ii) and (iii), any Death Taxes are allocated to the Trust upon the Grantor's death, the interest of the Grantor's Estate as the Contingent Successor Recipient will take effect upon the death of the Grantor only if the Estate Fiduciary furnishes the funds for payment of any Death Taxes for which the Trustee may be liable upon the death of the Grantor.

The term "Death Taxes" shall mean any estate, inheritance, legacy, succession, transfer (including generation-skipping transfer) or other taxes (including any interest or

penalties thereon) imposed by any federal, state or other taxing authority by reason of the Grantor's death.

FIFTH: Additional Contributions Permitted. Additional contributions acceptable to the Trustees may be made to the Trust. If any additional contributions are made to the Trust after the initial contribution, the unitrust amount for the year in which the additional contribution is made shall be equal to the Unitrust Percentage of the sum of (a) the net fair market value of the assets of the Trust as of the valuation date (excluding the assets so added and any income from, or appreciation on, such assets) and (b) that proportion of the fair market value of the assets so added that was excluded under (a) that the number of days in the period that begins with the date of contribution and ends with the earlier of the last day of the taxable year or the date of expiration of the Unitrust Term bears to the number of days in the period that begins on the first day of such taxable year and ends with the earlier of the last day in such taxable year or the date of expiration of the Unitrust Term; provided, however, that if such additional contribution would result in the Trust ceasing to be a charitable remainder unitrust by reason of section 664(d)(2)(D) of the Code, such additional contribution shall be treated as a

transfer to a separate trust subject to all of the terms and conditions of this Agreement, except that the Unitrust Percentage shall be recalculated as if the Unitrust Term commenced on the date of such additional contribution and as if the additional contribution were the initial contribution to the separate trust so created, but in no event shall it be greater than the Unitrust Percentage determined with respect to the initial contribution.

SIXTH: Prohibited Transactions. Except for the payment of the unitrust amount to the Recipient or the Contingent Successor Recipient, the Trustees are prohibited from engaging in any act of self-dealing as defined in section 4941(d) of the Code, from retaining any excess business holdings as defined in section 4943(c) of the Code which would subject the Trust to tax under section 4943 of the Code, from making any investments which would subject the Trust to tax under section 4944 of the Code, and from making any taxable expenditures as defined in section 4945(d) of the Code. The Independent Trustees shall make distributions at such time and in such manner as not to subject the Trust to tax under section 4942 of the Code.

SEVENTH: Intent to Obtain Charitable Deduction and Governing Law. It is the intention of the Grantor and the Trustees in executing this Agreement to create a charitable remainder unitrust within the meaning of section 664(d)(2) of the Code and to obtain for the Grantor the full benefit of any income and gift (and, if any portion of the Trust is included in the federal gross estate of the Grantor, any estate) tax charitable deductions available to creators (or the estates of any creators) of charitable remainder unitrusts under the Code, and for the Trust the exemption from income tax provided by section 664(c) of the Code. Accordingly, the provisions of this Agreement shall be construed and the Trust shall be administered solely in accordance with said intention and in a manner consistent with those sections of the Code and Regulations thereunder which may be promulgated from time to time with respect to charitable remainder unitrusts. Should the provisions of this Agreement be inconsistent or in conflict with such sections and regulations in effect from time to time, then such sections and regulations shall be deemed to override and supersede the provisions which are set forth herein. If such sections and regulations at any time require that agreements creating such trusts contain provisions which are not expressly

set forth herein, then such provisions shall be incorporated into this Agreement by reference and shall be deemed to be a part of this Agreement to the same extent as though they had been expressly set forth herein. In all other respects, the validity, construction and effect of this Agreement and the validity of the Trust shall be determined in accordance with, and the Trust shall be administered under, the laws of the State of Alaska. Notwithstanding the foregoing, upon a change of the situs of the Trust pursuant to Article FIFTEENTH, the Trust may, if the Independent Trustees so elect, be administered under the laws of the jurisdiction to which the Trust situs is changed.

EIGHTH: Trustees' Powers.

A. Powers of Independent Trustees. In addition to, and not by way of limitation of, the powers conferred by law upon trustees, the Independent Trustees are expressly granted the powers hereinafter enumerated, all of such powers so conferred or granted to be exercised by the Independent Trustees as the Independent Trustees may deem advisable, in the exercise of sole and absolute discretion, and without prior authority from any court, but subject in all cases to the provisions of Article SIXTH hereof and provided that the Independent Trustees are prohibited from exercising any power or discretion granted

under said laws or this Agreement that would be inconsistent with the qualification of the Trust under section 664(d)(2) of the Code and the corresponding Regulations:

(1) To purchase or otherwise acquire (including on a forward basis), and to retain, whether originally a part of the Trust or subsequently acquired, any and all common or preferred stocks, bonds, notes or other securities, or any variety of real or personal property, including foreign real estate, foreign securities, any business venture (incorporated or unincorporated), and interests in entities formed principally for the commingling of assets for investment, such as common trust funds, investment companies, investment trusts and partnerships, as the Independent Trustees may deem advisable, including any participation in (i) any common trust fund administered by any Trustee or an affiliate thereof, (ii) any investment company registered under the Investment Company Act of 1940 for which any Trustee or any affiliate thereof is acting as an investment advisor or providing other services, or (iii) any money market deposit or similar account with any Trustee, but only if the foregoing does not constitute an act of self-dealing under section 4941 of the Code.

(2) To hold and continue to hold for so long a period as the Independent Trustees may determine or to sell (including selling securities short), lease, mortgage, pledge, transfer, exchange or otherwise dispose of, or grant options with respect to, any and all real or personal property which may form at any time a part of the Trust, in such manner, at such time or times, for such purposes, for such prices and upon such terms, credits and conditions as the Independent Trustees, in the exercise of sole and absolute discretion, may determine.

(3) Without the consent of any beneficiary, to make distributions in cash or in specific property, real or personal, or an undivided interest therein, or partly in cash and partly in such property, subject however to any restrictions in the Regulations.

(4) To vote in person or by general or limited proxy upon all stock held by the Trustees; to approve or oppose, directly or through a committee or other agent, the

reorganization, consolidation, merger, dissolution or liquidation of any corporation, or the sale, lease, pledge or mortgage of any property by or to any corporation, any of the stocks, bonds, notes or other securities of which are held in the Trust; and to do any acts with reference to such stocks, bonds, notes or other securities which the Independent Trustees may deem necessary or proper to enable them to obtain the benefit of any such transaction; to exercise any conversion privilege, subscription right or any option available in connection with any of the stocks, bonds, notes or other securities in the Trust, and to make any such payments in connection therewith as the Independent Trustees shall deem necessary or advisable.

(5) To pay, compromise, compound, adjust, submit to arbitration, sell or release any claims or demands of the Trust against others or of others against the Trust upon any terms and conditions, including the acceptance of deeds to real property in satisfaction of bonds or mortgages; and to make any payments in connection therewith.

(6) To value assets not having an objectively ascertainable fair market value in any manner that is reasonable, fair and consistent with the Independent Trustees' fiduciary duty, provided that any requirements concerning the procedure or method for valuing assets promulgated by regulation or revenue ruling under section 664 of the Code shall be followed, and in respect of unmarketable assets transferred to the Trust, to value such assets in accordance with the requirements of Treas. Reg. section 1.664-1(a)(7) and any other applicable requirements promulgated by regulation or revenue ruling under section 664 of the Code.

(7) To appoint, employ and remove, at any time and from time to time, all such attorneys, investment counselors, expert advisers, agents, accountants for purposes of preparing any GAAP reports required to be furnished by the Trustees hereunder or otherwise, clerks and employees, as the Independent Trustees may deem advisable, and in the Independent Trustees' discretion to fix and pay the reasonable compensation of such advisors from the Trust (but no such compensation shall be paid out of the unitrust amount). Nothing herein contained shall be construed to permit any person or entity to receive

compensation in excess of what is reasonable as defined for purposes of sections 4941(d)(2)(e) and 4945(d)(5) of the Code.

(8) To hold any property in bearer form or to register any security held by the Trustees hereunder in the name of a nominee.

(9) To execute and deliver any and all instruments the Independent Trustees may deem advisable to carry out any of the foregoing powers, no party to any such instrument being required to inquire into the validity of any such instrument.

