IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-407 T
(into which have been consolidated Nos. 06-408 T,
06-409 T, 06-410 T, 06-411 T, 06-810 T, 06-811 T)
Judge Emily C. Hewitt
(E-Filed: August 4, 2008)

| | | |
|---|---|---|
| ALPHA I, L.P., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-407 T |
| BETA PARTNERS, L.L.C., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-408 T |
| R, R, M & C PARTNERS, L.L.C., BY AND THROUGH R, R, M & C GROUP, L.P., A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-409 T |

| | | |
|---|---|---|
| R, R, M & C GROUP, L.P., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-410 T |
| CWC PARTNERSHIP I, BY AND THROUGH TRUST FBO ZACHARY STERN U/A FIFTH G. ANDREW STERN AND MARILYN SANDS, TRUSTEES, A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-411 T |
| MICKEY MANAGEMENT, L.P., BY AND THROUGH MARILYN SANDS, A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-810 T |

| | | |
|---|---|---|
| M, L, R & R, BY AND THROUGH RICHARD E. SANDS, TAX MATTERS PARTNER, | ) | |
| Plaintiff, | ) | |
| v. | ) | 06-811 T |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**UNITED STATES' RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

PLAINTIFFS GROSSLY MISSTATED THE BASIS OF THE CONSTELLATION STOCK AND THE 40% PENALTY ASSESSED UNDER 26 U.S.C. §6662 SHOULD BE SUSTAINED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

I. The Underpayment of tax by plaintiffs is "attributable to" a gross or substantial valuation misstatement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

(a) Plaintiffs' § 465 concession is meaningless. . . . . . . . . . . . . . . . . . . . . . . . 26

(b) This Court must determine partnership items. . . . . . . . . . . . . . . . . . . . . . . 26

(c) The legal authority cited by plaintiffs has been rejected by this Court . . 26

II. A partnership return is a return of tax . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Atlantic Mutual Insurance Co. v. C.I.R.*, 523 U.S. 382 (1998) .................................... 15

*Cottage Savings Association v. Commissioner*, 499 U.S. 554 (1991) ........................... 15

*Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469 (1992) .................................. 15

*Fribourg Nav. Co. v. Commissioner*, 383 U.S. 272 (1966) ......................................... 16

*Gainer v. Commissioner*, 893 F.2d 225 (9th Cir. 1990) ................................................ 10

*Gilman v. Commissioner*, 933 F.2d 143 (2nd Cir. 1991) .............................................. 12

*Hambrose Leasing Ltd. Partnership v. Commissioner*, 99 T.C. 298(1992) .................... 7

*Harlan v Commissioner*, 116 T.C. 31 (2001) ........................................................ 13, 14

*Heasley v. Commissioner*, 902 F.2d 380 (5th Cir. 1990) .............................................. 11

*Helvering v. Winmill*, 305 U.S. 79 (1938) .................................................................. 16

*Illes v. Commissioner*, 982 F.2d 163 (6th Cir. 1992) .............................................. 10, 11

*Jade Trading, LLC v. United States*, 80 Fed. Cl. 11 (2007) ...................................... 4, 9, 11, 13

*Klamath Strategic Investment Fund, LLC v. United States*, 472 F. Supp. 2d 885 (E.D. Tex. 2007) ......................................................................... 11

*Long Term Capital Holdings v. U.S.*, 330 F. Supp. 2d 122 (D.Conn 2004) ............... 9, 13

*Massengill v. Commissioner*, 876 F.2d 616 (8th Cir. 1989) .................................. 10, 11

*Maxwell v. Commissioner*, 87 T.C. 783 (1986) ............................................................ 8

*McCarthy v. Bronson*, 500 U.S. 136 (1991) ................................................................ 15

*Merino v. Commissioner*, 196 F.3d 147 (3d Cir. 1999) .......................................... 10, 11

*Nussdorf v. Commissioner*, 129 T.C. 30 (2007) ........................................................ 8

*Olson v. U.S.*, 172 F.3d 1311 (Fed. Cir. 1999) ........................................................ 13, 14

*Oren v. Commissioner*, 357 F.3d 854 (8th Cir. 2004) ..................................................... 6

*RJT Investments X v. Commissioner*, 491 F.3d 732 (8th Cir. 2007) .......................... 8, 17

*River City Ranches #1 Ltd. v. Commissioner*, 401 F.3d 1136 (9th Cir. 2005) ................. 9

*Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997) .......................................................... 15

*Russian Recovery Fund, Ltd. v. United States*, 81 Fed. Cl. 793 (2008) ........................... 7

