Witness: Brian Czerwinski



UNITED STATES COURT OF FEDERAL CLAIMS

ALPHA I, L.P., )
BY AND THROUGH )
ROBERT SANDS, )
A NOTICE PARTNER, )
 )
Plaintiffs, )
 )
V. ) No. 06-407-T
 )
UNITED STATES OF AMERICA, )
 )
 )
Defendant. )

COPY

*********************************************************

ORAL DEPOSITION OF
BRIAN CZERWINSKI
AUGUST 28, 2007
VOLUME I

*********************************************************

ORAL DEPOSITION OF BRIAN CZERWINSKI, produced as a witness at the instance of the Defendant, and duly sworn, was taken in the above-styled and numbered cause on the 28th day of August, 2007, from 9:06 a.m. to 2:49 p.m., before Stacey R. Cruz, CSR in and for the State of Texas, reported by machine shorthand, at the offices of Department of Justice, Tax Division, located at 717 North Harwood Street, Suite 400, Dallas, Texas, in accordance with the United States Court of Federal Claims and the provisions stated on the record or attached hereto.

PLAINTIFF'S EXHIBIT 6
PENGAD 800-631-6989

A P P E A R A N C E S

FOR THE PLAINTIFFS:

MR. THOMAS A. CULLINAN
SUTHERLAND, ASBILL & BRENNAN, LLP
999 Peachtree Street, NE
Atlanta, Georgia 30309-3996
404.853.8075
404.853.8806 (Fax)

FOR THE DEFENDANT:

MS. MICHELLE C. JOHNS
-AND-
MR. THOMAS HERRIN
U.S. Department of Justice
Tax Division
717 North Harwood Street
Suite 400
Dallas, Texas 75201
214.880.9762
214.880.9741 (Fax)

A. Well, I think anytime you -- you do something that's not -- or do something that's more sophisticated or complicated, there's the possibility of -- of an audit. I don't guess I'm -- I'm not sure I understand your question.

Q. I think you've answered it. That's fine.

During your time with Heritage, were you aware that Heritage was tape recording conversations with clients?

A. Yes.

Q. And what was the -- what was the policy -- what was Heritage's policy regarding recording conversations?

A. Well, I don't know -- I don't know if I necessarily knew the pol- -- because there's -- I guess there's different components of who was recording calls and who wasn't. So I don't know -- I don't know what Heritage dictated to everyone within the company.

Q. Were you under any sort of obligation to record conversations with clients?

A. Yes -- yes and no, I guess. Yeah, I don't think I was ever specifically told, you have to record every conversation, or did I record. I recorded very few conversations during all my time there, and I had a -- you know, a list of, I guess, states -- you know,

Witness: Brian Czerwinski



specific rules, I guess, from each state that says you can or can't record, or -- and I had that thing above my phone that would tell me whether I could or couldn't record. But it was very rare they would ever record a conversation.

Q. Do you know -- let me ask you this. Did Heritage have a transcript department who would transcribe the recorded tapes?

A. Yes.

Q. And how many people were in that transcription department?

A. I -- I don't know. I think it was part of -- you call it "transcription department." I think it was marketing support, so it did -- it did other things other than transcription, but that was one of the -- one of the -- I guess, their job responsibilities was to transcribe tapes.

Q. Was there a supervisor of the transcription group?

A. Not that I was aware of.

Q. So if you had a tape that you had recorded of a -- a client meeting, how -- what would do you with your tape?

A. Of a client meeting?

Q. Right.