McCoy, Jerry

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
No. 06-407-T
(into which have been consolidated Nos. 06-408-T,
06-409-T, 06-410-T, 06-411-T, 06-810-T, 06-811-T)
Judge Emily C. Hewitt

- - - - - - - - - - - - - - - - - - - - - X
:
ALPHA I, LP, by and through :
ROBERT SANDS, a notice partner, :
Plaintiff, :
v. : 06-407-T
THE UNITED STATES, :
Defendant. :
:
- - - - - - - - - - - - - - - - - - - - - X
:
BETA PARTNERS, LLC, by and through :
ROBERT SANDS, a notice partner, :
Plaintiff, :
v. : 06-408-T
THE UNITED STATES, :
Defendant. :
:
- - - - - - - - - - - - - - - - - - - - - X
:
R, R, M & C PARTNERS, LLC, by and through :
R, R, M & C GROUP, LP, a notice partner, :
Plaintiff, :
v. : 06-409-T
THE UNITED STATES, :
Defendant. :
:
- - - - - - - - - - - - - - - - - - - - - X
:
R, R, M & C GROUP, LP, by and through :
ROBERT SANDS, a notice partner, :
Plaintiff, :
v. : 06-410-T
THE UNITED STATES, :
Defendant. :
:
- - - - - - - - - - - - - - - - - - - - - X

PENGAD 800-631-6989
PLAINTIFF'S EXHIBIT
2

(Caption Continued)

- - - - - - - - - - - - - - - - - - - - - X
:
CWC PARTNERSHIP I, by and through :
TRUST FBO ZACHARY STERN U/A :
FIFTH G. ANDREW STERN AND MARILYN SANDS, :
TRUSTEES, a notice partner, :
Plaintiff, :
v. : 06-411-T
THE UNITED STATES, :
Defendant. :
:
- - - - - - - - - - - - - - - - - - - - - X
:
MICKEY MANAGEMENT, LP, by and through :
MARILYN SANDS, a notice partner, :
Plaintiff, :
v. : 06-810-T
THE UNITED STATES, :
Defendant. :
:
- - - - - - - - - - - - - - - - - - - - - X
:
M, L, R & R, by and through :
RICHARD E. SANDS, tax matters partner, :
Plaintiff, :
v. : 06-811-T
THE UNITED STATES, :
Defendant. :
:
- - - - - - - - - - - - - - - - - - - - - X

Washington, D.C.

Wednesday, May 14, 2008

DEPOSITION OF JERRY J. McCOY, the witness herein, called for examination by counsel for the plaintiff in the above-entitled matter, pursuant to notice, the witness being duly sworn by DEBORAH S. CUBBAGE, a notary public in and for

the District of Columbia, at the law offices of Sutherland, Asbill & Brennan, 1275 Pennsylvania Avenue, N.W., Washington, D.C., commencing at 9:45 a.m., the proceedings being recorded by stenotype by DEBORAH S. CUBBAGE of DSC Reporting, Inc., and transcribed under her direction.

APPEARANCES:

On behalf of the plaintiff:

THOMAS A. CULLINAN, ESQUIRE
JULIE P. BOWLING, ATTORNEY
Sutherland, Asbill & Brennan
999 Peachtree Street, N.E.
Atlanta, Georgia 30309-3966
Phone: (404) 853-8000
E-mail: tom.cullinan@sutherland.com
E-mail: julie.bowling@sutherland.com

On behalf of the defendant:

THOMAS M. HERRIN, ESQUIRE
MICHELLE C. JOHNS, ATTORNEY
Tax Division
Department of Justice
Suite 400
717 N. Harwood
Dallas, Texas 75201
Phone: (214) 880-9745
E-mail: thomas.m.herrin@usdoj.gov
E-mail: michelle.c.johns@usdoj.gov

MR. HERRIN: I'm going to object to the form of the question. It's calling for him to speculate. It presupposes that there was something in those depositions that is relevant.

MR. CULLINAN: Your objection is noted.

