IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-407 T
(into which have been consolidated Nos. 06-408 T,
06-409 T, 06-410 T, 06-411 T, 06-810 T, 06-811 T)
Judge Emily C. Hewitt

| | | |
|---|---|---|
| ALPHA I, L.P., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-407 T |
| BETA PARTNERS, L.L.C., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-408 T |
| R, R, M & C PARTNERS, L.L.C., BY AND THROUGH R, R, M & C GROUP, L.P., A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-409 T |

PLAINTIFF'S EXHIBIT 19
PENGAD 800-631-6989

| | |
|---|---|
| R, R, M & C GROUP, L.P., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | 06-410 T |
| CWC PARTNERSHIP I, BY AND THROUGH TRUST FBO ZACHARY STERN U/A FIFTH G. ANDREW STERN AND MARILYN SANDS, TRUSTEES, A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | 06-411 T |
| MICKEY MANAGEMENT, L.P., BY AND THROUGH MARILYN SANDS, A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | 06-810 T |

| | | |
|---|---|---|
| M, L, R & R, BY AND THROUGH RICHARD E. SANDS, TAX MATTERS PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-811 T |

**AFFIDAVIT OF FREDDY ROBINSON**

I, Freddy Robinson, being duly sworn, hereby state as follows:

1. I am over the age of 18 and have personal knowledge of the matters set forth herein and if called as a witness could competently testify thereto.

2. I have been and am currently the Executive Partner of Bernard Robinson & Company, LLP, a certified public accounting firm located in Greensboro, North Carolina. The firm was founded by my father, Bernard Robinson in 1946.

3. I graduated from the University of North Carolina at Chapel Hill with a degree in Business Administration. I became a CPA in 1977 and am a member of the American Institute of Certified Public Accountants ("AICPA") and the North Carolina Association of Certified Public Accountants ("NCACPA"). I have served on various committees of both organizations, including a position as chairman of the Taxation Committee for the NCACPA.

4. Bernard Robinson & Company, LLP currently employs 66 people. Our firm prepares returns for more than 2,500 client entities annually, including individuals and a number of real estate entities.

5. As part of my work, I serve as trustee for numerous client entities. I am acutely aware of my fiduciary responsibility when I serve as a trustee or board member of such an entity. In such positions, I exercise my independent business judgment to fulfill my responsibilities to all the beneficiaries or stakeholders involved.

6. Our firm has provided personal tax preparation services to the Sands family for many years, beginning with the inception of the firm.

7. Since 2000, on an annual basis the fees our firm receives from the Sands family for services rendered have averaged approximately 3% of the firm's total annual revenue.

8. In early 2002, I was asked to serve on the Board of Directors of the Educational and Health Support Fund ("the Fund"), a Section 501(c)(3) supporting organization the Sands family sought to establish.

9. I agreed to serve as a trustee of the Fund. As a trustee, it was my duty to exercise my independent judgment and make decisions in the best interest of the Fund and its charitable goals.

10. The other members of the Board of Directors of the Fund were Jim Locke and Wes Stallings. Wes was one of the partners in our firm from 1999 to 2007 when he left to work for Blue Ridge Companies, a client of the firm.

11. After our appointments to the Board of Directors, we were approached by the Sands family members with an offer to sell the Fund's remainder interests in certain charitable remainder unitrusts ("CRUTs") to the lead beneficiaries Richard Sands, Robert Sands, Marilyn Sands, and CWC Partnership I, for their actuarial present value.

12. We considered the offer. In my opinion, the best interests of the Educational and Health Support Fund would be served by obtaining cash up front rather than waiting for up to 20 years

to receive the remainder interests in the CRUTs which could fluctuate significantly in value during that time period. The other board members also reached the same conclusion.

13. We agreed to sell the remainder interests the Fund held in the CRUTs to the grantors of the CRUTs for a total of $2,200,298.24, representing the actuarial present value of the residual interest.

14. When I was appointed as trustee of the Fund, I did not have a prearrangement, agreement, or understanding with the Sands family members that, as trustee, I would agree to sell the Fund's remainder interests in the CRUTs to the grantors of those CRUTs.

15. Based on the receipt of the grantor's funds and prudent investments, the Educational and Health Support Fund has provided donations of $2,752,288 to various charitable organizations since its inception in 2002.

16. I was personally involved in representing partners of plaintiffs in 2001 and 2002 relating to the transactions at issue in these consolidated cases. Bernard Robinson & Company, LLP rendered tax return preparation services in connection with implementation of a financial plan to partners of plaintiffs Alpha I, L.P. and R, R, M & C Group, L.P. and relied on the opinions of Lewis Rice and Milbank Tweed in preparing those returns.

17. The positions taken on the tax returns prepared by Bernard Robinson & Company, LLP for plaintiffs and their partners were consistent with the opinion by Lewis Rice that it was more likely than not correct to not treat the contingent obligations to cover the short sale positions as liabilities for purposes of Section 752.

18. The positions taken on the tax returns prepared by Bernard Robinson & Company for plaintiffs and their partners were consistent with the opinion from Milbank Tweed that it was more likely than not: (1) that the purchase of the remainder interests and termination of the

CRUTs would not cause the CRUTs to retroactively lose their status as charitable remainder trusts; (2) that the termination of the CRUTs would not be an income tax recognition event to the Sands family members; (3) that the purchasers would have a carryover basis in the assets distributed in satisfaction of the lead interest and a cost basis in the assets distributed in satisfaction of the remainder interest; (4) that the purchasers' holding period in the purchased remainder interest becomes the holding period in the assets distributed in satisfaction of the remainder interest and the CRUTs' bases in the assets distributed in satisfaction of the lead interest becomes the purchasers' bases in those assets.

19. I believed that the tax returns filed for plaintiffs and their partners in 2001 and 2002 were correct when I prepared them.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my personal knowledge.

Dated the 28th day of July 2008.

Freddy Robinson

Freddy Robinson

Sworn to before me this
28 day of July, 2008

Phyllis J. Phillips

Notary Public

OFFICIAL SEAL
PHYLLIS J. PHILLIPS
Notary Public - Guilford County
State of North Carolina
My Commission Expires 1-31-2013