D

# PURCHASE AGREEMENT

**dated as of the 27th day of February, 2002**

**by and between**

**THE EDUCATIONAL AND HEALTH SUPPORT FUND**
**u/a dated February 22, 2002**

**and**

**ROBERT SANDS**

PENGAD 800-631-6989
PLAINTIFF'S EXHIBIT
21

ARTICLE I SALE OF INTEREST AND CLOSING .......... 1

1.01 Purchase and Sale. .......... 1
1.02 Purchase Price. .......... 1
1.03 Closing. .......... 1
1.04 Further Assurances; Post-Closing Cooperation. .......... 1

ARTICLE II REPRESENTATIONS AND WARRANTIES OF PURCHASER .......... 2

2.01 Authority. .......... 2
2.02 No Conflicts. .......... 2
2.03 Governmental Approvals and Filings. .......... 3
2.04 Legal Proceedings. .......... 3
2.05 Brokers. .......... 3

ARTICLE III REPRESENTATIONS AND WARRANTIES OF SELLER .......... 3

3.01 Valid Existence of Supporting Organization. .......... 3
3.02 Authority. .......... 3
3.03 No Conflicts. .......... 3
3.04 Governmental Approvals and Filings. .......... 4
3.05 Legal Proceedings Against Seller. .......... 4
3.06 Legal Proceedings Against Trust. .......... 4
3.07 Brokers. .......... 4
3.08 Valid Existence of the Trust. .......... 4
3.09 Compliance With Laws and Orders. .......... 4

ARTICLE IV COVENANTS OF SELLER .......... 5

4.01 Regulatory and Other Approvals. .......... 5
4.02 Fulfillment of Conditions. .......... 5

ARTICLE V COVENANTS OF PURCHASER .......... 5

5.01 Regulatory and Other Approvals. .......... 5
5.02 Fulfillment of Conditions. .......... 6

ARTICLE VI SURVIVAL; NO OTHER REPRESENTATIONS .......... 6

6.01 Survival of Representations, Warranties, Covenants and Agreements. .......... 6
6.02 No Other Representations. .......... 6

ARTICLE VII INDEMNIFICATION .......... 6

7.01 Indemnification. .......... 6
7.02 Exclusivity. .......... 7

ARTICLE VIII DEFINITIONS .......... 7

8.01 Definitions. .......... 7

ARTICLE IX MISCELLANEOUS .......... 10

9.01 Notices. .......... 10
9.02 Entire Agreement. .......... 10
9.03 Expenses. .......... 11
9.04 Waiver. .......... 11
9.05 Amendment. .......... 11
9.06 No Third Party Beneficiary. .......... 11
9.07 No Assignment; Binding Effect. .......... 11

9.08 Headings. .......... 11
9.09 Invalid Provisions. .......... 11
9.10 Governing Law. .......... 11
9.11 Counterparts. .......... 12
9.12 Facsimiles. .......... 12

**THIS PURCHASE AGREEMENT** dated as of the 27th day of February, 2002 is made and entered into by and between THE EDUCATIONAL AND HEALTH SUPPORT FUND, under agreement dated February 22, 2002, Freddy H. Robinson, James A. Locke, III and Wesley M. Stallings, Trustees ("Seller"), and ROBERT SANDS ("Purchaser"). Capitalized terms not otherwise defined herein have the meanings set forth in Section 8.01.

**WHEREAS**, Seller owns the Remainder in the Robert Sands Charitable Remainder Unitrust 2001 (the "Trust"); and

**WHEREAS**, Seller desires to sell, and Purchaser desires to purchase from Seller, the Seller's entire interest in the Trust (such interest being referred to herein as the "Interest") on the terms and subject to the conditions set forth in this Agreement;

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements set forth in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I

## SALE OF INTEREST AND CLOSING

**1.01** **Purchase and Sale.** Seller agrees to sell to Purchaser, and Purchaser agrees to purchase from Seller, all of the right, title and interest of Seller in and to the Interest at the Closing on the terms and subject to the conditions set forth in this Agreement.

