A

MILBANK, TWEED, HADLEY & McCLOY LLP

1 CHASE MANHATTAN PLAZA

NEW YORK, N.Y. 10005-1413

212-530-5000

FAX: 212-530-5219

LOS ANGELES
213-892-4000
FAX: 213-629-5063

PALO ALTO
650-739-7000
FAX: 650-739-7100

WASHINGTON, D.C.
202-835-7500
FAX: 202-835-7586

LONDON
44-207-448-3000
FAX: 44-207-448-3029

FRANKFURT
49-69-7593-7170
FAX: 49-69-7593-8303

TOKYO
813-3504-1050
FAX: 813-3595-2790

HONG KONG
852-2971-4888
FAX: 852-2840-0792

SINGAPORE
65-6428-2400
FAX: 65-6428-2500

JONATHAN G. BLATTMACHR
PARTNER
DIRECT DIAL NUMBER
212-530-5066
FAX: 212-822-5066

June 21, 2002

**ATTORNEY-CLIENT PRIVILEGED COMMUNICATION**

Mr. Robert Sands
c/o Constellation Brands, Inc.
300 Willowbrook Office Park
Fairport, New York 14450

PLAINTIFF'S EXHIBIT 23
PENGAD 800-631-6989

Re: Robert Sands Charitable Remainder Unitrust 2001

Dear Robert:

You have asked us: (1) whether the remainder interest of the Robert Sands Charitable Remainder Unitrust 2001 (the "Trust") may be assigned pursuant to governing state law; (2) whether the Trust will terminate if you purchase the remainder; and (3) whether the purchase of the remainder interest and the termination of the Trust will be an income tax recognition event for you under applicable Federal income tax laws.

I. Assumptions

This opinion letter is based upon the following assumptions: (1) that documents submitted to us as originals are authentic; (2) that copies of documents reviewed by us are true and accurate; (3) that all submitted documents were duly authorized, executed, and delivered; and (4) that the signatures on the documents are genuine. You have represented to us and we have further assumed that the Trust has been validly administered, pursuant to our instructions, as a charitable remainder trust under section 664 of the Internal Revenue Code of 1986 ("Code" or "I.R.C.") since the Trust's inception and that The Educational and Medical Support Fund is a public charity within the definition of Code § 170(b)(1)(A). Finally, you also have represented and we have assumed that the purchase of the remainder interest from The Educational and Medical Support Fund will be at fair market value and that there was no plan, prearrangement or understanding with the charity for the purchase of the remainder prior to its designation as the

charitable remainderman. We are relying on these assumptions. If any of these assumptions is not true, please inform us immediately as that could cause us to reach different opinions than those expressed here.

II. Facts

On September 21, 2001, you, as Grantor and co-Independent Trustee, Richard Sands, as co-Independent Trustee, and Alaska Trust Company, as Administrative Trustee, created the Trust. Pursuant to Article SECOND of the Trust, you are entitled to be paid a Unitrust Percentage on December 1st of each year. The Unitrust Term ends September 21, 2021. At the expiration of the Unitrust Term, the Trust remainder is to be distributed to charities appointed by you in a written instrument specifically referring to the power and delivered to the Independent Trustee before the Trust termination date. By instrument dated February 22, 2002 you irrevocably appointed The Educational and Medical Support Fund as the Trust remainder beneficiary. Article FIFTEENTH of the Trust provides that Alaska law governs the interpretation of the Trust and its implementation.

III. Charitable Remainder Trust Requirements

A gift to charity of a trust remainder interest will not qualify for a charitable deduction unless it meets specified requirements. I.R.C. §§ 170(f)(2)(A), 2055(e)(2)(A), 2522(c)(2)(A). The remainder interest in a charitable remainder trust, as defined in I.R.C. § 664, qualifies for the charitable deduction. Generally speaking, a charitable remainder trust provides for the distribution of a specified amount (not less than 5% nor more than 50%) at least annually to one or more persons (at least one of which is a noncharitable beneficiary). I.R.C. §§ 664(d)(1)(A), 664(d)(2)(A). This "lead interest" may extend for the life of the individual beneficiary or for a specified term of years not to exceed twenty years. In addition, the remainder interest (which must be at least 10%) must be payable to or for the use of one or more charities described in I.R.C. § 170(c).[1] I.R.C. §§ 664(d)(1)(C), 664(d)(2)(C). Trust Article SECOND requires that the maximum allowable Unitrust Percentage be payable to you for twenty years that will create the minimum allowable remainder (10%) for the charitable beneficiary.

The charitable remainder trust beneficiary may be designated using one of four methods. The donor may (i) name the charity in the governing instrument, or (ii) name the

---

[1] To qualify for the income tax, gift tax and estate charitable deductions the designated entity must be a charitable organization described in Code §§ 170(c), 2055(a) and 2522(a).

charity with the right to later change the charitable beneficiary,[2] or (iii) permit the income beneficiary (*i.e.*, the annuitant or unitrust recipient) to later designate the charity or replace the existing charity,[3] or (iv) permit the trustee to designate the charitable beneficiary during the grantor's life.[4] Article FOURTH provides that the income beneficiary, *i.e.*, you, may appoint the charitable remainderman in a written instrument specifically referring to the power and delivered to the Independent Trustee on or before Trust termination. By agreement dated February 22, 2002, you appointed The Educational and Medical Support Fund as the remainder beneficiary of the Trust. As stated above, we assume The Educational and Medical Support Fund is a valid charitable organization that meets the definition of a charitable organization in Code §§ 170(c), 2055(a) and 2522(a) and meets the definition of a "public charity" as defined in Code § 170(b)(1)(A).

In addition to the above requirements, to qualify as a charitable remainder trust the governing instrument must provide for the selection of an alternative remainderman that qualifies under I.R.C. § 170(c) if the designated remainderman no longer meets I.R.C. § 170(c) requirements. Treas. Regs. §§ 1.664-2(a)(6)(iv) and 1.664-3(a)(6)(iv). Trust Article FOURTH implements this requirement.

Unless it has unrelated business taxable income (including debt-financed income) for the year, a charitable remainder trust is exempt from Federal income tax. I.R.C. § 664(c). The distributions of the unitrust interest, on the other hand, may be taxable to the unitrust recipient. I.R.C. § 664(b).

