**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

No. 06-407 T
(into which have been consolidated Nos. 06-408 T,
06-409 T, 06-410 T, 06-411 T, 06-810 T, 06-811 T)
Judge Emily C. Hewitt
(E-Filed: August 21, 2008)

| | | |
|---|---|---|
| ALPHA I, L.P., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-407 T |
| BETA PARTNERS, L.L.C., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-408 T |
| R, R, M & C PARTNERS, L.L.C., BY AND THROUGH R, R, M & C GROUP, L.P., A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-409 T |
| R, R, M & C GROUP, L.P., BY AND THROUGH | ) | |

| | | |
|---|---|---|
| ROBERT SANDS, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-410 T |
| CWC PARTNERSHIP I, BY AND THROUGH TRUST FBO ZACHARY STERN U/A FIFTH G. ANDREW STERN AND MARILYN SANDS, TRUSTEES, A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-411 T |
| MICKEY MANAGEMENT, L.P., BY AND THROUGH MARILYN SANDS, A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-810 T |

| | | |
|---|---|---|
| M, L, R & R, BY AND THROUGH RICHARD E. SANDS, TAX MATTERS PARTNER, | ) | |
| Plaintiff, | ) | |
| v. | ) | 06-811 T |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**UNITED STATES' RESPONSE TO PLAINTIFFS' PROPOSED FINDINGS OF FACT**

Respectfully submitted,

THOMAS M. HERRIN
Attorney of Record
Tax Division
Department of Justice
717 N. Harwood, Suite 400
Dallas, Texas 75201
(214) 880-9745 / (214) 880-9762
(214) 880-9742 (FAX)

JOHN A. DICICCO
Acting Assistant Attorney General
STEVEN I. FRAHM
Acting Chief, Court of Federal Claims Section
LOUISE HYTKEN
Chief, Southwestern Civil Trial Section
MICHELLE C. JOHNS
Trial Attorney

**I. General Objections**

The United States will not dispute that R,R,M & C Group, L.P. ("Group") was formed as a partnership insofar as (i) a formal certificate of limited partnership was filed on the date stated pursuant to Missouri Uniform Limited Partnership Law Section 359.091 and (ii) the partnership agreement, on its face, met the requirements for a partnership under Missouri Uniform Limited Partnership Law Section 359.011(7), however, the United States denies (i) that the partnership, in actual operation, satisfied the requirement that partners possess a bona fide intention to carry on a legitimate business for profit under Missouri Partnership Law Section 358.060(1) and (ii) that a partnership existed for federal income tax purposes. Subject to these reservations and solely for purposes of Plaintiffs' and Defendant's motions for summary judgment, the United States will not dispute that Group was a partnership and adopts terms in relation to Group that are consistent with that characterization. The United States does not concede for any other purpose that the events occurred as so characterized under applicable local law or for federal income tax purposes.

**II. Specific Responses**

**Formation of R, R, M & C Group, L.P.**

1. In 2001, as part of a financial plan, certain Sands family members and certain family trusts formed and invested in R,R,M & C Group, L.P. ("Group"), a family investment partnership.

**RESPONSE:** The United States disputes that Group was formed as part of a financial plan and instead asserts that it was formed as part of a Heritage Organization, L.L.C. ("Heritage") promoted tax avoidance scheme to generate artificial losses to avoid taxation on capital gains. (Docket Entry No. 108, App-A-12-104, 120-128).

2. Group was a limited partnership formed on August 23,2001 under the laws of Missouri.

**RESPONSE:** The United States does not dispute plaintiffs' statement.

3. At its formation in 2001, the original limited partners in Group were Robert Sands, Richard Sands, Marilyn Sands, and CWC Partnership I ("CWC") (hereinafter referred to collectively as the "original limited partners of Group").

**RESPONSE:** The United States does not dispute plaintiffs' statement.

4. CWC is a general partnership organized under the law of New York. As of December 31, 2001, the Trust FBO Abigail Stem U/W Laurie Sands ("Abigail Trust") and Trust FBO Zachary Stem U/W Laurie Sands ("Zachary Trust") each held a 49.5% Class 2 partnership interest in CWe. Richard Sands and Robert Sands each held a .5% Class 2 partnership interest in CWC.

