B

**THE EDUCATIONAL AND HEALTH SUPPORT FUND**

THIS TRUST AGREEMENT, is made and executed this 22nd day of February, 2002, by and between RICHARD SANDS and ROBERT SANDS, hereinafter collectively referred to as the "Grantors" and each singly as a "Grantor," and FREDDY H. ROBINSON, JAMES A. LOCKE, III, and WESLEY M. STALLINGS, hereinafter collectively referred to as the "Trustee" and each singly as a "Co-Trustee."

W I T N E S S E T H:

WHEREAS, the Grantors desire to create a trust effective this date and the Trustee agrees to act as Trustee thereof;

NOW, THEREFORE, the Grantors and Trustee agree as follows:

**ARTICLE I**

1. **TRUST NAME:** This trust shall be known as "The Educational and Health Support Fund," and shall sometimes hereinafter be referred to as the "Supporting Organization."

2. **TRUST PROPERTY:** The Grantors hereby transfer, convey and deliver to the Trustee the property set forth on Schedule "A," which is attached hereto and by this reference made a part hereof.

All the property transferred and delivered to the Trustee shall, upon acceptance thereof by the Trustee, constitute the trust estate and shall be held, managed and distributed as herein provided.

3. **ADDITIONAL PROPERTY:** The Grantors or any other person, with the consent of the Trustee, may transfer and contribute property to the Supporting Organization and such property shall be held pursuant to the provisions hereinafter set forth.

4. **CHARITABLE PURPOSES AND RESTRICTIONS:** The Grantors intend that the Supporting Organization qualify as a "supporting organization" described in § 509(a)(3) of the Internal Revenue Code, exempt from federal income taxation pursuant to § 501(c)(3) of the Internal Revenue Code. This Agreement shall be construed accordingly, and all powers and authority of the Trustee shall be limited accordingly. The Trustee shall have the power to amend this instrument in order to comply with the requirements of § 509(a)(3) of the Internal Revenue Code and the Regulations thereunder, and any such amendment, except as it may otherwise provide, shall be deemed effective as of the date of creation of this Supporting Organization. The Supporting Organization shall not carry on propaganda or otherwise attempt to influence legislation in a

manner which would result in loss of its exemption pursuant to § 501(c)(3) of the Internal Revenue Code.

No activity of the Supporting Organization shall consist of participating in or intervening in (including the publishing or distributing of statements) any political campaign on behalf of (or in opposition to) any candidate for public office. No part of the net earnings of the Supporting Organization shall inure to the benefit of or be distributable to the Grantors, Trustee, or any private individual or shareholder; provided however, that the Supporting Organization shall be authorized to pay reasonable compensation for services rendered and to make payments and distributions in furtherance of its purposes as set forth in paragraph 2 of Article II.

**ARTICLE II**

1. **ADMINISTRATION BY TRUSTEE:** The Trustee shall manage and administer the property comprising the Supporting Organization, as hereinafter set forth.

2. **SPECIFIED ORGANIZATIONS:** The Supporting Organization is organized, and at all times hereafter shall be operated, exclusively for the benefit of, to perform the functions of, or to carry out the purposes of, the following charitable organizations, to wit:

a. Rochester General Hospital, 1425 Portland Avenue, Rochester, New York 14621 (EIN: 16-0743134);

b. Viahealth, Inc., 1040 University Avenue, Rochester, New York 14607 (EIN: 22-2551509);

c. Harley School, 1981 Clover Street, Rochester, New York 14618 (EIN: 16-0755783);

d. Norman Howard School, Inc., 220 Idlewood Road, Rochester, New York 14618 (EIN: 11-9904502);

e. Rochester Institute of Technology, 46 Lomb Memorial Drive, Rochester, New York 14623 (EIN: 16-0743140);

f. University of Rochester, 306 Lattimore Hall, Rochester, New York 14627 (EIN: 16-0743209);

g. Skidmore College, 815 North Broadway, Saratoga Springs, New York 12866 (EIN: 14-1338562);

h. Reed Institute, 3203 S.E. Woodstock Boulevard, Portland, Oregon 97202 (EIN: 93-0386908);

i. Pace University, 235 Elm Road, Briarcliff Manor, New York 10510 (EIN: 13-5562314);

j. Rochester Area Community Foundation, 500 East Avenue, Rochester, New York 14607 (EIN: 23-7250641);

k. Jewish Community Federation of Greater Rochester New York, Inc., 441 East Avenue, Rochester, New York 14607 (EIN: 16-0868942);

l. Frederick Ferris Thompson Hospital, 350 Parrish Street, Canandaigua, New York 14424 (EIN: 16-0743024);

m. Greater Canandaigua Family YMCA, 32 North Main Street, Canandaigua, New York 14424 (EIN: 16-0755898);

n. Fidelity Charitable Gift Fund (Donor Advised Fund), 82 Devonshire Street, F35, Boston, Massachusetts 02109;

o. Vanguard Charitable Endowment Program, 100 Vanguard Boulevard, Malvern, Pennsylvania 19355 (EIN: 23-2888152);

p. Idaho Community Foundation, 270 West State Street, Boise, Idaho 83702 (EIN: 82-0425063);

q. Rochester City Ballet, 210-A North Goodman Street, Rochester, New York 14607;

r. Norman Howard School Foundation, Inc., 275 Pinnacle Road, Rochester, New York 14623 (EIN: 16-1557039); and

s. F. F. Thompson Hospital Foundation, Inc., 350 Parrish Street, Canandaigua, New York 14424 (EIN: 22-2959984).

