# New York State Bar Association

TAX SECTION
1994-1995 Executive Committee

MICHAEL L. SCHLER
Chair
825 Eighth Avenue
New York City 10019
212/474-1588
CAROLYN JOY LEE
First Vice-Chair
212/903-8761
RICHARD L. REINHOLD
Second Vice-Chair
212/701-3672
RICHARD O. LOENGARD, JR.
Secretary
212/820-8260
COMMITTEE CHAIRS:
Bankruptcy
Elliot Pisem
Joel Scharfstein
Basis, Gains & Losses
David H. Brockway
Edward D. Kleinbard
CLE and Pro Bono
Damian M. Hovancik
Prof. Deborah H. Schenk
Compliance, Practice & Procedure
Robert S. Fink
Arnold Y. Kapiloff
Consolidated Returns
Dennis E. Ross
Dana Trier
Corporations
Yaron Z. Reich
Steven C. Todrys
Cost Recovery
Katherine M. Bristor
Stephen B. Land
Estates and Trusts
Kim E. Baptiste
Steven M. Loeb
Financial Instruments
David P. Hariton
Bruce Kayle
Financial Intermediaries
Richard C. Blake
Stephen L. Millman
Foreign Activities of U.S. Taxpayers
Diana M. Lopo
Philip R. West
Individuals
Victor F. Keen
Sherry S. Kraus
Multistate Tax Issues
Arthur R. Rosen
Sterling L. Weaver
Net Operating Losses
Stuart J. Goldring
Robert A. Jacobs
New York City Taxes
Robert J. Levinsohn
Robert Plautz
New York State Income Taxes
Paul R. Comeau
James A. Locke
New York State Sales and Misc.
E. Parker Brown, II
Maria T. Jones
Nonqualified Employee Benefits
Stephen T. Lindo
Loran T. Thompson
Partnerships
Andrew N. Berg
William B. Brannan
Pass-Through Entities
Roger J. Baneman
Thomas A. Humphreys
Qualified Plans
Stuart N. Alperin
Kenneth C. Edgar, Jr.
Real Property
Linda Z. Swartz
Lary S. Wolf
Reorganizations
Patrick C. Gallagher
Mary Kate Wold
Tax Accounting
Jodi J. Schwartz
Esta E. Stecher
Tax Exempt Bonds
Linda L. D'Onofrio
Patti T. Wu
Tax Exempt Entities
Franklin L. Green
Michelle P. Scott
Tax Policy
Reuven S. Avi-Yonah
Robert H. Scarborough
U.S. Activities of Foreign Taxpayers
Michael Hirschfeld
Charles M. Morgan, III

MEMBERS-AT-LARGE OF EXECUTIVE COMMITTEE
M. Bernard Aidinoff, Geoffrey R. S. Brown, Robert E. Brown, Harvey P. Dale, Harry L. Gutman, Harold R. Handler, Charles I. Kingson, Richard M. Leder, Erika W. Nijenhuis, Ann Elizabeth Purintun, Mikel M. Rollyson, Stanley I. Rubenfeld, Eugene L. Vogel, David E. Watts, Joanne M. Wilson

PS-27-94

JUL 5 1994

RECEIVED

June 30, 1994

TO: Michael Slaughter
Internal Revenue Service Room 5228

FROM: Michael Schler
Chair, NYSBA Tax Section

BENMAN/TOTH

Re: Request to testify at July 25 hearing on PS-27-94, Prop. Reg. § 1.701-2

I request permission to present oral comments at the above hearing on behalf of the New York State Bar Association Tax Section.

My comments will discuss a Report on the proposed regulation that the Tax Section will submit on or before July 5, 1994. The Report takes the following positions (among others):

1. We strongly support the adoption of a general anti-abuse rule applicable to tax-motivated partnership transactions.

2. We generally support the proposed regulation. However, we believe it is important that the scope of the regulation be narrowed in certain specific respects and that additional examples be added clarifying that narrowed scope. The suggested revisions are not major in terms of the purpose and intended scope of the regulation and would not adversely affect the Service's ability to attack abusive partnership transactions.

3. We believe the Treasury has the authority to issue the regulation, at least in the modified form we suggest.

My address is c/o Cravath, Swaine & Moore, 825 Eighth Avenue, N.Y., N.Y. 10019. You may contact me at (212) 474-1588.

FORMER CHAIRS OF SECTION:
Howard O. Colgan, Charles L. Kades, Carter T. Louthan, Samuel Brodsky, Thomas C. Plowden-Wardlaw, Edwin M. Jones, Hon. Hugh R. Jones, Peter Miller, John W. Fager, John E. Morrissey, Jr., Charles E. Heming, Richard H. Appert, Ralph O. Winger, Hewitt A. Conway, Martin D. Ginsburg, Peter L. Faber, Hon. Renato Beghe, Alfred D. Youngwood, Gordon D. Henderson, David Sachs, J. Roger Mentz, Willard B. Taylor, Richard J. Hiegel, Dale S. Collinson, Richard G. Cohen, Donald Schapiro, Herbert L. Camp, William L. Burke, Arthur A. Feder, James M. Peaslee, John A. Corry, Peter C. Canellos

DO THE PUBLIC GOOD
VOLUNTEER FOR PRO BONO

PS-27-94

Boston University

School of Law
765 Commonwealth Avenue
Boston, Massachusetts 02215

JUL 5 1994
RECEIVED

June 30, 1994

BENMAN/TOTH

Internal Revenue Service
CC:DOM:CORP:T:R (PS-27-94)
Room 5228
Post Office Box 7604
Ben Franklin Station
Washington, D.C. 20044

Re: Proposed Rulemaking and Notice of Public Hearing (PS-27-94), Subchapter K Anti-Abuse Rule --- Proposed Treasury Regulation Section 1.701-2 Comments

Ladies and Gentlemen:

I submit the following comments on Prop. Treas. Reg. § 1.701-2 proposed on May 12, 1994 to set partnership anti-abuse standards. This proposed regulation was discussed widely at the most recent meeting of the American Bar Association Tax Section in Washington where it was much criticized both as to its authority and its scope. I am commenting to try to put these issues in perspective in order to help define the approach to this regulation.

The Department of the Treasury is an executive administrative agency. It is specifically charged under Code § 7805(a) with interpreting the Internal Revenue Code: "[T]he Secretary shall prescribe all needful rules and regulations for the enforcement of this title, including all rules and regulations as may be necessary by reason of any alteration of the law in relation to internal revenue." The Supreme Court has recognized, as in the leading case of Chevron U.S.A., Inc. v. Natural Resources Defense Counsel, Inc., 467 U.S. 837 (1984), the right of agencies to adopt reasonable interpretations of the statutes they administer provided the administrative constructions are not contrary to clear congressional intent.[1]

---

[1]The scope of Chevron and the deference to pay to administrative interpretations is the subject of both academic and judicial debate. See, e.g., Farina, Statutory Interpretation and the Balance of Power in the Administrative State, 89 Colum. L. Rev. 452 (1989); Anthony, Which Agency Interpretations Should

This delegation of authority does not require a general delegation in the specific code provision in addition to the general delegation of power under Code § 7805(a). Nonetheless, a regulation adopted based on a general grant of rulemaking authority must follow the origin and purpose of the statute to constitute a reasonable interpretation to which the courts will defer. See National Muffler Dealers Association, Inc. v. United States, 440 U.S. 472, 476-77 (1979).

The proposed partnership regulation raises a fundamental question of statutory interpretation. Under the approach of regulation drafting in the 1980's, particularly illustrated by the detailed partnership tax regulations under § 704(b) and the passive activity regulations under § 469, regulations were written with extreme specificity. Where impact on other Code sections was anticipated, guidance was often not given unless a regulation was issued under that particular section. This extremely tight form of drafting has obscured the broader regulatory mandate of Treasury to provide general interpretations of the tax law and to use all methods of statutory interpretation including the fundamental one of legislative purpose. The purposive view of statutory interpretation is discussed in the classic book on the subject by F. Reed Dickerson, The Interpretation and Application of Statutes (1975). "[L]awyers tend to identify the immediate legislative purpose with 'legislative intent' and to reserve the term 'legislative purpose' for any broader or remote ("ulterior") legislative purpose." Id. at 88. In interpreting a statute, an agency or court looks both to the specific language of the statute and its internal context (the surrounding text of the statute) and its external context (the reasons that prompted the legislation, legislative history in committee reports and other documents, the broader purpose of the statute, and the general social, political, and legal tradition).

As I view it, in proposing Treas. Reg. § 1.701-2 Treasury is correctly fulfilling its congressional mandate to issue regulatory guidance that fills the interstices of the statute. It coordinates the context of Subchapter K with the Code as a whole. The issue is whether it is sufficiently certain in its methodology and scope.

