# In the United States Court of Federal Claims

No. 06-407 T
(into which have been consolidated Nos. 06-408T, 06-409T, 06-410T, 06-411T, 06-810T, 06-811T)

(E-Filed: August 28, 2008)

| | |
|---|---|
| ALPHA I, L.P., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | Action for Readjustment of Partnership Items; I.R.C. § 6226; Motion for Protective Order; Relevance; Deliberative Process Privilege<br><br>06-407 T |
| BETA PARTNERS, L.L.C., BY AND THROUGH ALPHA I, L.P., A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | 06-408 T |
| R, R, M & C PARTNERS, L.L.C., BY AND THROUGH R, R, M & C GROUP, L.P., A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v. | 06-409 T |

| | | |
|---|---|---|
| THE UNITED STATES,<br><br>Defendant. | ) | |
| R, R, M & C GROUP, L.P., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-410 T |
| CWC PARTNERSHIP I, BY AND THROUGH TRUST FBO ZACHARY STERN U/A FIFTH G, ANDREW STERN AND MARILYN SANDS, TRUSTEES, A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-411 T |
| MICKEY MANAGEMENT, L.P., BY AND THROUGH MARILYN SANDS, A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v. | ) | 06-810 T |

| | | |
|---|---|---|
| THE UNITED STATES, | ) | |
| Defendant. | ) | |
| M, L, R & R, BY AND THROUGH RICHARD E. SANDS, TAX MATTERS PARTNER, | ) | |
| Plaintiff, | ) | 06-811 T |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

Lewis S. Wiener, Washington, DC, for plaintiff. N. Jerold Cohen, Thomas A. Cullinan, Joseph M. Depew, and Julie P. Bowling, Atlanta, GA, and Kent L. Jones, Washington, DC, of counsel.

Thomas M. Herrin, with whom were Richard T. Morrison, Acting Assistant Attorney General, David Gustafson, Chief, Court of Federal Claims Section, Louise Hytken, Chief, Southwestern Civil Trial Section, and Michelle C. Johns, Trial Attorney, Tax Division, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

HEWITT, Judge

## I. Background: The Original Complaints and the Amended Complaints

The original complaints in these consolidated cases were brought to challenge the adjustments of partnership items under Internal Revenue Code (I.R.C.) § 6226 for either or both of the tax years ended December 31, 2001 (tax year 2001) and December 31, 2002 (tax year 2002) on the grounds, as to Alpha I, L.P., as to tax year 2001, that there were no partnership liabilities under I.R.C. § 752, Complaint [of Alpha I, L.P.] for Readjustment of Partnership Items Under Code Section 6226 (Compl.) ¶ 40, or under Treasury Regulation § 1.752-6, id. at ¶ 41, that defendant had improperly determined the amount

considered at risk in the relevant transactions under I.R.C. § 465(b)(1), id. at ¶ 42, that defendant had improperly disregarded the existence of Alpha I, id. at ¶ 43, and that defendant had improperly asserted accuracy-related penalties under I.R.C. § 6662, id. at ¶ 48, and as to tax year 2002, that defendant erroneously reduced the basis claimed by Alpha I in its stock in Yahoo and Corning, id. at ¶ 45, that defendant had improperly determined the amount considered at risk in the relevant transactions under I.R.C. § 465(b)(1), id. at ¶ 46, that defendant had improperly disregarded the existence of Alpha I, id. at ¶ 47, and that defendant had improperly asserted accuracy-related penalties under I.R.C. § 6662, id. at ¶ 48.[1]

---

[1]Plaintiff Alpha I, L.P. (Alpha I), by and through Robert Sands, a Notice Partner in Alpha I, filed a complaint against the United States on May 18, 2006, "petitioning for the readjustment of partnership items that were adjusted by the Internal Revenue Service [(IRS)] in a Notice of Final Partnership Administrative Adjustment [(FPAA)] issued to Alpha [I] with respect to Alpha[ I's] Forms 1065 U.S. Return of Partnership Income for the tax years ended December 31, 2001 and December 31, 2002." Complaint [of Alpha I] for Readjustment of Partnership Items Under Code Section 6226 (Alpha Complaint or Alpha Compl.) 1. During the relevant time period, tax years 2001 and 2002, "the six limited partners in Alpha [I] were Robert Sands, Richard Sands, Marilyn Sands, Andrew Stern, the Marvin Sands Master Trust, and CWC Partnership-I." Alpha Compl. ¶ 2. R, R, M & C Management Corporation was the general and Tax Matters Partner of Alpha I. Id. at ¶ 3. By court order of February 6, 2007, the following cases were consolidated for pre-trial purposes: Beta Partners, L.L.C., by and through Alpha I, L.P., a Notice Partner (Beta) v. United States, R, R, M & C Partners, L.L.C., by and through R, R, M & C Group, L.P., a Notice Partner (Partners) v. United States, R, R, M & C Group, L.P., by and through Robert Sands, a Notice Partner (Group) v. United States, CWC Partnership I, by and through Trust FBO Zachary Stern U/A Fifth G, Andrew Stern and Marilyn Sands, Trustees, a Notice Partner (CWC) v. United States, Mickey Management, L.P., by and through Marilyn Sands, a Notice Partner (Mickey) v. United States, and M, L, R & R by and through Richard E. Sands, Tax Matters Partner (M, L, R & R) v. United States. Order of Feb. 6, 2007.

