IN THE UNITED STATES COURT OF FEDERAL CLAIMS
No. 06-407 T
(into which have been consolidated Nos. 06-408 T,
06-409 T, 06-410 T, 06-411 T, 06-810 T, 06-811 T)
Judge Emily C. Hewitt
(E-Filed: September 5, 2008)

| | |
|---|---|
| ALPHA I, L.P., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | 06-407 T |
| BETA PARTNERS, L.L.C., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | 06-408 T |
| R, R, M & C PARTNERS, L.L.C., BY AND THROUGH R, R, M & C GROUP, L.P., A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | 06-409 T |

| | | |
|---|---|---|
| R, R, M & C GROUP, L.P., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-410 T |
| CWC PARTNERSHIP I, BY AND THROUGH TRUST FBO ZACHARY STERN U/A FIFTH G. ANDREW STERN AND MARILYN SANDS, TRUSTEES, A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-411 T |
| MICKEY MANAGEMENT, L.P., BY AND THROUGH MARILYN SANDS, A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-810 T |

| | | |
|---|---|---|
| M, L, R & R, BY AND THROUGH RICHARD E. SANDS, TAX MATTERS PARTNER, | ) | |
| Plaintiff, | ) | |
| v. | ) | 06-811 T |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**REPLY IN SUPPORT OF PLAINTIFFS' SECOND MOTION TO STRIKE**

# TABLE OF CONTENTS

PAGE(S)

INTRODUCTION ....................................................................................................1

ARGUMENT ........................................................................................................4

I. Exhibit 24 Should Be Stricken From the Record in This Case..........................................4

A. The Report Impermissibly Presents Defendant's View of the Facts and Impermissibly Opines On the Business Purposes, Motivations and States of Mind of the Sands Family Members. ..........................................5

B. The Report Impermissibly Applies an Unstated Legal Standard in Reaching its Conclusion and Impermissibly Renders An Opinion on a Legal Issue. ..........................................6

C. The Report Fails to Meet the Standard for Expert Testimony in FED. R. EVID. 702. ..........................................7

II. Exhibit 26 Should Be Stricken From the Record in This Case..........................................8

A. The Purported Transcript Has Not Been Authenticated. ..........................................8

B. The Purported Transcript is Irrelevant..........................................11

C. The Purported Transcript Contains Inadmissible Hearsay. ..........................................12

D. The Purported Transcript Should be Excluded as a Discovery Sanction Under RCFC 37. ..........................................15

CONCLUSION..........................................20

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Allstates Air Cargo, Inc. v. United States*, 42 Fed. Cl. 118 (1998)....2

*Ashe Robins v. Sec'y of Health and Human Servs.*, 1998 U.S. Claims LEXIS 314 (Fed. Cl. 1998)....2

*Charleswater Prods. Inc. v. Nevamar Corp.*, 1998 U.S. App. LEXIS 31011 (Fed. Cir. 1998)....2

*Coast Fed. Bank, FSB v. United States*, 48 Fed. Cl. 402 (2000)....2

*Cunningham v. Consol. Edison, Inc.* 2007 U.S. Dist. LEXIS 19111 (E.D.N.Y. 2007)....2, 9

*Ebewo v. Martinez*, 309 F. Supp. 2d 600 (S.D.N.Y. 2004)....19

*Enbridge Energy Co. v. United States*, 553 F. Supp. 2d 716 (S.D. Tex. 2008)....6

*Finwall v. City of Chicago*, 239 F.R.D. 504 (N.D. Ill. 2006)....19

*Fisher v. Ciba Specialty Chems. Corp.*, 238 F.R.D. 273 (S.D. Ala. 2006)....5

*Glaxo, Inc. v. Boehringer Ingelheim Corp.*, 1996 U.S. Dist. LEXIS 17828 (D. Conn. 1996)....15

*Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, 2007 U.S. Dist. LEXIS 22090 (D. Kan. 2007)....15

*Hill v. Manning*, 236 F. Supp. 2d 1292 (M.D. Ala. 2002)....3

*Lippe v. Bairnco Corp.*, 288 B.R. 678 (S.D.N.Y. 2003)....5

*In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531 (S.D.N.Y. 2004)....5

*Shuffle Master, Inc. v. MP Games LLC*, 553 F. Supp. 2d 1202 (D. Nev. 2008)....4

*Sithon Maritime Co. v. Holiday Mansion*, 1998 U.S. Dist. LEXIS 5432 (D. Kan. 1998)....15

*United States v. Ary*, 518 F.3d 775 (10th Cir. 2008)....12

*United States v. Curtis*, 782 F.2d 593 (6th Cir. 1986)....7

*United States v. Rochan*, 563 F.2d 1246 (5th Cir. 1977)....8



8014617.1

**REGULATIONS**

Treas. Reg. 301.6221-1(c)-(d) ....................11

**RULES**

FED. R. EVID. 702 .................... 2, 4, 7, 8

FED. R. EVID. 803 ....................13

FED. R. EVID. 803(3) ....................14

FED. R. EVID. 803(6) ....................9, 12

FED. R. EVID. 804 ....................13

FED. R. EVID. 804(b)(3)....................13

FED. R. EVID. 805 ....................12

FED. R. EVID. 807 ....................13

FED. R. EVID. 901 ....................3, 8, 10

FED. R. EVID. 901(11) ....................10

RCFC 26(a)....................17, 19

RCFC 33 ....................17

RCFC 34 ....................17

RCFC 37 ....................18, 19

**MISCELLANEOUS**

McCormick on Evidence § 212 (Edward W. Cleary, et al., eds., 2d ed. 1972). ....................10

