IN THE UNITED STATES COURT OF FEDERAL CLAIMS
No. 06-407 T
(into which have been consolidated Nos. 06-408 T,
06-409 T, 06-410 T, 06-411 T, 06-810 T, 06-811 T)
Judge Emily C. Hewitt
(E-Filed: September 15, 2008)

| | |
|---|---|
| ALPHA I, L.P., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | 06-407 T |
| BETA PARTNERS, L.L.C., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | 06-408 T |
| R, R, M & C PARTNERS, L.L.C., BY AND THROUGH R, R, M & C GROUP, L.P., A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | 06-409 T |

| | | |
|---|---|---|
| R, R, M & C GROUP, L.P., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-410 T |
| CWC PARTNERSHIP I, BY AND THROUGH TRUST FBO ZACHARY STERN U/A FIFTH G. ANDREW STERN AND MARILYN SANDS, TRUSTEES, A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-411 T |
| MICKEY MANAGEMENT, L.P., BY AND THROUGH MARILYN SANDS, A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | 06-810 T |

| | | |
|---|---|---|
| M, L, R & R, BY AND THROUGH RICHARD E. SANDS, TAX MATTERS PARTNER, | ) | |
| Plaintiff, | ) | |
| v. | ) | 06-811 T |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**PLAINTIFFS' THIRD MOTION TO STRIKE**

## PLAINTIFFS' THIRD MOTION TO STRIKE

Plaintiffs hereby move to strike erroneous and unsupported factual allegations and references to certain inadmissible evidence[1] relied upon by defendant in its Reply to Plaintiffs' Response to Defendant's Motion for Summary Judgment ("Defendant's Reply") filed on August 21, 2008. Because the arguments relating to the six inadmissible exhibits have been fully briefed by the parties, plaintiffs will not address them further here. This motion primarily focuses on the factual allegations made by defendant which have no evidentiary support and are, in fact, contradicted by the evidence in the record. Plaintiffs seek to have such allegations stricken from the record as unfounded and improper. *See, e.g., Unsecured Creditors' Comm. v. Puget Sound Plywood, Inc.*, 924 F.2d 955, 957 n. 1 (9th Cir. 1990) (disregarding erroneous factual allegations in consideration of an appeal); *Woods-Walker v. Harrah's Illinois Corp.*, 2000 U.S. Dist. LEXIS 932, n. 1 (N.D. Ill. 2000) (granting motion to strike factual allegations lacking sufficient evidentiary support).

## ARGUMENT

In its Reply, defendant made factual allegations that are without support in the record and that are directly contradicted by evidence in the record. (Def.'s Reply 5-8, 12, 28-29.) While plaintiffs object to defendant's repeated characterizations of the transactions in which the Sands

[1] Plaintiffs have previously moved to strike six exhibits relied upon by defendant and references thereto in defendant's filings because such exhibits constitute inadmissible evidence. On September 14, 2007, plaintiffs filed a motion to strike Exhibits 26-29 and references thereto in Defendant's Response to Plaintiffs' Cross-Motion for Summary Judgment and Defendant's Response to Plaintiffs' Proposed Findings of Uncontroverted Fact. Plaintiffs' Motion to Strike has been fully briefed by the parties, and any ruling thereon would be equally applicable to the use of the same inadmissible evidence by defendant in Defendant's Reply and related filings. On August 4, 2008, plaintiffs filed their Second Motion to Strike regarding inadmissible evidence defendant relied upon in support of its Motion for Summary Judgment in Cause Nos. 06-409T, 06-410T and 06-411T ("Defendant's MSJ"), specifically Exhibits 24 and 26 of Appendix A to Defendant's MSJ, as well as all references to these exhibits included in Defendant's MSJ and Defendant's Second Set of Proposed Findings of Uncontroverted Fact. Plaintiffs' Second Motion to Strike has been fully briefed by the parties, and any ruling thereon would be equally applicable to the use of the same inadmissible evidence in Defendant's Reply. Defendant's Reply cites these exhibits yet again at pages 7-8 and 27-29.

family members engaged as tax shelters, such statements are not the subject of this motion. Defendant has now attacked publicly the integrity of plaintiffs' witnesses in this case. These individuals are professionals – attorneys and accountants – and defendant's unsupported allegations that they did not properly exercise their duties or were improperly influenced by the Sands are without foundation and should be stricken from Defendant's Reply as set forth below. Even worse, defendant has made unfounded statements regarding the Sands in an effort to inflame the Court and prejudice plaintiffs' case. Plaintiffs seek to strike these statements as well.

