**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

No.06-407T
(into which have been consolidated Nos. 06-408T, 06-409T, 06-410T, 06-411T, 06-810T, 06-811T)
Judge Emily C. Hewitt
(E-Filed September 15, 2008)

| | |
|---|---|
| ALPHA I, L.P., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br>Defendant. | No. 06-407T |
| BETA PARTNERS, L.L.C, BY AND THROUGH ALPHA I, L.P., A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br>Defendant. | No. 06-408T |
| R,R,M & C PARTNERS, L.L.C., BY AND THROUGH R,R,M & C GROUP, L.P., A NOTICE PARTNER,<br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br>Defendant. | No. 06-409T |

| | |
|---|---|
| R,R,M & C GROUP, L.P., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br>Defendant. | No. 06-410T |
| CWC PARTNERSHIP I, BY AND THROUGH TRUST FBO ZACHARY STERN U/A FIFTH G, ANDREW STERN AND MARILYN SANDS, TRUSTEES, A NOTICE PARTNER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 06-411T |
| MICKEY MANAGEMENT, L.P., BY AND THROUGH MARILYN SANDS, A NOTICE PARTNER,<br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>Defendant. | No. 06-810T |

| | | |
|---|---|---|
| M, L, R & R, BY AND THROUGH RICHARD E. SANDS, TAX MATTERS PARTNER,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>Defendant. | ) | No. 06-811T |

**PLAINTIFFS' SUR-REPLY TO UNITED STATES' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

PAGE(S)

**I. INTRODUCTION................................................................................................1**

**II. DISCUSSION..................................................................................................1**

**A. RESPONSE TO DEFENDANT'S INCORRECT FACTUAL ASSERTIONS..........................................................................................1**

**B. CONSIDERATION OF THE SECTION 752 ISSUE IS UNNECESSARY.........................................................................................6**

**C. THE REQUIREMENT TO COVER A SHORT SALE IS NOT A LIABILITY FOR PURPOSES OF SECTION 752. ..........................................6**

**D. DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON THE ISSUE OF THE VALIDITY OF THE TRANSFERS......................10**

**1. The Transfers Should Not Be Disregarded Where, As Here, a Completed Gift Was Made Prior to the Sale of the Property Giving Rise to Income..............................................................10**

**2. Treas. Reg. §. 1.701-2 Is Invalid and Not Entitled to Deference..........11**

**E . DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT AS TO THE APPLICATION OF ACCURACY-RELATED PENALTIES.........................................................................................13**

**III. CONCLUSION................................................................................................15**



8022756.1

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Adams Fruit Co., v. Barrett*, 494 U.S. 638 (1990).............................................................13

*B.F. Goodrich Co. v. United States*, 94 F.3d 1545 (Fed. Cir. 1996) .............................................7

*Boeshore, Estate of v. Comm'r*, 78 T.C. 523 (1982)......................................................................12

*Chevron USA, Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984)........................7, 8, 11

*Coggin Auto. Corp. v. Comm'r*, 292 F.3d 1326 (11th Cir. 2002) ..................................................12

*Deluxe Corp. v. United States*, 885 F.2d 848 (Fed. Cir. 1989).....................................................12

*DeWitt v. United States*, 204 Ct. Cl. 274 (1974)..............................................................1, 10

*Farmar v. United States*, 689 F.2d 1017 (Ct. Cl. 1982), *rev'd on other grounds*, 464 U.S. 206 (1984)............................................................................................................8

*Gitlitz v. Comm'r*, 531 U.S. 206 (2001) .........................................................................12

*Grove v. Comm'r*, 490 F.2d 241 (2d Cir. 1973).......................................................................1

*Jade Trading, LLC v. United States*, 80 Fed. Cl. 11 (2007) ....................................................7, 10

*Klamath Strategic Inv. Fund, LLC v. United States*, 440 F. Supp. 2d 608 (E.D. Tex. 2006) ..........................................................................................................7

*Klamath Strategic Inv. Fund, LLC v. United States*, 472 F. Supp. 2d 885 (E.D. Tex. 2007) ...................................................................................................14, 15

*Kornman Assocs. v. United States*, 527 F.3d 443 (5th Cir. 2008) ........................................8, 9, 10

*Long Term Capital Holdings v. United States*, 330 F. Supp. 2d 122 (D. Conn. 2004) .................14

*Marriott Int'l Resorts, L.P. v. United States*, Docket Nos. 01-256T, 01-257T (Fed. Cl. filed August 28, 2008) ...........................................................................7, 10

*McCrary v. Comm'r*, 92 T.C. 827 (1989) ...........................................................................6

*Murphy Exploration & Prod. Co. v. United States Dep't of Interior*, 252 F.3d 473 (D.C.Cir. 2001) ..........................................................................................................13

*Nagahi v. INS*, 219 F.3d 1166 (10th Cir. 2000)..............................................................13

