# In the United States Court of Federal Claims

No. 06-407 T

(into which have been consolidated Nos. 06-408T, 06-409T, 06-410T, 06-411T, 06-810T, 06-811T)

(E-Filed: October 9, 2008)

|  |  |
|---|---|
| _____ ) | Action for Readjustment of |
| ALPHA I, L.P., BY AND THROUGH ) | Partnership Items; I.R.C. § 6226; |
| ROBERT SANDS, A NOTICE PARTNER, ) | Motion to Dismiss Causes of |
|  ) | Action for Lack of Jurisdiction: |
|  Plaintiff, ) | FPAA Invalid to Extent FPAA |
|  ) | Purports to Adjust Nonpartnership |
|  v. ) | Items on the Basis That Transfers |
|  ) | Were Shams; Motion to Substitute |
| THE UNITED STATES, ) | Parties:  Partner Who Filed |
|  ) | Complaint and Others May |
|  Defendant. ) | Withdraw From Proceeding Upon |
|  ) | Substitution of Successor Partner; |
|  ) | Deposit by Withdrawing Partner |
|  ) | Who Filed Complaint Shall Not |
|  ) | Be Returned |
|  ) |  |
|  ) |    06-407 T |
| _____ ) |  |
|  ) |  |
| BETA PARTNERS, L.L.C., BY AND ) |  |
| THROUGH ALPHA I, L.P., A NOTICE ) |  |
| PARTNER, ) |  |
|  ) |  |
|  Plaintiff, ) |    06-408 T |
|  ) |  |
|  v. ) |  |
|  ) |  |
| THE UNITED STATES, ) |  |
|  ) |  |
|  Defendant. ) |  |
| _____ ) |  |
|  ) |  |
| R, R, M & C PARTNERS, L.L.C., BY AND ) |  |
| THROUGH R, R, M & C GROUP, L.P., A ) |  |

NOTICE PARTNER,                                    )
                                                   )
            Plaintiff,                             )        06-409 T
                                                   )
      v.                                           )
                                                   )
THE UNITED STATES,                                 )
                                                   )
            Defendant.                             )
_____            )
                                                   )
R, R, M & C GROUP, L.P., BY AND                    )
THROUGH ROBERT SANDS, A                            )
NOTICE PARTNER,                                    )
                                                   )
            Plaintiff,                             )        06-410 T
                                                   )
      v.                                           )
                                                   )
THE UNITED STATES,                                 )
                                                   )
            Defendant.                             )
_____            )
                                                   )
CWC PARTNERSHIP I, BY AND                          )
THROUGH TRUST FBO ZACHARY STERN                    )
U/A FIFTH G, ANDREW STERN AND                      )
MARILYN SANDS, TRUSTEES, A NOTICE                  )
PARTNER,                                           )
                                                   )
            Plaintiff,                             )        06-411 T
                                                   )
      v.                                           )
                                                   )
THE UNITED STATES,                                 )
                                                   )
            Defendant.                             )
_____            )
                                                   )
MICKEY MANAGEMENT, L.P., BY AND                    )
THROUGH MARILYN SANDS, A NOTICE                    )
PARTNER,                                           )

|                                     |     |          |
|-------------------------------------|-----|----------|
|                                     | )   |          |
| Plaintiff,                          | )   | 06-810 T |
|                                     | )   |          |
| v.                                  | )   |          |
|                                     | )   |          |
| THE UNITED STATES,                  | )   |          |
|                                     | )   |          |
| Defendant.                          | )   |          |
| _____  | )   |          |
|                                     | )   |          |
| M, L, R & R, BY AND THROUGH         | )   |          |
| RICHARD E. SANDS, TAX MATTERS       | )   |          |
| PARTNER,                            | )   |          |
|                                     | )   |          |
| Plaintiff,                          | )   | 06-811 T |
|                                     | )   |          |
| v.                                  | )   |          |
|                                     | )   |          |
| THE UNITED STATES,                  | )   |          |
|                                     | )   |          |
| Defendant.                          | )   |          |
| _____  | )   |          |

Lewis S. Wiener, Washington, DC, for plaintiff.  N. Jerold Cohen, Thomas A. Cullinan, Joseph M. Depew, and Julie P. Bowling, Atlanta, GA, and Kent L. Jones, Washington, DC, of counsel.

Thomas M. Herrin, with whom were Eileen J. O'Connor, Assistant Attorney General, David Gustafson, Chief, Court of Federal Claims Section, Louise Hytken, Chief, Southwestern Civil Trial Section, and Michelle C. Johns, Trial Attorney, Tax Division, United States Department of Justice, Dallas, TX, for defendant.

## OPINION AND ORDER

HEWITT, Judge

Before the court are Plaintiffs' Motion to Substitute Certain Parties and to Dismiss Certain Causes of Action For Lack of Jurisdiction (plaintiffs' Motion or Pls.' Mot.), the United States' Response to Plaintiffs' Motion to Substitute Parties and to Dismiss Certain Causes of Action For Lack of Jurisdiction and Supporting Brief (defendant's Response or Def.'s Resp.), and Plaintiffs' Reply to United States' Response to Plaintiffs' Motion to

Substitute Certain Parties and to Dismiss Certain Causes of Action For Lack of Jurisdiction (plaintiffs' Reply or Pls.' Reply).  For the reasons discussed below, plaintiffs' Motion is GRANTED in part and DENIED in part.

I.      Background

        Prior to September 21, 2001, R, R, M & C Group, L.P. (Group) was a limited partnership with four equal limited partners:  Robert Sands, Richard Sands, Marilyn Sands, and CWC Partnership I (CWC) (collectively, the Sands).  Pls.' Mot. 4.  On September 21, 2001, the Sands transferred their interests in Group to four charitable remainder unitrusts (CRUTs).  Id.  Plaintiffs state:  "A qualified charitable remained trust is generally exempt from income tax, and the grantor is entitled to a charitable income tax deduction based on the present value of the remainder interest ultimately passing to charity."  Id. at 5 (citing 26 U.S.C. §§ 170(f), 664).  On the date of the transfer, September 21, 2001, Group held $359,290 and 2,002,002 shares of stock in Constellation Brands, Inc.  Id.  "Each of the Sands claimed a current deduction on their 2001 personal tax returns for the present value of their respective remainder interests."  Id.  Group sold the 2,002,002 shares of Constellation stock on October 1, 2001 for $74,862,863.  Id.  Because Group reported a basis in the Constellation stock of $94,757,364, the sale resulted in a capital loss of $19,894,501.  Id.  The loss was allocated among the CRUT partners.  Id.  Defendant issued a Final Partnership Administrative Adjustment (FPAA) to Group in which defendant reduced Group's basis in the Constellation stock from $94,757,364 to $9,108,119.  Id. at 5-6.  The reduction in Group's basis in the Constellation stock replaced Group's capital losses with large capital gains.  Id. at 6.  The FPAA also stated that the transfer of the partnership interests in Group to the CRUTs "should be disregarded as an economic sham, such that the Sands should be treated as the limited partners in Group when it sold the Constellation stock."  Id.  Plaintiffs filed a partnership-level proceeding at the United States Court of Federal Claims challenging the FPAA.  Group's First Amended Complaint For Readjustment of Partnership Items Under Code Section 6226 (Group First Amended Complaint or Group Amended Compl.) 1.

        The Sands now "move this Court to invalidate that portion of defendant's [FPAA] that it issued to [Group] wherein defendant determined that the Sands' transfers of their partnership interests in Group to several [CRUTs] were shams."  Pls.' Mot. 2-3.  According to plaintiffs, "this Court does not have jurisdiction to consider the efficacy of those transfers in this proceeding."  Id. at 3.  Plaintiffs argue that "[b]ecause defendant cannot contest the Sands' transfers of their partnership interests in an FPAA, defendant must accept the CRUTs as the true partners in Group."  Id.  The Sands therefore request "to be dismissed from these proceedings to the extent they relate to the adjustments that

defendant made to Group's tax return."[1]  Id.  Plaintiffs request further "that the [c]ourt substitute the Robert Sands Charitable Remainder Unitrust – 2001 [(the Robert Sands CRUT)] as the partner filing suit on behalf of Group."  Id. at 4.

