# In the United States Court of Federal Claims

No. 06-407 T

(into which have been consolidated Nos. 06-408T, 06-409T, 06-410T, 06-411T, 06-810T, 06-811T)

(E-Filed:  November 25, 2008)

| | |
|---|---|
| ALPHA I, L.P., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER,<br><br>    Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>    Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Motion for Partial Summary Judgment; RCFC 56; 26 U.S.C. § 6662

06-407 T

| | |
|---|---|
| BETA PARTNERS, L.L.C., BY AND THROUGH ALPHA I, L.P., A NOTICE PARTNER,<br><br>    Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>    Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

06-408 T

| | |
|---|---|
| R, R, M & C PARTNERS, L.L.C., BY AND THROUGH R, R, M & C GROUP, L.P., A NOTICE PARTNER,<br><br>    Plaintiff,<br><br>v. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

06-409 T

THE UNITED STATES,                                )
                                                  )
              Defendant.                          )
                                                  )
_____          )
                                                  )
R, R, M & C GROUP, L.P., BY AND THROUGH           )
ROBERT SANDS CHARITABLE REMAINDER                 )
UNITRUST – 2001, A NOTICE PARTNER,                )
                                                  )          06-410 T
              Plaintiff,                          )
                                                  )
v.                                                )
                                                  )
THE UNITED STATES,                                )
                                                  )
              Defendant.                          )
                                                  )
_____          )
                                                  )
CWC PARTNERSHIP I, BY AND THROUGH                 )
TRUST FBO ZACHARY STERN U/A FIFTH G,              )
ANDREW STERN AND MARILYN SANDS,                   )
TRUSTEES, A NOTICE PARTNER,                       )
                                                  )          06-411 T
              Plaintiff,                          )
                                                  )
v.                                                )
                                                  )
THE UNITED STATES,                                )
                                                  )
              Defendant.                          )
                                                  )
_____          )
                                                  )
MICKEY MANAGEMENT, L.P., BY AND                   )
THROUGH MARILYN SANDS, A NOTICE                   )
PARTNER,                                          )
                                                  )          06-810 T
              Plaintiff,                          )
                                                  )

v.                                                    )
                                                      )
THE UNITED STATES,                                    )
                                                      )
            Defendant.                                )
                                                      )
_____                       )
                                                      )
M, L, R & R, BY AND THROUGH RICHARD E.                )
SANDS, TAX MATTERS PARTNER,                           )
                                                      )
            Plaintiff,                                )          06-811 T
                                                      )
v.                                                    )
                                                      )
THE UNITED STATES,                                    )
                                                      )
            Defendant.                                )
_____                       )
                                                      )

Lewis S. Wiener, Washington, DC, for plaintiff.  N. Jerold Cohen, Thomas A. Cullinan,
Joseph M. DePew, and Julie P. Bowling, Atlanta, GA, and Kent L. Jones, Washington,
DC, of counsel.

Thomas M. Herrin, with whom were Louise Hytken, Chief, Southwestern Civil Trial
Section, and Michelle C. Johns, Trial Attorney, Tax Division, United States Department
of Justice, Dallas, TX, and John A. DiCicco, Deputy Assistant Attorney General, and
Steven I. Frahm, Acting Chief, Court of Federal Claims Section, United States
Department of Justice, Washington, DC, for defendant.

OPINION

HEWITT, Judge

I.    Background

        Plaintiffs challenge "the readjustment of partnership items that were adjusted by
the Internal Revenue Service [(IRS)] in a Notice of Final Partnership Administrative
Adjustment [(FPAA)] issued to [plaintiffs] with respect to [plaintiffs'] Forms 1065 U.S.
Return of Partnership Income for the tax years ended December 31, 2001 [(tax year
2001)] and December 31, 2002 [(tax year 2002)]."  First Amended Complaint [of Alpha I,

L.P.] for Readjustment of Partnership Items Under Code Section 6226 (Alpha Amended Complaint or Alpha Amended Compl.) 1.  The IRS issued FPAAs to plaintiffs in December of 2005.  Id. at 6.  The FPAAs increased plaintiffs' tax liabilities for tax years 2001 and 2002.  Id. at 6-7.  Pursuant to § 6662 of the Internal Revenue Code (I.R.C.), the FPAAs also asserted a forty percent accuracy-related penalty against plaintiffs or, alternatively, a twenty percent accuracy-related penalty.  Id.; see 26 U.S.C. § 6662 (2006).

The original complaints in these consolidated cases were brought to challenge the adjustments of partnership items on the grounds, as to tax year 2001, that there were no partnership liabilities under I.R.C. § 752, Complaint [of Alpha I, L.P.] for Readjustment of Partnership Items Under Code Section 6226 (Compl.) ¶ 40, or under Treasury Regulation § 1.752-6, id. ¶ 41, that defendant had improperly determined the amount considered at risk in the relevant transactions under I.R.C. § 465(b)(1), id. ¶ 42, that defendant had improperly disregarded the existence of Alpha I, id. at ¶ 43, and that defendant had improperly asserted accuracy-related penalties under I.R.C. § 6662, id. ¶ 48, and as to tax year 2002, that defendant erroneously reduced the basis claimed by Alpha I in its stock in Yahoo and Corning, id. ¶ 45, that defendant had improperly determined the amount considered at risk in the relevant transactions under I.R.C. § 465(b)(1), id. ¶ 46, that defendant had improperly disregarded the existence of Alpha I, id. ¶ 47, and that defendant had improperly asserted accuracy-related penalties under I.R.C. § 6662, id. ¶ 48.[1]

On April 11, 2008 plaintiffs sought to amend their complaints "by conceding certain issues."  Plaintiffs' Motion for Leave to Amend Their Complaints (Pls.' Mot. to Amend) 1.  Plaintiffs filed their amended complaints, containing concessions under §

---

[1]By court order of February 6, 2007, the following cases were consolidated for pre-trial purposes:  Beta Partners, L.L.C., by and through Alpha I, L.P., a Notice Partner (Beta) v. United States, R, R, M & C Partners, L.L.C., by and through R, R, M & C Group, L.P., a Notice Partner (Partners) v. United States, R, R, M & C Group, L.P., by and through Robert Sands, a Notice Partner (Group) v. United States, CWC Partnership I, by and through Trust FBO Zachary Stern U/A Fifth G, Andrew Stern and Marilyn Sands, Trustees, a Notice Partner (CWC) v. United States, Mickey Management, L.P., by and through Marilyn Sands, a Notice Partner (Mickey) v. United States, and M, L, R & R by and through Richard E. Sands, Tax Matters Partner (M, L, R & R) v. United States.  Order of Feb. 6, 2007.  On October 14, 2008 the court revised the case caption "to reflect the substitution of Robert Sands Charitable Remainder Unitrust – 2001 as the partner filing suit on behalf of Group."  Order of Oct. 14, 2008.  The complaints filed in these consolidated cases are more particularly described in the court's Opinion of August 28, 2008.  Alpha I, L.P. v. United States (Alpha I), 83 Fed. Cl. 279, 281-82 n.1 (2008).

