# In the United States Court of Federal Claims

No. 06-407 T

(into which have been consolidated Nos. 06-408T,
06-409T, 06-410T, 06-411T, 06-810T, 06-811T)

(E-Filed:  August 26, 2009)

| | | |
|---|---|---|
| ALPHA I, L.P., BY AND THROUGH ROBERT SANDS, A NOTICE PARTNER, | ) ) ) ) | Action for Readjustment of Partnership Items; Effect of Concessions on Defenses to Penalties |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| THE UNITED STATES, | ) ) | 06-407 T |
| Defendant. | ) ) ) | |
| BETA PARTNERS, L.L.C., BY AND THROUGH ALPHA I, L.P., A NOTICE PARTNER, | ) ) ) ) | |
| Plaintiff, | ) ) ) | 06-408 T |
| v. | ) ) | |
| THE UNITED STATES, | ) ) | |
| Defendant. | ) ) ) | |
| R, R, M & C PARTNERS, L.L.C., BY AND THROUGH R, R, M & C GROUP, L.P., A NOTICE PARTNER, | ) ) ) ) | |
| Plaintiff, | ) ) ) | 06-409 T |
| v. | ) | |

)
THE UNITED STATES,                                    )
                                                     )
                    Defendant.                        )
                                                     )
_____              )
                                                     )
R, R, M & C GROUP, L.P., BY AND THROUGH               )
ROBERT SANDS CHARITABLE REMAINDER                     )
UNITRUST – 2001, A NOTICE PARTNER,                    )
                                                     )        06-410 T
                    Plaintiff,                        )
                                                     )
    v.                                                )
                                                     )
THE UNITED STATES,                                    )
                                                     )
                    Defendant.                        )
                                                     )
_____              )
                                                     )
CWC PARTNERSHIP I, BY AND THROUGH                     )
TRUST FBO ZACHARY STERN U/A FIFTH G,                  )
ANDREW STERN AND MARILYN SANDS,                       )
TRUSTEES, A NOTICE PARTNER,                           )
                                                     )        06-411 T
                    Plaintiff,                        )
                                                     )
    v.                                                )
                                                     )
THE UNITED STATES,                                    )
                                                     )
                    Defendant.                        )
                                                     )
_____              )
                                                     )
MICKEY MANAGEMENT, L.P., BY AND                       )
THROUGH MARILYN SANDS, A NOTICE                       )
PARTNER,                                              )
                                                     )        06-810 T
                    Plaintiff,                        )
                                                     )

v.                                           )
                                             )
THE UNITED STATES,                           )
                                             )
            Defendant.                       )
                                             )
_____  )
                                             )
M, L, R & R, BY AND THROUGH RICHARD E.       )
SANDS, TAX MATTERS PARTNER,                  )
                                             )
            Plaintiff,                       )        06-811 T
                                             )
v.                                           )
                                             )
THE UNITED STATES,                           )
                                             )
            Defendant.                       )
_____  )

Lewis S. Wiener, Washington, DC, for plaintiff.  N. Jerold Cohen, Thomas A. Cullinan,
Joseph M. DePew, and Julie P. Bowling, Atlanta, GA, and Kent L. Jones, Washington,
DC, of counsel.

Thomas M. Herrin, with whom were Louise Hytken, Chief, Southwestern Civil Trial
Section, Michelle C. Johns, Trial Attorney, Tax Division, United States Department of
Justice, Dallas, TX, John A. DiCicco, Deputy Assistant Attorney General, and Steven I.
Frahm, Chief, Court of Federal Claims Section, Tax Division, United States Department
of Justice, Washington, DC, for defendant.

<u>OPINION AND ORDER</u>

HEWITT, Chief Judge

I.      Background

        Plaintiff Alpha I, L.P. (Alpha I), by and through Robert Sands, a Notice Partner in
Alpha I, filed a complaint against the United States on May 18, 2006, "petitioning for the
readjustment of partnership items that were adjusted by the Internal Revenue Service
[(IRS)] in a Notice of Final Partnership Administrative Adjustment [(FPAA)] issued to
Alpha [I] with respect to Alpha [I's] Forms 1065 U.S. Return of Partnership Income for

the tax years ended December 31, 2001 [(tax year 2001)] and December 31, 2002 [(tax year 2002)]."  Complaint [of Alpha I] for Readjustment of Partnership Items Under Code Section 6226 (Alpha Complaint or Alpha Compl.) 1.  By order of February 6, 2007, the court consolidated the following cases for pre-trial purposes:  Beta Partners, L.L.C., by and through Alpha I, L.P., a Notice Partner (Beta) v. United States, R, R, M & C Partners, L.L.C., by and through R, R, M & C Group, L.P., a Notice Partner (Partners) v. United States, R, R, M & C Group, L.P., by and through Robert Sands, a Notice Partner (Group) v. United States, CWC Partnership I, by and through Trust FBO Zachary Stern U/A Fifth G, Andrew Stern and Marilyn Sands, Trustees, a Notice Partner (CWC) v. United States, Mickey Management, L.P., by and through Marilyn Sands, a Notice Partner (Mickey) v. United States, and M, L, R & R by and through Richard E. Sands, Tax Matters Partner (M, L, R & R) v. United States.  Order of Feb. 6, 2007.  The IRS issued FPAAs to plaintiffs that increased plaintiffs' tax liabilities for tax years 2001 and 2002.  See, e.g., Alpha Compl. ¶ 35.  Pursuant to § 6662 of the Internal Revenue Code (I.R.C.), the FPAAs also asserted a forty percent accuracy-related penalty against plaintiffs or, alternatively, a twenty percent accuracy-related penalty.  Id.; see 26 U.S.C. § 6662 (2006).  On May 16, 2008, plaintiffs filed amended complaints containing concessions under § 465(b)(1) of the I.R.C.  Dkt. Nos. 97-103.  Plaintiffs' amended complaints conceded that taxes are owed, but contested whether penalties are owed.  See, e.g., First Amended Complaint [of Alpha I, L.P.] for Readjustment of Partnership Items Under Code Section 6226 (Alpha Amended Complaint or Alpha Amended Compl.) ¶¶ 39-44.  Defendant characterized plaintiffs' concession as "largely a self-serving maneuver to attempt to avoid the 40% tax imposed in connection with their use of abusive tax shelters designed to avoid tax on $120,000,000 in gain."  United States' Response to Plaintiffs' Motion for Leave to Amend Their Complaints (Def.'s Resp. to Pls.' Mot. to Amend) 4.