(10) The powers granted to the Independent Trustees in and by this Article or in and by any other Article of this Agreement may be exercised in whole or in part and from time to time, and without court authorization, and shall be deemed to be supplemental and not exclusive, it being intended that the Independent Trustees shall have all of the general powers of trustees appropriate to the particular circumstances, all of the special powers herein expressly granted, and all powers incidental to, reasonably to be implied from or necessary to the proper exercise of, the special powers herein enumerated.

(11) To manage any trust created hereunder _in solido_ with any other trust created hereunder or with any other trust created by the Grantor which has similar terms, conditions and beneficiaries.

B. Powers of Administrative Trustee. The Grantor expressly authorizes the Administrative Trustee, in the exercise of sole and absolute discretion:

(1) To maintain the books and records of the Trust.

(2) To prepare and file or to arrange for the preparation and filing of all tax returns required to be filed by the Trust.

(3) To the extent deemed appropriate by the Independent Trustees, to maintain custody of any assets of the Trust.

(4) To undertake any other duties to assist the Independent Trustees as the Independent Trustees, in the exercise of sole and absolute discretion, may determine to be appropriate.

(5) To implement without responsibility therefor any decisions of the Independent Trustees hereunder.

(6) To appoint, employ and remove, at any time and from time to time, any accountants, attorneys, expert advisers, agents, clerks and employees in furtherance of fulfilling the responsibilities of Administrative Trustee hereunder, and to pay them such reasonable compensation for their services as approved by the Independent Trustees.

(7) To place and leave all or any part of the funds or securities at any time held by the Trust in the care and custody of any bank or trust company, with no obligation while such securities are so deposited to inspect or verify the same and with no responsibility for any loss or misapplication by the bank or trust company or its nominee; to appoint such bank or trust company the agent and attorney of the Trustees to collect, receive, receipt for and disburse any income, and generally to perform the duties and services incident to a so-called "custodian account"; and to allocate the charges and expenses of such bank or trust company to income or to principal or partially to income and partially to principal as the Trustees determine.

(8) To execute and deliver any and all instruments to carry out any of the foregoing powers, no party to any such instrument being required to inquire into its validity or to see to the application of any money or other property paid or delivered pursuant to the terms of any such instrument.

All other powers granted to the Trustees hereunder shall be deemed to be granted to the Independent Trustees unless

such powers are explicitly granted to the Administrative Trustee hereunder. Any Trustee acting hereunder other than as an Administrative Trustee shall act as an Independent Trustee.

C. Limitations on Trustee Liability. Except in the case of gross negligence or willful misconduct, the Trustees shall not be liable for (1) any investment loss (realized or unrealized) or failure to meet performance objectives or (2) any other loss to the Trust, the Recipient, or the Contingent Successor Recipient. The Trustees shall be entitled to indemnification out of the assets of the Trust for any losses or expenses they incur in connection with the Trust, including reasonable attorneys' fees and disbursements, unless such losses or expenses are due to the Trustees' gross negligence or willful misconduct.

Furthermore, (i) the Independent Trustees shall not have any fiduciary responsibility to observe, monitor or evaluate the actions of the Administrative Trustee and shall not be liable to any party for the failure to seek to remedy a breach of trust, or in a recurring situation to request instructions from a court having jurisdiction over the Trust, even if a Trustee may be guilty of a gross violation of fiduciary duties hereunder, and (ii) the Administrative Trustee

shall not have any fiduciary responsibility to observe, monitor or evaluate the actions of the Independent Trustees and shall not be liable to any party for the failure to seek to remedy a breach of trust, or in a recurring situation to request instructions from a court having jurisdiction over the Trust, even if a Trustee may be guilty of a gross violation of fiduciary duties hereunder. In no event shall any Trustee hereunder be liable for any matter with respect to which he, she or it is not authorized to participate hereunder (including the duty to review or monitor trust investments).

The provisions of this Article shall not apply to the extent their application would constitute an act of self-dealing as defined in section 4941(d) of the Code or a taxable expenditure as defined in section 4945(d) of the Code or would disqualify the Trust as a charitable remainder trust described in section 664(d)(2) of the Code.

NINTH: A. Resignation. Any Trustee may resign from office without leave of court at any time and for any reason. Such resignation shall be made by an acknowledged written instrument delivered to the Grantor or if the Grantor is then deceased to the Estate Fiduciary.

B. Removal. Any Trustee acting hereunder (other than Robert Sands or Richard Sands) may be removed by James Locke, of Rochester, New York, if living and competent, or if not living and competent, by the eldest adult and competent descendant of the Marilyn Sands, or if no such descendant is adult and competent, by the guardian of the person of the eldest living descendant of Marilyn Sands.

Any such removal shall be made by an acknowledged written instrument delivered to the individual, bank or trust company being removed, and such removal shall be effective upon such delivery.

C. Appointment of Successor Trustee. If there is no Independent Trustee acting hereunder the successor Independent Trustee(s), or if there is no Administrative Trustee acting hereunder the successor Administrative Trustee(s), or if any Trustee has been removed in accordance with paragraph B of this Article the successor Trustee, as the case may be, shall be such individual, bank or trust company (subject to the provisions of Article SIXTEENTH hereof) as shall be appointed by Richard Sands and Robert Sands, if living and competent, or by such one of them as is living and competent, or if neither is living and competent, by Marilyn Sands, if living and competent, or if not

living and competent, by James Locke, if living and competent, or if not living and competent, by the eldest adult and competent descendant of Marilyn Sands, or if no such descendant is adult and competent, by the guardian of the person of the eldest living descendant of Marilyn Sands.

Any such appointment shall be made by an acknowledged written instrument delivered to the individual, bank or trust company being appointed, and such appointment shall be effective upon such delivery.

D. No Bond. No person acting as Trustee shall be required to give a bond or other security in any jurisdiction, and, if despite this provision a bond is required, no surety shall be required.

E. Compensation. Any corporate Trustee shall receive payment for its services as agreed upon in writing by the Independent Trustees and such corporate Trustee. Any individual Trustee shall receive such compensation from time to time for his, her or its services as Trustee hereunder as is agreed upon by the Grantor (or, after the Grantor's death, the Estate Fiduciary) and such Trustee (such agreement to be evidenced by an acknowledged written instrument delivered to such Trustee), and any successor Trustee shall be compensated as provided in

his, her or its instrument of appointment; provided, however, that any descendant of the Marilyn Sands's mother shall serve as Trustee without compensation. The compensation of any Trustee may be paid without court approval.

Any Trustee shall be reimbursed from the Trust for all fees and expenses (including reasonable attorneys' fees) attributable to his, her or its resignation, removal or appointment as Trustee.

Nothing herein contained shall be construed to permit any Trustee to receive compensation in excess of that to which the Trustee is entitled as trustee under the laws of the State of Alaska in effect from time to time or in excess of that which is reasonable as defined for purposes of section 4941(d)(2)(e) and section 4945(d)(5) of the Code.

F. <u>Definition of Trustee</u>. Wherever the term "Trustees" is used in this Agreement, it shall be deemed to refer collectively to the Independent Trustees and Administrative Trustee acting hereunder from time to time. Wherever the term "Independent Trustees" is used in this Agreement, it shall be deemed to refer to the Independent Trustees or Independent Trustee acting hereunder from time to time. Wherever the term "Administrative Trustees" is used in

this Agreement, it shall be deemed to refer to the Administrative Trustees or Administrative Trustee acting hereunder from time to time.

G. Definition of Estate Fiduciary. As used in this Agreement, the term "Estate Fiduciary" shall mean the person or those persons (acting by majority vote) who upon the Grantor's death is or are acting as fiduciary with respect to the Estate of the Grantor, whether as temporary or permanent administrator(s), executor(s) or personal representative(s); provided, however, that during any period subsequent to the Grantor's death when no Estate Fiduciary of the Grantor's Estate is serving, the term shall mean the nominated executor or executors under the Grantor's Will.