*Santa Monica Pictures, LLC v. Commissioner*, 89 T.C.M. 1157 (2005) .................... 9,10 12,13

*Todd v. Commissioner*, 862 F.2d 540 (5th Cir. 1988) ................................................ 10,11

*U.S. v. Correll*, 389 U.S. 299 (1967) ............................................................................ 16

*Zfass v. Commissioner*, 118 F.3d 184 (4th Cir. 1997) ............................................. 10, 11

**MISCELLANEOUS**

IRS Notice 2000-44, 2000-2 C.B. 255 .................................................................. 1

*IRS Chief Counsel Notice 2003-020*, 2003 WL 24016805 (June 25, 2003) ..................... 1

**DOCKETED CASES**

*Stobie Creek Investments, LLC v. United States*, Case No. 05-748T (Court of Federal Claims) ....................................................................... 4, 13

**FEDERAL STATUTES**

I.R.C. § 465(a)(1) ........................................................................................ 6

I.R.C. § 701 ............................................................................................ 13, 14, 16

I.R.C. §§ 701-777 ......................................................................................... 15

I.R.C. § 752 ............................................................................................... 2, 5 8,11

I.R.C. § 752(a) .......... 14

I.R.C. § 6031 .......... 13

I.R.C. § 6221 .......... 8, 16

I.R.C. § 6662 .......... 1,3

I.R.C. § 6226(f) .......... 8

I.R.C. § 6231(a)(3) .......... 8

I.R.C. §6662(e) .......... 3, 12 13,14

The Pension Protection Act of 2006, Pub. L. No. 109-280, 120 Stat. 780, § 1219 .......... 16

Treas. Reg. § 1.6662-2(c) .......... 3

Treas. Reg. § 1.6662-5(h) .......... 14, 15 16

Treas. Reg. § 1.701-2 .......... 8

Treas. Reg. § 1.702-1(c) .......... 15

Treas. Reg. § 1.752-6 .......... 8

Treas. Reg. § 301.6221-1T(c) .......... 9

Treas. Reg. § 301.6231(a)(3)-1 .......... 6, 8, 16

Treas. Reg. § 301.6231(a)(5)-1(c) .......... 6

Treas. Reg. § 301.7701-15(C) .......... 16

Treas. Reg. §301.7701-15(c)(1)(i) .......... 13

U.S. Troop Readiness, Veterans' Care, Katrina Recovery, and Iraq Accountability Appropriations Act 2007, Pub. L. No. 110-128, 121 Stat. 200, § 8246(a)(1)(A) .......... 16

**UNITED STATES' RESPONSE TO PLAINTIFFS'**
**MOTION FOR SUMMARY JUDGMENT**

The plaintiffs filed their Motion for Partial Summary Judgment seeking a determination from this Court that the 40% gross valuation misstatement penalty asserted by the United States is inapplicable to plaintiffs. Plaintiffs contend that (1) any underpayment of tax would not be "attributable to" a valuation misstatement, but instead is attributable to plaintiffs' concession that the United States' capital gains adjustments were correct under § 465(b)(1), or alternatively (2) any valuation misstatement would not be applicable because the overstatement would not be reported on a return of tax imposed by Chapter 1. As shown below, both of these suppositions are wrong and, because plaintiffs' underpayment of tax is attributable to a gross valuation misstatement, the 40% penalty assessed under 26 U.S.C. §6662 should be sustained.

**SUMMARY OF ARGUMENT**

These consolidated cases involve plaintiffs' use of Son of BOSS transactions, specifically, treasury short sales, for the purpose of inflating their basis in their Constellation Brands stock or other stock to eliminate capital gain income. In IRS Notice 2000-44, 2000-2 C.B. 255 ("Tax Avoidance using Artificially High Basis"), which was published on September 5, 2000, the IRS alerted taxpayers that the Son of BOSS scheme had been "listed" as an abusive tax shelter. 2000 WL 1138430; *see also* IRS Chief Counsel Notice 2003-020, 2003 WL 24016805 (June 25, 2003). The IRS Notice 2000-44 further warned taxpayers that,

> Appropriate penalties may be imposed on participants in these transactions or, as applicable, on persons who participate in the promotion or reporting of these transactions, including the accuracy-related penalty under § 6662 ....

Notwithstanding these warnings, the Sands Heirs in 2001, as a group, engaged in two Son of BOSS tax shelters promoted by The Heritage Organization, L.L.C. ("Heritage"), for the

purpose of eliminating taxes on built-in capital gains. Now they have the audacity to ask this Court to excuse them from penalties and find that their understatement of more than $65 million of capital gain was not attributable to their artificially inflating the basis of their stock by the amount of short sale proceeds but was instead attributable to their concession that they were not "at risk." This position is untenable.