You can answer the question.

THE WITNESS: Would you repeat the question?

MR. CULLINAN: Let me rephrase it.

BY MR. CULLINAN: (Resuming)

Q. In assessing whether the CRUTs were valid CRUTs, wouldn't you want to know what the grantors had to say?

A. Well, I have two responses.

The record was fairly complete as before me as it was presented to me and the documents I did review; but the other is it's not just the validity of the CRUTs.

The CRUTs were fine. I mean, they were well drafted and all that sort of thing.

But it's the overall transaction leading to the sheltering of the gain when the assets were temporarily in the trusts.

Q. Okay. You mentioned a Mr. Czerwinski, that you reviewed his deposition.

A. Yes.

A. In my view, the whole thing is an overall prearranged transaction with many moving parts; and we're talking now about little individual ones.

Q. Okay. I guess more directly, you go on to say -- at the top of page 12 [sic] you say, "The three trustees of Educational Health and Support Fund were subservient to the Sands interest."

What facts do you have to support that statement?

A. The facts that follow the hyphen there.

The accounting firm -- they all had a history with the Sands crowd that continues to the present.

MR. HERRIN: Just for the record, it's a minor clarification: We're on page 11 of the report. It was page 12 of the fax number, if you're looking at your copy, which is probably where you got confused.

MR. CULLINAN: Thank you.

BY MR. CULLINAN: (Resuming)

Q. On page 12 of your report, at the top, first full paragraph, you say, "If the trusts had" -- I guess that's a typo. You have two "had's."

"If the trusts had been allowed to continue until their stated termination date, the trust beneficiaries would have been subjected to tax on all or most of the capital gains

realized by the unitrusts, as they received the trusts' annual distributions."

Why only most?

A. All or most.

Q. Okay. Why not all?

A. The trust realized a capital gain when it sold -- when the items were sold by the partnership and flowed through to the trust, in some amount, a precise amount, I mean, 77 million 200, whatever, down to an amount.

That amount is continued on the books of the trusts indefinitely until the distributions out.

Each year the distribution would have been made over the 20-year period. That distribution is taxed by reference to the income the trust has earned, the current year plus all of the preceding years.

So the trust would have -- if they had put the whole thing in municipal bonds, for example, there would be no trust income; but there would have been this capital gain income carried over from the year in which that sale occurred.

So that -- if they had gone into municipal bonds so that the trust never had any income, they would have reported the distributions out every year. It would have all been taxed at capital gain rates until they used up their entire

capital gain.

If the distributions total the amount of their gain before the end of the 20-year term, well, then, they would have been in a position to get some tax-exempt income out of it; but more likely the fiduciary obligation would have required that they invest and have some other income along the way.

(Ms. Bowling entered the room.)

BY MR. CULLINAN: (Resuming)

Q. If the CRUTs had been in existence for 10 years instead of only five months, how would that affect your opinion?

A. I think that would have been a different situation.

Q. Would you then have agreed fully with Milbank Tweed that the tax consequences would have been as reported?

MR. HERRIN: I'm going to object. It's requiring him to speculate on one isolated set of facts.

MR. CULLINAN: I'm allowed to ask him a hypothetical.

You can answer.

MR. HERRIN: If you can answer.

THE WITNESS: It would be a different situation, 10 years.

BY MR. CULLINAN: (Resuming)

Q. Different how?

A. Different in it would have been a long period of time. The two events would have looked, you know, more independent.

This is the other extreme from when you said what if it all happened on a Friday afternoon.

Your next question is going to be where in between is the line.

Q. Yeah.

Where is the line?

A. One never knows.

Q. How are you better equipped than a judge to assess where the line is?

A. That is the judge's function. I'm clear on that.

I have a view of it, though; and I think that they are on this side of the line at the five-month mark.

Q. Again, back to page 12.

You have some language here, the second half of that sentence: "By terminating the trusts early, almost immediately after their creation, the beneficiaries attempted to circumvent the statutory scheme and inappropriately avoid those taxes altogether."