**1.02** **Purchase Price.** The aggregate purchase price for the Interest is the fair market value of the Interest as determined by the Purchaser and the Seller taking into account the valuation by an independent appraiser selected by the Purchaser and Seller (the "Purchase Price"), as evidenced in a written instrument prepared by such appraiser, a copy of which is attached hereto, payable at the Closing in the manner provided in Section 1.03.

**1.03** **Closing.** The Closing will take place at 300 Willowbrook Office Park Fairport, New York 14450, or at such other place as Purchaser and Seller mutually agree, on the Closing Date. At the Closing, Purchaser will pay the Purchase Price by delivering to Seller cash, check, wire transfer or a promissory note in the amount equal to the purchase price. Simultaneously, Seller will assign and transfer to Purchaser all of Seller's right, title and interest in and to the Interest by delivering to Purchaser an assignment or assignments representing the Interest.

**1.04** **Further Assurances; Post-Closing Cooperation.** A. Subject to the terms and conditions of this Agreement, at any time or from time to time after the Closing, each of the parties hereto shall execute and deliver such other documents and instruments, provide such materials and information and take such other actions as may reasonably be necessary,

proper or advisable, to the extent permitted by Law, to fulfill its obligations under this Agreement.

B. Effective on the Closing Date, Seller hereby constitutes and appoints Purchaser the true and lawful attorney of Seller, with full power of substitution, in the name of Seller or Purchaser, but on behalf of and for the benefit of Purchaser: (i) to make endorsements and give receipts and releases for and in respect of Seller's interest in the Interest; (ii) to institute, prosecute, compromise and settle any and all Actions or Proceedings that Purchaser may deem proper in order to collect, assert or enforce any claim, right or title of any kind in or to the Interest; (iii) to defend or compromise any or all Actions or Proceedings in respect of the Interest; and (iv) to do all such acts and things in relation to the matters set forth in the preceding clauses (i) through (iii) as Purchaser shall deem desirable. Seller hereby acknowledges that the appointment hereby made and the powers hereby granted are coupled with an interest and are not and shall not be revocable by it in any manner or for any reason. Purchaser shall indemnify and hold harmless Seller from any and all Losses caused by or arising out of any breach of Law by Purchaser in its exercise of such power of attorney.

C. Following the Closing, each party will afford the other party, its counsel and its accountants, during normal business hours, reasonable access to the books, records and other data relating to the Trust in its possession with respect to periods prior to the Closing and the right to make copies and extracts therefrom, to the extent that such access may be reasonably required by the requesting party in connection with (i) the preparation of tax returns, (ii) the determination or enforcement of rights and obligations under this Agreement, (iii) compliance with the requirements of any Governmental or Regulatory Authority, (iv) the determination or enforcement of the rights and obligations of any party to this Agreement or (v) in connection with any actual or threatened Action or Proceeding.

## ARTICLE II

## REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser hereby represents and warrants to Seller as follows:

**2.01** **<u>Authority</u>.** This Agreement has been duly and validly executed and delivered by Purchaser and constitutes a legal, valid and binding obligation of Purchaser enforceable against Purchaser in accordance with its terms.

**2.02** **<u>No Conflicts</u>.** The execution and delivery by Purchaser of this Agreement do not, the performance by Purchaser of his obligations under this Agreement and the consummation of the transactions contemplated hereby will not:

A. Conflict with or result in a violation or breach of any of the terms, conditions or provisions of the Trust; or

B. Conflict with or result in a violation or breach of any term or provision of any Law or Order applicable to Purchaser or the Trust or any of their respective

Assets and Properties (other than such conflicts, violations or breaches which could not in the aggregate reasonably be expected to adversely affect the validity or enforceability of this Agreement).

**2.03** **<u>Governmental Approvals and Filings</u>.** No consent, approval or action of, filing with or notice to any Governmental or Regulatory Authority on the part of Purchaser or, to the Knowledge of Purchaser, is required in connection with the execution, delivery and performance of this Agreement or the consummation of the transactions contemplated hereby, except (i) where the failure to obtain any such consent, approval or action, to make any such filing or to give any such notice could not reasonably be expected to adversely affect the ability of Purchaser to consummate the transactions contemplated by this Agreement or to perform his obligations hereunder, and (ii) those as would be required solely as a result of the identity or the legal or regulatory status of Seller.