If the charitable remainder trust requirements are met, the donor is entitled to a charitable deduction for the present value of the remainder interest passing to the charity. It should be noted, however, that a recent United States Tax Court decision held a trust that contained all of the provisions required to qualify as a charitable remainder trust under Code section 664 failed to constitute a charitable remainder trust because it failed to operate as a charitable remainder trust. *Atkinson v. Comm'r*, 115 T.C. No. 3 (2000). In *Atkinson*, the grantor created a charitable remainder annuity trust. As required by Code § 664, the trust instrument provided for the trustee to pay the grantor each year an annuity equal to five percent of the original contribution to the trust. The trustee sent checks to the Grantor to make the required annuity payments. The grantor, however, failed to cash the checks. The United States Tax

---

[2] Rev. Rul. 76-7, 1976-1 C.B. 179. Priv. Ltr. Rul. 9022014 (Feb. 28, 1990). Neither a private letter ruling (Priv. Ltr. Rul.) nor a national office technical advice memorandum may be cited or used as precedent. I.R. C. § 6110(k)(3).

[3] Rev. Rul. 76-8, 1976-1 C.B. 179. Priv. Ltr. Rul. 9022014 (Feb. 28, 1990).

[4] Rev. Rul. 76-371, 1976-2 C.B. 305.

Court, agreeing with the Internal Revenue Service ("IRS" or "Service"), held the trust did not qualify as a charitable remainder trust because the trustee could not prove the trust distributed the mandatory five percent minimum to the grantor each year.[5] Some commentators, question whether the *Atkinson* conclusion is correct. See, *e.g.*, Conrad Teitell, *Perfectly Drawn Charitable Remainder Annuity Trust Disqualified Because Imperfectly Operated*, Taxwise Giving (August 2000). (It may be appropriate to note that the Tax Court's decision in *Atkinson* is on appeal.) Regardless of whether one agrees or disagrees with the *Atkinson* decision, to be certain the Trust will qualify as a charitable remainder trust, it would seem that not only must the Trust be drafted to satisfy the express Code requirements and the Treasury Department Regulations (the "Regulations"), but the Trust also must be administered to meet those requirements. You have represented the Trust has been administered in accordance with the charitable remainder trust rules since its inception, pursuant to our instructions.

IV. Remainder Interest Assignment

A. Alaska State Law

We have been unable to locate any Alaska law governing the transfer of a trust remainder interest. The grantor of property in trust may make the interest of a trust beneficiary unassignable. ALASKA STAT. § 34.40.110 (Michie 2000). The Trust does not contain a nonassignment provision. We believe an Alaska court would more likely than not determine whether interests are assignable by applying common law rules.

As a general rule, a trust beneficiary may alienate his or her interest, unless the governing instrument or a state statute directs otherwise. George G. Bogert and George T. Bogert, THE LAW OF TRUSTS & TRUSTEES, § 188 (2d ed. rev. 1979). There is no applicable Alaska statute preventing the alienation of a trust remainder interest. Moreover, nothing in the

---

[5] The Tax Court announced an alternative rationale for its holding. Upon the grantor's death, the annuity was to be distributed among several individuals but only if they agreed to pay a portion of the estate taxes caused by the continued annuities. The grantor's nurse claimed that she had an agreement with the grantor providing that the nurse would not be required to pay her share of the estate taxes to be entitled to her annuity. The trustee eventually settled the nurse's claim and pursuant to court approval agreed to pay the nurse's share of the estate taxes out of the grantor's other assets. However, the grantor's other assets were insufficient to pay the estate taxes. As a result, a portion of the estate taxes had to be paid out of the charitable remainder trust as expressly prohibited by Code § 664. Rev. Rul. 82-128, 1982-2 C.B. 71, specifies that a charitable remainder trust must provide that the vesting of a successor annuity or unitrust lead interest in a secondary beneficiary must be contingent on the secondary beneficiary's agreement to pay any death taxes attributable to the secondary beneficiary's lead interest.

Trust itself prevents the assignment of the remainder interest. Article FOURTEENTH specifically permits any interest in the Trust to be assigned irrevocably.

B. Federal Tax Restrictions on Alienation

In addition to possible state law restrictions on the alienability of the remainder interest, one must determine if Federal tax law restricts the alienation of that remainder interest by a charitable remainder trust.

1. No Restrictions in Code or Regulations

Neither the Code nor the Regulations governing charitable remainder trusts require the governing instrument restrict the charitable remainderman's ability to alienate its interest. Because interests in trusts frequently are assigned, the failure of the Regulations to prohibit the assignability of interests fairly may be viewed as an indirect approval of the assignability of those interests. Indeed, where, as here, a grantor retains an interest in a trust, it may be legally impossible to prohibit making his or her interest unassignable. *Cf.*, *e.g.*, New York EPTL 7-3.1. Although interests in an Alaska trust apparently may be made unassignable, even if held by the grantor (see ALASKA STAT. § 34.40.119(a)), here the Trust interests expressly are made assignable.

2. No Restrictions in the Model Forms

The IRS has issued model charitable remainder trust forms. (See, *e.g.*, Rev. Proc. 90-31, 1990-1 C.B. 534.) These forms set forth mandatory provisions that must be included in charitable remainder trusts, some of which requirements prohibit certain actions (such as acts of self-dealing under Code § 4941). None of these forms includes a provision prohibiting the assignability of any interest in a charitable remainder trust.

3. IRS Decisions Imply That Interests May Be Alienable

The Service has held that an annuitant who transfers his or her annuity interest in a charitable remainder trust to the charitable remainderman is entitled to an income tax deduction for the value of the transferred annuity interest. Rev. Rul. 86-60, 1986-1 C.B. 302. The strong implication is that the annuity or unitrust interest may be assigned. See, also, Priv. Ltr. Ruls. 8311063 (Dec. 14, 1982), 8613046 (Dec. 30, 1985), 9550026 (Sept. 18, 1995). (Neither a private letter ruling nor a technical advice memorandum may be cited or used as precedent. Code § 6110(k)(3).)

If the lead interest of a charitable remainder trust may be assigned, there seems to be no reason why a remainder interest of a charitable remainder trust should not also be assignable. In Priv. Ltr. Rul. 8945023 (Aug. 14, 1989), a charitable remainder trust purchased the remainder interests from the charitable remainderman. Although not expressly discussed by the IRS and although the IRS recharacterized the transaction as a sale of the unitrust interests by the unitrust beneficiary to the charitable remainderman, there seems to be an acceptance by the

IRS that the transaction was effective (as it discussed the consequences of the transaction). There is no indication the Service viewed the purchase as causing the trust to have lost its status as a charitable remainder trust retroactively.