**RESPONSE:** The United States does not dispute plaintiffs' statement.

5. The general partner in Group was at all times R, R, M & C Management Corp.

**RESPONSE:** The United States does not dispute plaintiffs' statement.

6. R, R, M & C Management Corp. is a corporation that was formed on August 23,2001 under the laws of Missouri.

**RESPONSE:** The United States does not dispute plaintiffs' statement.

7. In 2001 and 2002, R, R, M & C Management Corp.'s sole shareholders were Robert Sands and Richard Sands. Robert Sands and Richard Sands each contributed $55,000 and 1,001 shares of Constellation stock to Management Corp. in exchange for the stock they received from Management Corp.

**RESPONSE:** The United States does not dispute plaintiffs' statement.

8. On August 28, 2001, the original limited partners of Group each contributed cash and various assets to Group for limited partner interests in the partnership. Their respective partnership interests were as follows:

a. Robert Sands 24.975% limited partner interest

b. Richard Sands 24.975% limited partner interest

c. Marilyn Sands 24.975% limited partner interest

d. CWC 24.975% limited partner interest

**RESPONSE:** The United States does not dispute plaintiffs' statement.

9. On August 28, 2001, R,R,M &C Management Corporation contributed $3,403 and 2,002 shares of Class A common stock of Constellation with a fair market value of $84,785 to Group for a .1 % general partnership interest in Group.

**RESPONSE:** The United States does not dispute plaintiffs' statement.

10. On September 21,2001 Group held $359,290 and 2,002,002 shares of stock Constellation Brands, Inc.

**RESPONSE:** The United States does not dispute plaintiffs' statement.

**The Transfers**

11. The partnership agreement of Group provided that a limited partner could transfer or assign (but not mortgage, pledge or otherwise grant a security interest in) his interest in the partnership to any person (defined to include a trust) upon delivering reasonably requested instruments of transfer and assignment to the general partner and upon obtaining consent in writing by the general partner to such substitution of a limited partner.

**RESPONSE:** The United States does not dispute plaintiffs' statement.

12. The partnership agreement of Group provided that the rights and obligations of the parties under the agreement were to be "governed by and construed and interpreted in accordance with the

laws of the State of Missouri applicable to contracts made and to be performed wholly within Missouri, without regard to choice or conflict of laws rules."

**RESPONSE:** The United States does not dispute plaintiffs' statement.

13. On September 21, 2001, the original limited partners of Group each formed a charitable remainder unitrust: Robert Sands was the grantor of the Robert Sands Charitable Remainder Unitrust - 2001; Richard Sands was the grantor of the Richard Sands Charitable Remainder Unitrust - 2001; Marilyn Sands was the grantor of the Marilyn Sands Charitable Remainder Unitrust - 2001; and CWC was the grantor of the CWC Partnership I Charitable Remainder Unitrust - 2001.

**RESPONSE:** The United States does not dispute plaintiffs' statement.

14. The trustees of each CRUT were Richard Sands, Robert Sands, and the Alaska Trust Company.

**RESPONSE:** The United States does not dispute plaintiffs' statement, but objects because plaintiffs' proposed finding is incomplete. According to the CRUT documents, Robert and Richard Sands were "Independent Trustees" with broad powers, while the Alaska Trust Company was only an "Administrative Trustee" with extremely limited power. (Pls.' Ex 4-7, App. at pp. 131,141-146, 169, 179-184, 205, 215-220, 242, 252-256). Further, according to the Alaska Trust Company's web page, the President and CEO of the Alaska Trust Company is Jonathan Blattmachr's brother, Douglas J. Blattmachr. (Ex. 1 hereto).

15. The terms of the CRUTs complied with the requirements of Section 664( d) of the Code and the related Treasury Regulations.

**RESPONSE:** The United States disputes this proposed finding as it states a legal conclusion rather than a fact.

16. The IRS did not audit the CRUTs or determine that they did not meet the requirements of Section 664(d) of the Code and the related Treasury Regulations.