The above-listed organizations shall hereinafter collectively be referred to as the "Supported Organizations" and each singly as a "Supported Organization." The Supporting Organization shall not engage in any activities which are not in furtherance of the purposes referred to in § 509(a)(3)(A) of the

Internal Revenue Code. The Supporting Organization shall not operate to support or benefit any organization other than the Supported Organizations.

3. **OPERATIONS:** The Supporting Organization shall engage in activities which benefit or support the Supported Organizations. The Supporting Organization may make payments to or for the use of, or provide services or facilities for, individual members of the charitable class benefited by one or more of the Supported Organizations. The Supporting Organization may make a payment through another unrelated organization to a member of a charitable class benefited by one or more of the Supported Organizations, but only if such payment shall constitute a grant to an individual rather than a grant to an organization. The Supporting Organization may carry on an independent activity or program which supports or benefits one or more of the Supported Organizations.

No part of the activities of the Supporting Organization shall be in furtherance of a purpose other than supporting or benefiting one or more of the Supported Organizations.

4. **VARYING AMOUNT OF SUPPORT:** The Supporting Organization may vary the amount of the Supporting Organization's support among the different Supported Organizations, so long as

the Supporting Organization meets the requirements of the "integral part" test set forth in § 1.509(a)-4(i)(3) of the Regulations.

5. **ALTERNATE SUPPORTED ORGANIZATIONS:** If any one or more of the Supported Organizations ceases to qualify pursuant to § 509(a)(1) or (2), or if a Supported Organization substantially fails or abandons its operations, or if a Supported Organization dissolves, then the Supporting Organization shall terminate its support of such Supported Organization or Organizations, as the case may be. In such event, the Trustee may substitute one or more organizations described in § 509(a)(1) or (2) and which serve purposes and carry on activities similar to those served by the former Supported Organization or Organizations, as the case may be. The substituted Supported Organization or Organizations shall be treated for all purposes hereunder as a Supported Organization or Organizations. No Trustee shall have the foregoing power of substitution unless the event giving rise to the power is beyond the control of the Supporting Organization.

6. **RELATIONSHIP BETWEEN SUPPORTING ORGANIZATION AND SUPPORTED ORGANIZATION:** a. Operated in Connection With Supported Organization: The Supporting Organization shall be operated in connection with the Supported Organizations.

b. Responsiveness: The Supporting Organization shall be responsive to the needs or demands of the Supported Organizations.

c. Charitable Trust and Accounting: The Supporting Organization is a charitable trust under the laws of the State of Idaho and each named Supported Organization has the power to enforce the Supporting Organization and compel an accounting under Idaho Code § 15-7-303.

d. Integral Part: The Supporting Organization shall maintain a significant involvement in the operations of the Supported Organizations.

In each of the Supporting Organization's fiscal years, the Supporting Organization shall satisfy either of the following requirements, to wit:

(i) the Trustee shall pay substantially all of the Supporting Organization's income to or for the use of one or more of the Supported Organizations and this amount of support shall be sufficient to ensure the attentiveness of one or more of the Supported Organizations to the operations of the Supporting Organization. In addition, the Trustee shall pay to or for the use of one or more Supported Organizations a substantial amount of the Supporting Organization's total support which meets the

attentiveness requirements set forth in this subparagraph (i) of paragraph 6(d); or

(ii) the activities in which the Supporting Organization engages for or on behalf of the Supported Organizations shall be activities to perform the functions of, or to carry out the purposes of, the Supported Organizations. In addition, these activities shall be such that, but for the involvement of the Supporting Organization, one or more of the Supported Organizations would normally engage in the activities.

7. **TAXATION RULES:** Notwithstanding any other provisions set forth in this Trust Agreement, if, and for so long as, the Supporting Organization is a private foundation which does not qualify as a "supporting organization" as described in § 509(a)(3) of the Internal Revenue Code, then the Trustee shall not:

a. Engage in any act of self-dealing as defined by § 4941(d) of the Internal Revenue Code;

b. Retain any excess business holdings as defined by § 4943(c) of the Internal Revenue Code which would subject the Supporting Organization to tax under § 4943 of the Internal Revenue Code;

c. Make any investments which would subject the Supporting Organization to tax under § 4944 of the Internal Revenue Code;

d. Make any taxable expenditure as defined by § 4945(d) of the Internal Revenue Code;

e. Fail to make distributions at such time or in such manner as to subject the Supporting Organization to tax under § 4942 of the Internal Revenue Code; or

f. Carry on any other activities not permitted to be carried on by:

(i) an organization exempt from federal income tax under Internal Revenue Code § 501(c)(3), or

(ii) an organization to which contributions are deductible under Internal Revenue Code § 170(c)(2).

8. **PRIVATE OPERATING FOUNDATION; CONDUIT FOUNDATION:** If, for any reason, the Supporting Organization does not qualify as a "supporting organization" under § 509(a)(3) of the Internal Revenue Code, then the Trustee shall devote its best efforts to qualifying the Supporting Organization as an organization described in § 509(a)(1) or § 509(a)(2) of the Internal Revenue Code, a "private operating foundation" under § 4942(j) of the Internal Revenue Code, or as a private foundation qualifying under § 170(b)(1)(E)(ii) of the Internal Revenue Code, a

so-called "conduit foundation." These efforts shall include, for example, amendments to this organizing instrument which may be required by law for qualification of the Supporting Organization as a "private operating foundation" or a "conduit foundation."