The proposed regulation affects a number of situations in which the admitted flexibility of Subchapter K creates unintended results through interaction with other Code sections or literal application of provisions in regulations. While not mentioning all reasons behind Subchapter K, Treasury correctly points out that Subchapter K was intended by Congress to provide flexibility

---

Bind Citizens and the Courts?, 47 Yale J. on Reg. 1 (1990); INS v. Cardoza-Fonseca, 480 U.S. 421 (1987).

and a flow-through conduit entity for business taxation[2] and does not attempt to limit the favorable structural provisions of Subchapter K with respect to such transactions as contributions, distributions, and special allocations. See Background to Prop. Treas. Reg. § 1.701-2; see also Prop. Treas. Reg. § 1.701-2(e), example 1. Nor does Treasury challenge specific elective provisions in Subchapter K even when the absence of an election creates discontinuities. See Prop. Treas. Reg. § 1.701-2(e), example 4. It views the provisions of Subchapter K as "not intended . . . to permit taxpayers either to structure transactions using partnerships to achieve tax results that are inconsistent with the underlying economic arrangements of the parties or the substance of the transactions, or to use the existence of the partnership to avoid the purposes of other provisions of the Internal Revenue Code." Prop. Treas. Reg. § 1.701-2(a). I have a forthcoming article in which I argue for the recognition of the benefits of flexibility in Subchapter K and the economic rationale for such flexibility. See Rebecca S. Rudnick, Enforcing the Fundamental Premises of Subchapter K, 22 Hofstra Law Rev. ___ (forthcoming 1994). Thus I applaud the Treasury's recognition that the benefits of Subchapter K's flexibility are intended by Congress. At the same time, I support the attempt to put Subchapter K in a broader context within the tax law and congressional mandates with respect to other Code sections, regulations, and policies and to harmonize results under regulations interpreting Subchapter K.[3]

The proposed regulation should be amended to articulate its scope precisely to give comfort as to the manner in which Treasury is following a purposive view of the statute and a

---

[2]A major reason for Subchapter K was to codify rules for partnership taxation to clarify what had been an uncertain regime under administrative and judicial interpretations. See S. Rep. No. 1622, 83d Cong., 2d Sess. 89 (1954). The fact that certainty was a goal of Subchapter K does not eliminate the need to look to specific legislative intent with respect to particular Code provisions and the interaction of Subchapter K with other principles and specific sections of the tax law. For example, leading commentators adopt a sophisticated statutory interpretation analysis to submit that a service partner's profits interest is not taxable upon receipt based on the theory that under Subchapter K it is a nonrealization event. See William S. McKee, William F. Nelson & Robert L. Whitmire, Federal Income Taxation of Partners and Partnerships ¶ 5.02[1][b], at 5-13 to 5-14 (2d ed. 1990) & ¶ 5.02[1][c], at S5-2 to S5-9 (Cumulative Supp. No. 2 1991).

[3]This parallels Congress's coordination of gift and assignment of income rules that occurred upon the enactment of the family partnership rules in Code § 704(e).

principal purpose requirement.[4] Attributing a global intent to Subchapter K in Prop. Treas. Reg. § 1.701-2(a) as being "to permit taxpayers to conduct business for joint economic profit through a flexible arrangement that accurately reflects the partners' economic agreement without incurring an entity-level tax . . . ," rather than looking to the intent of each of its provisions, may be criticized as vague and may be less clearly grounded in the legislative history as a standard to adopt in regulation drafting. Moreover, examples, now lacking, should be provided of transactions to be caught by the anti-abuse rule, including these discussed below, in which the interaction of Subchapter K with another Code provision produces an unintended result. Several categories of transactions come to mind. The first is where the form of the transaction is inconsistent with the substance. An illustration is the recent approach with respect to the use of partnerships to convert dividends on preferred stock into deductible interest where the risk of the creditor is essentially the risk of an equity participant.[5] A second category is situations in which the flexibility inherent in Subchapter K enables potential inconsistencies within the system to be exploited. These include issues with respect to the combination of installment sales with allocations under Subchapter K. A third area is where the characterization rules at the partnership level nullify a rule outside of Subchapter K. Examples include transactions such as the Brown Group case, avoiding the built-in gain rules under Code § 1374 through partnerships, and forming partnerships to avoid the limitations of Code § 163(e)(5). The latter two categories encompass transactions in which Congress, in my view, did not intend a specific prohibition to be avoided by using a conduit partnership entity either through an explicit directive within Subchapter K,

---

[4]The touchstone for the application is forming or availing of a partnership "in connection with a transaction or series or related transactions . . . with a principal purpose of substantially reducing the present value of the partners' federal tax liability inconsistent with the intent of Subchapter K . . . ." (The standard also should include where it is inconsistent with the intent of another Code provision.) "Principal purpose" and "substantial" are not defined but reference to such standards in judicial opinions interpreting general language would fill the interstices. To the extent that Treasury adopts a regulation to coordinate Subchapter K with other Code provisions or to coordinate provisions within Subchapter K, it should be able to adopt a standard for that cocrdination. This is not the case of Treasury interposing its own additional standard to overlay a statutory provision that already has a specific and detailed standard for its application. See Braunstein v. Commissioner, 374 U.S. 65, 71 (1963).

[5]See Notice 94-48, 1994-19 I.R.B. 10.

such as authority to prescribe regulations under Code § 702(a)(7), the general legislative intent of the Subchapter K regime on which Treasury relies with respect to the application of aggregate rather than entity principles,[6] the legislative intent of special allocations to facilitate bona fide business transactions rather than tax avoidance,[7] or encompassed in the legislative intent behind the particular Code provision outside of Subchapter K. A fourth category is where specific regulations under Subchapter K when literally applied reach results inconsistent with the intent of the regulation as a whole.[8] See, e.g., Prop. Treas. Reg. § 1.701-2(e), example 3. There the proposed regulation merely amplifies a standard already present within the statute, "substantial economic effect," and provides a catch-all for regulatory ambiguity in already issued regulations.[9]

---

[6]The specific language of H.R. Conf. Rep. No. 2543, 83d Cong., 2d Sess. 59 (1954) that Treasury states as Congress's indication "that aggregate, rather than entity, concepts should be applied if such concepts are more appropriate in applying other provisions of the Code . . . ," is as follows: "No inference is intended, however, that a partnership is to be considered as a separate entity for the purpose of applying other provisions of the internal revenue laws if the concept of the partnership as a collection of individuals is more appropriate for such provisions. An illustration of such a provision is section 543(a)(6), which treats income from the rental of property to shareholders as personal holding company income under certain conditions." Adoption of aggregate rather than entity approaches to interpreting events is the subject of both judicial opinion, see Quick Trust v. Commissioner, 54 T.C. 1336 (1970), aff'd per curiam, 444 F.2d 90 (8th Cir. 1971), and academic discussion, see Fellows, Partnership Taxation: Confusion in Section 702(b), 32 Tax L. Rev. 67, 88-97 (1976).

[7]See infra note 8.

[8]And the intent of the regulation as a whole was drafted to implement the congressional intent of the statute as expressed in the legislative history. For example, with respect to special allocations, Treasury notes in the background to Prop. Treas. Reg. § 1.701-2, the rationale of Congress in amending the rules with respect to special allocations to "'prevent the use of special allocations for tax avoidance purposes, while allowing their use for bona fide business purposes.' S. Rep. No. 938, 94th Cong., 2d Sess. 100 (1976)."

[9]This same approach could be used to coordinate provisions within Subchapter K such as the inter-relationship between Code §§ 704(b) and 704(e).

On the other hand, the abusive principle should not apply to transactions in which the partnership vehicle is chosen as an organizational structure and the use of a partnership structure enables participation by investors who could not participate in another form of organizational structure. For example, consider a limited partnership in which a nonresident alien is a general or limited partner and a general partner is an S corporation. Clearly the nonresident alien could not be a member of the S corporation but the nonresident alien takes on a separate economic liability as a general partner or has more limited management rights as a limited partner than as an S shareholder. Congress has a long history of providing multiple vehicles for business and investment formation--C corporations, partnerships, and S corporations, and has often articulated that the choice of entity is intended to be flexible. Thus, the proposed regulation should not apply to such transactions. Because Treasury already has the power to recast suspect transactions under Gregory v. Helvering, there should be an effort to offer more safe harbors for "areas of flexibility" that the Treasury does not intend to attack.[10]

The two most difficult categories to which apparently Treasury seeks to apply the regulation are the second and the third discussed above that encompass transactions wherein Treasury asserts that Congress did not intend a specific prohibition to be avoided by using a conduit partnership entity. These categories are difficult due both to the specific language of the regulation and underlying questions of statutory interpretation. I will first deal with the specific language of the regulation and then the issue of statutory interpretation.