Beta had two members, Alpha I and Gloria Robinson, until December 27, 2001 when Alpha I acquired Gloria Robinson's interest. Complaint [of Beta] for Readjustment of Partnership Items Under Code Section 6226 (Beta Complaint or Beta Compl.) ¶ 2. This caused Beta "to terminate for purposes of the Internal Revenue Code of 1986 [(I.R.C.)]." Id. Alpha I was the Tax Matters Partner for Beta. Id. at ¶ 3. Beta filed a complaint on May 18, 2006 challenging the adjustment of partnership items "by the [IRS] in a [FPAA] issued to Beta with respect to Partner's Form 1065 U.S. Return of Partnership Income for the tax year ended December 27, 2001." Id. at 1. The Beta Complaint alleged that there were no partnership liabilities under I.R.C. § 752, id. at ¶ 40, or under Treasury Regulation § 1.752-6, id. at ¶ 41, that defendant had improperly determined the amount considered at risk in the relevant transactions under I.R.C. § 465(b)(1), id. at ¶ 42, that defendant had improperly disregarded the existence of

(continued...)

[1](...continued)
Beta, id. at ¶ 43, and that defendant had improperly asserted accuracy related penalties under I.R.C. § 6662, id. at ¶ 44. The Beta Complaint stated the following prayers for relief:

> 1. Determine that the adjustments made by the [IRS] in the Beta FPAA are factually and/or legally incorrect and are invalid;
> 2. Determine that the penalties asserted by the [IRS] in the Beta FPAA are erroneous and/or that the parties have valid defenses to the assertion of such penalties;
> 3. Determine that the deposits paid to bring this suit should be refunded, together with interest thereon; and
> 4. Grant Plaintiff such other and further relief to which Plaintiff is entitled.

Id. at 11.

Partners had two members, Group and Gloria Robinson, until September 10, 2001 when Group acquired Gloria Robinson's interest. Complaint [of Partners] for Readjustment of Partnership Items Under Code Section 6226 (Partners Complaint or Partners Compl.) ¶ 2. This caused Partners "to terminate for purposes of the Internal Revenue Code of 1986 [(I.R.C.)]." Id. Group was the Tax Matters Partner for Partners. Id. at ¶ 3. Partners filed a complaint on May 18, 2006 challenging the adjustment of partnership items "by the [IRS] in a [FPAA] issued to Partners with respect to Partner's Form 1065 U.S. Return of Partnership Income for the tax year ended September 10, 2001." Id. at 1. The Partners Complaint alleged that there were no partnership liabilities under I.R.C. § 752, id. at ¶ 38, or under Treasury Regulation § 1.752-6, id. at ¶ 39, that defendant had improperly disallowed "the $(424,565) loss claimed by Partners on closing the Short Sales, and erred in its finding that the losses should be disallowed for lack of a primary profit motive," id. at ¶ 40, that defendant had improperly determined the amount considered at risk in the relevant transactions under I.R.C. § 465(b)(1), id. at ¶ 41, that defendant had improperly disregarded the existence of Partners, id. at ¶ 42, and that defendant had improperly asserted accuracy related penalties under I.R.C. § 6662, id. at ¶ 43. The Partners Complaint stated the following prayers for relief:

> 1. Determine that the adjustments made by the [IRS] in the Partners FPAA are factually and/or legally incorrect and are invalid;
> 2. Determine that the penalties asserted by the [IRS] in the Partners FPAA are erroneous and/or that the parties have valid defenses to the assertion of such penalties;
> 3. Determine that the deposits paid to bring this suit should be refunded, together with interest thereon; and
> 4. Grant Plaintiff such other and further relief to which Plaintiff is entitled.

(continued...)

[1](...continued)
Id. at 12.

Group had four limited partners, Robert Sands, Richard Sands, Marilyn Sands, and CWC, until September 21, 2001. Complaint [of Group] for Readjustment of Partnership Items Under Code Section 6226 (Group Complaint or Group Compl.) ¶ 2. R, R, M & C Management Corporation was the general and Tax Matters Partner. Id. at ¶ 3. On September 21, 2001 the four limited partners transferred their partnership interests to four charitable remainder trusts (CRUTs). Id. at ¶ 4. Group filed a complaint on May 18, 2006 challenging the adjustment of partnership items "by the [IRS] in a [FPAA] issued to Group with respect to Group's Form 1065 U.S. Return of Partnership Income for the tax year ended December 31, 2001." Id. at 1. The Partners Complaint alleged that defendant erroneously reduced the basis claimed by Group in its stock in Constellation, id. at ¶ 38, that there were no partnership liabilities under I.R.C. § 752, id. at ¶ 39, or under Treasury Regulation § 1.752-6, id. at ¶ 40, that defendant had improperly determined the amount considered at risk in the relevant transactions under I.R.C. § 465(b)(1), id. at ¶ 41, that defendant improperly disregarded "the transfer of the limited partnership interests in Group by the Initial Limited Partners to the CRUT Partners," id. at ¶ 42, that defendant had improperly disregarded the existence of Group, id. at ¶ 43, and that defendant had improperly asserted accuracy related penalties under I.R.C. § 6662, id. at ¶ 44. The Group Complaint stated the following prayers for relief:

1. Determine that the adjustments made by the [IRS] in the Group FPAA are factually and/or legally incorrect and are invalid;
2. Determine that the penalties asserted by the [IRS] in the Group FPAA are erroneous and/or that the parties have valid defenses to the assertion of such penalties;
3. Determine that the deposit paid by Robert Sands should be refunded, together with interest thereon; and
4. Grant Plaintiff such other and further relief to which Plaintiff is entitled.

Id. at 14.

The Trust FBO Abigail Stern U/A Fifth G (Abigail Trust) and the Zachary Trust each held a 49.5% Class 2 partnership interest in CWC as of December 31, 2001. Complaint [of CWC] for Readjustment of Partnership Items Under Code Section 6226 (CWC Complaint or CWC Compl.) ¶ 2. The Trust FBO Andrew Stern U/A Fifth D held 98.06292% and the Trust FBO Andrew Stern U/A Fifth C held .93708% of the Class 1 partnership interest in CWC as of December 31, 2001. Id. Richard Sands and Robert Sands each held a .5% Class 1 and a .5% Class 2 partnership interest in CWC as of December 31, 2001. Id. Richard Sands was the general and Tax Matters Partner of CWC. Id. at ¶ 3. CWC filed a complaint on May 18, 2006 challenging the adjustment of partnership items "by the [IRS] in a [FPAA] issued to CWC with
(continued...)