4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 702.03[3] (2d Ed. 2007) ....................5

## INTRODUCTION

On August 4, 2008, plaintiffs filed their second motion to strike certain inadmissible evidence proffered by defendant. Plaintiffs' Second Motion to Strike concerns evidence on which defendant relied in support of its July 2, 2008 Motion for Summary Judgment in Cause Nos. 06-409T, 06-410T and 06-411T ("Defendant's MSJ"). Specifically, plaintiffs moved to strike Exhibits 24 and 26 of Appendix A to Defendant's MSJ, as well as all references to these exhibits included in Defendant's MSJ and Defendant's Second Set of Proposed Findings of Uncontroverted Fact ("Defendant's PFUF"). Plaintiffs also sought to strike references to Exhibits 26 through 29 of the Appendix to Defendant's August 6, 2007 Response to Plaintiffs' Cross-Motion for Summary Judgment for the reasons described in Plaintiffs' Motion to Strike filed September 14, 2007.[1]

Defendant's August 21, 2008 Response to Plaintiffs' Second Motion to Strike ("Defendant's Response") fails to address major reasons the Exhibits 24 (Expert Report of Jerry J. McCoy) and 26 (purported transcript of a conversation between Gary Kornman, Jonathan Blattmachr, and an unidentified individual) are inadmissible. Defendant's Response ignores the principal failings of Mr. McCoy's report. That report impermissibly opines on the state of mind of the taxpayers in this case and presents defendant's view of the evidence as fact. Mr. McCoy's report usurps this Court's role as trier of fact in determining the facts, applicable law, and applying that law to the facts. Defendant attempts to cover these failings by focusing the Court's attention to Mr. McCoy's qualifications. (Def.'s Resp. 2-3.) No matter what his qualifications,

[1] On September 14, 2007, plaintiffs filed a motion to strike Exhibits 26-29 and references thereto in Defendant's Response to Plaintiffs' Cross-Motion for Summary Judgment and Defendant's Response to Plaintiffs' Proposed Findings of Uncontroverted Fact. Plaintiffs' motion to strike has been fully briefed by the parties, and any ruling thereon would be equally applicable to the use of the same inadmissible evidence by defendant in Defendant's MSJ and related filings.

Mr. McCoy is not the trier of fact and cannot "assist" the Court by improperly applying an amorphous and undefined legal standard to the "facts" he determined in this case. That is not a methodology permitted for experts. Defendant has failed to carry its burden of showing that Mr. McCoy's testimony is admissible under FED. R. EVID. 702. *See Ashe Robins v. Sec'y of Health and Human Servs.*, 1998 U.S. Claims LEXIS 314 (Fed. Cl. 1998) *reissued for publication* Feb. 5, 1999 (determining that expert testimony was not admissible because the proponent failed to demonstrate that there was "some objective, independent validation of the expert's methodology.")

Defendant's Response regarding the admissibility of Exhibit 26 is equally erroneous. Exhibit 26 is a transcript of a purported conversation between Gary Kornman, Jonathan Blattmachr, and an individual unrelated to the Sands or any of the events at issue in this case. Defendant's Response attempts to shift to plaintiffs a burden of "non-authentication." (Def.'s Resp. 8, 16.) Contrary to defendant's argument, the proponent of the evidence has the burden of establishing admissibility. *See, e.g., Cunningham v. Consol. Edison, Inc.* 2007 U.S. Dist. LEXIS 19111, n. 7 (E.D.N.Y. 2007) (noting that the burden of establishing admissibility is with the proponent of the evidence). Defendant must make a showing that the evidence upon which it seeks to rely is authentic – which it has not done here. FED. R. EVID. 901. Instead, defendant seeks to wave unauthenticated material before the Court in the hope that, even though inadmissible, a taint from it will stick and somehow prejudice plaintiffs' case. (Def.'s Resp. 8-9.) Defendant's unsupported claim that this transcript is crucial to its case (Def.'s Resp. 16) does not thereby transform it into admissible evidence.

Evidence that would not be admissible at trial, such as the transcript at issue here, may not be offered to support a motion for summary judgment. *Coast Fed. Bank, FSB v. United*

*States*, 48 Fed. Cl. 402, 444-50 (2000); *Allstates Air Cargo, Inc. v. United States*, 42 Fed. Cl. 118, 122-23, 125 (1998); *see also Charleswater Prods. Inc. v. Nevamar Corp.*, 1998 U.S. App. LEXIS 31011 (Fed. Cir. 1998) (affirming district court's decision to exclude a statement that would not be admissible at trial and stating that "[e]vidence must be admissible at trial in order to be properly considered when deciding a summary judgment motion."). Defendant ignores this established principle from the Court's decisions and instead cites a case from the Middle District of Alabama to argue that the court should presume that the unauthenticated transcripts can be reduced to admissible form at trial. (Def.'s Resp. 9.) Defendant fails to note that in the Alabama case, the court only presumed the evidence could be reduced to admissible form at trial because it was presented by the non-moving party in a summary judgment proceeding. *Hill v. Manning*, 236 F. Supp. 2d 1292, 1297 (M.D. Ala. 2002). The case is not a decision of this Court and its rule is clearly distinguishable here where the moving party is seeking such a presumption.