## I. Plaintiffs Request the Court to Strike Defendant's Erroneous Factual Allegations Regarding the Trustees of the Educational and Health Support Fund.

On page 6 of its Reply, defendant makes the following allegation:

> Wesley Stallings is an accountant at Bernard Robinson. . . . Essentially, the three co-trustees of the Fund were quasi-employees of the Sands family and it is unlikely they would have risked terminating that long-term relationship with the Sands by refusing to abide by the wishes of Richard and Robert Sands. This is especially true since each knew that they served in their trustee capacity at the sole discretion of Robert and Richard.

(Def.'s Reply 6.) Plaintiffs seek to strike the last two sentences in this statement.[2] Plaintiffs also seek to strike defendant's allegations that the Fund's sale of the remainder interests in the CRUTs to the term beneficiaries of the CRUTs was not in the best interest of the Fund. (Def.'s Reply 8, 10.) Defendant cites nothing in the record to support these allegations, which directly contradict the affidavits of the trustees as discussed further below.

Each of the trustees of the Fund, Freddy Robinson, James Locke, and Wesley Stallings, submitted a sworn statement which plaintiffs included in the record with their Response to Defendant's Motion for Summary Judgment in Cause Nos. 06-409T, 06-410T and 06-411T

[2] Plaintiffs also note that Mr. Stallings is no longer an accountant with Bernard Robinson & Company, though he was during the years at issue in this case. (Pls.' Resp. to Def.'s Mot. Summ. J., Ex. 28, App. at pp. 587-88.)

("Plaintiffs' Response") filed August 4, 2008. (Pls.' Resp. to Def.'s Mot. Summ. J., Ex. 19, App. at pp. 384-89; Ex. 20, App. at pp. 390-95; Ex. 28, App. at pp. 585-90.) The trustees each attested that they did not have a plan, prearrangement, or understanding with the Sands that they would agree to sell the remainder interests held by the Fund to the donors when they were appointed to serve as trustees. (Pls.' Resp. to Def.'s Mot. Summ. J., Ex. 19, App. at p. 388; Ex. 20, App. at p. 393; Ex. 28, App. at p. 589.) They each indicated that when they were approached regarding the sale of the Fund's remainder interests, they believed it was in the best interests of the Fund to sell the remainder interests and obtain cash that could allow the Fund to provide donations to charities more quickly, rather than to wait for 20 years to obtain a limited partnership interest which might significantly fluctuate in value over that time period. (Pls.' Resp. to Def.'s Mot. Summ. J., Ex. 19, App. at pp. 387-88; Ex. 20, App. at p. 394; Ex. 28, App. at p. 589.) The trustees understood their fiduciary duties and exercised their independent judgment in their roles as trustees of the Fund. (Pls.' Resp. to Def.'s Mot. Summ. J., Ex. 19, App. at p. 387; Ex. 20, App. at p. 393; Ex. 28, App. at p. 588.)

Additionally, the fees that Bernard Robinson & Company and Nixon Peabody receive from the Sands or from Constellation Brands, Inc. are quite small as a percentage of the firms' annual frees. Mr. Robinson indicated that since 2000, on an annual basis the fees his firm receives from the Sands family for services rendered have averaged approximately three percent of the firm's total annual revenue. (Pls.' Resp. to Def.'s Mot. Summ. J., Ex. 19, App. at p. 387.) The fees that Nixon Peabody has received from Constellation Brands, Inc. for legal services during the years 2001 through 2004 were less than one percent of Nixon Peabody's total revenues for each of such years. (Pls.' Resp. to Def.'s Mot. Summ. J., Ex. 20, App. at p. 393.)