*Nalle v. Comm'r*, 997 F.2d 1134 (5th Cir. 1993) ....................12

*Osteen v. Comm'r*, 62 F.3d 356 (11th Cir. 1995)....................15

*Palmer v. Comm'r*, 62 T.C. 684 (1974) ....................1

*Rauenhorst v. Comm'r*, 119 T.C. 157 (2003)....................14

*Reeb v. Econ. Opportunity Atlanta, Inc.*, 516 F.2d 924 (5th Cir. 1975)....................13

*Rite Aid Corp. v. United States*, 255 F.3d 1357 (Fed. Cir. 2001) ....................12

*Sala v. United States*, 552 F. Supp. 2d 1167 (D. Colo. 2008) ....................7

*Salina P'ship v. Comm'r*, 80 T.C.M. (CCH) 686 (2000) ....................10

*Santa Monica Pictures, LLC v. Comm'r*, 89 T.C.M. (CCH) 1157 (2005)....................14

*Schachter v. Comm'r*, 67 T.C.M. (CCH) 3092 (1994)....................6

*Schlumberger Tech. Corp. v. United States*, 55 Fed. Cl. 203 (2003) ....................7

*Sheppard v. United States*, 361 F.2d 972 (Ct. Cl. 1966)....................1, 10

*Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) ....................8

*Stephenson Trust v. Comm'r*, 81 T.C. 283 (1983) ....................12

*Stobie Creek Invs., LLC v. United States*, 2008 U.S. Claims LEXIS 230, 92 - 120 (Fed. Cl. 2008) ....................6

*United States v. Calamaro*, 354 U.S. 351 (1957) ....................12

*United States v. Mead Corp.*, 533 U.S. 218 (2001) ....................8, 11

*Wyatt v. Kelly*, 98-1 U.S. Tax Cas. (CCH) ¶ 50,326 (W.D. Tex. 1998) ....................6

**STATUTES**

26 U.S.C. § 465....................6

26 U.S.C. § 465(b)(1) ....................6

26 U.S.C. § 752....................6, 7, 9

26 U.S.C. § 4946....................4

26 U.S.C. § 6230(c)(4)....................13

26 U.S.C. § 7805....................13

26 U.S.C. § 7805(a)....................11

Legislative Branch Appropriations Act, 1993, Pub. L. No. 102-392 § 325(c), 106 Stat. 1728....................13

**TREASURY REGULATIONS**

Treas. Reg. § 1.1233-1(a)....................7

Treas. Reg. § 1.701-2....................11

Treas. Reg. § 1.701-2(b)....................12

Treas. Reg. § 301.6221-1(c)....................13

Treas. Reg. § 301.6221-1(d)....................13

Treas. Reg. § 301.6226(f)(1)....................13

**REVENUE RULINGS**

Rev. Rul. 88-77, 1988-38 I.R.B. 8....................7

Rev. Rul. 95-26, 1995-14 I.R.B. 6....................7, 8

Rev. Rul. 95-45, 1995-26 I.R.B. 4....................7, 9

**LEGISLATIVE MATERIALS**

H.R. Rep. No. 105-148, at 594 (1997)....................13

**RULES**

Fed. R. Civ. P. 11(b)(3)....................6

**MISCELLANEOUS**

Heartland, Habitat, Harvest and Horticulture Act of 2007 (S.2242)....................15

Industry Specialization Program Coordinated Issue, Notional Principal Contracts, 2005 WL 43711 (Jan. 6, 2005)....................14

## I. INTRODUCTION

Pursuant to the Court's Order of August 27, 2008, plaintiffs file this Sur-Reply in response to defendant's Reply to Plaintiffs' Response to Defendant's Motion for Summary Judgment ("Defendant's Reply") to address the incorrect factual assertions and new arguments raised by defendant therein.

## II. DISCUSSION

### A. RESPONSE TO DEFENDANT'S INCORRECT FACTUAL ASSERTIONS

In its Reply, defendant makes factual allegations that are bereft of record support.[1] (Def.'s Reply 5-8, 12, 28-29.) First, defendant confuses a gift of a partnership interest with a gift of assets held by the partnership. (Def.'s Reply 5-6.) Defendant attempts to distinguish cases involving gifts to charities and later repurchases by the donors by arguing that in those cases[2] the charity received the full value of the asset but here the charity received a remainder interest in a discounted partnership. Contrary to defendant's statement, in this case the charity **did** receive the full value of the assets it held (remainder interests in limited partnership interests in a limited partnership) when the remainder interests were purchased by the donors. (Pls.' PFUF ¶¶ 36-39.) Defendant did not challenge in its audit the value of those partnership interests as determined by George Goerig, a qualified appraiser, but now makes unsupported allegations that "a low appraisal was part of the scheme whereby the charity would receive a relatively small amount." (Def.'s Reply 8, n. 4.) The exhibits which defendant cites to support this allegation, the appraisal itself and a letter from Mr. Goerig to Brian Czerwinksi updating the appraisal, do not support defendant's allegation that the appraisal was part of any such "scheme." Additionally, defendant