Pursuant to 26 U.S.C. § 6226(e), "Robert Sands deposited the amount by which his taxes would increase as if all of the adjustments in the Group FPAA were correct, including the determination that he was a partner in Group when the Constellation Brands stock was sold."  Id. at 6.  According to plaintiffs, "[b]ecause the CRUT is not a taxable entity, and any adjustments detailed in the FPAA would therefore have no effect on its tax liability, . . . the amount of the jurisdictional deposit required for the CRUT to proceed in this case is zero."  Id. at 4.  Plaintiffs therefore request that the deposit made by Robert Sands be returned.  Id. at 17.  The court heard oral argument on plaintiffs' Motion on October 6, 2008.

II.    Legal Standards

Under the Internal Revenue Code (I.R.C.), partnerships do not pay income tax.  26 U.S.C. § 701.  Instead, the individual partners in a partnership are "liable for income tax only in their separate or individual capacities."  26 U.S.C. § 701.  Pursuant to the I.R.C.:

> Every partnership (as defined in section 761(a)) shall make a return for each taxable year, stating specifically the items of its gross income and the deductions allowable by subtitle A, and such other information for the purpose of carrying out the provisions of subtitle A as the Secretary may by forms and regulations prescribe, and shall include in the return the names and addresses of the individuals who would be entitled to share in the taxable income if distributed and the amount of the distributive share of each individual.

26 U.S.C. § 6031(a).  Each partnership must prepare, for each partner, a written statement, known as a Schedule K-1 form, including "[t]he partner's distributive share of partnership income, gain, loss, deduction, or credit required to be shown on the partnership return."  Treas. Reg. §§ 1.6031(b)-1T(a)(1), (3).

---

[1] "[T]he Sands seek dismissal from two of the cases that have been consolidated in this proceeding:  Case No. 1:06-cv-00409, . . . and Case No. 1:06-cv-00410 . . . ."  Plaintiffs' Motion to Substitute Certain Parties and to Dismiss Certain Causes of Action For Lack of Jurisdiction (plaintiffs' Motion or Pls.' Mot.) 3 n.1.  "CWC also seeks dismissal from Case No. 1:06-cv-00411 . . . to the extent that the FPAA that is at issue in that case attributes to CWC income from Group that is properly attributable to the CWC Partnership I Charitable Remainder Unitrust - 2001."  Id.

The Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA) was enacted to provide consistency in the treatment of partnership items through a single unified proceeding. TEFRA, Pub. L. No. 97-248, 96 Stat. 324 (1982) (codified as amended at 26 U.S.C. §§ 6221-34 (2006)). Prior to the enactment of TEFRA, "administrative and judicial proceedings related to partnership income were . . . conducted at the level of the individual partner," resulting in the need to initiate multiple proceedings to address the tax issues of a single partnership. Monti v. United States (Monti), 223 F.3d 76, 78 (2d Cir. 2000). Under § 6221 of the I.R.C., "The tax treatment of any partnership item (and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item) shall be determined at the partnership level." 26 U.S.C. § 6221. Adjustments to partnership items are made by the IRS in an FPAA. 26 U.S.C. § 6223(a). "The point of the FPAA process is to make determinations which simultaneously are binding on all partners within the partnership." Russian Recovery Fund Ltd. v. United States (Russian Recovery Fund), 81 Fed. Cl. 793, 799 (2008). "Any partner has the right to participate in any administrative proceeding relating to the determination of partnership items at the partnership level." 26 U.S.C. § 6224(a).

The United States Court of Federal Claims has jurisdiction pursuant to section 6226(f) of the I.R.C. "to determine all partnership items of the partnership for the partnership taxable year to which the [FPAA] relates." 26 U.S.C. § 6226(f); see also 28 U.S.C. § 1508 ("The Court of Federal Claims shall have jurisdiction to hear and to render judgment upon any petition under section 6226 or 6228(a) of the Internal Revenue Code of 1986.").

A partnership item is "any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that . . . such item is more appropriately determined at the partnership level than at the partner level." 26 U.S.C. § 6231(a)(3). Treasury Regulation § 301.6231(a)(3)-1 contains a list of partnership items:

> For purposes of subtitle F of the Internal Revenue Code of 1954, the following items which are required to be taken into account for the taxable year of a partnership under subtitle A of the Code are more appropriately determined at the partnership level than at the partner level and, therefore, are partnership items:
>
> (1)   The partnership aggregate and each partner's share of each of the following:
> (i)   Items of income, gain, loss, deduction, or credit of the partnership;
> (ii)  Expenditures by the partnership not deductible in computing its taxable income (for example, charitable contributions);

(iii) Items of the partnership which may be tax preference items under section 57(a) for any partner;

(iv) Income of the partnership exempt from tax;

(v) Partnership liabilities (including determinations with respect to the amount of the liabilities, whether the liabilities are nonrecourse, and changes from the preceding taxable year); and

(vi) Other amounts determinable at the partnership level with respect to partnership assets, investments, transactions and operations necessary to enable the partnership or the partners to determine –

 (A) The investment credit determined under section 46(a);

 (B) Recapture under section 47 of the investment credit;

 (C) Amounts at risk in any activity to which section 465 applies;

 (D) The depletion allowance under section 613A with respect to oil and gas wells; and

 (E) The application of section 751(a) and (b);

(2) Guaranteed payments;

(3) Optional adjustments to the basis of partnership property pursuant to an election under section 754 (including necessary preliminary determinations, such as the determination of a transferee partner's basis in a partnership interest); and

(4) Items relating to the following transactions, to the extent that a determination of such items can be made from determinations that the partnership is required to make with respect to an amount, the character of an amount, or the percentage interest of a partner in the partnership, for purposes of the partnership books and records or for purposes of furnishing information to a partner:

(i) Contributions to the partnership;

(ii) Distributions from the partnership; and

(iii) Transactions to which section 707(a) applies (including the application of section 707(b)).

Treas. Reg. § 301.6231(a)(3)-1(a).   Under § 6231(a)(4) of the I.R.C. a nonpartnership item is defined as "an item which is (or is treated as) not a partnership item."  26 U.S.C. § 6231(a)(4).

III. Discussion

Plaintiffs' Motion contests defendant's ability to determine, in an FPAA, that the transfer of partnership interests in Group was a sham.  Pls.' Mot. 6.  "Although plaintiffs dispute [the FPAA], for purposes of this motion plaintiffs will assume that it is correct, for even if Group realized large capital gains in 2001 . . . , all of those gains would be allocable to the CRUT partners."  Id.  According to plaintiffs, "The Internal Revenue Service [(IRS)] was required to make any challenge to the Sands' transfers of their partnership interests by issuing Statutory Notices of Deficiency to them, which would have given them the choice of contesting the Notices in the Tax Court or paying the tax and seeking a refund."  Id. at 3 (citing 26 U.S.C. §§ 6212-13, 6422).  Plaintiffs argue that "[i]tems that are not partnership items must be adjusted, if at all, through deficiency procedures to be applied at the partner level."  Id. at 8.  Plaintiffs argue that, because the IRS did not issue any Statutory Notices of Deficiency to the Sands, "the IRS is precluded from assessing any tax against the Sands with respect to the adjustments in the Group FPAA."  Id. at 3 (citing 26 U.S.C. § 6213(a)).  The Sands request that the court dismiss them from these proceedings, id., substitute the Robert Sands CRUT, id. at 4, and "direct defendant to return to [Robert Sands] the jurisdictional deposit that he made to contest the Group FPAA," id. at 3.