465(b)(1) of the I.R.C., on May 16, 2008 (Docket Nos. 97-103).  Section 465(b)(1) of the I.R.C. states:

> (b) Amounts considered at risk. –
>
>> (1) In general. – For purposes of this section, a taxpayer shall be considered at risk for an activity with respect to amounts including–
>>
>>> (A) the amount of money and the adjusted basis of other property contributed by the taxpayer to the activity, and
>>>
>>> (B) amounts borrowed with respect to such activity (as determined under paragraph (2)).

26 U.S.C. § 465(b)(1) (2006).  With respect to tax year 2001, the First Amended Complaint filed by Alpha I, L.P. stated:  "Plaintiff does not now claim that the transactions increased the amount considered at risk for an activity under Code Section 465(b)(1) and plaintiff now concedes the correctness of this specific adjustment proposed by the [IRS] in the FPAA."  Alpha Amended Compl. ¶ 39.  With respect to tax year 2002, Alpha's Amended Complaint stated:

> Plaintiff does not now claim that the transactions increased the amount considered at risk for an activity under Code Section 465(b)(1) and, for this reason, does not now object to the Service's conclusion that Alpha has net short-term capital gain of $355,374 instead of a net short-term capital loss of $(3,140,776) as was reported on Alpha's return.  Instead, plaintiff now concedes the correctness of these specific adjustments proposed by the [IRS] in the FPAA.

Id. ¶ 42.  Alpha's Amended Complaint limited its specified prayers for relief to the following:

> [That the court:]
> 1.   Determine that the [IRS] erred in disregarding the existence of Alpha[;]
> 2.   Determine that the penalties asserted by the [IRS] in the Alpha FPAA are erroneous and/or that the parties have valid defenses to the assertion of such penalties;
> 3.   Determine that the deposit paid by Robert Sands for penalties should be refunded, together with interest thereon; and

    4.     Grant Plaintiff such other and further relief to which Plaintiff is entitled.

Id. at 9.[2]  Plaintiffs' amended complaints conceded that taxes are owed, but contested whether penalties are owed.  See, e.g., id. at 7-8.

In its response to plaintiffs' Motion for Leave to Amend Complaint, defendant states that it "does not oppose allowing plaintiffs to amend their Complaints to concede that, under 26 U.S.C. §[ ]465, none of the partnership transactions or activities increased the amount by which their partners were considered to be at risk for any activity."  United States' Response to Plaintiffs' Motion for Leave to Amend Their Complaints (Def.'s Resp. to Pls.' Mot. to Amend) 3.  However, defendant characterizes plaintiffs' concession as "largely a self-serving maneuver to attempt to avoid the 40% penalty imposed in connection with their use of abusive tax shelters designed to avoid tax on $120,000,000 in gain."  Id. at 4.  Defendant states that the concession leaves much of the dispute unresolved:

> Plaintiffs unequivocally state in their motion that they do not "concede any other determination set forth in the FPAAs . . . ."  To the extent that any of these other determinations are directly relevant to penalties, they must still be addressed in these consolidated proceedings.

Id. (footnote omitted).

Now before the court are Plaintiffs' Motion for Partial Summary Judgment (plaintiffs' Motion or Pls.' Mot.), filed July 2, 2008, the United States' Response to Plaintiffs' Motion for Partial Summary Judgment (defendant's Response or Def.'s Resp.), filed August 4, 2008, and Plaintiffs' Reply in Support of Plaintiffs' Motion for Partial Summary Judgment (plaintiffs' Reply or Pls.' Reply), filed August 21, 2008.[3]  Plaintiffs

---

[2]Plaintiffs filed amended complaints for each of the cases consolidated with Alpha I on May 16, 2008 in which they conceded certain issues.  These amended complaints are more particularly described in the court's Opinion of August 28, 2008.  Alpha I, 83 Fed. Cl. at 284 n.2.

[3]In the court's Opinion and Order of August 28, 2008, the court stayed all motions currently before the court "until further order of the court to be entered following the issuance of opinions and orders on [Plaintiffs' Motion to Substitute Certain Parties and to Dismiss Certain Causes of Action for Lack of Jurisdiction and Plaintiffs' Motion for Partial Summary Judgment] . . . and a telephonic status conference with the parties."  Alpha I, 83 Fed. Cl. at 291 n.3.  On

(continued...)

request summary judgment that "[t]he 40 percent gross valuation misstatement penalty (as well as the 20 percent substantial valuation misstatement penalty) asserted by the defendant is inapplicable to plaintiffs as a matter of law because any underpayment of tax would not be 'attributable to' a valuation misstatement, but instead would be attributable to plaintiffs' concession that defendant's capital gains adjustments were correct under Section 465(b)(1) [of the I.R.C.]." Pls.' Mot. 4.  In the alternative, plaintiffs argue that any "valuation misstatement penalty still would not be applicable, because any such overstatement would not be reported on a return of tax imposed by Chapter 1 [of the I.R.C.]." Id.  Defendant argues that plaintiffs should have conceded their capital gains adjustments under § 752 of the I.R.C.  Def.'s Resp. 2 ("Plaintiffs' § 465 concession seeks to avoid a judicial determination on FPAA adjustments which conclude that the obligation to close a short sale is a liability under 26 U.S.C. §[]752, requiring that their basis be adjusted.").  According to defendant, because "there are not any partnership level determinations to be made with respect to § 465, a concession by the plaintiffs with respect to § 465 is meaningless." Id.  Finally, defendant argues that the information returns required to be filed by partnerships constitute "a return of tax imposed by Chapter 1." Id. at 13.