Plaintiffs filed a Motion for Partial Summary Judgment on July 2, 2008, requesting summary judgment that "[t]he 40 percent gross valuation misstatement penalty (as well as the 20 percent substantial valuation misstatement penalty) asserted by the defendant is inapplicable to plaintiffs as a matter of law because any underpayment of tax would not be 'attributable to' a valuation misstatement, but instead would be attributable to plaintiffs' concession that defendant's capital gains adjustments were correct under Section 465(b)(1) [of the I.R.C.]."  Plaintiffs' Motion for Partial Summary Judgment (plaintiffs' Motion for Partial Summary Judgment or Pls.' Mot. for Partial Summ. J.) 4 ("Here, plaintiffs' concession eliminated the need for the [c]ourt to consider difficult valuation issues relating to basis and economic substance, and defendant cannot require the [c]ourt to make such determinations solely for the purpose of imposing the valuation misstatement penalty.").  In the United States' Response to Plaintiffs' Motion for Partial Summary Judgment (Def.'s Resp. to Pls.' Mot. for Partial Summ. J.), defendant argued

that plaintiffs' § 465 concession is meaningless.  Def.'s Resp. to Pls.' Mot. for Partial
Summ. J. 5-6.

On November 25, 2008 the court granted plaintiffs' Motion for Partial Summary
Judgment, finding "that the underpayment of plaintiffs' taxes are not 'attributable to' an
overvaluation misstatement."  See Alpha I, L.P. v. United States (Alpha I), 84 Fed. Cl.
622, 634 (2008).  The court found the issues surrounding plaintiffs' Motion for Partial
Summary Judgment

> more closely analogous to . . . [cases] where adjustments were made on
> grounds unrelated to valuation and the courts declined to impose penalties,
> [Gainer v. Comm'r (Gainer), 893 F.2d 225, 226-28 (9th Cir. 1990); Todd v.
> Comm'r (Todd), 862 F.2d 540, 541-44 (5th Cir. 1988)], than to [Santa
> Monica Pictures, LLC v. Comm'r (Santa Monica Pictures)], where the Tax
> Court determined that the transaction lacked economic substance, Santa
> Monica Pictures, 89 T.C.M. (CCH) [1157, 1224 (2005)], and found that the
> tax returns contained "gross valuation misstatements for purposes of section
> 6662(e) and (h)," id. at 1227.

Id. at 630.  The court found two of the cases cited by defendant, Jade Trading, LLC v.
United States (Jade Trading), 80 Fed. Cl. 11 (2007), and Petaluma FX Partners, LLC v.
Comm'r (Petaluma), No. 24717-05, 131 T.C. No. 9, 2008 WL 4682543 (Tax Ct. Oct. 23,
2008), irrelevant and therefore unpersuasive because here, in contrast to the
circumstances in Jade Trading and Petaluma, the court has not reached the merits of
whether a particular transaction lacked economic substance.  Alpha I, 84 Fed. Cl. at 630-
31.  The court found as follows:

> Cases in which courts decline to make valuation determinations for
> the sole purpose of imposing penalties, support this court's determination
> that plaintiffs' concession should be accepted.  Plaintiffs' concession
> obviates the need to conduct a trial on valuation issues and therefore
> achieves the very efficiencies and economies that the elimination of
> penalties sought to encourage.

Id. at 631 (internal citations omitted).  According to the court, "The important fact here is
that plaintiffs conceded the correctness of the adjustments made in the FPAAs."  Id. at
632.  "To go behind the concession and attempt to assign to it a specific ground would be
to engage in an activity that the elimination of penalties is intended to prevent."  Id.

Defendant filed the United States' Motion to Reconsider Opinion Regarding Plaintiffs' Motion for Partial Summary Judgment (defendant's Motion for Reconsideration or Def.'s Mot. for Recons.) on December 24, 2008, which the court denied on March 16, 2009.  Alpha I, L.P. v. United States (Alpha II), 86 Fed. Cl. 568, 570 (2009).  The parties filed a Joint Status Report (JSR) with the court on April 28, 2009, in which they disputed "whether 'reasonable cause' and 'substantial authority' defenses can be brought based on basis adjustments made under section 752 of the [I.R.C.]."  Order of Apr. 28, 2009 (citing JSR 2-5).  The court ordered "briefing on how plaintiffs' earlier concessions under section 465 may affect the types of evidence that may now be presented in this case."  Id. at 3.  Specifically, the court stated:

> Plaintiffs' brief shall identify the types of evidence that have been submitted, and the types of proceedings that have been held, to address penalty issues in cases in which valuation misstatement penalties were not allowed because a plaintiff's underpayment of tax was found not to be ["]attributable["] to a valuation misstatement.  Plaintiffs' brief shall also address why, given the record fact that plaintiffs conceded their underpayment of tax under section 465, it is appropriate and efficient for the court to consider the application of penalties except on the grounds under which the underpayment of tax was conceded.

Id. at 4.  Now before the court are Plaintiffs' Brief Regarding the Effect of Plaintiffs' Concessions on the Type of Evidence to Be Presented for Any Remaining Penalty Issues Filed Pursuant to the Court's April 28, 2009 Order (plaintiffs' Brief or Pls.' Br.), filed May 22, 2009, the United States' Response to Plaintiffs' Brief Regarding the Effect of Plaintiffs' Concessions on the Remaining Penalty Adjustments (defendant's Response or Def.'s Resp.), filed June 22, 2009, and Plaintiffs' Reply Brief in Support of Plaintiffs' Brief Regarding the Effect of Plaintiffs' Concessions (plaintiffs' Reply or Pls.' Reply), filed July 7, 2009.

Plaintiffs argue that "a concession of an adjustment on a specific ground does not limit a court's review of the applicability of negligence and substantial understatement penalties and defenses thereto solely to the ground on which the concession was made."  Pls.' Br. 1-2.  Plaintiffs also argue that a concession does not mean that penalties automatically apply.  Pls.' Br. 2 (stating that "courts have considered the authority supporting the position taken on the taxpayer's return, the taxpayer's efforts in determining the correct amount of tax due, the taxpayer's reliance on professional advice, and a variety of other factors in determining whether the negligence or substantial understatement penalties apply").  Defendant counters that plaintiffs' argument "directly conflicts with plaintiffs' prior representations to the [c]ourt that their §[]465 concession

eliminated the need for a trial." Def.'s Resp. 1. According to defendant, "If plaintiffs['] newly advanced position is correct, the [c]ourt's November 25, 2008 ruling (Docket No. 145) needs to be set aside so that the [c]ourt may consider application of both the 40% gross valuation misstatement penalty and the 20% negligence and/or substantial understatement penalties proposed by the FPAAs." Def.'s Resp. 1. In the alternative, defendant argues that "the doctrine of judicial estoppel should be applied to preclude plaintiffs from asserting any defenses to the 20% negligence and/or substantial understatement penalties." Def.'s Resp. 1. According to defendant, "plaintiffs seek the very trial that they previously represented would be avoided through their concession." Def.'s Resp. 2.

II.     Legal Standards

Section 6662 of the I.R.C. provides for the imposition of accuracy-related penalties for the underpayment of tax. I.R.C. § 6662 (2006). Section 6662(a) provides for accuracy-related penalties in "an amount equal to 20 percent of the portion of the underpayment to which this section applies." I.R.C. § 6662(a). Section 6662(b) states:

This section shall apply to the portion of any underpayment which is attributable to 1 or more of the following:

(1)  Negligence or disregard of rules or regulations.