H. Definition of Competent. For all purposes under this Agreement, an individual will be considered incapacitated or incompetent (i) if two physicians who have personally examined said individual (one of whom shall be the individual's personal physician, if any, and the other of whom shall be a neurologist or other qualified medical professional) and the Grantor, if living and competent, or if not, the guardian of the person (or similar personal representative) of the Grantor, or if the Grantor is not living, the eldest living adult and

competent descendant of Marilyn Sands, if any, or if no such descendant is adult and competent, the guardian of the person (or similar personal representative) of the eldest living descendant of Marilyn Sands unanimously conclude that the individual is having substantial difficulty managing his or her financial affairs and that such substantial difficulty is not expected to be short-term, or (ii) if such individual has been judicially declared incompetent or otherwise unable to manage his or her financial affairs by a court of competent jurisdiction. Any conclusion as to an individual's substantial difficulty determined in accordance with the foregoing shall be evidenced by an acknowledged written instrument to that effect executed by the persons required to reach such conclusion and delivered to the Independent Trustees. Any person who is not considered incapacitated or incompetent pursuant to this paragraph shall be considered competent for all purposes under this Agreement.

TENTH: Taxable Year. The taxable year of the Trust shall be the calendar year.

ELEVENTH: Trust Irrevocable; Limited Power of Amendment. The Trust created under this Agreement is irrevocable. The Independent Trustees, however, shall have the power, acting alone, to amend this Agreement in any manner required for the sole purpose of ensuring that the Trust qualifies and continues to qualify as a charitable remainder unitrust within the meaning of section 664(d)(2) of the Code. References to the Code and Regulations shall be deemed to incorporate changes enacted or promulgated after the date of this Agreement to whatever extent is necessary to ensure such continuing qualification.

TWELFTH: Investment of Trust Assets. Nothing in this Agreement shall be construed to restrict the Independent Trustees from investing the assets of the Trust in a manner that could result in the annual realization of a reasonable amount of income or gain from the sale or disposition of such assets.

THIRTEENTH: Not a Grantor Trust. It is intended that the Grantor shall not be treated under Subpart E of Part I of Subchapter J of Chapter 1 of the Code as the owner of the Trust created hereunder. Accordingly, notwithstanding any other provision of this Agreement, neither the Grantor nor any other

"nonadverse party" as that term is used in section 672(b) of the Code shall have the power (1) to purchase, exchange or otherwise deal with or dispose of any principal or income of the Trust for less than an adequate consideration in money or money's worth, or (2) to borrow any principal or income of the Trust, directly or indirectly, without adequate interest or adequate security; no person in a nonfiduciary capacity shall have the power (1) to vote or direct the voting of stock or other securities of a corporation in which the holdings of the Grantor and the Trust are significant from the viewpoint of voting control, (2) to control the investment of the assets of the Trust either by directing investments or reinvestment or by vetoing proposed investments or reinvestment to the extent that the assets of the Trust consist of stocks or securities of a corporation in which the holdings of the Grantor and the Trust are significant from the view point of voting control, or (3) to reacquire any assets of the Trust or any portion of any such asset by substituting other property of an equivalent value. In addition, the Grantor directs that this Agreement shall be construed and administered so that the Trust is not characterized as a grantor trust.

FOURTEENTH: A. Assignment of Interests. To the extent not prohibited for charitable remainder trusts, any interest in the Trust may, by an acknowledged written instrument delivered to the Independent Trustees, be assigned irrevocably. If upon completion of any such assignment, the assignee owns the entire right to receive the unitrust amount and the right to receive the Remainder (determined without regard to any contingency in paragraph A of Article FOURTH), such assignment shall effect a merger into fee ownership (regardless of any contingency in paragraph A of Article FOURTH) to the extent not prohibited for charitable remainder trusts, in accordance with Revenue Ruling 86-60 and various private letter rulings, including Private Letter Ruling 8311063, Private Letter Ruling 8613046 and Private Letter Ruling 9550026.

B. Disclaimer. The Recipient and the Contingent Successor Recipient, in addition to any rights conferred on the Recipient or the Contingent Successor Recipient by Alaska law, are authorized at any time within nine (9) months after the date of this Agreement to make a qualified disclaimer within the meaning of section 2518 of the Code, in whole or in part or with reference to specific amounts, parts, fractional shares or assets, of any interest, right, privilege, or power granted to

the Recipient or the Contingent Successor Recipient, as the case may be, by this Agreement. Any such disclaimer shall be made by an acknowledged written instrument executed by the Recipient or the Contingent Successor Recipient, as the case may be, and delivered to the Trustee.

FIFTEENTH: Trust Situs. The Trustee shall not be required to account in any court other than one of the courts of the State of Alaska and then only to the extent such accounting is required by the laws of the State of Alaska notwithstanding the provisions of this Agreement. The situs of the Trust shall be deemed to be the State of Alaska, although the assets of the Trust may be kept in any jurisdiction. The Independent Trustees may, without prior approval of any court, change the situs of the Trust to another jurisdiction within the United States, by an acknowledged written instrument filed with the records of the Trust, and thereafter references in this Agreement to the courts of Alaska shall be deemed to refer to the courts of such other jurisdiction.

SIXTEENTH: Intent To Create Alaska Trust. It is the Grantor's intention that the Trust created hereunder be a trust described in AS 13.36.035(a) and (c). Accordingly, unless the

Independent Trustees determine to move the situs of the Trust to another jurisdiction in accordance with Article FIFTEENTH hereof, the Grantor directs that (a) at all times at least one Trustee of the Trust shall be a "qualified person" under AS 13.36.390(1), (b) the duties of that Trustee, regardless of whether that Trustee is acting in the capacity of Investment Trustee, Independent Trustee and/or Administrative Trustee, shall include the duty and responsibility to maintain books and records of the Trust in Alaska and to prepare or to arrange for the preparation of the tax returns of the Trust, (c) at least some assets of the Trust shall be deposited in Alaska within the meaning of AS 13.36.035(c)(1), and (d) at least part of the administration of the Trust shall occur in Alaska within the meaning of AS 13.36.035(c)(4). Each Trustee and that Trustee's officers, agents, and employees, if any, shall be indemnified out of and held harmless by the Trust from any and all liability to any beneficiary for any loss of any kind that may result by reason of any action or non-action taken by the Trustee and the Trustee's officers, agents, and employees in accordance with the directions in this Article.

Notwithstanding anything contained in this Agreement to the contrary, any successor Administrative Trustee must be

domiciled in the same jurisdiction as the Administrative Trustee being replaced, unless the Independent Trustees consent to the appointment of an Administrative Trustee domiciled in a different jurisdiction, and, unless the Independent Trustees have determined to change the situs of the Trust from Alaska, at least one (1) Trustee must at all times be an individual or a bank or trust company domiciled in Alaska.

SEVENTEENTH: Trustees Acknowledge Receipt. The Trustees acknowledge receipt of the property set forth in the Schedule hereto annexed and accept the Trust hereby created upon the terms set forth in this Agreement.

EIGHTEENTH: Effective Date. The Trust shall be effective upon the later of (i) the execution of this Agreement by the last of the Trustees and the Grantor to execute it or (ii) the transfer to the Trustees of the property set forth in the Schedule hereto annexed. For purposes of the preceding sentence, the term transfer shall mean the moment in time when the Trustees actually receive the assets or title to the property in the name of the Trustees or by confirming evidence of ownership of it in a trust account held in the name of the Trust.

NINETEENTH: Successors and Assigns. This Agreement shall extend to and be binding upon the successors and assigns of the Grantor and upon the successors of the Trustees.

TWENTIETH: Counterparts. This Agreement may be signed in counterparts which together shall constitute an original. Facsimile copies of signed originals shall be treated as original copies.

IN WITNESS WHEREOF, the Grantor and the Trustees have signed this Agreement the day and year first above written.

Richard Sands, Grantor and
Independent Trustee

Robert Sands, Independent Trustee

ALASKA TRUST COMPANY,
Administrative Trustee

By: ____________________
Name:
Title:

STATE OF New York )
: ss.:
COUNTY OF Monroe )

On the 12th day of Sept. in the year 2001 before me, the undersigned, personally appeared RICHARD SANDS, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and he acknowledged to me that he executed the same, and that by his signature on the instrument, the individual executed the instrument as Grantor and Independent Trustee, and that such individual made such appearance before the undersigned in Fairport, New York.