The penalties are included in the FPAA and the Court must make legal determinations that are relevant to the imposition of these penalties. The United States has filed two motions for summary judgment that ask the Court to rule that, under § 752, plaintiffs were required to account for their obligation to close the short sale positions as a liability and adjust their basis in their partnership interests accordingly. In light of the case law and IRS rulings on the treatment of short sale obligations, plaintiffs should have conceded the capital gains adjustments on the § 752 ground. Instead plaintiffs decided to pursue a maneuver that would purport to concede certain adjustments on other grounds, so they could argue, contrary to the clear facts, that the understatement of income was attributable to something other than the artificial basis reported on the partnership returns that was passed through to the Sands Heirs.

Plaintiffs' § 465 concession seeks to avoid a judicial determination on FPAA adjustments which conclude that the obligation to close a short sale is a liability under 26 U.S.C. §752, requiring that their basis be adjusted. However, the § 465 adjustment in the FPAA does not make an adjustment to capital gain. As to § 465, this Court only has jurisdiction over the partnership item components which affect that determination at the partner level. Since there are not any partnership level determinations to be made with respect to § 465, a concession by the plaintiffs with respect to § 465 is meaningless.

The Code expressly provides that a valuation misstatement includes a misstatement of the "*adjusted basis* of any property claimed on any return of tax imposed by chapter 1." I.R.C. § 6662(e). Here, the underpayment of tax was directly and exclusively attributable to the overstatement of basis on the returns of Partners, Group and CWC. Application of the penalty is largely computational. Accordingly, the 40% penalty for a gross valuation misstatement applies at the partnership level (though it will be computed, assessed, and paid at the partner level). As shown below, courts have held that the statutory language of Section 6662(e) applies to misstatements of basis regardless of their underlying cause.

The Court must reject plaintiffs' contention that their underpayment of tax is not attributable to a valuation misstatement. Likewise, as shown below, plaintiffs' contention that a the partnership return is not a return of tax imposed by Chapter 1 should similarly be rejected as contrary to Treasury regulations and case law.

**PLAINTIFFS GROSSLY MISSTATED THE BASIS OF THE CONSTELLATION STOCK AND THE 40% PENALTY ASSESSED UNDER 26 U.S.C. §6662 SHOULD BE SUSTAINED.**

The IRS properly determined that the following penalties are applicable against the Group, Partners and CWC:

(1) a 40% penalty for a gross valuation misstatement (§ 6662(b)(3) and (h));[1]

(2) a 20% penalty for substantial valuation misstatement ( § 6662(e);

(3) a 20% penalty for substantial understatement of income tax (§ 6662(a), (b)(2) and (d)); and

---

[1] Because there is no stacking of penalties, the maximum penalty is either 20% or 40% of the underpayment of tax, even if an underpayment is attributable to more than one type of misconduct. *See* Treas. Reg. § 1.6662-2(c).

(4) a 20% penalty for negligence or disregard of rules and regulations (§ 6662 (a), (b)(1) and (c)).

A gross valuation misstatement, for which a 40% penalty applies, exists if the value or *adjusted basis* of property claimed on the return is 400% more than the amount determined to be the correct amount of such value or *adjusted basis*. (§6662 (e) and (h)). Here, Group and Partners overstated the basis of the Constellation stock by more than 900%. (PF 41). Similarly, CWC overstated its basis in the Constellation stock by nearly 4500%. (PF 41). Thus, the 40% gross valuation penalty applies. The IRS properly calculated the applicable penalties at the 40% level for shelter participants' 2001 tax returns.

In *Jade Trading, LLC v. United States*, 80 Fed. Cl. 11 (2007), the Court held that because the transaction lacked economic substance, the basis in each partnership interest must be substantially reduced. Therefore, the 40% penalty under Section 6662(h) for a gross valuation misstatement was applicable. The Court stated that "[o]nce a gross valuation misstatement has occurred, the penalty applies mechanically, regardless of the intent of the taxpayers in executing the transaction or their reliance on legal authority." *Id.* at 54. Similarly, here, the 40% penalty imposed by the Group, Partners and CWC FPAAs is proper and should be sustained. *See also Stobie Creek Investments, LLC v. United States*, Case No. 05-748T (Court of Federal Claims), Opinion and Order dated July 31, 2008, pgs. 100-128.