**2.04** **<u>Legal Proceedings</u>.** There are no Actions or Proceedings pending or, to the knowledge of Purchaser, threatened against, relating to or affecting Purchaser which could reasonably be expected to result in the issuance of an Order restraining, enjoining or otherwise prohibiting or making illegal the consummation of any of the transactions contemplated by this Agreement.

**2.05** **<u>Brokers</u>.** All negotiations relative to this Agreement and the transactions contemplated hereby have been carried out by Purchaser directly with Seller without the intervention of any Person on behalf of Purchaser in such manner as to give rise to any valid claim by any Person against Seller or the Trust for a finder's fee, brokerage commission or similar payment.

ARTICLE III

REPRESENTATIONS AND WARRANTIES OF SELLER

Seller represents and warrants to Purchaser as follows:

**3.01** **<u>Valid Existence of Supporting Organization</u>.** Seller is a Supporting Organization created pursuant to a trust duly executed, validly existing and in good standing under the Laws of its jurisdiction of organization. Seller has full power and authority to execute and deliver this Agreement, to perform its obligations hereunder and to consummate the transactions contemplated hereby.

**3.02** **<u>Authority</u>.** The execution and delivery by Seller of this Agreement, and the performance by Seller of its obligations hereunder, are within the authority of Seller. This Agreement has been duly and validly executed and delivered by Seller and constitutes a legal, valid and binding obligation of Seller enforceable against Seller in accordance with its terms.

**3.03** **<u>No Conflicts</u>.** The execution and delivery by Seller of this Agreement do not, the performance by Seller of its obligations under this Agreement and the consummation of the transactions contemplated hereby will not:

A. Conflict with or result in a violation or breach of any of the terms, conditions or provisions of the trust agreement of Seller; or

B. Conflict with or result in a violation or breach of any term or provision of any Law or Order applicable to Seller or any of its Assets and Properties (other than such conflicts, violations or breaches which could not in the aggregate reasonably be expected to adversely affect the validity or enforceability of this Agreement).

**3.04 <u>Governmental Approvals and Filings</u>.** No consent, approval or action of, filing with or notice to any Governmental or Regulatory Authority on the part of Seller is required in connection with the execution, delivery and performance of this Agreement or the consummation of the transactions contemplated hereby, except where the failure to obtain any such consent, approval or action, to make any such filing or to give any such notice could not reasonably be expected to adversely affect the ability of Seller to consummate the transactions contemplated by this Agreement or to perform its obligations hereunder.

**3.05 <u>Legal Proceedings Against Seller</u>.** There are no Actions or Proceedings pending or, to the knowledge of Seller, threatened against, relating to or affecting Seller or any of its Assets and Properties which could reasonably be expected to result in the issuance of an Order restraining, enjoining or otherwise prohibiting or making illegal the consummation of any of the transactions contemplated by this Agreement.

**3.06 <u>Legal Proceedings Against Trust.</u>** To the Knowledge of Seller:

A. There are no Actions or Proceedings pending against Seller or, to the Knowledge of Seller, pending or threatened against, relating to or affecting the Trust or any of its Assets and Properties which could reasonably be expected (i) to result in the issuance of an Order restraining, enjoining or otherwise prohibiting or making illegal the consummation of any of the transactions contemplated by this Agreement, or (ii) individually or in the aggregate with other such Actions or Proceedings, to have a material adverse effect on the Trust; and

B. There are no Orders outstanding against the Trust which, individually or in the aggregate with other such Orders, materially adversely affect the Trust.

**3.07 <u>Brokers.</u>** All negotiations relative to this Agreement and the transactions contemplated hereby have been carried out by Seller directly with Purchaser without the intervention of any Person on behalf of Seller in such manner as to give rise to any valid claim by any Person against Purchaser or the Trust for a finder's fee, brokerage commission or similar payment.

**3.08 <u>Valid Existence of the Trust.</u>** To the Knowledge of the Seller, the Trust is duly formed, validly existing and in good standing under the Laws of the State of Alaska.