Each of the other private letter rulings and the revenue ruling cited above involved an actual assignment of the retained annuity or unitrust interest to the charity. The IRS appears to accept that the unitrust interest (or annuity interest) in a charitable remainder trust may be assigned. No reason -- expressed or implied -- would cause the remainder interest to be unalienable if the unitrust may be transferred without retroactively causing the charitable remainder trust to fail. Indeed, because remainder interests often are assignable under state law (unless prohibited by the instrument), probably thousands of charitable remainder trusts have been created under which the remainders were assignable. Yet, not once in the several revenue rulings or revenue procedures or the hundreds of private letter rulings issued by the Internal Revenue Service has any statement limiting assignability of charitable remainder interests been mentioned.

4. The Regulations Regarding Other Types of Trusts Prohibit Alienation

We note also that in the Regulations governing the taxation of other types of trusts, such as "grantor retained annuity trusts" and "grantor retained unitrusts," the governing instrument must prohibit commutation (prepayment) of the annuity or unitrust interest. Treas. Reg. § 25.2702-3(d)(4). Grantor retained annuity and unitrusts are in some ways similar to charitable remainder annuity and unitrusts. Indeed, the Regulations dealing with grantor retained annuity and unitrusts use principles derived from the charitable remainder trust regulations. See, *e.g.*, Treas. Reg. §§ 25.2702-3(b)(2) and (3) referring to Treas. Reg. § 1.664-2(a)(1)(iii) and (iv). A "qualified personal residence trust" or "QPRT," is another example of a trust, the provisions of which are outlined in the Code and the Regulations. A QPRT, like a charitable remainder unitrust, grants the lead interest in the trust to one party and the remainder interest in the trust to another party (although neither party need be a charitable organization). The Regulations governing QPRTs mandates that the governing instrument must prohibit commutation (prepayment) of the term holder's interest. Treas. Reg. § 25.2702-5(c)(6). No similar Code or Regulation provision prohibits alienation of a charitable remainder trust interest. We think that if interests in a charitable remainder trust could not be assigned, that prohibition would be expressed in the Regulations. Because no such prohibition appears in the Regulations, we believe that interests in a charitable remainder trust may be assigned.

Because an interest in a charitable remainder trust apparently may be assigned, we believe that an actual assignment more than likely will not cause the trust to fail retroactively to be a charitable remainder trust. Indeed, it would seem inconsistent to permit, on the one hand, the ability to assign an interest in a charitable remainder trust without causing it to fail to be a charitable remainder trust, while on the other hand, prohibit the actual assignment and thereby cause the trust retroactively to fail to be a charitable remainder trust. Accordingly, we also conclude the actual assignment of the remainder interest by the designated remainderman will not cause the trust to fail to be a charitable remainder trust within the meaning of Code § 664 prior to the assignment, and the actual assignment more likely than not will not be considered an

administration of the trust contrary to Code § 664 and the Regulations thereunder under the reasoning of the *Atkinson* decision.

Accordingly, we conclude the Trust remainder interest is more likely than not assignable under both Alaska state law and the Federal tax provisions governing charitable remainder trusts and that the contemplated assignment of the remainder interest will not cause the Trust prior to the actual assignment to lose its status as a charitable remainder trust.

V. Income Tax Consequences of the Purchase of the Remainder Interest

If and when you purchase the remainder interest from The Educational and Medical Support Fund, that remainder interest will no longer be payable to an organization described in Code § 170(c). As a result, the Trust will lose its income tax exempt status from that point forward because a charity will no longer be entitled to the remainder interest. Rather, it seems likely that at that time it will become a "grantor trust" or not be treated as a trust at all for income tax purposes.

Generally, a trust is taxed as an entity separate from its creator. I.R.C. § 641. As mentioned earlier, a charitable remainder trust itself is not subject to taxation unless it has unrelated business taxable income. Distributions of the unitrust amount to the lead interest recipient are characterized for Federal income tax purposes in the hands of the recipient based on the charitable remainder trust's income and capital gains and, as a result, may be includible in the recipient's gross income and, therefore, subject to income tax. The rules treat the unitrust beneficiary's distribution as ordinary income to the extent the trust has ordinary income, then capital gains to the extent the trust has capital gains, then tax-exempt income to the extent the trust has tax-exempt income, and finally as trust corpus. I.R.C. § 664(b).

Under certain circumstances, the general rule that treats a trust as a separate entity from its grantor will not apply. Rather, the grantor or another person will be treated as the owner of all or a portion of trust property for Federal income tax purposes and, therefore, will be treated as the taxpayer with respect to assets owned by the trust. In other words, the general rules of Subchapter J of the Internal Revenue Code (under which a trust is treated as a taxpayer separate from its grantor) do not apply to the extent the grantor is treated as the owner of the trust property. See Code § 671. Code sections 673 through 679 list the rights, powers and/or circumstances that, if present, will require the grantor (or, under Code § 678, another person) to take into account the trust's income, deductions and tax credits, as though the trust does not exist. Because the grantor trust and the grantor are considered the same person for income tax purposes, transfers between the grantor and the trust are not recognition events for income tax purposes. In other words, for income tax purposes, the trust existence is essentially ignored. See Rev. Rul. 85-13, 1985-1 C.B. 184; *cf.* Rev. Rul. 77-402, 1977-2 C.B. 222.

The grantor trust provisions would seem to apply immediately upon your purchase of the remainder interest.[6] Code § 676(a) provides that the grantor of a trust shall be treated as the owner of any portion of a trust where the grantor at any time has the power to revest title to the trust property in himself. Code §§ 677(a)(1) and 677(a)(2) provide that the grantor is treated as the owner of any portion of a trust whose income, without the approval or consent of an adverse party, is, or, in the discretion of the grantor, will be: (1) distributed to the grantor (or the grantor's spouse), or (2) held or accumulated for future distribution to the grantor (or the grantor's spouse). As mentioned later, it appears that you may have the ability once you have purchased the remainder to terminate the Trust. In addition, even if the Trust is not terminated, the remainder eventually will be paid to you. As a result, the Trust likely would become a grantor trust upon your purchase of the remainder interest and is no longer a charitable remainder trust. Consequently, subsequent transactions between the Trust and you are more likely than not no longer taxable events and it appears more likely than not that distributions from the Trust will no longer be subject to the tier income tax inclusion rules of Code § 664(b). For example, in Priv. Ltr. Rul. 8948023 (Sept. 1, 1989), the donor created three charitable remainder unitrusts for the benefit of four individuals. These trusts were funded with two apartment buildings and other assets. The beneficiaries wanted to sell one of the apartment