**RESPONSE:** The United States does not dispute plaintiffs' statement.

17. On September 21, 2001, the original limited partners of Group transferred their partnership interests in Group to four charitable remainder trusts ("CRUTs"): Robert Sands transferred his interest to the Robert Sands Charitable Remainder Unitrust - 2001; Richard Sands transferred his interest to the Richard Sands Charitable Remainder Unitrust - 200 I; Marilyn Sands transferred her interest to the Marilyn Sands Charitable Remainder Unitrust - 2001; and CWC transferred its interest to the CWC Partnership I Charitable Remainder Unitrust - 2001 (the four CRUTs are hereinafter referred to as the "CRUT limited partners" or "the CRUTs").

**RESPONSE:** The United States disagrees that the transfers actually occurred and submits that the facts as asserted in No. 27 of its Second Set of Proposed Findings (Docket Entry 107) are correct.

18. Pursuant to Assignment and Assumption of Partnership Interest agreements, the original limited partners of Group assigned and delivered their right, title and interest in Group to their respective CRUTs, and the CRUTs assumed such interests and agreed to be substitute limited partners in Group.

**RESPONSE:** The United States disagrees that the transfers actually occurred and submits that the facts as asserted in No. 27 of its Second Set of Proposed Findings (Docket Entry 107) are correct.

19. The Assignment and Assumption of Partnership Interest agreements entered by the original limited partners of Group and the CRUT limited partners were to be governed by and construed in accordance with the laws of the State of Missouri.

**RESPONSE:** The United States disagrees that the transfers actually occurred and submits that the facts as asserted in No. 27 of its Second Set of Proposed Findings (Docket Entry 107) are correct. The United does not dispute that the Group partnership agreement provided that the rights and obligations of the parties under the agreement were to be "governed by and construed and interpreted in accordance with the laws of the State of Missouri.” (See Response to Proposed Finding 12, above).

20. The general partner of Group, R,R,M & C Management Corporation, received notice of and consented to the assignments of limited partnership interests by the original limited partners of Group to the CRUT limited partners.

**RESPONSE:** The United States disagrees that the transfers actually occurred and proposes that No. 27 of its Second Set of Proposed Findings (Docket Entry 107) be submitted in lieu of plaintiffs’ proposal. However, inasmuch as Robert Sands was president of R,R,M & C Management Corporation, as well as an assignee, both in his individual and representative capacity as an “Independent Trustee” of CWC, to the extent that the transfers actually occurred, the United States does not dispute that R,R,M & C Management Corporation received notice of and consented to the transfers.

21. In order to determine the amount of a current deduction for their gifts to the CRUTs, the Sands hired Goerig & Associates, L.L.C., a qualified appraisal firm, to determine the fair market value of their limited partnership interests on the date of the gift.

**RESPONSE:** The United States disagrees with plaintiffs’ proposed fact and submits that No. 30 of its Second Set of Proposed Findings (Docket Entry 107) be submitted in lieu of plaintiffs’

proposal. 22. The appraisal determined the fair market value of a 24.975% limited partnership interest in Group on September 21,2001 to be $5,198,897.

**RESPONSE:** The United States does not dispute plaintiffs' statement.

23. Each of the Sands claimed a current deduction on their 2001 personal tax returns for the present value of their respective remainder interests as determined by the appraisal from Goerig & Associates. The IRS has not contested these charitable deductions.

**RESPONSE:** The United States does not dispute plaintiffs' statement.

24. All profits, losses, and credits of Group were to be allocated to the partners in proportion to their percentage interests.

**RESPONSE:** The United does not dispute that the Group's partnership agreement provided that all profits, losses, and credits of Group were to be allocated to the partners in proportion to their percentage interests.

25. On October 1,2001, Group sold the 2,002,002 shares of Constellation it held for $74,862,863. On the Form 1065 U.S. Return of Partnership Income filed by Group for the taxable period ending December 31, 2001, Group reported capital losses from the sale totaling $(19,894,501).

**RESPONSE:** The United States does not dispute plaintiffs' statement.

26. Since the CRUT limited partners owned their interests in Group when it sold the stock, the capital losses from the sale of the Constellation Brands stock were allocated to the CRUT limited partners in accordance with their limited partnership interests.