9. **TRUST TERMINATION:** If this Supporting Organization terminates for any reason, then after paying of adequately providing for the debts and obligations of the Supporting Organization, the Trustee in its sole and absolute discretion shall distribute the remaining assets to one or more of the Supported Organizations which are then described in §§ 509(a)(1) and 509(a)(2) of the Code, provided that the use of these assets will be restricted to those purposes exclusively described under § 501(c)(3) of the Code..

10. **CREATION OF CORPORATION:** The Trustee is authorized and empowered to form and organize a nonprofit corporation for the uses and purposes of the Supporting Organization, and qualify as a "supporting organization" under Internal Revenue Code § 509(a)(3). Such corporation, if organized, shall be named The Educational and Health Support Fund. Upon the creation and organization of such corporation, the Trustee is authorized and empowered to convey, transfer and deliver to such corporation all the property and assets to which the Supporting Organization may be or become entitled. It is the

purpose of this paragraph 10 that the board of directors of such corporation, if incorporated and organized as provided by this paragraph, shall take the place of the Trustee, who shall be the incorporator of such corporation.

**ARTICLE III**

1. **INCOME AND PRINCIPAL ALLOCATIONS:** Unless otherwise specifically provided, the Trustee shall determine whether all or any part of any payment or property received or charged, expense or taxes incurred, shall be credited to or charged against income or principal, or both, in the manner provided by Idaho law, including but not limited to the Uniform Principal and Income Act as now in effect and as hereafter amended. The determination of the Trustee as to what constitutes principal and income shall, unless otherwise provided herein, be conclusive and binding on all persons in any manner interested in the Supporting Organization created by this Trust Agreement.

2. **TRUSTEE POWERS:** To carry out the purposes of the Supporting Organization created under this Trust Agreement, and subject to any limitations stated elsewhere herein, the Trustee shall have all of the powers and authority under Idaho law including but not limited to those which are set forth in the Uniform Trustee's Powers Act, being Chapter 1 of Title 68, Idaho Code, as now in effect and as it may hereafter be amended, but

only to the extent such powers are not inconsistent with the operation of the Supporting Organization created herein as a supporting organization which qualifies as such pursuant to Internal Revenue Code § 509(a)(3).

3. **TRUSTEE COMPOSITION:** At no time shall the number of Co-Trustees who are not "disqualified persons" (as defined in § 4946 of the Internal Revenue Code) be less than a number which is one more than the number of disqualified persons then serving as Co-Trustees.

4. **COMPENSATION AND ACCOUNTING:** The Trustee and all persons employed by the Trustee shall be entitled to reasonable compensation in accordance with the provisions of applicable state law. The Trustee shall reasonably account as to the Supporting Organization and its administration as provided by state law.

5. **SUCCESSOR TRUSTEE:** a. Resignation: Any Co-Trustee may resign as a Co-Trustee at any time by so notifying in writing the Grantors, or surviving Grantor, if living, otherwise the remaining Co-Trustees.

b. Removal: The Grantors or the surviving Grantor, as the case may be, may remove a Co-Trustee, other than a Grantor, by giving written notice of such removal to such Co-Trustee. Upon the death or incapacity of both Grantors, the

Co-Trustees may remove a Co-Trustee by two-thirds (2/3) majority vote and by giving written notice of such removal to such Co-Trustee. Any vacancy created pursuant to the removal provisions contained herein shall be filled as otherwise provided in this paragraph 5 of this Article III.

c. Appointment of Successor by Grantors and Descendants: (i) In the event either Grantor, subsequent to the execution of this Agreement, is appointed to be a Co-Trustee, such Grantor shall appoint a successor Co-Trustee to succeed such Grantor upon such Grantor's death, resignation or incapacity; provided however, that such appointee must be a descendant of the Grantors' parents or such descendant's spouse. Thereafter, if no appointment is made pursuant to subparagraph 5(c)(ii) of this Article III, then each appointed descendant or descendant's spouse shall appoint his or her successor Co-Trustee who must also be a descendant of the Grantors' parents or such descendant's spouse.

(ii) Upon the death, resignation, removal, or incapacity of any Co-Trustee who is not a Grantor, a successor Co-Trustee shall be appointed by the Grantors or the surviving Grantor, as the case may be, subject to the provisions of paragraph 3 of this Article III. In the event the number of Co-Trustees is increased pursuant to paragraph 6 of this Article

III, an additional Co-Trustee or Co-Trustees shall be appointed by the Grantor or the surviving Grantor, as the case may be, to fill any vacant Co-Trustee or Co-Trustees position or positions created by such increase in the number of Co-Trustees, subject to the provisions of paragraph 3 of this Article III. If no appointment is made pursuant to the foregoing provisions, a successor Trustee shall be appointed in accordance with paragraph 5(d) of this Article III.

d. No Appointment Made by Grantors or Descendants: If no appointment of successor or additional Co-Trustee is made by the Grantors or surviving Grantor, as the case may be, or in all events after the death of both Grantors, then the remaining Co-Trustees shall appoint a successor or additional Co-Trustee by majority vote, subject to the provisions of paragraph 3 of this Article III.

If no appointment is made in accordance with the foregoing procedures, a successor or additional Co-Trustee shall be appointed by a court of competent jurisdiction upon the petition of any Co-Trustee or of any person or persons interested in the Trust.

e. Successor Trustees: A successor Co-Trustee shall succeed as a Co-Trustee of this Supporting Organization with the same conditions as are herein set forth.

f. Appointments: All appointments as to a successor or additional Co-Trustee shall be in writing and subject to the provisions of paragraph 3 of this Article III.

g. Increase in Number of Co-Trustees: Subject to paragraph 3 of this Article III, in the event the number of Co-Trustees is increased pursuant to paragraph 6 of this Article III, additional Co-Trustees shall be appointed in accordance with the terms of this paragraph 5 of Article III to fill any vacant Co-Trustee or Co-Trustees position or positions created by such increase in the number of Co-Trustees and if the number of Co-Trustees is reduced pursuant to paragraph 6 of this Article III the applicable number of Co-Trustees shall be removed in accordance with paragraph 5(b) of this Article III.