This new Prop. Treas. Reg. § 1.701-2(a) is the first attempt at a generalized anti-abuse provision in Subchapter K and the only place where the purpose of provisions generally applicable to a form of business organization are held by Treasury to create unintended results in interaction with other Code provisions. Neither the application provision, Prop. Treas. Reg. § 1.701-2(b), nor the facts and circumstances test, Prop. Treas. Reg. § 1.701-2(c) reference the purposes of another Code provision nor

---

[10]In that regard, Treasury should also clarify the import of the language in the background note and regulation as to the intent of Subchapter K to allow persons "to conduct business for joint economic profit." Is it an operative standard in the regulation or merely a general statement as to one of the purposes of Subchapter K? And if intended as an operative standard, is it an accurate requirement for all partnerships, including investment partnerships?

are examples provided of unintended benefit[11] or of how the analysis under the Treasury regulation would be undertaken. The present proposal should be substantially augmented with reference to other Code sections, analysis and methodology and by examples to delineate the scope of the regulation to cure the present vagueness. The regulation will then give guidance to taxpayers, field agents, and the courts as to the reasonable manner in which Code provisions should be interpreted and will present a standard somewhat like an overriding standard of Gregory v. Helvering or the tax benefit rule. On the one hand, Subchapter K itself could be said to be neutral with respect to the results obtained through it by application of other Code provisions. On the other hand, other Code provisions may have been drafted with specific literal language that in combination with provisions in Subchapter K causes results that are inconsistent with the intent of Congress in adopting that provision. To the extent that the legislative intent under Subchapter K supports an intent to apply an aggregate rather than entity concept if such concepts are more appropriate in applying other provisions of the Code[12] or the purpose of Congress to allow special allocations for bona fide business purposes but not for tax avoidance, a stronger basis exists for preventing inconsistencies in the application of another Code section in combination with one or more provisions in Subchapter K absent contrary intent in that other section. As the proposed regulation intends to impact upon results seemingly mandated by the literal language of other sections, it should reference the lack of congressional intent for the purpose of the other Code provisions to be avoided through the use of a partnership or a transaction or arrangement within partnerships. This is the same consideration that applies under the tax benefit rule which is discussed below.

Categories two and three raise the interpretative problem of applying the literal language of the statute notwithstanding

---

[11]As an illustration, Example 1 deals with the intent of Subchapter K in allowing one level of taxation in a limited partnership as consistent with the intent of Subchapter K. Example 2 deals with a benefit provided in another Code section, Code § 42, that is magnified by the use of a partnership to extend its benefits to multiple parties. It is presumed that this extension of the benefit is entirely consistent with the intent of Congress in providing the benefit but the example does not specifically reference that legislative intent. It merely notes that "[t]he low-income housing credit is a statutory benefit not derived from the use of the partnership." Thus, the example should be amended to reference congressional intent under Code § 42.

[12]See supra note 6.

congressional intent. It would appear that cases such as Brown Group or arrangements to avoid the literal application of Code sections such as § 1374 should result in a judicial finding that the inconsistent result was not intended by Congress under this form of analysis which looks to the intent of the other provisions in combination with Subchapter K and the proposed regulation merely announces that Treasury is applying this form of analysis. When Treasury attempts to use its reading of the generalized intent underlying Subchapter K to reach transactions that create seeming inconsistencies within the statute, it may go beyond a reasonable interpretation of the statute to the extent that it does not take into account the intent and legislative history of those specific provisions or articulate more strongly the rationale for allowing special allocations or the aggregate versus entity choice as a flexible congressionally sanctioned interpretation of Subchapter K. See, e.g., Braunstein v. Commissioner, 374 U.S. 65, 71 (1963) (rejecting Commissioner's interpretation of collapsible corporation provision contrary to explicit language); United California Bank v. United States, 439 U.S. 180, 211 (1978) ("I firmly believe that the best way to achieve evenhanded administration of our tax laws is to adhere closely to the language used by Congress to define taxpayers' responsibilities. Occasionally there will be clear manifestations of contrary intent that justify a nonliteral reading . . . .") (Justice Stevens, dissenting); Dobson v. Commissioner, 320 U.S. 489, 505-06 (1943) (provision dealing with bad debt recoveries because of absence of mention of recovery for other losses did not preclude finding that other loss recoveries were embraced by tax benefit rule).

Categories two and three are not codifications of Gregory v. Helvering as such absent clear articulation of the relationship of Subchapter K with the intent of another Code provision. No substance versus form premise of statutory interpretation underlies the authority of Treasury to deviate from the literal language of other Code provisions as they interact with the language of Subchapter K. After all, Gregory v. Helvering interpreted literal provisions within one area of the Code, namely Subchapter C and implemented its overall policy. The leap to affect policies within other Code provisions must be undertaken with an analysis of those provisions and the extent that a flexible interpretation of aggregate and entity principles within Subchapter K (or with respect to characterization issues, in Code § 702(a)(7) and the regulations thereunder), allowance of special allocations for bona fide business purposes rather than a tax avoidance purpose, or implementation of other purposes of Subchapter K is grounded firmly in its legislative intent. To the extent that the regulation does this, it announces a reasonable method of interpretation in addition to the step transaction and substance over form analysis of current law that goes beyond literal language.

A criticism of the proposed regulation is that it provides limited guidance and has an in terrorem effect because the fringes of the rule are unclear. The tax law is not merely a chess board in which highly technical combinations are mapped out and executed with infinite standards. The correct working of the tax system involves interpretation of legislative purpose in the calculation of a particular tax liability. That requirement is inherent in the system and is nowhere better illustrated than in the tax benefit rule. Under the tax benefit rule, and most specifically its articulation in Hillsboro National Bank v. Commissioner, 460 U.S. 370 (1983) where a subsequent event is fundamentally inconsistent with a prior deduction that produced a tax benefit, absent an applicable nonrecognition rule, a taxpayer is required to recognize income. In determining a fundamentally inconsistent event one must look to the premise of the previous deduction and the nature of the event, and necessarily to legislative history and congressional intent. Analysis of any tax benefit rule question involves a purposive look at legislative intent, and the scope of the rule is unclear at its margins.

Thus, the proposed regulation should be applauded for bringing tax law back to its roots but should be fleshed out to substantiate the scope of and methodology for Treasury's purposive interpretation of the operation of Subchapter K in connection with other statutory provisions in order to provide a reasonable basis for upholding the regulation under the Chevron standard.

Very truly yours,

Rebecca S Rudnick

Rebecca S. Rudnick
Visiting Associate
Professor of Law

MORGAN, LEWIS & BOCKIUS
COUNSELORS AT LAW
1800 M STREET, N.W.
WASHINGTON, D.C. 20036
TELEPHONE (202) 467-7000
FAX (202) 467-7176

PHILADELPHIA
NEW YORK
MIAMI
PRINCETON
BRUSSELS

SHELDON S. COHEN
DIAL DIRECT (202) 467-7300

January 4, 1995

The Honorable Leslie B. Samuels
Assistant Secretary for Tax Policy
Department of the Treasury
1500 Pennsylvania Avenue, N.W.
Room 3120
Washington, DC 20220

Dear Les:

The partnership anti-abuse rules are very constructive. I think you handled this well. I hope Archer and Packwood agree.

Have a great year.

Best regards,

Sheldon S. Cohen

TOTAL P.02

release

July 25, 1994

STATEMENT OF
RICHARD G. COHEN
NEW YORK, NEW YORK

My name is Richard Cohen. From 1976 to 1984 I served as Reporter for the American Law Institute study of the federal income tax treatment of partnerships. The ALI recommendations for changes in partnership tax law were published in final form in 1984; a great many of those proposals have already been enacted into law. The views expressed here have neither been considered nor endorsed by the American Law Institute.

I appreciate the opportunity to testify today in support of the proposed anti-abuse regulation. It will usefully deter many abusive partnership transactions. Many of these transactions are marketed as a way to avoid the normal tax consequences of large corporate transactions. Even if a limited number of these transactions take place, the revenue loss can be large.

In the past, the Internal Revenue Service has attempted to curtail tax-motivated partnerships by relying on common law authority or, alternatively, by seeking the enactment of legislation that would specifically discourage abusive partnership transactions. Neither means of attack has been wholly effective.

**Specific Legislation is a Limited and Temporary Solution**

Enactment of legislation to target specific partnership transactions, while effective to deter many abusive partnerships,

release

is a limited and Sisyphean remedy, requiring constant renewal as abusive partnership transactions avoid new legislation by mutating into different guises. Unless the Service's power to attack questionable partnership transactions under general principles of tax law is enhanced, the Service and Treasury will be forced to ask Congress to rewrite existing law in a manner that explicitly (rather than implicitly) covers abusive transactions and thereby further increases the complexity of existing law and regulations.

Moreover, the effectiveness of specific attacks is questionable, at best --

- Writing new tax laws is a lengthy process. The prospective effective date of new legislation may give taxpayers time to take advantage of what soon may be a prohibited transaction.

- Delays in the legislative process may result in a large and unjustified loss of revenue.

- Legislative changes necessarily affect only a limited class of transactions. One of the great virtues of partnership tax law is its inherent flexibility. But that flexibility makes it impossible to adopt specific rules to prohibit all types of abusive partnership transactions.

Anti-abuse rules are particularly useful in the partnership area --

- The low audit rate for partnerships means that agents are not able to develop the necessary expertise to handle partnership matters.