[1](...continued)
respect to CWC's Form 1065 U.S. Return of Partnership Income for the tax year ended December 31, 2001." Id. at 1. The CWC Complaint alleged that defendant erroneously determined "that the amount of capital contributed to CWC should be reduced by $21,032,464 and that the partnership liabilities should be increased by $21,032,464," id. at ¶ 33, that there were no partnership liabilities under I.R.C. § 752, id. at ¶ 34, or under Treasury Regulation § 1.752-6, id. at ¶ 35, that defendant had improperly determined the amount considered at risk in the relevant transactions under I.R.C. § 465(b)(1), id. at ¶ 36, and that defendant had improperly asserted accuracy related penalties under I.R.C. § 6662, id. at ¶ 37. The CWC Complaint stated the following prayers for relief:

1. Determine that the adjustments made by the [IRS] in the CWC FPAA are factually and/or legally incorrect and are invalid;
2. Determine that the penalties asserted by the [IRS] in the CWC FPAA are erroneous and/or that the parties have valid defenses to the assertion of such penalties;
3. Determine that the deposit paid by the Zachary Trust should be refunded, together with interest thereon; and
4. Grant Plaintiff such other and further relief to which Plaintiff is entitled.

Id. at 10-11.

Marilyn Sands was a 99% limited partner in Mickey during 2002. Complaint [of Mickey] for Readjustment of Partnership Items Under Code Section 6226 (Mickey Complaint or Mickey Compl.) ¶ 2. Mickey Management Inc., a corporation 100% owned by Marilyn Sands in 2002, was the 1% general and Tax Matters Partner in Mickey. Id. at ¶¶ 3-4. Mickey filed a complaint on November 30, 2006 challenging the adjustment of partnership items "by the [IRS] in a [FPAA] issued to Mickey with respect to Mickey's Form 1065 U.S. Return of Partnership Income for the tax year ended December 31, 2002." Id. at 1. The Mickey Complaint alleged that "[n]one of the items the [IRS] seeks to adjust are partnership items," id. at ¶ 42, that defendant erroneously reduced the basis claimed by Mickey in its stock in Yahoo and Corning, id. at ¶ 43, that defendant had improperly determined the amount considered at risk in the relevant transactions under I.R.C. § 465(b)(1), id. at ¶ 44, and that defendant had improperly asserted accuracy related penalties under I.R.C. § 6662, id. at ¶ 45. The Mickey Complaint stated the following prayers for relief:

1. Determine that none of the adjustments made by the [IRS] in the Mickey FPAA relate to partnership items and find the Mickey FPAA invalid;
2. Determine that the adjustments made by the [IRS] in the Mickey FPAA are factually and/or legally incorrect and are invalid;
3. Determine that the penalties asserted by the [IRS] in the Mickey FPAA are

(continued...)

While discovery was underway and with several motions pending or in briefing, plaintiffs sought, on April 11, 2008, to amend their complaints "by conceding certain

---

[1](...continued)

erroneous and/or that the parties have valid defenses to the assertion of such penalties;

4. Determine that the deposit paid by Marilyn Sands should be refunded, together with interest thereon; and

5. Grant Plaintiff such other and further relief to which Plaintiff is entitled.

Id. at 10.

Richard Sands was a 17.33573% general partner in M, L, R & R during 2002. Complaint [of M, L, R & R] for Readjustment of Partnership Items Under Code Section 6226 (M, L, R & R Complaint or M, L, R & R Compl.) ¶ 2. Richard Sands was also the general and Tax Matters Partner in M, L, R & R. Id. During 2002 the Marvin Sands Master Trust was a 43.07296% general partner in M, L, R & R, Robert Sands was a 19.23807% general partner, CWC was a 8.65074% general partner, and Andrew Stern was a 11.7028% general partner. Id. at ¶¶ 3-6. M, L, R & R filed a complaint on November 30, 2006 challenging the adjustment of partnership items "by the [IRS] in a [FPAA] issued to M, L, R & R with respect to M, L, R & R's Form 1065 U.S. Return of Partnership Income for the tax year ended December 31, 2002." Id. at 1. The M, L, R & R Complaint alleged that "[n]one of the items the [IRS] seeks to adjust are partnership items," id. at ¶ 42, that defendant erroneously reduced the basis claimed by M, L, R & R in its stock in Yahoo and Corning, id. at ¶ 43, that defendant had improperly determined the amount considered at risk in the relevant transactions under I.R.C. § 465(b)(1), id. at ¶ 44, and that defendant had improperly asserted accuracy related penalties under I.R.C. § 6662, id. at ¶ 45. The M, L, R & R Complaint stated the following prayers for relief:

1. Determine that none of the adjustments made by the [IRS] in the M, L, R & R FPAA relate to partnership items and find the M, L, R & R FPAA invalid;
2. Determine that the adjustments made by the [IRS] in the M, L, R & R FPAA are factually and/or legally incorrect and are invalid;
3. Determine that the penalties asserted by the [IRS] in the M, L, R & R FPAA are erroneous and/or that the parties have valid defenses to the assertion of such penalties;
4. Determine that the deposit paid by Richard Sands should be refunded, together with interest thereon; and
5. Grant Plaintiff such other and further relief to which Plaintiff is entitled.

Id. at 10.

issues." Plaintiffs' Motion for Leave to Amend Their Complaints (Pls.' Mot. to Amend) 1. The First Amended Complaint proposed to be filed by Alpha I, L.P. limited its specified prayers for relief to the following:

> 1. Determine that the [Internal Revenue Service (IRS)] erred in disregarding the existence of Alpha.
> 2. Determine that the penalties asserted by the [IRS] in the Alpha FPAA are erroneous and/or that the parties have valid defenses to the assertion of such penalties;
> 3. Determine that the deposit paid by Robert Sands should be refunded, together with interest thereon; and
> 4. Grant Plaintiff such other and further relief to which Plaintiff is entitled.