Defendant failed to address the lack of trustworthiness of the transcript and has provided **no evidence** (no testimony or affidavits from any witnesses) that the transcript is authentic as required under FED. R. EVID. 901. The transcript has not been authenticated as an accurate representation of the conversation that purportedly occurred and is plainly inadmissible. Defendant's attempt to merge the authentication requirement with exceptions to the hearsay rule (Def.'s Resp. 7-8) does not avoid the requirement of authenticating the transcript. Even if, as defendant has argued, the statements in the transcript would not be hearsay, the transcript is still inadmissible because defendant has not met the requirement of authentication.

Finally, even if it were admissible, the transcript should also be excluded as a sanction for defendant's unreasonable delay in withholding the document and not producing it in a timely manner.

## ARGUMENT

### I. Exhibit 24 Should Be Stricken From the Record in This Case.

Defendant's response to plaintiffs' motion to strike Mr. McCoy's report argues that Mr. McCoy's expertise in the field of charitable giving overcomes the failings of his report. In defendant's view, this Court should allow Mr. McCoy's improper testimony regarding factual determinations, opinions as to the intent of the parties, legal conclusions, and application of an undefined standard to the "facts" determined by him simply because of his over 25 years of experience in the field.[2] Defendant fails to recognize and ignore that legal conclusions, even if hey stem from experience as an attorney, are still not proper factual evidence to be considered by the Court in the case. *Shuffle Master, Inc. v. MP Games LLC*, 553 F. Supp. 2d 1202 (D. Nev. 2008) (determining that a patent attorney and engineer's experience working at the U.S. Patent and Trademark Office did not allow the Court to consider his legal opinions as factual evidence in the case).

Defendant's response also fails to address the other, equally important requirements of FED. R. EVID. 702 – that the expert's testimony will assist the trier of fact to understand the evidence or determine a fact in issue if:

> (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702.

---

[2] Plaintiffs do not dispute that Mr. McCoy has practiced in the field of charitable giving for a number of years. However, based on his responses in his deposition indicating a complete lack of understanding of the standards courts actually apply to determine whether entities or a transaction should be disregarded, plaintiffs question even his expertise to opine on whether it is appropriate to disregard entities or transactions as he concluded was the proper result in this case. (Pls.' 2d Mot. Strike, Ex. 1, App. at p. 9; Ex. 2, App. at pp. 21-25.)

In this case, Mr. McCoy's report would not assist the Court in understanding the evidence or determining a fact in issue because it impermissibly invades the Court's function in determining the facts, determining the applicable law, and applying that law to the facts. Additionally, Mr. McCoy's report was not based upon sufficient facts and data, failed to articulate any standard for its conclusion that the CRUTs should be disregarded, and thus did not reliably apply its standard to the facts.

A. The Report Impermissibly Presents Defendant's View of the Facts and Impermissibly Opines On the Business Purposes, Motivations and States of Mind of the Sands Family Members.

Defendant freely admits that Mr. McCoy's report sets forth the facts **he** determined in the case. (Def.'s Resp. 3.) As plaintiffs have previously noted, experts are not permitted to become partisan advocates by providing, in the guise of expert "opinion," a summary or overview of otherwise admissible factual evidence. *Fisher v. Ciba Specialty Chems. Corp.*, 238 F.R.D. 273, 280 (S.D. Ala. 2006) (noting that an expert report that "offers a synopsis of facts . . . does not state expert opinions at all, but simply provides the witness's slant on facts."); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004) (determining that historical narrative of facts was inadmissible expert testimony because it was "merely a narrative of the case which a juror is equally capable of constructing"). Moreover, experts may not opine upon an individual's state of mind because such determinations are "committed exclusively to the finder of fact." 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 702.03[3] (2d Ed. 2007); s*ee*, *In re Rezulin*, 309 F. Supp. at 541 ("Examples of 'expert' testimony that courts have excluded on this basis include factual narratives and interpretations of conduct or views as to the motivation of the parties."); *Lippe v. Bairnco Corp.*, 288 B.R. 678, 688 (S.D.N.Y. 2003) (excluding expert testimony where the report and deposition testimony

made clear that the witness "was going to do his best to persuade the jury that the "business purpose" of the transactions in question was an improper one.").

Defendant provided no answer to these infirmities of Mr. McCoy's report because they cannot. It is clear that his report opined on the intent of the Sands in his report. (Pls.' 2d Mot. Strike, Ex. 1, App. at pp. 8, 10-12.) His report also made numerous factual determinations. (Pls.' 2d Mot. Strike, Ex. 1, App. at pp. 8, 10-12.) This report is not proper expert testimony and should be stricken by the Court from the record for consideration of Defendant's MSJ.

Moreover, the "facts" relied upon by Mr. McCoy are not correct. Contrary to defendant's statement (Def.'s Resp. 4), plaintiffs do not simply "disagree" with the "facts" found by Mr. McCoy. Plaintiffs have submitted uncontroverted evidence in the record that many of those facts are not correct. For example, plaintiffs have submitted an affidavit from each trustee of the Educational and Health Support Fund stating that they did not have a plan or prearrangement with the Sands to sell the Fund's remainder interests in the CRUTs to the holders of the term interests in those CRUTs. (Pls.' Resp. to Def.'s Mot. for Summ. J., Ex. 19, App. at p. 388; Ex. 20, App. at p. 393; Ex. 28, App. at p. 589.) That Mr. McCoy's opinion is based on incorrect facts indicates that it is not reliable expert testimony and thus should not be considered by the Court.