Mr. Locke clearly explained his role and the lack of any influence his relationship with the Sands family had on his decisions as trustee:

> As a trustee of the Educational and Health Support Fund, I understood my fiduciary duty to the supporting organization and the charities it was formed to benefit. Any suggestion that I was controlled by the Sands family or failed to exercise my independent judgment is totally baseless. I would not jeopardize my legal reputation, ability to practice law for a wide variety of clients, or my personal integrity by violating my fiduciary duties to the Fund. Also, in my long association with the Sands, I have never been asked to do anything which would be contrary to my responsibilities or which would jeopardize my legal reputation, ability to practice law, or personal integrity.

(Pls.' Resp. to Def.'s Mot. Summ. J., Ex. 20, App. at p. 394.)

Mr. Stallings, who no longer works at Bernard Robinson & Company (but did during the years at issue in this case) described how Mr. Robinson conducted himself when serving as trustee for client entities:

> As part of his work at Bernard Robinson, Freddy served as trustee for numerous client entities. I believe that he took his fiduciary responsibility in such appointments very seriously. Over the seventeen years that I practiced with Freddy, I can recall numerous occasions where Freddy stood up to clients, fellow board members or co-trustees when an individual wanted to do something Freddy believed was improper. Freddy has a long record of serving his community and is one of the most respected business leaders in Greensboro, North Carolina. To this day, Freddy would be the first person I would recommend to someone to serve in any type of fiduciary role.

(Pls.' Resp. to Def.'s Mot. Summ. J., Ex. 28, App. at pp. 588-89.)

Defendant's statements in its Reply directly contradict the sworn affidavits of the trustees which attest to their understanding and consideration of their fiduciary duties to the Fund. With no evidence, and to plaintiffs' knowledge, without ever even seeking to speak with the trustees, defendant alleges that they were "quasi-employees of the Sands family and it is unlikely they would have risked terminating that long-term relationship with the Sands by refusing to abide by the wishes of Richard and Robert Sands" and that the terms of the sale agreement were "not in the best interest of the charity." (Def.'s Reply 6, n. 3, 8.) Defendant's attack on the

professionalism and fiduciary actions taken by these individuals is unfounded and improper, especially since defendant directly contradicts their sworn affidavits with no evidentiary support. Because defendant's statements which attack the professionalism and integrity of these individuals are unsupported, plaintiffs seek to have them stricken from Defendant's Reply.

## II. Plaintiffs Request the Court to Strike Defendant's Erroneous Factual Allegations Regarding the Appraisal of Limited Partnership Interests in R,R,M & C Group, L.P.

Defendant makes an unsupported allegation that "a low appraisal was part of the scheme whereby the charity would receive a relatively small amount." (Def.'s Reply 8, n. 4.) The exhibits which the government cites (Gov't Exs. 14 and 27) to support this allegation are the appraisal of limited partnership interests in R,R,M & C Group, L.P. ("Group") made by George Goerig, a qualified appraiser, and a letter from Mr. Goerig to Brian Czerwinksi updating the appraisal. Neither of these documents support defendant's allegation that the appraisal was part of any such "scheme." Defendant did not challenge in its audit the value of those partnership interests and has provided no valuation opinions or other evidence indicating that the discount factors applied by Mr. Goerig were not appropriate for valuing a 24.975% limited partnership interest in a partnership that the limited partners did not control.[3] Defendant's allegation is mere supposition, lacking support from the record, and should be stricken from Defendant's Reply.

## III. Plaintiffs Request the Court to Strike Defendant's Erroneous Factual Allegations Regarding the Due Diligence of Lewis Rice & Fingersh L.C.

Defendant states that Lewis Rice & Fingersh L.C. ("Lewis Rice") made no investigation into the validity of the representations made by the Sands and that "they were presumed to be true and formed the basis of the Lewis, Rice opinion." (Def.'s Reply at 28.) Contrary to

[3] The general partner of R,R,M & C Group, L.P. ("Group"), R,R,M & C Management Corp., had complete authority over and exclusive control and management of the business and affairs of Group. (Pls.' Resp. to Def.'s Mot. Summ. J., Ex. 1, App. at p. 11.)

defendant's statement, William Falk of Lewis Rice described in his declaration the due diligence process in which he engaged as part of his representation of the Sands family, including the detailed telephone interviews of Sands family members[4] he conducted and upon which Lewis Rice based the representations they drafted and which were provided to Lewis Rice by the Sands. (Pls.' Cross-Mot. Summ. J., Ex. 55, App. B at pp. 1369-71; Pls.' Resp. & Reply to Def.'s Resp. to Pls.' Cross-Mot. Summ. J., App. B. at p. 153.) The record in this case indicates that Lewis Rice spent a significant amount of time investigating and drafting the representations made by the Sands, and defendant's assertion to the contrary lacks evidentiary support.