[1] Plaintiffs have moved to strike several of these statements, along with factual statements based on inadmissible evidence, in the concurrently filed Plaintiffs' Third Motion to Strike.
[2] *Grove v. Comm'r*, 490 F.2d 241(2d Cir. 1973); *DeWitt v. United States*, 204 Ct. Cl. 274 (1974); *Sheppard v. United States*, 361 F.2d 972 (Ct. Cl. 1966); and *Palmer v. Comm'r*, 62 T.C. 684 (1974).

has provided no valuation opinions or other evidence indicating that the discount factors applied by Mr. Goerig were not appropriate for valuing a 24.975% limited partnership interest in a partnership that the limited partners did not control.[3]

Second, defendant incorrectly alleges that the Sands controlled the Educational and Health Support Fund ("the Fund") and that the Fund's trustees did not act in its best interests. (Def.'s Reply 6-8.) Defendant admits that a fact issue exists as to whether the Sands controlled the trustees of the Fund but attacks the truthfulness of the affidavits signed under oath by the trustees of the Fund and by Robert Sands, with no supporting evidence. The trustees each attested that they did not have a plan, prearrangement, or understanding with the Sands that they would agree to sell the remainder interests held by the Fund to the donors when they were appointed to serve as trustees. (Pls.' Resp. to Def.'s Mot. Summ. J., Ex. 19, App. at p. 388; Ex. 20, App. at p. 393; Ex. 28, App. at p. 589.) They each indicated that when they were approached about selling the Fund's remainder interests, they believed it was in the best interests of the Fund to sell the remainder interests and obtain cash that could allow the Fund to provide donations to charities more quickly, rather than to wait for 20 years to obtain a limited partnership interest which might significantly fluctuate in value over that time period. (Pls.' Resp. to Def.'s Mot. Summ. J., Ex. 19, App. at pp. 387-88; Ex. 20, App. at p. 394; Ex. 28, App. at p. 589.) Mr. Locke, one of the trustees of the Fund, clearly explained his role and the lack of any influence his relationship with the Sands family had on his decisions as trustee:

> As a trustee of the Educational and Health Support Fund, I understood my fiduciary duty to the supporting organization and the charities it was formed to benefit. Any suggestion that I was controlled by the Sands family or failed to exercise my independent judgment is totally baseless. I would not jeopardize my legal reputation, ability to practice law for a wide variety of clients, or my

[3] The general partner of R,R,M & C Group, L.P. ("Group"), R,R,M & C Management Corp., had complete authority over and exclusive control and management of the business and affairs of Group. (Pls.' Resp. to Def.'s Mot. Summ. J., Ex. 1, App. at p. 11.)

> personal integrity by violating my fiduciary duties to the Fund. Also, in my long association with the Sands, I have never been asked to do anything which would be contrary to my responsibilities or which would jeopardize my legal reputation, ability to practice law, or personal integrity.

(Pls.' Resp. to Def.'s Mot. Summ. J., Ex. 20, App. at p. 394.)

With no evidence, and to plaintiffs' knowledge, without ever even seeking to speak with the trustees, defendant alleges that the trustees were "quasi-employees of the Sands family and it is unlikely they would have risked terminating that long-term relationship with the Sands by refusing to abide by the wishes of Richard and Robert Sands" and that the terms of the sale agreement were "not in the best interest of the charity." (Def.'s Reply 6, n. 3, 8.) Defendant's attack on the professionalism and fiduciary actions taken by these individuals is unfounded, improper and directly contradicts their sworn affidavits with no evidentiary support.

Moreover, defendant's assertion glosses over the requirements for appointing and removing trustees found in the Fund's formation document and assumes (again, without support and contrary to the evidence in the record) that the Sands would seek to improperly control the trustees' exercise of their fiduciary duties. Defendant cites Article III, ¶ 5(b) (which provides that the grantors (Richard Sands and Robert Sands) may remove a co-trustee by giving written notice of such removal to such co-trustee) and ¶ 5(c)(ii) (which provides that the grantors also had the power to appoint successor trustees upon the death, resignation, removal, or incapacity of a co-trustee) to support its argument that the Sands could remove a trustee and replace him "with someone who would comply with the Sands' directives." (Def.'s Reply 7.)

Defendant fails to note that ¶ 5(c)(ii) imposes restrictions on who the grantors may appoint to fill the role of co-trustee. Under Article III, ¶ 3, the Fund's trustee composition is restricted: "At no time shall the number of Co-Trustees who are not "disqualified persons" (as

defined in Section[4] 4946 of the Internal Revenue Code) be less than a number which is one more than the number of disqualified persons then serving as Co-Trustees." Under this rule, the majority of trustees of the Fund at all times had to be people who were not "disqualified persons."[5] The grantors could not appoint any person they chose to serve as trustee of the Fund. Defendant's argument that the Sands would have removed and replaced trustees until they ultimately found someone to serve as trustee who would subvert his fiduciary obligation to the Fund to do the Sands bidding simply is not supported by any evidence.