A.     Whether the Identity of a Partner is a Partnership Item

Plaintiffs argue that "[w]hether the Sands' transfers of their partnership interests in Group to the CRUT partners were 'economic shams,' as is alleged in the FPAA, is not a partnership item that may be raised in an FPAA."  Pls.' Mot. 9.  Plaintiffs therefore contend that "the portion of defendant's FPAA that makes this adjustment is invalid as a matter of law, and the [c]ourt is without jurisdiction to consider the merits of defendant's sham argument as it pertains to the transfer of the partnership interests in Group."  Id.  Plaintiffs argue that "[t]he identity of a partner is not a partnership item because . . . [t]he identity of a partner is not 'required to be taken into account for the partnership's taxable year under any provision of subtitle A.'"  Id. (quoting 26 U.S.C. § 6231(a)(3)).  Further, plaintiffs argue, "The Secretary (for good reason) has not identified the identity of a partner or, more specifically, the transfer of a partnership interest, as an item that is more appropriately determined at the partnership level than at the partner level."  Id. at 10.

The first prong of the definition of a partnership item defines a partnership item as an item that is "required to be taken into account for the partnership's taxable year under any provision of subtitle A."  26 U.S.C. § 6231(a)(3).  Plaintiffs argue that "the requirement that partnerships identify their partners is found in subtitle F."  Pls.' Reply 4 n.3.  Under section 6031(a) of the I.R.C., located in subtitle F, "Every partnership . . . shall make a return for each taxable year, stating . . . the names and addresses of the individuals who would be entitled to share in the taxable income if distributed and the amount of the distributive share of each individual."  26 U.S.C. § 6031(a).

Under the second prong of the definition of a partnership item, an item will meet the definition of a partnership item "to the extent regulations prescribed by the Secretary provide that . . . such item is more appropriately determined at the partnership level than at the partner level." 26 U.S.C. § 6231(a)(3).  According to plaintiffs:

> Each of the Sands' transfers of their partnership interests to each of the CRUT partners is not an item more appropriately determined at the partnership level because the transfers held no tax consequence for Group or any other partners in Group:  there is no impact on the partnership's income or loss or balance sheet; and none of the Sands' transfers had any tax effect on any other partner, as each of the Sands transferred 100% of their respective partnership interests.

Pls.' Mot. 12.  Plaintiffs argue that because "the statute requires defendant to 'prescribe' by regulation that an item is a partnership item," Pls.' Reply 2, and because the identity of a partner is not present on the IRS's list of partnership items, the identity of Group's partners is not a partnership item, id. at 2-3 (citing Field v. United States, 328 F.3d 58, 59 (2d Cir. 2003) (finding that because 26 U.S.C. § 6621(c), titled "Increase in underpayment rate for large corporate underpayments," is not listed in 26 C.F.R. § 301.6231(a)(3)-1, 26 U.S.C. § 6621(c) interest is not a partnership item); Monti, 223 F.3d at 82 (noting that "[t]he right of individual partners to request consistent settlement terms, as provided for in I.R.C. § 6224(c)(2), is not on the list")).  According to plaintiffs, "The courts have routinely implemented this framework to invalidate FPAAs (or portions thereof) that purport to adjust items other than partnership items." Pls.' Mot. 9 (citing Grigoraci v. Comm'r (Grigoraci), T.C.M. 2002-202; Hang v. Comm'r (Hang), 95 T.C. 74 (1990)).  The court now reviews the Hang and Grigoraci cases on which plaintiff relies.[2]

In Hang, the Tax Court was faced with the determination of "whether the proposed reallocation of a subchapter S item from record shareholders to a taxpayer who [the Commissioner of Internal Revenue] . . . determined is the beneficial shareholder is within the scope of review provided in section 6226(f) [of the I.R.C.]." Hang, 95 T.C. at 80.  The Tax Court held that "this determination is more appropriately made at the shareholder level than at the corporate level." Id. at 81.  The issue in Hang is analogous to the issue now before the court.  Compare Hang, 95 T.C. at 78 (relying on a prior I.R.C. § 6245 that defined a subchapter S item as "any item of an S corporation to the extent regulations

---

[2]The court heard oral argument on plaintiffs' Motion on October 6, 2008.  At the oral argument, plaintiffs' attorney, Mr. Thomas A. Cullinan, pointed out that, despite the passage of many years since the Tax Court decisions discussed in the parties' briefing, the government has not amended the Treasury Regulations to include the identity of a partner in the IRS' list of partnership items.  Oral Argument of Oct. 6, 2008, argument of Mr. Cullinan at 11:18 a.m.-11:19 a.m.; see Treas. Reg. § 301.6231(a)(3)-1(a).

prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the corporate level than at the shareholder level"), with 26 U.S.C. § 6231(a)(3) (defining partnership item as "any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level"). According to defendant, however, "Hang is distinguishable from this case because Hang involved due process concerns not present here."  Def.'s Resp. 18 (noting that, unlike this case, "[i]n Hang, the alleged beneficial shareholder did not have a right to participate in the proceeding unless he conceded the issue of ownership").  While the court recognizes that Hang did contain a due process dimension, the court agrees with plaintiffs that the Hang court did not render its decision based on due process concerns.[3]  Pls.' Reply 12. The Hang court stated that "[w]hether [plaintiff] is the 'true and beneficial shareholder' of [the S corporation] depends on factors that cannot be determined at the corporate level."  Hang, 95 T.C. at 80 ("Although ordinarily shareholder status is determined at the corporate level, as a practical matter, there is no way for a corporation to determine who the beneficial owners of its stock are because the information necessary to make the determination would not be available at the corporate level where the beneficial owner of stock is not a shareholder of record.").  As an additional consideration in support of its decision, the Hang court, without specifically using the phrase "due process," stated:

> Also, if the determination of whether income should be reallocated is made at the corporate level in an S corporation proceeding, the people who are being affected (the alleged beneficial shareholders) cannot be parties until the main issue in the case is decided, namely, who are the beneficial shareholders. . . . Therefore, in order to participate, an alleged beneficial shareholder would have to concede the issue of whether he is a shareholder. For this reason, the determination of whether income should be reallocated from a shareholder of record to someone who is not a shareholder of record is more appropriately determined at the shareholder level.

Hang, 95 T.C. at 81-82.  In the case now before the court, in distinction from the circumstances affecting the shareholders in Hang, plaintiffs were partners in Group for a period of time in 2001 and therefore have a right to participate in any partnership-level proceeding arising out of the partnership's taxable year.  See 26 U.S.C. §§ 6226(c), (d). The first justification in Hang regarding transfers between shareholders appears applicable here to a transfer between two partners.  As with the corporation in Hang,

_____

[3]Furthermore, as pointed out by plaintiffs' attorney, Mr. Cullinan, at oral argument, there was no mention of a due process dimension in Grigoraci v. Comm'r (Grigoraci), T.C.M. 2002-202, a case later decided by the Tax Court.  Oral Argument of Oct. 6, 2008, argument of Mr. Cullinan at 11:35 a.m.- 11:36 a.m.

which was not in a position to determine the ownership of stock by a person or entity not a shareholder or record, the Group partnership is not in a position to go behind the transactions between a partner and its successor of record.  Both are questions of succession to interests that appear to the court to require determination at the individual taxpayer level.

In Grigoraci the Tax Court addressed whether the determination of "the identity of the partners must be made at the partner level or at the partnership level."  Grigoraci, T.C.M. 2002-202 at *1.  The Tax Court "disagree[d] . . . that a determination of whether the corporate partners . . . were shams is a partnership item."  Id. at *6.  "Items that merely affect the tax liability of a specific partner, but not the other partners, are not partnership items."  Id.  The Tax Court stated that "the hallmark of a partnership item is that it affects the distributive shares reported to the other partners."  Id. at *5 (citing Blonien v. Comm'r (Blonien), 118 T.C. 541, 551-552 n.6 (2002); Katz v. Comm'r (Katz I), 116 T.C. 5, 12 (2001)).  In Grigoraci, the Tax Court found that the Commissioner of Internal Revenue's "alteration of the partners . . . had no impact on either partnership's aggregate income, gain, loss, deductions, or credits."  Grigoraci, T.C.M. 2002-202 at *5.  The Grigoraci court stated:

> There is . . . no dispute about the amount of the allocations made to the partners, whether they be corporations or individuals.  In fact, a determination that any of the partners is an individual – rather than a corporation – for Federal tax purposes does not require an adjustment to the allocable shares of the other partners as reported by the partnerships.  Instead, it merely affects the Federal tax liability of the specific partner whose status was changed from a corporation to an individual.  Items that merely affect the tax liability of a specific partner, but not the other partners, are not partnership items.