II.    Legal Standards

The penalties that are the subject of plaintiffs' Motion are set forth in section 6662 of title 26 of the United States Code:

> (a) Imposition of penalty.– If this section applies to any portion of an underpayment of tax required to be shown on a return, there shall be added to the tax an amount equal to 20 percent of the portion of the underpayment to which this section applies.
>
> (b) Portion of underpayment to which section applies.–This section shall apply to the portion of any underpayment which is attributable to 1 or more of the following:
>
>> (1) Negligence or disregard of rules or regulations.
>> (2) Any substantial understatement of income tax.

---

[3](...continued)
September 30, 2008 defendant filed United States' Motion for Leave to File Answers to Amended Complaints (defendant's Motion for Leave to File Answers).  Plaintiffs filed Plaintiffs' Response to United States' Motion for Leave to File Answers to Amended Complaints on October 17, 2008.  No reply was filed.

(3) Any substantial valuation misstatement under chapter 1.

(4) Any substantial overstatement of pension liabilities.

(5) Any substantial estate or gift tax valuation understatement.

This section shall not apply to any portion of an underpayment on which a penalty is imposed under section 6663.  Except as provided in paragraph (1) or (2)(B) of section 6662A(e), this section shall not apply to the portion of any underpayment which is attributable to a reportable transaction understatement on which a penalty is imposed under section 6662A.

. . . .

(e) Substantial valuation misstatement under chapter 1.–

   (1) In general.– For purposes of this section, there is substantial valuation misstatement under chapter 1 if–

      (A) the value of any property (or the adjusted basis of any property) claimed on any return of tax imposed by chapter 1 is 150 percent or more of the amount determined to be the correct amount of such valuation or adjusted basis (as the case may be)[.] . . .

26 U.S.C. § 6662 (2006).  The accuracy-related penalty prescribed in § 6662(a) increases from twenty percent to forty percent in the case of "gross valuation misstatements."  26 U.S.C. § 6662(h).  Under section 7491(c) of the I.R.C., defendant has the burden of production with respect to penalties.  26 U.S.C. § 7491(c) ("Notwithstanding any other provision of this title, the Secretary shall have the burden of production in any court proceeding with respect to the liability of any individual for any penalty, addition to tax, or additional amount imposed by this title.").

III.   Discussion

The FPAAs made adjustments to plaintiffs' capital gains and losses based on five theories:  "(1) Section 752; (2) Treas. Reg. § 1.752-6 (the 'retroactive regulation'); (3) the transaction or entities were a sham or lacked economic substance; (4) Treas. Reg. § 1.701-2 (the partnership anti-abuse regulation); and (5) 'none of the transactions of the Partnership increases the amount considered at-risk for an activity under I.R.C. § 465(b)(1).'"  Pls.' Mot. 1-2; Compl. Exhibit (Ex.) A (Notice of Final Partnership Administrative Adjustment).  "Plaintiffs conceded the adjustments on the ground that none of the transactions of the partnerships increased the amount considered at-risk for any activity under Section 465(b)(1) and that the at-risk rules would disallow losses and require the partnerships and their partners to recognize gain on the transactions as set

forth in the FPAAs." Pls.' Mot. 3. Plaintiffs made this concession after considering "the hazards and significant costs associated with litigating all the remaining issues relating to defendant's capital gains adjustments. . . . [and] understood their concession should eliminate the potential for the 40 percent gross valuation misstatement and 20 percent substantial valuation misstatement penalties to apply to any deficiency ultimately determined." Id.

Plaintiffs assert that defendant's denial of plaintiffs' allegation that "'to the extent that [the partnership] and its partners did not properly compute the amounts at risk, the "at risk" rules of [§ 465 of the I.R.C.] could only be used to disallow the losses claimed by [the partnership], but such rules would not require [the partnership] or its partners to recognize any gain,'" Pls.' Mot. 2 (quoting Compl. ¶ 67) (first, third, and fourth alterations in Pls.' Mot.), "indicates that [§ 465 of the I.R.C.] supported defendant's entire capital gains adjustment, not just elimination of losses," id. at 3. According to plaintiffs, the valuation misstatement penalties are "inapplicable to plaintiffs as a matter of law because any underpayment of tax would not be 'attributable to' a valuation misstatement, but instead would be attributable to plaintiffs' concession that defendant's capital gains adjustments were correct under [§ 465(b)(1) of the I.R.C.]." Id. at 4 ("Here, plaintiffs' concession eliminated the need for the Court to consider difficult valuation issues relating to basis and economic substance, and defendant cannot require the Court to make such determinations solely for the purpose of imposing the valuation misstatement penalty."). Plaintiffs further argue that any overstatement of their basis was not reported on a tax return imposed by Chapter 1 of the I.R.C. Id. Defendant contends that "the underpayment of tax was directly and exclusively attributable to the overstatement of basis on the returns of Partners, Group and CWC," and that partnership information returns are returns of tax imposed by Chapter 1 [of the I.R.C.]. Def.'s Resp. 3.

A.    Whether any Underpayment of Tax by Plaintiffs is Attributable to a Gross or Substantial Valuation Misstatement

Plaintiffs argue that because plaintiffs conceded capital gains adjustment under § 465(b)(1), "a ground unrelated to an overstatement of basis or value," the court was not required to decide any issues of valuation and therefore § 6662 overvaluation penalties cannot be imposed. Pls.' Mot. 5-6; Pls.' Reply 1. Defendant, however, contends that plaintiffs' § 465 concession is meaningless. Def.'s Resp. 5-6 ("It is important for this Court to understand that the § 465 adjustment did not result in any adjustment or correction to long term capital gains and losses on the Group FPAA. The § 465 adjustment was included only as a protective adjustment, not as an alternative to the five theories set out above."). According to defendant, "plaintiffs' basis, and the resulting gain, was determined through (1) a proposed § 752 adjustment; (2) an adjustment

9

pursuant to § 1.752-6; (3) an adjustment pursuant to § 1.701-2; (4) adjustments that sham or disregard the partnerships; and/or (5) adjustments concluding that the transactions otherwise lacked economic substance." Id. at 5.  Defendant argues that while these five grounds "would operate to adjust the basis and capital gain at issue in these proceedings[,] . . . . [p]laintiffs' §[]465 concession will not." Id.  Additionally, according to defendant, because "there are not any partnership level determinations to be made with respect to § 465, a concession by the plaintiffs is of no import." Id. at 7.  Defendant asserts that the court "must make a determination as to the capital gain adjustments on the Group FPAA pursuant to one of the alternative arguments included in the FPAA." Id. at 8.