(2)  Any substantial understatement of income tax.

(3)  Any substantial valuation misstatement under chapter 1.

(4)  Any substantial overstatement of pension liabilities.

(5)  Any substantial estate or gift tax valuation understatement.

This section shall not apply to any portion of an underpayment on which a penalty is imposed under section 6663. Except as provided in paragraph (1) or (2)(B) of section 6662A(e), this section shall not apply to the portion of any underpayment which is attributable to a reportable transaction understatement on which a penalty is imposed under section 6662A.

I.R.C. § 6662(b). The terms used in paragraphs (1) through (5) of section 6662(b) are more fully defined in sections 6662(c) through (g). See I.R.C. §§ 6662(c)-(g). Under section 6662(c), "the term 'negligence' includes any failure to make a reasonable attempt

to comply with the provisions of this title, and the term 'disregard' includes any careless, reckless, or intentional disregard."  § 6662(c).  According to section 6662(d), "there is a substantial understatement of income tax for any taxable year if the amount of the understatement for the taxable year exceeds the greater of – (i) 10 percent of the tax required to be shown on the return for the taxable year, or (ii) $5,000."  I.R.C. § 6662(d)(1)(A).  Section 6662(d)(2)(B) states:

> The amount of the understatement under subparagraph (A) shall be reduced by that portion of the understatement which is attributable to –
>
> > (i)  the tax treatment of any item by the taxpayer if there is or was substantial authority for such treatment, or
> >
> > (ii)  any item if–
> >
> > > (I)  the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return, and
> > >
> > > (II)  there is a reasonable basis for the tax treatment of such item by the taxpayer.
>
> For purposes of clause (ii)(II), in no event shall a corporation be treated as having a reasonable basis for its tax treatment of an item attributable to a multiple-party financing transaction if such treatment does not clearly reflect the income of the corporation.

I.R.C. § 6662(d)(2)(B).  Section 6662(d)(2)(C), however, states that reductions in understatements shall not apply to tax shelters:

> (i)  In general.—Subparagraph (B) shall not apply to any item attributable to a tax shelter.
>
> (ii)  Tax Shelter.—For purposes of clause (i), the term "tax shelter" means–
>
> > (I)  a partnership or other entity,
> >
> > (II)  any investment plan or arrangement, or
> >
> > (III)  any other plan or arrangement,

8

if a significant purpose of such partnership, entity, plan, or arrangement is
the avoidance or evasion of Federal income tax.

I.R.C. § 6662(d)(2)(C).  The I.R.C. also provides that "[n]o penalty shall be imposed
under section 6662 or 6663 with respect to any portion of an underpayment if it is shown
that there was a reasonable cause for such a portion and that the taxpayer acted in good
faith with respect to such portion."  I.R.C. § 6664(c)(1).

III.    Discussion

      A.     Whether, Regarding Applicable Penalties, Plaintiffs Are Limited to
               Asserting Defenses Based Solely on Their § 465 Concession

     According to plaintiffs, it is "both appropriate and lawful for the [c]ourt to
consider the application of negligence and substantial understatement penalties and all
appropriate defenses thereto on all grounds raised by the parties (to the extent such
grounds comport with the statutory and regulatory scheme) rather than solely on a
specifically conceded ground."  Pls.' Br. 8.  Plaintiffs contend that the court should
"consider all the relevant facts[,] circumstances, and authorities" rather than seek
efficiency:  "While considering only Section 465 in the context of the application of the
negligence and substantial understatement penalties may be an efficient course of action,
it appears that the course of action expected under the framework set up by Congress and
implemented by the Department of the Treasury is to consider all the relevant facts[,]
circumstances, and authorities supporting or opposing the taxpayer's reporting position in
determining the applicability of the penalties."  Id.  Plaintiffs argue that their concessions
"have not changed the inquiry required for determining the applicability of the negligence
or substantial understatements penalties," but they have served to eliminate from the
court's consideration "whether the transactions at issue were shams or lacked economic
substance, whether [Treasury Regulation] § 1.701-2 applies to support defendant's capital
gains adjustments, whether the obligation to close the short sales is actually a liability for
purposes of Section 752, or even whether Section 465 supports defendant's capital gains
adjustments."  Id.

     At the April 28, 2009 telephonic status conference (April 28, 2009 TSC),
defendant argued that the negligence and substantial understatement penalties should be
automatic because plaintiffs did not obtain advice regarding the applicability of § 465 to
the transactions at issue.  See April 28, 2009 TSC, Argument of Mr. Thomas M. Herrin at

11:19:20-11:21:11.[1]  Plaintiffs argue that "[i]t would make little sense for negligence and substantial understatement penalties to be automatic simply because taxpayers concede an adjustment on a specific ground, as defendant has asserted." Pls.' Br. 9.  According to plaintiffs, "If the taxpayer concedes the issue based on . . . one rule, a penalty should not automatically be imposed, particularly where the taxpayer correctly construed all other relevant Code sections, reasonably believed the tax treatment was more likely than not correct, and otherwise exhibited reasonable cause and good faith." Id. at 9-10.  Plaintiffs state, "There is no logical reason to automatically penalize the taxpayer, or limit consideration of his good faith to only his actions regarding the single ground on which he conceded.  Indeed, that would only encourage needless litigation." Id. at 10.

In plaintiffs' Brief, plaintiffs discuss four cases, Heasley v. Commissioner (Heasley), Rogers v. Commissioner (Rogers)[2], McCrary v. Commissioner (McCrary), and

_____

[1] The Telephonic Status Conference (TSC) held on April 28, 2009, was recorded by the court's Electronic Digital Recording system (EDR).  The time stamps noted in this Opinion refer to the EDR record of the TSC.

[2] Plaintiffs rely on numerous cases analyzing overvaluation penalties under § 6659 of the Internal Revenue Code (I.R.C.).  Plaintiffs Brief Regarding the Effect of Plaintiffs' Concessions on the Type of Evidence to be Presented for any Remaining Penalty Issues Filed Pursuant to the Court's April 28, 2009 Order (plaintiffs' Brief or Pls.' Br.) 12-17.  Section 6659 was enacted as part of the Economic Recovery Tax Act of 1981.  Economic Recovery Tax Act of 1981, Pub. L. No. 97-34, § 722, 95 Stat. 172 (1981).  Section 6659 was consolidated with other penalties into § 6662 in 1989.  Pub. L. No. 101-239, § 7721, 103 Stat. 2106, 2395-99 (Dec. 19, 1989); H.R. Rep. No. 101-386, at 652-55 (1989) (Conf. Rep.).  Prior to its repeal, § 6659 read in relevant part as follows:

(a) Addition to the Tax.
If–
      (1) an individual, or

      (2) a closely held corporation or a personal service corporation,

has an underpayment of the tax imposed by chapter 1 for the taxable year which is attributable to a valuation overstatement, then there shall be added to the tax an amount equal to the applicable percentage of the underpayment so attributable.
    . . . .