Judith A. Celentani
Notary Public

JUDITH A. CELENTANI
Notary Public in the State of New York
County of Ontario #4762158
Commission Expires December 31, 2002

NY2:#4427118v2

SANDS0519

STATE OF New York )
: ss.:
COUNTY OF Monroe )

On the 12th day of September in the year 2001 before me, the undersigned, personally appeared ROBERT SANDS, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and he acknowledged to me that he executed the same, and that by his signature on the instrument, the individual executed the instrument as Independent Trustee, and that such individual made such appearance before the undersigned in Fairport, New York.

Notary Public

KAREN J MEGAFFEE
Notary Public, State of New York
No 01ME5037146
Ontario County
Commission Expires December 19, ~~19~~ 2002

NINETEENTH: <u>Successors and Assigns</u>. This Agreement shall extend to and be binding upon the successors and assigns of the Grantor and upon the successors of the Trustees.

TWENTIETH: <u>Counterparts</u>. This Agreement may be signed in counterparts which together shall constitute an original. Facsimile copies of signed originals shall be treated as original copies.

IN WITNESS WHEREOF, the Grantor and the Trustees have signed this Agreement the day and year first above written.

____________________________
Richard Sands, Grantor and
Independent Trustee

____________________________
Robert Sands, Independent Trustee

ALASKA TRUST COMPANY,
Administrative Trustee

By: [signature]
Name: BRANDON J. CINTULA
Title: Vice President & Trust Officer



NY2:#4427118v2

SANDS0521

STATE OF ALASKA )

: ss.:

THIRD JUDICIAL DISTRICT )

On the 21st day of September in the year of 2001, before me, the undersigned, personally appeared Brandon T. Cintula personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument, and he acknowledged to me that he resides in Anchorage Alaska; that he is a Vice President/ Trust Officer of ALASKA TRUST COMPANY, the corporation described in and which executed the foregoing instrument; that (s)he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation, and that (s)he executed the instrument by like order, in its capacity as Administrative Trustee and that such individual made such appearance before the undersigned in Anchorage, Alaska.

Stephanie Bloomquist
Notary Public

Stephanie Bloomquist, Notary Public
State of Alaska
My Commission Expires 12/29/2004

NY2:#4427118v2

SANDS0522

COPY



IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-407T

(into which have been consolidated Nos. 06-408T, 06-409T, 06-410T, 06-411T, 06-810T, 06-811T)

\- - - - - - - - - - - - - - - - X

ALPHA I, L.P., by and through )
ROBERT SANDS, a notice partner, )
Plaintiff )Case No. 06-407T
-vs- )
THE UNITED STATES, )
Defendant )

\- - - - - - - - - - - - - - - - X

Deposition of RICHARD SANDS taken pursuant to notice at Constellation Brands, 370 Woodcliff Drive, Suite 300, Fairport, New York on Tuesday, June 12, 2007 commencing at 9:30 a.m.

Reported by:
COMPUTER REPORTING SERVICE
Amy M. Condon, CSR, RPR
270 Reynolds Arcade Building
16 East Main Street
Rochester, New York 14614 (585) 325-3170

PENGAD-Bayonne, N. J.
GOVERNMENT EXHIBIT
18

APPEARANCES:

SUTHERLAND, ASBILL & BRENNAN, LLP
By: KENT L. JONES, Esq.
JULIE BOWLING, Esq.
1275 Pennsylvania Avenue, N.W.
Washington, D.C., 20004
Attorneys for plaintiff.

U.S. DEPARTMENT OF JUSTICE
By: MICHELLE C. JOHNS, Esq.
THOMAS M. HERRIN, Esq.
717 North Harwood Street, Suite 400
Dallas, Texas 75201
Attorneys for defendant.

Gloria Robinson?

A. The concept was any individual investor.

Q. So were you actively seeking independent investors?

A. Actively, no.

Q. So the independent investor we're referring to here is Gloria Robinson?

MR. JONES: I'm going to object to the form of the question. I mean, when you say the independent investor we're referring to, I mean --

MS. JOHNS: He keeps mentioning the independent investors. I'm trying to figure out who that is.

THE WITNESS: If we're taking nonfamily investors in we did it in the form of LLCs. We continue to do that.

BY MS. JOHNS:

Q. Did Gloria Robinson have an interest in RRM&C Partners?

A. Yes.

Q. Who is Gloria Robinson?

A. The mother of Freddy Robinson.

Q. Who is Freddy Robinson?

A. Freddy Robinson is the head of Bernard

Robinson accounting who is our accounting firm. It has been for quite a while.

Q. Was Gloria married to Bernard Robinson?

A. Gloria was married to Bernard.

Q. I know from the facts of the case that Gloria was a partner in RRM&C Partners and in Beta. Is that what you recall?

A. Yes.

Q. Why did Gloria invest in RRM&C Partners?

A. She wanted to make money.

Q. Would that be the same answer about her investment in Beta as well?

A. Yes.

Q. Did you speak with Gloria about her -- I'm going to ask these questions for both entities. I'm not going to ask a separate one for each one. I'm referring to RRM&C Partners and Beta. Did you speak to Gloria about her investment in these two entities?

A. No.

Q. Did she approach you about investing the money?

A. I don't recall who approached who. She didn't approach me directly.

Q. Do you know who she would have approached?

COPY



WITNESS CERTIFICATE

STATE OF NEW YORK )
COUNTY OF MONROE )

I, RICHARD SANDS, do hereby certify that I have read the transcript of my testimony as taken under oath on Tuesday, June 12, 2007 and that said transcript is a true, complete and correct record of what was asked, answered and said during said deposition, and that the answers on record therein, and as may be modified in conformity with the attached errata sheet, are true and correct.

____________________

Subscribed and sworn to before me
this 26 day of July, 2007
Notary Public

KAREN J SORCE
Notary Public, State of New York
No. 01SO5037146
Qualified in Ontario County
Commission Expires December 19, 2010

COPY



In the Matter of:

```
- - - - - - - - - - - - - - - - - X
ALPHA I, L.P., by and through     )
ROBERT SANDS, a notice partner,   )
     Plaintiff                    )Case No. 06-407T
     -vs-                         )
THE UNITED STATES,                )
     Defendant                    )
- - - - - - - - - - - - - - - - - X
```

Errata sheet for the Deposition of RICHARD SANDS taken on Tuesday, June 12, 2007.

| PAGE | LINE | REMARKS |
|---|---|---|
| 8 | 7 | "legation" should be "litigation" |
| 69 | 4 | "as a unrecognizable name to entity" should be "as a unrecognizable named entity" |
| 78 | 1 | "it" should be "is" |
| 99 | 8 | "Sax" should be "Sachs" |
| 100 | 2, 9, 23, 25 | "Nope" should be "No" |
| 54 | 24 | "yep" should be "yes" |
| 89 | 3 | "yep" should be "yes" |
| 101 | 14 | "yep" should be "yes" |
| 111 | 2 | "yep" should be "yes" |

ORIGINAL



IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-407T

(into which have been consolidated Nos. 06-408T, 06-409T, 06-410T, 06-411T, 06-810T, 06-811T)

\- - - - - - - - - - - - - - - - - X

ALPHA I, L.P., by and through )
ROBERT SANDS, a notice partner, )
Plaintiff )Case No. 06-407T
-vs- )
THE UNITED STATES, )
Defendant )

\- - - - - - - - - - - - - - - - - X

Deposition of ROBERT SANDS taken pursuant to notice at Constellation Brands, 370 Woodcliff Drive, Suite 300, Fairport, New York on Wednesday, June 13, 2007 commencing at 9:30 a.m.

Reported by:
COMPUTER REPORTING SERVICE
Amy M. Condon, CSR, RPR
270 Reynolds Arcade Building
16 East Main Street
Rochester, New York 14614 (585) 325-3170

PENGAD-Bayonne, N. J.
GOVERNMENT EXHIBIT
19

APPEARANCES:

SUTHERLAND, ASBILL & BRENNAN, LLP
By: KENT L. JONES, Esq.
JULIE BOWLING, Esq.
1275 Pennsylvania Avenue, N.W.
Washington, D.C., 20004
Attorneys for plaintiff.

U.S. DEPARTMENT OF JUSTICE
By: THOMAS M. HERRIN, Esq.
MICHELLE C. JOHNS, Esq.
717 North Harwood Street, Suite 400
Dallas, Texas 75201
Attorneys for defendant.

name is - Stalling, and Freddy Robinson.