I. **<u>The underpayment of tax by plaintiffs is “attributable to” a gross or substantial valuation misstatement.</u>**

(a) <u>Plaintiffs’ § 465 concession is meaningless.</u>

Plaintiffs state that they “conceded the capital gains adjustments on ... Section 465(b)(1), a ground unrelated to an overstatement of basis or value” and that “Courts have consistently held that when a deduction or loss is disallowed on grounds other than valuation, the 40 percent penalty is not applicable because the resulting underpayment is not ‘attributable to’ a valuation misstatement.” Plaintiffs’ Motion, pg. 6. Plaintiffs incorrectly theorize that since they conceded the capital gains adjustments on a ground (*i.e.*, § 465) unrelated to basis or value, the substantial valuation misstatement penalty is simply inapplicable.

In these consolidated cases, plaintiffs’ basis, and the resulting gain, was determined through (1) a proposed §752 adjustment; (2) an adjustment pursuant to § 1.752-6; (3) an adjustment pursuant to § 1.701-2; (4) adjustments that sham or disregard the partnerships; and/or (5) adjustments concluding that the transactions otherwise lacked economic substance. *See* Group FPAA. These adjustments directly affect the capital gain increases conceded by plaintiffs as shown by the $65,539,019 correction to long-term capital gains and losses on the Group FPAA. These five grounds are alternative adjustments, any one of which would operate to adjust the basis and capital gain at issue in these proceedings. Further, any of these adjustments will support the addition to tax proposed by the FPAAs. Plaintiffs’ §465 concession will not.

The Group FPAAs also addressed § 465 in two respects. With respect to § 465, the FPAA concludes that (i) “none of the Partnership’s transactions or activities increases the amount by which the partners are considered to be at risk for any activity”; and (ii) this determination may affect the partnership’s partners. It is important for this Court to understand

that the § 465 adjustment did not result in any adjustment or correction to long term capital gains and losses on the Group FPAA. The § 465 adjustment was included only as a protective adjustment, not as an alternative to the five theories set out above.

Section 465 addresses a limitation on the use of certain losses and suspends rather than disallows the use of the losses. As a practical matter, the § 465 adjustment does not speak to partners' basis in assets of the partnerships or to how their partnership gain or loss should be allocated. *Oren v. Commissioner*, 357 F.3d 854, 859 (8th Cir. 2004). The at-risk rules of § 465 apply to limit the deductibility of losses only by individuals and certain C corporations. I.R.C. § 465(a)(1).

The Treasury Regulations provide instruction as to how § 465 operates in TEFRA partnership proceedings. Treas. Reg. § 301.6231(a)(3)-1 provides that amounts determinable "at the partnership level with respect to partnership assets, investments, transactions and operations necessary to enable the partnership or the partners to determine amounts at risk in any activity to which section 465 applies" are partnership items. Treas. Reg. § 301.6231(a)(5)-l(c) provides that the application of the at-risk limitation under § 465 to a partner with respect to a loss incurred by a partnership is an affected item to the extent it is not a partnership item. As explained by the Tax Court, "[e]xcept to the extent that partnership level determinations may influence the ultimate application of [§ 465], it has no impact on partnerships, which are essentially only conduits for reporting information and incur no tax liability. It is only after the losses, deductions, and credits of a partnership have flowed through to the individual partners that the at-risk status of the partners can be determined. Moreover, the amount of those losses, deductions, and credits are not affected by the partners' at-risk status." *Hambrose Leasing Ltd.*

*Partnership v. Commissioner*, 99 T.C. 298, 310 (1992).

A partner's amount at risk is "not an item that any partnership reports, either on its Form 1065 partnership return or on the Form K-1 provided to the partners. These forms cannot require the partnership to report this amount because the figure will be unique to each partner. These forms require the partnership to report the information necessary for the individual partner to determine what liabilities from the partnership should be included or excluded from the 'at risk' calculation." *Russian Recovery Fund, Ltd. v. United States*, 81 Fed. Cl. 793, 797 (2008).

Pursuant to these TEFRA regulations, this Court has jurisdiction over the partnership item components which affect that determination at the partner level (*e.g.*, the recourse or non-recourse nature of any partnership notes assumed by the partners). *Hambrose*, 99 T.C. at 305-09. (In *Hambrose*, the Tax Court made several determinations at the partnership level which were critical to Section 465 at-risk issues, but did not assume jurisdiction over the ultimate computation of the partners' amount at risk.) As shown by *Russian Recovery*, however, this jurisdiction does not extend, at the partnership level, to a partner's "at risk" determination.