**3.09 <u>Compliance With Laws and Orders</u>.** To the Knowledge of Seller, the Trust is not in violation of or in default under any Law or Order applicable to the Trust the effect

of which, individually or in the aggregate with other such violations and defaults, could reasonably be expected to be materially adverse to the Trust.

ARTICLE IV

COVENANTS OF SELLER

Seller covenants and agrees with Purchaser that, at all times from and after the date hereof until the Closing, Seller will comply with all covenants and provisions of this Article IV, except to the extent Purchaser may otherwise consent in writing.

**4.01 Regulatory and Other Approvals.** Seller will, as promptly as practicable (a) take all commercially reasonable steps necessary or desirable to obtain all consents, approvals or actions of, make all filings with and give all notices to Governmental or Regulatory Authorities or any other Person required of Seller to consummate the transactions contemplated hereby, (b) provide such other information and communications to such Governmental or Regulatory Authorities or other Persons as such Governmental or Regulatory Authorities or other Persons may reasonably request in connection therewith and (c) provide reasonable cooperation to Purchaser in connection with the performance of its obligations under Sections 5.01. Seller will provide prompt notification to Purchaser when any such consent, approval, action, filing or notice referred to in clause (a) above is obtained, taken, made or given, as applicable, and will advise Purchaser of any communications (and, unless precluded by Law, provide copies of any such communications that are in writing) with any Governmental or Regulatory Authority or other Person regarding any of the transactions contemplated by this Agreement.

**4.02 Fulfillment of Conditions.** Seller will take all commercially reasonable steps necessary or desirable and proceed diligently and in good faith to satisfy each condition to the obligations of Purchaser contained in this Agreement and will not take or fail to take any action that could reasonably be expected to result in the nonfulfillment of any such condition.

ARTICLE V

COVENANTS OF PURCHASER

Purchaser covenants and agrees with Seller that, at all times from and after the date hereof until the Closing, Purchaser will comply with all covenants and provisions of this Article V, except to the extent Seller may otherwise consent in writing.

**5.01 Regulatory and Other Approvals.** Purchaser will as promptly as practicable (a) take all commercially reasonable steps necessary or desirable to obtain all consents, approvals or actions of, make all filings with and give all notices to Governmental or Regulatory Authorities or any other Person required of Purchaser to consummate the transactions contemplated hereby, (b) provide such other information and communications to such

Governmental or Regulatory Authorities or other Persons as such Governmental or Regulatory Authorities or other Persons may reasonably request in connection therewith and (c) provide reasonable cooperation to Seller in connection with the performance of their obligations under Sections 4.01. Purchaser will provide prompt notification to Seller when any such consent, approval, action, filing or notice referred to in clause (a) above is obtained, taken, made or given, as applicable, and will advise Seller of any communications (and, unless precluded by Law, provide copies of any such communications that are in writing) with any Governmental or Regulatory Authority or other Person regarding any of the transactions contemplated by this Agreement.

**5.02 Fulfillment of Conditions.** Purchaser will take all commercially reasonable steps necessary or desirable and proceed diligently and in good faith to satisfy each condition to the obligations of Seller contained in this Agreement and will not take or fail to take any action that could reasonably be expected to result in the nonfulfillment of any such condition.

## ARTICLE VI

## SURVIVAL; NO OTHER REPRESENTATIONS

**6.01 Survival of Representations, Warranties, Covenants and Agreements.** The representations, warranties, covenants and agreements of Seller and Purchaser contained in this Agreement will survive the Closing until one year from the date hereof. This Section shall not limit in any way the survival and enforceability of any covenant or agreement of the parties hereto which by its terms contemplates performance after the Closing Date, which shall survive for the respective periods set forth herein.

**6.02 No Other Representations.** Notwithstanding anything to the contrary contained in this Agreement, it is the explicit intent of each party hereto that Seller is making no representation or warranty whatsoever, express or implied, except those representations and warranties contained in Article III.