---

6 Under Code § 673, a grantor is treated as the owner of a trust if the grantor holds a reversionary interest in the trust and the value of the reversionary interest on the date that it is created is more than five percent of the value of the total trust fund. At inception, the Trust remainder is held by charity. Although it may be uncertain the section could apply by a subsequent purchase by the grantor under the circumstances, that inquiry may be academic because it seems that the taxable income attributable to the remainder may be taxed to the grantor under Code §§ 676 and/or 677 and the taxable income attributable to the unitrust interest will be taxed to the grantor under Code § 677 once the remainder purchase occurs. (Unlike Code § 673, where the presence of the Grantor's interest seems to be determined at the inception of the trust, Code §§ 676 and 677 seem to be based on a year-by-year determination of the grantor's interest.) The reason the taxable income attributable to the unitrust interest is not taxable to the grantor under Code § 677 prior to the remainder purchase is because Treas. Reg. § 1.664-1(a)(4) provides that the grantor trust rules do not apply to a charitable remainder trust solely by reason of the grantor (and/or the grantor's spouse) holding the unitrust interest. However, as discussed in the text of this opinion letter, the trust will no longer be a charitable remainder trust once the remainder has been purchased by a non-charitable taxpayer because the definition of a charitable remainder trust is one, among other conditions, where a charity holds the remainder. Moreover, we have uncovered no precedent dealing with the effects on the status of a trust where the grantor buys an interest in it. It is possible (though we do not think likely) a court would conclude that because the interest arose by purchase, rather than retention, certain of the grantor trust provisions (*e.g.*, I.R.C. § 677) do not apply and, therefore, the trust is not a grantor trust.

buildings and pay off the charitable remaindermen. The remaining assets were to be distributed to the unitrust beneficiaries. The taxpayers characterized the transaction between the charitable remainder trust and the charity as a purchase of the remainder interest from the charity. The IRS, on the other hand, characterized the transactions as a sale by the unitrust beneficiary to the charitable remaindermen. The IRS then stated that the distributions to the unitrust beneficiaries in termination of the trusts were not subject to the rules for including charitable remainder trust distributions in gross income pursuant to Code § 664(b) because the distributions did not represent payment of the annual unitrust amounts.

Similarly, in PLR 200127023 the settlor and the charity proposed to terminate a charitable remainder unitrust by distributing the actuarial value of the settlor's unitrust interest and the charity's remainder interest to them. The IRS stated that the terminating distributins to the settlor did not represent a distribution of the unitrust amount; therefore, section 664 of the Code did not apply. As in PLR 8948023, the Service treated the termination as a sale of the settlor's unitrust interest to the remainderman. Likewise, once you purchase the remainder interest, the Trust will cease to be a charitable remainder trust and, thus, more likely than not any distribution from the Trust cannot be a unitrust distribution within the meaning of Code §§ 664(d)(1)(A) and 664(d)(2)(A).

Although PLR 8948023 and PLR 200127023 support the proposition that distributions to you after the purchase of the remainder interest will not be subject to the tier classification of income rules, the IRS's recharacterization of the transactions is troubling. We believe it more likely than not that the IRS will be unsuccessful if it attempts to recharacterize your purchase of the remainder interest from the charity remainderman as a sale by you of your unitrust interest. Your purchase of The Educational and Medical Support Fund's remainder interest is distinguishable from the facts presented in the rulings. First, unlike PLR 8948023, you, not the Trust, are actually purchasing the remainder interest from the charity. In this ruling, the trustee distributed assets to the beneficiaries in satisfaction of their respective interests in the trust. The taxpayer then attempted to characterize the transaction as a purchase of the charitable remaindermen's interest. You, on the other hand, are not attempting to "characterize" a distribution as a purchase. Unlike the facts presented in PLR 8948023 and PLR 200127023, you are actually purchasing the charity's remainder interest.

Second, in the rulings, the distribution to the unitrust beneficiary was completed at a time when the charities still held a remainder interest. The charitable remainder trust continued to exist until the distribution to the unitrust beneficiary. In your situation, there will be no distributions to you until after you own both fractional Trust interests. It seems to us to be a difficult argument for the IRS to successfully make that the distribution to you was actually a purchase of your unitrust interest by the charitable remainderman when (1) the Trust is no longer a charitable remainder unitrust at the time of your distribution, (2) the charity no longer has an interest in the Trust at the time of your distribution, and (3) you have actually purchased and paid for the charity's remainder interest.

Under some circumstances, the IRS can recharacterize a transaction. For example, in I.R.C. § 2702(c), dealing with certain "joint" purchases, a recharacterization may

occur. We find no comparable authority for recharacterizing the purchase of a remainder in a charitable remainder trust as something other than a purchase of that remainder interest. As a matter of form, and based upon your representations, as a matter of substance, the purchase of the remainder truly will be a purchase of the remainder interest. Although, as discussed elsewhere, in some circumstances, a type of recharacterization may occur pursuant to the so-called "step-transaction" doctrine, we believe that it is more likely than not that the step-transaction doctrine could not be invoked to effect a recharacterization here. Accordingly, we do not believe the purchase of the charitable remainder trust remainder interest will be successfully recharacterized by the IRS as a sale by you of your unitrust interest.

VI. Trust Termination

Many states allow a trust to terminate if one individual acquires all the beneficial interests in the trust. "The American courts are pretty well agreed upon the general principle that where a trust is created for successive beneficiaries they can terminate the trust if they are all *sui juris* and desire to terminate it." William F. Fratcher, IV SCOTT ON TRUSTS § 337.1 (1989).

Some states refer to this termination as a merger (as a result, the termination is automatic) even though the trustee and the beneficiary are not the same person. Other states grant the beneficiary the right to terminate the trust.

> A trust may be terminated as the consequence of a merger or meeting of beneficial estates in the same person. Thus, a trust may be terminated where the life interest and the fee in the beneficial ownership merge in the same person, whether the merger or meeting of equitable interests is by purchase or descent ... if under the circumstances of such a merger or meeting of interests the trust ceases to have any active purpose.