**RESPONSE:** The United States disputes this proposed finding as it states a legal conclusion rather than a fact.

27. In a motion filed on April 11, 2008 and granted by the Court on May 14,2008, plaintiffs requested leave to amend their complaints to concede the capital gains adjustments asserted by defendant. Group conceded that on its Form 1065 for 2001 it should have reported long term capital gain of $65,539,019 and short-term capital loss of ($207,636). Group and the other plaintiffs conceded the capital gains adjustments on the ground that none of the transactions of the partnerships increased the amount considered at-risk for an activity under Section 465(b )(1) and that the at-risk rules would disallow losses and require the partnerships and their partners to recognize gain on the transactions as set forth in the FPAAs.

**RESPONSE:** The United States does not dispute plaintiffs' statement. However, the United States objects the proposed finding as incomplete. The United States submits that the proposed finding should be supplemented to state that United States disputes that plaintiffs' concession under 465 has anything to do with the capital gain adjustments proposed by the FPAAs. (Docket Entries 95 and 106).

28. Since the CRUT limited partners owned their interests in Group when it sold the stock, the capital gains from the sale of the Constellation Brands stock would properly be allocated to the CRUT limited partners.

**RESPONSE:** The United States disputes this proposed finding as it states a legal conclusion rather than a fact.

**Subsequent Events**

29. On February 22,2002, the original limited partners of Group each exercised the power

found in Article Fourth, page 5 of their respective CRUTs to irrevocably designate a charity to receive the CRUTs' remainder interests. They designated the Educational and Health Support Fund ("the Fund").

**RESPONSE:** The United States disputes this proposed finding as incomplete. The United States submits that Nos. 31 and 32 of its Second Set of Proposed Findings (Docket Entry 107) be submitted in lieu of plaintiffs' proposal.

30. The trustees of the Fund were James Locke, Freddy Robinson, and Wesley Stallings.

**RESPONSE:** The United States does not dispute plaintiffs' statement.

31. Freddy Robinson is the Executive Partner of Bernard Robinson & Company, LLP, an accounting firm that had provided personal tax preparation services to the Sands family for many years. Wesley Stallings was a partner with Bernard Robinson & Company in 2002 and now works for one of its clients, Blue Ridge Companies.

**RESPONSE:** The United States does not dispute plaintiffs' statement.

32. Since 2000, on an annual basis the fees Bernard Robinson & Company, LLP receives from the Sands family for services rendered averaged approximately 3% of the firm's total annual revenue.

**RESPONSE:** The United States does not dispute plaintiffs' statement.

33. James Locke is now senior counsel with Nixon Peabody, LLP and has served as a member of the law firm's governing committee and as head of the Business Group in the firm's Rochester office.

**RESPONSE:** The United States does not dispute plaintiffs' statement.

34. Nixon Peabody is the principal outside counsel for Constellation Brands, Inc. (the

"Company"). The fees that Nixon Peabody has received from the Company for legal services during the period 2001 through 2007 have not exceeded in any single year more than 1.5 percent of the firm's revenues for such year.

**RESPONSE:** The United States does not dispute plaintiffs' statement.

35. When the trustees of the Fund were appointed, they did not have a prearrangement, agreement, or understanding with the Sands family members that as trustees they would agree to sell the Fund's remainder interests in the CRUTs to the grantors/lead beneficiaries of those CRUTs.

**RESPONSE:** The United States disputes plaintiffs' statement. The United States submits that Nos. 8,11 and 12 of its Second Set of Proposed Findings (Docket Entry 107) be submitted in lieu of plaintiffs' proposal.

36. On February 27,2002, the original limited partners of Group entered into purchase agreements with the trustees of the Educational and Health Support Fund whereby they purchased the remainder interests in their respective CRUTs from the Educational and Health Support Fund.

**RESPONSE:** The United States does not dispute plaintiffs' statement.

37. The original limited partners in Group obtained an updated appraisal opining that the discounts for lack of marketability used in valuing the 24.975% limited partnership interests in Group were still valid. Based on this appraisal, the 24.975% limited partnership interest in Group held by each CRUT was worth $5,482,334.

**RESPONSE:** The United States disputes plaintiffs' statement. The United States submits that No. 35 of its Second Set of Proposed Findings (Docket Entry 107) be submitted in lieu of plaintiffs' proposal.

38. The original limited partners each paid $550,074.56, the present value of a remainder

interest in the 24.975% limited partnership interest in Group to the Educational and Health Support Fund for a total of $2,200,298.24.