6. **BOARD OF TRUSTEES:** All Co-Trustees who are currently serving as a Co-Trustee of this Supporting Organization shall be members of the Board of Trustees. The Board of Trustees may appoint a Chairperson to serve for a period designated by the Board of Trustees. The Board of Trustees may adopt application forms and requirements, charitable qualification criteria, or other regulations to govern administrative functions relating to the operations of the Supporting Organization, provided that they are consistent with the charitable purposes herein. The Board of Trustees may establish separate subcommittees and delegate

specific duties and responsibilities to such subcommittees. The Board of Trustees may expand or contract the number of members of the Board of Trustees (to be appointed in accordance with paragraph 5 of this Article III), but the Board of Trustees shall at all times consist of not less than three (3) members nor more than nine (9) members.

7. **LIABILITY AND INDEMNITY:** A Co-Trustee shall not be liable for conduct that was in good faith and which the Co-Trustees reasonably believed was in the best interests of the Supporting Organization or not opposed to the Supporting Organization's best interests or had no reasonable cause to believe the conduct was unlawful. A Co-Trustee shall be indemnified by the Supporting Organization for costs and damages incurred as a result of an action or threatened actions with respect to the Co-Trustee's activities in connection with the administration of this Supporting Organization. Indemnification shall be made according to the permitted standards under Idaho law for such indemnification of charitable trustees. The Co-Trustees may carry such insurance coverage as they may deem appropriate for insuring the Co-Trustees, officers and employees for actions commenced or threatened against them.

Notwithstanding the foregoing, no payment shall be made to or for the benefit of any Co-Trustee, officer or employee as

would subject this Supporting Organization to taxation under Chapter 42 of the Internal Revenue Code.

8. **CONTROL:** At no time shall the Supporting Organization be controlled, directly or indirectly, by one or more disqualified persons, as defined in § 4946 of the Internal Revenue Code, or other than foundation managers and other than one or more of the Supported Organizations.

9. **REFERENCES TO SECTIONS:** Unless the context clearly implies the contrary, all references to "§" or "§§" (section or sections) are to sections of the Internal Revenue Code of 1986, as hereafter amended, or corresponding provisions of future federal tax laws and the Internal Revenue Code.

**ARTICLE IV**

1. **AMENDMENTS:** This Agreement may be amended or modified from time to time by the Grantors or the surviving Grantor, by an instrument in writing, signed by the Grantors or surviving Grantor and delivered to the Trustee; provided however, that no amendment shall authorize the Trustee to conduct the affairs of this Supporting Organization in any manner or for any purpose contrary to the provisions of Internal Revenue Code § 501(c)(3) or that would disqualify this Supporting Organization as a tax-exempt trust or prohibit donations to this Supporting Organization from being deductible for tax purposes.

Upon the death of both Grantors, this Agreement and the Supporting Organization hereby created are irrevocable; provided however, the Trustee, acting alone, shall have the power to amend this Supporting Organization for the purpose of ensuring that the Supporting Organization qualifies as a charitable organization to which donations are deductible within the meaning of the Internal Revenue Code.

2. **SITUS:** This Supporting Organization is established and accepted by the Trustee under the laws of the State of Idaho and the situs of the Supporting Organization is Idaho. All questions concerning the validity, construction and administration of such Supporting Organization shall be determined under such laws. Provided however, the Trustee may transfer the situs, including transferring the place of administration to another jurisdiction (whether the place of administration is within our without the State of Idaho), of the Supporting Organization created hereunder without the necessity of judicial proceedings or intervention; provided that the Trustee has determined, in good faith, that the transfer would facilitate the economic and convenient administration of such Supporting Organization and would not materially impair the interests of any beneficiary or potential beneficiary. In the event of such a change of situs, all questions concerning the

Supporting Organization's validity, construction and administration shall be determined under the laws of the jurisdiction to which situs is transferred. Provided however, that no change in situs shall authorize the Trustee to conduct the affairs of the Supporting Organization in any manner or for any purpose contrary to the provisions of Internal Revenue Code § 501(c)(3) or that would disqualify the Supporting Organization as a tax-exempt trust or prohibit donations to this Supporting Organization from being deductible for tax purposes.

3. **HEADINGS:** The paragraph headings are for convenience only and are not a part of this Trust Agreement and shall not be used in interpreting or construing this Trust Agreement.

4. **INVALIDITY:** If any provision of this Agreement is deemed invalid or unenforceable for any reason, the remaining provisions of this Agreement shall not be affected thereby but rather shall be enforced to the greatest extent permitted by applicable law.

5. **ORIGINAL COUNTERPARTS:** This Agreement may be executed through the use of multiple original counterparts.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement the day and year first above written.

Richard Sands

Robert Sands

"Grantors"

Freddy H. Robinson

James A. Locke, III

Wesley M. Stallings

"Co-Trustees"

IN WITNESS WHEREOF, the parties hereto have executed this Agreement the day and year first above written.