- The complexity of partnership transactions can cloud the economic substance of a transaction, making it difficult to see that an abuse is occurring.



release

**An Important Alternative**

The proposed anti-abuse rule presents an important alternative to legislative action aimed at specific abusive transactions. This regulation, which is amply supported by existing common law principles of taxation, will enhance the Internal Revenue Service's ability to use that authority to block abusive transactions. Adoption of these rules may reduce the need for further complex partnership legislation.

Some suggest that the proposed regulation may lead to uncertain tax consequences for legitimate partnership transactions. The Internal Revenue Service has already taken an important procedural step to limit misuse of this regulation. The recent announcement that a team including IRS national office representatives will review any proposed action by an individual agent who seeks to invoke the anti-abuse regulation should adequately control the feared "rogue" agent. Furthermore, the scope of this regulation can and should be clarified by adding more examples of transactions that demonstrate tax abuse and those that do not.

This regulation will permit practitioners to advise clients who are offered questionable partnership tax strategies that Treasury and the Service are prepared to challenge such transactions. While it may be unrealistic to assume that this regulation will strike fear in the hearts of creative tax planners, the regulation will, at the very least, prompt conservative taxpayers to proceed with caution.

B-1C1397

GEORGETOWN UNIVERSITY LAW CENTER

July 26, 1994

Daniel I. Halperin
Professor of Law

Hon. Margaret M. Richardson
Commissioner
Internal Revenue Service
1111 Constitution Avenue, NW
Washington, D.C. 20224

Dear Commissioner Richardson:

I am writing to express my strong support for proposed regulation §1.701-2, the partnership anti-abuse rule. Much of what I would say has been expressed in the Report on the proposed regulation you have received from the New York State Bar Association and in the letter commenting on the regulations from Professor Joseph Bankman of the Stanford Law School, and I wish to express my agreement with the essential thrust of both comments. In particular, I agree with these commentators that the Treasury and the IRS have the legal authority to issue the proposed regulation.

Some have objected to the proposed regulations by quoting Learned Hand to the effect that it is not sinister to arrange one's affairs to keep taxes as low as possible -- "nobody owes any public duty to pay more than the law demands." True enough, but it is entirely inappropriate to draw from this the suggestion the idea that the tax law amounts to no more than a set of rules entirely devoid of any plan or purpose. As Judge Hand put it in the Gregory opinion, "the meaning of a sentence may be more than that of the separate words, as a melody is more than the notes, and no degree of particularity can ever obviate recourse to the setting in which all appear" (Helvering v. Gregory, 69 F. 2d 809, 810-11 (2d Cir. 1934), aff'd 293 U.S. 465 (1935)).

In any event, is worthwhile to examine in what way the regulation would change anyone's tax liability. Some suggest that it would not do so at all since the Internal Revenue Service already has ample authority under the common law doctrines of substance over form, sham transactions, clear reflection of income, and the like to require that taxpayers report income according to the economic substance of the transaction. If so, what would be gained by the regulation? Perhaps, it would mitigate the ability of taxpayers to avoid penalties by claiming they were following the literal language of the Code and had no notice this was not acceptable. It breeds disrespect for the law if taxpayers feel free to adopt positions which they do not expect to prevail in the hope they will not be detected, or even if they are, the only cost will be interest on the amount of tax otherwise due. Certainly an effort to minimize these opportunities should be applauded.

600 New Jersey Avenue NW Washington DC 20001-2022
(202) 662-9083

release

It may perhaps be true that the courts, which might not always be willing to insist on substance over form, would be more likely to do so in the presence of an anti-abuse regulation. If this is the case, the proposed regulation might change the result in particular cases. Again, this seems unobjectionable. It is eminently sensible and well within the IRS's power to make use of available doctrines to cause income tax consequences to be as consistent as possible with the underlying arrangement. The fact that a transaction might have a business purpose does not excuse a departure from this principle.

But says the opposition, the scope of the regulation is unclear. It would be better and lead to less uncertainty if the IRS more specifically described those transactions which are objectionable. We need to be clear as to what is at stake here. If the IRS does not have the power to affect certain transactions, perhaps, because the results sought are consistent with the substance, then the regulations will not change the ultimate result. Nevertheless, it is argued taxpayers will be deterred by uncertainty from entering into legitimate transactions or will be subject to additional costs when issues are improperly raised on audit.

The IRS has attempted to minimize these difficulties through the procedures set forth in Announcement 94-87. As the New York State Bar Association suggests, other steps along these lines are possible without adversely affecting the purpose of the regulation. Nevertheless, I acknowledge a certain amount of uncertainty and unwarranted challenge is unavoidable at least in the initial stages. However, this cannot be determinative. It is as the New York State Bar Association states, "inherently impossible to adopt specific rules that will prohibit all types of abusive partnership transactions." Those who claim otherwise are at best disingenuous.

First, the Treasury and the IRS are frequently unaware of abusive transactions until they have been carried out for some time. Practitioners do their best to conceal their plans. Some who might be willing to inform the Treasury would be deterred by their duty of loyalty to their client. Second, specific ad hoc responses take time to devise, often are prospective only, and add clutter and complexity to the tax law. Finally, more specific rules will invite taxpayers and advisors to devise approaches that will dodge the specific inhibitions. This kind of gaming should be stopped if at all possible.

Moreover, I believe the degree of uncertainty is overstated. Practitioners are undoubtedly aware when a transaction might appear to achieve a tax result inconsistent with its economic substance. In fact, it seems to me that at least some of the "legitimate" transactions which it is claimed should not be affected by the proposed regulations are raising concerns precisely because they may appear to achieve that kind of result.

In these circumstances, I do not find it objectionable to place the burden of uncertainty on those who seek this advantage. The integrity of the tax system is undermined when certain, mostly well-to-do, individuals and large corporations are able to manipulate their affairs to avoid taxes. It should not be troublesome, particularly in light of the real difficulties of attempting to directly target each abuse, to place some risk on those who seek this opportunity.

If taxpayers really want to avoid such risk, they could disclose the proposed transactions and seek private rulings or other forms of assurance that they will achieve the intended result. This is all to the good. People should recognize the inconsistency, if not the downright hypocrisy, of the assertion that the desired result is "unassailable" but still we rather the IRS did not know about the transaction. Taxation is not a football game, but rather an effort to see to it that all of us pay our fair share, no more and no less.

The proposed regulation moves us in this direction. The IRS and Treasury should be supported in these efforts.

Sincerely,

Daniel Halperin

release

2-4644

Sutherland, Asbill & Brennan

TEL (404) 853-8000
FAX (404) 853-8806

999 PEACHTREE STREET, N E
ATLANTA, GEORGIA 30309-3996

ATLANTA
AUSTIN
NEW YORK
WASHINGTON

N JEROLD COHEN
DIRECT LINE (404) 853-8038

Copy to Bierbower Kohl Dixon

July 1, 1994

The Honorable Leslie B. Samuels
Assistant Secretary, Tax Policy
Department of the Treasury
Room 3120 MT
1500 Pennsylvania Avenue, N.W.
Washington, DC 20220

RE: Proposed Reg. § 1.701-2

Dear Les:

I wanted to tell you that I am among the group that feels that the Treasury was not off the reservation in issuing Proposed Reg. § 1.701-2. I have had the experience of reviewing on behalf of clients some of the questionable partnership tax strategies that are being marketed and that probably prompted the regulation. While the strategies often have flaws, there is enough technical plausibility in some of them to lead some clients to believe that the implausible tax results can be achieved.

Some of these schemes are coupled with opinions that merely describe the hoped for results, rather than opining on them. This scenario has a look which is very reminiscent of the tax shelter days. In advising clients in this area, it is comforting to be able to point to a proposed regulation that at the very least indicates that the Treasury and the Service are prepared to challenge these transactions.

As I mentioned to you, the broad phrasing of the regulation does call for the addition of more examples when the regulation is finalized or a series of point rulings outlining its parameters. I think that your recent ruling concerning the formation of S corporation partnerships, and your statements concerning the intention of the regulation are steps in this direction. The cry that the regulation would prevent UPREITS should have been silenced by your speeches and by the fact that the Service is continuing to issue favorable rulings with respect to them. Many of the regulation's critics also have complained that agents in the field will apply the regulation in unwarranted

release

situations. Your decision to have all calls with respect to this regulation made out of the National Office -- at least for a time -- should help with this problem and should be much appreciated by the Tax Bar.

Best regards.

Sincerely,

Jerry

N. Jerold Cohen

NJC:jkp

release

COPY FOR YOUR INFORMATION

FABER ADVISES TREASURY TO 'STICK TO YOUR GUNS' ON 'SUBCHAPTER K ANTI-ABUSE RULE.'

June 1, 1994

Mr. David L. Jordan
Acting Chief Counsel
Room 3026
Internal Revenue Service
1111 Constitution Avenue, NW
Washington, DC 20224

Dear Dave:

Stick to your guns on the proposed regulations under section 701. Transactions in which partnerships are formed for no business purpose but for use solely as a means of shifting basis so as to avoid gain on otherwise taxable sales have become the tax shelters of the 1990s. They should not be tolerated. I think that you will find that responsible practitioners and professional associations will support your approach. The legitimate concerns that have been expressed by some practitioners can be addressed by including examples of transactions that will not be challenged.