Pls.' Mot. to Amend, Ex. 2 at 9.[2] Plaintiffs' amended complaints therefore conceded that

---

[2]Plaintiffs filed amended complaints for each of cases consolidated with Alpha I on May 16, 2008 in which they conceded certain issues. Beta's First Amended Complaint for Readjustment of Partnership Items Under Code Section 6226 (Beta First Amended Complaint or Beta Amended Compl.) limited its specified prayers for relief to the following:

1. Determine that the [IRS] erred in disregarding the existence of Beta[;]
2. Determine that the penalties asserted by the [IRS] in the Beta FPAA are erroneous and/or that the parties have valid defenses to the assertion of such penalties;
3. Determine that the deposit for penalties asserted should be refunded, together with interest thereon; and
4. Grant Plaintiff such other and further relief to which Plaintiff is entitled.

Beta Amended Compl. 9.

Partners' First Amended Complaint for Readjustment of Partnership Items Under Code Section 6226 (Partners First Amended Complaint or Partners Amended Compl.) limited its specified prayers for relief to the following:

1. Determine that the [IRS] erred in disregarding the existence of Partners[;]
2. Determine that the penalties asserted by the [IRS] in the Partners FPAA are erroneous and/or that the parties have valid defenses to the assertion of such penalties;
3. Determine that the deposits for penalties asserted should be refunded, together with interest thereon; and
4. Grant Plaintiff such other and further relief to which Plaintiff is entitled.

Partners Amended Compl. 9-10.

Group's First Amended Complaint for Readjustment of Partnership Items Under Code Section 6226 (Group First Amended Complaint or Group Amended Compl.) limited its specified prayers for relief to the following:

1. Determine that the [IRS] erred in disregarding the transfer of the limited partnership interests in Group by the Initial Limited Partners to the CRUT Partners and that the [IRS's] adjustments to the identity of Group's partners are factually and/or legally incorrect and are invalid;
2. Determine that the [IRS] erred in disregarding the existence of Group[;]
3. Determine that the penalties asserted by the [IRS] in the Group FPAA are erroneous and/or that the parties have valid defenses to the assertion of

(continued...)

[2](...continued)

such penalties;

4. Determine that the deposit paid by Robert Sands should be refunded, together with interest thereon; and
5. Grant Plaintiff such other and further relief to which Plaintiff is entitled.

Group Amended Compl. 9-10.

CWC's First Amended Complaint for Readjustment of Partnership Items Under Code Section 6226 (CWC First Amended Complaint or CWC Amended Compl.) limited its specified prayers for relief to the following:

1. Determine that the penalties asserted by the [IRS] in the CWC FPAA are erroneous and/or that the parties have valid defenses to the assertion of such penalties;
2. Determine that the deposit paid by the Zachary Trust for penalties asserted and for any adjustment stemming from or related to adjustments to the return of R,R,M & C Group, L.P. should be refunded, together with interest thereon; and
3. Grant Plaintiff such other and further relief to which Plaintiff is entitled.

CWC Amended Compl. 7-8.

Mickey's First Amended Complaint for Readjustment of Partnership Items Under Code Section 6226 (Mickey First Amended Complaint or Mickey Amended Compl.) limited its specified prayers for relief to the following:

1. Determine that the penalties asserted by the [IRS] in the Mickey FPAA are erroneous and/or that the parties have valid defenses to the assertion of such penalties;
2. Determine that the deposit paid by Marilyn Sands for penalties asserted should be refunded, together with interest thereon; and
3. Grant Plaintiff such other and further relief to which Plaintiff is entitled.

Mickey Amended Compl. 8.

M, L, R & R's First Amended Complaint for Readjustment of Partnership Items Under Code Section 6226 (M, L, R & R First Amended Complaint or M, L, R & R Amended Compl.) limited its specified prayers for relief to the following:

1. Determine that the penalties asserted by the [IRS] in the M, L, R & R FPAA are erroneous and/or that the parties have valid defenses to the

(continued...)

tax is owed, but contested whether penalties are owed.

In its response to plaintiffs' Motion for Leave to Amend Complaint, defendant stated that it "does not oppose allowing plaintiffs to amend their Complaints to concede that, under 26 U.S.C. [§ 465], none of the partnership transactions or activities increased the amount by which their partners were considered to be at risk for any activity." United States' Response to Plaintiffs' Motion for Leave to Amend Their Complaints (Def.'s Resp. to Pls.' Mot. to Amend) 3. However, defendant characterizes plaintiffs' concession as "largely a self-serving maneuver to attempt to avoid the 40% penalty imposed in connection with their use of abusive tax shelters designed to avoid tax on $120,000,000 in gain." Def.'s Resp. to Pls.' Mot. to Amend 4. Defendant states that the concession leaves much of the dispute unresolved:

> Plaintiffs unequivocally state in their motion that they do not "concede any other determination set forth in the FPAAs [. . . .]" To the extent that any of these other determinations are directly relevant to penalties, they must still be addressed in these consolidated proceedings.

Id. (footnote omitted).

II. Defendant's Motion for Protection or Protective Order

Now before the court is a discovery dispute that arose, in its initial form, in response to the service on defendant of Plaintiffs' Rule 30(b)(6) Notice on July 9, 2007 (now before the court as Exhibit A to plaintiffs' Response, defined below). That filing resulted in the following briefing: the United States' Motion For Protection or Protective Order (defendant's Motion or Def.'s Mot.), filed July 18, 2007, Plaintiffs' Response to United States' Motion For Protective Order (plaintiffs' Response or Pls.' Resp.), filed August 6, 2007, and the United States' Reply to Plaintiffs' Response to United States' Motion For Protection or Protective Order (defendant's Reply or Def.'s Reply), filed August 20, 2007. Defendant's Motion invoked the deliberative process privilege with respect to certain deposition testimony sought by plaintiffs. Def.'s Mot. 13. After the

---

[2](...continued)
assertion of such penalties;
2. Determine that the deposit for penalties asserted should be refunded, together with interest thereon; and
3. Grant Plaintiff such other and further relief to which Plaintiff is entitled.