B. The Report Impermissibly Applies an Unstated Legal Standard in Reaching its Conclusion and Impermissibly Renders An Opinion on a Legal Issue.

Mr. McCoy's ultimate conclusion is that the CRUTs should be disregarded. (Pls.' 2d Mot. Strike, Ex. 1, App. at p. 9.) As plaintiffs explained in their Second Motion to Strike, disregarding an entity for tax purposes requires the application of a legal theory to the specific facts of the case. *See Enbridge Energy Co. v. United States*, 553 F. Supp. 2d 716 (S.D. Tex. 2008) (disregarding an entity under the conduit theory after discussing relevant law and applying

it to the facts of the case). Defendant argues that Mr. McCoy is not testifying regarding the law because he did not cite any cases in his report. (Def.'s Resp. 4.) The lack of citation to legal authority to support his conclusion that the CRUTs should be disregarded does not change the fact that Mr. McCoy has reached a legal conclusion regarding how the CRUTs should be treated for tax purposes. It just provides further support to plaintiffs' argument that he had no basis for the legal conclusion he reached in his report, and therefore it must be excluded.

Contrary to defendant's view, Mr. McCoy's expertise in the rules surrounding charitable remainder trusts will not assist the Court in this case. "Experts are supposed to interpret and analyze factual evidence. They do not testify about the law because the judge's special knowledge is presumed to be sufficient . . . ." *United States v. Curtis*, 782 F.2d 593 (6th Cir. 1986). Mr. McCoy's report attempts to usurp the Court's role in applying the applicable law to the facts in this case. Because Mr. McCoy's report impermissibly applies an unstated legal standard to the "facts" determined by Mr. McCoy, it should be stricken from the record in this case.

C. The Report Fails to Meet the Standard for Expert Testimony in FED. R. EVID. 702.

Even aside from the failings described above, defendant's response does not show that Exhibit 24 meets the standard for expert testimony found in FED. R. EVID. 702. Mr. McCoy's recitation of the facts in this case and his review of pertinent materials ignores the statements or recollections of any of the individuals actually involved in the transactions at issue in this case. (Pls.' 2d Mot. Strike, Ex. 2, App. at pp. 29-30.) Mr. McCoy repeatedly admitted that he speculated or assumed information in reaching his factual determinations. (Pls.' 2d Mot. Strike, Ex. 2, App. at pp. 33, 36-37, and 46.)

Moreover, Mr. McCoy noted that he would have to reconsider his opinion if "there was no plan, prearrangement, or understanding with the charity for the purchase of the remainder

prior to its designation as a charitable remainderman" (Pls.' 2d Mot. Strike, Ex. 2, App. at p. 39) and plaintiffs have submitted uncontroverted affidavits from the parties (whose testimony Mr. McCoy failed to consider) and trustees indicating that there was no such plan, prearrangement, or understanding. (Pls.' Resp. to Def.'s Mot. for Summ. J., Ex. 19, App. at p. 388; Ex. 20, App. at p. 393; Ex. 28, App. at p. 589.) Additionally, Mr. McCoy failed to articulate (in his report and in his deposition) what standard he used to determine that the CRUTs should be disregarded. An expert cannot reliably apply an unknown standard to incomplete facts and reach a conclusion that can appropriately be relied on to assist the trier of fact. FED. R. EVID. 702. Because Mr. McCoy's report does not meet the standard of FED. R. EVID. 702, it should be excluded.

## II. Exhibit 26 Should Be Stricken From the Record in This Case.

### A. The Purported Transcript Has Not Been Authenticated.

Defendant has not presented any evidence sufficient to support a finding under FED. R. EVID. 901 that Exhibit 26 is what defendant claims it to be: an accurate transcription of a conversation between Gary Kornman, Jonathan Blattmachr, and another unidentified individual. As plaintiffs explained in their Second Motion to Strike, authentication of transcripts is a matter of the accuracy of the transcripts. *United States v. Rochan*, 563 F.2d 1246 (5th Cir. 1977) ("But the issue in the authentication of supplemental transcripts [transcripts provided to assist the jury in understanding a tape recording] is not who made them; the issue is whether they are accurate.") Defendant has provided no evidence there "that the words are accurately reproduced and the voices accurately identified" in Exhibit 26. *See Rochan*, 563 F. 2d at 1251.

Defendant has provided no evidence to meet the standard of FED. R. EVID. 901. Defendant's argument that Exhibit 26 can be authenticated at trial by Mr. Kornman, Mr. Blattmachr, or the potential Heritage client involved in the conversation does not meet the

standard of FED. R. EVID. 901. (Additionally, it is doubtful such individuals could authenticate the transcript.[3])

What defendant has done is to attempt to shift to plaintiffs a burden of "non-authentication." (Def.'s Resp. 8, 16.) It is defendant's burden to show the transcript is admissible; it is not plaintiffs' burden to show that the transcript is inadmissible. *See, e.g., Cunningham v. Consol. Edison, Inc.* 2007 U.S. Dist. LEXIS 19111, n. 7 (E.D.N.Y. 2007) (noting that the burden of establishing admissibility is with the proponent of the evidence). Defendant incorrectly states that Mr. Blattmachr has provided two affidavits in this case. (Def.'s Resp. 8, 16.) Mr. Blattmachr has only provided one affidavit. (Pls.' Resp. to Def.'s Mot. Summ. J., Ex. 27, App. at pp. 553-584.) Defendant argues that while Mr. Blattmachr had ample opportunity to dispute the veracity of the transcript, he did not do so. (Def.'s Resp. 8, 16.) (Of course, neither did he authenticate the transcript.)