## IV. Plaintiffs Request the Court to Strike Defendant's Inflammatory Allegations Against the Sands Family Members.

Defendant makes several statements regarding the Sands that are not supported by the evidence and that appear calculated simply to inflame the Court and prejudice plaintiffs' case. (Def.'s Reply 6, 12, 23.) On page 12 of its Reply, defendant alleges that "[t]he Sands Heirs used the CRUTs solely to launder the $75 million of gain generated by the sale of the Constellation Brands stock." On page 6 of its Reply, defendant states that Robert Sands' affidavit "defies credibility." On page 23, defendant references "fraud related penalties" in discussing the Court's jurisdiction to consider plaintiffs' reasonable cause defenses to penalties.

This is a civil tax case. Defendant's statements connote criminal or fraudulent activity which **is not** involved in this case, in which the Sands **have not** engaged, and of which they **have not** been accused. For example, Merriam-Webster's Online Dictionary defines "launder" as "to transfer (as illegally obtained money or investments) through an outside party to conceal the true

[4] Plaintiffs note that Marilyn Sands, who is 82 years old, (and would have been 75 when Mr. Falk conducted his interview) did not recall speaking with Mr. Falk. Mr. Falk described the interview in his declaration after reviewing his files.

source." These cases do not involve "illegally obtained money or investments" and for defendant to make such a suggestion is inappropriate and improper and can only be meant to inflame the reader. These statements by the defendant are unfounded. Plaintiffs respectfully request the Court to strike these statements from Defendant's Reply and disregard them in considering Defendant's MSJ.

## CONCLUSION

That Defendant's Reply contains unsupported factual allegations, particularly allegations attacking the independence of witnesses in the case and their performance of fiduciary and professional duties, which are directly contrary to evidence contained in the record is of great concern to plaintiffs. Such allegations go well beyond effective representation and may constitute sanctionable conduct. *See Wyatt v. Kelly*, 1998 U.S. Dist. LEXIS 6671 (W.D. Tex. 1998) (determining that plaintiffs had violated Fed. R. Civ. Pro. 11(b)(3) by making factual allegations against the IRS of a conspiracy with no evidentiary support). For the reasons set forth above, plaintiffs respectfully request this Court to strike the unfounded factual allegations made in Defendant's Reply (as well as references to Exhibits 26 through 29 of the Appendix to Defendant's Response to Plaintiffs' Cross-Motion for Summary Judgment and references to Exhibits 24 and 26 of Appendix A to Defendant's MSJ).

Respectfully submitted this 15th day of September, 2008.

s/ Lewis S. Wiener
LEWIS S. WIENER
Sutherland Asbill & Brennan LLP
1275 Pennsylvania Avenue, NW
Washington, D.C. 20004
202.383.0140 telephone
202.637.3593 facsimile
Email: lewis.wiener@sablaw.com

Of Counsel:

N. Jerold Cohen
Thomas A. Cullinan
Joseph M. DePew
Julie P. Bowling
Sutherland Asbill & Brennan LLP
999 Peachtree Street, NE
Atlanta, Georgia 30309
404.853.8000 telephone
404.853.8806 facsimile

Kent L. Jones
Sutherland Asbill & Brennan LLP
1275 Pennsylvania Ave., NW
Washington, DC 20004
202.383.0732 telephone
202.637.3593 facsimile

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED that service of the foregoing Plaintiffs' Third Motion to Strike has been made on September 15, 2008 via the Court's CM/ECF system to:

Thomas M. Herrin
Attorney, Tax Division
Department of Justice
717 N. Harwood, Suite 400
Dallas, Texas 75201
thomas.m.herrin@usdoj.gov

s/ Lewis S. Wiener
LEWIS S. WIENER