Defendant asserts multiple times that "each step of the two strategies at issue in this litigation was detailed on a transaction calendar prepared prior to the execution of any of the short sale transactions." (Def.'s Reply 12, 28.) As explained in Plaintiffs' Response to Defendant's Second Set of Proposed Findings of Uncontroverted Fact (Docket # 119), none of the events described on the transaction calendars and implementation lists were "steps" of "strategies." (Def.'s Mot. Summ. J., APP-A-105-128.) Moreover, defendant is incorrect that each "step" of the "strategies," (as defendant has attempted to define them) was included in the transaction calendars and implementation lists, because they contain no information about the gifts to the CRUTs or the later purchase of the remainder interests from the Educational and Health Support Fund. (Def.'s Mot. Summ. J., APP-A-105-128.)

Defendant also asserted that the amount of the short sales was determined "based on the amount of potential basis that could be applied." (Def.'s Reply 13.) Mr. Czerwinski's deposition,

---

[4] All references to "Sections" are to Sections of the Internal Revenue Code of 1986, as amended, unless otherwise noted.

[5] Section 4946 defines disqualified persons, in relevant part, as (a) substantial contributors to the foundation; (b) owners of more than 20 percent of (i) the total combined voting power of a corporation, (ii) the profits interest of a partnership, or (iii) the beneficial interest of a trust or unincorporated enterprise which is a substantial contributor to the foundation; (c) a member of the family (i.e. spouse, ancestors, children, grandchildren, great grandchildren, and the spouses of children, grandchildren, and great grandchildren) of the individuals described above; (d) a corporation of which such persons own 35 percent of the total combined voting power; (e) a partnership in which such persons own more than 35 percent of the profits interest or (f) a trust or estate in which persons described above hold more than 35 percent of the beneficial interest.

which defendant cites for this “fact,” does not support this “fact.” Mr. Czerwinksi did not testify that the amounts of the short sales entered by the Sands were arrived at based on the amount of potential basis that could be applied; in fact he stated that he did not remember how the amount of the short sales were determined for the transactions entered by the Sands. (Def. APP-A-6.) Plaintiffs have repeatedly pointed out that the Sands had multiple reasons for engaging in the financial plan, including making a profit, providing for philanthropic interests, diversifying their holdings, and potentially obtaining a tax benefit. (Pls.’ Ex. 57, App. B at pp. 1394, 1397A.) Moreover, defendant’s assertion is logically inconsistent with the facts of this case in that Group originally reported a loss of approximately $19 million (rather than the gain or loss of $0 which would have resulted under defendant’s theory). (Pls.’ PFUF ¶ 25.)

Finally, defendant states that Lewis Rice & Fingersh L.C. (“Lewis Rice”) made no investigation into the validity of the representations made by the Sands. (Def.’s Reply at 28.) Contrary to defendant’s statement, William Falk of Lewis Rice described in his declarations the due diligence process in which he engaged as part of his representation of the Sands family. including the interviews of Sands family members he conducted and upon which Lewis Rice based the representations they drafted for the Sands. (Pls.’ Cross-Mot. Summ. J., Ex. 55, App. B at pp. 1369-71; Pls.’ Resp. & Reply to Def.’s Resp. to Pls.’ Cross-Mot. Summ. J., App. B. at p. 153.) The Sands family members then reviewed and signed the representations Lewis Rice had prepared. Lewis Rice spent a significant amount of time investigating and drafting the representations, and defendant’s assertion to the contrary lacks evidentiary support.

That Defendant’s Reply contains so many unsupported factual allegations, particularly allegations attacking the independence of potential witnesses in the case and their performance of fiduciary duties, which are directly contrary to evidence contained in the public record is of

great concern to plaintiffs. Such allegations go well beyond effective representation and border on sanctionable conduct. *See Wyatt v. Kelly*, 98-1 U.S. Tax Cas. (CCH) ¶ 50,326 (W.D. Tex. 1998) (determining that plaintiffs had violated Fed. R. Civ. Pro. 11(b)(3) by making factual allegations against the IRS of a conspiracy with no evidentiary support).

**B. CONSIDERATION OF THE SECTION 752 ISSUE IS UNNECESSARY.**

Plaintiffs have fully briefed this issue in their Motion for Partial Summary Judgment (Docket # 108) filed July 2, 2008 and related Reply (Docket # 124). Plaintiffs' concession of defendant's capital gains adjustments on the ground that none of the transactions of the partnerships increased the amount considered at-risk for an activity under Section 465(b)(1) eliminates the need for the Court to determine whether the obligation to close a short sale is a liability for purposes of Section 752. Such a determination would serve no purpose except to determine whether valuation misstatement penalties could apply. (Def.'s Reply 2.) That is exactly why courts have repeatedly refused to litigate the underlying issues in tax cases for purposes of determining whether this type of penalty should apply when the taxpayer has conceded the underlying issue. *See, e.g., McCrary v. Comm'r*, 92 T.C. 827 (1989). Indeed, courts have refused to make findings on the underlying merits when taxpayers do not specify <u>any</u> ground for the concession. *Schachter v. Comm'r*, 67 T.C.M. (CCH) 3092 (1994). Thus, defendant's focus on the ground supporting plaintiffs' concession (Section 465) is a red herring.