Id. at *6.  The Tax Court held that "the regulation classifies an item as a partnership item only 'to the extent that a determination of the item can be made' by the partnership."  Id. at *7.  Because the partnerships in Grigoraci could not "determine whether its corporate partners should be respected for Federal tax purposes without consideration of information that is not available at the partnership level," the Tax Court considered the identity of the partners a nonpartnership item.  Id. ("[M]ost of the evidence relevant to determining whether the corporation or the individual is the partner centers on the acts, motives, and intentions of the individuals and not on actions taken by the partnership.").  The Tax Court stated further:

> [T]he determination of whether the corporation before us should be respected for Federal tax purposes has no impact on the partnerships, their books and records, or any other aspect of the partnerships.  The

determination also has no impact upon the amount or character of a
distribution, or percentage of the other partners' interests in the
partnerships.

Id.

The case in the Federal Circuit that appears most closely on point is Prochorenko
v. United States (Prochorenko), 243 F.3d 1359 (Fed. Cir. 2001).  In Prochorenko,
taxpayers claimed deductions for partnership losses on their federal income tax returns.
Id. at 1361.  The IRS disallowed the deductions.  Id.  The IRS issued an FPAA which
several partners challenged in the Tax Court.  Id.  At the same time, several other partners
settled with the IRS.  Id.  This settlement was known as the Craig settlement.  Id.  The
Tax Court upheld the FPAA and the attorney for the taxpayers in the Tax Court
proceeding advised them to seek settlements consistent with the Craig settlement.  Id.
The Prochorenkos did not request such a settlement.  Id.  Instead, the Prochorenkos
appealed to the Second Circuit, which affirmed the Tax Court.  Id.  The Prochorenkos
paid the disputed taxes and then discovered that another previously non-settling partner
had settled with the IRS.  Id.  The terms of this second settlement, the Colitti settlement,
were similar to the terms of the Craig settlement.  Id.  The Prochorenkos then "filed a
request with the IRS for a settlement agreement with terms consistent with the Colitti
settlement, which the IRS denied."  Id.  The Prochorenkos filed suit in the Court of
Federal Claims, which "concluded that the Prochorenkos were not entitled to a reduction
of their partnership tax liability based on the Colitti settlement" because "the Colitti
settlement did not trigger the right to consistent settlement under I.R.C. § 6224(c)(2)
because it was not a settlement 'with respect to partnership items.'"  Id. at 1362 (quoting
Prochorenko v. United States, 45 Fed. Cl. 494, 501 (2000)).  The Prochorenkos appealed
to the Federal Circuit, which held "that a partner's right to a consistent settlement under
I.R.C. § 6224(c)(2) is not itself a 'partnership item.'"  Id. at 1363.  In reaching its
conclusion, the Federal Circuit relied on language from Monti, 223 F.3d at 82-83, a case
addressing whether a partner's right to consistent settlement terms is a partnership item:

> "One partner's right to settlement terms consistent with those granted to
> another partner is not a partnership item, because the question posed
> requires consideration of the relationship between one partner's situation
> and another's and the individual's, rather than the partnership's,
> communications with the IRS.  The facts needed to determine whether
> consistent terms were offered are facts about the partner, not facts about the
> partnership."

Id. at 1363 (quoting Monti, 223 F.3d at 82-83).  The Federal Circuit concluded that the
issue of whether the Prochorenkos "were entitled to a reduction of their partnership tax
liability based on a settlement that the IRS had entered into with another partner" was not

"'more appropriately determined at the partnership level.'" Id. (quoting Treas. Reg. § 301.6231(a)(3)-1(a)). "Whether or not the Prochorenkos were entitled to such a reduction is an issue that is entirely dependant on their own unique factual circumstances, and has no effect on and is not affected by the tax liability of any of the other . . . partners."[4] Id.

Defendant contends that an item not listed in § 301.6231(a)(3)-1 of the Treasury Regulations can still be a partnership item if it "fundamentally affect[s] the partnership as a whole." Def.'s Resp. 15. Defendant cites to Weiner v. Comm'r (Weiner), 389 F.3d 152, 157 (5th Cir. 2004) to support the proposition that the identity of a partnership's partners is "implicitly included in the [r]egulations." Id. Making an argument similar to plaintiffs' argument here, the taxpayers in Weiner argued that "because § 6229(a), containing the FPAA statute of limitations provision, is found in subtitle F, as opposed to subtitle A, it is not a partnership item." Weiner, 389 F.3d at 156. The taxpayers in Weiner also argued that "no treasury regulation specifically refers to the limitations issue as a partnership item." Id. (citing 26 C.F.R. § 301.6231(a)(3)-1(a)). The United States Court of Appeals for the Fifth Circuit disagreed with the Weiner taxpayers. Id. Like other courts, they "reasoned that because the FPAA limitations issue affects the partnership as a whole, it should not be litigated in an individual partner proceeding." Id. at 156-57. The Fifth Circuit also found that the Treasury Regulations "implicitly included the statute of limitations determination within the definition of 'partnership item'" because "the statute of limitations 'might be said to affect the amount, timing, and characterization of income, etc., (partnership items) at the partnership level, if only in a thumbs-up or thumbs-down manner.'" Id. at 157 (quoting Slovacek v. United States (Slovacek), 36 Fed. Cl. 250, 255 (1996)). In Slovacek, the Court of Federal Claims noted:

---

[4]The Federal Circuit determined that "the Prochorenkos are not entitled to a consistent settlement under I.R.C. § 6224(c)(2) because the Colitti settlement was not a settlement agreement 'with respect to partnership items.'" Prochorenko v. United States (Prochorenko), 243 F.3d 1359, 1364 (Fed. Cir. 2001). The Federal Circuit stated that it based its decision on the plain language of § 6224(c)(2). Id. Pursuant to § 6224(c)(2):

If the Secretary or the Attorney General (or his delegate) enters into a settlement agreement with any partner with respect to partnership items for any partnership taxable year, the Secretary or the Attorney General (or his delegate) shall offer to any other partner who so requests settlement terms for the partnership taxable year which are consistent with those contained in such settlement agreement.

26 U.S.C. § 6224(c)(2) (2006). Because the Colitti settlement arose from "'facts peculiar to a single partner,'" Prochorenko, 243 F.3d at 1365 (quoting Monti v. United States (Monti), 223 F.3d 76, 82 (2d Cir. 2000)), the Federal Circuit held that it was not a settlement "with respect to partnership items," id. (quoting 26 U.S.C. § 6224(c)(2)).

> TEFRA distinguishes between tax determinations and items that affect the
> entire partnership ("partnership items") and those that depend, instead, upon
> the unique circumstances of a partner, or some other nonpartnership-wide
> variable ("nonpartnership items"). For example, the question of whether a
> partner must pay tax on a sum she receives from the partnership upon her
> termination is a nonpartnership item.

Slovacek, 36 Fed. Cl. at 254. The Slovacek court concluded that "whether a statute of
limitations applicable to the partnership as a whole was waived . . . is an issue to be
decided at the partnership level, since it affects all partners alike." Id. at 255. Notably,
the Weiner court relies on a persuasive authority, this court, for its conclusion that a
statute of limitations may be viewed as a partnership item. Weiner, 389 F.3d at 157. This
court, however, clearly distinguished its holding that the statute of limitations is to be
treated as a partnership item from the treatment of nonpartnership items, including,
specifically, the subject of defendant's interest here: "Whether a partner must pay tax on
a sum she receives from the partnership." Slovacek, 36 Fed. Cl. at 254.