Under § 6662, the twenty percent gross valuation misstatement penalty applies to the portion of any underpayment attributable to a "substantial valuation misstatement," 26 U.S.C. § 6662(b)(3), and the forty percent gross valuation misstatement penalty applies to the portion of any underpayment attributable to "gross valuation misstatements," 26 U.S.C. § 6662(h).  According to plaintiffs, "Courts have consistently held that when a deduction or loss is <u>disallowed</u> on grounds other than valuation, the . . . penalty is not applicable because the resulting underpayment is not 'attributable to' a valuation misstatement."  Pls.' Mot. 6 (citing <u>Derby v. Comm'r</u> (<u>Derby</u>), 2008 WL 540271 (Tax Ct. Feb. 28, 2008), at *24-25; <u>Todd v. Comm'r</u> (<u>Todd</u>), 862 F.2d 540, 543 (5th Cir. 1988)[4]).

---

[4]Plaintiffs rely on numerous cases analyzing overvaluation penalties under § 6659 of the Internal Revenue Code (I.R.C.).  Plaintiffs' Motion for Partial Summary Judgment (plaintiffs' Motion or Pls.' Mot.) 6-7.  Section 6659 was enacted as part of the Economic Recovery Tax Act of 1981.  Economic Recovery Tax Act of 1981, Pub. L. No. 97-34, § 722, 95 Stat. 172 (1981).  It was consolidated with other penalties into § 6662 in 1989.  Pub. L. No. 101-239, § 7721, 103 Stat. 2106, 2395-99 (Dec. 19, 1989); H.R. Rep. No. 101-386, at 652-55 (1989) (Conf. Rep.).  Prior to its repeal, § 6659 read in relevant part as follows:

> (a) Addition to the Tax. – If –
> (1) an individual, or
> (2) a closely held corporation or a personal service corporation, has an underpayment of the tax imposed by chapter 1 for the taxable year which is attributable to a valuation overstatement, then there shall be added to the tax an amount equal to the applicable percentage of the underpayment so attributable. . . .
> (c) Valuation Overstatement Defined. – For purposes of this section, there is a valuation overstatement if the value of any property, or the adjusted basis of any property, claimed on any return is 150% or more of the amount determined to be the correct amount of such valuation of adjusted basis (as the case may be).

(continued...)

In <u>Derby</u>, the United States Tax Court (Tax Court) held that no overvaluation penalties could be assessed against the taxpayers under § 6662.  <u>Derby</u>, 2008 WL 540271, at *24-25.  The Tax Court first denied petitioners' charitable contribution deductions on the merits "on the ground that petitioners received a commensurate quid pro quo."  <u>Id.</u> at *25.  Relying on <u>Gainer v. Comm'r</u> (<u>Gainer</u>), 893 F.2d 225 (9th Cir. 1990), a case discussed more fully below, the Tax Court then held that "because there is a separate, independent ground for disallowing those deductions, the overvaluation penalty may not be imposed against petitioners," <u>Derby</u>, 2008 WL 540271, at *25.

In <u>Todd</u>, the United States Court of Appeals for the Fifth Circuit (Fifth Circuit) affirmed the decision of the Tax Court that § 6659 penalties did not apply because the taxpayers' underpayments were not attributable to valuation overstatements.  <u>Todd</u>, 862 F.2d at 540.  Because the property in question had not been placed in service during the tax years in issue, the Tax Court determined that the taxpayers "were not entitled to their claimed deductions and credits."  <u>Id.</u> at 541.  Because the deductions and credits were disallowed because the property had not been placed in service, the Tax Court found that "the taxpayers' underpayments of tax could not be 'attributable to' the valuation overstatement contained in their tax returns."  <u>Id.</u>  In reaching its decision, the Fifth Circuit examined the meaning of the words "attributable to" in section 6659 and found the language ambiguous.  <u>Id.</u> at 541-42.  The Fifth Circuit then turned to the legislative history of section 6659.  <u>Id.</u> at 542.  While noting it was "not technically legislative history," the Fifth Circuit looked to the <u>General Explanation of the Economic Recovery Act of 1981</u> prepared by the staff of the Joint Committee on Taxation for guidance.  <u>Id.</u> (citing Joint Comm. on Taxation, 97th Cong., 1st Sess., <u>General Explanation of Economic Recovery Act of 1981</u> (Comm. Print 1981) (<u>General Explanation</u>)).  The <u>General Explanation</u> states:

> The portion of a tax underpayment that is attributable to a valuation overstatement will be determined after taking into account any other proper adjustments to tax liability.  Thus, the underpayment resulting from a valuation overstatement will be determined by comparing the taxpayer's (1) actual tax liability (i.e., the tax liability that results from a proper valuation and which takes into account any other proper adjustments) with (2) actual tax liability as reduced by taking into account the valuation overstatement.

---

[4](...continued)
26 U.S.C. § 6659 (1988), <u>repealed by</u> Pub. L. No. 101-239, § 7721, 103 Stat. 2106, 2399 (Dec. 19, 1989).

The different between these two amounts will be the underpayment that is attributable to the valuation overstatement.

General Explanation 333.  The Fifth Circuit concluded:

> [W]here the deductions and credits for [the property] were inappropriate altogether, the [taxpayers'] valuation of the property supposedly generating the tax benefits had no impact whatsoever on the amount of tax actually owed.  Since the legislative history of § 6659 provides no alternative method of applying the statute, we are persuaded that the formula contained in the committee staff's explanation evidences congressional intent with respect to calculating underpayments subject to the penalty.

Todd, 862 F.2d at 543.  The Fifth Circuit also discussed the probable competing policies Congress balanced in determining how to apply § 6659:

> First, Congress may not have wanted to burden the Tax Court with deciding difficult valuation issues where a case could be easily decided on other grounds.  Second, Congress may have wanted to moderate the application of the § 6659 penalty so that it would not be imposed on taxpayers whose overvaluation was irrelevant to the determination of their actual tax liability.

Id. at 544.