(c) Valuation Overstatement Defined.
For purposes of this section, there is a valuation overstatement if the value of any

(continued...)

Litman v. United States (Litman), where courts both determined that valuation misstatement penalties were inapplicable due to the taxpayers' concessions and considered the applicability of negligence or substantial understatement penalties.  See Pls.' Br. 11-18.  According to plaintiffs, "The fact that the taxpayers had conceded the tax deficiency in each case did not restrict the taxpayers' ability to assert all possible grounds for the inapplicability of penalties."  Pls' Br. 11 (emphasis omitted).

In Heasley, the United States Court of Appeals for the Fifth Circuit (Fifth Circuit) determined that the valuation misstatement penalty was inapplicable because plaintiffs' underpayment of tax was not attributable to any valuation overstatement, but instead was "attributable to claiming an improper deduction or credit."  Heasley, 902 F.2d 380, 383 (5th Cir. 1990).  After determining that the valuation misstatement penalties were inapplicable, the Fifth Circuit found that "moderate-income investors . . . may rely on the expertise of their financial advisors and accountants."  Id.  The Fifth Circuit found that the given fact that the taxpayers relied on the advice of their financial planner and a CPA, and made efforts to monitor their investments, they did not act negligently.  Id. at 383-84.  Furthermore, the Fifth Circuit found that in consulting with a CPA, and given the taxpayers' "inexperience and limited knowledge about investing, and their level of education," the taxpayers acted reasonably and in good faith.  Id. at 385.

Plaintiffs cite to Heasley for the proposition that "the taxpayers' concession of the deficiency asserted by the IRS did not restrict the court's consideration of the facts relating to the efforts they took to understand and monitor the investment and to determine their proper tax liability."  Pls.' Br. 13.  The Fifth Circuit examined the taxpayers reliance on a financial advisor and a CPA, both of whom found nothing wrong with the investment at issue.  Heasley, 902 F.2d at 385 ("Certainly, their failure to out-guess their financial advisor and accountant is not negligence.").  As its final reason for determining that the taxpayers acted reasonably and in good faith, the Fifth Circuit noted that "the Heasleys believed that they legitimately claimed the deduction and investment tax credit."  Id.  The Fifth Circuit examined the reasonableness and good faith of both the taxpayers' reliance on their financial advisor and accountant in undertaking the investment and their belief that the claimed credits and deductions were legitimate.

---

[2](...continued)
property, or the adjusted basis of any property, claimed on any return is 150 percent or more of the amount determined to be the correct amount of such valuation of adjusted basis (as the case may be).

26 U.S.C. § 6659 (1988), repealed by Pub. L. No. 101-239, § 7721, 103 Stat. 2106, 2399 (Dec. 19, 1989).

While it is true that the Fifth Circuit determined that the taxpayers did not act negligently, id. at 384, and that the taxpayers acted reasonably and in good faith, id. at 385, these determinations were not made based on defenses to any grounds other than those to which the plaintiffs conceded – claiming improper deductions and credits. See id. at 382-85. Heasley did not involve a situation, as is the case here, where the taxpayers conceded to only one of multiple grounds asserted by the IRS. See id. at 382 ("[The Heasleys] do not dispute the tax deficiency but instead challenge the . . . assessment of penalties.").

In Rogers, the taxpayers "concede[d] that they [were] not entitled to the claimed deductions and credits which related to the . . . transaction [at issue]." Rogers, 60 T.C.M. (CCH) 1386, 1394 (1990). The taxpayers argued, however, that they were not liable for any additions to tax under §§ 6653(a), 6659, and 6661 or any additional interest under section 6621(c). Id. at 1394-99. The United States Tax Court (Tax Court) was faced with the decision of "whether a particular taxpayer's actions were reasonable in light of his experience, the nature of the investment or business, and his actions in connection with the transactions." Id. at 1394. The Tax Court noted that "neither the taxpayers nor their advisor verified the factual claims in the promotional materials or that the equipment existed prior to claiming the tax benefits." Id. at 1395. The Tax Court determined that the individuals involved were "not mere passive investors, but active business participants," and that they could not "avoid the negligence addition when they have wrongly claimed extraordinary tax benefits, merely because a tax advisor has read the prospectus and advised that it is feasible from a tax perspective." Id. (noting that "[i]t may have been reasonable to rely upon the tax advisor regarding the potential tax consequences, assuming the facts to be correct, but here it was petitioners' obligation to make a reasonable effort to verify that the . . . value reported for the systems upon which the . . . tax credits were based was correct – that is not a matter upon which the tax advisor's advice was rendered"). The Tax Court held, "In light of petitioners' level of business and professional sophistication, education, and financial success in other endeavors they have not convinced us here that it was prudent or reasonable for them to rely upon the accountant in this case for the factual information that each of them reported to respondent in order to claim entitlement to tax credits and deductions regarding their leasing business." Id. at 1397. With respect to the addition to tax for valuation overstatements under § 6659, the taxpayers argued that, because they conceded the deficiency and their lack of entitlement to the credits and deductions, it was impossible to determine the reason for the understatement among the multiple reasons in the notice of deficiency. Id. Citing Todd and McCrary, the Tax Court held that the § 6659 penalties did not apply because the court did not find that the credits were disallowed due to an overvaluation of the property at issue. Id.

The taxpayers in <u>Rogers</u> also argued that there was "substantial authority" for the position taken regarding the transaction at issue and that the IRS should waive the § 6661 substantial understatement penalty because the taxpayers acted with reasonable cause and in good faith. <u>Id.</u> at 1397-98. The Tax Court found that the accountant upon whom taxpayers relied

> testified that he did not make independent inquiry into any of the facts[,] . . . . petitioners were aware that [the accountant] had no expertise in the [relevant business] and that he did not verify the statements made . . . in the promotional materials[,] . . . . [and the accountant] did not testify concerning his analysis or the details of his opinion, if any, and there is no way to determine whether his analysis complied with the statute and regulations.

<u>Id.</u> at 1398. The Tax Court determined that the Commissioner of the IRS did not abuse his discretion in failing to waive the addition to tax. <u>Id.</u> at 1399 (finding that the taxpayers failed "to verify the factual aspects of their claimed business deductions and credits").