Q. There are no Sands family members that are trustees?

A. No.

Q. Who is James Lock?

A. He's -- what do you mean who is he?

Q. Help us out here.

A. What do you want to know?

Q. Is he an attorney of yours, is he an employee, a friend? How is he associated --

A. He is an attorney at Nixon Peabody.

Q. Is that a Rochester firm?

A. It's a national firm.

Q. Do they have a Rochester office?

A. Yes.

Q. Is he in the Rochester office?

A. Yes.

Q. And how about Wes Stalling?

A. He's an accountant at Bernard Robinson and Company.

Q. Now, shortly after the Educational and Health Support Fund was named as the trustee before the CRUTS were terminated, do you recall the circumstances of it being terminated?

COPY



WITNESS CERTIFICATE

STATE OF NEW YORK )
COUNTY OF MONROE )

I, ROBERT SANDS, do hereby certify that I have read the transcript of my testimony as taken under oath on Wednesday, June 13, 2007 and that said transcript is a true, complete and correct record of what was asked, answered and said during said deposition, and that the answers on record therein, and as may be modified in conformity with the attached errata sheet, are true and correct.

[signature]

Subscribed and sworn to before me

this 21st day of July, 2007

Notary Public

[signature]

KAREN J SORCE
Notary Public, State of New York
No. 01S05037146
Qualified in Ontario County
Commission Expires December 19, 2010

COPY

In the Matter of:

| | |
|---|---|
| ALPHA I, L.P., by and through ROBERT SANDS, a notice partner, Plaintiff -vs- THE UNITED STATES, Defendant | Case No. 06-407T |

Errata sheet for the Deposition of ROBERT SANDS taken on Wednesday, June 13, 2007.

| PAGE | LINE | REMARKS |
|---|---|---|


Cultivate.
2008 Annual Report
GOVERNMENT
EXHIBIT
20
PENGAD-Bayonne, N. J.
Constellation

# Directors and Executive Officers

## Directors

**Richard Sands**
Chairman of the Board,
Constellation Brands, Inc.

**Robert Sands**
President and Chief Executive Officer,
Constellation Brands, Inc.

**Barry A. Fromberg**[1]
Retired from Dean Foods Company

**Jeananne K. Hauswald**[2]
Managing Partner, Solo Management Group, LLC;
Retired from The Seagram Company Ltd.

**James A. Locke III**[3]
Senior Counsel to the law firm of Nixon Peabody LLP

**Thomas C. McDermott**[2,3]
Chairman of GPM Associates, LLP

**Peter M. Perez**[2]
Executive Vice President, Human Resources,
ConAgra Foods, Inc.

**Paul L. Smith**[1,3]
Retired from Eastman Kodak Company

**Peter H. Soderberg**[2]
President and Chief Executive Officer,
Hill-Rom Holdings, Inc

**Mark Zupan**[1]
Dean, William E. Simon Graduate School of Business
Administration, University of Rochester

## Executive Officers

**Richard Sands**
Chairman of the Board,
Constellation Brands, Inc

**Robert Sands**
President and Chief Executive Officer,
Constellation Brands, Inc

**F. Paul Hetterich**
Executive Vice President,
Business Development and Corporate Strategy,
Constellation Brands, Inc.

**Thomas J. Mullin**
Executive Vice President and General Counsel,
Constellation Brands, Inc.

**Robert Ryder**
Executive Vice President and Chief Financial Officer,
Constellation Brands, Inc.

**W. Keith Wilson**
Executive Vice President and Chief Administrative Officer,
Constellation Brands, Inc.

**Alexander L. Berk***
Chief Executive Officer, Constellation Beers and Spirits

**Jose F. Fernandez****
Chief Executive Officer, Constellation Wines North America

**Jon Moramarco****
Chief Executive Officer, Constellation International

[1] Member of Audit Committee
[2] Member of Human Resources Committee
[3] Member of Corporate Governance Committee

* Mr. Berk is employed by Barton Incorporated

** Messrs. Fernandez and Moramarco are employed by Constellation Brands, Inc.



APP-A-000241

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-407 T
(into which have been consolidated Nos. 06-408 T,
06-409 T,06-410 T,06-411 T,06-810 T,06-811 T)
Judge Emily C. Hewitt

| | | |
|---|---|---|
| ALPHA I, L.P., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-407 T |
| BETA PARTNERS, L.L.C., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-408 T |
| R, R, M & C PARTNERS, L.L.C., BY AND THROUGH R, R, M & C GROUP, L.P., A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-409 T |

AO 1729535 1

GOVERNMENT EXHIBIT 21

PENGAD-Bayonne, N. J.

| | | |
|---|---|---|
| R, R, M & C GROUP, L.P., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-410 T |
| CWC PARTNERSHIP I, BY AND THROUGH TRUST FBO ZACHARY STERN U/A FIFTH G. ANDREW STERN AND MARILYN SANDS, TRUSTEES, A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-411 T |
| MICKEY MANAGEMENT, L.P., BY AND THROUGH MARILYN SANDS, A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-810 T |

| | | |
|---|---|---|
| M, L, R & R, BY AND THROUGH RICHARD E. SANDS, TAX MATTERS PARTNER, | ) | |
| Plaintiff, | ) | |
| v. | ) | 06-811 T |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**PLAINTIFFS' RESPONSES TO UNITED STATES' FIRST SET OF INTERROGATORIES**

**I. General Objections**

1. Plaintiffs object to each request to the extent that it seeks information that is not relevant to the subject matter of the pending action or to the claim or defense of any party or that is not admissible as evidence (or calculated to lead to the discovery of admissible evidence).

2. Plaintiffs object to these requests to the extent they purport to require plaintiffs to respond on behalf of other persons, or to provide information that is not in their possession, custody, or control.

3. Plaintiffs do not concede that any of the information or documents they will produce are or will be admissible evidence at trial or at any evidentiary hearing. Further, plaintiffs do not waive any objection, whether or not asserted herein, to the use of any such documents at trial.

4. Plaintiffs object to each and every discovery request to the extent the requests are unreasonably cumulative or duplicative or request documents or information that are equally

available to defendant, and the burden on defendant to obtain the requested information or documents is no greater than the burden on plaintiffs.

5. Plaintiffs object to each and every discovery request to the extent that it is ambiguous and/or unduly burdensome.

6. Plaintiffs object to each and every discovery request to the extent that it is not appropriately limited by reference to a relevant time period, scope, or area.

7. Plaintiffs object to these requests to the extent that they call for the premature identification of documents that plaintiffs may offer at trial before the parties' respective exhibit lists are due. Plaintiffs are still reviewing documents and are likely to learn of additional responsive documents. Thus, plaintiffs reserve the right to supplement their responses to defendant's discovery requests.

8. In the event of a discovery dispute, plaintiffs' legal counsel is prepared to confer with defendant's counsel to discuss, and if possible, resolve any disputes that may arise concerning the meaning, scope, and relevance of these requests for production or the adequacy of plaintiffs' responses.

**Interrogatory No. 1.**

Identify all payments made by plaintiffs and/or each of their partners to The Heritage Organization, L.L.C. ("Heritage") for services rendered by Heritage to plaintiffs and/or each of their partners in years 2000 through 2004. With respect to each payment identified, please describe the services rendered by Heritage that relate to the payment. Please identify all documents that show the source(s) of the funds for the payments identified.

**Response:**.

Plaintiffs object to this request to the extent it requests information for years outside of 2001 and 2002, the years in which the relevant events in these consolidated cases occurred. The request is overly broad in this respect. Notwithstanding the foregoing objection, plaintiffs have not located any responsive documents or information for years outside of 2001 or 2002.