In the present case, the IRS included the § 465 argument in the FPAA in case there were any partnership level determinations that must be made in order to determine the ultimate computation of the partners' amount at risk in any partner level proceeding. This Court would only have jurisdiction to make any partnership level determinations as to § 465, which could have some impact on the partner level determinations of "at risk." Since there are not any partnership level determinations to be made with respect to § 465, a concession by the plaintiffs is of no import.

(b) This Court must determine partnership items.

Here, this Court must make a determination as to the capital gain adjustments on the Group FPAA pursuant to one of the alternative arguments included in the FPAA (*i.e.*, § 752, § 1.752-6, § 1.701-2, sham or economic substance). The United States has briefed the § 752 argument for this Court in its motions for summary judgment and a decision by this court that the obligations to cover the shorts sales are partnership liabilities pursuant to § 752 will resolve the issues regarding the capital gain adjustments on the FPAAs.

Partnership items must be determined in a partnership-level proceeding. I.R.C. §§ 6221, 6226(f); *Maxwell v. Commissioner*, 87 T.C. 783 (1986). Partnership items are limited to items that the partnership must determine under subtitle A of the code. I.R.C. § 6231(a)(3). These include the amount of contributions to (and distributions from) the partnership, including any associated liabilities. Treas. Reg. §§ 301.6231(a)(3)-1(a)(1)(v), -1(a)(4), -1(c)(2)(iv). *See also Nussdorf v. Commissioner*, 129 T.C. 30 (2007). Partnership items also include the character of a contribution made by a partner. Treas. Reg. § 301.6231(a)(3)-1(c)(2)(i). A determination by this Court on the partnership items set out in the FPAA with respect to the capital gains adjustment will have an impact on many other calculations. It directly affects various components relevant for income tax reporting. Treas. Reg. § 301.6231(a)(3)-1(b) includes within the "partnership item" classification the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc. Examples of such legal and factual determinations falling within the partnership item ambit include, among other things, the partnership's method of accounting, its inventory method and

even whether partnership activities have been engaged in with the intent to make a profit. *RJT Investments X v. Commissioner*, 491 F.3d 732, 737 (8th Cir. 2007)

A Court is required to make legal determinations and factual findings pertaining to partnership tax items. *River City Ranches #1 Ltd. v. Commissioner*, 401 F.3d 1136, 1144 (9th Cir. 2005). These include the applicability of penalties, addition to tax, or additional amount which relates to an adjustment to a partnership item. *Id.* Further, the nature of the partnerships' transactions is a 'partnership item' because it is required to be taken into account as affecting the income tax of the individual partners. *Id.* "Partnership-level determinations include all the legal and factual determinations that underlie the determination of any penalty, addition to tax, or additional amount, other than partner level defenses. . . ." Treas. Reg. § 301.6221-1T(c); *Jade Trading, LLC v. United States,* 80 Fed. Cl. 11, 53 n.78 (2007).

A concession by the plaintiffs or a determination by this court on § 465 does not resolve this case, since it does not have any bearing on the capital gain adjustments here. Accordingly, this Court must make a determination either to sustain the FPAAs or make re-determinations of partnership items as set out in the FPAAs. The United States is entitled to a ruling on the § 752 legal argument that requires that the short sale obligation be treated as a liability.

(c) The legal authority cited by plaintiffs has been rejected by this Court.

Plaintiffs' proposal to avoid the valuation misstatement penalty is nothing more than a recycling of the argument rejected by the Tax Court in *Santa Monica Pictures, LLC v. Commissioner,* 89 T.C.M. 1157 (2005), the Second Circuit in *Long Term Capital Holdings v. United States*, 330 F.Supp. 2d122 (D. Conn. 2004); *aff'd* 150 Fed. Appx. 40 (2d Cir. 2005) and this Circuit in *Jade Trading, LLC v.United States*, 80 Fed. Cl. 11 (2007). Those courts, along

with the four other circuits[2] have all concluded that the statutory language of Section 6662(e) addresses misstatements of basis regardless of their underlying cause. The *Todd* and *Gainer*[3] decisions upon which plaintiffs place so much reliance are distinguishable because they do not deal with the definition of "valuation overstatement" or the application of the penalty to the reporting of inflated adjusted basis in property, as the Tax Court explained in *Santa Monica.*

In *Santa Monica Pictures*, the Tax Court recently specifically rejected plaintiffs' line of reasoning. In that case, the Tax Court agreed with the Second Circuit that when a transaction is not respected for lack of economic substance, the resulting underpayment is attributable to the implicit overvaluation. Therefore, a transaction that lacks economic substance generally reflects an arrangement in which the basis of the property was misvalued in the context of the transaction. 89 T.C.M. 1157. The court held that if a nexus between overvaluation of property and an underpayment is required, the underpayment was attributable to a gross valuation misstatement. *Id*. Significantly, the Tax Court distinguished the contrary *Todd* and *Gainer* decisions as not dealing with the definition of "valuation overstatement" or the application of the penalty to the reporting of inflated adjusted basis in properties. *Id.*