## ARTICLE VII

## INDEMNIFICATION

**7.01 Indemnification.** A. Seller shall indemnify the Purchaser Indemnified Parties in respect of, and hold each of them harmless from and against, any and all Losses suffered, incurred or sustained by any of them or to which any of them becomes subject, resulting from, arising out of or relating to any breach of representation or warranty or nonfulfillment of or failure to perform any covenant or agreement on the part of Seller contained in this Agreement.

B. Purchaser shall indemnify the Seller Indemnified Parties in respect of, and hold each of them harmless from and against, any and all Losses suffered, incurred or sustained by any of them or to which any of them becomes subject, resulting from, arising out of or relating to any breach of representation or warranty or nonfulfillment of or failure to perform any covenant or agreement on the part of Purchaser contained in this Agreement.

C. In the event any claim or demand in respect of which an Indemnified Party might seek indemnity under Section 7.01 is asserted against or sought to be collected from such Indemnified Party by a Person other than Seller or any Affiliate of Seller or of Purchaser (a "Third Party Claim"), the Indemnified Party shall deliver a notice with reasonable promptness to the Indemnifying Party describing in reasonable detail such Third Party Claim. The Indemnified Party shall not settle any such Third Party Claim without the consent of the Indemnifying Party, which consent will not be unreasonably withheld.

**7.02** **Exclusivity.** After the Closing, to the extent permitted by Law, the indemnities set forth in this Article VII shall be the exclusive remedies of Purchaser and Seller and their respective officers, directors, employees, agents and Affiliates for any misrepresentation, breach of warranty or nonfulfillment or failure to be performed of any covenant or agreement contained in this Agreement, and the parties shall not be entitled to a rescission of this Agreement or to any further indemnification rights or claims of any nature whatsoever in respect thereof, all of which the parties hereto hereby waive.

## ARTICLE VIII

## DEFINITIONS

**8.01** **Definitions.** A. Defined Terms. As used in this Agreement, the following defined terms have the meanings indicated below:

"Actions or Proceedings" means any action, suit, proceeding, arbitration or Governmental or Regulatory Authority investigation.

"Affiliate" means any Person that directly, or indirectly through one of more intermediaries, controls or is controlled by or is under common control with the Person specified. For purposes of this definition, control of a Person means the power, direct or indirect, to direct or cause the direction of the management and policies of such Person whether by Contract or otherwise and, in any event and without limitation of the previous sentence, any Person owning ten percent (10%) or more of the voting securities of another Person shall be deemed to control that Person.

"Agreement" means this Purchase Agreement, as the same shall be amended from time to time.

"Assets and Properties" of any Person means all assets and properties of every

kind, nature, character and description (whether real, personal or mixed, whether tangible or intangible, and wherever situated), including the goodwill related thereto, operated, owned or leased by such Person.

"Closing" means the closing of the transactions contemplated by Section 1.03.

"Closing Date" means (a) February 27, 2002, or (b) such other date as Purchaser and Seller mutually agree upon.

"Companies" has the meaning ascribed to it in the forepart of this Agreement.

"Contract" means any agreement, lease, license, evidence of Indebtedness, mortgage, indenture, security agreement or other contract.

"GAAP" means generally accepted accounting principles, consistently applied throughout the specified period and in the immediately prior comparable period.

"Governmental or Regulatory Authority" means any court, tribunal, arbitrator, authority, agency, commission, official or other instrumentality of the United States or any state, county, city or other political subdivision.

"Indebtedness" of any Person means all obligations of such Person (i) for borrowed money, (ii) evidenced by notes, bonds, debentures or similar instruments, (iii) for the deferred purchase price of goods or services (other than trade payables or accruals incurred in the ordinary course of business), (iv) under capital leases and (v) in the nature of guarantees of the obligations described in clauses (i) through (iv) above of any other Person.

"Indemnified Party" means any Person claiming indemnification under any provision of Article VII.

"Indemnifying Party" means any Person against whom a claim for indemnification is being asserted under any provision of Article VII.

"Interests" has the meaning ascribed to it in the forepart of this Agreement.

"Knowledge of Seller" means the actual knowledge of Seller.