76 Am Jur 2d, Trusts § 117.

A trust will not be terminated, however, if continuing the trust will accomplish the intended purpose of the grantor.

> The result is different, however, where the purpose of the settlor in creating the trust was not merely to enable the beneficiaries to enjoy the property successively, not merely to give the income to one and to preserve the principal for the other. In such a case the beneficiaries cannot terminate the trust even though they all desire to terminate it and none of them is under an incapacity, or one of them has acquired the interests of the others and wishes to terminate it. Even though the interests of the beneficiaries are alienable, the court will not terminate the trust at their request if it appears that such termination would defeat a material purpose of the settlor in creating the trust.

William F. Fratcher, IV SCOTT ON TRUSTS § 337.1 (1989).

> If all the beneficiaries are competent and they can prove that all the purposes which the settlor had in setting up the trust have been accomplished ... then ... the courts will grant the application for termination or will hold that the trust has automatically ended.

George G. Bogert and George T. Bogert, THE LAW OF TRUSTS & TRUSTEES, § 1007 (2d ed. rev. 1979).

Generally, the trust will not terminate if it was created to protect a beneficiary from his or her own improvidence. You have represented you did not create the Trust to protect the charity from its own poor decisions or yourself, the grantor, from your own decisions. Under these circumstances, termination of the Trust by merger of the lead and remainder interests would not frustrate your purposes in creating the Trust. Moreover, Paragraph A of Article FOURTEENTH of the Trust specifically provides that if the unitrust amount and the Remainder are held by the same individual, the interests merge.

Although we have been unable to find any Alaska cases directly on point, we believe the Trust will be terminated when you purchase the remainder interest. This determination, however, is not completely free from doubt. As stated earlier, if the designated remainderman no longer meets the requirements of I.R.C. § 170(c), the charitable remainder trust must provide for the selection of an alternative remainderman that qualifies under I.R.C. § 170(c). Treas. Regs. §§ 1.664-2(a)(6)(iv), 1.664-3(a)(6)(iv). As a result, even if irrevocably appointed, the interest of the charitable remainderman is vested subject to divestiture.

VII. IRS Recognition of Termination

The Service has indicated in somewhat analogous situations that the contemplated transfer of the remainder interest will result in a merger and, as a result, a trust termination. For example, in Priv. Ltr. Rul. 8311063 (Dec. 14, 1982) and Priv. Ltr. Rul. 8613046 (Dec. 30, 1985), the taxpayers retained the annuity interests in charitable remainder trusts. Rather than purchase the remainder interest from the charitable remainder beneficiaries, the taxpayers proposed to transfer the annuity interests to the charitable remainder beneficiaries. Although not critical to the outcome, the IRS mentioned in each ruling that the proposed transaction merged the lead and remainder interests and the trust disappeared.

The Service eventually issued a revenue ruling (which generally can be used or cited as precedent) holding that the assignment by a grantor or another beneficiary who holds an annuity interest in a charitable remainder trust to the charitable remainder beneficiary is entitled

to an income tax deduction. Rev. Rul. 86-60, 1986-1 C.B. 302.[7] The revenue ruling does not deal specifically with the consequences of any merger that might be effected by that assignment. However, it seems apparent from the ruling that assigning an interest in a charitable remainder trust will not cause the trust to fail ab initio as a charitable remainder trust.

We assume you will not have a court approve the termination of the Trust prior to purchasing the remainder interest. We believe it likely you could obtain an Alaska court decision prior to the purchase of the remainder holding that the Trust will terminate in favor of you and we believe it more likely than not that such a court decision would be binding for Federal tax purposes as to the property rights. It is well established that the character and extent of property interests subject to taxation must be determined by applying state law. *Blair v. Commissioner*, 300 U.S. 5 (1937); *Morgan v. Commissioner*, 309 U.S. 78 (1940); *Commissioner v. Bosch*, 387 U.S. 456 (1987). "[T]he underlying substantive rule involved is based on state law and the State's highest court is the best authority on its own law. If there be no decision by that court then federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State. In this respect, it may be said to be, in effect, sitting as a state court."*Commissioner v. Bosch*, 387 U.S. 456, 465 (1987). Although *Bosch* suggests that IRS and Federal courts are not bound by a determination of property interests made by a state trial court, the Service has stated that a decree by a state trial court handed down *before* the time of the event giving rise to the tax will be controlling on Federal authorities after the date of the decree. Rev. Rul. 73-142, 1973-1 C.B. 405.

In Rev. Rul. 73-142, a grantor created a trust for the benefit of his wife and children. The grantor retained the power to remove the trustee and appoint a successor. The trust instrument did not restrict the grantor from appointing himself as the successor trustee. These powers together with the trustee's power to withhold distributions of income and principal and apportion between income and principal would have caused the trust to be included in the grantor's gross estate when he died. During his life, the grantor petitioned a state court to construe the trust instrument. The state trial court construed the trust instrument as giving the grantor the right to remove the trustee and appoint a successor only once. The court further stated that this successor trustee could not be the grantor. The decision was not appealed. The grantor exercised his power to remove the trustee and appointed a successor. The Service stated that the decision apparently was contrary to state law; however, because the decree effectively terminated the grantor's powers prior to the event giving rise to the tax (*i.e.*, his death) the trust was not included in his gross estate. As a result, we believe a decree issued prior to the purchase of the remainder holding that upon the purchase of the remainder interest the Trust interests terminate in favor of you should be a binding determination of each beneficiary's property interests for Federal tax purposes.

---

[7] Although the revenue ruling involves an annuity trust, we believe the ruling should apply equally to unitrusts.

VIII. Tax Effects of the Termination

If a purchase of the remainder interest is effected so that you hold both the unitrust interest and the remainder interest and the trust terminates, we believe it more likely than not that the Trust termination should not be an income taxable event for either of two reasons: (1) either the Trust is no longer treated as an entity separate from you for income tax purposes after the purchase (*i.e.*, either its existence is ignored for income tax purposes because it is a grantor trust or it has "evaporated" by the merger of the lead and remainder interests into fee ownership), or (2) because, assuming the distributions in satisfaction of the "lead interest" and the remainder interest are pro rata (*i.e.*, each interest receives a proportionate share of each trust asset), there is no sale or exchange or other income taxable event.

Code § 1001(a) provides that the gain from the sale or other disposition of property is the excess of the amount realized therefrom over the adjusted basis provided in section 1001 for determining loss over the amount realized.