**<u>RESPONSE:</u>** The United States disputes plaintiffs' statement as it states a legal conclusion rather than a fact. The United States submits that No. 34 of its Second Set of Proposed Findings (Docket Entry 107) be submitted in lieu of plaintiffs' proposal.

39. The trustees of the Educational and Health Support Fund exercised their independent judgment in agreeing to sell the remainder interests in the CRUTs to the original limited partners of Group. They did not have a prearrangement or understanding with the Sands family members that they would agree to sell the remainder interests in the CRUTs to the grantors at the time of their appointment as trustees of the Educational and Health Support Fund. They determined that the best interests of the Educational and Health Support Fund would be served by obtaining cash up front rather than waiting for up to 20 years to obtain the remainder interests in the CRUTs which could fluctuate significantly in value during that time period.

**<u>RESPONSE:</u>** The United States disputes plaintiffs' statement. The United States submits that Nos. 8,11 and 12 of its Second Set of Proposed Findings (Docket Entry 107) be submitted in lieu of plaintiffs' proposal.

40. The purchase of the remainder interests in the CRUTs by the original limited partners of Group (who were the present beneficiaries of the CRUTs) terminated each CRUT. The original limited partners of Group then received a distribution of the asset held by their respective CRUT, a 24.975% limited partnership interests in Group.

**RESPONSE:** The United States disputes plaintiffs' statement. The United States submits that No. 36 of its Second Set of Proposed Findings (Docket Entry 107) be submitted in lieu of plaintiffs' proposal.

41. The Sands family members were advised that the distributions by the CRUTs were not taxable events.

**RESPONSE:** The United States does not dispute plaintiffs' statement.

42. On February 27, 2002, Group made distributions of $75,267,108.29. Group first distributed $94,307.04 to the trustees of each CRUT so that the CRUTs could make the required unitrust payment through February 27,2002. The CRUTs made their pro rata unitrust payments of $94,307.04 to the term beneficiaries for the period leading up to the termination of the CRUTs.

**RESPONSE:** The United States disputes plaintiffs' statement. The United States submits that No. 36 of its Second Set of Proposed Findings (Docket Entry 107) be submitted in lieu of plaintiffs' proposal.

43. Later that same day, Group made the following distributions to its new partners: $18,703,680.15 each to Robert, Richard, Marilyn and CWC and $75,159.52 to RRMC Corp.

**RESPONSE:** The United States disputes plaintiffs' statement. The United States submits that No. 36 of its Second Set of Proposed Findings (Docket Entry 107) be submitted in lieu of plaintiffs' proposal.

44. The Educational and Health Support Fund has provided donations of $2,752,288 to a number of charitable organizations since it sold its remainder interests in the CRUTs to the original limited partners of Group.

**RESPONSE:** The United States does not dispute plaintiffs' statement.

**Reasonable Cause and Good Faith of Plaintiffs and Their Partners**

45. In deciding how to report the above transactions for tax purposes, the Group limited partners relied on their personal advisors at their long-time accounting firm Bernard Robinson & Company ("Bernard Robinson") and at the law firm of Milbank, Tweed, Hadley & McCloy LLP ("Milbank Tweed") who reviewed the financial plan presented by Heritage.

**RESPONSE:** The United States disputes plaintiffs' statement. The United States submits that Nos. 5-8,11, 12 and 38 of its Second Set of Proposed Findings (Docket Entry 107) be submitted in lieu of plaintiffs' proposal.

46. Members of the Sands family, including Richard and Robert's parents, had engaged Bernard Robinson & Company to prepare tax returns and provide tax advice for decades prior to 2001, beginning in the 1950s.

**RESPONSE:** The United States does not dispute plaintiffs' statement.

47. Members of the family had also engaged the law firm of Milbank, Tweed, Hadley & McCloy LLP ("Milbank Tweed"), in particular Jonathan Blattmachr, to provide legal services beginning in the 1990s.

**RESPONSE:** The United States does not dispute plaintiffs' statement.

48. In implementing the transactions described above and in determining the correct tax treatment of the transactions, the Group limited partners engaged Lewis Rice and Milbank Tweed to provide legal services and advice relating to the transactions.

**RESPONSE:** The United States disputes plaintiffs' statement. The United States submits that Nos. 5-8,11, 12, 38 and 51 of its Second Set of Proposed Findings (Docket Entry 107) be submitted in lieu of plaintiffs' proposal.