Richard Sands

Robert Sands

"Grantors"

Freddy H. Robinson

James A. Locke, III

Wesley M. Stallings

"Co-Trustees"

# The Following Represents the Original Counterpart for The Educational and Health Support Fund Trust Agreement Executed by James A. Locke III

# THE EDUCATIONAL AND HEALTH SUPPORT FUND

THIS TRUST AGREEMENT, is made and executed this 22nd day of February, 2002, by and between RICHARD SANDS and ROBERT SANDS, hereinafter collectively referred to as the "Grantors" and each singly as a "Grantor," and FREDDY H. ROBINSON, JAMES A. LOCKE, III, and WESLEY M. STALLINGS, hereinafter collectively referred to as the "Trustee" and each singly as a "Co-Trustee."

W I T N E S S E T H:

WHEREAS, the Grantors desire to create a trust effective this date and the Trustee agrees to act as Trustee thereof;

NOW, THEREFORE, the Grantors and Trustee agree as follows:

## ARTICLE I

1. **TRUST NAME:** This trust shall be known as "The Educational and Health Support Fund," and shall sometimes hereinafter be referred to as the "Supporting Organization."

2. **TRUST PROPERTY:** The Grantors hereby transfer, convey and deliver to the Trustee the property set forth on

Schedule "A," which is attached hereto and by this reference made a part hereof.

All the property transferred and delivered to the Trustee shall, upon acceptance thereof by the Trustee, constitute the trust estate and shall be held, managed and distributed as herein provided.

3. **ADDITIONAL PROPERTY:** The Grantors or any other person, with the consent of the Trustee, may transfer and contribute property to the Supporting Organization and such property shall be held pursuant to the provisions hereinafter set forth.

4. **CHARITABLE PURPOSES AND RESTRICTIONS:** The Grantors intend that the Supporting Organization qualify as a "supporting organization" described in § 509(a)(3) of the Internal Revenue Code, exempt from federal income taxation pursuant to § 501(c)(3) of the Internal Revenue Code. This Agreement shall be construed accordingly, and all powers and authority of the Trustee shall be limited accordingly. The Trustee shall have the power to amend this instrument in order to comply with the requirements of § 509(a)(3) of the Internal Revenue Code and the Regulations thereunder, and any such

amendment, except as it may otherwise provide, shall be deemed effective as of the date of creation of this Supporting Organization. The Supporting Organization shall not carry on propaganda or otherwise attempt to influence legislation in a manner which would result in loss of its exemption pursuant to § 501(c)(3) of the Internal Revenue Code.

No activity of the Supporting Organization shall consist of participating in or intervening in (including the publishing or distributing of statements) any political campaign on behalf of (or in opposition to) any candidate for public office. No part of the net earnings of the Supporting Organization shall inure to the benefit of or be distributable to the Grantors, Trustee, or any private individual or shareholder; provided however, that the Supporting Organization shall be authorized to pay reasonable compensation for services rendered and to make payments and distributions in furtherance of its purposes as set forth in paragraph 2 of Article II.

**ARTICLE II**

1. **ADMINISTRATION BY TRUSTEE:** The Trustee shall manage and administer the property comprising the Supporting Organization, as hereinafter set forth.

2. **SPECIFIED ORGANIZATIONS:** The Supporting Organization is organized, and at all times hereafter shall be operated, exclusively for the benefit of, to perform the functions of, or to carry out the purposes of, the following charitable organizations, to wit:

a. Rochester General Hospital, 1425 Portland Avenue, Rochester, New York 14621 (EIN: 16-0743134);

b. Viahealth, Inc., 1040 University Avenue, Rochester, New York 14607 (EIN: 22-2551509);

c. Harley School, 1981 Clover Street, Rochester, New York 14618 (EIN: 16-0755783);

d. Norman Howard School, Inc., 220 Idlewood Road, Rochester, New York 14618 (EIN: 11-9904502);

e. Rochester Institute of Technology, 46 Lomb Memorial Drive, Rochester, New York 14623 (EIN: 16-0743140);

f. University of Rochester, 306 Lattimore Hall, Rochester, New York 14627 (EIN: 16-0743209);

g. Skidmore College, 815 North Broadway, Saratoga Springs, New York 12866 (EIN: 14-1338562);

h. Reed Institute, 3203 S.E. Woodstock Boulevard, Portland, Oregon 97202 (EIN: 93-0386908);

i. Pace University, 235 Elm Road, Briarcliff Manor, New York 10510 (EIN: 13-5562314);

j. Rochester Area Community Foundation, 500 East Avenue, Rochester, New York 14607 (EIN: 23-7250641);

k. Jewish Community Federation of Greater Rochester New York, Inc., 441 East Avenue, Rochester, New York 14607 (EIN: 16-0868942);

l. Frederick Ferris Thompson Hospital, 350 Parrish Street, Canandaigua, New York 14424 (EIN: 16-0743024);

m. Greater Canandaigua Family YMCA, 32 North Main Street, Canandaigua, New York 14424 (EIN: 16-0755898);

n. Fidelity Charitable Gift Fund (Donor Advised Fund), 82 Devonshire Street, F35, Boston, Massachusetts 02109;

o. Vanguard Charitable Endowment Program, 100 Vanguard Boulevard, Malvern, Pennsylvania 19355 (EIN: 23-2888152);

p. Idaho Community Foundation, 270 West State Street, Boise, Idaho 83702 (EIN: 82-0425063);

q. Rochester City Ballet, 210-A North Goodman Street, Rochester, New York 14607;

r. Norman Howard School Foundation, Inc., 275 Pinnacle Road, Rochester, New York 14623 (EIN: 16-1557039); and

s. F. F. Thompson Hospital Foundation, Inc., 350 Parrish Street, Canandaigua, New York 14424 (EIN: 22-2959984).