Sincerely,

Peter L. Faber
Kaye, Scholer, Fierman, Hays & Handler
New York, N.Y.

cc: Hon. Margaret M. Richardson

Electronic Citation: 94 TNT 111-44
Microfiche Number: Doc 94-5441



release

[JOINT COMMITTEE PRINT]

# GENERAL EXPLANATION OF THE REVENUE PROVISIONS OF THE DEFICIT REDUCTION ACT OF 1984

(H.R. 4170, 98TH CONGRESS; PUBLIC LAW 98-369)

---

PREPARED BY THE STAFF

OF THE

JOINT COMMITTEE ON TAXATION

DECEMBER 31, 1984

40-926 O

U.S. GOVERNMENT PRINTING OFFICE
WASHINGTON : 1985

JCS-41-84

all sales or exchanges of partnership interests and may be revoked only for sufficient reason (Treas. Reg. sec. 1.754-1(c)).

### *Reasons for Change*

The corporate recapture rule described above is intended to ensure that corporate income is recognized on a distribution of recapture property to a corporations' shareholders or upon a liquidating sale of such property. Similarly, the requirement that a taxpayer recognize ordinary income on sales or exchanges of certain partnership interests prevents taxpayers from avoiding ordinary income taxation by transferring interests in partnerships which hold assets that would be subject to depreciation recapture (or otherwise subject to ordinary income treatment) if the assets themselves were disposed of.

If an interest in a partnership which holds recapture property could be distributed, or sold in liquidation, without being subject to recapture, the corporation would have effectively deferred (and perhaps avoided) the imposition of recapture tax. Thus, the corporation would have benefitted from the tax advantages of depreciation (including accelerated depreciation) without being subject to recapture as would the case if the corporation distributed the recapture property directly to its shareholders. Congress believed that in this case, as elsewhere, the use of a partnership form should not result in greater tax benefits than would be available in the case of direct ownership.

### *Explanation of Provision*

For purposes of determining the amount (and character) of gain recognized by a corporation on any distribution or liquidating sale or exchange of a partnership interest, the Act (new sec. 386) treats the distribution (or sale or exchange) of a partnership interest as a distribution (or sale or exchange) of the corporation's proportionate share of the recognition property of the partnership. Recognition property is defined as any property with respect to which the corporation would recognize gain if it distributed the property in a distribution (section 311 or 336) or sold the property in a liquidating sale (section 337). The corporation's proportionate share of recognition property is to be determined in accordance with the principles of section 751. The corporation thus is treated as if it had made a direct distribution (or liquidating sale or exchange) of the underlying recognition property for purposes of determining the amount (and character) of gain recognized on the transaction.

The Act further provides that, in determining whether property of a partnership is recognition property, the partnership is to be treated as owning its proportionate share of the property of any other partnership in which it is a partner. This rule is intended to prevent avoidance of the rules above by the use of tiered or multi-tiered partnership arrangements (see item 6. following).

The Act provides that, under Treasury regulations, rules similar to the rules above shall apply in the case of corporate distributions (or liquidating sales or exchanges) of interests in trusts. These rules will prevent the use of interests in trusts to achieve results similar



to those prevented by the statute in the case of partnership interests.

No inference is to be drawn from Congress's action regarding the treatment of the transactions described above under prior law.

*Basis adjustments.*—The Act provides that, for purposes of the optional adjustment to the basis of partnership property under section 743, any distribution of a partnership interest is to be treated as an exchange of that interest. Thus, the basis of partnership property will be adjusted to reflect amounts recognized on transfers of partnership interests accomplished through distributions (whether by corporations or partnerships) as well as those accomplished by ordinary sales or exchanges. The Act further provides that distributions of partnership interests not otherwise treated as exchanges are to be treated as exchanges of such partnership interests for purposes of section 708 (relating to continuation of a partnership) and any other partnership provision of the Code (Subchapter K) which is specified in Treasury regulations. This provision is not intended to treat the distribution of assets that do not constitute a partnership interest as an exchange of partnership interests for purposes of sections 708 and 743. It was intended that the Treasury regulations be consistent with the policy of this provision and the other partnership provisions of the Act.

*Determination of fair market value.*—The Act includes a general rule clarifying that, for purposes of the income tax provisions of the Internal Revenue Code (Subchapter A), in determining the amount of gain or loss (or deemed gain or loss) with respect to any property, the fair market value of such property is to be treated as being not less than the amount of any nonrecourse indebtedness to which the property is subject. This provision is to be limited in application to those Code provisions which expressly refer to the fair market value of property in determining the amount of gain or loss with respect to certain transfers of property, e.g., determinations under section 311 (relating to corporate distributions), section 338 (relating to stock purchases treated as asset acquisitions), section 751(c) (relating to transfers of partnership interests), and sections 617, 1245, 1250, 1252, 1254, and 1255 (relating to the treatment of certain gain from the disposition of property).[14] The provision is not intended to affect the tax treatment of dispositions (e.g., actual sales of property) in which the amount of gain or loss is computed by reference to the amount realized from the disposition (under section 1001) (rather than based on a determination of fair market value pursuant to a specific Code provision), whether or not the amount realized is determined in whole or in part by reference to liabilities to which a property is subject (see *Commissioner* v. *Tufts*, 461 U.S. 300 (1983)). Nor would the provision have any application to transactions covered by section 752(c).[15] The provision also is not intended to affect the determination of the basis of property in the hands of the transferee. (See *Estate of Franklin* v. *Commissioner*,

[14] As in the case of a disposition with respect to which gain is computed under section 1001, liabilities incurred by reason of the acquisition of the property which were not taken into account in determining the transferor's basis shall not be taken into account in determining the amount of gain or loss under this provision (see Treas. Reg. sec. 1.1001-2(a)(3)).

[15] The Conference Report (p. 864) in stating this point contained a typographical error, so that section 751(c) was cited where section 752(c) was intended

Calendar No. 891

94TH CONGRESS, 2d Session | SENATE | REPORT No. 94-938

# TAX REFORM ACT OF 1976

---

## REPORT

OF THE

## COMMITTEE ON FINANCE
## UNITED STATES SENATE

ON

## H.R. 10612

JUNE 10 (legislative day, JUNE 3), 1976.—Ordered to be printed

U.S. GOVERNMENT PRINTING OFFICE
72-261 O WASHINGTON : 1976

MAY-08-2006 10:47 2025145504 P.02/05

allocations have substantial economic effect, as presently interpreted by the regulations and case law.

*Explanation of provisions*

The committee amendment provides generally that an allocation of overall income or loss (described under section 702(a)(9)), or of any item of income, gain, loss, deduction, or credit (described under section 702(a) (1)–(8)), shall be controlled by the partnership agreement if the partner receiving the allocation can demonstrate that it has "substantial economic effect", i.e., whether the allocation may actually affect the dollar amount of the partners' shares of the total partnership income or loss independently of tax consequences. (Regs. § 1.704–1 (b)(2)) Other factors that could possibly relate to the determination of the validity of an allocation are set forth under the present regulations (Regs. § 1.704–1(b)(2)).

If an allocation made by the partnership is set aside, a partner's share of the income, gain, loss, deduction or credit (or item thereof) will be determined in accordance with his interest in the partnership, taking into account all facts and circumstances.

In determining a "partner's interest in the partnership", all the facts and circumstances are to be taken into account. Among the relevant factors to be taken into account are the interests of the respective partners in profits and losses (if different from that of taxable income or loss), cash flow; and their rights to distributions of capital upon liquidation.

The House bill differs from the committee amendment in two respects. First, the committee amendment disallows a special allocation lacking "substantial economic effect", while the House bill does so with respect to a special allocation lacking "a business purpose" or where "significant avoidance or evasion of any tax . . . results from such allocation." While there is a difference in language, the intent of the committee amendment and the House bill are essentially the same—both versions seek to prevent the use of special allocations for tax avoidance purposes, while allowing their use for bona fide business purposes.[11]

The committee amendment provides that in the case where there is a disallowance of a special allocation, a partner's share of the income, gain, loss, deduction or credit (or item thereof) is to be determined in accordance with the partner's interest in the partnership, taking into account all facts and circumstances. The House bill provided a two-step method of reallocation which includes the provision described above in the committee amendment but also provided for the allocation to be determined in accordance with the partner's "permanent method of allocating" the taxable income or loss (described under section 702(a)(9)), if there is such a method. The committee amendment deletes this alternative because of the difficulty in defining "permanent method of allocating" the items.

*Effective date*

This provision applies to partnership taxable years beginning after December 31, 1975. The committee does not intend that any inference

[11] Because of the use of the phrase "significant avoidance or evasion of any tax . . . *results*" (emphasis supplied) under the House bill a conceivable interpretation might cause the disallowance of a special allocation to a high-bracket taxpayer, notwithstanding that the allocation had a business purpose and economic substance.



be drawn as to the propriety or impropriety of a special allocation under present law.