M, L, R & R Amended Compl. 9.

filing of plaintiffs' amended complaints on May 16, 2008, the court ordered the parties to provide further briefing on the issue of whether the deliberative process privilege was properly invoked by defendant. Order of June 25, 2008. Defendant filed the United States' Brief Regarding Deliberative Process Privilege (defendant's Brief or Def.'s Br.) on July 8, 2008 and plaintiffs filed Plaintiffs' Response to United States' Brief Regarding the Deliberative Process Privilege (plaintiffs' Brief or Pl.'s Br.) on July 11, 2008. A telephonic status conference at which this briefing was discussed was held on August 20, 2008 at 11:00 a.m. Eastern Daylight Time (8/20/2008 TSC).

Defendant's July 18, 2007 Motion stated that, "[the 30(b)(6)] notice seeks to depose one or more representative[s] of the United States with respect to eight separately enumerated categories." Def.'s Mot. 4. Defendant and plaintiffs agree that defendant's Motion "is moot to the extent it concerns the first seven topics in plaintiffs' Rule 30(b)(6) notice." Parties' Joint Status Report (JSR), filed June 11, 2008, 9. The parties also agree that "[d]efendant's [M]otion is not moot as it relates to defendant's objection to the eighth topic posed by plaintiffs." Id.

The "eighth topic" posed by plaintiff requests defendant to designate one or more persons to testify on its behalf as to:

> The [IRS's] interpretation and application of I.R.C. § 752 prior to 1995 and in the years from 1995 to 2002, including but not limited to the following:
>
> a. The identity and contents of documents prepared, relied upon, or used by the IRS in formulating its position with respect to the definition of "liability" in revenue rulings, revenue procedures, private letter rulings, technical advice memorandums, general counsel memorandums, briefs, or other IRS documents under I.R.C. § 752 (including documents relating to the ongoing consideration, reconsideration, development, interpretation or application of the documents to short sales such as the short sales at issue in this case).
>
> b. The identity and contents of documents of the defendant, including LMSB [Large and Mid-Size Business], SB/SE [Small Business/Self-Employed], Appeals Division, and Chief Counsel, citing or discussing Helmer v. Commissioner, T.C. Memo 1975-160 in the context of Internal Revenue Code § 752.
>
> c. The identity and contents of documents relating to the decision of the IRS to promulgate Treas. Reg. § 1.752-6, including background and information notes with respect to such regulation.
>
> d. The identity and contents of documents relating to the authority of the IRS to promulgate Treas. Reg. § 1.752-6.

e. The identity and contents of documents relating to the constitutionality of Treas. Reg. § 1.752-6.

f. The identity and contents of documents relating to the determination of the IRS to make the exception described in Treas. Reg. § 1.752-6 inapplicable to assumptions of liabilities by partnerships as part of a transaction the same as or substantially similar to any transaction described in Notice 2000-44.

g. The identity and contents of documents relating to the determination of the IRS to dispense with the notice and comment requirements of the Administrative Procedure Act when promulgating Treas. Reg. § 1.752-6.

h. The identity and contents of documents relating to the determination by the IRS that Treas. Reg. § 1.752-6 is not a "significant regulatory action" within the meaning of Executive Order 12866.

i. The identity and contents of documents relating to the promulgation of Treas. Reg. § 1.752-6, such as background information notes, the "Regulation File" and drafts of the regulation.

j. The identity and contents of documents relating to the decision of the IRS to issue Revenue Ruling 95-26, including background and information notes, drafts, correspondence, and other documents with respect to such ruling.

k. The identity and contents of documents relating to the issuance of Revenue Ruling 95-26, including background and information notes, drafts, correspondence, and other documents with respect to such ruling.

Pls.' Resp. Ex. A, 7-9. Defendant "seeks protection with respect to the entirety of this line [the eighth topic] of inquiry" because the documents "are both irrelevant and protected by executive (deliberative process) privilege." Def.'s Mot. 13. Plaintiffs contend that the information sought is relevant and that the privilege is either inapplicable, waived, or overcome. Pls.' Resp. 2.

III. Discussion

Under the Rules of the United States Court of Federal Claims (RCFC):

Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons

> having knowledge of any discoverable matter. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

RCFC 26(b)(1). The court must determine first, whether the information sought is relevant, and second, whether, if the information is relevant, it is privileged.

A. Whether the Information Sought is Relevant

Defendant argues that "[t]he IRS's interpretation and application of 26 U.S.C. [§ 752] is not relevant nor is it likely to lead to the discovery of relevant information." Def.'s Mot. 13. Defendant further argues that "[t]he views and opinions of IRS employees are irrelevant," id., that "[t]he reasons for the Commissioner's determination" are irrelevant, id. and that "the deliberative process of the [IRS] in the issuance of the FPAA is irrelevant," id. Defendant asserts that "the testimony of the drafters is not relevant in construing a regulation" because "such testimony impinges upon the role of the Court as the arbiter of law[,] . . . after-the-fact testimony concerning the meaning of a regulation developed in the context of litigation is inherently unreliable[,] . . . [and] the cases recognize that the testimony of a single agency official is of no value in determining the agency's construction of a regulation." Id. at 15. According to defendant, "[t]he proper construction of Section 752 and the regulations, as well as their application to the transactions at issue here, is an issue of law for the Court to decide based upon its analysis and application of the governing legal authorities." Id. at 14.