Defendant's attempt at misdirection does not change the fact that defendant has not provided any evidence whatsoever that Exhibit 26 is authentic. Defendant has not attached any affidavits or testimony of any of the individuals involved in the purported conversation stating that they reviewed the transcript, that it accurately transcribed a conversation that occurred, or that the voices of the speakers are accurately identified. (Heritage employees have previously testified that they did not routinely review the transcripts for accuracy after they were made. (Pls.' 2d Mot. Strike, Ex. 4, App. at p. 59; Ex. 5, App. at pp. 79-80.))

---

[3] As defendant noted in its response (Def.'s Resp. 8), Mr. Kornman asserted his Fifth Amendment privilege against providing testimony in this proceeding at his deposition. It is doubtful he would provide any further information regarding Exhibit 26 at trial. Plaintiffs identified Mr. Blattmachr as a potential witness in this case in 2006, yet defendant made no efforts to depose him in this proceeding. As to the unidentified individual in the case, plaintiffs would be prejudiced if defendant called such individual at trial since defendant has not provided plaintiffs with the identity of such individual or identified the individual as a potential witness in this case. It is doubtful any of these individuals could testify as to the accuracy of a transcript of a purported conversation that purportedly took place more than eight years ago.

Defendant seems to ignore the authentication requirements in arguing that Exhibit 26 and the other documents obtained from the Heritage bankruptcy trustee can be authenticated as business records by former Heritage employee Vickie Walker. (Def.'s Resp. 7.) Defendant seems to believe that if defendant provided evidence that the transcripts were business records of Heritage (which plaintiffs contest) that the authentication requirement is satisfied. Plaintiffs do not agree that any witnesses deposed by defendant (including Ms. Walker) established the requisite foundation for FED. R. EVID. 803(6), the business records exception to the hearsay rule, but even if they had, that does not mean the transcripts have been authenticated as to the accuracy of the words and the identification of the voices. For business records to be self-authenticating, the records must be certified by their custodian or other qualified person as required under FED. R. EVID. 901(11). No such certification has been made or could be made in regard to Exhibit 26.

Moreover, defendant has not addressed the problems with Exhibit 26 and other purported Heritage transcripts. Defendant noted that Ms. Walker testified that she did not believe any Heritage documents were altered from the time the bankruptcy was filed until the documents were turned over to the trustee. However, no one can account for the whereabouts of the Heritage tapes or transcripts prior to their receipt by the bankruptcy trustee for Heritage in 2004. (Pls.' 2d Mot. Strike, Ex. 7, App. at pp. 100-01 and 106-08.) The purpose of chain of custody testimony is to render it improbable that the original item has either been exchanged with another or been contaminated or tampered with. McCormick on Evidence § 212 (Edward W. Cleary, et al., eds., 2d ed. 1972). Because the whereabouts of the tapes and transcripts cannot be verified and because of Kornman's history of altering and reusing tapes, there is a significant possibility that the tapes were altered during that period of time.

Defendant has provided nothing to support its assertion that Exhibit 26 is what it purports to be, and thus defendant has not met the authentication requirement of FED. R. EVID. 901 for Exhibit 26. Because the transcript has not been authenticated, it is inadmissible.

B. The Purported Transcript is Irrelevant.

Plaintiffs dispute that penalties are applicable to any deficiency that might result in this case. Plaintiffs had substantial authority for the positions taken on their returns, and they acted reasonably and in good faith in relying on the advice of their advisors. Defendant argues that the transcript is "extremely relevant" because it provides "a candid insight into the thought process" of Gary Kornman and Jonathan Blattmachr. (Def.'s Resp. 6.) Defendant fails to note that the relevant intent relating to the penalty issues in this case is that of the Sands and the partnerships they held interests in against which defendant has asserted penalties. Exhibit 26 has no relevance to any fact of consequence in this case. The relevant intent in this case is that of the Sands, not that of peripheral witnesses or of an unrelated individual. The relevant time period involved in this case is 2001 and 2002, not 2000[4]. The relevant transactions are those entered by the Sands, not those discussed by the Sands' advisors with other unrelated persons.

Moreover, defendant takes the position that this Court lacks jurisdiction to consider plaintiffs' defenses to penalties under Section 6664 based on Treas. Reg. 301.6221-1(c)-(d). (Def.'s Reply to Pls.' Resp. to Def.'s Mot. Summ. J. 21-23.) The position that the Court may consider the purported intent of Mr. Kornman and Mr. Blattmachr, but not that of plaintiffs' managing members or partners, is absurd. Defendant's assertion that Exhibit 26 is crucial to the penalty aspect of defendant's case ignores the fact that defendant has asserted penalties against

[4] The purported transcript concerns a conversation that purportedly took place in 2000, long before the Sands spoke with or met with anyone from Heritage about any of the transactions at issue in this case.

plaintiffs, not against Mr. Blattmachr and Mr. Kornman. Because the transcript is irrelevant to the issues in this case, it should be excluded.