**C. THE REQUIREMENT TO COVER A SHORT SALE IS NOT A LIABILITY FOR PURPOSES OF SECTION 752.**

Should the Court reach the issue of whether the requirement to cover a short sale is a liability for purposes of Section 752, the relevant authorities indicate that it is not. This Court and other courts have determined that the obligation to cover a short option is not a liability for purposes of Section 752. *See Stobie Creek Invs., LLC v. United States*, 2008 U.S. Claims LEXIS

230, *92 - *120 (Fed. Cl. 2008); *Jade Trading, LLC v. United States*, 80 Fed. Cl. 11 (2007); *Sala v. United States*, 552 F. Supp. 2d 1167, 1197-98 (D. Colo. 2008); *see also Klamath Strategic Inv. Fund, LLC v. United States*, 440 F. Supp. 2d 608 (E.D. Tex. 2006) (determining that loan premiums were not liabilities for purposes of Section 752).

Notwithstanding the recent decision by a division of this Court in *Marriott Int'l Resorts, L.P. v. United States,* Docket Nos. 01-256T, 01-257T (Fed. Cl. filed August 28, 2008), (discussed below) there is simply no reason to treat the obligation to close a short sale differently than an obligation to cover a short option. Under Treas. Reg. § 1.1233-1(a) and the "open transaction" doctrine, investors in short sales do not recognize income or loss for tax purposes until they acquire and deliver the replacement securities to the lender. Treas. Reg. § 1.1233-1(a) ("For income tax purposes a short sale is not deemed to be consummated until delivery of property to close the short sale."). Both the obligation to close a short sale and the obligation to cover a short option are contingent in amount and cannot be determined until they become certain. They should be treated the same way. The only difference between the two is that the IRS by administrative fiat declared in Rev. Rul. 95-26, a two-paragraph revenue ruling with no analysis, that the obligation to cover a short sale is a liability for purposes of Section 752.

Defendant asks this Court to give substantial deference to revenue rulings in general and specifically to Rev. Rul. 95-26, Rev. Rul. 95-45, and Rev. Rul. 88-77. (Def.'s Reply 3.) Defendant argues that the deference set forth in *Chevron USA, Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984) applies to such revenue rulings. Defendant is incorrect as this Court and the Federal Circuit do not grant *Chevron* deference to revenue rulings. *B.F. Goodrich Co. v. United States*, 94 F.3d 1545, 1550 (Fed. Cir. 1996) ("We recognize, however, that IRS Revenue Rulings have no binding effect on this court."); *Schlumberger Tech. Corp. v. United States*, 55

Fed. Cl. 203, 212 (2003) (determining that revenue rulings are not entitled to *Chevron* deference but only have the power to persuade); *Farmar v. United States*, 689 F.2d 1017, 1024 n.12 (Ct. Cl. 1982) ("Revenue rulings are not binding on this court. They are not accorded a presumption of correctness but must be analyzed for consistency with the statute.") (citations omitted), *rev'd on other grounds*, 464 U.S. 206 (1984).

Defendant also erroneously asserts that if *Chevron* deference is not warranted, the revenue rulings are persuasive "and should be followed unless they are unreasonable." (Def.'s Reply 3.) Defendant relies on the Fifth Circuit's opinion in *Kornman Assocs. v. United States*, 527 F.3d 443, 452 (5th Cir. 2008) to argue that the revenue rulings at issue here should be afforded significant weight under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). The deference required under *Skidmore* for informal rulemaking (that is not based on notice-and-comment rulemaking or formal adjudication) is determined based on the "thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." *United States v. Mead Corp.*, 533 U.S. 218, 228 (2001). The poorly reasoned, single page statement of the IRS's litigating position in Rev. Rul. 95-26 cannot receive significant deference under this or any standard, for it lacks thorough consideration of the issues, is not consistent with earlier IRS positions, and has no power to persuade. The Fifth Circuit in *Kornman* gave deference to the revenue rulings *in spite of* Judge King's concurring opinion, which expressed his unease with the IRS seeking a rule of law to dispose of a case to avoid the expense of litigating fact-bound questions of the economic substance and step transaction doctrines. *Kornman*, 527 F.3d at 462-63 (J. King, concurring).