The United States Court of Appeals for the Second Circuit addressed the issue of
partnership versus nonpartnership items in the Monti case, 223 F.3d at 77, relied on by
the Federal Circuit in Prochorenko, 243 F.3d at 1365. Monti involved the question of
"whether a partner's claim for tax treatment consistent with that accorded other partners
in a settlement with the [IRS] is a claim for a refund attributable to a 'nonpartnership
item' . . . or is a claim for a refund attributable to a 'partnership item.'" Monti, 233 F.3d
at 77. The Second Circuit held that the claim for consistent settlement was attributable to
a nonpartnership item. Id. at 82 ("Since the question of whether a particular partner has
properly been offered and is entitled to consistent terms depends on facts specific to that
partner and his or her dealings with the IRS, there is no apparent reason why
determination of the item is 'more appropriate[]' at the partnership level." (alterations in
original)). The court noted that "the right of individual partners to request consistent
settlement terms" is not located in the list of items more appropriately determined at the
partnership level found at § 301.6231(a)(3)-1 of the Treasury Regulations and that the
right is located in subtitle F as opposed to subtitle A of the I.R.C. Id.

The Weiner court distinguished the case before it from Monti by examining what it
characterized as the "practical realities" of the right at issue. Weiner, 389 F.3d at 157
(citing Monti, 223 F.3d at 82). The Weiner court noted the conclusion of Monti that
"'[t]he facts needed to determine whether consistent terms were offered are facts about
the partner, not facts about the partnership,'" Weiner, 389 F.3d at 157 (quoting Monti,
233 F.3d at 83) (emphasis omitted), but distinguished Monti from the case before it:
"[T]he FPAA statute of limitations determination challenged in [Weiner, on the other
hand,] deals with facts specific to the partnership," id. The court explained: "The
timeliness of an FPAA affects the IRS's ability to make adjustments to partnership items,

which in turn affects all partners alike." Id. at 158.  The Weiner court did not have to "consider the relationship between one partner and another or an individual's communications with the IRS." Id. at 157.

According to an argument of plaintiffs (made without citations to the specific cases themselves), the cases discussed in Weiner, 389 F.3d at 156-57, reflect an "obvious reluctance to rely on a statute of limitations to absolutely bar defendant from assessing any tax." Pls.' Reply 5 n.4.  In the case currently before the court, on the other hand, plaintiffs argue, "defendant may make these adjustments at the partner[]level." Id. "Plaintiffs agree that Weiner (and other courts) have held that the statute of limitations is a partnership item even though the limitations issue does not appear in defendant's regulation." Pls.' Reply 4-5.  Plaintiffs argue, however, that other courts "have refused to expand this limited common law exception to items other than the statute of limitations. Id. at 5 (emphasis omitted) (citing Prochorenko, 243 F.3d at 1363 (concluding "that a partner's right to a consistent settlement under I.R.C. § 6224(c)(2) is not itself a 'partnership item'"); Monti, 223 F.3d at 82-84 (finding that because a partner's right "to request consistent settlement terms, as provided for in I.R.C. § 6224(c)(2)" is not listed in § 301.6231(a)(3)-1 of the treasury regulations and because "the question of whether a particular partner has properly been offered and is entitled to consistent terms depends on facts specific to that partner and his or her dealings with the IRS," a deprivation of a partner's right to consistent terms is a nonpartnership item)).

Defendant argues that "the regulatory scheme presupposes that the identity of the partners is a partnership item, as the partnership must make legal and factual determinations concerning the identity and percentage interests of the partners in order to properly allocate items of income among the partners and determine items related to distributions." Def.'s Resp. 14 (citing Treas. Reg. § 301.6231(a)(3)-1(b)).  According to defendant, "Monti does not broadly hold that the failure of the regulation to mention a particular item requires the finding that the item is not a partnership item." Def.'s Resp. 15.  Instead, defendant argues that the identity of a partner is implicitly included.  Id. (citing Weiner, 389 F.3d at 157-58).  Defendant argues that the "[c]ourt has to be able to determine the identity of . . . Group's partners in order to determine the proper allocation of taxable income among those partners." Def.'s Resp. 15 (citing Blonien, 118 T.C. 541 (2002)).  Furthermore, defendant points out that "no suggestion has been made that the partnership does not have full access to all of the facts surrounding the CRUTS in this tax scheme." Def.'s Resp. 18.  Although defendant cites to Blonien to support its contention that the identity of a partner is a partnership item, Def.'s Resp. 15, the court does not agree that the holding in Blonien requires the result articulated by defendant.  In Blonien, the Tax Court stated:

> In order to determine each partner's distributive share of partnership items,
> it is necessary to know who are the partners and what share of partnership

> items each partner is entitled to and required to take into account.
> Therefore, to the extent that the taxpayer's claim that he was not a partner
> would affect the distributive shares of the other partners, the taxpayer's
> claim is a partnership item.

Blonien, 118 T.C. at 551.  Plaintiffs argue the negative inference of Blonien, that is, that
Blonien reaffirmed "that when, as is the case here, the question of whether the taxpayer is
a partner would not affect the distributive shares of the other partners, it is not a
partnership item."  Pls.' Reply 9.  The "reaffirmation" claimed by plaintiffs is based on
the Tax Court's acknowledgment in a footnote:  "We recognize that the determination of
who is a partner can be a partner-level item where resolution of the issue would not affect
the allocation of partnership items to the other partners."  Blonien, 118 T.C. at 551 n.6.
The Tax Court's statement ("we recognize that the determination of who is a partner can
be a partner-level item") (emphasis added) appears to the court to be phrased more
carefully than plaintiffs suggest, but the court nevertheless agrees that the cases discussed
generally support plaintiffs' argument.

Furthermore, according to plaintiffs, the issue in this case is unlike the issue in
Weiner, where the regulation "did not speak to whether a statute of limitations issue [is] a
partnership item[, because] . . . the regulation [at issue in the case now before the court]
clearly states that the circumstances surrounding the transfer of a partnership interest
(absent a section 754 election) is not a partnership item."  Pls.' Reply 5.  This again is an
affirmative argument based on a negative inference from the text of Treasury Regulation
§ 301.6231(a)(3)-1(c)(3) and, more specifically, on the regulations interpreting that
provision.  Plaintiff's argument appears to the court entirely consistent with and
supported by the Latin interpretive doctrines – Expressio unius est exclusio alterius –
"The expression of one thing is the exclusion of another," Black's Law Dictionary 1717
(8th ed. 2004); see also 2A Sutherland Statutory Construction § 47:23 (7th ed. 2007), and
– Expressum facit cessare tacitum – "Something expressed nullifies what is unexpressed,"
Black's Law Dictionary at 1717.  Plaintiffs argue that "contrary to defendant's
suggestion, . . . the regulations do not presuppose that the transfer of a partnership interest
is a partnership item."  Pls.' Reply at 4.  According to the relevant Treasury Regulations:

> To the extent that a determination of an item relating to a distribution can be
> made from these and similar determinations that the partnership is required
> to make, therefore, that item is a partnership item.  To the extent that that
> determination requires other information, however, that item is not a
> partnership item.  Such other information would include those factors used
> in determining the partner's basis for the partnership interest that are not
> themselves partnership items, such as the amount that [a] partner paid to

acquire [a] partnership interest from a transferor partner if that transfer was not covered by an election under section 754.[5]

Treas. Reg. § 301.6231(a)(3)-1(c)(3) (footnote added) (emphasis added).  Therefore, as plaintiffs argue, "absent a section 754 election (which is not involved here), the transfer of a partnership interest is not a partnership item."  Pls.' Reply 4; see Pls.' Mot. 13-14.  The Treasury Regulations provide that "the amount that [a] partner paid to acquire [a] partnership interest from a transferor partner [is not a partnership item] if that transfer was not covered by an election under section 754."  Treas. Reg. § 301.6231(a)(3)-1(c)(3).  If a partnership files a § 754 election, the partnership must adjust its basis.  Id.  The transfer of partnership interest therefore becomes a partnership item because the adjustment of the partnership's basis depends on the price paid for the partnership interest and thus "the price paid holds a tax consequence [for] the partnership."  Pls.' Mot. 14.  That circumstance is not present here.