The Fifth Circuit again declined to apply valuation overstatement penalties in Heasley v. Commissioner (Heasley), 902 F.2d 380, 383 (5th Cir. 1990) (citing Todd, 862 F.2d at 542-43).  Like the plaintiffs currently before the court, the plaintiffs in Heasley did not dispute their tax deficiency, they disputed the assessment of penalties.  Id. at 382.  The Fifth Circuit stated, "Whenever the [IRS] totally disallows a deduction or credit, the [IRS] may not penalize the taxpayer for a valuation overstatement included in that deduction or credit."  Id. at 383.  The Fifth Circuit found that the plaintiffs' underpayment of tax was not attributable to any valuation overstatement, but instead was "attributable to claiming an improper deduction or credit."  Id. ("In other words, the [plaintiffs'] valuation overstatement does not change the amount of tax actually owed.").

In Gainer, the United States Court of Appeals for the Ninth Circuit (Ninth Circuit) also declined to impose penalties under § 6659 of the I.R.C.  Gainer, 893 F.2d at 226.  Like Todd, Gainer involved the disallowance of depreciation deductions and credits because the property at issue was not placed in service during the relevant tax year.  Id.

The Ninth Circuit agreed with the Fifth Circuit's analysis of the General Explanation and legislative history of § 6659 in Todd and concluded that "[plaintiff's] overvaluation becomes irrelevant to the determination of any tax due." Id. at 228.

Plaintiffs further argue that "when taxpayers conceded adjustments on grounds unrelated to valuation or basis (or on unspecified grounds where the IRS asserted a variety of grounds)," the overvaluation penalties were found to be inapplicable. Pls.' Mot. 7 (citing McCrary v. Comm'r (McCrary), 92 T.C. 827 (1989); Schachter v. Comm'r (Schachter), 67 T.C.M. (CCH) 3092 (1994); Gainer, 893 F.2d 225; Rogers v. Comm'r (Rogers), 60 T.C.M. (CCH) 1386 (1990)).

In McCrary, the taxpayers and the Tax Court relied on Todd to hold that section 6659 penalties did not apply to the taxpayers. McCrary, 92 T.C. at 852-55. Prior to trial, the taxpayers in McCrary "conceded that they were not entitled to [an] investment tax credit because the agreement was a license and not a lease." Id. at 851. The Tax Court in McCrary noted that, unlike prior cases where it had "sustained additions to tax under section 6659 on the ground that the basis claimed on the return exceeded the correct adjusted basis in the property," id. at 851(citing Zirker v. Comm'r, 87 T.C. 970, 978-79 (1986)), it did not have to determine the adjusted basis, id. The IRS attempted to distinguish Todd by arguing that the McCrary taxpayers continued to contest other deductions and that taxpayers "cannot selectively concede a ground for disallowance in order to avoid an addition to tax." Id. at 852. Although the Tax Court agreed that the McCrary taxpayers' situation could be distinguished from Todd, it noted that "there are certainly many cases in which taxpayers concede a single ground for disallowance of an item, thus avoiding the necessity of trial in a case." Id. The Tax Court stated:

> We cannot conclude that petitioner required a trial that otherwise would have been unnecessary or that petitioner forced us to decide "difficult valuation issues where a case could be easily decided on other grounds." We can conclude that respondent would have us decide those issues for the purpose of imposing the addition to tax.

Id. at 854-55. The Tax Court concluded that § 6659 penalties did not apply to the taxpayers. Id. at 855.

In Rogers, the taxpayers "concede[d] that they [were] not entitled to the claimed deductions and credits which related to the . . . transaction [at issue]." Rogers, 60 T.C.M. (CCH) at 1394. The taxpayers argued, however, that they were not liable for any additions to tax under §§ 6653(a), 6659, and 6661 or any additional interest under section

6621(c).  Id. at 1394-99.  With respect to the addition to tax for valuation overstatements under section 6659, the taxpayers argued that because they conceded the deficiency and disallowed the credits and deductions, it was impossible to determine the reason for the understatement among the multiple reasons in the notice of deficiency.  Id. at 1397. Citing to Todd and McCrary, the Tax Court held that the § 6659 penalties did not apply because the court did not find that the credits were disallowed due to an overvaluation of the property at issue.  Id.

In Schachter, the taxpayers conceded the disallowance of deductions and thereby, in the Tax Court's opinion, "obviated the need for a trial on the numerous issues raised in the deficiency notice for the purpose of identifying which, if any of them, provided the substantive ground or grounds for disallowance of . . . losses."  Schachter, 67 T.C.M. (CCH) at 3094.  Relying on McCrary and Rogers, the Tax Court stated:

> The objectives of administrative efficiency and judicial economy have been well served by the closing agreement and petitioner's concession.  Those objectives would not be served by requiring a trial on the substantive issues for the sole purpose of determining whether petitioner is liable for 20 percent more interest on the deficiency under section 6621(c).

Id.

In Weiner v. United States (Weiner), the Fifth Circuit also declined to impose § 6621(c) interest.  Weiner, 389 F.3d 152, 153 (5th Cir. 2004).  The FPAAs issued to the plaintiffs in Weiner asserted a number of bases for the disallowance of certain deductions. Id. at 159-60.  The taxpayers settled with the IRS but the settlement agreements did not specify the bases for disallowing the deductions.  Id.  Therefore, "there was never any need for a court to examine the IRS's claimed bases for disallowance and make a determination about their application."  Id. at 160.  The Weiner court relied on Todd and McCrary, among other cases, in holding that section 6621 interest should not be imposed on the taxpayers.  Id. at 160-61 ("[B]ecause both sections [6621 and 6659] employ the same 'attributable to' language, the analysis in Todd is instructive in the § 6621(c) context.").  The Fifth Circuit stated "that when the FPAA lists several independent reasons for disallowing the taxpayers' deductions, there is no way to determine, without additional superfluous litigation, whether the taxpayers' underpayment is 'attributable to' a reason that also qualifies as a tax-motivated transaction (such as a sham)."  Id. at 162. The court concluded:

[T]he taxpayers settled or conceded the disallowances and paid the
delinquent taxes, thus removing the need for a trial on the merits of those
issues.  This court can conceive of no good reason to treat the taxpayers in
this case differently from the taxpayers in <u>Todd</u>, <u>McCrary</u>, <u>Heasley</u>, <u>Rogers</u>,
or <u>Schachter</u>.  There is no way, given the multiple reasons provided for the
disallowance in the FPAAs, to determine whether the underpayments are
"attributable to" a tax motivated transaction.  Additionally, § 6621(c) was
one of the provisions enacted by Congress "to deal with the Tax Court
backlog." <u>Todd</u>, 862 F.2d at 544 n.14.  Yet, fifteen years after the statute's
repeal, imposing the penalty in situations such as this does nothing to
relieve the Tax Court's backlog, when the taxpayers have in fact settled
with the IRS.