Plaintiffs cite to <u>Rogers</u> because, according to plaintiffs, the court's "substantial authority" inquiry in <u>Rogers</u> "was limited due to the lack of evidence presented by the taxpayers, but not in any way limited by the concessions made by the taxpayers." Pls.' Br. 14-15. <u>Rogers</u> did not involve a situation, as is the case here, where the taxpayer conceded to only one of multiple grounds asserted by the IRS. <u>See Rogers</u>, 60 T.C.M. (CCH) at 1388 ("Respondent determined, in the notices of deficiency, that petitioners were not entitled to their claimed investment tax and energy credits and deductions in connection with a leasing contract involving energy equipment. Petitioners have conceded that they are not entitled to the credits and deductions, but continue to contest the applicability of the additions to tax and increased interest." (footnote omitted)). While plaintiffs are correct that the taxpayers in <u>Rogers</u> were allowed to present the defenses of reasonable cause, good faith, and reliance on substantial authority despite their previous concession, these determinations were not made based on defenses to any grounds other than those to which the plaintiffs conceded – claiming improper deductions and credits. <u>See id.</u> at 1397 (stating that the taxpayers did not convince the Tax Court "that it was prudent or reasonable for them to rely upon the accountant . . . in order to claim entitlement to tax credits and deductions regarding their leasing business"). The Tax Court, in deciding whether the taxpayers' actions "were reasonable in light of [their] experience, the nature of the investment or business, and [their] actions in connection with the transactions," found that "[i]t was petitioners' reliance upon the purported values of the [energy management devices] and factual statements made by the promoters that generated the tax credits and deductions in these cases." <u>Id.</u> at 1394. In finding the

taxpayers negligent, the Tax Court noted that "not one of the 'investors' asked to see the device or be assured of its existence prior to 'investing' and claiming relatively substantial deductions and credits in relation to his or her 'investment.'" Id. at 1395.  In finding that the taxpayers did not reasonably and in good faith rely on substantial authority, the Tax Court noted that the taxpayers failed "to verify the factual aspects of their claimed business deductions and credits." Id. at 1399.

In McCrary, the taxpayers, prior to trial, "conceded that they were not entitled to [an] investment tax credit because the agreement was a license and not a lease." McCrary, 92 T.C. 827, 851, 1989 WL 35568 (1989).  However, the taxpayers continued to claim other deductions and disputed the penalties assessed against them by the IRS. Id. at 842-59.  The taxpayers argued that they "had an actual and honest objective of making a profit," and were therefore entitled to the deductions claimed. Id. at 844.  The Tax Court determined that the transaction at issue was solely a tax-motivated transaction, id. at 847-48, and that the taxpayers were therefore not entitled to the deductions claimed, id. at 849.  The Tax Court found the taxpayers negligent under § 6653(a) after determining that "petitioners deliberately employed a certified public accountant who would agree with the tax treatment of the transactions while purporting to insulate them from additions to tax." Id.  The Tax Court then concluded that § 6659 valuation misstatement penalties did not apply. Id. at 855.  The Tax Court determined that the taxpayers lacked reasonable cause, did not act in good faith, and that the § 6661 substantial understatement penalty was applicable. Id. at 856-57 ("The objective facts indicating lack of economic substance and the warnings set forth in the promotional materials negate reasonable cause for the underpayment.").

Plaintiffs argue that, in McCrary, "the taxpayers conceded adjustments on a specific ground (that the agreement they entered was not a lease) and the Tax Court did not limit its determination of the applicability of other penalties to that specific ground." Pls.' Br. 16-17.  Plaintiffs state:

> [T]he [McCrary] court considered the investigation the taxpayers undertook, the advice they received from the CPA they consulted regarding the tax effects of the leasing program, their motive in participating in the program, and the efforts they took to monitor their investment and determine the value of the leased recording.  Similarly, the [c]ourt may consider all these factors in determining the applicability of the negligence or substantial understatement penalties and plaintiffs' defenses thereto in the instant case and is not limited to determining penalties based solely on plaintiffs' concession of defendant's capital gains adjustments under Section 465.

14

Pls.' Br. 17.  The court disagrees because <u>McCrary</u> is not applicable to the case before it. In <u>McCrary</u>, because the taxpayers did not concede all of the tax deficiencies, the Tax Court had to determine whether the transaction at issue lacked economic substance and whether the taxpayers were entitled to the deductions claimed.  <u>Id.</u> at 842-49.  The Tax Court then addressed all of the penalties in the same proceeding, including the application of valuation misstatement penalties.  <u>Id.</u> at 849-59.  Here, the court has ruled on the application of valuation misstatement penalties, <u>see</u> <u>Alpha I</u>, 84 Fed. Cl. at 634, and now must address the remaining penalties claimed by the IRS.  The court, in finding that valuation misstatement penalties are inapplicable, noted the judicial economies and efficiencies achieved through its holding.  <u>Alpha I</u>, 84 Fed. Cl. at 631-33 (noting that plaintiffs' concession eliminated a determination that the transaction lacked economic substance).  These judicial economies and efficiencies were not similarly considered in <u>McCrary</u>.  <u>See</u> <u>McCrary</u>, 92 T.C. at 849-59.

In <u>Litman</u>, after a trial determining the valuation of stock for tax purposes, the United States conceded that the twenty percent valuation misstatement penalties under § 6662(e) were inapplicable because the taxpayer's reporting did not meet the 200 percent overvaluation threshold.  <u>Litman</u>, 81 Fed. Cl. 315, 317-18 (2008).  The Court of Federal Claims determined that the taxpayer acted with reasonable cause and in good faith and concluded that the taxpayer qualified for the § 6664(c)(1) defense to substantial understatement and negligence penalties.  <u>Litman</u>, 81 Fed. Cl. at 320-23.  Plaintiffs argue that, although the government made the concession in <u>Litman</u>, the concession did not restrict the government from asserting negligence and substantial understatement penalties and did not affect the taxpayer's ability to assert defenses to those penalties. Pls.' Br. 17.  The court does not find <u>Litman</u> applicable to this case.  <u>Litman</u> did not involve a concession made by plaintiff of only one of many grounds asserted by the government in an FPAA; <u>Litman</u> involved a concession by the government that a specific statutory penalty did not apply because the requirements to impose the penalty were not met.  <u>Litman</u>, 81 Fed. Cl. at 317-18.  The taxpayers in <u>Litman</u> were therefore able to assert defenses to negligence and substantial understatement penalties based on the original grounds asserted in the notice of deficiency – that taxpayers were liable for penalties because of their "allegedly erroneous reporting of the value for . . . restricted shares."  <u>Litman</u>, 81 Fed. Cl. at 317-18, 320-22.

The court is not persuaded that the cases cited by plaintiffs support their contention that it is appropriate "for the [c]ourt to consider the application of negligence and substantial understatement penalties and all appropriate defenses thereto on <u>all</u> grounds raised by the parties . . . rather than solely on a specifically conceded ground."  Pls.' Br. 8. Because plaintiffs have conceded their tax liability under § 465, and have therefore avoided the application of valuation misstatement penalties that may have applied had the

court been forced to decide all grounds alleged for plaintiffs' tax liability, see Alpha I, 84 Fed. Cl. at 631-32, plaintiffs are limited to asserting defenses based on the ground under which plaintiffs made their concessions – § 465 of the I.R.C.  The court agrees with plaintiffs that "courts must consider a variety of factors in determining whether the negligence or substantial understatement penalties should apply," Pls.' Br. 6, but in this case these considerations will be limited to defenses based solely on plaintiffs' § 465 concession.  In arguing that the negligence and substantial understatement penalties should be automatic because plaintiffs did not obtain advice regarding the applicability of § 465 to the transactions at issue, defendant is not arguing that the penalties should be automatic simply because plaintiffs made concessions under § 465; defendant argues that the penalties should be automatic because plaintiffs did not obtain advice regarding § 465 on which they could have reasonably relied.  See April 28, 2009 TSC, Argument of Mr. Thomas M, Herrin at 11:19:20-11:21:11.  This Opinion and Order does not address whether plaintiffs were negligent or are responsible for substantial understatement penalties.  The finding of the court is limited to a determination that plaintiffs are limited to asserting defenses based solely on their § 465 concession.