Plaintiffs previously provided documents in the files of plaintiffs or their partners relating to payments to Heritage. Those documents, included in plaintiffs' Rule 26(a) initial disclosures include documents labeled SANDS2327, SANDS2340 – SANDS2343, SANDS2346 - SANDS2348, SANDS2357, SANDS2679, and SANDS4493 – SANDS4512. Plaintiffs have determined that the amounts indicated below were invoiced by Heritage.

| INVOICE DATE | PAYOR | AMOUNT |
|---|---|---|
| 11/05/2001 | Robert Sands | $1,131,160.94 |
| 11/05/2001 | Marilyn Sands | $1,129,648.44 |
| 11/05/2001 | CWC Partnership I | $ 649,580.94 |
| 11/05/2001 | Richard Sands | $1,131,160.94 |
| 10/15/2002 | Andrew Stern | $ 52,237.00 |
| 10/15/2002 | Marilyn Sands | $1,971,496.00 |
| 10/15/2002 | CWC Partnership I | $ 85,663.00 |
| 10/15/2002 | Robert Sands | $ 327,875.00 |

| | | |
|---|---|---|
| 10/15/2002 | Richard Sands | $ 289,443.00 |
| 10/15/2002 | Marvin Sands Trust | $1,738,802.00 |

The following payments were made in 2001 and 2002:

| Payor | Amount Paid in 2001 | Amount Paid in 2002 | Total |
|---|---|---|---|
| Marvin Sands Master Trust | 0 | $1,738,801.98 | $1,738,801.98 |
| Richard Sands | $565,580.47 | $ 289,443.30 | $ 855,023.77 |
| Robert Sands | $565,580.47 | $ 327,875.40 | $ 893,455.87 |
| CWC Partnership I | $324,790.47 | $ 185,662.50 | $ 510,452.97 |
| Andrew Stern | 0 | $ 52,237.20 | $ 52,237.20 |
| Marilyn Sands | $564,824.22 | $1,971,495.62 | $2,536,319.83 |

The payments described above were for the following services provided by Heritage: 1) advice regarding financial planning and 2) implementation of a financial plan to meet the goals of the Sands family members. Heritage provided financial planning and investment advice to the Sands family after analyzing the family's financial goals. This planning and advice included discussing and providing information about the following topics: profit maximization, estate planning, philanthropy, diversification, and tax minimization.

Heritage's provision of services relating to implementation of a financial plan included coordinating and monitoring investments of the Sands family members and gathering and coordinating execution of any necessary documentation. Heritage also provided documentation and information to the other advisors of the Sands family when requested.

The documents that plaintiffs have located reflecting the sources of the funds paid to Heritage include the following documents that were produced as part of plaintiffs' Rule 26(a) disclosures: SANDS2343, SANDS2348, SANDS2679, SANDS4493, SANDS4496, SANDS4499, and SANDS4502.

**Interrogatory No. 2.**

Identify all payments made by plaintiffs and/or each of their partners to Lewis, Rice & Fingerish ("Lewis Rice") for services rendered by Lewis Rice to plaintiffs and/or each of their partners in years 2000 through 2004. With respect to each payment identified, please describe the services rendered by Lewis Rice that relate to the payment. Please identify all documents that show the source(s) of the funds for the payments identified.

**Response:**

Plaintiffs object to this request to the extent it requests information for years outside of 2001 and 2002, the years in which the relevant events in these consolidated cases occurred. The request is overly broad in this respect. Notwithstanding the foregoing objection, plaintiffs have not located any responsive documents or information for years outside of 2001 or 2002.

Plaintiffs previously provided documents in the files of plaintiffs or their partners relating to payments to Lewis Rice. Those documents, included in plaintiffs Rule 26(a) initial disclosures include documents labeled SANDS2346, SANDS2357, SANDS4454 – SANDS4459, SANDS4471 - SANDS4479, and SANDS4482 - SANDS4487. Plaintiffs have located the following additional documents relating to payments to Lewis Rice in files from Lewis Rice: 1) Invoices and accompanying letters dated January 11, 2002; 2) Invoices and accompanying letters dated June 20, 2002; 3) Engagement letters dated August 20, 2001; and 4) Engagement letters dated November 14, 2001. Those documents are labeled SANDS11493 - SANDS11633.

Plaintiffs have determined that the following amounts were paid to Lewis Rice on August 24, 2001:

| PAYOR | AMOUNT |
|---|---|
| Robert Sands | $22,500.00 |
| Marilyn Sands | $22,500.00 |
| Abigail Trust | $10,000.00 |
| Zachary Trust | $10,000.00 |
| Richard Sands | $22,500.00 |

Plaintiffs have determined that the amounts indicated below were invoiced by Lewis Rice and paid by the party billed.

| INVOICE DATE | PAYOR | AMOUNT |
|---|---|---|
| 1/11/2002 | Robert Sands | $22,500.00 |
| 1/11/2002 | Marilyn Sands | $22,500.00 |
| 1/11/2002 | Abigail Trust | $10,000.00 |
| 1/11/2002 | Zachary Trust | $10,000.00 |
| 1/11/2002 | Richard Sands | $22,500.00 |
| 6/20/2002 | Andrew Stern | $ 5,000.00 |
| 6/20/2002 | Marilyn Sands | $ 5,000.00 |

| | | |
|---|---|---|
| 6/20/2002 | Abigail Trust | $ 5,000.00 |
| 6/20/2002 | Zachary Trust | $ 5,000.00 |
| 6/20/2002 | Robert Sands | $ 5,000.00 |
| 6/20/2002 | Richard Sands | $ 5,000.00 |
| 6/20/2002 | Marvin Sands Trust | $95,000.00 |

The payments described above were for the following services provided by Lewis Rice: 1) provision of legal advice regarding the income tax consequences of the implementation of a financial plan to meet the goals of the Sands family members, including the preparation of tax opinion letters and related documents and the related due diligence; 2) assistance in implementing the financial plan including preparing documents, drafting and preparing partnership agreements or other organizational documents, and filing documents with the appropriate state or federal agencies. These services are also described in the engagement letters entered between Lewis Rice and the partners of plaintiffs (SANDS11530 – SANDS11633).

The documents that plaintiffs have indicating the sources of the funds paid to Lewis Rice include the following documents produced as part of plaintiffs' Rule 26(a) disclosures: SANDS2346, SANDS2357, SANDS4454 – SANDS4459, SANDS4471, SANDS4473, SANDS4475, SANDS4477, SANDS4479, SANDS4482 – SANDS4483, SANDS4485 – SANDS4487.

**Interrogatory No. 3.**

Identify all payments made by plaintiffs and/or each of their partners to Milbank, Tweed, Hadley & McCloy ("Milbank") for services rendered by Milbank to plaintiffs and/or each of their partners in years 2000 through 2004. With respect to each payment identified, please describe the services rendered by Milbank that relate to the payment. Please identify all documents that show the source(s) of the funds for the payments identified.

**Response:**

Plaintiffs object to this request to the extent it requests information for years outside of 2001 and 2002, the years in which the relevant events in these consolidated cases occurred. The request is overly broad in this respect. Plaintiffs also object to this request to the extent it requests privileged information. Plaintiffs have not waived privilege as to any advice or communications between plaintiffs or their partners and Milbank as they relate to Milbank's representation of plaintiffs or their partners in matters not related to the instant litigation. Providing a description of the services rendered relating to payments to Milbank for services which are not related to the events before the court could result in a waiver of privilege as to those matters. Based on these objections, plaintiffs have withheld the following documents:

1. Invoices to Robert Sands dated May 15, 2000 (2 pages)
2. Invoice to Robert Sands dated May 26, 2000
3. Invoice to Robert Sands dated March 17, 2003
4. Invoice to Robert Sands dated November 18, 2003
5. Invoice to Robert Sands dated December 9, 2004

Neither plaintiffs nor their partners made any direct payments to Milbank in 2001 and 2002 for work relating to the transactions involved in this case, though Milbank provided

services to plaintiffs and their partners relating to the transactions involved in this case. Milbank provided the following services to plaintiffs or their partners in 2001 and 2002: 1) providing legal advice relating to the financial plan to meet the goals of the Sands family members; 2) forming charitable remainder trusts and execution of related documents; 3) preparing tax opinion letters regarding the income tax consequences of the purchase of a remainder interest held by the Educational and Health Support Fund; 4) drafting partnership agreements and formation documents for various entities; and 5) preparing and filing documents with the appropriate state and federal agencies.

**Interrogatory No. 4**

Identify all payments made by plaintiffs and/or each of their partners to Goerig & Associates ("Goerig") for services rendered by Goerig to plaintiffs and/or each of their partners in years 2000 through 2004. With respect to each payment identified, please describe the services rendered by Goerig that relate to the payment. Please identify all documents that show the source(s) of the funds for the payments identified.

**Response:**

Plaintiffs object to this request to the extent it requests information for years outside of 2001 and 2002, the years in which the relevant events in these consolidated cases occurred. The request is overly broad in this respect. Notwithstanding the foregoing objection, plaintiffs have not identified any responsive documents or information for years outside of 2001 or 2002.