In *Jade Trading, LLC*, the taxpayers argued that no gross valuation misstatement should apply where the underlying transaction was disregarded for lack of economic substance under the theory that the underpayment is attributable to the disregarding of the transaction and not a gross valuation misstatement. Specifically rejecting this argument, the Court held that the

---

[2] *See Merino v. Comm'r*, 196 F.3d 147 (3d Cir. 1999)*; Zfass v. Comm'r*, 118 F.3d 184, 190-91 (4th Cir. 1997); *Illes v. Comm'r*, 982 F.2d 163, 167 (6th Cir. 1992); *see also Massengill v. Comm'r*, 876 F.2d 616, 619-20 (8th Cir. 1989).

[3] *Todd v. Commissioner*, 862 F.2d 540 (5th Cir. 1988) and *Gainer v. Commissioner*, 893 F.2d 225 (9th Cir. 1990).

"underpayment of tax directly and exclusively was 'attributable to' the overstatement of ... basis - it was not 'attributable to' the subsequent independent action of the court disregarding the transaction." *Jade Trading*, 80 Fed. Cl. at 54.

Moreover, the cases relied on by the taxpayers here (*Klamath, Todd* and *Heasley*[4]) were specifically rejected by this Circuit in *Jade Trading*. This Court stated that "the *Klamath* Court followed Fifth Circuit precedent not binding on this Court - *Heasley v. Commissioner,* 902 F.2d 380 (5th Cir. 1990) and *Todd v. Commissioner,* 862 F.2d 540 (5th Cir. 1988)... The majority of other Circuits and the Tax Court have departed from the Fifth Circuit's reasoning and held that when a transaction lacks economic substance, the resulting underpayment of tax is 'attributable to' a valuation misstatement, and the valuation misstatement penalty is applied." *Jade Trading,* 80 Fed. Cl. at 54, n.79 (citations omitted)[5]

Plaintiffs argue in their brief that the "only non-valuation ground for which some courts have agreed resulting underpayments are 'attributable to' a valuation misstatement is economic substance." This Court in *Jade Trading* declined to strictly interpret the "attributable to" language in this manner. The Court held that the underpayment of tax was directly and exclusively attributable to the overstatement of basis and it was not attributable to the court's disregard of the transaction. *Id.* at 54. Here, the same analysis is applicable. Clearly, a decision by this Court under § 752 that the obligation to close a short sale is a liability qualifies as being attributable to a valuation misstatement concerning basis and the valuation misstatement penalty

---

[4] *Heasley v. Commissioner*, 902 F.2d 380 (5th Cir. 1990) and *Klamath Strategic Investment Fund, LLC v. United States*, 472 F.Supp.2d 885 (E.D. Tex. 2007).

[5] *See Merino v. Comm'r*, 196 F.3d 147 (3d Cir. 1999)*; Zfass v. Comm'r*, 118 F.3d 184, 190-91 (4th Cir. 1997); *Illes v. Comm'r,* 982 F.2d 163, 167 (6th Cir. 1992); *see also Massengill v. Comm'r*, 876 F.2d 616, 619-20 (8th Cir. 1989).

applies. The underpayment of tax was directly and exclusively attributable to the overstatement of basis on the returns of Partners, Group and CWC.

The Code expressly provides that a valuation misstatement includes a misstatement of the "*adjusted basis* of any property claimed on any return of tax imposed by chapter 1." I.R.C. § 6662(e). Here, Group and Partners overstated the basis of the Constellation stock by more than 900%. (PF 41). Similarly, CWC overstated its basis in the Constellation stock by nearly 4500%. (PF 41). Accordingly, the 40% penalty for a gross valuation misstatement applies at the partnership level (though it will be computed, assessed, and paid at the partner level). *See Santa Monica Pictures, LLC v. Commissioner,* 89 T.C.M. 1157 (employing a similar approach to analysis of the penalty).

In this case, the purpose of the Son of BOSS transaction was to inflate basis. Plaintiffs should not be able to avoid the penalties intended to discourage taxpayers from overvaluing property merely because they have chosen to concede the capital gains adjustment on § 465. Application of the penalty in a case such as this "surely reinforces the Congressional objective of lessening tax shelter abuse." *Gilman v. Commissioner*, 933 F.2d 143, 151 (2nd Cir. 1991). Plaintiffs' underpayment of tax was directly attributable to the overstatement of basis that they now admit was erroneous. The plaintiffs cannot choose the method of surrender and then brazenly argue to this Court that penalties should not be applicable to them. Their argument is without merit.