"Laws" means all laws, statutes, rules, regulations, ordinances and other pronouncements having the effect of law of the United States or any state, county, city or other political subdivision or of any Governmental or Regulatory Authority.

"Liabilities" means all Indebtedness, obligations and other liabilities of a Person (whether absolute, accrued, contingent, fixed or otherwise, or whether due or to become due).

"Liens" means any mortgage, pledge, assessment, security interest, lease, lien, adverse claim, levy, charge or other encumbrance of any kind, or any conditional sale Contract,

title retention Contract or other Contract to give any of the foregoing.

"Loss" means any and all damages, fines, penalties, deficiencies, losses and expenses (including without limitation interest, court costs, reasonable fees of attorneys, accountants and other experts or other reasonable expenses of litigation or other proceedings or of any claim, default or assessment).

"Order" means any writ, judgment, decree, injunction or similar order of any Governmental or Regulatory Authority (in each such case whether preliminary or final).

"Permitted Lien" means (i) any Lien for taxes not yet due or delinquent or being contested in good faith by appropriate proceedings for which adequate reserves have been established in accordance with GAAP, (ii) any statutory Lien arising in the ordinary course of business by operation of Law with respect to a Liability that is not yet due or delinquent and (iii) any minor imperfection of title or similar Lien which individually or in the aggregate with other such Liens could not reasonably be expected to materially adversely affect the Trust.

"Person" means any natural person, corporation, general partnership, limited partnership, proprietorship, other business organization, trust, union, association or Governmental or Regulatory Authority.

"Purchase Price" has the meaning ascribed to it in Section 1.02.

"Purchaser" has the meaning ascribed to it in the forepart of this Agreement.

"Purchaser Indemnified Parties" means Purchaser and its officers, directors, employees, agents and Affiliates.

"Remainder" has the meaning ascribed to it in the Trust.

"Seller" has the meaning ascribed to it in the forepart of this Agreement.

"Seller Indemnified Parties" means Seller and her employees, agents and Affiliates.

"Supporting Organization" means an entity qualifying as a supporting organization under §§ 509(a)(1), 509(a)(2) or 509(a)(3) of the Internal Revenue Code of 1986, as amended.

"Third Party Claim" has the meaning ascribed to it in Section 7.01(c).

B. Construction of Certain Terms and Phrases. Unless the context of this Agreement otherwise requires, (i) words of any gender include each other gender; (ii) words using the singular or plural number also include the plural or singular number, respectively; (iii) the terms "hereof," "herein," "hereby" and derivative or similar words refer to this entire Agreement; and (iv) the terms "Article" or "Section" refer to the specified Article or Section of

this Agreement. Whenever this Agreement refers to a number of days, such number shall refer to calendar days. All accounting terms used herein and not expressly defined herein shall have the meanings given to them under GAAP. Any representation or warranty contained herein as to the enforceability of a Contract shall be subject to the effect of any bankruptcy, insolvency, reorganization, moratorium or other similar law affecting the enforcement of creditors' rights generally and to general equitable principles (regardless of whether such enforceability is considered in a proceeding in equity or at Law).

ARTICLE IX

MISCELLANEOUS

**9.01 <u>Notices</u>.** All notices, requests and other communications hereunder must be in writing and will be deemed to have been duly given only if delivered personally or mailed (first class postage prepaid) to the parties at the following addresses:

If to Seller, to:

THE EDUCATIONAL AND HEALTH SUPPORT FUND
c/o Freddy H. Robinson
P.O. Box 19608
109 Muirs Chapel Road
Greensboro, NC 27419-9608

If to Purchaser, to:

Mr. Robert Sands
300 Willowbrook Office Park
Fairport, NY 14450

All such notices, requests and other communications will (i) if delivered personally to the address as provided in this Section, be deemed given upon delivery, or (ii) if delivered by mail in the manner described above to the address as provided in this Section, be deemed given upon receipt (in each case regardless of whether such notice, request or other communication is received by any other Person to whom a copy of such notice, request or other communication is to be delivered pursuant to this Section). Any party from time to time may change its address or other information for the purpose of notices to that party by giving notice specifying such change to the other party hereto.