Treasury Regulations § 1.1001-1(a) provides that, except as otherwise provided in the income tax provisions of the Code, the gain or loss realized from the conversion of property into cash, or from the exchange of property for other property differing materially either in kind or extent, is treated as sustained gain or loss.

Even if the Trust is not a grantor trust in its entirety, the distribution from the Trust terminating the lead interest should not, in our view, be a taxable event because the specific income tax rules relating to distributions of property from a trust to a beneficiary appear to override the general rule of Code § 1001(a). The rules of Subchapter J appear to provide that a distribution from a trust generally will not be a taxable event unless the distribution is in satisfaction of a fixed pecuniary amount or is non-pro rata. See, *e.g.*, Treas. Reg. § 1.661(f)(1). This distribution is not, in our view, in satisfaction of a fixed pecuniary amount.

Rev. Rul. 56-437, 1956-2 C.B. 507, holds the severance of a joint tenancy in stock under a partition action provided for by state law to compel the issuance of separate stock certificates is not a sale or exchange. Likewise, the conversion of a joint tenancy in stock into a tenancy in common is a nontaxable transaction. Priv. Ltr. Rul. 8305095 (Nov. 3, 1982). The partition of joint tenancy property appears analogous to a pro rata distribution of trust property to its beneficiaries in termination of the trust and, accordingly, appears to be a non-income tax cognizable transaction.

This conclusion is supported by the implication in Rev. Rul. 69-486, 1969-2 C.B. 159, *distinguished by* Rev. Rul. 83-61, 1983-1 C.B. 78, where the trustee made a non-pro rata distribution of trust property despite the fact that the trust instrument and local law did not convey authority to the trustee to make a non-pro rata property distribution. The impetus for the distribution was an agreement between the trustee and the beneficiaries. Because neither the trust instrument nor local law conveyed authority to the trustee to make a non-pro rata distribution, Rev. Rul. 69-486 held the transaction should be treated as a pro rata distribution followed by an exchange between the beneficiaries and was subject to the provisions of Code

Sections 1001 and 1002. This revenue ruling implies that a pro rata distribution from the trust would not have been an income taxable event. This rationale seems supported by several recently issued private letter rulings (not precedent). Priv. Ltr. Rul. 200045028 (Aug. 16, 2000), 200045027 (Aug. 16, 2000), 200043027 (July 26, 2000) and 199951028 (Sept. 28, 1999).

For example in Priv. Ltr. Rul. 200043027, the trustee proposed to terminate the trust by making a pro rata distribution to five separate trusts. The IRS stated:

> The present case is distinguishable from Rev. Rul. 69-486 because it has been represented that the assets of the Trust will be allocated among the five separate trusts in a pro rata manner and each separate trust will receive its proportionate part of each of the assets of Trust. Accordingly, the proposed transaction will not be treated as a pro rata distribution followed by an exchange of assets among the beneficiaries of the three original trusts.

Based on these rulings, it does not appear that the Trust termination will be a taxable event under Code § 1001(a) because the termination will be effected by a pro rata distribution and not in satisfaction of a specific pecuniary amount. Moreover, if, as discussed above, the Trust is a grantor trust, once you purchase the remainder, there can be no taxable transactions between you and the Trust. Rev. Rul. 85-13. It is more likely than not that neither you nor the Trust will realize gain or loss under section 1001 of the Code upon the Trust termination.

Generally, assets transferred by lifetime gift contributed to a trust have a basis in the trust equal to the grantor's basis (increased, in some cases, by all or a portion of the Federal gift tax paid upon the transfer). I.R.C. § 1015 and Treas. Reg. § 1.1015-1(a). Assets purchased by the trustee, on the other hand, have a cost basis. I.R.C. § 1012 and Treas. Reg. § 1.1015-1(f). Thus, if the trustee sells the assets in the charitable remainder trust and purchases other assets, the trust should have a "cost basis" in the newly purchased assets. This basis must be allocated between the fractional interests in the trust. Treas. Reg. § 1.1015-1(b) and Treas. Reg. § 1.1015-2(a)(2). This allocation is based on the same factors used to value the interests at the time of contribution. Treas. Reg. § 1.1014-5(a)(3).

Generally, the basis of assets distributed from a trust to a beneficiary carries over from the trust to the distributee unless the distribution is a gain recognition event because the distribution is in satisfaction of a fixed pecuniary amount or the trustee elects to recognize gain. I.R.C. § 643(e). As stated above, if the distribution to you in termination of the trust is a pro rata distribution, it is more likely than not that no gain will be recognized on the terminating distribution. As a result, any assets purchased by the trustee should have a cost basis, and that cost basis allocable to the lead interest more likely than not will be carried over to you when the trust assets are distributed to you in satisfaction of your lead interest.

A purchased remainder interest, on the other hand, has a basis equal to the purchaser's cost. Treas. Reg. § 1.1014-8(c). The assets distributed to you in satisfaction of the

purchased remainder interest on the termination of the Trust should more likely than not have a combined or total basis equal to the purchase price you paid to acquire the remainder interest. Treas. Reg. § 1.1014-8(c). For example, in Priv. Ltr. Rul. 8143071 (July 30, 1981), the Service ruled that assets distributed to an individual who purchased his or her interest in the trust would have a basis in the hands of the distributee equal to the beneficiary's cost. Therefore, in our opinion, it is more likely than not that your basis in the assets distributed to you will have a "carryover" of the Trust's basis in the assets distributed to you in satisfaction of the lead interest and a cost basis for assets distributed to you in satisfaction of the remainder interest.

Generally, when transferred assets have a transferred basis in the hands of the transferee, the transferor's holding period becomes the transferee's holding period. I.R.C. § 1223(2). On the other hand, assets that take a basis to the transferor equal to the assets transferred by the transferor (*i.e.*, an exchanged basis rather than a transferred basis) generally have as their holdings period the actual holding period of the transferred assets in the hands of the transferee. I.R.C. § 1223(1). In the described transaction, the assets to be distributed in satisfaction of the lead interest will have a transferred basis, and, consequently, the Trust's holding period in those assets will become your holding period. The basis of the assets distributed in satisfaction of the remainder interest, on other hand, appears to be the cost of the remainder interest, *i.e.*, an exchanged basis. As a result, it is more likely than not that your holding period for the assets distributed to you in satisfaction of the remainder interest commences on the distribution date.