49. Lewis Rice made an independent evaluation whether to enter into attorney-client relationships with the Sands family members. Lewis Rice independently determined the fee it would seek directly from the Sands family for its services, based upon its estimate of the amount of time and complexity of the services and based upon the factors expressly permitted under the applicable rules of professional conduct in Missouri. The fee was not dependent upon the outcome of any transaction, nor was it a percentage of an amount invested.

**RESPONSE:** The United States disputes plaintiffs' statement. The United States submits that Nos. 5-8,11, 12, 38 and 51 of its Second Set of Proposed Findings (Docket Entry 107) be submitted in lieu of plaintiffs' proposal.

50. Heritage did not pay or agree to pay Lewis Rice any referral fee. In addition, Lewis Rice did not pay or agree to pay any referral fee to Heritage, nor did the firm split any fees with Heritage.

**RESPONSE:** The United States disputes plaintiffs' statement. The United States submits that Nos. 5-8,11, 12, 38 and 51 of its Second Set of Proposed Findings (Docket Entry 107) be submitted in lieu of plaintiffs' proposal.

51. Robert Sands completed his due diligence on Lewis Rice on behalf of his family. He researched Lewis Rice and reviewed information on the principal attorneys who would be assisting the family in the transactions described above.

**RESPONSE:** The United States disputes plaintiffs' statement. The United States submits that Nos. 5-8,11, 12, 38 and 51 of its Second Set of Proposed Findings (Docket Entry 107) be submitted in lieu of plaintiffs' proposal.

52. In implementing the transactions described above and in determining the correct tax treatment of the transactions, the original limited partners of Group engaged Lewis Rice to provide legal services and tax opinions relating to the transactions. The engagement agreements with Lewis Rice were independent of any agreements with Heritage.

**RESPONSE:** The United States disputes plaintiffs' statement. The United States submits that Nos. 5-8,11, 12, 38 and 51 of its Second Set of Proposed Findings (Docket Entry 107) be submitted in lieu of plaintiffs' proposal.

53. Lewis Rice independently determined the fee the firm would seek from the clients for their services, and they were paid for their services by the partners of plaintiff R, R, M & C Group, L.P.

**RESPONSE:** The United States disputes plaintiffs' statement as it states a legal conclusion rather than a fact. The United States submits that Nos. 5-8,11, 12, 38 and 51 of its Second Set of Proposed Findings (Docket Entry 107) be submitted in lieu of plaintiffs' proposal.

54. The principal attorneys at Lewis Rice who worked on implementing the transactions described above and in drafting legal opinions relating to the proper tax treatment of the transactions were Michael Mulligan, William Falk, and Lawrence Weltman.

**RESPONSE:** The United States disputes plaintiffs' implication that the treatment espoused by the opinion letters was the proper one.

55. Michael Mulligan, William Falk, and Lawrence Weltman are experienced attorneys who have primarily practiced in the area of tax law. Michael Mulligan is Co-Chairman of the Estate Planning Department at Lewis Rice and had been with the firm since 1972. Mr. Mulligan has written numerous articles on tax and estate planning issues. He also has spoken frequently on such topics at conferences for attorneys and accountants. William Falk is the Chairman of the Tax Department at Lewis Rice and previously practiced law with the Internal Revenue Service and with Thompson

Coburn LLP. Mr. Falk received his LL.M. in taxation from Washington University School of Law in 1982. When he worked with the IRS, Mr. Falk served as a Trial Attorney and Tax Shelter Litigation Coordinator with the Internal Revenue Service, Office of District Counsel, St. Louis, Missouri. Lawrence Weltman received his law degree from Washington University School of Law in 1968, and his LL.M. in taxation from New York University School of Law in 1970. Mr. Weltman practiced with Baker & McKenzie from 1970-1973 and has been with Lewis Rice since 1973.

**RESPONSE:** The United States does not dispute plaintiffs' statement.

56. Over the course of its engagement, 10 different Lewis Rice personnel expended approximately 549 hours representing the Sands family. Mr. Mulligan spent approximately 122 hours on the engagement, and Mr. Falk, who was the principal drafter of the opinions, personally spent approximately 258 hours on the engagements.