The above-listed organizations shall hereinafter collectively be referred to as the "Supported Organizations" and each singly as a "Supported Organization." The Supporting Organization shall not engage in any activities which are not in furtherance of the purposes referred to in § 509(a)(3)(A) of the Internal Revenue Code. The Supporting Organization shall not operate to support or benefit any organization other than the Supported Organizations.

3. **OPERATIONS:** The Supporting Organization shall engage in activities which benefit or support the Supported Organizations. The Supporting Organization may make payments to or for the use of, or provide services or facilities for, individual members of the charitable class benefited by one or more of the Supported Organizations. The Supporting Organization may make a payment through another unrelated organization to a member of a charitable class benefited by one or more of the

Supported Organizations, but only if such payment shall constitute a grant to an individual rather than a grant to an organization. The Supporting Organization may carry on an independent activity or program which supports or benefits one or more of the Supported Organizations.

No part of the activities of the Supporting Organization shall be in furtherance of a purpose other than supporting or benefiting one or more of the Supported Organizations.

4. **VARYING AMOUNT OF SUPPORT:** The Supporting Organization may vary the amount of the Supporting Organization's support among the different Supported Organizations, so long as the Supporting Organization meets the requirements of the "integral part" test set forth in § 1.509(a)-4(i)(3) of the Regulations.

5. **ALTERNATE SUPPORTED ORGANIZATIONS:** If any one or more of the Supported Organizations ceases to qualify pursuant to § 509(a)(1) or (2), or if a Supported Organization substantially fails or abandons its operations, or if a Supported Organization dissolves, then the Supporting Organization shall terminate its support of such Supported Organization or Organizations, as the

case may be. In such event, the Trustee may substitute one or more organizations described in § 509(a)(1) or (2) and which serve purposes and carry on activities similar to those served by the former Supported Organization or Organizations, as the case may be. The substituted Supported Organization or Organizations shall be treated for all purposes hereunder as a Supported Organization or Organizations. No Trustee shall have the foregoing power of substitution unless the event giving rise to the power is beyond the control of the Supporting Organization.

6. **RELATIONSHIP BETWEEN SUPPORTING ORGANIZATION AND SUPPORTED ORGANIZATION:** a. Operated in Connection With Supported Organization: The Supporting Organization shall be operated in connection with the Supported Organizations.

b. Responsiveness: The Supporting Organization shall be responsive to the needs or demands of the Supported Organizations.

c. Charitable Trust and Accounting: The Supporting Organization is a charitable trust under the laws of the State of Idaho and each named Supported Organization has the power to enforce the Supporting Organization and compel an accounting under Idaho Code § 15-7-303.

d. <u>Integral Part</u>: The Supporting Organization shall maintain a significant involvement in the operations of the Supported Organizations.

In each of the Supporting Organization's fiscal years, the Supporting Organization shall satisfy either of the following requirements, to wit:

(i) the Trustee shall pay substantially all of the Supporting Organization's income to or for the use of one or more of the Supported Organizations and this amount of support shall be sufficient to ensure the attentiveness of one or more of the Supported Organizations to the operations of the Supporting Organization. In addition, the Trustee shall pay to or for the use of one or more Supported Organizations a substantial amount of the Supporting Organization's total support which meets the attentiveness requirements set forth in this subparagraph (i) of paragraph 6(d); or

(ii) the activities in which the Supporting Organization engages for or on behalf of the Supported Organizations shall be activities to perform the functions of, or to carry out the purposes of, the Supported Organizations. In addition, these activities shall be such that, but for the

involvement of the Supporting Organization, one or more of the Supported Organizations would normally engage in the activities.

7. **TAXATION RULES:** Notwithstanding any other provisions set forth in this Trust Agreement, if, and for so long as, the Supporting Organization is a private foundation which does not qualify as a "supporting organization" as described in § 509(a)(3) of the Internal Revenue Code, then the Trustee shall not:

a. Engage in any act of self-dealing as defined by § 4941(d) of the Internal Revenue Code;

b. Retain any excess business holdings as defined by § 4943(c) of the Internal Revenue Code which would subject the Supporting Organization to tax under § 4943 of the Internal Revenue Code;

c. Make any investments which would subject the Supporting Organization to tax under § 4944 of the Internal Revenue Code;

d. Make any taxable expenditure as defined by § 4945(d) of the Internal Revenue Code;

e. Fail to make distributions at such time or in such manner as to subject the Supporting Organization to tax under § 4942 of the Internal Revenue Code; or

f. Carry on any other activities not permitted to be carried on by:

(i) an organization exempt from federal income tax under Internal Revenue Code § 501(c)(3), or

(ii) an organization to which contributions are deductible under Internal Revenue Code § 170(c)(2).

8. **PRIVATE OPERATING FOUNDATION; CONDUIT FOUNDATION:** If, for any reason, the Supporting Organization does not qualify as a "supporting organization" under § 509(a)(3) of the Internal Revenue Code, then the Trustee shall devote its best efforts to qualifying the Supporting Organization as an organization described in § 509(a)(1) or § 509(a)(2) of the Internal Revenue Code, a "private operating foundation" under § 4942(j) of the Internal Revenue Code, or as a private foundation qualifying under § 170(b)(1)(E)(ii) of the Internal Revenue Code, a so-called "conduit foundation." These efforts shall include, for example, amendments to this organizing instrument which may be

required by law for qualification of the Supporting Organization as a "private operating foundation" or a "conduit foundation."