*Revenue effect*

The revenue impact of this provision is included in the revenue estimate under (a) above.

### 9. Interest

#### *a. Treatment of Prepaid Interest (sec. 205(a) of the bill and sec. 461(g) of the Code)*

*Present law*

Under present law, a taxpayer may claim deductions in the year which is proper under the method of accounting which he uses in computing his taxable income (sec. 461). A taxpayer using the cash receipts and disbursements method of accounting may generally claim a deduction for interest paid within his taxable year (sec. 163(a)). However, if the taxpayer's method of accounting does not clearly reflect income, the Internal Revenue Service may recompute the income using the method which the Service believes clearly reflects income (sec. 446(b)). The income tax regulations also provide that, even under the cash method of accounting, an expense which results in the creation of an asset having a useful life which extends substantially beyond the close of the taxable year may be deducted only in part in the year in which payment is made.

No specific statutory provision expressly permits prepaid interest to be deducted in full when paid by a cash method taxpayer. The authority for deducting prepaid interest rests on court cases and on administrative rulings by the Service. Until the late 1960's tax-oriented investors were able to prepay as much as five years' interest with apparent approval by the courts and the Service.

In 1968, however, the Service published a revenue ruling holding that an interest prepayment by a cash-basis taxpayer for a period extending for more than 12 months beyond the end of the current taxable year will be deemed to create a material distortion of income. In such a case the interest will be allocated over the taxable years involved. Deductions for interest paid in advance for a period not in excess of 12 months after the last day of the taxable year of payment will be considered on a case-by-case basis to determine whether a material distortion of income has resulted.[1] Recent Tax Court cases have disallowed prepaid interest deductions of taxpayers in situations where the Internal Revenue Service has relied on this ruling as authority to disallow the deduction. The Tax Court has indicated, however, that it might not be willing to disallow prepaid interest in all cases where the prepayment relates to periods extending more than 12 months beyond the end of the current taxable year.

The tax treatment of a loan requiring prepaid interest or points contrasts with the tax treatment of a discount loan under present law, although in many situations the economic substance of both

[1] The ruling (Rev. Rul. 68–643, 1968–2 C.B. 76) sets forth several factors which may be considered in determining whether there is a material distortion of income: the amount of the taxpayer's income in the taxable year of payment; his income in previous years; the amount of prepaid interest; the time of payment; the reason for the prepayment; and the presence of a varying rate of interest over the term of the loan.

MAY-08-2006 10:47 2025145504 P.03/05

83d Congress } HOUSE OF REPRESENTATIVES { Report
2d Session } { No. 2543

# INTERNAL REVENUE CODE OF 1954

July 26, 1954.—Ordered to be printed

Mr. Reed of New York, from the committee of conference, submitted the following

# CONFERENCE REPORT

[To accompany H. R. 8300]

The committee of conference on the disagreeing votes of the two Houses on the amendments of the Senate to the bill (H. R. 8300) to revise the internal revenue laws of the United States, having met after full and free conference, have agreed to recommend and do recommend to their respective Houses as follows:

That the Senate recede from its amendments numbered 7, 10a, 12 (4), 41a, 41b, 57a, 67a, 74a, 110a, 129a, 141a, 154, 155, 178, 179, 180, 185a, 220a, 271b, 273a, 281a, 413a, 485a, 486 (1), 486 (2), 486 (3), 494, and 551.

That the House recede from its disagreement to the amendments of the Senate numbered 1 (1), 1 (2), 2 (1), 4, 5, 6, 8, 9, 11, 12 (1), 12 (2), 12 (3), 12 (5), 13, 14, 15, 16, 17 (2), 18, 19, 20, 21, 22, 23 (1), 23 (2), 23 (4), 24, 25, 26, 27, 28, 29, 31, 33, 34, 34a, 35, 36, 37, 38, 39, 40, 41, 42, 44, 46, 47, 48, 49, 51, 52, 53, 54, 55, 56, 58, 59, 60, 61, 61a, 62, 63, 64; 65, 66, 67, 67b, 68 (1), 68 (4), 69, 70, 71, 72, 73 (2), 74, 75, 76, 76a, 77, 78, 80, 81, 84, 85 (1), 86, 87, 88, 89, 90, 91, 92, 93 (2), 94, 95, 96 (1), 97, 98, 100, 102 (2), 102a, 103, 105, 105a, 106, 107, 108, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 156 (1), 156 (2), 157, 158, 159, 160, 161, 162, 163 (1), 163 (3), 163 (4), 164, 165 (1), 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 181, 182, 183, 184, 185, 186 (2), 187, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 217, 218, 219, 220 (1), 220 (2), 220 (3), 220 (4), 221, 222, 223, 224, 225, 226, 227 (2), 228, 229, 230, 231, 232, 232a, 232b, 233, 234, 235, 236, 237, 238, 239, 240, 241, 242, 244, 245, 247, 248, 249, 250, 251, 252, 253, 253a, 254, 255, 256, 257, 260, 261, 262, 264, 265, 266, 267, 268, 269, 270, 271, 272,

50481°—54——1

May. 4. 2006 3:23PM US DOJ LIBRARY No. 4767 P. 6

than that of all its principal partners if a business purpose is established therefor.

(*d*) *Transactions between partners and partnerships* (*sec. 707*).—The House provision treated sales of property between a partnership and a partner having an interest of 50 percent or more as a contribution to, and a distribution from, the partnership so that no gain or loss was recognized. In lieu of the House rules, the Senate amendment applies to partnerships the rules used in the case of similar transactions between corporations and controlling shareholders. A deduction for losses is disallowed if the partner has an interest in the partnership of more than 50 percent. Capital gain on the sale of depreciable property is recognized unless the partner has a partnership interest of more than 80 percent, in which case the gain is to constitute ordinary income.

Both the House provisions and the Senate amendment provide for the use of the "entity" approach in the treatment of the transactions between a partner and a partnership which are described above. No inference is intended, however, that a partnership is to be considered as a separate entity for the purpose of applying other provisions of the internal revenue laws if the concept of the partnership as a collection of individuals is more appropriate for such provisions. An illustration of such a provision is section 543 (a) (6), which treats income from the rental of property to shareholders as personal holding company income under certain conditions.

(*e*) *Distributions* (*secs. 731–735*).—The House bill provided that in the case of distributions, whether or not in complete liquidation of a partner's interest, the distributed property was in general to have a basis to the distributee equal to its basis to the partnership, and that gain or loss was to be recognized on the difference between the basis of the distributed property and that of the distributee's partnership interest. The Senate amendment retains the use of the carryover basis for nonliquidating distributions, but provides in the case of liquidating distributions that the distributee's basis for the property received is to be equal to the basis of his partnership interest less any money received. The basis of inventory items and unrealized receivables, however, is limited to the basis for such property to the partnership in the case of both liquidating and nonliquidating distributions. Where the partner receives a basis for the property differing from its basis to the partnership, the partnership is permitted to adjust the basis of its assets to reflect this difference.

(*f*) *Payments to a retiring partner or successor of a deceased partner* (*sec. 736*).—Under both the House bill and the Senate amendment, payments made by a partnership to a retiring partner or a successor of a deceased partner in excess of the value of his capital interest are treated as income to the recipient and a deduction to the remaining partners. The recipient retired partner, estate, or successor is to be treated in the same manner as a partner and, consequently, the payments, determined with respect to a partnership taxable year, are to be treated as income to the recipient for his taxable year with, or within, which such partnership year ends.

Under the House bill, however, the treatment described above for payments other than for a capital interest was to apply only to payments received within 5 years after death or retirement. If received after this period, they were treated as a gift by the remaining partners

Union Calendar No. 1635

88D CONGRESS } 2d Session } SENATE { REPORT No. 1622

# INTERNAL REVENUE CODE OF 1954

## REPORT

OF THE

## COMMITTEE ON FINANCE

UNITED STATES SENATE

TO ACCOMPANY

## H. R. 8300

A BILL TO REVISE THE INTERNAL REVENUE LAWS OF THE UNITED STATES

JUNE 18, 1954.—Ordered to be printed

UNITED STATES
GOVERNMENT PRINTING OFFICE
WASHINGTON : 1954

48590

No. 4767 P. 4 May. 4. 2006 3:22PM US DOJ LIBRARY

Under section 72 in a joint and survivor annuity, an exclusion ratio will be determined which will indicate the average interest earnings over the combined lives of the two annuitants. The survivor will continue to use this exclusion ratio although somewhat less interest than this will be earned in the latter years while she is receiving an annuity and more interest than this will be earned in the early years while they are both receiving the joint annuity. The provisions contained in subparagraph (C) in both paragraphs (1) and (2) of subsection (c) of section 691 are designed to provide a deduction to the survivor based upon the estate tax attributable to a portion of the survivor annuity which represents the excess interest earned while the annuity was being received jointly. This is, in effect, income in respect of a decedent. This deduction will be spread ratably over the life expectancy of the survivor.