Plaintiffs argue that "[e]vidence of the government's changing interpretation of Section 752 is particularly relevant to plaintiffs' defenses to penalties in this case." Pls.' Resp. 3 ("Given that defendant has called plaintiffs' interpretation of Section 752 'specious,' plaintiffs wish to engage in discovery relating to the IRS's prior application and interpretation of Section 752." (citation omitted)). According to plaintiffs, "Because the government's own tax lawyers acknowledged that the correct interpretation of Section 752 would support plaintiffs' position in this case, it is both disingenuous and legally incorrect for the government to assert a negligence penalty." Id. at 4-5. Defendant argues that "plaintiffs clearly did not rely on the IRS's interpretation and application of § 752 at the time they claimed the artificial basis on their partnership returns or this litigation would not exist." Def.'s Reply 5. Additionally, according to defendant, "the United States has produced non-privileged, albeit irrelevant, documents responsive to plaintiffs' document production requests for documents related to the issuance of Revenue Ruling 95-26, Treasury Regulations §1.752-6 and §1.701-2 and internal [IRS] documents related to 26 U.S.C. [§ 752]." Id. at 5-6. Therefore, "[a]t most, any deponent offered by the United States could only direct plaintiffs to the documents previously produced by the

United States or to the statute itself and authorities cited in the United States' summary judgment materials filed in this litigation." Id. at 6.

As an initial matter, the court agrees with defendant's contention that "[t]he proper construction of Section 752 and the regulations, as well as their application to the transactions at issue here, is an issue of law for the Court to decide based upon its analysis and application of the governing legal authorities." Id. However, the proper interpretation of the regulations does not appear to the court to be the reason that plaintiffs seek the materials at issue. Defendant, citing Siddell v. Commissioner, 225 F.3d 103, 111 (1st Cir. 2000), and Connecticut General Life Insurance Co. v. Commissioner, 177 F.3d 136, 145 (3d Cir. 1999), also contends that statements of government officials should not be relied upon in construing tax regulations. Def.'s Mot. 14. As plaintiffs point out, however, these cases do not "address[] a situation where the internal memoranda or views of the IRS employees show that the penalties claimed by the government are not asserted in good faith." Pls.' Resp 6.

The court finds that the reasons the information is sought here are more closely analogous to the reasons similar information was sought in Jade Trading, LLC v. United States (Jade Trading), 65 Fed. Cl. 487 (2005), where the United States Court of Federal Claims addressed a similar issue of relevance. In Jade Trading, the court determined that the discovery sought was relevant. Id. at 488 ("Because documents relied upon by the IRS in formulating Treas. Reg. 1.701-2 and documents interpreting the term liabilities could illuminate the agency's interpretation of the law at the time of Plaintiffs' transactions, these materials are relevant."). The court held that the documents requested "could . . . aid in determining the reasonableness of the position adopted by Plaintiffs in their tax returns[.] . . . As such, these documents could be relevant to determining the validity of Plaintiffs' challenge to the asserted penalties." Id. at 492-93. The evidence sought by plaintiffs here could similarly be relevant to plaintiffs' defenses to the application of penalties in this case.

B. Whether the Information Sought is Privileged

The court now turns to the question of whether the information sought is privileged. Defendant argues that the information sought by plaintiffs is privileged under the deliberative process privilege that "protect[s] the internal pre-decisional deliberations of a government agency from disclosure." Def.'s Mot. 16 (citation omitted). Plaintiffs argue that the information is not privileged because "[p]laintiffs have not requested the designee to bring any documents to the deposition, but have requested the opportunity to depose an individual with knowledge of the IRS's interpretation and application of I.R.C. § 752 prior to 1995 and in the years from 1995 to 2002, including the contents of

documents related to that position." Pls.' Resp. 8. Furthermore, plaintiffs argue that because the "'privilege does not protect factual or investigative material, except as necessary to avoid indirect revelation of the decision-making process[,] . . . factual findings and conclusions, as opposed to opinions and recommendations, are not protected.'" Id. (quoting Deseret Mgmt. Corp. v. United States, 76 Fed. Cl. 88, 95-96 (2007)).

The deliberative process privilege protects "documents 'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" N.L.R.B. v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975) (quoting Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena, 40 F.R.D. 318, 324 (D.D.C. 1966), aff'd V.E.B. Carl Zeiss, Jena v. Clark, 384 F.2d 979 (D.C. Cir. 1967), cert denied, V.E.B. Carl Zeiss, Jena v. Clark, 389 U.S. 952 (1967)). "'The privilege does not protect factual or investigative material, except as necessary to avoid indirect revelation of the decision making process.'" Pac. Gas & Elec. v. United States (Pac. Gas & Elec.), 70 Fed. Cl. 128, 134 (2006) (quoting Scott Paper Co. v. United States, 943 F. Supp. 489, 496 (E.D. Pa 1996)). The party seeking to invoke the deliberative process privilege has the burden of justifying its application, id. at 133, and the privilege is to be construed narrowly. Deseret Mgmt. Corp. v. United States, 76 Fed. Cl. 88, 95-96 (2007). Material protected under the deliberative process privilege must be both predecisional and deliberative. Sears, Roebuck & Co., 421 U.S. at 150-52; Jade Trading, 65 Fed. Cl. at 493; Vons Cos. v. United States, 51 Fed. Cl. 1, 22 (2002).

The United States Court of Appeals for the Federal Circuit has held that "an Agency head may delegate the authority to invoke the deliberative process privilege on the Agency's behalf." Marriott Intern. Resorts. L.P. v. United States (Marriott), 437 F.3d 1302, 1308 (Fed. Cir. 2006). Prior to the decision in Marriott, the United States Court of Federal Claims has held that the deliberative process privilege must be "invoked by the agency head after actual personal consideration by that officer." Vons Cos., 51 Fed. Cl. at 22; see Jade Trading, 65 Fed. Cl. at 488, 494.