C. The Purported Transcript Contains Inadmissible Hearsay.

The purported transcript is also inadmissible because it contains hearsay statements that do not fall into an exception to the hearsay rule. Exhibit 26 contains two layers of hearsay that do not fall within any recognized exceptions to the hearsay rule.[5] The first layer of hearsay contained in the transcript is the purported statements of Mr. Kornman, Mr. Blattmachr and the unidentified individual. The second layer of hearsay comes from the transcript itself. Someone from Heritage made the transcript – asserting that the purported statements were made by the individuals described and were contained on a tape of the conversation. Both the statements and the transcript of the statements must meet a hearsay exception for the statements to be admissible. FED. R. EVID. 805. In such a circumstance, the need for trustworthiness of sources of information and the method of preparation of the document takes on even greater importance. *United States v. Ary*, 518 F.3d 775, n. 10 (10th Cir. 2008) (describing double hearsay in the context of a business record and noting that "[t]he essential component of the business records exception is that each actor in the chain of information is under a business duty or compulsion to provide accurate information. If any person in the process is not acting in the regular course of business, then an essential link in the trustworthiness chain fails."). It is quite clear that Mr. Blattmachr and the unidentified individual were not acting in the regular course of Heritage's business, and as described in plaintiffs' Second Motion to Strike, the testimony of Heritage

[5] Hearsay is defined as "a statement, other than one made by the declarant while testifying at trial, offered into evidence to prove the truth of the matter asserted." FED. R. EVID. 801. The statements by Gary Kornman, Jonathan Blattmachr, and the unidentified individual contained in Exhibit 26 constitute hearsay because they are purported statements of the individuals offered by defendant to prove the purpose of the transactions described therein. The transcript itself is also hearsay because defendant is asserting that the transcript is a transcript of a conversation recorded on a tape.

employees indicates that it was not the company's policy to record and transcribe every conversation that occurred. (Pls.' 2d Mot. Strike, Ex. 4, App. at pp. 63-65; Ex. 6, App. at pp. 96-97; Ex. 7, App. at pp. 102-103.)

Defendant argues that Exhibit 26 qualifies as a business record of Heritage. (Def.'s Resp. 7.) However, Defendant's Response failed to address, and in fact failed to mention (Def.'s Resp. 12) the explicit trustworthiness requirement imbedded in the business records exception to the hearsay rule. If "the source of the information or the method or circumstances of preparation indicate a lack of trustworthiness," a record that would otherwise qualify as a business record is not admissible. FED. R. EVID. 803(6).

The sources of the information and the method of preparation evidence a complete lack of trustworthiness for the transcript defendant has offered as evidence. As plaintiffs explained in their Second Motion to Strike, the information they obtained from Heritage employees regarding other transcripts in the bankruptcy trustee's possession indicates that any such transcripts are not trustworthy. Regarding these other transcripts and tapes, Heritage employees have noted that the quality of the tapes they made was not very good; they were difficult and in some cases impossible to understand. (Pls.' Mot. Strike, Ex. 3 at 73-74, 113; Ex. 8 at 25.) Because the tapes were difficult to understand, marketing employees making transcripts often guessed as to what words they were hearing. (Pls.' Mot. Strike, Ex. 3 at 83.) The marketing employees who made the transcripts had no special transcription training and did sloppy work. (Pls.' Mot. Strike, Ex. 2 at 45; Ex. 3 at 81.) The only tapes of the other transcripts that still exist contain gaps which could be the result of someone erasing portions of the tape. Furthermore, the transcripts for which tapes still exist conflict with those tapes. Those transcripts contain words that are not on the tapes and fail to indicate the gaps in those tapes. (Pls.' Mot. Strike, Ex. 3 at 81-83, 108, 114-

16, 137-38, 148-50.) Those tapes contain words that are not part of the transcripts. (Pls.' 2d Mot. Strike, Ex. 5, App. at pp. 76-78, 81, 83-93.) To be clear, to plaintiffs' knowledge, no tape exists relating to Exhibit 26 (or if such a tape exists, defendant has not yet produced it to plaintiffs); nonetheless, the problems with the other purported transcripts indicate that Exhibit 26 is also suspect.

Because defendant has no answer to the problems plaintiffs have noted, defendant instead attempts to write the requirement that the record be trustworthy out of the rule. Exhibit 26 does not qualify as a business record because of its lack of trustworthiness and because it fails to meet the technical requirements of the rule. It was not the regular practice of Heritage to record and transcribe all conversations and meeting with clients or potential clients. (Pls.' Mot. Strike, Ex. 6 at 82-83; Ex. 7 at 31-32.) Exhibit 26 has no indication of whether it was made at or near the time of the conversation it purported to portray. It is clear the transcript does not qualify as a business record.

Defendant argues that the statements in Exhibit 26 qualify as statements against interest under FED. R. EVID. 804(b)(3) or as statements of then existing mental, emotional, or physical condition under FED. R. EVID. 803(3). As plaintiffs explained in their motion, these statements do not qualify as statements against interest because they were not against the interest of the parties to the conversation at the time they were purportedly made. Mr. Kornman was attempting to gain a client (and a fee) for his company. Moreover, Mr. Blattmachr is not unavailable, and thus FED. R. EVID. 804(3) would not apply to the statements he purportedly made. Defendant's argument that the statements of Mr. Kornman and Mr. Blattmachr "describe a scheme to conceal an abusive tax shelter transaction through the use of a CRUT" and thus reflect intent, plan, or motive under FED. R. EVID. 803(3) is also erroneous. Whether the

statements evidence any such intent is questionable, and if they did, the intent for Mr. Blattmachr and Mr. Kornman is not relevant to any of the issues in this case.

The transcript also fails to qualify under FED. R. EVID. 807 because it does not have any guarantees of trustworthiness equivalent to those required under FED. R. EVID. 803 and 804. In arguing that FED. R. EVID. 807 would apply, defendant again ignored the explicit trustworthiness requirement of the rule. As described above, Exhibit 26 does not exhibit such characteristics.