Additionally, the facts in this case, unlike those in *Kornman*, show that Rev. Rul. 95-26 does not exhibit thorough consideration and valid reasoning. Defendant has described its own

revenue ruling as, at best, "cram[ming] through [a] result." (Pls.' Cross-Mot. Summ. J., Ex. 7, App. A at pp. 81-82.) Notes made by Richard Starke, an attorney in the office of Chief Counsel in 1995, confirm that the IRS was well aware that the position it had taken in the cases like *Helmer* on the definition of a "liability" for purposes of Section 752 could result in taxpayers obtaining tax benefits. (*Id*.) Mr. Starke was charged with drafting IRS Revenue Ruling 95-45, which addressed whether a short sale is a liability in the corporate context. As reflected in his notes, Mr. Starke attended numerous meetings with IRS officials where the definition of "liability" for purposes of Section 752 was discussed. Mr. Starke reported that the IRS understood that the manner in which "liability" had been defined could be advantageous or disadvantageous to the IRS, depending on the situation, and that the underlying issue involved "mismatch between inside and outside basis." He then reported that "if [the IRS] had to choose one poison or another, [Stuart Brown, then Chief Counsel of the IRS] tended [to] agree with Helmer (a position IRS perhaps needs, lesser of two evils.)" (*Id.)* Chief Counsel Brown suggested writing a regulation to address these issues. In debating which was the correct path to follow, the Treasury Department advocated using Section 752 to equate inside and outside basis, but understood that such use of Section 752 would be "cram[ming] through [a] result" and "not an entirely clean way of doing it." (*Id*.)

It does not appear that the Fifth Circuit had this evidence[6] before it in reaching its decision in *Kornman*. While plaintiffs believe such information is primarily relevant to their penalty defenses, such evidence contradicts defendant's argument that the revenue rulings were the result of thorough consideration and valid reasoning and were consistent with earlier and later pronouncements of the IRS. (Def.'s Reply 3-4.)

[6] It is possible that plaintiffs may obtain further documents indicating that the revenue rulings on which defendant seeks to rely lacked the thorough consideration necessary for deference by the Court based on the Court's Order dated August 28, 2008.

Finally, the Court of Federal Claims' recent decision in *Marriott* is not controlling here. It fails to address why the obligation to close short sales should be treated differently than the obligation to cover options and does not cite or attempt to distinguish this Court's decisions in *Jade Trading* and *Stobie Creek.* Instead, the decision relies on the Fifth Circuit's decision in *Kornman* and the Tax Court's decision in *Salina P'ship v. Comm'r*, 80 T.C.M. (CCH) 686 (2000) to dispense with the "open transaction" principles and treat contingent obligations as if they are fixed. (The Court found that Marriott's contingency was constrained, but made no determination that it was nonexistent. In fact, the Court specifically noted the interest rate risk involved in short-selling Treasury notes, but nonetheless decided to treat the obligation to close the short sales as fixed in amount though it was still contingent.)

### D. DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON THE ISSUE OF THE VALIDITY OF THE TRANSFERS.

#### 1. The Transfers Should Not Be Disregarded Where, As Here, a Completed Gift Was Made Prior to the Sale of the Property Giving Rise to Income.

Defendant argues that plaintiffs presented no evidence to rebut defendant's argument that a plan or prearrangement existed as between the Sands to prematurely terminate the CRUTs.[7] (Def.'s Reply 7.) Even assuming arguendo that defendant is correct, whether the Sands considered offering to purchase the remainder interests in the CRUTs prior to formation of the Fund does not make the transfers of limited partnership interests in Group invalid under the law of this Court. *See, e.g., DeWitt v. United States*, 204 Ct. Cl. 274 (1974); *Sheppard v. United States*, 176 Ct. Cl. 244, 252 (1966). In both *DeWitt* and *Sheppard*, this Court determined that so long as the gifts were complete prior to the existence of a fixed right to the income from the

[7] The evidence is clear that no plan existed between the Sands and the trustees of the Fund. The Sands could not force the trustees to accept their offer to purchase the remainder interests held by the Fund.

property, the transferors' preexisting intention to offer to repurchase the donated property did not invalidate the gifts.

Additionally, defendant's assertions that the sale of the remainder interests by the Fund was not in the best interests of the charity smacks of an attempt to determine for taxpayers how they should structure their business transactions and second-guesses the decisions of the trustees of the Fund. (Def.'s Reply 8, 13.) Defendant argues that the Fund should have sought an undiscounted value for the partnership interest or purchased the income interest of the term beneficiaries in the CRUTs. Defendant fails to explain where the Fund would obtain the funds to make such a purchase and to provide any evidence that the appraisal of the partnership interests on which the sale was based was incorrect.

**2. Treas. Reg. §. 1.701-2 Is Invalid and Not Entitled to Deference.**

Defendant also erroneously asserts that Treas. Reg. § 1.701-2 is an interpretive regulation under Section 7805(a) entitled to *Chevron* deference. (Def.'s Reply. 15-18.) An interpretive regulation that usurps the authority of Congress and the courts is not entitled to **any** deference. The Supreme Court held that "administrative implementation of a **particular statutory provision** qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *United States v. Mead Corp.* 533 U.S. 218, 226-27 (2001) (emphasis added). Treas. Reg. § 1.701-2 does not interpret a particular statutory provision, but purports to allow the Commissioner to recast a transaction for federal tax purposes "if a partnership is formed or availed of in connection with a transaction the principal purpose of which is to reduce substantially the present value of the partners' aggregate federal tax liability in a manner that is inconsistent with the intent of subchapter K."