Defendant looks for support to the ruling of the United States Court of Appeals for the Tenth Circuit in Katz v. Comm'r (Katz II), 335 F.3d 1121 (10th Cir. 2003), rev'g Katz v. Comm'r (Katz I), 116 T.C. 5 (2001), that, according to defendant, "held that the determination of whether a non-record owner was a partner is a partnership item," Def.'s Resp. 19.  According to plaintiffs, however, "[d]efendant's reliance on [Katz II] . . . is . . . misplaced."  Pls.' Reply 11.  Plaintiffs argue:

> [I]n Katz there was no dispute among the parties that Mr. Katz was a partner in the partnerships and that the bankruptcy estate became the partner in the partnerships.  Instead, the dispute in Katz related to the proper allocation among the partners of the losses that had been incurred by the partnership.  By contrast, in this case, the question whether a partnership

---

[5]Section 754 is titled "Manner of electing optional adjustment to basis of partnership property."  26 U.S.C. § 754 (2006).  Under § 754:

> If a partnership files an election, in accordance with regulations prescribed by the Secretary, the basis of partnership property shall be adjusted, in the case of a distribution of property, in the manner provided in section 734 and, in the case of a transfer of a partnership interest, in the manner provided in section 743.  Such an election shall apply with respect to all distributions of property by the partnership and to all transfers of interests in the partnership during the taxable year with respect to which such election was filed and all subsequent taxable years.  Such election may be revoked by the partnership, subject to such limitations as may be provided by regulations prescribed by the Secretary.

26 U.S.C. § 754.

interest was validly transferred has no effect on the allocation of los[s]es among the other partners.

Pls.' Reply 11.  Katz I and Katz II "involve[d] the intersection of the laws governing income taxes and bankruptcy."  Katz II, 335 F.3d at 1122.  The Tenth Circuit summarized the issue as follows:

> Mr. Aron Katz (Taxpayer) was a partner in a number of partnerships that suffered substantial losses during a year in which he filed for bankruptcy. On his income tax return for that year, Taxpayer allocated between himself and his bankruptcy estate the losses attributable to his interests in the various partnerships.  The question before us is whether the Commissioner of Internal Revenue can challenge that allocation in a proceeding involving only the Taxpayer, or whether the Commissioner must first bring a partnership-level proceeding.

Katz II, 335 F.3d at 1122.  Some of the partnerships in which the taxpayer in Katz I and Katz II was a partner filed tax returns that included two separate K-1 forms relating to the taxpayer.  Id. at 1123.  One K-1 form concerned the taxpayer in his individual capacity and the other concerned his bankruptcy estate.  Id.  For the partnerships that did not file two separate K-1 forms, "Taxpayer filed Notices of Inconsistent Treatment in which he allocated the tax items between himself as an individual and his bankruptcy estate."  Id. In Katz I, the Tax Court noted that "from the perspective of the partnership in its determination of each partner's distributive share of partnership tax items, a partner in bankruptcy and his bankruptcy estate are properly considered as one and the same."  Katz I, 116 T.C. at 13.  The Katz I court held that the determination of the identity of the true and actual partner was more appropriately made at the partner level and therefore was a nonpartnership item.  Id. at 13-14.  The Katz II court reversed, holding that the allocation of losses between the taxpayer and his bankruptcy estate was a partnership item.  Katz II, 335 F.3d at 1122.

As plaintiffs correctly note, Katz II did not involve "the determination of a non-record owner versus a record owner."  Pls.' Reply 11.  Instead, Katz II involved a determination that a partnership-level proceeding was required to challenge a partner's allocation of losses between himself and his bankruptcy estate.  Katz II, 335 F.3d at 1122-30.  This holding was reached despite a Bankruptcy Regulation, Treas. Reg. § 301.6231(c)-7T(a), that converts certain partnership items into nonpartnership items, Katz II, 335 F.3d at 1126.  The bankruptcy regulations state:

> Bankruptcy.  The treatment of items as partnership items with respect to a partner named as a debtor in a bankruptcy proceeding will interfere with the effective and efficient enforcement of the internal revenue laws.

Accordingly, partnership items of such a partner arising in any partnership taxable year ending on or before the last day of the latest taxable year of the partner with respect to which the United States could file a claim for income tax due in the bankruptcy proceeding shall be treated as nonpartnership items as of the date the petition naming the partner as debtor is filed in bankruptcy.

Treas. Reg. § 301.6231(c)-7T(a) (2000). The Tenth Circuit did not read the word "partner" in section 301.6231(c)-7T(a) to include the bankruptcy estate. Katz II, 335 F.3d at 1127 ("[T]he debtor and the bankruptcy estate are distinct entities in an individual's bankruptcy proceeding."). The Tenth Circuit found "the rule regarding allocation of losses between the debtor-partner and the bankruptcy estate" to be a "red herring" and declared that "[w]hat is important is that the debtor was a partner during part of the partnership year, so the partnership returns must set forth the debtor's share of income, loss, etc." Id. at 1128. The court pointed out that "the Commissioner has not challenged the proposition that the partnership return must contain an assignment of income and loss to a partner who has declared bankruptcy, whether the figures be $1 million or $0, and that these figures are partnership items unless excluded by a regulation." Id. at 1128-29.

The case before the court does not involve a partner's allocation between himself and a bankruptcy estate. Defendant instead seeks to "challenge the reality of the CRUTs." Pls.' Reply 11. The court agrees with plaintiffs that Katz II is distinguishable because "[t]he 'reality' of the bankruptcy estate was not at issue." Pls.' Reply 11.

Plaintiffs argue that the Sands' transfer of partnership interests is "more appropriately determined at the partner level . . . because only the transferor and transferee partner possess the information necessary to resolve the question of ownership." Pls.' Mot. 12. According to plaintiffs, "the transfer of one partner's interest to a non-partner obviously does not affect the partnership as a whole, or even any other partner." Pls.' Reply 5. Defendant argues that "the identity of . . . Group's partners is critical to the partnership's allocation of loss and gain." Def.'s Resp. 19. Where "[t]here is . . . no dispute about the amount of the allocations made to the partners," Grigoraci, T.C.M. 2002-202 at *6, as is the case before the court, the determination of the identity of a partner is more appropriately made at the partner level, id. "An item with 'no effect on either the partnership's aggregate or each partner's share of income, gain, loss, deductions, or credits of the partnership' is not a partnership item." Russian Recovery Fund, 81 Fed. Cl. at 800 (quoting Grigoraci, T.C.M. 2002-202 at *6). The court agrees with plaintiffs: "The transfer of a partner's interest has no consequence for the partnership or for any other partner." Pls.' Reply 7. The determination of whether the transfers of the Sands' partnership interests in Group to the CRUTs were shams is not a partnership item. Because the IRS may adjust only partnership items in a partnership-level proceeding, 26 U.S.C. § 6221, the FPAA is invalid to the extent that it purported to

adjust a nonpartnership item, namely the determination that the Sands' transfer of their partnership interests in Group to the CRUTs were shams.

In the alternative, defendant argues that "[i]f the identity of . . . Group's partners is not a partnership item, it is an affected item to be determined in a subsequent partner level proceeding." Def.'s Resp. 20.  An affected item is defined as "any item to the extent such item is affected by a partnership item."  26 U.S.C. § 6231(a)(5).  Affected items fall into two categories, computational affected items and affected items requiring a factual determination at the partner level.  Olson v. United States (Olson), 172 F.3d 1311, 1317 (Fed. Cir. 1999).  Computational affected items involve "a 'computational adjustment,' that is, a 'change in the tax liability of a partner which properly reflects the treatment under [TEFRA] of a partnership item.'"  Id. (quoting 26 U.S.C. § 6231(a)(6)) (alteration in original).  Computational affected items "do not require notices of deficiency before making an assessment against the taxpayer."  Id.  Affected items requiring a factual determination at the partner level require a notice of deficiency.  26 U.S.C. § 6230(a)(2)(A) ("Subchapter B shall apply to any deficiency attributable to – (i) affected items which require partner level determinations.");  Bush v. United States (Bush), 78 Fed. Cl. 76, 83 (2007) ("Deficiency proceedings for non-partnership items are addressed in subchapter B.").  "[A]ffected items generally cannot be tried as part of a partner's tax case prior to the completion of the partnership-level proceeding."  Keener v. United States (Keener), 76 Fed. Cl. 455, 460 (2007) (citing GAF Corp. & Subsidiaries v. Comm'r, 114 T.C. 519, 528 (2000)).