<u>Id.</u> at 162-63.

Defendant contends that <u>Todd</u> and <u>Gainer</u> are distinguishable from this case and
that plaintiffs' argument has been rejected by the Tax Court.  Def.'s Resp. 9-10 (citing
<u>Santa Monica Pictures, LLC v. Comm'r</u> (<u>Santa Monica Pictures</u>), 89 T.C.M. (CCH) 1157,
1226-27 (2005)).  In <u>Santa Monica Pictures</u>, however, the Tax Court reached the merits of
the economic substance issue, <u>Santa Monica Pictures</u>, 89 T.C.M. (CCH) at 1189-1224,
and found that the transaction lacked economic substance.  <u>Id.</u> at 1224.  The Tax Court
distinguished the situation in <u>Todd</u> and <u>Gainer</u> from the situation in <u>Santa Monica
Pictures</u>:

In <u>Gainer</u> and <u>Todd</u>, the taxpayers made valuation overstatements of
certain property and claimed depreciation deductions and investment tax
credits on the basis of these valuations.  This Court and the Courts of
Appeals determined, however, that the properties had not been placed in
service; therefore, the taxpayers' claimed deductions were disallowed on
that ground and not because of any valuation overstatement.  Thus, in
<u>Gainer</u> and <u>Todd</u>, this Court and the Courts of Appeals disallowed the
taxpayers' tax benefits on grounds separate and apart from the alleged
valuation overstatements.  In the instant cases, however, each of our
alternative holdings goes directly to [the taxpayers'] correct adjusted bases
in the contributed . . . receivables.

<u>Id.</u> at 1227.  The court finds the case before it more closely analogous to <u>Gainer</u> and
<u>Todd</u>, where adjustments were made on grounds unrelated to valuation and the courts
declined to impose penalties, <u>Gainer</u>, 893 F.2d at 226-28; <u>Todd</u>, 862 F.2d at 541-44, than

15

to <u>Santa Monica Pictures</u>, where the Tax Court determined that the transaction lacked economic substance, <u>Santa Monica Pictures</u>, 89 T.C.M. (CCH) at 1224, and found that the tax returns contained "gross valuation misstatements for purposes of section 6662(e) and (h)," <u>id.</u> at 1227 (finding a nexus between a lack of economic substance and a valuation overstatement).

Defendant also cites to <u>Jade Trading, LLC v. United States</u> (<u>Jade Trading</u>), Def.'s Resp. 10-11, a case that also reached the merits of the economic substance issue, <u>Jade Trading</u>, 80 Fed. Cl. 11, 45-52 (2007), finding that the relevant transaction lacked economic substance, <u>id.</u> at 52. The plaintiffs in <u>Jade Trading</u> argued that "no gross valuation misstatement penalty applies where the underlying transaction is disregarded for lack of economic substance." <u>Id.</u> at 54. The United States Court of Federal Claims found that "the underpayment of tax directly and exclusively was 'attributable to' the overstatement of each . . . basis - it was not 'attributable to' the subsequent independent action of the court disregarding the transaction." <u>Id.</u> In the case now before the court, however, the court has not made a determination regarding whether the relevant transactions lacked economic substance. This case involves, as plaintiffs state, "a concession of the underlying tax . . . made on a ground unrelated to basis or valuation." Pls.' Reply 4 (emphasis omitted). Therefore, the court does not find the cases cited by defendant to be either relevant or persuasive.[5] As plaintiffs state, "plaintiffs have

---

[5]Defendant filed the United States' Motion to Reconsider Order Regarding Plaintiffs' Motion to Substitute Certain Parties and to Dismiss Certain Causes of Action (defendant's Motion for Reconsideration or Def.'s Mot. for Recons.) on October 24, 2008. In defendant's Motion for Reconsideration, defendant states that a recent decision of the Tax Court "expressly rejects the proposition that a party can concede an adjustment as means to eliminate jurisdiction over other determinations in the [Final Partnership Administrative Adjustment's (FPAA's)] explanation of items." Def.'s Mot. for Recons. 3 n.2 (citing <u>Petaluma FX Partners, LLC v. Comm'r</u> (<u>Petaluma</u>), No. 24717-05, 131 T.C. No. 9, 2008 WL 4682543 (Tax Ct. Oct. 23, 2008)). In <u>Petaluma</u>, the tax court first held that it had jurisdiction over whether Petaluma FX Partners, LLC was "a sham, lack[ed] economic substance, or otherwise should be disregarded for tax purposes." <u>Pelatuma</u>, 2008 WL 4862543, at * 9. The petitioner in <u>Petaluma</u> stipulated that it would "not contest this determination other than on jurisdictional grounds," <u>id.</u> at *11, and therefore the Tax Court disregarded Petaluma FX Partners, LLC for tax purposes, <u>id.</u> The court then held that because there is no basis in a disregarded entity, the partners' outside basis is treated as being zero. <u>Id.</u> Because the petitioners in <u>Petaluma</u> had claimed a basis greater than zero, the Tax Court found that they were subject to penalties for valuation overstatements. <u>Id.</u> at *13 (noting that "the Second, Third, Fourth, Sixth, and Eighth Circuits have affirmed [the Tax Court's] imposition of the valuation overstatement or misstatement penalty where the underpayment results from a sham transaction lacking economic substance"). The court noted

(continued...)

16

conceded the underlying tax issue, and the Court will not be forced to hold a trial on the merits of the correct amount of capital gains and losses claimed by plaintiffs because the correct amount of such gains and losses is no longer at issue in this case." Pls.' Reply 5.