  B.  Whether a Trial on Penalties Must Encompass Valuation Misstatement Penalties

  Defendant argues that because all aspects of the transaction are contemplated by plaintiffs in their penalty defenses, a trial on penalties "must encompass both the 40% gross valuation misstatement penalty and the 20% negligence and/or substantial understatement penalties proposed by the FPAAs."  Def.'s Resp. 2.  According to defendant:

> This trial will encompass the very matters that plaintiffs previously led the [c]ourt to believe would be avoided by plaintiffs' §[]465 concession.  If plaintiffs are correct that a trial addressing the merits of plaintiffs' tax shelters is necessary, it follows that the very judicial efficiency the [c]ourt expected to realize by accepting plaintiffs' concession never existed.

Def.'s Resp. 3.  Defendant argues that, like McCrary, where the court determined the economic substance of the underlying transaction in addressing the taxpayer's reasonable cause defense, the defenses raised by plaintiffs in the case currently before the court will "require a trial addressing the economic substance of the tax shelters."  Def.'s Resp. 3-4.  Defendant further argues that "the legal issues and trial evidence are the same, whether trial is held to categorically reject the shelters as untenable, or simply to reject plaintiffs' penalty defenses."  Id. at 4.

Plaintiffs argue that defendant misreads McCrary.  Pls.' Reply 7 ("The court in McCrary was required to determine the economic substance of the underlying transactions not because the taxpayers contested the penalties asserted by defendant, but because the taxpayers continued to claim that they should be allowed certain deductions relating to the underlying transactions after they conceded that they were not entitled to the tax credits they had claimed." (citing McCrary, 92 T.C. at 842)).  The determination that the transaction lacked economic substance, however, was used by the Tax Court in McCrary to determine that the taxpayers lacked reasonable cause and did not act in good faith.  See McCrary, 92 T.C. at 857 ("The objective facts indicating lack of economic substance and the warnings set forth in the promotional materials negate reasonable cause for the underpayment.").

Plaintiffs state that "[i]n determining the applicability of negligence and substantial understatement penalties," courts may consider the following:

> evidence relating to how the taxpayers entered the transaction at issue, what advice they received, the qualifications of the advisors, whether the advice considered all the pertinent facts and law, whether there was substantial authority for the position originally taken on their returns based on all authorities relevant to the tax treatment of the item, and what efforts the taxpayers made to monitor their investments, among other relevant factors.

Pls.' Br. 18.  According to plaintiffs,

> To determine whether penalties are applicable due to any underpayment resulting from plaintiffs' concession of the adjustments to the positions originally taken on their returns, the [c]ourt need only consider the facts and circumstances relevant to whether the weight of the authorities supporting plaintiffs' treatment is substantial in relation to the weight of authorities supporting contrary treatment, whether plaintiffs reasonably believed the positions taken were more likely than not correct, and whether plaintiffs acted reasonably and in good faith in relying on their advisors with respect to such positions.

Pls.' Reply 6 (citing Treas. Reg. §§ 1.6662-4(d)(3)(iii), 1.6662-4(g)(4)(i)(B), 1.6664-4(c)(1) (2002)).  Plaintiffs contend that a trial on the penalty issues would only take one or two days.  Pls.' Reply 6 (quoting Plaintiffs' Response in Opposition to United States' Motion to Set Remaining Issues for Trial 6-7).  The court has already determined that in a trial on penalties plaintiffs will be limited to asserting defenses based solely on their § 465 concession.  See supra Part III.A.  Furthermore, the court has already determined that

valuation misstatement penalties do not apply.  See Alpha I, 84 Fed. Cl. at 631-34.
Therefore, the court finds defendant's argument that a trial on penalties must encompass
the forty percent gross valuation misstatement penalties misplaced.

Defendant cites to Keener v. United States (Keener) to support its view that the
court should consider the forty percent gross valuation misstatement penalties.  Def.'s
Resp. 4-5 (citing Keener, 551 F.3d 1358, 1367 (Fed. Cir. 2009)).  Plaintiffs argue that
Keener is not relevant to the analysis of this case because in Keener the Federal Circuit
determined that the taxpayers had conceded that the transaction lacked economic
substance.  Pls.' Reply 8-9; see Keener, 551 F.3d at 1367 ("Each relevant FPAA
disallowed the partnership's deductions because '[t]he partnership's activities
constitute[d] a series of sham transactions.'  [The t]axpayers concede that the FPAAs are
conclusive, as this finding was not altered by the Settlement Agreements." (alterations in
original)).

In Keener, the taxpayers' partnerships reported deductions that were later
disallowed in FPAAs issued by the IRS.  Keener, 551 F.3d at 1360.  Among the reasons
stated in the FPAAs for the disallowance of the deductions was that the partnership's
activities constituted sham transactions.  Id.  The Keener taxpayers eventually settled with
the IRS.  Id.  "The Settlement Agreements made no mention of the 'sham transaction'
determination in the FPAA, but did specify that the settlements 'may result in an
additional tax liability to [taxpayers] plus interest as provided by law.'"  Id. (alteration in
original).  The taxpayers "requested refunds of penalty interest paid pursuant to I.R.C. §
6621(c).  Section 6621(c), which was in effect for the years at issue, imposed an interest
rate of 120% of the statutory rate on 'any substantial underpayment attributable to tax
motivated transactions.'"  Keener, 551 F.3d at 1364 (footnote omitted) (citing I.R.C. §
6621(c)(1)).  The taxpayers argued that because the FPAAs listed multiple grounds for
the disallowance of deductions – some of which did not qualify as tax motivated
transactions – it was impossible to determine whether the Keener taxpayers'
underpayments were attributable to tax motivated transactions.  Id. at 1367.  The Federal
Circuit held that the Court of Federal Claims lacked jurisdiction over the Keener
taxpayers' claims because the claims were attributable to partnership items.  Id. at 1365-
66.  In dicta, the Federal Circuit stated that it would not be persuaded by the taxpayers'
argument even if it had jurisdiction.  Id. at 1367.  The Federal Circuit stated:

> The inequitable result of [the t]axpayers' contention would be to impose
> penalty interest when a deduction is disallowed because the partnerships'
> transactions were tax motivated, but not to impose penalty interest when
> that deduction is also disallowable on other inseparable grounds.

Id.