Plaintiffs also object to this request on grounds of relevance. The requested information relates to valuation of partnership interests in conjunction with a gift of the partnership interests held by the original limited partners of R, R, M & C Group, L.P. to certain CRUTs. The transfers of the partnership interests and information relating to such transfers are not relevant to this proceeding as they are not partnership items. *See* Document No. 21, Plaintiffs' Motion to Substitute Certain Parties and to Dismiss Certain Causes of Action for Lack of Jurisdiction. Notwithstanding the foregoing objection, plaintiffs have provided the requested information below.

Plaintiffs previously provided documents in the files of plaintiffs or their partners relating to payments to Goerig & Associates. Those documents, included in plaintiffs Rule 26(a) initial disclosures include documents labeled SANDS2634 – SANDS2636. Plaintiffs have determined that the amounts indicated below were invoiced by Goerig:

| INVOICE DATE | PAYOR | AMOUNT |
|---|---|---|
| 2/7/2002 | R, R, M & C Group, L.P. | $10,026.80 |
| 5/14/2002 | Marvin Sands Master Trust | $ 3,515.54 |

The first payment described above was for the following services provided by Goerig: 1) preparation of a partnership appraisal for gifting purposes and 2) various administrative costs such as copying and courier services;. The second payment described above was for the following services provided by Goerig: 1) preparation of an appraisal update and 2) various administrative costs such as copying and courier services.

Documents indicating the source of the funds used to pay Goerig & Associates include the invoices (SANDS2634 – SANDS 2636), the R, R, M & C Group, L.P. Merrill Lynch account statement labeled SANDS11634, and the Marvin Sands Master Trust Merrill Lynch account statement labeled SANDS11635.

The February 7, 2002 invoice payment was made on March 4, 2002 as shown by the R, R, M & C Group, L.P. Merrill Lynch account statement.

The May 14, 2002 invoice described above indicates that payment of $3,515.54 was made by Check No. 220 on April 22, 2002. This amount was paid from the Marvin Sands Master Trust account on March 19, 2002 as shown by the Marvin Sands Master Trust Merrill Lynch account statement labeled SANDS11635.

**Interrogatory No. 5**

Identify all payments made by plaintiffs and/or each of their partners to purchase the remainder interests in the CRUTs identified in paragraph 7 of the R, R, M & C Partners, LLC Complaint (Case No. 06-409T). With respect to each payment identified, please also identify the parties to the transaction, the amount(s) paid and state how the purchase price was determined. Please identify all documents that show the transfer of the funds for the payments identified.

**Response:**

Plaintiffs object to this request as it requests information that is not relevant to this partnership proceeding. The payments for which you have requested information do not relate to partnership items. The transfers of the partnership interests and information relating to such transfers are not relevant to this proceeding as they are not partnership items. *See* Document No. 21, Plaintiffs' Motion to Substitute Certain Parties and to Dismiss Certain Causes of Action for Lack of Jurisdiction. Notwithstanding the foregoing objections, plaintiffs have responded to your request below.

Plaintiffs previously provided documents in the files of plaintiffs or their partners relating to payments by Robert Sands, Marilyn Sands, Richard Sands, and CWC Partnership I to the Educational and Health Support Fund to purchase the remainder interest it held in the Robert Sands Charitable Remainder Unitrust 2001 ("Robert Sands CRUT"), the Marilyn Sands Charitable Remainder Unitrust 2001 ("Marilyn Sands CRUT"), the Richard Sands Charitable Remainder Unitrust 2001 ("Richard Sands CRUT"), and the CWC Partnership I Charitable Remainder Unitrust 2001 ("CWC CRUT"). Those documents, included in plaintiffs Rule 26(a) initial disclosures, include documents labeled SANDS2473 – SANDS2633, SANDS2668,

SANDS2685, SANDS2688 – SANDS2689, and SANDS10966 – SANDS10974. The payments and parties to such payments are described in the table below:

| Date | Payor | Recipient | Amount Paid | For Remainder Interest In |
|---|---|---|---|---|
| 2/27/2002 | Marilyn Sands | The Educational and Health Support Fund | $550,074.56 | Marilyn Sands CRUT |
| 2/27/2002 | Robert Sands | The Educational and Health Support Fund | $550,074.56 | Robert Sands CRUT |
| 2/27/2002 | CWC Partnership I | The Educational and Health Support Fund | $550,074.56 | CWC CRUT |
| 2/27/2002 | Richard Sands | The Educational and Health Support Fund | $550,074.56 | Richard Sands CRUT |

The purchase price described above was determined in accordance with Article I, ¶ 1.02 of the Purchase and Sale Agreement entered by the Educational and Health Support Fund and the respective payors listed above. *See, e.g* , SANDS2476. Paragraph 2.1 provides as follows: "The aggregate purchase price for the Interest is the fair market value of the Interest as determined by the Purchaser and the Seller taking into account the valuation by an independent appraiser selected by the Purchaser and Seller (the "Purchase Price"), as evidenced in a written instrument prepared by such appraiser . . ." The mechanics of this calculation are shown on SANDS2668.

The appraisal, updated appraisal letter, and the actuarial determinations relating to the calculation of the purchase price are included in plaintiffs' Rule 26(a) initial disclosures as follows: SANDS2703, SANDS6267 – SANDS6359, SANDS6820, SANDS8775 – SANDS8871, SANDS9077, SANDS6690 – SANDS6697, SANDS8922 – SANDS8923, SANDS8973 – SANDS8974, SANDS9024 – SANDS9025, and SANDS9075 – SANDS9076. Other documents

relating to calculation of the purchase price are SANDS2668, SANDS2685, and SANDS2688 – SANDS2689.

Dated: July 30, 2007

Respectfully submitted,

Julie P. Bowling

Julie P. Bowling
Sutherland Asbill & Brennan LLP
999 Peachtree Street, N.E.
Atlanta, Georgia 30309
(404) 853-8023
(404) 853-8806 (fax)

Of Counsel:

N. Jerold Cohen
Thomas A. Cullinan
Joseph M. DePew
Sutherland Asbill & Brennan LLP
999 Peachtree Street, N.E.
Atlanta, Georgia 30309
(404) 853-8000
(404) 853-8806 (fax)

Lewis S. Wiener
Sutherland, Asbill & Brennan LLP
1275 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel.: (202) 383-0140
Fax: (202) 637-3593
Email: lewis.wiener@sablaw.com

Kent L. Jones
Sutherland, Asbill & Brennan LLP
1275 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel.: (202) 383-0732
Fax: (202) 637-3593

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED that service of the foregoing Plaintiffs' Responses to United States of America's First Set of Interrogatories to Plaintiffs has been made on July 30, 2007, by mailing a copy thereof to:

Thomas M. Herrin
Attorney, Tax Division
Department of Justice
717 N. Harwood, Suite 400
Dallas, TX 75201

Julie P. Bowling

Julie P. Bowling
Sutherland Asbill & Brennan LLP
999 Peachtree Street, N.E.
Atlanta, Georgia 30309
(404) 853-8023
(404) 853-8806 (fax)

Of Counsel:
N. Jerold Cohen
Thomas A. Cullinan
Joseph M. DePew
Sutherland Asbill & Brennan LLP
999 Peachtree Street, N.E.
Atlanta, Georgia 30309
(404) 853-8000
(404) 853-8806 (fax)

Lewis S. Wiener
Sutherland, Asbill & Brennan LLP
1275 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel.: (202) 383-0140
Fax: (202) 637-3593
Email: lewis.wiener@sablaw.com

Kent L. Jones

Sutherland, Asbill & Brennan LLP
1275 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel.: (202) 383-0732
Fax: (202) 637-3593
Attorneys for Plaintiffs

CWCI 09/16/2002 10 35 AM

Form **1065**

Department of the Treasury
Internal Revenue Service

# U.S. Return of Partnership Income

For calendar year 2001, or tax year beginning ........, and ending ........

▶ See separate instructions.