## II. **A partnership return is a return of tax.**

The plaintiffs also argue that the "substantial valuation misstatement" penalty and the "gross valuation misstatement" penalty cannot apply because a partnership return is not a return of tax imposed by chapter 1. Plaintiffs' argument is erroneous. A partnership is required to file an annual information return pursuant to the requirements of chapter 61 of the Internal Revenue Code. Under Treas. Reg. §301.7701-15(c)(1)(i), "a return of tax under subtitle A also includes an information return filed by or on behalf of a person or entity that is not a taxable entity and which reports information which is or may be reported on the return of a taxpayer of tax under subtitle A."[6] As such, an information return filed by a partnership is "a return of tax imposed by chapter 1." Moreover, courts have consistently applied the substantial/gross valuation misstatement penalty to partnerships.[7] Accordingly, the valuation misstatement penalty can apply to an overstatement of basis because a partnership return is a return of tax imposed by chapter 1.

Plaintiffs claim that, on its face, section 6662(e) applies overvaluation penalties to a substantial or gross valuation misstatement "claimed on any return of tax imposed by chapter 1." I.R.C. § 6662(e). Plaintiffs further argue that because a partnership return is an information return[8] it cannot be a return of tax and section 6662(e) on its face does not apply to valuations

---

[6] *See also Harlan v Commissioner*, 116 T.C. 31 (2001) (stating that the partnership return must be read as an adjunct with the individual partner's return in determining the total gross income stated on the individual's return).

[7] See *Long Term Capital Holdings v. U.S.*, 330 F.Supp.2d 122 (D.Conn 2004); *Santa Monica Pictures, LLC v. Comm'r*, 89 T.C.M. (C.H.) 1157 (2005); *Jade Trading LLC v. United States*, 80 Fed. Cl. 11 (2007); *Stobie Creek Investments, LLC v. United States*, Case No. 05-748T (Court of Federal Claims), Opinion and Order dated July 31, 2008, pgs. 100-128.

[8] In support of this proposition the petitioner cites *Olson v. U.S.*, 172 F.3d 1311 (Fed. Cir. 1999), which in relevant part states,

> Under the Internal Revenue Code (the "Code"), a partnership is required to file an annual information return, but is not a taxable entity for federal income tax purposes. *See* I.R.C. §§ 701, 6031. Rather, the individual partners are responsible for reporting their distributive shares of the partnership's income, loss, deductions, and credits on their individual tax returns, and then paying whatever allocable amount is due.

misstatements found within the partnership return. Correspondingly, plaintiffs wrongly conclude that any attempt to extend the penalty to valuation misstatements appearing on partnership returns (as done in Treas. Reg. § 1.6662-5(h)) is nothing more than an impermissible administrative usurping of legislative authority.

This argument fails to acknowledge that, while the valuation misstatement appeared on the partnership return, this information also artificially inflated each partner's outside basis.[9] This artificial basis was then transferred to the stock held by the second partnership when it was liquidated into the first partnership. Ultimately, the effects of the misstated valuation trickle down and are incorporated indirectly into each partner's "return of tax" which reports gain or loss from the sale of partnership assets. In essence, the partnership return is part of each partner's individual return. Thus, this valuation misstatement is claimed on the partners' return of tax making the imposition of penalties appropriate under I.R.C. § 6662(e).

This analysis is supported by the Tax Court's decision in *Harlan v. Commissioner*. 116 T.C. 31 (2001). *Harlan* involved the extension of the statute of limitations from three to six years on tax returns which understate the tax liability of the taxpayer by more than twenty-five percent. *Id.* at 33-37. The misstatement generally occurred on the partnership returns of partnerships in which the taxpayer was a partner.[10] The Tax Court found that "the information return of the . . . partnership is treated as part of the taxpayer's return." *Id.* at 38. Therefore, any

---

*See id.* § 702. *Olson*, 172 F.3d at 1316.

[9] By failing to treat the assumption of liabilities as a cash distribution as required in I.R.C. § 752(a), the partners did not reduce their outside creating an artificially inflated outside basis.

[10] The taxpayer was also a partner in partnerships which were partners in other partnerships, referred to in the case as second tier partnerships. *Harlan v. Commissioner*, 116 T.C. 31, 33-37 (2001). These second tier partnership returns were also said to be incorporated into the partner's return. *Id.* at 38.

misstatement occurring on a partnership return is incorporated into the partner's return and is made on a "return of tax." *See* Treas. Reg. § 1.702-1(c).