**9.02 <u>Entire Agreement</u>.** This Agreement supersedes all prior discussions and agreements between the parties with respect to the subject matter hereof, and contains the sole and entire agreement between the parties hereto with respect to the subject matter hereof.

**9.03 <u>Expenses</u>.** Except as otherwise expressly provided in this Agreement, whether or not the transactions contemplated hereby are consummated, each party will pay its own costs and expenses incurred in connection with the negotiation, execution and closing of this Agreement and the transactions contemplated hereby.

**9.04 <u>Waiver</u>.** Any term or condition of this Agreement may be waived at any time by the party that is entitled to the benefit thereof, but no such waiver shall be effective unless set forth in a written instrument duly executed by or on behalf of the party waiving such term or condition. No waiver by any party of any term or condition of this Agreement, in any one or more instances, shall be deemed to be or construed as a waiver of the same or any other term or condition of this Agreement on any future occasion. All remedies, either under this Agreement or by Law or otherwise afforded, will be cumulative and not alternative.

**9.05 <u>Amendment</u>.** This Agreement may be amended, supplemented or modified only by a written instrument duly executed by or on behalf of each party hereto.

**9.06 <u>No Third Party Beneficiary</u>.** The terms and provisions of this Agreement are intended solely for the benefit of each party hereto and their respective successors or permitted assigns, and it is not the intention of the parties to confer third-party beneficiary rights upon any other Person other than any Person entitled to indemnity under <u>Article VII</u>.

**9.07 <u>No Assignment; Binding Effect</u>.** Neither this Agreement nor any right, interest or obligation hereunder may be assigned by any party hereto without the prior written consent of the other party hereto and any attempt to do so will be void, except (a) for assignments and transfers by operation of Law and (b) that Purchaser may assign any or all of its rights, interests and obligations hereunder to a wholly-owned subsidiary, provided that any such subsidiary agrees in writing to be bound by all of the terms, conditions and provisions contained herein, but no such assignment referred to in clause (b) shall relieve Purchaser of its obligations hereunder. Subject to the preceding sentence, this Agreement is binding upon, inures to the benefit of and is enforceable by the parties hereto and their respective successors and assigns.

**9.08 <u>Headings</u>.** The headings used in this Agreement have been inserted for convenience of reference only and do not define or limit the provisions hereof.

**9.09 <u>Invalid Provisions</u>.** If any provision of this Agreement is held to be illegal, invalid or unenforceable under any present or future Law, and if the rights or obligations of any party hereto under this Agreement will not be materially and adversely affected thereby, (a) such provision will be fully severable, (b) this Agreement will be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part hereof, and (c) the remaining provisions of this Agreement will remain in full force and effect and will not be affected by the illegal, invalid or unenforceable provision or by its severance herefrom.

**9.10 <u>Governing Law</u>.** This Agreement shall be governed by and construed in accordance with the Laws of the State of Alaska applicable to a Contract executed and performed in such State, without giving effect to the conflicts of laws principles thereof.

**9.11 Counterparts.** This Agreement may be executed in any number of counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument.

**9.12 Facsimiles.** A facsimile or facsimiles of the signature page signed by the Purchaser or the Seller shall be deemed an original signature page of this instrument.

**IN WITNESS WHEREOF**, each party hereto has signed this Agreement, or caused this Agreement to be signed by its officer thereunto duly authorized, as of the date first above written.

THE EDUCATIONAL AND HEALTH SUPPORT FUND

By: ______________________________
Freddy H. Robinson, Trustee

______________________________
ROBERT SANDS

9.11 __Counterparts.__ This Agreement may be executed in any number of counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument.

9.12 __Facsimiles.__ A facsimile or facsimiles of the signature page signed by the Purchaser or the Seller shall be deemed an original signature page of this instrument.

**IN WITNESS WHEREOF**, each party hereto has signed this Agreement, or caused this Agreement to be signed by its officer thereunto duly authorized, as of the date first above written.

THE EDUCATIONAL AND HEALTH SUPPORT FUND

By: Freddy H Robinson
Freddy H. Robinson, Trustee

____________________
ROBERT SANDS