## IX. Substance Over Form

In certain circumstances the form of a transaction will be disregarded for tax purposes, and, instead, the substance of the transaction will determine the tax aspects. Thus, that the parties to a transaction characterize the transaction in one manner will not necessarily control the transaction's characterization for tax purposes. This doctrine, holding that the substance of a transaction, rather than its form, controls tax liability is widely, but often unpredictably applied. However, it is clear that the doctrine is most easily applied by the Service in self-dealing transactions.[8] Arm's-length transactions between the taxpayer and independent parties are less

---

[8] *See, e.g.*, *Campana Corp. v. Harrison*, 114 F.2d 400 (7th Cir. 1940); *Limericks, Inc. v. Commissioner*, 7 T.C. 1129 (1946), *aff'd*, 165 F.2d 483 (5th Cir. 1948); *58th Street Plaza Theatre v. Commissioner*, 16 T.C. 469 (1951), *aff'd*, 195 F. 2d 724 (2d Cir. 1952); *Central Cuba Sugar Co. v. Commissioner*, 16 T.C. 882 (1951), *aff'd on this point*, 198 F.2d 214 (2d Cir. 1952); *Gladys Chessman Evans v. Commissioner*, 30 T.C. 798 (1958); *Winters v. Dallman*, 238 F.2d 912 (7th Cir. 1956); *United States v. 58th Street Plaza Theatre*, 287 F. Supp. 475 (S.D.N.Y. 1968).

vulnerable to substance over form attack by the Service than self-dealing transactions.[9] Neither you nor any party related to you is a trustee of The Educational and Medical Support Fund. Thus, it does not appear the proposed plan fairly can be considered a self-dealing transaction.

Simply having an arm's length transaction, however, does not guarantee the substance over form doctrine will not be applied. The doctrine may also be applied if the transaction lacks a bona fide business purpose. In *Frank Lyon Co. v. United States*, 435 U.S. 561(1978), the Supreme Court developed a theory of minimal substance. The Supreme Court reasoned that in the absence of facts evidencing an intention that the transaction is a sham, the parties need only acquire "genuine attributes"[10] of the selected form of the transaction. If there is a "distinct element of economic reality,"[11] the form of the transaction will be respected. The proposed transaction is imbued with distinct elements of economic reality. The Trust is a valid charitable remainder trust not unlike any other charitable remainder trust established pursuant to the terms of I.R.C. § 664. Moreover, the charity will receive an economic benefit from its Trust interest. It is more likely than not that the substance over form doctrine will not be successfully applied to the proposed transaction.

X. Step Transaction Doctrine

If several transactions produce a higher tax liability when combined, the Service often argues that the several steps should be combined and taxed based on the ultimate result. The step-transaction doctrine treats formally separate steps as a single transaction if the steps are, in substance, integrated, interdependent, and focused towards a particular result. *Penrod v. Commissioner*, 88 T.C. 1415, 1427-29 (1987). There have been many rationales set forth for asserting the step-transaction doctrine and as a result the doctrine is somewhat vague. There appears to be, however, three tests that have been used to determine when to apply the step-transaction doctrine: (1) the binding commitment test, (2) the end result test, and (3) the interdependence test.

---

9 *See, e.g.*, *Crown Cork Int'l. Corp. v. Commissioner*, 4 T.C. 19, *aff'd*, 149 F.2d 968 (3d Cir. 1945); *Bank of America Nat'l Trust and Savings Ass'n v. Commissioner*, 15 T.C. 544, *aff'd*, 193 F.2d 178 (9th Cir. 1951); *A. Arena & Co., Ltd. v. United States*, 103 F. Supp. 505 (S.D. Cal. 1952); *Nat'l Lead Co. v. Commissioner*, 336 F.2d 134 (2d Cir. 1964), *cert. denied*, 380 U.S. 908 (1964).

10 435 U.S. at 584.

11 435 U.S. at 577.

A. Binding Commitment Test

The first test for applying the step-transaction doctrine is the binding commitment test first applied by the Supreme Court in *Commissioner v. Gordon*, 391 U.S. 83 (1968). This test permits application of the step-transaction doctrine "if, at the time the first step is entered into, there was a binding commitment to undertake the later step. "*Penrod v. Commissioner*, 88 T.C. 1415, 1429 (1987).

This binding commitment test establishes a clear methodology for determining when to apply the step-transaction doctrine. An analysis of the taxpayer's intent is not required.

> Under such test, a court must make an objective determination as to whether the acquired shareholders were bound by an obligation to sell the shares received in an acquisition. Other factors, such as intent by such shareholders to sell their shares, are not considered.

*Penrod* 88 T.C. at 1429.

You have represented and we have assumed that you and the charitable remainder beneficiary had no prearranged plan for the purchase of the remainder at the time the charitable remainder trust was created or when the charity was irrevocably designated. Thus, it seems evident that neither you nor the charity was bound to enter into the sale of the remainder interest at the time The Educational and Medical Support Fund was designated as the charitable remainder beneficiary of the Trust, and, as a result, the binding commitment test should not be applied to step the transactions together.

It should be noted, however, that merely passing the binding commitment test will not ensure that the transactions will not be stepped together. Decisions issued subsequent to *Gordon* have somewhat limited the application of the binding commitment test. "The step-transaction doctrine would be a dead letter if restricted to situations where the parties were bound to take certain steps."*King Enterprises, Inc. v. United States*, 189 Ct. Cl. 466, 477 (1969). As a result, the court limited the *Gordon* decision to its facts. Other courts have used the binding commitment test as one factor to consider but have been reluctant to use the binding commitment test as its sole determinant factor when deciding whether to apply the step-transaction doctrine. *Redding v. Commissioner*, 71 T.C. 597 (1979); *McDonald's Restaurants of Illinois v. Commissioner*, 688 F.2d 520 (7th Cir. 1982) *rev'g* 76 T.C. 972 (1981); *Security Industrial Ins. Co. v. United States*, 702 F.2d 1234 (5th Cir. 1983).

B. End Result Test

Under the end result test, separate transactions will be combined into one transaction if it appears that each step was a prearranged part of a single transaction intended from the outset to be taken for the purpose of reaching the ultimate result. Essentially, the test insures that "a given result at the end of a straight path is not made a different result because [it

was] reached by following a devious path."*Minnesota Tea Co. v. Helvering*, 302 U.S. 609, 613 (1938). In *Gregory v. Helvering*, the Supreme Court described the step-transaction doctrine in end result terms as:

> a mere device which put[s] on the form of a corporate reorganization as a disguise for concealing its real character, and the sole object and accomplishment of which was the consummation of a preconceived plan, not to reorganize the business or any part of the business, but to transfer a parcel of corporate shares to the petitioner. No doubt, a new valid corporation was created. But that corporation was nothing more than a contrivance to the end last described. It was brought into existence for no other purpose; it performed as it was intended from the beginning it should perform, no other function. When that limited function had been exercised, it immediately was put to death.