**RESPONSE:** The United States does not dispute plaintiffs' statement.

57. Lewis Rice researched Constellation Brands and conducted interviews of various Group limited partners or requested information from them to determine their purposes in engaging in the transactions, their investment experience, their investment goals, and other relevant information. Based on the information gathered, Lewis Rice prepared factual representations for the Group limited partners to sign.

**RESPONSE:** The United States does not dispute plaintiffs' statement.

58. Lewis Rice extensively researched and analyzed the applicable law and authorities in evaluating the tax consequences of the transactions.

**RESPONSE:** The United States does not dispute plaintiffs' statement.

59. Lewis Rice issued an opinion dated December 28,2001 to each of the original limited

partners of Group. The opinions concluded that it was more likely than not correct to not treat the contingent obligations to cover the short sale positions as liabilities for purposes of section 752.

**RESPONSE:** The United States does not dispute plaintiffs' statement.

60. The opinions Lewis Rice issued to the members of the Sands family were based on the research and analysis of applicable law and authorities, consistent with applicable opinion standards, and the experience, professional judgment, and assessment of the probable outcome of litigation or other adversarial proceedings arising from IRS challenges to the transactions.

**RESPONSE:** The United States disputes plaintiffs' statement as it states a legal conclusion rather than a fact.

61. Lewis Rice continues to affirm that the opinions rendered accurately reflected the law and the proper tax treatment of the transactions at the time the opinions were issued, and that the tax treatment by the plaintiffs would more likely than not be upheld.

**RESPONSE:** The United States does not dispute plaintiffs' statement. However, the United States disputes plaintiffs' implication that the treatment espoused by the opinion letters was the proper one.

62. The original limited partners of Group relied on the opinions issued by Lewis Rice in determining the proper tax treatment of the transactions described above.

**RESPONSE:** The United States disputes plaintiffs' statement. The United States submits that Nos. 5-8,11, 12, 38 and 51 of its Second Set of Proposed Findings (Docket Entry 107) be submitted in lieu of plaintiffs' proposal.

63. The principal attorneys at Milbank Tweed who worked on forming the CRUTs and in drafting legal opinions relating to the proper tax treatment of the transactions were Jonathan Blattmachr and Eric X. Wallace. Mr. Blattmachr carefully supervised the work of Mr. Wallace.

**RESPONSE:** The United States does not dispute plaintiffs' statement. The United States disputes plaintiffs' implication that the treatment espoused by the opinion letters was the proper one.

64. Mr. Blattmachr is an experienced attorney who has primarily practiced in the area of trusts and estate planning. Mr. Blattmachr has been an attorney at Milbank Tweed since 1977, and a partner since 1980. Mr. Blattmachr is currently Chairman of Milbank Tweed's Trusts and Estates Department. He has written numerous of articles on tax and estate planning issues. He speaks frequently on such topics at conferences for attorneys and accountants and has taught such classes for law students at Columbia and New York University.

**RESPONSE:** The United States does not dispute plaintiffs' statement.

65. Milbank Tweed provided services relating to both the drafting of documents relating to the formation of the CRUTs and the research, analysis, and drafting of a tax opinion on the effect of the purchase of the remainder interests in the CRUTs by the original limited partners of Group who were the lead interest beneficiaries of the CRUTs.

**RESPONSE:** The United States does not dispute plaintiffs' statement.

66. Over the course of the engagement, nine different Milbank Tweed personnel expended approximately 240 hours representing the Sands family. Milbank Tweed personnel researched the applicable law for formation of the CRUTs. Milbank Tweed attorneys drafted documents relating to formation of CRUTs. Milbank Tweed personnel extensively researched and analyzed the applicable law and authorities in evaluating the tax consequences of the transactions involving the CRUTs.

**RESPONSE:** The United States does not dispute plaintiffs' statement.

67. The Sands did not withhold any material information from Milbank Tweed in connection with the representation.

**<u>RESPONSE:</u>** The United States disputes plaintiffs' statement. The support for plaintiffs' statement is that Blattmachr did not know of any material facts which were withheld by the Sands family.