9. **TRUST TERMINATION:** If this Supporting Organization terminates for any reason, then after paying of adequately providing for the debts and obligations of the Supporting Organization, the Trustee in its sole and absolute discretion shall distribute the remaining assets to one or more of the Supported Organizations which are then described in §§ 509(a)(1) and 509(a)(2) of the Code, provided that the use of these assets will be restricted to those purposes exclusively described under § 501(c)(3) of the Code..

10. **CREATION OF CORPORATION:** The Trustee is authorized and empowered to form and organize a nonprofit corporation for the uses and purposes of the Supporting Organization, and qualify as a "supporting organization" under Internal Revenue Code § 509(a)(3). Such corporation, if organized, shall be named The Educational and Health Support Fund. Upon the creation and organization of such corporation, the Trustee is authorized and empowered to convey, transfer and deliver to such corporation all the property and assets to which the Supporting Organization may be or become entitled. It is the

purpose of this paragraph 10 that the board of directors of such corporation, if incorporated and organized as provided by this paragraph, shall take the place of the Trustee, who shall be the incorporator of such corporation.

ARTICLE III

1. **INCOME AND PRINCIPAL ALLOCATIONS:** Unless otherwise specifically provided, the Trustee shall determine whether all or any part of any payment or property received or charged, expense or taxes incurred, shall be credited to or charged against income or principal, or both, in the manner provided by Idaho law, including but not limited to the Uniform Principal and Income Act as now in effect and as hereafter amended. The determination of the Trustee as to what constitutes principal and income shall, unless otherwise provided herein, be conclusive and binding on all persons in any manner interested in the Supporting Organization created by this Trust Agreement.

2. **TRUSTEE POWERS:** To carry out the purposes of the Supporting Organization created under this Trust Agreement, and subject to any limitations stated elsewhere herein, the Trustee shall have all of the powers and authority under Idaho law including but not limited to those which are set forth in the

Uniform Trustee's Powers Act, being Chapter 1 of Title 68, Idaho Code, as now in effect and as it may hereafter be amended, but only to the extent such powers are not inconsistent with the operation of the Supporting Organization created herein as a supporting organization which qualifies as such pursuant to Internal Revenue Code § 509(a)(3).

3. **TRUSTEE COMPOSITION:** At no time shall the number of Co-Trustees who are not "disqualified persons" (as defined in § 4946 of the Internal Revenue Code) be less than a number which is one more than the number of disqualified persons then serving as Co-Trustees.

4. **COMPENSATION AND ACCOUNTING:** The Trustee and all persons employed by the Trustee shall be entitled to reasonable compensation in accordance with the provisions of applicable state law. The Trustee shall reasonably account as to the Supporting Organization and its administration as provided by state law.

5. **SUCCESSOR TRUSTEE:** a. Resignation: Any Co-Trustee may resign as a Co-Trustee at any time by so notifying in writing the Grantors, or surviving Grantor, if living, otherwise the remaining Co-Trustees.

b. Removal: The Grantors or the surviving Grantor, as the case may be, may remove a Co-Trustee, other than a Grantor, by giving written notice of such removal to such Co-Trustee. Upon the death or incapacity of both Grantors, the Co-Trustees may remove a Co-Trustee by two-thirds (2/3) majority vote and by giving written notice of such removal to such Co-Trustee. Any vacancy created pursuant to the removal provisions contained herein shall be filled as otherwise provided in this paragraph 5 of this Article III.

c. Appointment of Successor by Grantors and Descendants: (i) In the event either Grantor, subsequent to the execution of this Agreement, is appointed to be a Co-Trustee, such Grantor shall appoint a successor Co-Trustee to succeed such Grantor upon such Grantor's death, resignation or incapacity; provided however, that such appointee must be a descendant of the Grantors' parents or such descendant's spouse. Thereafter, if no appointment is made pursuant to subparagraph 5(c)(ii) of this Article III, then each appointed descendant or descendant's spouse shall appoint his or her successor Co-Trustee who must also be a descendant of the Grantors' parents or such descendant's spouse.

(ii) Upon the death, resignation, removal, or incapacity of any Co-Trustee who is not a Grantor, a successor Co-Trustee shall be appointed by the Grantors or the surviving Grantor, as the case may be, subject to the provisions of paragraph 3 of this Article III. In the event the number of Co-Trustees is increased pursuant to paragraph 6 of this Article III, an additional Co-Trustee or Co-Trustees shall be appointed by the Grantor or the surviving Grantor, as the case may be, to fill any vacant Co-Trustee or Co-Trustees position or positions created by such increase in the number of Co-Trustees, subject to the provisions of paragraph 3 of this Article III. If no appointment is made pursuant to the foregoing provisions, a successor Trustee shall be appointed in accordance with paragraph 5(d) of this Article III.

d. <u>No Appointment Made by Grantors or Descendants</u>: If no appointment of successor or additional Co-Trustee is made by the Grantors or surviving Grantor, as the case may be, or in all events after the death of both Grantors, then the remaining Co-Trustees shall appoint a successor or additional Co-Trustee by majority vote, subject to the provisions of paragraph 3 of this Article III.