## XXIII. Partners and Partnerships

The existing tax treatment of partners and partnerships is among the most confused in the entire income tax field. The present statutory provisions are wholly inadequate. The published regulations, rulings, and court decisions are incomplete and frequently contradictory. As a result partners today cannot form, operate, or dissolve a partnership with any assurance as to tax consequences.

This confusion is particularly unfortunate in view of the great number of business enterprises and ventures carried on in partnership form. It should also be noted that the partnership form of organization is much more commonly employed by small businesses and in farming operations than the corporate form.

Because of the vital need for clarification, the House and your committee have undertaken the first comprehensive statutory treatment of partners and partnerships in the history of the income tax laws. In establishing a broad pattern applicable to partnerships generally, the principal objectives have been simplicity, flexibility, and equity as between the partners.

In general, the proposed statutory treatment retains the existing scheme of regarding the partnership as merely an income-reporting, and not a taxable, entity. In addition, a statutory pattern has been established for contributions to a partnership, distributions by a partnership, transfers of partnership interests by sale or on the death of a partner, termination of partnership taxable years, transactions between a partner and the partnership, and the treatment of payments to a retiring partner or a deceased partner's estate or heir.

*A. Determination of Tax Liability (secs. 701–708)*

*(1) House changes accepted by committee*

(a) *Income of partners.*—Under the House and your committee's bill, as under present law, partners will be liable individually for income tax on their distributive shares of partnership income. The partnership will act as a mere conduit as to income and loss items, transferring such items directly to the individual partners.

The items required to be segregated will retain their original character in the hands of the partner as though they were realized directly by him from the same source from which realized by the partnership and in the same manner. After excluding the items

83d Congress, 2d Session House Report No. 1337

# INTERNAL REVENUE CODE OF 1954

## REPORT

OF THE

## COMMITTEE ON WAYS AND MEANS

HOUSE OF REPRESENTATIVES

TO ACCOMPANY

## H. R. 8300

A BILL TO REVISE THE INTERNAL REVENUE LAWS OF THE UNITED STATES

MARCH 9, 1954.—Committed to the Committee of the Whole House on the State of the Union and ordered to be printed

UNITED STATES
GOVERNMENT PRINTING OFFICE
44140° WASHINGTON : 1954

May. 4. 2006 3:22PM US DOJ LIBRARY No. 4767 P. 2

eligible. This treatment is extended to that part of the value of a survivor's annuity included in the estate-tax base of the decedent annuitant which represents the interest accumulation for the survivor annuity since the annuity's purchase. This treatment is also extended to the value of unexercised "restricted stock options" included in the gross estate of the decedent employee and to payments to a deceased partner by a partnership which are includible in the income of the estate or beneficiary of the deceased partner. This treatment is provided for these new forms of income as a part of your committee's policy of providing that all property or property rights included in a decedent's gross estate for estate-tax purposes either receive a new basis at the date of his death or, if subsequently to be reported as income when that event occurs receive a deduction for the estate tax paid in the decedent's estate attributable to such property.

## XXII. Partners and Partnerships

The existing tax treatment of partners and partnerships is among the most confused in the entire income tax field. The present statutory provisions are wholly inadequate. The published regulations, rulings, and court decisions are incomplete and frequently contradictory. As a result partners today cannot form, operate, or dissolve a partnership with any assurance as to tax consequences.

This confusion is particularly unfortunate in view of the great number of business enterprises and ventures carried on in partnership form. It should also be noted that the partnership form of organization is much more commonly employed by small businesses and in farming operations than the corporate form.

Because of the vital need for clarification, your committee has undertaken the first comprehensive statutory treatment of partners and partnerships in the history of the income tax laws. In establishing a broad pattern applicable to partnerships generally, the principal objectives have been simplicity, flexibility, and equity as between the partners.

In general, the proposed statutory treatment retains the existing scheme of regarding the partnership as merely an income-reporting, and not a taxable, entity. In addition, a statutory pattern has been established for contributions to a partnership, distribution by a partnership, transfers of partnership interests by sale or on the death of a partner, termination of partnership taxable years, transactions between a partner and the partnership, and the treatment of payments to a retiring partner or a deceased partner's estate or heir.

### A. *General rules* (*secs. 701–707*)

(1) *Income of partners.*—Under your committee's bill, as under present law, partners will be liable individually for income tax on their distributive shares of partnership income. The bill provides that the partnership will act as a mere conduit as to income and loss items, transferring such items directly to the individual partners.

The items required to be segregated will retain their original character in the hands of the partner as though they were realized directly by him from the same source from which realized by the partnership and in the same manner. After excluding the items required to be separately treated, the remaining income or loss, which

# TABLE OF CONTENTS


| | | Page |
|---|---|---|
| I. | General Statement | 4025 |
| II. | Revenue Effects | 4026 |
| III. | Tax on Individuals and Corporations | 4028 |
| | A. Combination of normal tax and surtax (sec. 1) | 4028 |
| | B. Head of family (sec. 2) | 4029 |
| | C. Corporate income-tax rate (sec. 11) | 4029 |
| IV. | Credits Against Tax | 4030 |
| | A. Dividends received by individuals (secs. 34 and 116) | 4030 |
| | B. Retirement income credit (sec. 38) | 4032 |
| V. | Deductions in Arriving at Adjusted Gross Income | 4033 |
| | A. Transportation expenses (sec. 62(2) (C)) | 4033 |
| | B. Business expenses of outside salesmen (sec. 62(2) (D)) | 4033 |
| VI. | Special Inclusions in Gross Income | 4034 |
| | A. Alimony and separate maintenance payments (sec 71) | 4034 |
| | B Annuities (sec. 72) | 4034 |
| | C. Amounts which are not annuity payments, but received under annuity or endowment contracts (sec 72 (e) and (h)) | 4035 |
| | D. Prizes and awards (sec. 74) | 4036 |
| | E. Discharge of indebtedness (secs. 76, 108, 1017) | 4036 |
| VII | Exclusions From Gross Income | 4038 |
| | A. Employee death benefits (sec 101) | 4038 |
| | B. Interest element in life-insurance proceeds (sec 101 (d)) | 4038 |
| | C. Payments for injury and sickness (secs 104, 105, and 106) | 4039 |
| | D Rental value of parsonages (sec 107) | 4040 |
| | E. Income taxes paid by lessee corporation (sec 110) | 4040 |
| | F Combat pay of members of the Armed Forces (secs 112, 692) | 4040 |
| | G. Scholarships and fellowship grants (sec. 117) | 4041 |
| | H. Contributions to the capital of a corporation (secs. 118, 355) | 4042 |
| | I Meals and lodging (sec 119) | 4042 |
| | J. Subsistence payments to State police officers (sec 120) | 4043 |

Your committee's bill also extends the treatment provided for income in respect of a decedent to several forms of income not now eligible. This treatment is extended to that part of the value of a survivor's annuity included in the estate-tax base of the decedent annuitant which represents the interest accumulation for the survivor annuity since the annuity's purchase. This treatment is also extended to the value of unexercised "restricted stock options" included in the gross estate of the decedent employee and to payments to a deceased partner by a partnership which are includible in the income of the estate or beneficiary of the deceased partner. This treatment is provided for these new forms of income as a part of your committee's policy of providing that all property or property rights included in a decedent's gross estate for estate-tax purposes either receive a new basis at the date of his death or, if subsequently to be reported as income when that event occurs receive a deduction for the estate tax paid in the decedent's estate attributable to such property.

## XXII. PARTNERS AND PARTNERSHIPS

The existing tax treatment of partners and partnerships is among the most confused in the entire income tax field. The present statutory provisions are wholly inadequate. The published regulations, rulings, and court decisions are incomplete and frequently contradictory. As a result partners today cannot form, operate, or dissolve a partnership with any assurance as to tax consequences.

This confusion is particularly unfortunate in view of the great number of business enterprises and ventures carried on in partnership form. It should also be noted that the partnership form of organization is much more commonly employed by small businesses and in farming operations than the corporate form.

Because of the vital need for clarification, your committee has undertaken the first comprehensive statutory treatment of partners and partnerships in the history of the income tax laws. In establishing a broad pattern applicable to partnerships generally, the principal objectives have been simplicity, flexibility, and equity as between the partners.

In general, the proposed statutory treatment retains the existing scheme of regarding the partnership as merely an income-reporting, and not a taxable, entity. In addition, a statutory pattern has been established for contributions to a partnership, distribution by a partnership, transfers of partnership interests by sale or on the death of a partner, termination of partnership taxable years, transactions between a partner and the partnership, and the treatment of payments to a retiring partner or a deceased partner's estate or heir.

### A. General rules (secs. 701–707)

(1) **Income of partners.**—Under your committee's bill, as under present law, partners will be liable individually for income tax on their distributive shares of partnership income. The bill provides that the partnership will act as a mere conduit as to income and loss items, transferring such items directly to the individual partners.