Defendant points out that even though the information sought in Jade Trading was determined to be relevant, "the [c]ourt in Jade Trading ultimately sustained the United States' invocation of deliberative process privilege." Def.'s Reply 8; see Def.'s Reply Ex. A. The court in Jade Trading, however, initially found that the defendant's "purported invocation of the executive privilege by individuals other than the head of an agency or department [was] invalid." Jade Trading, 65 Fed. Cl. at 497. While Marriott later held that invocation of the privilege by the head of a department is not necessary, Marriott 437 F.3d at 1308, the privilege must still be properly invoked. In Marriott, "the Commissioner of the IRS did not personally invoke the [deliberative process] privilege,"

id. at 1304, but the Commissioner "delegated the authority to an Assistant Chief Counsel who invoked the privilege during an exhaustive examination of the voluminous documents at issue," id. As this court stated in Pacific Gas & Electric Co. v. United States:

> The rationale for requiring an agency head or official to whom authority has been carefully delegated, rather than government counsel, to "invoke[] the privilege during an exhaustive examination of the voluminous documents at issue," Marriott, 437 F.3d at 1304, is to allow those "official[s] with expertise in the nature of the privilege claim and documents at issue," id. at 1307, to determine whether the public interest in confidentiality outweighs the public interest in disclosure.

Pac. Gas & Elec., 70 Fed. Cl. at 144 (alterations in original).

In order properly to invoke the deliberative process privilege, three procedural requirements must be met. See id. at 134. "'First, the head of the agency that has control over the requested document [or his delegate] must assert the privilege after personal consideration.'" Id. (quoting Walsky Const. Co. v. United States (Walsky), 20 Cl. Ct. 317, 320 (1990)). "Second, the party seeking protection 'must state with particularity what information is subject to the privilege.'" Id. at 135 (quoting Walsky, 20 Cl. Ct. at 320). "Third, 'the agency must supply the court with precise and certain reasons for maintaining the confidentiality of the requested document.'" Id. (quoting Walsky, 20 Cl. Ct. at 320 (internal quotation omitted)). A blanket assertion of the deliberative process privilege is insufficient. Id.

Defendant argues that "[t]he information requested by the [plaintiffs] in topic eight of their 30(b)(6) notice is identical to the information they requested in their First Request for Production of Documents dated May 15, 2007 . . . and their Second Request for Production of Documents dated June 29, 2007." Def.'s Br. 3-4. According to defendant, when defendant responded to plaintiffs' First Request for Production of Documents on June 25, 2007, it "asserted a deliberative process privilege with regard to withheld documents" and "provided plaintiffs with declarations from . . . named individuals who asserted on behalf of the United States the deliberative process privilege as to the documents withheld." Id. at 5. As defendant acknowledges, all of the declarations that defendant refers to were "filed in Klamath Strategic Investment Fund, LLC v. United States [(Klamath)], Case No. 04-CV-278 (E.D. Tex.)" or "Marriott International Resorts, L.P. v. United States, Case No. 01-256 and 01-257 ([Fed.] Cl.)." See id. 5-6. In the United States of America's Response to Plaintiff[s'] First Request for Production of Documents, defendant stated: "If a motion to compel production of the privileged

documents is filed in this case, declarations specifically drafted for this litigation will be provided." Appendix to defendant's Brief (App. to Def.'s Br.) Ex. 3 at 14, 16. No such "specifically drafted" declarations have yet been filed in this case.

According to defendant: "Having properly invoked [the] deliberative process privilege with respect to the underlying documents themselves, the United States is entitled to protection from a deposition seeking testimony with respect to these privileged documents." Def.'s Br. 9. Defendant points out that similar document requests were filed in Klamath, id. at 10, and, after an in camera review, the Klamath court "sustained the government's claims of privilege with respect to all of the documents," id. at 11. The determination by the Klamath court is simply not dispositive for this case. The assertion of the privilege has not yet been properly supported by defendant in this case.

Moreover, plaintiffs argue that the information requested in plaintiffs' deposition notice is not the same information that defendant refused to provide in response to plaintiffs' discovery requests:

> Plaintiffs have not requested the designee to bring any documents to the deposition. Plaintiffs have instead requested the opportunity to depose an individual with knowledge of the IRS's interpretation and application of I.R.C. § 752 prior to 1995 and in the years from 1995 to 2002, including the contents of documents related to that position.

Pls.' Br. 6 (emphasis in original). Even assuming, arguendo, that the information requested in plaintiffs' deposition notice was identical to the information requested in their initial discovery requests, it remains the case that the assertion of the privilege has not yet been properly supported by defendant.

Additionally, plaintiffs argue that "[i]n the context of a deposition, defendant may not assert a blanket objection, but rather must object to questions at the deposition for which the responses would require the disclosure of information protected by the deliberative process privilege." Id. at 4 (citations omitted). Plaintiffs further assert: "the deliberative process privilege applies only to the opinion or recommendatory portion of a document, not to the underlying factual information contained in the document," and that that "documents and portions of documents representing facts – including the IRS's prior interpretation of Section 752 – are not protected by the privilege." Id. at 7. The court agrees with plaintiffs that defendant's blanket assertion of the deliberative process privilege is premature. See United States v. Hodgson, 492 F.2d 1175, 1177 (10th Cir. 1974) (stating that an attorney must "normally raise the [attorney-client] privilege as to each record sought and each question asked so that at the enforcement hearing the court

can rule with specificity"); E.E.O.C. v. Corrections Corp. of America, 2007 WL 4403528 at * 1 (D. Colo. 2007) (finding that plaintiffs' blanket assertion of the deliberative process privilege in response to defendant's Rule 30(b)(6) deposition request was "premature").

At the 8/20/2008 TSC, the court discussed with the parties the likely inefficiencies of addressing privilege issues through interposition of privilege assertions at a deposition where the privilege asserted could relate to one of numerous documents. Transcript of 8/20/2008 TSC (Tr.) 16:3-19:17. Further to the 8/20/08 TSC, the court will treat defendant's Motion as pertaining to the production of documents identified under the "eighth topic" for the Rule 30(b)(6) deposition, as well as to plaintiffs' deposition request.