Because the transcript contains inadmissible hearsay statements that do not fall within any exception, it must be excluded.

D. The Purported Transcript Should be Excluded as a Discovery Sanction Under RCFC 37.

First, defendant incorrectly asserts that because Heritage acted as plaintiffs' agent in providing investment advice and assisting in implementing the transactions at issue in this case, plaintiffs had an obligation to obtain documents from Heritage pertaining to their investments and produce them to defendant. (Def.'s Resp. 11.) However, defendant fails to note that Heritage was no longer serving as an advisor, agent or an independent contractor of plaintiffs once the transactions were implemented and Heritage's fees were paid. Plaintiffs had no "right, authority, or ability" to obtain Heritage's internal documents under the agreement between plaintiffs and Heritage and no "right or authority" to assert against the bankruptcy trustee once Heritage went into bankruptcy. Moreover, the particular document at issue was not created at the request of plaintiffs or on their behalf, and had nothing to do with their financial plan. Contrary to defendant's view, plaintiffs did not have control over Heritage. *See, e.g, Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, 2007 U.S. Dist. LEXIS 22090 (D. Kan. 2007) (determining that defendants did not have the requisite control over certain non-party entities such that defendants could be required to produce documents of the non-party entities

where defendants had ownership interests, common owners, or intermingling of officers, directors, or employees but did not control the entities or their documents); *Sithon Maritime Co. v. Holiday Mansion*, 1998 U.S. Dist. LEXIS 5432 , *17-18 (D. Kan. 1998) (determining that defendant did not have the requisite control over documents in possession of non-parties where the facts did not show that the individual non-party was more than an independent contractor and where defendant could not order the non-party to surrender the documents to it); *Glaxo, Inc. v. Boehringer Ingelheim Corp.*, 1996 U.S. Dist. LEXIS 17828 (D. Conn. 1996) (determining that plaintiffs did not establish that defendants had control over documents in the possession of a parent or sister corporation where the only evidence of control was the relationship between defendants and the non-parties).

Plaintiffs did not have the summons power of the IRS or the ability of the bankruptcy trustee to require Heritage principals to produce Exhibit 26 to them. Defendant illogically concludes that plaintiffs could have obtained Exhibit 26 and other purported transcripts from Heritage when defendant states in its Response (Def.'s Resp. 13) that the Bankruptcy Trustee and defendant had difficulty in obtaining the purported transcripts. The Trustee had to file a motion for contempt, and defendant relied on its summons power to obtain the documents.

Second, defendant's assertion that plaintiffs deliberately chose to ignore Heritage as a source of documentation is completely without merit. Contrary to defendant's assertion, plaintiffs did attempt to obtain records from Heritage. In June 2004, counsel for plaintiffs asked representatives of Heritage what information had been produced to the IRS regarding the Sands. (Pls.' Reply in Supp. Mot. Strike, Ex. 11, App. at p. 7.) The Heritage representatives agreed to provide plaintiffs everything they had given the IRS. No one from or representing Heritage indicated that purported transcripts of conversations between Heritage personnel and the Sands

existed or that other such documents relating to plaintiffs were in the files of Heritage. Some time after that conversation, plaintiffs received a CD of documents pertaining to the Sands that Heritage produced to the IRS from IRS Counsel Elaine Harris. Nothing in those documents indicated that further Heritage documents relating to plaintiffs (or their advisors and other potential clients of their advisors) existed. (Pls.' Reply in Supp. Mot. Strike, Ex. 11, App. at p. 7.)

Plaintiffs had no idea that any purported transcripts existed until just before defendant produced four of them to plaintiffs on the day discovery was originally scheduled to close. (Pls.' Reply in Supp. Mot. Strike, Ex. 11, App. at p. 8.) Contrary to defendant's suppositions, plaintiffs did attempt to obtain the purported transcripts, upon learning that Heritage documents other than duplicates of the documents they had already obtained from the IRS might exist. Plaintiffs made repeated requests to Jeff Tillotson, counsel for several former Heritage employees, beginning in mid-July 2007 to determine whether any purported transcripts of conversations with the Sands existed and to obtain copies of those purported transcripts. (Pls.' Reply in Supp. Mot. Strike, Ex. 11, App. at p. 8.) On July 30, the day before defendant produced the first four purported transcripts to plaintiffs, plaintiffs received the four purported transcripts from Tillotson but were not informed of the existence of any purported tapes of the Sands (or of Exhibit 26). (Pls.' Reply in Supp. Mot. Strike, Ex. 11, App. at p. 8.) Plaintiffs had no knowledge that Exhibit 26 existed until defendant produced it on December 21, 2007, long after fact discovery in this case closed on August 29, 2007.

Defendant argues that defendant, rather than plaintiffs, was prejudiced because its trial counsel did not have Exhibit 26 during the discovery period and thus did not schedule a deposition of Mr. Blattmachr. Defendant attempts to draw a distinction between its trial counsel

and the IRS, though they are both part of the Defendant United States. While such a distinction might be appropriate where trial counsel does not know that the IRS has further documents subject to RCFC 26(a) and responsive to interrogatories or requests for production of documents, it is an entirely different matter for trial counsel to know of such documents and to disregard its obligations under RCFC 26(a) and RCFC 33 and 34. Defendant's trial counsel knew that the Heritage documents existed in December 2006, but failed to secure, review, and produce them to plaintiffs in a timely manner. Moreover, plaintiffs identified Mr. Blattmachr as a potential witness in December 2006, and defendant made no effort to depose him during discovery. For defendant to claim prejudice for its own pervasive lack of diligence is ridiculous.