Subchapter K does not provide the Commissioner the authority claimed in Treas. Reg. § 1.701-2(b) to recast transactions that unquestionably satisfy and are based on the plain meaning of the statutory provisions in question. An administrative agency "may not usurp the authority of Congress by adding restrictions to a statute which are not there." *Stephenson Trust v. Comm'r*, 81 T.C. 283, 288 (1983) (quoting *Estate of Boeshore v. Comm'r*, 78 T.C. 523, 527 (1982)); *see also Rite Aid Corp. v. United States*, 255 F.3d 1357, 1359 (Fed. Cir. 2001). Executive agencies, including the IRS, are not permitted to legislate by adding terms or requirements to a statutory scheme that Congress has not provided. *See*; *Nalle v. Comm'r*, 997 F.2d 1134, 1139 (5th Cir. 1993) ("In the absence of any ambiguity, our analysis must be confined to the plain language of the statute"); *Deluxe Corp. v. United States*, 885 F.2d 848, 853 (Fed. Cir. 1989) ("A regulation serves to implement the law, not to change it.").

Defendant's "altruistic motives" of combating the "substantial threat presented by the tax shelter industry" also fail to support its attempt to usurp the powers of Congress by legislating additional rules for subchapter K. (Def.'s Reply 18.) The courts have consistently made clear that it is up to Congress and not the agency to change the law when improvements are necessary. *See, e.g., Gitlitz v. Comm'r*, 531 U.S. 206, 220 (2001) ("Because the Code's plain text permits the taxpayers here to receive these benefits, we need not address this policy concern."); *United States v. Calamaro*, 354 U.S. 351, 357 (1957) ("Neither we nor the Commissioner may rewrite the statute simply because we may feel that the scheme it creates could be improved upon."); *Coggin Auto. Corp. v. Comm'r*, 292 F.3d 1326, 1334 (11th Cir. 2002) ("Any potential windfall to holding companies must be cured by Congress, not the judiciary."). If the Service is dissatisfied with the Code, its remedy is to seek new legislation from Congress, not merely to assume the power to revoke or alter the statutes that Congress enacted by regulation.

### E. DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT AS TO THE APPLICATION OF ACCURACY-RELATED PENALTIES.

As plaintiffs stated in their Response to Defendant's Motion for Summary Judgment, penalties are inapplicable because plaintiffs were not negligent, had substantial authority for the positions taken on their returns, and acted with reasonable cause and in good faith. The valuation misstatement penalties asserted by defendant are inapplicable as a matter of law because plaintiffs conceded defendant's capital gains adjustments on a ground unrelated to basis or value, and thus no valuation misstatement has been or should be determined to exist in this case, or alternatively because they acted reasonably and in good faith.

Contrary to defendant's assertion (Def.'s Reply 21-23), this Court has jurisdiction to consider the reasonable cause of plaintiffs and their partners. Plaintiffs previously addressed this argument in their Response and Reply to United States' Response to Plaintiffs' Cross Motion for Summary Judgment filed September 14, 2007 (Docket # 65, pp. 45-50.) As described therein, the permissive language of Section 6230(c)(4), which allows partners to assert partner level defenses to penalties, does not support defendant's attempt to prohibit partners in partnerships from ever presenting their defenses to penalties in a prepayment forum through its regulations.[8] Defendant's regulations thwart Congress' goals of streamlining partnership proceedings and avoiding duplicative litigation. *See* H.R. Rep. No. 105-148, at 594 (1997).

Even if the Court agreed that the limited partners of Group were not allowed to present their individual defenses here, the defenses of the managing member of the partnership must still

[8] Defendant's interpretation, found in Treas. Reg. §§ 301.6221-1(c)-(d) and 301.6226(f)(1) would effectively strip the Tax Court of jurisdiction to consider the defenses of partners in a partnership and would require multiple proceedings involving the same factual issues. Courts have held that an administrative agency cannot place limits on judicial review of cases based on a general grant of authority (such as Section 7805) from Congress. *Adams Fruit Co., v. Barrett*, 494 U.S. 638 (1990), *result superseded by statute*, Legislative Branch Appropriations Act, 1993, Pub. L. No. 102-392 § 325(c), 106 Stat. 1728; *Nagahi v. INS*, 219 F.3d 1166 (10th Cir. 2000). Moreover, interpretation of jurisdictional statutes is exclusively the province of courts, and an area outside of an agency's expertise which is not entitled to deference. *Murphy Exploration & Prod. Co. v. United States Dep't of Interior*, 252 F.3d 473 (D.C.Cir. 2001); *Reeb v. Econ. Opportunity Atlanta, Inc.*, 516 F.2d 924, 926 (5th Cir. 1975).