According to plaintiffs, however, "Nothing in the statute gives the [c]ourt jurisdiction here to determine whether something that is not a partnership item is instead an affected item."  Pls.' Reply 15.  Plaintiffs also argue:

> Whether the transfers were valid and whether the CRUTs were true CRUTs are determinations that will be made, if at all, when and if defendant issues statutory notices of deficiency or affected items notices of deficiency. Defendant has not issued either document, and these potentially to-be-issued documents are certainly not at issue here.  Defendant is thus improperly asking this Court to render an impermissible "advisory opinion."

Id. (citing Preiser v. Newkirk, 422 U.S. 395, 401 (1975)).

The scope of judicial review for actions brought under 26 U.S.C. § 6226 does not specifically include jurisdiction to determine whether a nonpartnership item is an affected item; however, certain language in the statute indicates that such jurisdiction is contemplated.  See 26 U.S.C. § 6226(f).  Section 6226(f) states:

A court with which a petition is filed in accordance with this section shall
have <u>jurisdiction to determine all partnership items</u> of the partnership for
the partnership taxable year to which the notice of final partnership
administrative adjustment relates, the proper allocation of such items among
the partners, <u>and the applicability of any penalty, addition to tax, or
additional amount which relates to an adjustment to a partnership item</u>.

26 U.S.C. § 6226(f) (emphasis added).  In addition to the "jurisdiction to determine all
partnership items," the Court of Federal Claims has "jurisdiction to determine . . . the
applicability of any . . . additional amount which relates to an adjustment to a partnership
item."  26 U.S.C. § 6226(f).  This "additional amount . . . relat[ing] to an adjustment to a
partnership item," 26 U.S.C. § 6226(f), appears to include items "affected by a
partnership item," 26 U.S.C. § 6231(a)(5).  The Federal Circuit and the Court of Federal
Claims have both addressed affected items.  <u>See</u> <u>Olson</u>, 172 F.3d at 1317; <u>Bush</u>, 78 Fed.
Cl. at 83.

The court finds, however, that the identity of Group's partners is not an affected
item.[6]  Examples of affected items are "penalties assessed against a partner based on the

---

[6]Defendant argues that "it is clear from <u>Grigoraci v. Commissioner</u>, T.C. Memo. 2002-
202, that the determination, if not a partnership item, is an affected item."  United States'
Response to Plaintiffs' Motion to Substitute Parties and to Dismiss Certain Causes of Action For
Lack of Jurisdiction and Supporting Brief (defendant's Response or Def.'s Resp.) 21.  In
<u>Grigoraci</u>, the Tax Court stated:

Pursuant to section 6230(a)(2), the Commissioner will issue an affected items
notice of deficiency to the taxpayer when a deficiency is attributable to an affected
item that requires a "partner level determination[."]  An affected item is defined as
any item "affected by a partnership item."  Sec. 6231(a)(5).  The Grigoracis'
liability for self-employment tax on the distributive share from [the partnership]
under section 1402(a) requires a determination that Mr. Grigoraci was the true and
actual partner in [the partnership] – a partner level determination.  Accordingly,
any deficiency attributable to self-employment tax on the distributive share from
[the partnership] requires respondent to issue an affected items notice of
deficiency.  The deficiency determined by respondent is only partially attributable
to self-employment tax on the distributive share from [the partnership].

<u>Grigoraci</u>, T.C.M. 2002-202 at * 8 (footnote omitted).  Defendant misinterprets the Tax Court's
reasoning in <u>Grigoraci</u>.  The above-quoted language does not pertain to a determination of
whether liability for self-employment tax on the distributive share was an affected item; it
pertains to whether a notice of deficiency was required.  <u>See</u> <u>id.</u>  The fact that "liability for self-
employment tax on the distributive share from [the partnership] . . . requires a [partner level]
determination that Mr. Grigoraci was the true and actual partner," led the court to find that an

partner's tax treatment of partnership items on his individual return," <u>Keener</u>, 76 Fed. Cl. at 458 n.4, and "the amount of a medical expense deduction . . . because it depends on the partner's adjusted gross income, which in turn depends on the partner's share of partnership income or loss," <u>Bush</u>, 78 Fed. Cl. at 81.  An additional example of an affected item is "'the determination of a partner's amount at-risk [in a partnership].'" <u>Russian Recovery Fund</u>, 81 Fed. Cl. at 797 (quoting <u>Bush</u>, 78 Fed. Cl. at 82).  The court agrees with plaintiffs that the identity of Group's partners is not an affected item because "no partnership item, such as the correct amount of gain or loss that Group recognized on the sale of the Constellation stock, affects either the reality of the CRUTs or the transfers of the limited partnership interests in Group to the CRUTs."  Pls.' Reply 15.  Even if the identity of Group's partners were an affected item rather than a nonpartnership item, the determination of whether the transfers of partnership interests to the CRUTs should be disregarded as economic shams is a determination to be made at a partner level proceeding and not in the proceeding currently before the court.[7]

B.      Whether the Sands Should Be Dismissed

Plaintiffs argue that, even if the FPAA adjustments to the basis of the Constellation stock were correct, "the gain on the sale of that stock would flow to the CRUTs who were then partners in Group and not to any members of the Sands family." Pls.' Mot. 16.  Therefore, because "the Sands have no interest in the outcome, . . . they respectfully request to be dismissed as parties."  <u>Id.</u>  Plaintiffs also "request that the [c]ourt also enter an order substituting the Robert Sands Charitable Remainder Unitrust - 2001 as the filing partner in this case."  <u>Id.</u> at 17.

Defendant argues that "26 U.S.C. § 6226(c) makes all partners to a partnership during the taxable year at issue automatically parties to a suit challenging an FPAA for

_____

affected items notice of deficiency was required for deficiencies "attributable to self-employment tax on the distributive share from [the partnership]."  <u>Id.</u>  The Tax Court recognized, however, that the deficiency was "only partially attributable to self employment tax on the distributive share from [the partnership]."  <u>Id.</u>  The Tax Court found that self-employment tax owed on income that was not earned by the partnership was not an affected item.  <u>Id.</u>  Only the self-employment tax owed on income earned by the partnership, in other words, affected by the partnership, was an affected item.  <u>Id.</u>

[7]At the oral argument on October 6, 2008, defendant presented the court with a new authority, Treas. Reg. § 1.701-2, that was not cited in defendant's Response.  <u>See</u> Def.'s Resp. <u>passim</u>.  Section 1.701-2 of the Treasury Regulations is titled "Anti-abuse rule."  Treas. Reg. § 1.701-2.  Due to the jurisdictional nature of the dispute, the court considers this new authority. The court does not, however, find § 1.701-2 relevant to the individual partner transactions that are the subject of plaintiffs' Motion.

that year." Def.'s Resp. 23.  At the very least, defendant argues, Robert Sands was a partner in Group prior to September 21, 2001.  Id.  Section 6226(c) of the I.R.C. provides:

> If an action is brought under subsection (a) or (b) with respect to a partnership for any partnership taxable year –
>
> (1) each person who was a partner in such partnership at any time during such year shall be treated as a party to such action, and
>
> (2) the court having jurisdiction of such action shall allow each such person to participate in the action.