Finally, defendant argues that this court lacks jurisdiction to accept plaintiffs concession because "there are not any partnership level determinations to be made with respect to § 465." Def.'s Resp. 7 (discussing <u>Russian Recovery Fund, Ltd. v. United States</u> (<u>Russian Recovery</u>), 81 Fed. Cl. 793, 797 (2008) and arguing that a partner's amount at risk is not a partnership item). <u>Russian Recovery</u> concerned the issue of whether the IRS "improperly adjusted an individual partner-level item in a partnership-level proceeding." <u>Russian Recovery</u>, 81 Fed. Cl. at 794. The United States Court of Federal Claims held that an individual partner's amount at risk was a non-partnership item. <u>Id.</u> at 801. Defendant's argument is that plaintiffs should not be allowed to make a concession on a non-partnership ground, such as amount at risk, in a partnership proceeding where there exists an alternative ground that could be addressed in a partnership level proceeding, such as a valuation determination under § 752. <u>See</u> Def.'s Resp. 7-8.

Plaintiffs argue that "[t]he Court has jurisdiction over all partnership items of plaintiffs for the taxable years at issue in this proceeding which include the partnership aggregate of 'items of income, gain, loss, deduction, or credit of the partnership.'" Pls.' Reply 10 (quoting Treas. Reg. § 301.6231(a)(3)-1(a)(1)(i) (2008) and citing 26 U.S.C. § 6226(f)). Plaintiffs further argue that, while <u>Russian Recovery</u> stands for the proposition that a partner's amount at risk is not a partnership item, it does not stand for the proposition that the determination of a partnership's amount at risk is not a partnership item. Pls.' Reply 11 ("[<u>Russian Recovery</u>] determined that a partnership's (Partnership 1's) amount at risk in another partnership (Partnership 2) is not a partnership item of

---

[5](...continued)
the Commissioner of Internal Revenue's acknowledgment that the Tax Court "does not apply the valuation misstatement penalty in cases where the deduction or credit is disallowed for reasons other than the fact that the value or basis of the property was inflated." <u>Id.</u> at *15. The Tax Court distinguished <u>Todd v. Commissioner</u>, 89 T.C. 912 (1987), and <u>Gainer v. Commissioner</u>, 893 F.2d 225 (9th Cir. 1990), from <u>Petaluma</u> because in <u>Petaluma</u> the alternative arguments of the Internal Revenue Service (IRS) "all affect the partners' bases in the partnership." <u>Id.</u> Unlike this case, the Tax Court in <u>Petaluma</u> determined that the partnership should be disregarded for lack of economic substance, reducing the partners' bases to zero and resulting in the application of valuation overstatement penalties. <u>Id.</u> at *13-15. <u>Petaluma</u> is therefore not relevant to the analysis of this case, where the court has not reached the merits of whether a particular transaction lacked economic substance.

Partnership 2.  However, the case does <u>not</u> determine that Partnership 1's amount at risk from its participation in Partnership 2 is not a partnership item of Partnership 1." (citation omitted)).  According to defendant, however, the at-risk rules of § 465 only apply to individual taxpayers and certain C corporations, not to partnerships.  Def.'s Resp. 6 (citing 26 U.S.C. § 465(a)(1)).

Cases in which courts decline to make valuation determinations for the sole purpose of imposing penalties, <u>Weiner</u>, 389 F.3d at 162-63; <u>Gainer</u>, 893 F.2d at 228; <u>Todd</u>, 862 F.2d at 543-44; <u>Derby</u>, 2008 WL 540271, at *25; <u>Schachter</u>, 67 T.C.M. (CCH) at 3094; <u>Rogers</u>, 60 T.C.M. (CCH) at 1397; <u>McCrary</u>, 92 T.C. at 854-55, support this court's determination that plaintiffs' concession should be accepted.  Plaintiffs' concession obviates the need to conduct a trial on valuation issues and therefore achieves the very efficiencies and economies that the elimination of penalties sought to encourage. <u>See</u> <u>Todd</u>, 862 F.2d at 544; <u>Schacter</u>, 67 T.C.M. (CCH) at 3094; <u>McCrary</u>, 92 T.C. at 854-55; <u>General Explanation</u> 333.  It does not appear to the court that the intention of the penalty provisions was to force trial on grounds to which plaintiffs did not concede.  As the Tax Court stated in <u>Schachter</u>:

> In [<u>McCrary</u>], we declined to sustain the application of section 6621(c) when the taxpayer's concession made it unnecessary to decide which of several alternative grounds provided the ground for the disallowance.  In the case at hand, respondent's deficiency notice not only relied on the closing agreement to disallow the . . . loss, but also threw in everything but the proverbial kitchen sink . . . .

> Here, as in [<u>McCrary</u>] and [<u>Rogers</u>], the melange of alleged grounds, some of which were "tax-motivated" grounds– but others were not– prevent us from saying, after the concession, that the underpayment was attributable to a particular ground.  We are not inclined, in these circumstances, to rely on petitioners' burden of proof to show that the transaction was not tax motivated, all or in part, for the purpose of section 6621(c).  The objectives of administrative efficiency and judicial economy have been well served by the closing agreement and petitioner's concession.  Those objectives would not be served by requiring a trial on the substantive issues for the sole purpose of determining whether petitioner is liable for 20 percent more interest on the deficiency under section 6621(c).

<u>Schachter</u>, 67 T.C.M. (CCH) at 3094.  The important fact here is that plaintiffs conceded the correctness of adjustments made in the FPAAs.  <u>See</u> Alpha Amended Compl. ¶ 39,

18

42.[6]  To go behind the concession and attempt to assign to it a specific ground would be to engage in an activity that the elimination of penalties is intended to prevent.

> **B.     Whether the Court May Determine Alternative Grounds for Conceded Adjustments to Determine the Application of Penalties**

Plaintiffs argue that "the objectives of administrative efficiency and judicial economy would not be served here by requiring a trial on defendant's alternative grounds for its capital gains adjustments for the sole purpose of determining whether plaintiffs are liable for a greater penalty on any resulting deficiency." Pls.' Mot. 10.  According to plaintiffs, defendant's position "would require needless litigation in a manner inconsistent with Congress' purpose in enacting the 40 percent penalty." Id. at 14 (citing McCrary, 92 T.C. at 851-55).  Plaintiffs argue that the "penalty was enacted primarily to discourage taxpayers from taking extreme positions on the valuation of property for tax purposes." Id. at 15 (citing General Explanation at 334).  As plaintiffs state, "applying a steep penalty for extreme valuation positions taken by taxpayers encourages settlements and concessions of valuation issues." Id.  Finally, plaintiffs argue that the "consideration of such issues by the Court is unnecessary and would result in an improper advisory opinion." Id. at 16 (citations omitted).