Defendant argues, "If tax motivated interest cannot be avoided when a tax adjustment is based on multiple grounds, some of which support such interest, and some of which do not, then neither can a (40%) penalty be avoided when a tax adjustment is based on multiple grounds, some of which support such a penalty, and some of which do not." Def.'s Resp. 5. Keener, where the taxpayers conceded that the FPAAs were conclusive and where the FPAAs disallowed deductions because the partnership's activities constituted sham transactions, Keener, 551 F.3d at 1367, is distinguishable from the case here, where plaintiffs conceded only one of the grounds listed in the FPAA and did not concede the ground that the transactions at issue were shams. Importantly, this court has already ruled that the 40% gross valuation misstatement penalties provided by I.R.C. §§ 6662(e) and (h) are inapplicable owing to plaintiffs' I.R.C. § 465 concessions. Alpha I, 84 Fed. Cl. at 631-32. Furthermore, as the court previously concluded, Jade Trading, Santa Monica Pictures, and Petaluma are not relevant to the analysis of this case, where the court has not reached the merits of whether a particular transaction lacked economic substance. See supra Part I; Alpha I, 84 Fed. Cl. at 630-31, 630 n.5. As plaintiffs correctly argue, Keener is "not relevant to the analysis of the present case, in which no determination or concession was made that the transactions lacked economic substance or that plaintiffs overstated their bases in the stock." Pls.' Reply 9.

Defendant also cites to Clearmeadow Investments, LLC v. United States, (Clearmeadow), noting that, in Clearmeadow, the Court of Federal Claims "expressly rejected the notion that a taxpayer can selectively 'tactically' concede one aspect of a tax adjustment in order to avoid a gross valuation overstatement penalty supported by a different adjustment." Def.'s Resp. 5-6. In Clearmeadow, the IRS issued an FPAA to the tax matters partner of Clearmeadow. Clearmeadow, No. 05-1223 T, 2009 WL 1851312, at *5 (Fed. Cl. June 24, 2009). The FPAA stated that the transactions undertaken by Clearmeadow lacked economic substance and imposed penalties, including § 6662 penalties for the underpayment of tax attributable to a gross valuation misstatement. Id. Clearmeadow filed suit in the Court of Federal Claims for a refund of the taxes paid pursuant to the FPAA and a determination that it did not owe penalties. Id. The parties in Clearmeadow disagreed "as to whether this court has jurisdiction to consider whether the 'reasonable cause' exception to the 'gross valuation misstatement' penalty contained in section 6664(c) of the [I.R.C.] applie[d]." Id. at *7. Section 6664(c)(1) states: "No penalty shall be imposed under section 6662 or 6663 with respect to any portion of an underpayment if it is shown that there was a reasonable cause for such a portion and that the taxpayer acted in good faith with respect to such portion." I.R.C. § 6664(c)(1) (emphasis added). Noting that "it is only a partner, and not the partnership, that qualifies as a 'taxpayer' within the meaning of the [I.R.C.] (at least for purposes of the income

19

tax),” Clearmeadow, 2009 WL 1851312, at *8, the court found that “the penalty inquiry . . . is necessarily limited to defenses that can be raised properly only at the partnership level,” id. at *9. The court found that the plaintiffs in Clearmeadow had conceded that the transactions in question lacked economic substance. Id. at *17. The court also determined that even if plaintiffs had not made such a concession, the defendant would have prevailed on its claim for summary judgment that the transaction lacked economic substance. Id. at *18.

With respect to the applicability of § 6662 gross valuation misstatement penalties, the plaintiffs in Clearmeadow asserted “that any tax underpayment . . . was ‘attributable to’ the transaction’s lack of economic substance, not a valuation misstatement.” Id. at *20. The court noted that “there are widely divergent views among the circuits on whether the overstatement penalty applies when a transaction is successfully challenged as lacking economic substance.” Id. The court then summarized cases from the Fifth and Ninth Circuits that hold that “an understatement is not attributable to an overvaluation where a transaction is disregarded in its entirely under the economic substance doctrine.” Id. (discussing Heasley, 902 F.2d at 383, Todd, 862 F.2d at 542-43, Gainer, 893 F.2d 225, and Keller v. Comm’r, 556 F.3d 1056, 1060-62 (9th Cir. 2009)). The court then noted that “five circuits – the Second, Third, Fourth, Sixth and Eighth – as well as the U.S. Tax Court . . . have expressly disagreed with the Fifth and Ninth Circuits, at least to the extent that the latter courts have suggested that the penalty is inapplicable where a transaction is found to lack economic substance.” Id. at *22 (footnote omitted). Clearmeadow is inapplicable to the case now before the court because here, unlike in Clearmeadow, the determination of whether the transaction at issue lacked economic substance has not been made. Furthermore, the court in Clearmeadow determined that the IRS “properly asserted the gross valuation overstatement penalty of section 6662 of the [I.R.C.],” id. at *2, whereas here, the court has determined that the valuation misstatement penalties do not apply, Alpha I, 84 Fed. Cl. at 631-34.

Because the court has already determined that valuation misstatement penalties do not apply, Alpha I, 84 Fed. Cl. at 631-34, a trial on penalties will not encompass valuation misstatement penalties.

C.      Whether Plaintiffs Are Judicially Estopped From Contesting Penalties

In the alternative, defendant argues that plaintiffs are judicially estopped from contesting the 20% negligence and substantial understatement penalties. Def.’s Resp. 7-10. This court recently discussed the doctrine of judicial estoppel in HighQBPO, LLC v. United States (HighQBPO), 84 Fed. Cl. 360, 364-65 (2008). The doctrine of judicial estoppel posits that “‘where a party assumes a certain position in a legal proceeding, and

succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position.'" Id. at 364 (quoting Davis v. Wakelee, 156 U.S. 680, 689 (1895)). Furthermore, "'The decision whether to invoke judicial estoppel lies within the court's discretion . . . .'" Id. (quoting Data Gen. Corp. v. Johnson (Data Gen. Corp.), 78 F.3d 1556, 1565 (Fed. Cir. 1996)). "'Judicial estoppel is designed to prevent the perversion of the judicial process and, as such, is intended to protect the courts rather than the litigants.'" Id. (quoting Data Gen. Corp., 78 F.3d at 1565).

Although there is no precise formula regarding when the doctrine of judicial estoppel should be applied, certain factors inform the court's decision:

> First, a party's later position must be "clearly inconsistent" with its earlier position.  Second, courts regularly inquire whether the party has succeeded in persuading a court to accept the party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled". . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001) (citations omitted) ("In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts.  In this case, we simply observe that the factors above firmly tip the balance of equities in favor of barring New Hampshire's present complaint."); see also Cuyahoga Metro. Hous. Auth. v. United States, 65 Fed. Cl. 534, 554 (2005) (discussing the same factors as New Hampshire v. Maine).

Defendant argues that plaintiffs "avoided imposition of the 40% valuation misstatement penalty by representing to the [c]ourt that their § 465 concession will avoid the need for a lengthy trial" and now "seek an evidentiary trial which will encompass the same subject matter that would be addressed in a trial contesting the 40% gross valuation misstatement penalty."  Def.'s Resp. 7-8.  According to defendant:

> All of the evidence plaintiffs now want to present in defense to the 20% penalty is the same evidence that plaintiffs would have presented in defense to the 40% gross valuation misstatement penalty.  Furthermore, whether this case proceeds to trial to evaluate plaintiffs' defense to the 20%

penalty, or to evaluate their defense to the 40% penalty, the trial's length
and its scope will be the same.