OMB No 1545-0099

**2001**

| | | | |
|---|---|---|---|
| A Principal business activity: Investments | Use the IRS label. Otherwise, print or type. | Name of partnership: CWC Partnership I c/o Constellation Brands, Inc. | D Employer identification number: 16-1472626 |
| B Principal product or service: Investments | | Number, street, and room or suite no If a P.O box, see page 13 of the instructions: 300 Willowbrook Office Park | E Date business started: 1/16/95 |
| C Business code number: 523900 | | City or town, state, and ZIP code: Fairport NY 14450 | F Total assets (see page 14 of the instructions): $ 61,113,057 |

G Check applicable boxes: (1) ☐ Initial return (2) ☐ Final return (3) ☐ Name change (4) ☐ Address change (5) ☐ Amended return

H Check accounting method: (1) ☒ Cash (2) ☐ Accrual (3) ☐ Other (specify) ▶

I Number of Schedules K-1. Attach one for each person who was a partner at any time during the tax year ▶ 6

**Caution:** Include only trade or business income and expenses on lines 1a through 22 below See the instructions for more information.

| Section | Line | Description | | | Line | Amount |
|---|---|---|---|---|---|---|
| Income | 1a | Gross receipts or sales | 1a | | | |
| | b | Less returns and allowances | 1b | | 1c | |
| | 2 | Cost of goods sold (Schedule A, line 8) | | | 2 | |
| | 3 | Gross profit. Subtract line 2 from line 1c | | | 3 | |
| | 4 | Ordinary inc. (loss) from other partnerships, estates, & trusts (att. sch.) See Stmt 1 | | | 4 | 81,016 |
| | 5 | Net farm profit (loss) (attach Schedule F (Form 1040)) | | | 5 | |
| | 6 | Net gain (loss) from Form 4797, Part II, line 18 | | | 6 | |
| | 7 | Other income (loss) (attach schedule) | | | 7 | |
| | 8 | **Total income (loss).** Combine lines 3 through 7 | | | 8 | 81,016 |
| Deductions (see pg. 15 of the instructions for limitations) | 9 | Salaries and wages (other than to partners) (less employment credits) | | | 9 | |
| | 10 | Guaranteed payments to partners | | | 10 | |
| | 11 | Repairs and maintenance | | | 11 | |
| | 12 | Bad debts | | | 12 | |
| | 13 | Rent | | | 13 | |
| | 14 | Taxes and licenses | | | 14 | |
| | 15 | Interest | | | 15 | |
| | 16a | Depreciation (if required, attach Form 4562) | 16a | | | |
| | b | Less depreciation reported on Schedule A and elsewhere on return | 16b | | 16c | |
| | 17 | Depletion (Do not deduct oil and gas depletion.) | | | 17 | |
| | 18 | Retirement plans, etc. | | | 18 | |
| | 19 | Employee benefit programs | | | 19 | |
| | 20 | Other deductions (attach schedule) | | | 20 | |
| | 21 | **Total deductions.** Add the amounts shown in the far right column for lines 9 through 20 | | | 21 | |
| | 22 | **Ordinary income (loss)** from trade or business activities. Subtract line 21 from line 8 | | | 22 | 81,016 |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than general partner or limited liability company member) is based on all information of which preparer has any knowledge.

▶ Signature of general partner or limited liability company member ▶ Date

May the IRS discuss this return with the preparer shown below (see instructions)? ☐ Yes ☐ No

**Preparer's Use Only**

| | | | |
|---|---|---|---|
| Preparer's signature | Date 9/16/02 | Check if self-employed ▶ ☐ | Preparer's SSN or PTIN P00174761 |
| Firm's name (or yours if self-employed), address, and ZIP code ▶ | Bernard Robinson & Company, L.L.P. PO Box 19608 Greensboro, NC 27419-9608 | | EIN ▶ 56-0571159 Phone no 336-294-4494 |

For Paperwork Reduction Act Notice, see separate instructions.
DAA

SANDS0101

Form 1065 (2001)

PENGAD-Bayonne, N.J. **GOVERNMENT EXHIBIT** 22

CWCI 09/16/2002 10:35 AM

Form 1065 (2001) c/o Constellation Brands, Inc. 16-1472626 Page 4

## Analysis of Net Income (Loss)

1 Net income (loss). Combine Schedule K, lines 1 through 7 in column (b). From the result, subtract the sum of Schedule K, lines 8 through 11, 14a, 17g, and 18b ... 1 | -1,577,228

| 2 Analysis by partner type: | (i) Corporate | (ii) Individual (active) | (iii) Individual (passive) | (iv) Partnership | (v) Exempt organization | (vi) Nominee/Other |
|---|---|---|---|---|---|---|
| a General partners | | -15,771 | | | | -1,561,457 |
| b Limited partners | | | | | | |

## Schedule L Balance Sheets per Books (Not required if Question 5 on Schedule B is answered "Yes.")

| Assets | Beginning of tax year (a) | (b) | End of tax year (c) | (d) |
|---|---|---|---|---|
| 1 Cash | | | | -1 |
| 2a Trade notes and accounts receivable | | | | |
| b Less allowance for bad debts | | | | |
| 3 Inventories | | | | |
| 4 U.S. government obligations | | | | |
| 5 Tax-exempt securities | | | | |
| 6 Other current assets (attach schedule) See Stmt 12 | | | | 161,400 |
| 7 Mortgage and real estate loans | | | | |
| 8 Other investments (attach schedule) See Stmt 13 | | 11,801,980 | | 60,949,151 |
| 9a Buildings and other depreciable assets | | | | |
| b Less accumulated depreciation | | | | |
| 10a Depletable assets | | | | |
| b Less accumulated depletion | | | | |
| 11 Land (net of any amortization) | | | | |
| 12a Intangible assets (amortizable only) | 4,078 | | 4,078 | |
| b Less accumulated amortization | 551 | 3,527 | 1,571 | 2,507 |
| 13 Other assets (attach schedule) | | | | |
| 14 Total assets | | 11,805,507 | | 61,113,057 |
| **Liabilities and Capital** | | | | |
| 15 Accounts payable | | | | |
| 16 Mortgages, notes, bonds payable in less than 1 year | | 5,250,000 | | 5,475,000 |
| 17 Other current liabilities (attach schedule) See Stmt 14 | | 414,353 | | 162,705 |
| 18 All nonrecourse loans | | | | |
| 19 Mortgages, notes, bonds payable in 1 year or more | | | | |
| 20 Other liabilities (attach schedule) | | | | |
| 21 Partners' capital accounts | | 6,141,154 | | 55,475,352 |
| 22 Total liabilities and capital | | 11,805,507 | | 61,113,057 |

## Schedule M-1 Reconciliation of Income (Loss) per Books With Income (Loss) per Return (Not required if Question 5 on Schedule B is answered "Yes.")

| | | | |
|---|---|---|---|
| 1 Net income (loss) per books | -1,577,271 | 6 Income recorded on books this year not included on Schedule K, lines 1 through 7 (itemize): a Tax-exempt interest $ 460 | 460 |
| 2 Income included on Sch. K, ln. 1 through 4, 6, and 7, not recorded on books this year (itemize): | | | |
| 3 Guaranteed payments (other than health insurance) | | 7 Deductions included on Schedule K, lines 1 through 11, 14a, 17g, and 18b, not charged against book income this year (itemize): a Depreciation $ | |
| 4 Expenses recorded on books this year not included on Schedule K, lines 1 through 11, 14a, 17g, and 18b (itemize): a Depreciation $ b Travel and entertainment $ See Stmt 15 503 | 503 | 8 Add lines 6 and 7 | 460 |
| 5 Add lines 1 through 4 | -1,576,768 | 9 Income (loss) (Analysis of Net Income (Loss), line 1). Subtract line 8 from line 5 | -1,577,228 |

## Schedule M-2 Analysis of Partners' Capital Accounts (Not required if Question 5 on Schedule B is answered "Yes.")

| | | | |
|---|---|---|---|
| 1 Balance at beginning of year | 6,141,154 | 6 Distributions: a Cash | 734,145 |
| 2 Capital contributed during year | 21,375,058 | b Property | |
| 3 Net income (loss) per books | -1,577,271 | 7 Other decreases (itemize): | |
| 4 Other increases (itemize): See Stmt 16 30,270,556 | 30,270,556 | 8 Add lines 6 and 7 | 734,145 |
| 5 Add lines 1 through 4 | 56,209,497 | 9 Balance at end of year. Subtract ln. 8 from ln. 5 | 55,475,352 |

DAA Form 1065 (2001)

SANDS0104