Alternatively, the term "return of tax" as used in Section 6662(e) is ambiguous. "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) (*citing Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 477 (1992); *McCarthy v. Bronson*, 500 U.S. 136, 139 (1991)). The term "return of tax imposed by chapter 1" is not defined anywhere in the Internal Revenue Code. Chapter 1 of the Internal Revenue Code imposes a tax on partners of income generated by the partnership. *See* I.R.C. §§ 701-777. To determine a partner's share of that income a partnership return is necessary. While the return does not describe the tax liability of any specific person and is considered an information return, its necessity is still mandated by the tax structure of Chapter 1. Thus, a partnership return could be considered a "return of tax" making the term and its precise meaning ambiguous.

"Since the term [] is ambiguous, the task that confronts [a court] is to decide, not whether the Treasury Regulation represents the best interpretation of the statute, but whether it represents a reasonable one." *Atlantic Mut. Ins. Co. v. C.I.R.*, 523 U.S. 382, 389 (1998) (*citing Cottage Savings Assn. v. Commissioner*, 499 U.S. 554, 560-561, (1991)). In light of the Tax Court's holding in *Harlan*, to the extent that Treas. Reg. §§ 1.6662-5(h) and 301.7701-15(c)(1)(i) interprets partnership returns as included in the term "return of tax," the interpretation is both reasonable and consistent with controlling legal authority. As a reasonable interpretation of the statutory language, the regulation should be given judicial deference. Additionally, "Treasury

regulations and interpretations long continued without substantial change, applying to unamended or substantially reenacted statutes, are deemed to have received congressional approval and have the effect of law." *U.S. v. Correll*, 389 U.S. 299, 305-306 (1967) (*citing Helvering v. Winmill*, 305 U.S. 79, 83 (1938); *Fribourg Nav. Co. v. Commissioner*, 383 U.S. 272, 283 (1966)). Treas. Reg. § 301.7701-15(C) was promulgated in 1977. Since that time Congress has acted to amend section 7701 as recently as 2007. *See* U.S. Troop Readiness, Veterans' Care, Katrina Recovery, and Iraq Accountability Appropriations Act 2007, Pub. L. No. 110-128, 121 Stat. 200, § 8246(a)(1)(A) (amending the definition of the term "tax return preparer"). These amendments however, did nothing to signify disapproval of the regulatory definition of "return of tax." Likewise, Congress has acted to amend other provisions of section 6662 since the promulgation of Treas. Reg. § 1.6662-5(h) and has not acted to change that regulation. *See* The Pension Protection Act of 2006, Pub. L. No. 109-280, 120 Stat. 780, § 1219 (changing the percentage requirements for portions of the statute). For these reasons, Treas. Reg. §§ 1.6662-5(h) and 301.7701-15(c)(1)(i) should be deemed to have received congressional approval and given the effect of law.

Partnerships are not subject to income tax or associated penalties. I.R.C. § 701. Instead, such tax and penalties flow through to the partners in proportion to each partner's interest in the partnership. I.R.C. §§ 701, 704. Thus, regardless of where a valuation misstatement appears, the ultimate responsibility for any applicable penalties will rest on the individual partners. While the penalty is properly assessed against partners, Congress, in its quest for judicial and administrative efficiency, has directed that the applicability of penalties pertaining to partnership items be determined in a partnership proceeding. I.R.C. § 6221. Transfers to and from partners

and partnerships are partnership items. Treas. Reg. § 301.6231(a)(3)-1(a)(4). The determination that a purported partnership is disregarded for tax purposes is also a partnership item. *RTJ Investments X v. Commissioner*, 491 F. 3d 732, 737-38 (8th Cir. 2007). Therefore, because the valuation misstatements in this case "relate to" partnership items within the meaning of I.R.C. § 6221, penalties arising as result of those misstatements are properly determined in a partnership proceeding.

## CONCLUSION

The United States is entitled to summary judgment sustaining the 40% penalties in the FPAAs.

Respectfully submitted,

/s/ Thomas M. Herrin
THOMAS M. HERRIN
Attorney of Record
Tax Division
Department of Justice
717 N. Harwood, Suite 400
Dallas, Texas 75201
(214) 880-9745 / (214) 880-9762
(214) 880-9742 (FAX)

JOHN A. DiCICCO
Deputy Assistant Attorney General
STEVEN I. FRAHM
Acting Chief, Court of Federal Claims Section
LOUISE HYTKEN
Chief, Southwestern Civil Trial Section
MICHELLE C. JOHNS
Trial Attorney