*Gregory v. Helvering*, 293 U.S. 465.

The key factor in applying the end result test is the intent of the parties at the time of entering into the first step of the asserted step-transaction. "The end result test is based upon the actual intent of the parties as of the time of the [initial transaction]."*Penrod*, 88 T.C. at 1430. "The end result test applies only when component parts of a single transaction are *intended from the outset* to be taken for the purpose of reaching the ultimate result." Priv. Ltr. Rul. 8646002 (July 18, 1986)(emphasis added). If, prior to entering the initial step, the parties intended to take the subsequent steps to ultimately reach the end result, then the transactions can be stepped together. For instance in *Minnesota Tea*, prior to reorganizing, the corporation passed a resolution requiring that cash received in the reorganization would be distributed to the corporation's shareholders, who, in turn, would pay the corporation's debts. The Supreme Court stepped the transactions together holding that the shareholders were a mere conduit as evidenced by the resolution.

In contrast to *Minnesota Tea*, if the parties did not intend to take the subsequent steps at the time the taxpayer entered into the initial transaction, the formally separate steps will be respected and not be combined. *King Enterprises, Inc. v. United States*, 189 Ct. Cl. 466 (1969); *Penrod v. Commissioner*, 88 T.C. 1415 (1987); Priv. Ltr. Rul. 8646002 (July 18, 1986).

Based upon your representations to us, we have assumed the trier of fact would find that at the time the charity was irrevocably designated, there was no plan, prearrangement or understanding between you and the charitable remainder beneficiary that the charity would sell its remainder interest to you. Although you may have known at the time the Trust was formed that you might approach the charitable remainder beneficiary at a future date, it was never within your power to unilaterally cause the later sale to take place, and you had no assurance that any later sale would take place. As a result, it seems unlikely to us that the trier of fact would conclude that there existed the requisite plan for you to purchase the remainder interest from the charity either at the time the charitable remainder trust was created or at the time the charity was designated as the remainder beneficiary.

C. Mutual Interdependence Test

The third test used in applying the step-transaction doctrine is the mutual interdependence test. Under the mutual interdependence test, the court must determine whether the separate transactions are "so interdependent that the legal relationship created by one transaction would have been fruitless without a completion of the series." *Redding v. Commissioner*, 630 F.2d 1169 (7th Cir. 1980), *cert. denied*, 450 U.S. 913 (1980). This test, rather than focusing on the end result of the transactions, focuses on the relationship between the steps. Each step is examined separately to determine whether it has a reasonable economic justification for standing alone, or whether its success depends on successful completion of each of the other steps.

This test applies most often when an entity acts as a mere conduit, having no business purpose of its own and merely acting to secure the taxpayer's literal compliance with the applicable provisions of law. *West Coast Marketing v. Commissioner*, 46 T.C. 32 (1966). The IRS, describing both the end result and mutual interdependence tests, states that threshold steps will not be subject to the step transaction doctrine when:

> such preliminary activity results in a permanent alteration of a previous bona fide business relationship. Thus, the substance of each of a series of steps will be recognized and the step transaction doctrine will not apply, if each such step demonstrates independent economic significance, is not subject to attack as a sham, and was undertaken for valid business purposes and not mere avoidance of taxes.

Rev. Rul. 79-250, 1979-2 C.B. 156.

The creation of a charitable remainder trust and the irrevocable designation of a charity as the remainderman permanently alters the business relationship between the parties. The charitable remainderman is entitled to a remainder interest that had as of the time the Trust was settled an actuarial value of at least ten percent of the trust assets. This alone is a transaction that has economic significance for the parties, wholly apart from whether there is a subsequent sale of the remainder interest. The charity's entitlement is not contingent upon the sale of the remainder interest. Further, you will be at risk with the passage of time due to fluctuations in the value of the remainder.

The purchase of the remainder interest and termination of the Trust also have independent ramifications. Once the purchase is effected, the charity will own outright (*i.e.*, free of trust) the proceeds it receives from you. The charity's interest is no longer subject to the Trust. As a result, once the sale is completed the charity, not the trustee, will have investment responsibilities over the charity's interest. Thus, for these reasons it seems more likely than not that each step has independent significance.

The intent of the parties also appears to be relevant when applying the mutual interdependence test. *Christian Estate v. Commissioner*, 57 T.C. 1231, 1243 (1987). For the reasons discussed above under the "end result test," it similarly seems unlikely that the trier of fact would conclude that the requisite intention to sell the remainder interest to you was present at the time the charity received its remainder interest in the Trust.

Consequently, regardless of which of the step-transaction tests is applied, we believe it is more likely than not that the step-transaction doctrine would not be applied to combine the settling of the Trust with the later purchase by you of the remainder interest.

## XI. Conclusion

It is our view that it is more likely than not the remainder interest in a charitable remainder trust is alienable, and if purchased by you, it is more likely than not the Trust will be terminated pursuant to Alaska state law. It is also our view that it is more likely than not the purchase of the remainder and the termination of the Trust will not cause the Trust to retroactively lose its status as a charitable remainder trust but will cause the Trust to no longer be a charitable remainder trust once the purchase of the remainder interest is effected. It is our view that it is more likely than not the termination of the Trust will not be an income tax recognition event to you. In our opinion, it is more likely than not that you will have a carryover basis in the assets distributed to you in satisfaction of the lead interest and a cost basis in the assets distributed in satisfaction of the remainder interest. It is more likely than not, in our view, that your holding period in the purchased remainder interest becomes the holding period in the assets distributed in satisfaction of the remainder interest and the Trust's basis in the assets distributed in satisfaction of the lead interest becomes your basis in those assets. Finally, we believe more likely than not that neither the substance over form doctrine nor the step-transaction doctrine will be successfully applied to the proposed transaction.

MILBANK, TWEED, HADLEY & MCCLOY LLP

BY: Jonathan G. Blattmachr

JONATHAN G. BLATTMACHR
Partner

JGB/RAJ/EXW