68. Milbank Tweed issued an opinion dated June 21,2002 to each of the original limited partners of Group. The opinions concluded that it was more likely than not: (1) the remainder interests in the CRUTs could be assigned; (2) that the purchase of the remainder interest by the original limited partners of Group would terminate the CRUTs under Alaska law; (3) that the purchase of the remainder interests and termination of the CRUTs would not cause the CRUTs to retroactively lose their status as charitable remainder trusts; (4) that the termination of the CRUTs would not be an income tax recognition event to the Sands family members; (5) that the purchasers would have a carryover basis in the assets distributed in satisfaction of the lead interest and a cost basis in the assets distributed in satisfaction of the remainder interest; (6) that the purchasers' holding period in the purchased remainder interest becomes the holding period in the assets distributed in satisfaction of the remainder interest and the CRUTs' bases in the assets distributed in satisfaction of the lead interest becomes the purchasers' bases in those assets.

**<u>RESPONSE:</u>** The United States does not dispute plaintiffs' statement.

69. The opinions Milbank Tweed issued to the members of the Sands family were based on extensive research and analysis of the pertinent legal authorities available at the time, consistent with the experience and professional judgment of the attorneys who worked on the matter.

**<u>RESPONSE:</u>** The United States disputes plaintiffs' statement. The United States submits that Nos. 5-8,11, 12 and 38 of its Second Set of Proposed Findings (Docket Entry 107) be submitted in lieu of plaintiffs' proposal.

70. Milbank Tweed continues to affirm that the opinions rendered accurately reflected the applicable legal authorities at the time the opinions were issued.

**RESPONSE:** The United States does not dispute plaintiffs' statement.

71. The Group limited partners relied on the opinions issued by Milbank Tweed in determining the proper tax treatment of the transactions described above.

**RESPONSE:** The United States disputes plaintiffs' statement. The United States submits that Nos. 5-8,11, 12 and 38 of its Second Set of Proposed Findings (Docket Entry 107) be submitted in lieu of plaintiffs' proposal.

72. Bernard Robinson & Company prepared tax returns for plaintiffs and their partners in 2001 and 2002.

**RESPONSE:** The United States does not dispute plaintiffs' statement.

73. The positions taken on the tax returns prepared by Bernard Robinson & Company for plaintiffs and their partners are consistent with the opinion by Lewis Rice that it was more likely than not correct to not treat the contingent obligations to cover the short sale positions as liabilities for purposes of section 752.

**RESPONSE:** The United States does not dispute plaintiffs' statement.

74. The positions taken on the tax returns prepared by Bernard Robinson & Company for plaintiffs and their partners are consistent with the opinion of Milbank Tweed that it was more likely than not: (1) that the purchase of the remainder interests and termination of the CRUTs would not cause the CRUTs to retroactively lose their status as charitable remainder trusts; (2) that the termination of the CRUTs would not be an income tax recognition event to the Sands family members; (3) that the purchasers would have a carryover basis in the assets distributed in satisfaction of the lead interest and a cost basis in the assets distributed in satisfaction of the remainder interest; (4) that the purchasers' holding period in the purchased remainder interest becomes the holding period in the assets distributed in satisfaction of the remainder interest and the

CRUTs' bases in the assets distributed in satisfaction of the lead interest becomes the purchasers' bases in those assets.

**RESPONSE:** The United States disputes plaintiffs' statement. The United States submits that No. 41 of its Second Set of Proposed Findings (Docket Entry 107) be submitted in lieu of plaintiffs' proposal.

75. The original limited partners of Group trusted their advisors, Freddy Robinson, Jonathan Blattmachr, and Lewis Rice in taking the tax positions at issue and had no reason to question their advice.

**RESPONSE:** The United States disputes plaintiffs' statement. The United States submits that Nos. 5-8,11, 12 and 38 of its Second Set of Proposed Findings (Docket Entry 107) be submitted in lieu of plaintiffs' proposal.

Respectfully submitted,

/s/ Thomas M. Herrin
THOMAS M. HERRIN
Attorney of Record
Tax Division
Department of Justice
717 N. Harwood, Suite 400
Dallas, Texas 75201
(214) 880-9745 / (214) 880-9762
(214) 880-9742 (FAX)

RICHARD T. MORRISON
Acting Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
LOUISE HYTKEN
Chief, Southwestern Civil Trial Section
MICHELLE C. JOHNS
Trial Attorney