If no appointment is made in accordance with the foregoing procedures, a successor or additional Co-Trustee shall be appointed by a court of competent jurisdiction upon the petition of any Co-Trustee or of any person or persons interested in the Trust.

e. Successor Trustees: A successor Co-Trustee shall succeed as a Co-Trustee of this Supporting Organization with the same conditions as are herein set forth.

f. Appointments: All appointments as to a successor or additional Co-Trustee shall be in writing and subject to the provisions of paragraph 3 of this Article III.

g. Increase in Number of Co-Trustees: Subject to paragraph 3 of this Article III, in the event the number of Co-Trustees is increased pursuant to paragraph 6 of this Article III, additional Co-Trustees shall be appointed in accordance with the terms of this paragraph 5 of Article III to fill any vacant Co-Trustee or Co-Trustees position or positions created by such increase in the number of Co-Trustees and if the number of Co-Trustees is reduced pursuant to paragraph 6 of this Article III the applicable number of Co-Trustees shall be removed in accordance with paragraph 5(b) of this Article III.

6. **BOARD OF TRUSTEES:** All Co-Trustees who are currently serving as a Co-Trustee of this Supporting Organization shall be members of the Board of Trustees. The Board of Trustees may appoint a Chairperson to serve for a period designated by the Board of Trustees. The Board of Trustees may adopt application forms and requirements, charitable qualification criteria, or other regulations to govern administrative functions relating to the operations of the Supporting Organization, provided that they are consistent with the charitable purposes herein. The Board of Trustees may establish separate subcommittees and delegate specific duties and responsibilities to such subcommittees. The Board of Trustees may expand or contract the number of members of the Board of Trustees (to be appointed in accordance with paragraph 5 of this Article III), but the Board of Trustees shall at all times consist of not less than three (3) members nor more than nine (9) members.

7. **LIABILITY AND INDEMNITY:** A Co-Trustee shall not be liable for conduct that was in good faith and which the Co-Trustees reasonably believed was in the best interests of the Supporting Organization or not opposed to the Supporting Organization's best interests or had no reasonable cause to

believe the conduct was unlawful. A Co-Trustee shall be indemnified by the Supporting Organization for costs and damages incurred as a result of an action or threatened actions with respect to the Co-Trustee's activities in connection with the administration of this Supporting Organization. Indemnification shall be made according to the permitted standards under Idaho law for such indemnification of charitable trustees. The Co-Trustees may carry such insurance coverage as they may deem appropriate for insuring the Co-Trustees, officers and employees for actions commenced or threatened against them.

Notwithstanding the foregoing, no payment shall be made to or for the benefit of any Co-Trustee, officer or employee as would subject this Supporting Organization to taxation under Chapter 42 of the Internal Revenue Code.

8. **CONTROL:** At no time shall the Supporting Organization be controlled, directly or indirectly, by one or more disqualified persons, as defined in § 4946 of the Internal Revenue Code, or other than foundation managers and other than one or more of the Supported Organizations.

9. **REFERENCES TO SECTIONS:** Unless the context clearly implies the contrary, all references to "§" or "§§"

(section or sections) are to sections of the Internal Revenue Code of 1986, as hereafter amended, or corresponding provisions of future federal tax laws and the Internal Revenue Code.

**ARTICLE IV**

1. **AMENDMENTS:** This Agreement may be amended or modified from time to time by the Grantors or the surviving Grantor, by an instrument in writing, signed by the Grantors or surviving Grantor and delivered to the Trustee; provided however, that no amendment shall authorize the Trustee to conduct the affairs of this Supporting Organization in any manner or for any purpose contrary to the provisions of Internal Revenue Code § 501(c)(3) or that would disqualify this Supporting Organization as a tax-exempt trust or prohibit donations to this Supporting Organization from being deductible for tax purposes.

Upon the death of both Grantors, this Agreement and the Supporting Organization hereby created are irrevocable; provided however, the Trustee, acting alone, shall have the power to amend this Supporting Organization for the purpose of ensuring that the Supporting Organization qualifies as a charitable organization to which donations are deductible within the meaning of the Internal Revenue Code.

2. **SITUS:** This Supporting Organization is established and accepted by the Trustee under the laws of the State of Idaho and the situs of the Supporting Organization is Idaho. All questions concerning the validity, construction and administration of such Supporting Organization shall be determined under such laws. Provided however, the Trustee may transfer the situs, including transferring the place of administration to another jurisdiction (whether the place of administration is within our without the State of Idaho), of the Supporting Organization created hereunder without the necessity of judicial proceedings or intervention; provided that the Trustee has determined, in good faith, that the transfer would facilitate the economic and convenient administration of such Supporting Organization and would not materially impair the interests of any beneficiary or potential beneficiary. In the event of such a change of situs, all questions concerning the Supporting Organization's validity, construction and administration shall be determined under the laws of the jurisdiction to which situs is transferred. Provided however, that no change in situs shall authorize the Trustee to conduct the affairs of the Supporting Organization in any manner or for

any purpose contrary to the provisions of Internal Revenue Code § 501(c)(3) or that would disqualify the Supporting Organization as a tax-exempt trust or prohibit donations to this Supporting Organization from being deductible for tax purposes.

3. **HEADINGS:** The paragraph headings are for convenience only and are not a part of this Trust Agreement and shall not be used in interpreting or construing this Trust Agreement.

4. **INVALIDITY:** If any provision of this Agreement is deemed invalid or unenforceable for any reason, the remaining provisions of this Agreement shall not be affected thereby but rather shall be enforced to the greatest extent permitted by applicable law.

5. **ORIGINAL COUNTERPARTS:** This Agreement may be executed through the use of multiple original counterparts.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement the day and year first above written.

________________________________
Richard Sands

Robert Sands

"Grantors"

Freddy H. Robinson

James A. Locke, III

Wesley M. Stallings

"Co-Trustees"

SCHEDULE "A"