The items required to be segregated will retain their original character in the hands of the partner as though they were realized directly by him

# TABLE OF CONTENTS

## PART I—GENERAL EXPLANATION

Page

I. General Statement .......... 4629

II. Revenue Effects .......... 4631

III. Tax on Individuals and Corporations .......... 4633
- A. Combination of normal tax and surtax (sec. 1) .......... 4633
- B. Head of family (sec. 2) .......... 4633
- C. Corporate income-tax rate (sec. 11) .......... 4635

IV. Credits Against Tax .......... 4635
- A. Dividends received by individuals (secs. 34 and 116) .......... 4635
- B. Retirement income credit (sec. 37) .......... 4637

V. Deductions in Arriving at Adjusted Gross Income .......... 4638
- A. Transportation expenses (sec. 62(2) (C)) .......... 4638
- B. Business expenses of outside salesmen (sec. 62(2) (D)) .......... 4639

VI. Special Inclusions in Gross Income .......... 4639
- A. Alimony and separate maintenance payments (sec. 71) 4639
- B. Annuities (sec. 72) .......... 4640
- C. Payments other than annuities received under annuity or endowment contracts (sec. 72(e) and (h)) .......... 4641
- D. Prizes and awards (sec. 74) .......... 4642
- E Discharge of indebtedness (secs. 76 (of House bill), 108, 1017) .......... 4643

VII. Exclusions From Gross Income .......... 4643
- A. Proceeds of life insurance contracts payable by reason of death (sec. 101(a)) .......... 4643
- B Employees death benefits (sec. 101(b)) .......... 4644
- C. Life insurance proceeds paid in installments (sec 101(d)) .......... 4644
- D. Accident and health plans financed by employers (secs 104 and 105) .......... 4645
- E Rental value of parsonage (sec. 107) .......... 4646
- F Income taxes paid by lessee corporation (sec. 110) .......... 4646
- G Combat pay of members of the Armed Forces (secs. 112, 692) .......... 4647
- H. Scholarships and fellowship grants (sec 117) .......... 4647
- I. Contributions to the capital of a corporation (secs 118, 362(c)) .......... 4648
- J. Meals and lodging (sec. 119) .......... 4649
- K. Subsistence payments to State police officers (sec. 120) 4649

VIII. Personal Exemptions .......... 4650
- A. Earnings test for dependent (sec 151) .......... 4650
- B. Definition of dependent (sec 152) .......... 4650
- C. Revenue effect .......... 4651

partners and partnerships in the history of the income tax laws. In establishing a broad pattern applicable to partnerships generally, the principal objectives have been simplicity, flexibility, and equity as between the partners.

In general, the proposed statutory treatment retains the existing scheme of regarding the partnership as merely an income-reporting, and not a taxable, entity. In addition, a statutory pattern has been established for contributions to a partnership, distributions by a partnership, transfers of partnership interests by sale or on the death of a partner, termination of partnership taxable years, transactions between a partner and the partnership, and the treatment of payments to a retiring partner or a deceased partner's estate or heir.

**A. Determination of Tax Liability (secs. 701–708)**

**(1) House changes accepted by committee**

**(a) Income of partners.**—Under the House and your committee's bill, as under present law, partners will be liable individually for income tax on their distributive shares of partnership income. The partnership will act as a mere conduit as to income and loss items, transferring such items directly to the individual partners.

The items required to be segregated will retain their original character in the hands of the partner as though they were realized directly by him from the same source from which realized by the partnership and in the same manner. After excluding the items required to be separately treated, the remaining income or loss, which corresponds to the ordinary income or loss of the partnership under present law, is attributed to the partners.

The computation of partnership income is generally on the same basis as existing law. The partnership is allowed the usual business deductions, but is denied the deductions peculiar to individuals.

Both versions of the bill provide that all elections with respect to income derived from a partnership (other than the election to claim a credit for foreign taxes) are to be made at the partnership level and not by the individual partners This rule recognizes the partnership as an entity for purposes of income reporting. It avoids the confusion which would occur if each partner were to determine partnership income separately for his own purposes

**(b) Distributive shares.**—The taxation of partnership income or other items directly to the partners requires a determination of each partner's share of such items. In general, such shares will be determined in accordance with the partnership agreement as under existing practice

In the case of property contributed to a partnership, there has been considerable doubt, under present law, as to the partners' distributive shares of gain and loss upon the sale of such property and as to the allocation among the partners of depreciation on such property. This problem arises when the tax basis of the contributed property is greater or less than the value of such property at the time of contribution Under the approach adopted by the House bill, the so-called entity rule, the allocation of gain or loss and of depreciation is to be in accordance with the distributive shares of the partners generally Thus, if 1 of 2 equal partners contributes to a partner-

# TABLE OF CONTENTS

## PART I—GENERAL EXPLANATION


| | Page |
|---|---|
| I. General Statement | 4629 |
| II. Revenue Effects | 4631 |
| III. Tax on Individuals and Corporations | 4633 |
| A. Combination of normal tax and surtax (sec. 1) | 4633 |
| B. Head of family (sec. 2) | 4633 |
| C. Corporate income-tax rate (sec. 11) | 4635 |
| IV. Credits Against Tax | 4635 |
| A. Dividends received by individuals (secs. 34 and 116) | 4635 |
| B. Retirement income credit (sec. 37) | 4637 |
| V. Deductions in Arriving at Adjusted Gross Income | 4638 |
| A. Transportation expenses (sec. 62(2) (C)) | 4638 |
| B. Business expenses of outside salesmen (sec. 62(2) (D)) | 4639 |
| VI. Special Inclusions in Gross Income | 4639 |
| A. Alimony and separate maintenance payments (sec. 71) | 4639 |
| B. Annuities (sec. 72) | 4640 |
| C. Payments other than annuities received under annuity or endowment contracts (sec. 72(e) and (h)) | 4641 |
| D. Prizes and awards (sec 74) | 4642 |
| E. Discharge of indebtedness (secs. 76 (of House bill), 108, 1017) | 4643 |
| VII. Exclusions From Gross Income | 4643 |
| A. Proceeds of life insurance contracts payable by reason of death (sec. 101(a)) | 4643 |
| B. Employees death benefits (sec. 101(b)) | 4644 |
| C. Life insurance proceeds paid in installments (sec. 101(d)) | 4644 |
| D Accident and health plans financed by employers (secs 104 and 105) | 4645 |
| E. Rental value of parsonage (sec. 107) | 4646 |
| F. Income taxes paid by lessee corporation (sec. 110) | 4646 |
| G. Combat pay of members of the Armed Forces (secs. 112, 692) | 4647 |
| H. Scholarships and fellowship grants (sec. 117) | 4647 |
| I. Contributions to the capital of a corporation (secs. 118, 362(c)) | 4648 |
| J. Meals and lodging (sec 119) | 4649 |
| K. Subsistence payments to State police officers (sec. 120) | 4649 |
| VIII. Personal Exemptions | 4650 |
| A Earnings test for dependent (sec 151) | 4650 |
| B Definition of dependent (sec. 152) | 4650 |
| C. Revenue effect | 4651 |

(d) The treatment for income in respect of decedents has been expanded to include any payments to a deceased partner's successor not considered a payment for the partner's capital interest.

(e) The election to adjust the basis of partnership assets upon a transfer or distribution have been made operative as one election.

**6. Effective Dates (sec. 771)**

Your committee's bill makes the new partnership provisions generally applicable for partnership taxable years beginning after December 31, 1954, instead of December 31, 1953, as provided by the House bill. However, several loophole-closing provisions are made effective as of March 9, 1954, the date the bill was introduced in the House.

The March 9 effective date applies in the case of—

(a) the adoption of a new taxable year by a partner or partnership,

(b) the holding period for receivables or inventory items distributed to a partner, and

(c) the collapsible partnership provision.

The postponement of the general effective date for 1 year appears desirable to give taxpayers more time to become acquainted with the new provisions. However, the provisions which are loophole closing in character are made effective earlier so that taxpayers will not be given an opportunity to take advantage of the present treatment in this area.

## XXIV. TEMPORARY FORMULA FOR TAXING LIFE INSURANCE COMPANIES (SECS. 801–807)

**(1) House changes accepted by committee**

Your committee has accepted with minor technical amendments the House bill provisions continuing through 1954 the present temporary formula for the taxation of life insurance companies.

For the past 3 years life insurance companies have been taxed under temporary provisions which apply a flat rate tax of 3¾ percent on the first $200,000 and 6½ percent on amounts in excess of $200,000 of net investment income with certain adjustments. These reduced rates are equivalent to the application of the ordinary corporate rates of 30 percent on the first $25,000 and 52 percent on income above $25,000, after deduction of 87½ percent of the net investment income The 87½ percent figure reflects the deduction for the industry's average policy reserve interest needs which would have applied in 1951 under the 1949–50 stopgap formula previously in effect. Under the temporary flat rate tax provisions, companies whose earnings are less than or only slightly above the amount of interest required to meet their own policy obligations receive a special credit which may reduce their tax by as much as one-half. First adopted in 1951 as a temporary expedient, these provisions were successively extended to 1952 and 1953.

Both the House bill and your committee's bill provide the extension of these provisions for 1 more year because with the extensive code revision work it has not been possible to devote the necessary study to the revision of the tax treatment of life-insurance companies. In the absence