The court views defendant's attempt to date to invoke the deliberative process privilege as ineffective because the privilege was not invoked by either the Commissioner of the IRS or by an official with delegated authority after actual personal consideration. The assertion of the deliberative process privilege ordinarily calls for support by an affidavit from an agency official at the time the privilege is first asserted. Pac. Gas & Elec. v. United States, 71 Fed. Cl. 205, 209 (2006). Defendant's prior assertion of the privilege with respect to documents previously requested by plaintiffs, see App. to Def.'s Br. Exs. 3-4, does not sufficiently address the circumstances of this case. Nor are declarations filed in other cases sufficient to support defendant's prior assertions of the deliberative process privilege. Defendant has not stated with particularity exactly what information sought by plaintiffs' request for deposition testimony is privileged, nor has defendant provided the court "with 'precise and certain reasons' for maintaining the confidentiality of the requested [information]." See Pac. Gas & Elec., 70 Fed. Cl. at 135 (citations omitted).

C. Whether, if the Information Sought is Privileged, That Privilege Has Been Waived

Plaintiffs argue that "the deliberative process privilege is waived for all documents or information that the government has previously produced or that has been the subject of testimony in this or other cases." Pls.' Resp. 9. According to plaintiffs, "[d]efendant has produced documents in this and other cases relating to its prior interpretation of Section 752 that have been introduced into evidence or relied on at trial." Id. Plaintiffs assert that defendant has "provided some documents indicating that the highest officials in the IRS . . . believed that the reporting position taken by plaintiffs in this case had substantial merit." Pls.' Br. 7 (citing Appendix to plaintiffs' Brief (App. to Pls.' Br.), Ex. A (notes by IRS employee Richard Starke)). Plaintiffs also assert that defendant has "produced other documents containing similar information" in other cases. Id. (citing App. to Pls.' Br., Ex. B). Plaintiffs argue that with respect to documents such as those

contained in exhibits A and B of the Appendix to plaintiffs' Brief, "to the extent any deliberative process privilege existed, it has been waived, and plaintiffs should be allowed to question a witness concerning the contents of such documents and to discover if other such relevant documents exist." Id. The court determines that if a document or a document containing information described in the "eighth topic" for the Rule 30(b)(6) deposition has been provided by defendant to a plaintiff in another case, the privilege has been waived and that document must be provided to the plaintiffs in this case. The court also determines, on the grounds the privilege has been waived, that if a document containing information described in the "eighth topic" has been provided by defendant to plaintiff in this case, defendant must also provide to plaintiff all other documents to the extent such documents provide substantially similar information.

### D. Whether Plaintiffs Have Overcome the Privilege

"The executive privilege is a qualified one, and can be overcome upon a showing of evidentiary need weighted against the harm that may result from disclosure." Jade Trading, 65 Fed. Cl. at 494 (citations omitted). Plaintiffs argue that their "need for accurate fact-finding regarding defendant's previous interpretation of Section 752 in order to support their defenses to penalties clearly outweighs whatever interest the government may have in avoiding production of a witness to testify as to these same matters on which the government has testified in other cases." Pls.' Resp. 9. The court will defer its consideration of this argument until defendant has provided plaintiff with a properly supported invocation of the privilege and plaintiff has asserted a specific objection to such invocation.

## IV. Conclusion

Because the deliberative process privilege was not asserted by either the Commissioner of the IRS or an official with delegated authority, after personal consideration, and because defendant has not stated with particularity what information sought by plaintiffs' request for deposition testimony is privileged and has not provided the court "with 'precise and certain reasons' for maintaining the confidentiality of the requested [information]," see Pac. Gas & Elec., 70 Fed. Cl. at 135 (citation omitted), defendant has not yet properly invoked the deliberative process privilege. Defendant's Motion is therefore DENIED without prejudice (except as to documents described in Part III.C above, as to which the court has determined that the privilege has been waived).[3]

[3] Currently before the court are Plaintiffs' Motion to Substitute Certain Parties and to Dismiss Certain Causes of Action for Lack of Jurisdiction, Docket Entry No. 21, and Plaintiffs' Motion for Partial Summary Judgment, Docket Entry No. 108. On or before 45 days after the (continued...)

The parties are urged to contact the court at any time when they believe the involvement of the court will help to secure the just, speedy, and inexpensive determination of this action. See RCFC 1.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Judge

[3](...continued)
court's issuance of its opinions on these motions, defendant will provide plaintiffs with a privilege log with respect to all documents described in the "eighth topic" for the Rule 30(b)(6) deposition and withheld on the basis of privilege. Various other motions are also currently before the court. Proceedings on motions contained in docket numbers 28, 35, 58, and 62 are STAYED until further order of the court to be entered following the issuance of opinions and orders on the motions contained in Docket numbers 21 and 108 and a telephonic status conference with the parties. Following the completion of briefing on motions contained in docket numbers 106 and 116, proceedings on motions contained in docket numbers 106 and 116 are STAYED until further order of the court to be entered following the issuance of opinions and orders on the motions contained in Docket numbers 21 and 108 and a telephonic status conference with the parties. Further to this Opinion and Order, the United States' Limited Motion to Extend Time to Respond to Plaintiffs' Document Request Number 35, filed June 25, 2007, is MOOT. See Docket No. 33. Docket number 36 contains an appendix to Plaintiffs' Response to United States' Motion for Summary Judgment in Cause Nos. 06-407T, 06-408T, 06-411T, 06-810T, and 06-811T and Brief in Support and Plaintiffs' Cross Motion for Summary Judgment and Brief in Support. See Docket No. 36. However, docket number 36 appears as a separate motion on the docket sheet. The materials contained in docket number 36 shall be treated as an appendix to docket number 35 and not as a separate motion.