Plaintiffs were prejudiced because defendant knew in December 2006 that purported transcripts of conversations between Heritage representatives and other individuals existed. Defendant was more than thirteen months late in producing Exhibit 26. This purported transcript is relied upon heavily in Defendant's MSJ. Yet defendant did not produce Exhibit 26 to plaintiffs until long after discovery ended. Because defendant produced the purported transcript after the close of discovery, plaintiffs have been unable to interview witnesses who could rebut defendant's "new" evidence or provide information regarding the transcription and the tape on which the purported conversation was based. Defendant had access to the transcript for thirteen months before providing it to plaintiffs.

Defendant argues that its delay in producing Exhibit 26 was reasonable because the IRS had to review all the Heritage documents and segregate them so as to avoid inadvertent disclosure of taxpayer information and cites the long process the IRS went through to gather the documents and organize them. But defendant does not answer why it was reasonable for the IRS's Rita Daugherty to wait six weeks after receiving funding authorization to send the

documents to a vendor for copying or why no one informed the IRS employees that the documents were subject to discovery requirements until June 13, 2007. Defendant's counsel did not request the IRS, an agency with over 100,000 employees to expedite its review of these documents upon learning that some of them might pertain to the Sands, and nothing kept defendant from expediting the documents relevant to this case to meet its discovery obligations in a timely fashion. Nor does defendant explain why Exhibit 26 was produced some four months after the other purported Heritage transcripts.

Defendant argues that the importance of Exhibit 26 to its case should favor admission of the purported transcript. (Def.'s Resp. 16.) Defendant states that it is "crucial to the penalty aspect of the United States' case as it is evidence of the intent, plan and design of both the shelter promoter and Blattmachr." This "crucial" evidence is on a point irrelevant to this case – the penalties here have been asserted against plaintiffs rather than against Mr. Kornman or Mr. Blattmachr. Defendant has provided no reason for making the inference that statements of advisors to one potential client are indicative of the intent of another client who engaged in an allegedly similar transaction.

In sum, defendant made no efforts to expedite the production of the Heritage documents to plaintiffs and should not be allowed to profit from its delay by relying on such evidence for summary judgment purposes. Plaintiffs respectfully request the Court to apply RCFC 37 to prohibit defendant from relying on Exhibit 26 which it obtained from The Heritage Organization in late 2006 and did not produce to plaintiffs with its RCFC 26(a) disclosures or until December 21, 2007. This is particularly true given the import that defendant has given to Exhibit 26 in its summary judgment briefing and its evasive answers to plaintiffs' discovery requests in which

defendant failed to even describe the nature of these documents.[6] *See Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607-08 (S.D.N.Y. 2004) (excluding evidence proffered by the plaintiff where plaintiff's delay in providing evidence until after defendant's summary judgment motion was filed prejudiced defendant and was "the type of sandbagging of adversaries that Rule 37(c)(1) was designed to prevent."); *Finwall v. City of Chicago*, 239 F.R.D. 504, 507 (N.D. Ill. 2006) ("[L]ate disclosure is not harmless within the meaning of RCFC 37 simply because there is time to reopen discovery.").

Because of defendant's unreasonable delay, the prejudice such delay has caused, and the irrelevance of the purported transcript, plaintiffs request the Court to exclude the Exhibit 26 as a sanction for discovery violations.

## CONCLUSION

For the reasons set forth above, plaintiffs respectfully request this Court to strike Exhibits 24 and 26 and any references thereto (as well as any references to Exhibits 26 through 29 of the Appendix to Defendant's Response to Plaintiffs' Cross-Motion for Summary Judgment) in Defendant's Motion for Summary Judgment or in Defendant's Second Set of Proposed Findings of Uncontroverted Fact.

---

[6] In its June 2007 response to plaintiffs' requests for production of documents seeking documents or information relating to the audits of plaintiffs or their members summonsed or otherwise obtained from any third party, including any law firm, accounting firm, financial institution, or investment advisory firm, as well as any firm that the IRS construes as a "promoter" of the transaction, defendant noted that the IRS was reviewing documents for the bankruptcy trustee and that "if any of the documents are relevant to the matters at issue in these cases, the United States will provide copies of those documents as soon as practicable." At that point, the IRS had known for several months that there were documents relating to the Sands matters, but defendant failed to provide any description of such documents to plaintiffs.

Respectfully submitted this 5th day of September, 2008.

s/ Lewis S. Wiener
LEWIS S. WIENER
Sutherland Asbill & Brennan LLP
1275 Pennsylvania Avenue, NW
Washington, D.C. 20004
202.383.0140 telephone
202.637.3593 facsimile
Email: lewis.wiener@sablaw.com

Of Counsel:

N. Jerold Cohen
Thomas A. Cullinan
Joseph M. DePew
Julie P. Bowling
Sutherland Asbill & Brennan LLP
999 Peachtree Street, NE
Atlanta, Georgia 30309
404.853.8000 telephone
404.853.8806 facsimile

Kent L. Jones
Sutherland Asbill & Brennan LLP
1275 Pennsylvania Avenue, NW
Washington, DC 20004
202.383.0732 telephone
202.637.3593 facsimile

Attorney for Plaintiffs