be considered by the Court in determining whether any such penalties are applicable. (Def.'s Reply 23.) Any argument by defendant to the contrary opposes defendant's own published guidance.[9] *See* Industry Specialization Program Coordinated Issue, Notional Principal Contracts, 2005 WL 43711 (Jan. 6, 2005) (Pls.' Resp. & Reply to Def.'s Resp. to Pls.' Cross-Mot. Summ. J., Ex. 14, App. A at pp. 31-32). Here, Robert and Richard Sands are, through their total ownership of R,R,M & C Management Corp., the general partners in Group. Additionally, the other partners in Group testified that they relied on Robert and Richard in taking these tax positions. (Pls.' Resp. & Reply to Def.'s Resp. to Pls.' Cross-Mot. Summ. J., Ex. 67 and Ex. 68, App. B. at pp. 121, 124-25.) Thus, the Court may consider the partners' defenses to penalties as they are based on the conduct of the managing members of the partnership. *See Long Term Capital Holdings v. United States*, 330 F. Supp. 2d 122, 200-12 (D. Conn. 2004); *Santa Monica Pictures, LLC v. Comm'r*, 89 T.C.M. (CCH) 1157, 1229-36 (2005); *Klamath*, 472 F. Supp. 2d 885, 903-04 (E.D. Tex. 2007).

Plaintiffs acted with reasonable cause and in good faith and had substantial authority for the original reporting positions on their returns. Defendant **assumes** that the short sale transactions in which plaintiffs engaged lacked economic substance[10] and thus cannot have substantial authority. (Def.'s Reply 26.) Defendant relies on this Court's opinion in *Stobie Creek* to argue that amorphous common law doctrines such as economic substance displace statutes and case law which support the technical merits of a position taken by taxpayers. (*Id.*). Such a view would mean, contrary to existing law, that there could never be substantial authority for a transaction with technical merit but which a court disregards for lacking economic substance. *See*

---

[9]Courts do not look kindly on arguments by the Commissioner against the IRS's own guidance. *See Rauenhorst v. Comm'r*, 119 T.C. 157, 170-71 (2003).

[10] Plaintiffs conceded defendant's capital gains adjustments on a ground other than lack of economic substance and the Court will not have to consider such issues based on plaintiffs' concession.

*Klamath Strategic Inv. Fund, LLC v. United States*, 472 F. Supp. 2d 885 (E.D. Tex. 2007) (determining that substantial authority existed for the taxpayers' reporting of a transaction the court disregarded on grounds it lacked economic substance); *Osteen v. Comm'r*, 62 F.3d 356 (11th Cir. 1995) (reversing the Tax Court's decision that taxpayers lacked substantial authority for the deductions taken where the deductions were denied not because of the technical merits of the position but because the taxpayers lacked a profit motive). This view creates a *per se* penalty for transactions lacking economic substance with no Congressional authority to do so. While Congress has considered enacting a strict liability penalty for transactions determined to lack economic substance, it has not done so. *See, e.g.* Heartland, Habitat, Harvest and Horticulture Act of 2007 (S.2242) (providing no exceptions to the proposed penalty on non-economic substance transactions).

## III. CONCLUSION

Defendant is not entitled to summary judgment on any of the grounds asserted in its motion or the new arguments raised in its Reply. The Court should not reach the issue of whether the obligation to close a short sale constitutes a liability, but if it does, the relevant authorities indicate that such an obligation is not a liability and that the revenue rulings relied on by defendant are not entitled to deference. Even if the transfers of limited partnership interests in Group to the CRUTs could be considered here, issues of material fact exist, and none of defendant's arguments provide a legal basis for summary judgment. Defendant is not entitled to summary judgment as to penalties where, as here, the penalties are inapplicable as a matter of law and a genuine issue of material fact exists because plaintiffs reasonably relied on their advisors and acted in good faith in taking the tax positions at issue.

Plaintiffs respectfully request the Court to deny Defendant's Motion.

Respectfully submitted this 15th day of September, 2008.

s/ Lewis S. Wiener
LEWIS S. WIENER
Sutherland Asbill & Brennan LLP
1275 Pennsylvania Avenue, NW
Washington, D.C. 20004
202.383.0140 telephone
202.637.3593 facsimile
Email: lewis.wiener@sablaw.com

Of Counsel:

N. Jerold Cohen
Thomas A. Cullinan
Joseph M. DePew
Julie P. Bowling
Sutherland Asbill & Brennan LLP
999 Peachtree Street, NE
Atlanta, Georgia 30309
404.853.8000 telephone
404.853.8806 facsimile

Kent L. Jones
Sutherland Asbill & Brennan LLP
1275 Pennsylvania Ave., NW
Washington, DC 20004
202.383.0732 telephone
202.637.3593 facsimile

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the foregoing Plaintiffs' Sur-Reply to United States' Reply to Plaintiffs' Response to Defendant's Motion for Summary Judgment has been made on September 15, 2008 via the Court's CM/ECF system to:

Thomas M. Herrin
Attorney, Tax Division
Department of Justice
717 N. Harwood, Suite 400
Dallas, Texas 75201
thomas.m.herrin@usdoj.gov

s/ Lewis S. Wiener
LEWIS S. WIENER