26 U.S.C. § 6226(c).  Plaintiffs filed their complaint "pursuant to 26 U.S.C. § 6226." Group Amended Compl. 1.  Plaintiffs argue that a partner may decline to exercise its right under § 6226(c) to participate in a partnership-level proceeding.  Pls.' Reply 18.

According to plaintiffs, "even if defendant's adjustments to the basis of the Constellation . . . stock sold by Group were correct, the gain on the sale of that stock would flow to the CRUTs who were then partners in Group and not to any members of the Sands family."  Pls.' Mot. 16.  Plaintiffs cite to § 6226(d) of the I.R.C. to support their position that because the Sands have no interest in the outcome of the proceeding they should be dismissed as parties.  Id. at 16-17.  Section 6226(d) states the considerations in determining whether parties have an "interest in [the] outcome":

> Partner must have interest in outcome. --
>
> (1) In order to be party to action. – Subsection (c) shall not apply to a partner after the day on which –
>
>> (A) the partnership items of such partner for the partnership taxable year became nonpartnership items by reason of 1 or more of the events described in subsection (b) of section 6231, or
>>
>> (B) the period within which any tax attributable to such partnership items may be assessed against that partner expired.
>>
>> Notwithstanding subparagraph (B), any person treated under subsection (c) as a party to an action shall be permitted to participate in such action (or file a readjustment petition under subsection (b) or paragraph (2) of this subsection) solely for the purpose of asserting

that the period of limitations for assessing any tax attributable to partnership items has expired with respect to such person, and the court having jurisdiction of such action shall have jurisdiction to consider such assertion.

(2) To file petition. – No partner may file a readjustment petition under subsection (b) unless such partner would (after the application of paragraph (1) of this subsection) be treated as a party to the proceeding.

26 U.S.C. § 6226(d).

Defendant, on the other hand, contends that the Sands "have an interest in the outcome of this proceeding." Def.'s Resp. 23. According to defendant, if the IRS adjustment is correct, the substantial gain recognized by Group would "directly impact[] the Sands Heirs' basis in their [Group] partnership interest at the time the short positions were closed when they were undeniably partners." Id. at 23-24. Therefore, defendant argues, the Sands "have a substantial interest in the outcome of the case under 26 U.S.C. §[]6226(d), regardless of whether the identity of [Group's] partners is a 'partnership item' or an 'affected item.'" Id. at 24. According to defendant, "To 'peel' this narrow part of the . . . transaction away from partnership level proceeding and to push it into a partner-level proceeding makes no sense from an administrative point of view. In fact, to do so would result in a tremendous waste of resources." Id. at 20. "Furthermore, since Robert [Sands] and Richard [Sands] were the CRUTs' trustees, and the Sands Heirs were the successors to the CRUTS, the Sands Heirs continue to have an interest even if the [c]ourt believes that the transitory CRUTS were other than the shams the IRS asserts them to be." Id. at 12. Whether the party structure of a proceeding "makes no sense from an administrative point of view," id. at 20, is not, in the court's view, determinative of, or even – in this case – relevant to, plaintiffs' entitlement to withdraw from the case.

It may well be that the Sands continue to have some interest in the Group partnership proceeding; however, the court is aware of no rule or regulation that requires the Sands to be a party to this proceeding against their will, see RCFC App. F; 26 U.S.C. § 6226(c), and defendant has suggested no such authority. The court therefore grants plaintiffs' Motion to the extent it seeks the dismissal of the Sands as parties to these proceedings. The court will substitute the Robert Sands Charitable Remainder Unitrust – 2001 as the filing partner in this case.

C.      Whether the Deposit Should Be Returned

"A readjustment petition under this section may be filed in . . . the Court of Federal Claims only if the partner filing the petition deposits with the Secretary, on or before the day the petition is filed, the amount by which the tax liability of the partner would be

increased if the treatment of partnership items on the partner's return were made
consistent with the treatment of partnership items on the partnership return, as adjusted by
the [FPAA]." 26 U.S.C. § 6226(e).

Plaintiffs argue: "Since defendant may not treat Mr. Sands as though he were a
partner in Group when the stock was sold, his tax liability would not increase even if the
remaining portions of the FPAA were correct, and the [c]ourt should order defendant to
return Mr. Sands' deposit." Pls.' Mot. 17. Defendant argues that "the 'partner' filing the
Complaint, and thus preserving the rights of all of the partnerships' other partners, was
Robert [Sands, and] [t]he Code does not provide for that deposit to be returned simply
because Robert [Sands] has now decided that he wants to redesignate a different 'named'
partner to carry on the suit." Def.'s Resp. 13. The court agrees.[8] The I.R.C. does not
provide for the return of a plaintiff's deposit in these circumstances. The I.R.C. provides
for a refund only if the entire action is dismissed "by reason of the priority of a Tax Court
action." See 26 U.S.C. 6226(e)(2) ("Refund on request. – If an action brought in . . . the
Court of Federal Claims is dismissed by reason of the priority of a Tax Court action under
paragraph (2) of subsection (b), the Secretary shall, at the request of the partner who
made the deposit, refund the amount deposited under paragraph (1).")." The court
therefore denies plaintiffs' request to return the deposit made by Robert Sands pursuant to
26 U.S.C. § 6226(e).

IV.    Conclusion

For the foregoing reasons, plaintiffs' Motion is GRANTED in part and DENIED
in part. Because the court finds the identity of a partner to be a nonpartnership item that
cannot be contested in an FPAA, the court GRANTS plaintiffs' Motion insofar as it

---

[8]Plaintiffs justify the original deposit by Robert Sands as follows:

Since the FPAA determined that the Sands' transfers to the CRUTs were shams
and that the CRUTs were not partners in Group, there was a serious question
about whether the CRUTs could file suit and comply with [the § 6226(e)]
requirement. Thus, out of an abundance of caution, Robert Sands elected to
deposit the amount by which his tax would increase if the FPAA were correct to
ensure that this Court would have jurisdiction. Plaintiffs have no doubt that, if
one of the CRUTs had filed suit on behalf of Group making no jurisdictional
deposit (because CRUTs do not pay tax), defendant would have argued non-
compliance with 26 U.S.C. § 6226(c) on the theory that the CRUTs were not
partners eligible to bring suit and for failure to make a sufficient deposit.

Plaintiffs' Reply to United States' Response to Plaintiffs' Motion to Substitute Certain Parties
and to Dismiss Certain Causes of Action For Lack of Jurisdiction (plaintiffs' Reply or Pls.'
Reply) 18-19.

requests the court to invalidate the portion of the FPAA issued to Group that determined that the transfers of partnership interests in Group were shams.  Because the court finds that the IRS lacked jurisdiction to determine the identity of Group's partners in an FPAA, the court GRANTS plaintiffs' Motion insofar as it seeks to dismiss Robert Sands, Richard Sands, Marilyn Sands, and CWC from these proceedings.  The court also GRANTS plaintiffs' Motion insofar as it seeks to substitute the Robert Sands Charitable Remainder Unitrust – 2001 as the partner filing suit on behalf of Group.  The court DENIES plaintiffs' request that the deposit made by Robert Sands be returned.[9]

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Judge

---

[9]In an Order issued on February 6, 2007, the court consolidated the above-captioned cases for pre-trial purposes.  Order of Feb. 6, 2007.  The Order stated:  "The lead case for purposes of pre-trial consolidation shall be Alpha I, L.P. v. United States, no. 06-407 T After the filing of their separate motions to consolidate, the parties shall make all filings under the caption appearing on the first, second and third pages of this Order."  Id.  Among the consolidated cases is R, R, M & C Group, L.P., by and through Robert Sands, a Notice Partner v. United States, case no. 06-410 T.  See id.  Plaintiffs filed Plaintiffs' Motion to Dismiss Certain Parties and Causes of Action For Lack of Jurisdiction as docket no. 15 in case no. 06-410 T on March 27, 2007, after the date of consolidation.  Plaintiffs' Motion, addressed in this Opinion, is identical to the motion filed as docket no. 15. in case. no. 06-410 T.  Docket no. 15 in case no. 06-410 T is therefore TERMINATED.