Plaintiffs contend that defendant's position "run[s] contrary to the purposes of the penalty – encouraging settlement of difficult valuation issues to reduce the burden on the courts of making such determinations – and to settled law." Pls.' Reply 5 (citations omitted).  The court agrees with plaintiffs that forcing a "trial on alternative grounds for adjustments plaintiffs have already conceded violates the purpose and policy behind the

---

[6]Plaintiffs argue that they "based their concessions on defendant's position in its answers (that the entire capital gains adjustments were supported by Section 465)." Plaintiffs' Reply in Support of Plaintiffs' Motion for Partial Summary Judgment (plaintiffs' Reply or Pls.' Reply) 10. Defendant contends that the § 465 adjustment was only included in the FPAA "as a protective adjustment," see United States' Response to Plaintiffs' Motion for Partial Summary Judgment (defendant's Response or Def.'s Resp.) 6 (arguing that "the § 465 adjustment did not result in any adjustment or correction to long term capital gains and losses on the Group FPAA").  The court notes that the § 465 adjustment was listed right along with defendant's other theories for adjusting plaintiffs' basis and gain, see Complaint [of Alpha I, L.P.] for Readjustment of Partnership Items Under Code Section 6226 (Compl.) Exhibit (Ex.) A (Notice of Final Partnership Administrative Adjustment).  However, the parties' disagreement is irrelevant.  The court need not endorse the validity of the ground on which plaintiffs made their concession. Plaintiffs did not concede the adjustments on grounds relating to valuation that would cause the penalties to be applied.

valuation misstatement penalties and is simply a waste of the Court's and the parties' resources." Id. (emphasis omitted); see Weiner, 389 F.3d at 162-63 (declining to undertake "additional superfluous litigation" to determine if underpayments were attributable to tax-motivated transactions and stating that "imposing the penalty in situations such as this does nothing to relieve the Tax Court's backlog, when the taxpayers have in fact settled with the IRS"); Todd, 862 F.2d at 544 (noting that "Congress may not have wanted to burden the Tax Court with deciding difficult valuation issues where a case could be easily decided on other grounds" and that "Congress may have wanted to moderate the application of the § 6659 penalty so that it would not be imposed on taxpayers whose overvaluation was irrelevant to the determination of their actual tax liability"); Schachter, 67 T.C.M. (CCH) at 3094 (finding that "[t]he objectives of administrative efficiency and judicial economy have been well served by the closing agreement and petitioner's concession" and that "[t]hose objectives would not be served by requiring a trial on the substantive issues for the sole purpose of determining whether petitioner is liable for 20 percent more interest on the deficiency under section 6621(c)"); McCrary, 92 T.C. at 854-55 (declining to conduct an unnecessary trial for the purpose of imposing a penalty or to decide "difficult valuation issues where a case could be easily decided on other grounds").

     C.     Whether There Was a Misstatement on a Tax Return Imposed by Chapter 1 of the I.R.C.

Under § 6662(e), valuation misstatement penalties relate to "return[s] of tax imposed by chapter 1." 26 U.S.C. § 6662(e)(1)(A). Plaintiffs argue that "[t]he valuation misstatement penalty cannot apply to these alleged overstatements of basis because a partnership return is not a return of tax imposed by chapter 1." Pls.' Mot. 17 (emphasis omitted). Instead, plaintiffs contend that a partnership return "is an information return . . . required to be filed only because of the Information Return requirements of chapter 61 of the [I.R.C.]." Id. Section 6031, contained in chapter 61 of the I.R.C., states: "Every partnership (as defined in section 761(a)) shall make a return for each taxable year . . . ." 26 U.S.C. § 6031(a) (2006).

Defendant, through Treasury Regulation §§ 1.6662-5(h) and 301.7701-15(c)(1), seeks to make the overvaluation penalties applicable to information returns. Def.'s Resp. 13-16. Treasury Regulation § 1.6662-5(h) states:

     Pass-through entities – (1) In general. The determination of whether there is a substantial or gross valuation misstatement in the case of a return of a pass-through entity (as defined in § 1.6662-4(f)(5) is made at the entity

> level.  However, the dollar limitation ($5,000 or $10,000, as the case may
> be) is applied at the taxpayer level (i.e., with respect to the return of the
> shareholder, partner, beneficiary, or holder of a residual interest in a
> REMIC).

Treas. Reg. § 1.6662-5(h)(1) (2008).  Treasury Regulation § 301.7701-15(c)(1) states:  "A return of tax under subtitle A also includes an information return filed by or on behalf of a person or entity that is not a taxable entity and which reports information which is or may be reported on the return of a taxpayer of tax under subtitle A."  Treas. Reg. § 301.7701-15(c)(1) (2008).  Therefore, defendant argues that "an information return filed by a partnership is 'a return of tax imposed by chapter 1 [of the I.R.C.].'"  Def.'s Resp. 13.  Defendant further argues that courts have routinely applied the valuation misstatement penalties to partnerships.  Id. at 13 n.7 (citing, inter alia, Santa Monica Pictures, 89 T.C.M. (CCH) 1157; Jade Trading, 80 Fed. Cl. 11; Stobie Creek Invs., LLC v. United States, 82 Fed. Cl. 636 (2008)).

According to plaintiffs, because § 1.6662-5(h) "is an interpretive regulation not promulgated under any specific delegation of authority from Congress[,] . . . the regulation is invalid."  Pls.' Mot. 18 ("Executive agencies, including the IRS, are not permitted to legislate by adding terms or requirements to a statutory scheme that Congress has not provided.").  Plaintiffs also note that partnerships are not included on the § 6012(a) list of "persons required to make 'returns with respect to income taxes under subtitle A.'"  Pls.' Reply 13-14 (quoting 26 U.S.C. § 6012(a)).  The inability to apply the valuation misstatement penalties is particularly true, according to plaintiffs, "given that penalty statutes are to be strictly construed against the government."  Pls.' Mot. 17 (citing Comm'r v. Acker, 361 U.S. 87, 91 (1959) (stating that "penal statutes are to be construed strictly")).

Because the court has found that the overvaluation misstatement penalties are inapplicable in the circumstances of this case, see supra Part III.A, the court does not address this portion of the parties' briefing.

IV.   Conclusion

Because the court finds that the underpayment of plaintiffs' taxes are not "attributable to" an overvaluation misstatement, plaintiffs' Motion for Partial Summary Judgment is GRANTED.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Judge