Id. at 8.  Defendant also states that "the only triable, and potentially time[-]consuming
aspect of plaintiffs' challenge to the 40% gross valuation misstatement penalty is
plaintiffs' § 6662 defense to that penalty, the same defense plaintiffs now wish to litigate
in connection with the 20% penalties."  Id. at 8-9.  Defendant argues that the "efficiencies
and economies" the court determined to have been achieved by plaintiffs' concession will
no longer exist if plaintiffs are allowed to present the evidence they desire.  Id. at 9.

According to defendant, plaintiffs' concession "was accepted solely for reasons of
judicial economy based on plaintiffs' representation that it would avoid a lengthy trial."
Id. at 7.  Defendant argues that in Alpha I the court "focused not on 'the validity of the
ground on which plaintiffs made their concession' but rather on the fact that the
concession 'obviates the need to conduct a trial on valuation issues and therefore achieves
the very efficiencies and economies that the elimination of penalties sought to
encourage.'"  Id. at 9 (citing Alpha I, 84 Fed. Cl. at 631, 632 n.6).  According to
defendant, "That rationale is eviscerated by plaintiffs' newly found desire to litigate their
purported defenses to the imposition of the 20% negligence and/or substantial
understatement penalties."  Id.  Defendant's argument mischaracterizes the court's
reasoning in Alpha I.

When the court stated in Alpha I that it was not focused on "the validity of the
ground on which plaintiffs made their concession," the court was addressing defendant's
argument that the § 465 adjustment was included in the FPAA only "as a protective
adjustment."  See Alpha I, 84 Fed. Cl. at 632 n.6; United States' Response to Plaintiffs'
Motion for Partial Summary Judgment 6 (arguing that "the § 465 adjustment did not
result in any adjustment or correction to long term capital gains and losses on the Group
FPAA").  The court did not need to address "the validity of the ground on which plaintiffs
made their concession," because "[p]laintiffs did not concede the adjustments on grounds
relating to valuation that would cause the penalties to be applied."  Alpha I, 84 Fed. Cl. at
632 n.6.  The fact that the court found that plaintiffs' concession "obviates the need to
conduct a trial on valuation issues and therefore achieves the very efficiencies and
economies that the elimination of penalties sought to encourage" supported the court's
determination that the gross valuation misstatement penalties were inapplicable, a
determination that was made because "[p]laintiffs did not concede the adjustments on
grounds relating to valuation that would cause the penalties to be applied."  Id. at 631,
632 n.6.

Plaintiffs state that their Brief does not "conflict with plaintiffs' prior statements regarding the efficiency gained by their concession because plaintiffs made clear that their concession eliminated the need for a trial on the merits of defendant's capital gain adjustments, but did not eliminate the need for a determination regarding the applicability of penalties." Pls.' Reply 3. Plaintiffs' amended complaints conceded that taxes are owed, but contested whether penalties are owed. See, e.g., Alpha Amended Compl. ¶¶ 39-44. Plaintiffs stated their contentions with respect to penalties as follows:

46. Alpha and its partners are not subject to penalties under Code Section 6662 because if any tax liability were ultimately determined by this [c]ourt against them, such liability is not attributable to: (a) negligence or disregard of rules or regulations; (b) any substantial understatement of income tax; or (c) any substantial or gross valuation misstatement under Chapter 1.

47. Alpha and its partners are not subject to penalties under Code Section 6662 because if any understatement were ultimately determined by the [c]ourt, such understatement would be attributable to items for which the relevant facts were adequately disclosed in the returns or in a statement attached to the returns; and there is a reasonable basis for the tax treatment of such item by the taxpayer.

48. The Transactions at issue in this case do not constitute a tax shelter within the meaning of Code Section 6662.

49. In the alternative, even if the Transactions do constitute a tax shelter, Alpha and its partners are not subject to penalties under Code Section 6662 because any understatement ultimately determined by the Court is attributable to the tax treatment of items for which there is or was substantial authority for such treatment, and, furthermore, Alpha and its partners reasonably believed that their tax treatment of such item was more likely than not the proper treatment.

50. Alpha and its partners are not subject to penalties under Code Section 6662 on any underpayment ultimately determined because there was reasonable cause for such underpayment and they acted in good faith as contemplated by Code Section 6664(c)(1).

Id. ¶¶ 46-50. According to plaintiffs, "Plaintiffs' Brief did not conflict with plaintiffs' prior representations to the [c]ourt regarding the efficiency gained by their concession of

defendant's capital gains adjustments." Pls.' Reply 4. "Plaintiffs never stated that their concession would eliminate the need for a trial in this case because plaintiffs have contested the applicability of any penalty against them from the beginning of this proceeding. Plaintiffs understood that if the outstanding penalty issues could not be resolved through summary judgment, a trial would be necessary to determine their applicability." Id. at 5.

As defendant pointed out in its Motion for Reconsideration:

[T]he [c]ourt's ruling on the § 6662(e) substantial valuation misstatement penalty does not avoid a trial on penalties. The FPAAs also determined penalties under 26 U.S.C. §[ 6662(a), (b)(1) and (d)] (negligence or disregard of rules or regulations) and under 26 U.S.C. § 6662(a), [(b)(2) and (d)] (substantial understatement of tax). The [c]ourt's resources will still need to be expended in considering these alternative penalties, and, even if the substantial valuation misstatement was not an independent issue in this case (which it is), there is little benefit in not considering it with the other penalties.

Def.'s Mot. for Recons. 11. Plaintiffs have consistently contested whether penalties are owed. See, e.g., Alpha Amended Compl. ¶¶ 46-50. Furthermore, the court did not base its earlier decision on misleading information that plaintiffs' § 465 concessions would entirely avoid a trial on penalties. See Alpha I, 84 Fed. Cl. at 631 ("Plaintiffs' concession obviates the need to conduct a trial on valuation issues and therefore achieves the very efficiencies and economies that the elimination of penalties sought to encourage."). The court was concerned with avoiding a trial on valuation issues, not with avoiding a trial on penalties. Because plaintiffs have not adopted an inconsistent position that would give the perception that the court was misled, see New Hampshire v. Maine, 532 U.S. at 750-51, the court declines to hold that plaintiffs are judicially estopped from contesting the 20% negligence and substantial understatement penalties.

IV.     Conclusion

For the foregoing reasons, plaintiffs are limited to asserting defenses based on the ground under which plaintiffs made their concessions. A trial on penalties will not encompass valuation misstatement penalties because the court has already held that valuation misstatement penalties are inapplicable. See Alpha I, 84 Fed. Cl. at 631-34. Plaintiffs are not judicially estopped from asserting defenses based on § 465.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Chief Judge